UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re Application of DEPOSIT INSURANCE
AGENCY for an order to conduct discovery for use
in a foreign proceeding.

Case No.

Petitioner.

**MEMORANDUM IN SUPPORT OF *EX PARTE* PETITION FOR AN ORDER
PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY
FROM SERGEY LEONTIEV FOR USE IN A FOREIGN PROCEEDING**

MORRISON COHEN LLP
909 Third Avenue
New York, New York 10022
Telephone:  212-735-8600
Facsimile:  212-735-8708

*Attorneys for Petitioner
Deposit Insurance Agency*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. iii

PRELIMINARY STATEMENT ............................................................................................ 1

RELEVANT FACTS .............................................................................................................. 2

   A.  PROBUSINESSBANK AND THE EVENTS LEADING UP TO, AND THE
       CURRENT STATUS OF, THE RUSSIAN BANKRUPTCY PROCEEDING ................. 2

       The Embezzlement Scheme That Led to the Missing Funds ............................................ 4

       Indirect Granting Of Loans And Real Estate Fraud ......................................................... 9

       Vermenda Bogus Bonds .................................................................................................. 11

       Acquisition Of Shares In "PK Life" ............................................................................... 11

       Additional Transactions Creating Losses For The Bank ................................................ 12

       Discovery Obtained In The United States
       Can Be Used In The Russian Bankruptcy Proceeding .................................................... 12

   B.  THE WITNESS: SERGEY LEONTIEV ..................................................................... 13

ARGUMENT ......................................................................................................................... 14

SECTION 1782 AUTHORIZES THE THIRD-PARTY DISCOVERY
PETITIONER SEEKS, AND THE DISCRETIONARY FACTORS WEIGH
HEAVILY IN FAVOR OF GRANTING PETITIONER'S REQUESTED DISCOVERY ......... 14

   A.  APPLICABLE LEGAL PRINCIPLES ....................................................................... 14

   B.  THE INFORMATION SOUGHT IS HIGHLY RELEVANT AND
       PRESUMPTIVELY DISCOVERABLE UNDER SECTION 1782 ............................... 16

   C.  PETITIONER'S REQUESTS MEETS THE STATUTORY
       REQUIREMENTS OF SECTION 1782 ...................................................................... 16

       1.  Leontiev Resides and is Found Within This District ................................................ 16

       2.  The Discovery Sought Is Intended For Use In A Foreign Proceeding ...................... 17

       3.  The Petitioner is an Interested Person ...................................................................... 17

D.  THE INTEL DISCRETIONARY FACTORS WEIGH HEAVILY
    IN FAVOR OF GRANTING PETITIONER'S APPLICATION ...................................... 17

    1.  Leontiev Is Not A Party To The Foreign Proceeding .................................................. 17

    2.  The Nature Of The Foreign Tribunal, The Character Of The
        Foreign Proceeding And The Russian Court's Receptivity To
        Assistance Favor Granting Petitioners' Application.................................................. 18

    3.  This Application Is Not An Attempt To Circumvent Russian Law Or Policy ........... 20

    4.  The Discovery Is Neither Unduly Burdensome Nor Intrusive ................................... 21

E.  EX PARTE RELIEF IS APPROPRIATE UNDER SECTION 1782(A) ......................... 22

CONCLUSION.................................................................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.,*
785 F. Supp. 2d 434 (S.D.N.Y 2011)..................................................................17

*In re Bayer AG,*
146 F.3d 188 (3d Cir. 1998)..........................................................2, 14, 15, 21

*Brandi-Dohrn v. IKB Deutsche Industriebank,*
673 F.3d 76 (2d Cir. 2012)...........................................................................19

*In re Application of Chevron Corp.,*
709 F. Supp. 2d 283 (S.D.N.Y. 2010).............................................................15

*In re Edelman,*
295 F.3d 171 (2d Cir. 2002).....................................................................16, 17

*In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf,*
No. Civ. M19-88, 2006 U.S. Dist. LEXIS 94161 (S.D.N.Y. Dec. 29, 2006)...........18

*Gushlak v. Gushlak,*
486 Fed. Appx. 215 (2d Cir. 2012).................................................................16

*Hickman v. Taylor,*
329 U.S. 495 (1947)......................................................................................22

*In re Imanagement Servs.,*
No. Misc. 05-09, 2005 U.S. Dist. LEXIS 17025 (E.D.N.Y. Aug. 16, 2005)...........19

*Intel Corp. v. Advanced Micro Devices, Inc.,*
542 U.S. 241 (2004)............................................................................. *passim*

*John Deer Ltd. v. Sperry Corp.,*
754 F.2d 132 (3d Cir. 1985)...........................................................................22

*In re Joint Stock Co. Raiffeinsenbank,*
No. 16-mc-80203-MEJ, 2016 U.S. Dist. LEXIS 152090 (N.D. Cal. Nov. 2, 2016) ...............19

*In re Kreke Immobilien KG,*
No. 13 Misc. 110, 2013 U.S. Dist. LEXIS 160283 (S.D.N.Y. Nov. 8, 2013) ...........19

*Lancaster Factoring Co. v. Mangone,*
90 F.3d 38 (2d Cir. 1996)..............................................................................17

*London v. Does 1-4,*
279 Fed. Appx. 513 (9th Cir. 2008)) ........................................................................21

*In re Application for an Order Permitting Metallgesellschaft AG to Take Discovery,*
121 F.3d 77 (2d Cir. 1997)........................................................................................15

*Minatec Fin. S.A.R.L. v. SI Grp. Inc.,*
No. 1:08-CV-268, 2008 U.S. Dist. LEXI 63802 (N.D.N.Y Aug. 18, 2008) ............20

*In re Republic of Kazakhstan for an Order Directing Discovery from Clyde & Co.
LLP Pursuant to 28 U.S.C. sec. 1782,*
110 F. Supp. 3d 512 (S.D.N.Y. June 22, 2015) ......................................................20

*In re Sarrio S.A.,*
173 F.R.D. 190 (S.D. Tex. 1995).......................................................................15, 22

## STATUTES

28 U.S.C. § 1782.................................................................................................... *passim*

## OTHER AUTHORITIES

Federal Rule of Civil Procedure 45 ...............................................................................22

S.Rep. No. 1580, 88th Cong., 2d Sess. 2 (1964), reprinted in 1964 U.S.C.C.A.N. 3782..............17

Petitioner, Deposit Insurance Agency ("DIA" or the "Petitioner"), respectfully submits this memorandum of law together with the declaration of Mary E. Flynn dated October 26, 2017 ("Flynn Declaration"), and the declaration of Daria Diachenko dated October 25, 2017, in support of their application, pursuant to 28 U.S.C. § 1782, for third-party discovery from Sergey Leontiev ("Leontiev") necessary to a bankruptcy proceeding pending in Russia concerning Probusinessbank ("Probusinessbank" or the "Bank"), a Russian bank (the "Russian Bankruptcy Proceeding").

## PRELIMINARY STATEMENT

The Russian Bankruptcy Proceeding is currently before the Commercial Arbitrazh Court of Moscow and arises from the Bank's financial demise.    In 2015, the Bank lost its license from the Central Bank of Russia, because many of the Bank's assets appeared to be "fictitious" and the Bank was insolvent.  Leontiev was the Bank's co-founder, president and largest shareholder.

DIA intends to use the requested discovery from Leontiev to maximize recovery for those depositors and creditors who have suffered.   In the Russian Bankruptcy Proceeding, the testimony and documents in the possession of Leontiev, who as a high-ranking member of the Bank, necessarily had specific knowledge regarding the Bank's operations, will provide unique evidence concerning the Bank's financial condition and assets.

Section 1782 enables foreign litigants to obtain evidence from persons located in the United States in aid of a foreign proceeding. Petitioner's Section 1782 Application (the "Application") seeks discovery in the form of:  (i) a deposition of Leontiev, an individual who resides in the Southern District of New York; and (ii) document discovery responsive to narrowly tailored requests from Petitioner.

Petitioner meets each of the requirements for discovery under Section 1782. *See, e.g., Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 249, 264-65 (2004).  Petitioner

requests discovery from Leontiev so it may fully support its claims in the Russian Bankruptcy Proceeding. Where, as here, the information sought is relevant, it is "presumptively discoverable" under Section 1782. *In re Bayer AG*, 146 F.3d 188, 196 (3d Cir. 1998). Petitioner thus respectfully requests that this Court grant its petition for the discovery from Leontiev pursuant to Section 1782.

## RELEVANT FACTS

### A. PROBUSINESSBANK AND THE EVENTS LEADING UP TO, AND THE CURRENT STATUS OF, THE RUSSIAN BANKRUPTCY PROCEEDING

In August 2015, Probusinessbank, a Russian bank, lost its license from the Central Bank of Russia, because many of the bank's assets appeared to be "fictitious" and the Bank was insolvent. (Diachenko Decl. ¶ 13.)

According to a declaration filed by Leontiev in an action in the Southern District of New York[1] (the "Leontiev Dec."), Leontiev founded the Bank in 1993. The Bank owned numerous other banks, and they were "organized under the broad financial group 'Life'" in 2003. (Leontiev Dec. ¶ 12). Leontiev was the president of the Bank, Alexander Zheleznyak was Chairman of the Board. (Diachenko Decl. ¶ 15.) Leontiev was the largest shareholder of Probusinessbank. Zheleznyak was a minority shareholder. Together, they owned a controlling interest in Probusinessbank through a company in Cyprus named Alivikt Holdings Limited. Alivikt together with other shareholders, namely East Capital Financials Fund AB, Haggard Financial Limited, Rekha Holdings Limited, Burmash Holdings Limited and BlueCrest Emerging Markets Fund Limited (collectively together with Alivikt, the "Shareholders", and each, a "Shareholder"), was involved in a suspicious deal of repurchasing by the Bank of its own

---

[1] Declaration of Sergey Leontiev dated January 26, 2017 filed in *Sergey Leontiev v. Alexander Varshavsky*, No. 16-cv-03595 (JSR) (Docket # 54).

stock in April to June 2014, which led to the damages from the Bank's collapse exceeding RUB 297 million ("Repurchase-2014"). Zheleznyak was responsible for management of the operations of the Bank, and Leontiev determined and prioritized the Bank's activities. Together, they controlled the activities of Probusinessbank from its founding until 2015. (*Id.* ¶ 15.)

On August 7, 2015, the Central Bank of the Russian Federation ordered that DIA take over provisional administration of Probusinessbank. Probusinessbank is the lead entity of a large group of companies referred to as "Financial Group Life", and which had 800 branches in 75 regions of the Russian Federation. (*Id.* ¶ 16.)

In accordance with Article 20 of Federal Law No. FZ-395-1 "On Banks and Banking Activity", the Russian Central Bank will revoke the banking license of a bank that violates federal laws regulating banking activities and fails to maintain adequate capital. Probusinessbank was engaged in risky subprime-related credit transactions, and ultimately lost all of its assets. Through the order of Bank of Russia No. OD-2071 dated August 12, 2015, the Bank's banking license was revoked. (*Id.* ¶ 17.) According to former employees, for the prior 10 years, Probusinessbank had been submitting false financial statements to regulators. (*Id.* ¶ 18.)

On October 28, 2015, Probusinessbank was declared insolvent by Judgment of the Commercial Arbitrazh Court of Moscow, and DIA was appointed bankruptcy manager (Trustee) of Probusinessbank by operation of law. It was determined at that time that Probusinessbank's liabilities exceeded its assets by RUB 1,271,128,000, which is roughly USD $21 million. Maxim Alexandrovich Khamchich is the DIA representative acting as Bankruptcy Manager/Trustee of Probusinessbank. (*Id.* ¶ 19.)

The bankruptcy proceeding is still open, having been extended by Judgment dated April

24, 2017. As Bankruptcy Manager/Trustee, Mr. Khamchich is charged with, among other things, responsibility for obtaining documents concerning claims of creditors of Probusinessbank, assessing the Bank's property, investigating and contesting suspicious transactions, searching for Bank property, and enforcing the property rights of the Bank. (*Id.* ¶ 20.)

Subject to Article 189.78 of Russian Bankruptcy Law, the appointment of the DIA as the Bank's official liquidator serves two objectives: namely, to marshal and collect the assets of the Bank at the highest possible value and to distribute the resulting proceeds to creditors in an orderly manner. The Receiver by his appointment is required to act in good faith in relation to the rights and interests of the creditors and the Bank. His power includes the power to:

- accept under his jurisdiction the Bank's assets, to make up an inventory thereof;
- take measures aimed at ensuring the safekeeping of the Bank's assets;
- bring claims for recovery of amounts due to the Bank; and
- undertake investigative, search and recovery efforts for the return of the Bank's assets held by third parties.

(*Id.* ¶ 21.)

## The Embezzlement Scheme That Led to the Missing Funds

A criminal case was initiated against former managers and employees of Probusinessbank for embezzlement through appropriation and misappropriation of funds "on an especially large scale" during 2014 and 2015. Subordinate employees of Probusinessbank and Life Financial Group provided detailed evidence to the Russian authorities of Leontiev's and Zheleznyah's direction of the embezzlement scheme. (*Id.* ¶ 22.)

According to accomplices, Probusinessbank would knowingly provide unsecured, non-

performing "loans" to sham companies that do not actually conduct any business and that are controlled by Leontiev and Zhelesnyak. The sham companies then transferred the loaned funds to other accounts controlled by Leontiev and Zheleznyak at Probusinessbank. The embezzled funds were then converted to dollars and transferred to the Latvian account of Vermenda Holdings Limited ("Vermenda"), a company Leontiev controls with an address in Cyprus. From there, the perpetrators, directed by Leontiev and Zheleznyak, transferred the embezzled funds elsewhere. (*Id.* ¶ 23.)

Upon information and belief, Leontiev transferred some of the embezzled funds to Vermenda Holdings and then to a Cook Islands Offshore Asset Protection Trust named Legion Trust (the "Trust"). The beneficiaries of the Trust are, nominally, Leontiev's parents and wife. Leontiev's father, Leonid Leontiev, is the protector of the Trust; the trustee is Southpac Trust International Inc. ("Southpac"), a licensed asset manager based in the Cook Islands. Southpac, as trustee of the Trust, owns a Cook Islands company named Holdco Ltd. ("Holdco"), the director of which is Vadim Kolotnikov ("Kolotnikov"), who worked for Probusinessbank entities until 2015. (*Id.* ¶ 24.)

In addition to Vermenda, Leontiev and Zheleznyak used Cyprian companies Merrianol Investments Limited ("Merrianol") and Ambika Investments Limited ("Ambika"), for their "off balance sheet" transactions, and Vennop Trading Limited, Atlas – Investment Solutions (Luxembourg), CJSC Financial Group Life, Valkera Investments Ltd., Probusiness Management Limited, Lunare Trading Limited, Higold Investment Limited (BVI), Finbay Group Ltd, Morselo Investment Limited, Lancora Investments Limited (Cyprus), Fairbourne Logistics LP, Larienta Management Limited, Greenex Trading Ltd, Greenbox Trading Limited, Trustway Investments Ltd, Digitime Alliance Ltd, Kollado Inc., Solariom Limited, Vesvora Trading Limited

(collectively with Vermenda the "Leontiev Companies"). (*Id.* ¶ 25.)

Among others, the following companies, under the control of the group of perpetrators, were used in the embezzlement scheme prior to transfer of the embezzled funds to Vermenda's account in Latvia:

| | |
|---|---|
| LLC | Engineering Royalty |
| LLC | Elso |
| LLC | Personal + |
| LLC | Alliance |
| LLC | Easton (alternative spelling: Iston) |
| LLC | PK Technologies |
| LLC | Sanris |
| LLC | ISK IvSpetsGarant (full name: Innovatsionno-stroitelnaya kompaniya "IvSpetsGarant") |
| LLC | Probusiness-Development |
| LLC | Debt Collection Agency Life |
| LLC | Tsentr Torgovli |
| LLC | KnewHowTrade |
| LLC | Financial Center Eskada |
| LLC | Progma Trade |
| LLC | Vostok-Cargo-Plus a/k/a KOPFA |
| LLC | Zolotoy express lombard region |
| LLC | Creditkin.ru |
| LLC | Rustorg-finance |
| LLC | Flaver |
| LLC | J R management |
| LLC | Avtoreal |
| LLC | Vanilla |
| LLC | Evromag |
| LLC | Tsentr innovatsionnykh resheniy |
| LLC | Zernoprom |
| LLC | Golden Funds |
| LLC | P and P |
| LLC | GeotorgOil |
| LLC | Iskra |
| LLC | Zolotoy express lombard south |
| LLC | Yarilo |
| LLC | North-Neft |
| LLC | Khrisaor |
| LLC | SN Trading |
| LLC | Multibrand |
| LLC | Tekhnologiyi and Oborudovanie |
| LLC | BaltAvtoTrade C |

| | |
|---|---|
| LLC | Business Partner |
| LLC | Investitsionnaya kompaniya "Realfinance" |
| LLC | Metall invest |
| LLC | Reformatsia |
| LLC | Flaund |
| LLC | Signal |
| LLC | Life Sreda |
| LLC | PB-Invest |
| LLC | FreeLife |
| LLC | Escada |
| LLC | Finpremium |

(collectively, the "Sham Companies", and each, a "Sham Company"). (*Id.* ¶ 26.)

The Sham Companies were created by those controlling the Bank (Leontiev and Zheleznyak), and the Bank's employees were appointed nominee directors of the Sham Companies. (*Id.* ¶ 27.) Leontiev and Zheleznyak directed the group of participants in the scheme, which group included:

M. M. Krylova
Ya. V. Alexeev
V. V. Kazantsev
A. V. Lomov
N. V. Alexeev
S. V. Kalachev
M. M. Artemov
K. V. Artemov
I. P. Polikarpov
A. V. Danukin
O. E. Papakhin
Natalia Abramova
Yanna Krisiuk
A.A. Vyulkova
A.V. Simakov
O.V. Kravchenko
L.B. Shpagina
N.A. Averianova
L.E. Alkhovaya
T.V. Balaboyko
S.A. Batina
F.N. Vorsin
E.A. Gureeva
N.V. Denisova

7

A.V. Dronova
D.V. Zhilenko
O.P. Zarovnaya
A.S. Zarovniy
V.Y. Zinina
M.A. Kosova
N.I. Kudryakova
D.V. Kulikov
N.E. Lebedeva
L.V. Legkova
S.V. Leontiev
A.N. Rasnikov
A.A. Reutskiy
V.A. Reshetov
D.A. Samoylenko
I.V. Safronov
O.V. Simakova
L.M. Tolmacheva
E.A. Khoroshikh
E.A. Tsybina
L.B. Chirkova
M.A. Shpagina
D.A. Errans
O.M. Yachina

(collectively, the "Conspirators"). (*Id.* ¶ 28.)

Certain Conspirators pled guilty and provided the following details of the scheme. These schemes were carried out by officers of the Bank acting on the basis of powers of attorney signed by Zheleznyak, which officers, at the direction of Leontiev and Zheleznyak, would execute loan agreements to one of the Sham Companies. The loaned funds would be transferred from the Bank to the Sham Company that was designated as the borrower under the applicable loan agreement. As soon as the funds reached the account of the particular Sham Company, they were immediately transferred out to another and yet another Sham Company in a series of transfers. Ultimately, the loaned funds were transferred to Vermenda, where Leontiev and Zheleznyak had control of the funds. The division of the Bank engaging in these fictitious loans was called the "Valkyrie Directorate." This scheme of using the "off balance sheet" Sham

Companies was called "Merry-Go-Round." A total of RUB 2,443,195,198 was looted from the Bank in these schemes from September 2014 to August 2015. (*Id.* ¶ 29.)

These Sham Company transactions involved numerous loan agreements including:

- Agreement No. 211-810/14u dated September 15, 2014 with LLC Isk IvSpetsGarant for a loan up to RUB 500,000,000. RUB 280,000,000 disbursed and lost by the Bank.

- Agreement No. 044-810/15u dated April 9, 2015 with LLC Engineering Royalty for a loan up to RUB 1,000,000,000. RUB 600,000,000 was disbursed and lost by the Bank.

- Agreement No. 071-810/15u dated May 15, 2015 with LLC Vostok-Cargo-Plus for a loan up to RUB 500,000,000.

- Borrower's obligations were later assigned to LLC Easton. RUB 365,000,000 was disbursed and lost by the Bank.

- Agreement No. 099-810/15u dated June 22, 2015 with LLC Tsentr Torgovli for a loan up to RUB 1,000,000,000. Borrower's obligations were later assigned to LLC PK Technologies. RUB 698,200,000 was disbursed and lost by the Bank.

- Agreement No. 137-810/15u dated June 28, 2015 with KnewHowTrade for a loan up to RUB 1,000,000,000. Borrower's obligations were later assigned to LLC Sanris. RUB 499,995,968 was disbursed and lost by the Bank.

(collectively, the "Loans"). The transactions concerning the Loans are referred to collectively as the "Transfers"). (*Id.* ¶ 30.) At times, Leontiev and Zheleznyak had certain Bank clients invest in loan transactions to the Sham Companies by providing funds directly to a Sham Company, rather than through the Bank. The clients would receive a higher interest rate than the Bank would have paid them. For such loans, the applicable Sham Company would issue a promissory note in favor of the client, and the Bank would guarantee the note. These loans, too, were fake, and the proceeds used in the same manner as the Merry-Go-Round Transfers. (*Id.* ¶ 31.)

**Indirect Granting Of Loans And Real Estate Fraud**

Probusinessbank, like other Russian banks, is subject to the regulatory requirements of

Russian banking law and the monitoring of its compliance with those regulations by the Russian Central Bank. (*Id.* ¶ 32.) For this reason, Leontiev and Zheleznyak developed a system by which Probusinessbank granted indirect loans to companies Leontiev and Zheleznyak controlled and of which they were the beneficial owners (the "Indirect Loans"). Because under Russian banking regulations direct loans by Probusinessbank to these companies would have required strict default provisions, among other things, the loans were granted to ostensibly creditworthy borrowers, usually other banks, one of which may have been Falcon Private Bank (the "Bogus Borrowers"), in order to avoid these requirements. The Bogus Borrowers then forwarded the loan proceeds to the true borrowers – companies owned and/or controlled by Leontiev and Zheleznyak. The Bogus Borrowers received illicit payments for their involvement or received cross financing by Probusinessbank for their projects. (*Id.* ¶ 33.)

Similar schemes were implemented outside the interbanking sector. One example of this is the project with Novaya Usadba CJSC (the "NU Project"). The grant of loans to a company named Novaya Usadba CJSC was concealed as a prepayment based on a 2015 real estate agency agreement. Pursuant to that agreement, Novaya Usadba CJSC was supposed to identify and implement real property projects for Probusinessbank. The acquisition of real property was, however, not a developed business sector of Novaya Usadba CJSC, and there was never an intention to actually undertake any real estate projects. This structure was implemented only to funnel and launder large amounts of money from Probusinessbank. (*Id.* ¶ 34.)

In exchange for its services, more than USD 10 million was transferred to Novaya Usadba CJSC by Probusinessbank. Novaya Usadba CJSC, however, did not use the money for the purported property purchases. Instead, it transferred the funds to Investitsionnye Resheniya LLC ("Resheniya"), a company ultimately owned and/or controlled by Leontiev and Zheleznyak.

Resheniya was merely a shell and did not do any business. (*Id.* ¶ 35.)

Leontiev and Zheleznyak intentionally structured the Indirect Loans and the NU Project in such a way that the Bank could never recover the fund, and they could strip the Bank of its assets. As a result of this scheme, Probusinessbank incurred losses of at least RUB 600 million. (*Id.* ¶ 36.)

## Vermenda Bogus Bonds

Probusinessbank had a cash credit balance in various accounts with Baltikums Bank AS, JSC Latvijas Pasta Banka and Dinosaur Merchant Bank Limited (a/k/a Dinosaur Merchant Bank Limited). Upon the instructions of Leontiev and Zheleznyak, this cash balance was exchanged for bonds of Vermenda, which Leontiev and Zheleznyak controlled and which had no assets. Hence, the bonds are worthless. As set forth above, the sole purpose of Vermenda was to further distribute the funds that Leontiev and Zheleznyak embezzled out of Probusinessbank in order to conceal their origins and insulate the funds from the reach of Probusinessbank's creditors. As a result of Leontiev and Zheleznyak's scheme to replace the cash credit balance with the worthless Vermenda bonds, the Bank lost more than RUB 14,491,629,649.90. (*Id.* ¶ 37.)

## Acquisition Of Shares In "PK Life"

Leontiev and Zheleznyak also diverted the Bank's assets for their own gain by causing the Bank to acquire shares in PK Life LLC (also known as Life Processing Company LLC) in the amount of RUB 1,054,120,000.00. They caused PK Life LLC to be created. PK Life LLC's former shareholders, AstraPlus LLC, Vega LLC and Vest LLC (the sellers in the transaction), were companies which were affiliated with Probusinessbank via the Leontiev and Zheleznyak network of companies. Because PK Life LLC does not now and did not at the time of the Bank's share acquisition have any assets, the shares are worthless. Once the Leontiev and Zheleznyak-

controlled sellers received the funds, they were transferred to Vermenda's account, where Leontiev and Zheleznyak then withdrew the funds for their own personal gain. (*Id.* ¶ 38.)

**Additional Transactions Creating Losses For The Bank**

Investigations have yielded information concerning other schemes to defraud the Bank's creditors (the "Additional Transactions") including:

- Probusinessbank's transfer of RUB 530,928,334.88 in loan proceeds to Dengi LLC and Probusiness-Development LLC (purported borrowers), and subsequent assignment of the repayment obligations to Zolotaya Rybka LLC and Holmeks LLC. These companies have no assets, do not undertake any commercial activities, and are not capable of repaying the loans.

- The assignment of the repayment obligation under a loan in favor of Alcologistika LLC to Dekant Rus LLC, Vient+ LLC and PK Technologies LLC, each of which were also shell companies and unable to repay the loan. The losses from this sham transaction total at least RUB 193,050,000.00.

- The transfer of various of the Bank's securities, totaling RUB 1 Bn to a foreign depository, including the Bank's shares in British Petroleum, to an account for which Leontiev is the beneficiary.

(*Id.* ¶ 39.)

**Discovery Obtained In The United States**
**Can Be Used In The Russian Bankruptcy Proceeding**

The Conspirators went to great lengths to hide the schemes. The Central Bank of Russia questioned the legitimacy of the Sham Companies because they had "mass registration" addresses and only had bank accounts at Probusinessbank. To address these concerns, the Conspirators filled empty offices at these addresses with office furniture and equipment and sent photographs of same to the regulators. They also opened accounts for the Sham Companies at other banks. (*Id.* ¶ 40.) Based on the most recent DIA reports, Applicant's "negative gap" is currently itemized at more than RUB 69.8 billion, which can be ascribed to the embezzlement of

12

former management. At this time, an exact figure of the total anticipated losses cannot be defined; this will depend in particular on the final outcome of the investigations being conducted by the Applicant. At the time this motion was submitted, a loss in the amount of a minimum of 6,256,198,59.95 RUB, or over $100 million USD has been suffered as a result of these fraudulent schemes. (*Id.* ¶ 41.)

The emails of the Conspirators concerning these schemes mysteriously disappeared in August, 2015 immediately before the Bank's license was revoked, and certain Conspirators confirmed the destruction of other documents evidencing the schemes. (*Id.* ¶ 42.)

**B.   THE WITNESS: SERGEY LEONTIEV**

Leontiev has knowledge and possesses or controls evidence concerning these and other transactions that led to the Banks demise, and which could be most helpful to the receiver in its attempt to recover assets for creditors. (*Id.* ¶ 43.) Leontiev left Moscow shortly after the Bank's license was revoked and he currently lives in New York, New York. (*Id.* ¶ 44.)

Russian Bankruptcy Law (§ 2 Article 126) stipulates that the former managers of the legal entity which was declared bankrupt are obliged to transfer to the official liquidator all of the financial and other documentation of the entity and all its assets. Breach or evasion of this duty is considered obstruction of the liquidator's activity and consequently is an illegal action in bankruptcy proceedings. (*Id.* ¶ 45.)   Accordingly, the official liquidator is entitled to file an application to the arbitrazh court (which declared the bankruptcy of the legal entity) seeking a court order under which the former managers shall be obliged to transfer to the official liquidator all the financial and other documentation and all the assets of the bankrupt entity. (*Id.* ¶ 46.)

Such application is filed in compliance with Article 66 of the Arbitrazh Procedural Code of the Russian Federation according to which each party in a trial, that cannot on its own obtain

the evidence necessary for the proceedings, is entitled to seek legal support in the court proceedings. (*Id.*) Since Leontiev resides in the United States, the assistance of the U.S. Court is necessary to implement Russian law and for DIA to discharge its duties as liquidator/receiver of the Bank. (*Id.* ¶ 47.)

## ARGUMENT

### SECTION 1782 AUTHORIZES THE THIRD-PARTY DISCOVERY PETITIONER SEEKS, AND THE DISCRETIONARY FACTORS WEIGH HEAVILY IN FAVOR OF GRANTING PETITIONER'S REQUESTED DISCOVERY

### A.    APPLICABLE LEGAL PRINCIPLES

Applications for discovery in aid of a foreign proceeding are governed by Section 1782(a) of Title 28, United States Code, which provides that federal district courts may order discovery for use in a foreign or international tribunal from persons residing in or found in the district. 28 U.S.C. § 1782.[2]  Where the information sought is relevant, it is "presumptively discoverable under § 1782." *In re Bayer AG*, 146 F.3d at 196.  "Consistent with the statute's modest *prima facie* elements and Congress's goal of providing equitable and efficacious discovery procedures, district courts should treat relevant discovery materials sought pursuant to § 1782 as discoverable unless the party opposing the application can demonstrate facts sufficient

---

[2]    Section 1782 provides: "(a) The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation.  The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.  By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement.  The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. . . .  A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege."

to justify the denial of the application." *In re Bayer AG*, 146 F.3d at 195; *see also In re Sarrio S.A.*, 173 F.R.D. 190, 193 (S.D. Tex. 1995) ("The history of section 1782 indicates that Congress intended federal courts to provide broad assistance to foreign litigants who request permission to conduct discovery in the United States.").

The threshold requirements of Section 1782(a) are: (1) the persons from whom discovery is sought must reside in or be found in this district; (2) the discovery must be for use in a proceeding in a foreign tribunal; and (3) the applicant must be an "interested person." *Intel Corp.*, 542 U.S. 241. When all three requirements are met, the decision to grant the request rests with the district court. *Id.* at 260-61; *In re Application of Chevron Corp.*, 709 F. Supp. 2d 283, 290 (S.D.N.Y. 2010), *as corrected* (May 10, 2010), *aff'd sub nom Chevron Corp. v. Berlinger*, 629 F.3d 297 (2d Cir. 2011) ("Once the statutory requirements are met, a district court is free to grant discovery in its discretion.") (internal citation omitted); *In re Application for an Order Permitting Metallgesellschaft AG to Take Discovery*, 121 F.3d 77, 78 (2d Cir. 1997).

In *Intel*, the Supreme Court further articulated the following factors the district court should consider when determining whether to grant an application pursuant to Section 1782(a): (i) whether the person from whom discovery is requested is a party to the foreign proceeding; (ii) the nature of the foreign tribunal, the character of the foreign proceeding and the tribunal's receptivity to the federal court's assistance; (iii) whether the applicant is attempting to circumvent discovery restrictions or policies of the foreign tribunal; and (iv) whether the discovery sought is unduly intrusive or burdensome. *Intel Corp.*, 542 U.S. at 264-65.

The discovery Petitioner seeks in the present application satisfies each statutory requirement and the discretionary factors outlined by the Supreme Court in *Intel* weigh heavily in favor of granting Petitioner's requested discovery.

## B. THE INFORMATION SOUGHT IS HIGHLY RELEVANT AND PRESUMPTIVELY DISCOVERABLE UNDER SECTION 1782

The discovery Petitioner seeks is for use in proceedings before a foreign tribunal: the bankruptcy proceeding is currently pending in Moscow, Russia. (*See* Diachenko Decl. at ¶ 20.) As the co-founder, president and majority shareholder, Leontiev has knowledge and possesses or controls evidence concerning the Bank's demise and the embezzlement scheme perpetrated by him and his co-conspirators. Not only will the evidence be admissible in the Russian Bankruptcy Proceeding, but it will likely be considered critically important in DIA's investigation. There is still the equivalent of tens of millions of dollars missing. The documents and testimony sought would greatly assist the bankruptcy Trustee in his efforts to maximize recovery for those depositors and creditors who have suffered.

## C. PETITIONER'S REQUESTS MEETS THE STATUTORY REQUIREMENTS OF SECTION 1782

### 1. Leontiev Resides and is Found Within This District

The first threshold requirement for Section 1782 discovery is met because Leontiev is found in the Southern District of New York. *See Gushlak v. Gushlak*, 486 Fed. Appx. 215, 218 (2d Cir. 2012). Leontiev's contacts with New York through his residence and his employment show that Leontiev has purposefully availed himself of the privilege of conducting activities within the Southern District of New York. This activity constitutes sufficient minimum contacts for the Southern District of New York to assert personal jurisdiction and for Leontiev to be "found" in the District as required by Section 1782. *See In re Edelman*, 295 F.3d 171, 178 (2d Cir. 2002) ("We think . . . § 1782(a) supports a flexible reading of the phrase 'resides or is found'"). In addition, Leontiev is subject to service of a subpoena in the District. *See id.* ("We hold that if a person is served with a subpoena while physically present in the district of the court

that issued the discovery order, then for the purposes of § 1782(a), he is 'found' in that district.") Id. at 180.

### 2. The Discovery Sought Is Intended For Use In A Foreign Proceeding

The second threshold requirement for Section 1782 discovery is met because the requested discovery is for proceedings pending before a foreign tribunal. The Russian Bankruptcy Proceeding is before the Court in Moscow, Russia. (*See* Diachenko Decl. ¶ 20.)

### 3. The Petitioner is an Interested Person

Finally, the third threshold requirement for Section 1782 discovery is met because, as parties to the Foreign Proceeding, Petitioner is unquestionably an "interested person." *See Lancaster Factoring Co. v. Mangone,* 90 F.3d 38, 42 (2d Cir. 1996) ("The legislative history to § 1782 makes plain that 'interested person' includes 'a party to the foreign . . . litigation.'") (citing S.Rep. No. 1580, 88th Cong., 2d Sess. 2 (1964), reprinted in 1964 U.S.C.C.A.N. 3782, 3789). Indeed, a litigant in a foreign proceeding in a foreign tribunal "may be the most common example of the interested person(s) who may invoke § 1782. *Intel Corp.*, 542 U.S. at 256.

## D. THE *INTEL* DISCRETIONARY FACTORS WEIGH HEAVILY IN FAVOR OF GRANTING PETITIONER'S APPLICATION

### 1. Leontiev Is Not A Party To The Foreign Proceeding

In its discussion of the discretionary factors under Section 1782, the Supreme Court acknowledged that "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Intel Corp.*, 542 U.S. at 264.

Leontiev is not a party to the Russian Bankruptcy Proceeding, and indeed discovery could not be taken from him without the aid of an American court. (*See* Diachenko Decl. ¶ 48.) Accordingly, this factor weighs in favor of granting this Application. *See e.g., Ahmad Hamad*

*Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*, 785 F. Supp. 2d 434, 439 (S.D.N.Y 2011) ("Certainly the fact that respondents are non-parties weighs in favor of granting the petition since, as non-parties to the foreign proceedings, the foreign courts could not themselves order respondents to produce the requested discovery."); *In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf,* No. Civ. M19-88, 2006 U.S. Dist. LEXIS 94161, at *13-14 (S.D.N.Y. Dec. 29, 2006).

2.  **The Nature Of The Foreign Tribunal, The Character Of The Foreign Proceeding And The Russian Court's Receptivity To Assistance Favor Granting Petitioners' Application**

"Receptivity" is not a question of whether the foreign court would or could permit this particular discovery. The Supreme Court in *Intel* explicitly found that Section 1782(a) does not "categorically bar a district court from ordering production of documents when the foreign tribunal or the 'interested person' would not be able to obtain the documents if they were located in the foreign jurisdiction." 542 U.S. at 259-60.

In fact, while the discovery that Petitioner seeks would be unavailable to Petitioner without the aid of an American court, the Russian Court is likely to be receptive to the requested discovery: Russian courts have few requirements or formalities regarding the admission of relevant evidence. The court will accept both documents and sworn testimony. As such, any information obtained pursuant to DIA's Application before this Court can therefore be used in the Russian Bankruptcy Proceeding. Since Leontiev is a not a party to the Russian Bankruptcy Proceeding and he resides in the United States, discovery could not be taken from him in the Russian Bankruptcy Proceeding without the aid of an American court. (*See* Diachenko Decl. ¶ 48.)

In addition, although the Second Circuit has held that there is no requirement that the petitioner show that the evidence is admissible in the foreign proceeding, the evidence sought here will be admissible in the Foreign Proceeding. *Brandi-Dohrn v. IKB Deutsche Industriebank*, 673 F.3d 76, 82 (2d Cir. 2012). As the requested discovery is relevant to the subjects of the Russian Bankruptcy Proceeding, the Russian Court will not only allow the Petitioner to introduce the discovery but it will likely consider it important in assessing all claims and defenses. *Id.* at ¶ 31.

Other United States district courts have noted that the Russian court system is receptive to discovery obtained in the United States under Section 1782. *See In re Joint Stock Co. Raiffeinsenbank*, No. 16-mc-80203-MEJ, 2016 U.S. Dist. LEXIS 152090, at *17 (N.D. Cal. Nov. 2, 2016) ("Given the lack of authoritative evidence that the Arbitrazh Courts would be unreceptive to discovery from the United States, combined with the presence of case law that Russia may actually be receptive to such discovery, the Court finds this factor weighs in favor of § 1782 discovery.") (citing *In re Kreke Immobilien KG*, No. 13 Misc. 110, 2013 U.S. Dist. LEXIS 160283, at *14 (S.D.N.Y. Nov. 8, 2013) ("In the absence of authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782, a district court should err on the side of permitting discovery.") (citations and internal quotation marks omitted)); *see also In re Imanagement Servs.*, No. Misc. 05-09, 2005 U.S. Dist. LEXIS 17025, at *18 (E.D.N.Y. Aug. 16, 2005) (granting 1782 application where petitioner sought to obtain discovery for use in Russian court and noting that "resort to § 1782 may be the only avenue by which [petitioner] can obtain the discovery it seeks."). Russian courts generally allow evidence obtained in foreign courts from third parties. (*See* Diachenko Decl. ¶ 48.)

A "district court's inquiry into the discoverability of requested materials should consider only *authoritative proof* that a foreign tribunal would reject evidence obtained with the aid of section 1782. . . . Authoritative proof is [limited to] language in a forum country's judicial, executive or legislative declarations that specifically address the use of evidence gathered under foreign procedures." *In re Republic of Kazakhstan for an Order Directing Discovery from Clyde & Co. LLP Pursuant to 28 U.S.C. sec. 1782*, 110 F. Supp. 3d 512, 517 (S.D.N.Y. June 22, 2015) (emphasis in original) (internal citations and quotation marks omitted). There is nothing that suggests, let alone proves that the Russian court here would not be receptive to evidence obtained in this proceeding. Rather, it is likely that the court will consider evidence Petitioner obtains from Leontiev. (Diachenko Decl. ¶ 48.) As such, the second *Intel* factor weighs heavily in favor of granting Petitioner's requested discovery.

### 3.    This Application Is Not An Attempt To Circumvent Russian Law Or Policy

The third discretionary *Intel* factor, whether the applicant is attempting to "circumvent foreign proof-gathering restriction or other policies of a foreign country or the United States," is meant to preclude bad faith misuses of the process. *Intel Corp.*, 542 U.S. at 265; *see also Minatec Fin. S.A.R.L. v. SI Grp. Inc.*, No. 1:08-CV-268, 2008 U.S. Dist. LEXI 63802, at *25 (N.D.N.Y Aug. 18, 2008). Russian courts have few requirements or formalities regarding the admission of relevant evidence. (Diachenko Decl. ¶ 48.) As such, Petitioners' Section 1782(a) petition does not attempt to circumvent any Russian law or policy. Furthermore, the factual circumstances described above establish Petitioner's need to obtain relevant discovery regarding Leontiev's knowledge of the transactions concerning the assets of the Bank.

The fact that, under Russian procedures, Petitioner would not have access to third-party discovery outside Russian does not mean Petitioner's Application is inconsistent with Russian

law and policy. As the Supreme Court observed in *Intel*, "'[t]here is no reason to assume that because a country has not adopted a particular discovery procedure, it would take offense at its use.'" 542 U.S. at 261 (citing *In re Bayer AG*, 146 F.3d at 194). The Supreme Court further rejected the argument that a court should consider whether the requested discovery would be available in the foreign jurisdiction or whether "United States law would allow discovery in domestic litigation analogous to the foreign proceeding." *Id*. at 263.

There is no evidence here of any bad faith misuse of process; rather the discovery Petitioner seeks here is consistent with Petitioner's right to present a case. Petitioner seeks discovery relevant to the Russian Bankruptcy Proceeding because the target of the discovery is located here, in this District, and not as an attempt to circumvent foreign restrictions. As such, the third *Intel* factor also weighs heavily in favor of granting Petitioner's requested discovery.

### 4. The Discovery Is Neither Unduly Burdensome Nor Intrusive

Petitioners' discovery request is neither unduly burdensome nor intrusive. Petitioner seeks a single deposition and document discovery limited to those issues relevant to the Russian Bankruptcy Proceeding. *See London v. Does 1-4*, 279 Fed. Appx. 513, 515 (9th Cir. 2008) (finding no undue burden "[g]iven the need for the evidence, and the minimal invasion required" where Section 1782 request was narrowly tailored). Petitioner requests discovery from Leontiev concerning his actions related to the Sham Companies, the Leontiev Companies, the Transfers, the Conspirators, Wonderworks, the Trust, Southpac, Holdco, Leonid Leontiev, Kolotnikov, the Bogus Borrowers, the NU Project, Resheniya, the Indirect Loans, the PK Life LLC transactions and the Additional Transactions. There is no question that Leontiev possesses knowledge and information related to these individuals and transactions.

Petitioner's request for discovery is narrowly targeted to a single deposition and limited document discovery. In applying Federal Rule of Civil Procedure 45, which limits unduly burdensome discovery, to a Section 1782 petition, "it must be remembered that they are meant to be broadly and liberally construed in favor of permitting discovery to take place." *In re Sarrio S.A.*, 173 F.R.D at 198 (citing *Hickman v. Taylor*, 329 U.S. 495 (1947)). As such, the requested discovery is neither unduly burdensome nor oppressive. Thus, the fourth and final *Intel* factor likewise weighs heavily in favor of granting Petitioner's request for discovery.

### E.  EX PARTE RELIEF IS APPROPRIATE UNDER SECTION 1782(A)

An *ex parte* proceeding is specifically contemplated and authorized under Section 1782(a). As an alternative to a noticed motion, a party may move *ex parte* for an order directing a third party to produce documents and testify at a deposition. Following the entry of the order, the third party may respond or otherwise plead. The response can include, *inter alia,* a motion to vacate the order, to limit the discovery or to seek an appropriate protective order. *See, e.g., John Deer Ltd. v. Sperry Corp.*, 754 F.2d 132, 134 (3d Cir. 1985) (ex parte motion granted, with ten days' leave to respond or plead). The third party may always be afforded an opportunity to address the discovery sought.

## CONCLUSION

Based on the foregoing and accompanying papers, Petitioner respectfully requests that this Court grant Petitioner's ex parte application in its entirety.

Dated: New York, New York
October 26, 2017

Respectfully Submitted,

MORRISON COHEN LLP

By:_____

Mary E. Flynn
909 Third Avenue
New York, New York 10022
Telephone:    212-735-8600
Fax:              212-735-8708

*Attorney for Petitioner*
*Deposit Insurance Agency*