UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
:
In re Application of DEPOSIT INSURANCE :
AGENCY for an order to conduct discovery :
for use in a foreign proceeding, :
:
         Petitioner. : Case No. 1:17-mc-00414-GBD
:
:
:
:
:
:
---------------------------------------------------------x

**DECLARATION OF MARSHALL R. KING IN SUPPORT OF RESPONDENT'S
MOTION TO QUASH SUBPOENA ISSUED PURSUANT TO 28 U.S.C. § 1782**

  I, Marshall R. King, hereby declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

  1.  I am partner in the law firm of Gibson, Dunn & Crutcher LLP, and am admitted to practice law in the State of New York and the Southern District of New York. My firm represents Sergey Leontiev ("Mr. Leontiev" or "Respondent"). I make this declaration in support of Mr. Leontiev's motion to quash the subpoena served on him by Petitioner, the Deposit Insurance Agency ("DIA"), pursuant to 28 U.S.C. § 1782.

  2.  Attached hereto as Exhibit 1 is a true and correct copy of a document from the Central Bank of the Russian Federation entitled "Information about the financial conditions of OAO AKB 'Probusinessbank' (Reg. No. 2412), as of 06.01.2015," and a certified translation thereof.

  3.  Attached hereto as Exhibit 2 is a true and correct copy of an article by Daria Borisyak entitled "DIA suggests that Russian capital return to Probusinessbank the money taken out prior to license revocation," Vedomosti, dated September 18, 2015, available at

https://www.vedomosti.ru/finance/articles/2015/09/18/609261-asv-prosit-rossiiskii-kapital-vernut-probiznesbanku-dengi, and a certified translation thereof.

4. Attached hereto as Exhibit 3 is a true and correct copy of a press release from the Central Bank of the Russian Federation entitled "On settling obligations of OJSC JSCB Probusinessbank," dated August 20, 2015, available at http://www.cbr.ru/eng/press/PR/?file=20082015_ 181232eng2015-08-20T18_08_17.htm.

5. Attached hereto as Exhibit 4 is a true and correct copy of an article by Oksana Kobzeva and Alexander Winning entitled "4 Kremlin-friendly banks are the big winners of Russia's economic crisis," Business Insider, dated August 19, 2015, available at http://www.businessinsider.com/r-rise-of-new-banks-helps-kremlin-keep-russias-economy-afloat-2015-8.

6. Attached hereto as Exhibit 5 is a true and correct copy of an article by Jake Rudnitsky and Anna Baraulina entitled "Meet the Russian Billionaire Who's Buying Up his Country's Banks," Bloomberg, dated September 29, 2015, available at https://www.bloomberg.com/news/articles/2015-09-29/meet-the-russian-billionaire-who-s-buying-up-his-country-s-banks.

7. Attached hereto as Exhibit 6 is a true and correct copy of a decision, announcing Probusinessbank's bankruptcy, recognizing the DIA as bankruptcy trustee, and issuing additional orders, by the Arbitration Court of Moscow in Case No. A40-154909/15, announced on October 27, 2015 and published on October 28, 2015, and a certified translation thereof.

8. Attached hereto as Exhibit 7 is a true and correct copy of an article entitled "Probusinessbank liquidation to be handled by person who once faced criminal charges,"

Banki.ru, dated September 10, 2015, available at www.banki.ru/news/lenta/?id=8291011, and a certified translation thereof.

9. Attached hereto as Exhibit 8 is a true and correct copy of an article by Stanley Reed entitled "$50 Billion Awarded in Breakup of Yukos," New York Times, dated July 28, 2014, available at https://www.nytimes.com/2014/07/29/business/international/yukos-shareholders-awarded-about-50-billion-in-court-ruling.html.

10. Attached hereto as Exhibit 9 is a true and correct copy of an article by Oksana Kobzeva entitled "Russia's Binbank to take over Ukrainian bank unit after 'political pressure,'" Reuters, dated April 2, 2014, available at https://www.reuters.com/article/us-ukraine-crisis-banking/russias-binbank-to-take-over-ukrainian-bank-unit-after-political-pressure-idUSBREA310QX20140402.

11. Attached hereto as Exhibit 10 is a true and correct copy of an article by Denis Pinchuk and Vladimir Soldatkin entitled "UPDATE 3-Russia wins court approval to seize Bashneft from tycoon Yevtushenkov," Reuters, dated October 30, 2014, available at https://www.reuters.com/article/russia-bashneft-courts/update-3-russia-wins-court-approval-to-seize-bashneft-from-tycoon-yevtushenkov-idUSL5N0SP3FZ20141030.

12. Attached hereto as Exhibit 11 is a true and correct copy of a report issued by the U.S. Department of State's Bureau of Economic and Business Affairs entitled "Investment Climate Statements for 2016: Russia," available at https://www.state.gov/e/eb/rls/othr/ics/2016investmentclimatestatements/index.htm?year=2016&dlid=%20254409#wrapper.

13. Attached hereto as Exhibit 12 is a true and correct copy of an article by Pyotr Rudenko entitled "Who will remain: What hides behind the mass revocation of banking licenses," FORBES, dated March 17, 2016, available at

http://www.forbes.ru/finansy/rynki/315149-kto-ostanetsya-chto-skryvaetsya-za-massovymotzyvom-bankovskikh-litsenzii, and a certified translation thereof.

14. Attached hereto as Exhibit 13 is a true and correct copy of a document from the Resource Center of the United States Department of the Treasury entitled "Magnitsky-related Designations," dated December 29, 2014, available at https://www.treasury.gov/resource-center/sanctions/OFAC-Enforcement/Pages/20141229.aspx.

15. Attached hereto as Exhibit 14 is a true and correct copy of an article by David Satter entitled "Russia's Abuse of Interpol," Policy Paper No. 6 (2015) published by the Russia Studies Centre, dated July 2015, available at http://henryjacksonsociety.org/wp-content/uploads/2015/07/Russias-Abuse-of-Interpol.pdf.

16. Attached hereto as Exhibit 15 is a true and correct copy of a document consisting of the "Ballot For voting at an Extraordinary General Meeting of Shareholders of Probusinessbank JSCB OJSC," dated April 23, 2014, and a certified translation thereof.

17. Attached hereto as Exhibit 16 is a true and correct copy of a document consisting of Decision No. 012-33-1/3957 by the Central Bank of the Russian Federation, addressed to E. V. Panteleev, dated September 6, 2013, and executed by Mikhail Sukhov, Deputy Chairman of the Central Bank, and a certified translation thereof.

18. Attached hereto as Exhibit 17 is a true and correct copy of a document consisting of Decision No. 012-33-1/318 by the Central Bank of the Russian Federation, addressed to M.K. Al-Rubain, dated January 23, 2014, and executed by Mikhail Sukhov, Deputy Chairman of the Central Bank, and a certified translation thereof.

19. Attached hereto as Exhibit 18 is a true and correct copy of a Spark-Interfax report consisting of trademarks and intellectual property registered by Life Processing Company LLC

("PK Life"), accessed December 18, 2017, publicly available with a Spark-Interfax account and login at www.spark-interfax.ru, and a certified translation thereof.

20. Attached hereto as Exhibit 19 is a true and correct copy of the Spark-Interfax company profile for PK Life, accessed December 18, 2017, publicly available with a Spark-Interfax account and login at www.spark-interfax.ru, and a certified translation thereof.

21. Attached hereto as Exhibit 20 is a true and correct copy of a document containing information about Auction No. 0000718 and Lot No. 6, consisting of 58.889% of the authorized shares in PK Life, accessed December 20, 2017, publicly available at http://torgibankrot.ru/public/auctions/lots/view/15309/, and a certified translation thereof.

22. Attached hereto as Exhibit 21 is a true and correct copy of Agreement No. 1758, whereby OAO Sberbank Russia opened a non-revolving credit line for OOO Probusiness-Development, dated August 4, 2011, and a certified translation thereof.

23. Attached hereto as Exhibit 22 is a true and correct copy of Invoice No. 21/01, issued by NPO Olimproekt seeking advance payment for work performed for its customer, OOO Holmeks, dated September 9, 2015, and a certified translation thereof.

24. Attached hereto as Exhibit 23 is a true and correct copy of a letter from Sberbank Russia to the Moscow Region Administration for the Federal Service for State Registration, Cadaster and Cartography, received December 18, 2015, and a certified translation thereof.

25. Attached hereto as Exhibit 24 is a true and correct copy of Agency Agreement No. ZN714-06 between OOO Holmeks and OOO INKOM-Lend-Novoslobodskoye, dated August 20, 2013, and a certified translation thereof.

26. Attached hereto as Exhibit 25 is a true and correct copy of two publicly issued advertisements for the housing development named "Firsanovka Life," both displaying the link to Probusiness Development's website (prbd.ru), and a certified translation thereof.

27. Attached hereto as Exhibit 26 is a true and correct copy of Decision No. 03-02-298/0062, issued by the Federal Tax Service, to partially reimburse value added tax claimed for reimbursement by OOO Probusiness-Development, dated May 8, 2015, and a certified translation thereof.

28. Attached hereto as Exhibit 27 is a true and correct copy of Public Health and Disease Control Inspection Certificate No. 50.16.04.000.T.000234.08.09, issued to OOO Holmeks on August 28, 2009, and a certified translation thereof.

29. Attached hereto as Exhibit 28 is a true and correct copy of Agreement No. 2017, whereby OAO Sberbank Russia opened a non-revolving credit line for OOO Holmeks, dated January 10, 2013, and Additional Agreements Nos. 1-5, dated April 1, 2013 through September 30, 2014, and a certified translation thereof.

30. In May 2016, Mr. Leontiev filed a federal lawsuit, *Leontiev v. Varshavsky*, No. 16 CIV. 3595 (JSR) (S.D.N.Y.) (the "Federal Court Action"), seeking injunctive relief and a declaration that he did not owe Alexander Varshavsky, a purported creditor with close ties to the Kremlin, any funds allegedly loaned to entities affiliated with Probusinessbank. *See* Declaration of Mary Flynn (Dkt. 3), Ex. B. I am counsel of record for Mr. Leontiev in the Federal Court Action and the state court action styled *Avilon Automotive Group v. Leontiev*, and as such am fully familiar with the following facts related thereto. In August 2015, Mr. Varshavsky began harassing Mr. Leontiev, claiming that Mr. Leontiev personally owed him the funds at issue. To put an end to this harassment, Mr. Leontiev initiated the Federal Court Action against Mr.

Varshavsky. In response, Mr. Varshavsky asserted that he intended to prove that Mr. Leontiev had embezzled funds through an alleged web of companies located in off-shore jurisdictions and purportedly controlled by Mr. Leontiev. According to Mr. Varshavsky's allegations, this left the borrowers insolvent and unable to repay the loaned amounts.

31. On September 21, 2016, Judge Jed Rakoff ordered the entry of a Protective Order to ensure that confidential information produced in discovery would be disclosed only to a limited group of participants in the Federal Court Action. Attached hereto as Exhibit 29 is a true and correct copy of the Protective Order governing discovery in the Federal Court Action.

32. Judge Rakoff entered this Protective Order despite efforts by Mr. Varshavsky to obtain a broad exemption from the Protective Order's restrictions in the event that Mr. Varshavsky received a subpoena or other request from a governmental authority. Mr. Leontiev depended on the Protective Order to safeguard against the disclosure of his confidential information, particularly given the harassment that he faced then, and continues to face now, from the Russian government. As such, he objected to this exemption because of the ease with which Russian authorities could issue such a request and obtain confidential information about Mr. Leontiev, and Judge Rakoff ultimately rejected Mr. Varshavsky's request for an exemption.

33. After parties related to Mr. Varshavsky filed a separate action in New York state court, *Avilon Automotive Group v. Leontiev*, Index No. 656007/2016 (Sup. Ct. N.Y. County) (the "State Court Action"), Mr. Varshavsky asked Judge Rakoff to lift the Protective Order on the discovery from the Federal Court Action to allow its use in the State Court Action. Mr. Leontiev objected to this attempt to circumvent the Protective Order, which would have risked dissemination of Mr. Leontiev's confidential information, and Judge Rakoff ruled in Mr. Leontiev's favor during a telephonic hearing held on January 4, 2017.

34. After seven months, over 45,000 pages of documents produced, and the expenditure of millions of dollars on discovery in the Federal Court Action, Mr. Varshavsky chose to consent to the entry of summary judgment in favor of Mr. Leontiev, rather than risk a trial. On March 1, 2017, Judge Rakoff issued a judgment in Mr. Leontiev's favor and against Mr. Varshavsky in the Federal Court Action, finding that Mr. Leontiev owes nothing to Mr. Varshavsky in Mr. Varshavsky's personal capacity with respect to the alleged loans at issue in the action. Attached hereto as Exhibit 30 is a true and correct copy of the Final Judgment in the Federal Court Action, dated March 1, 2017.

35. After Mr. Leontiev prevailed in the Federal Court Action (*Leontiev v. Varshavsky*, 2017 WL 1737654, at *2 (S.D.N.Y. May 2, 2017)), but while the Protective Order from that action remained in force (as it does to the present) (*see* Ex. 29, ¶ 16), counsel for the State Court Action plaintiffs tried to circumvent the Protective Order by asking Justice Barry Ostrager to order production of the Federal Court Action discovery in the State Court Action. *See, e.g.*, Exhibit 31, a true and correct copy of a letter to Justice Ostrager, dated May 8, 2017, attaching the transcript of, and the errata sheet for, a hearing held in the State Court Action on April 11, 2017, at Tr. 8. Justice Ostrager also rejected this attempt: first, by staying discovery pending the motion to dismiss briefing (*id*. at Tr. 7-10), and then by dismissing the State Court Action altogether. Attached hereto as Exhibit 32 is a true and correct copy of the Order and Decision, dated October 5, 2017, dismissing the State Court Action.

36. Mr. Varshavsky and the State Court Action plaintiffs were represented by Debevoise & Plimpton LLP, the same law firm that represented Andrei Pavlov when he sought to avoid European Union sanctions for his role in the Magnitsky Affair. Attached hereto as Exhibit 33 is a true and correct copy of an article by Michael Weiss entitled "Former U.K.

Attorney General Defends the Russian Mob," The Daily Beast, dated April 1, 2016, available at https://www.thedailybeast.com/former-uk-attorney-general-defends-the-russian-mob.

37. In the event that the Court does not quash the DIA's subpoena directed to Mr. Leontiev, and considers reciprocal discovery from the DIA to be appropriate, attached hereto as Exhibit 34 is a proposed set of discovery requests directed to the DIA.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: January 16, 2018  /s/Marshall R. King
New York, New York  Marshall R. King