# EXHIBIT 21

[logo] SBERBANK OF RUSSIA
Founded 1841

Code 012140027/2

## AGREEMENT No. 1758
## on the Opening of a Non-Revolving Credit Line

Moscow                                                                      August 4, 2011

Sberbank of Russia Open Joint Stock Company, hereinafter referred to as "the Creditor", represented by Pyotr Sergeyevich Belov, Director of the Lending Department of the Moscow Bank of Sberbank of Russia OJSC, acting on the basis of the Charter of the Moscow Bank of Sberbank of Russia OJSC, and power of attorney No. 365 dated April 1, 2011, the party of the first part, and Probusiness-Development Limited Liability Company, hereinafter referred to as "the Borrower", represented by Dmitry Kimovich Kovalchuk, General Director, acting on the basis of the Charter, the party of the second part, hereinafter jointly referred to as "the Parties", have entered into this agreement, hereinafter referred to as "the Agreement", as to the following:

### Article 1. Subject of the Agreement

1.1. The Creditor shall open for the Borrower a non-revolving credit line to refinance expenses relating to the construction of low-rise residential townhouses as part of the Zelyonaya Roshcha residential complex, located at 1 ul. Sanatornaya, Ivanteyevka, Moscow Region (hereinafter, the Facility), including to fully repay outstanding loans under Credit Facility Agreements concluded with Solidarnost CB OJSC, No. KL-11-018, dated 2/21/2011, for 230,000,000 (two hundred thirty million) rubles (inclusive) and No. KR-11-038, dated 3/14/2011, for 90,000,000 (ninety million) rubles (inclusive), through December 20, 2013, with the following limit:

| Effective period of limit | Amount of limit |
|---|---|
| From August 12, 2011, through December 4, 2011 | 320,000,000 (Three hundred twenty million) rubles |

The Borrower shall repay the Creditor the credit received and shall pay interest for its use and other fees in the amounts, according to the schedule and under the terms and conditions of the Agreement.

### Article 2. Representations and Warranties

2.1. The Borrower is a legal entity that was duly established and operates legally under the laws of the Russian Federation.

2.2. The Borrower affirms that all the consents required to enter into the Agreement and other contracts and agreements provided for by the Agreement have been obtained and have taken effect or, if they have not been obtained, they will be obtained and/or will take effect in the prescribed manner before the relevant contracts and agreements are entered into, pursuant to the current laws of the Russian Federation.

2.3. The Borrower represents that the situations and events enumerated in clause 7.1.7 herein have not occurred as of the date of the Agreement and shall take all actions to ensure that they do not occur during the term of the Agreement.

2.4. All the factual information provided by the Borrower to the Creditor is true and correct in all material aspects as of the date that it was provided. As of the execution date of the Agreement no information was concealed that could, as a result, render the information provided untrue or misleading to the Creditor in any material aspects.

[signature] **Creditor**                                                **Borrower**   1

*Non-Revolving Credit Line Agreement No. 1758, dated August 4, 2011*                [signature]

2.5. No judicial, arbitrazh or administrative proceedings have been instituted against the Borrower or any of the Group companies listed in Addendum 1 in any court, arbitrazh authority or body such that they could make it impossible for the Borrower to properly perform its obligations hereunder.

2.6. The Borrower and each of the Group companies listed in Addendum 1 have implemented and complied with, and currently implement and comply in all material aspects with the requirements of laws such that failure to implement or comply with them could make it impossible for the Borrower to properly perform its obligations hereunder.

2.7. The Borrower has a valid and legal title or legal right to use and operate the assets required to conduct its activities.

2.8. To the Borrower's knowledge, there are no events or circumstances that could affect its performance of obligations under any other contracts or financial instruments or that could make it impossible for the Borrower to properly perform its obligations hereunder.

2.9. The Borrower's entry into, and performance of, the Agreement do not contravene its constitutional documents.

### Article 3. Procedure for Provision of the Facility

3.1. The issuance of any amount of the credit shall be effected within the bounds of the available balance of the limit, as determined according to the following formula:

$$ABL = Lim - (LI + RI), \text{ where}$$

ABL is the available balance of the limit;
Lim is the limit established in clause 1.1 herein;
LB is the actual loan indebtedness on the credit as of the current date;
RI is the amount of the credit previously repaid.

The repayment of any amount of the credit shall not increase the available balance of the limit of the credit line.

3.2. The credit shall be issued by transferring the amounts of credit to the Borrower's transaction account specified in Addendum 2 on the basis of the Borrower's instructions set out in accordance with Addendum 3 hereto.

The amounts of the credit shall be transferred if there is no overdue indebtedness or unpaid penalties under the Agreement or under any other credit facility agreements (including agreements on the opening of a credit line) and/or suretyship agreements and/or agreements on granting bank guarantees/counter guarantees/suretyships that have been entered into (may be entered into) by and between the Creditor and the Borrower.

3.3 The credit shall be issued:

3.3.1. After the security for the credit as specified in clause 9.1.1 herein has been properly formalized, including the registration of the pledge with the authorized state bodies per clause 9.1.1 herein, subject to the signing of an agreement specifying extrajudicial procedures for seizure of said collateral.

3.3.2. After the entry into, and submission to the Creditor, of the agreement(s) on the Creditor's right to directly debit funds from the payer to pay off overdue indebtedness from the account(s) of the Borrower, as specified in Addendum 2.

3.3.3. After the transfer of the fee for the opening of the credit line.

3.3.4. After the conditions specified in clauses 10.1 and 10.2 herein concerning the property pledged under clause 9.1.1 are met, and an agreement on how the insurance benefit will be used is submitted to the Creditor.

3.3.5. To cover the Borrower's outstanding loan from Solidarnost CB OJSC, after the Borrower provides the Creditor a copy of a letter addressed to Solidarnost CB OJSC and marked as received by Solidarnost CB OJSC, stating the intention to repay the credit facility from Solidarnost CB OJSC, as well as a statement from the Borrower's loan account or a letter from Solidarnost CB OJSC confirming the outstanding balance on the

Borrower's loan from Solidarnost CB OJSC, as of the date preceding the date when credit is extended under this Agreement.

3.3.6. To cover the Borrower's outstanding loan from Solidarnost CB OJSC, after the Creditor is provided with documents confirming the outstanding loan balance under Credit Facility Agreements No. KL-11-018, dated 2/21/2011, not to exceed 230,000,000 (two hundred thirty million) rubles, and No. KR-11-038, dated 3/14/2011, not to exceed 90,000,000 (ninety million) rubles.

3.3.7. After the Creditor receives documents from the Borrower that are satisfactory to the Creditor in their format and contents and indicate that the Borrower's other loans are subordinate to the credit extended under this Agreement, on the following terms:

- the Borrower's obligations to fully repay the credit extended under this Agreement must be performed before obligations to repay loans, credit facilities, and other types of borrowing from third parties on condition of repayment (not counting obligations to pay interest or dividends on securities).

Loans are to be restructured, with the Borrower signing amendments to existing loan agreements (or essentially analogous agreements) with third parties that have provided loan funds to the Borrower, of a form and content satisfactory to the Creditor. The amendments shall include, but not be limited to, stipulations that the Borrower is to repay loans only after performing its obligations to the Creditor under the Agreement, that loans may not be prematurely called in, and that the Borrower's failure to pay interest on loans does not constitute a substantive change in circumstances as interpreted by Article 451 of the Russian Federation Civil Code.

Loan agreements (or essentially analogous agreements) that the Borrower has entered into with parties other than the Creditor must also stipulate that agreement terms specified in this clause, including interest rates on loan agreements, may not be changed without the Creditor's written consent.

Furthermore, while the Agreement is in force, the Borrower shall not revise the aforementioned amendments and loan agreements without the Creditor's prior written approval.

While the Agreement is in force, no later than the 10th (tenth) day of the first month of each calendar quarter the Borrower shall provide the Creditor an informational letter, in a format that is satisfactory to the Creditor, confirming that no revisions have been made to the aforementioned amendments and loan agreements while the Agreement has been in force, except those approved by the Creditor.

3.4. The credit shall be issued through December 4, 2011 (hereinafter, the Availability Period Expiration Date). If the Borrower has not made full use of the credit line by the Availability Period Expiration Date, the available balance of the limit of the credit line shall be closed.

3.5. The issuance of the credit shall be recorded in separate loan accounts that are to be opened by the Creditor under the Agreement, depending on the period from the issuance date (not including said date) through the date of full repayment of the credit specified in clause 1.1 herein (inclusive).

## Article 4. Interest and Fees

4.1. The Borrower shall pay the Creditor interest for use of the credit at a rate of 9.3 (nine and three-tenths) percent per annum.

4.2. The interest shall accrue on the amount of the actual loan indebtedness on the credit beginning on the date following the date on which the indebtedness forms in the loan account(s) (inclusive) through the date of full repayment of the credit (inclusive).

Interest shall be paid quarterly, on the 20th day of the third month of each calendar quarter, and on the date of full repayment of the credit specified in clause 1.1 herein, or on the date of full repayment of the credit effected before the date specified in clause 1.1 herein, provided that the credit line limit has been drawn down in full and/or after the Availability Period Expiration Date, in the amount of the interest accrued as of the aforementioned date(s) (inclusive).

In the event of late repayment of the credit (delinquency) interest shall not accrue on the amount of the credit not repaid on time, beginning on the date following the date of repayment of the relevant amount of the credit, as specified in clause 6.1 herein (inclusive).

4.3. The Borrower shall be charged a fee for the opening of the credit line in the amount of 0.7 (seven tenths) percent of the credit line limit specified in clause 1.1 herein, which is 2,240,000 (two million two hundred forty thousand) rubles.

The fee for the opening of the credit line shall be paid by the Borrower to the Creditor in a lump sum before the first issuance of the credit, but no later than September 4, 2011.

4.4. The Borrower shall be charged a fee for use of the credit line limit in the amount of 2 (Two) percent per annum of the available balance of the limit, as calculated in accordance with clause 3.1 herein.

The fee shall be charged for the period from the effective date of the limit specified in clause 1.1 herein (not including that date) through the Availability Period Expiration Date or through the date of full repayment of the credit effected before the Availability Period Expiration Date, provided that the credit line limit has been drawn down in full (inclusive).

The fee for use of the credit line limit shall be paid by the Borrower to the Creditor on the dates set by the terms and conditions of the Agreement for interest payments, in the amount of the fee charged as of the aforementioned dates (inclusive).

4.5. The Borrower shall pay the Creditor a debt servicing fee in the amount of 0.1 (one tenth) percent per annum. The debt servicing fee shall accrue on the basis of the actual outstanding loan balance, subject to the Agreement terms for interest accrual.

The Borrower shall pay the Creditor the debt servicing fee on the interest payment dates specified by the Agreement, in the amount that has accrued as of those dates (inclusive).

4.6. If the credit is repaid (in full or in part) before the dates set by clause 6.1 herein without prior written notice or with notice fewer than 30 (Thirty) calendar days before the repayment date (inclusive, with the date of receipt of the notice by the Creditor not included in the calculation of the number of days), the Borrower shall pay the Creditor a fee for early repayment of the credit.

The fee shall be paid in the amount of 2 (Two) percent per annum of the amount of the credit repaid early, for the period from the date of the actual repayment of the debt (not including such date), and if repayment is made pursuant to clause 5.12 herein, then from the date of receipt by the Creditor of the Borrower's written notification (not including such date), through the date closest to it that is specified in clause 6.1 herein (inclusive) and for which there is an unrepaid loan indebtedness on the credit in the relevant amount.

The fee for early repayment of the credit shall be paid by the Borrower to the Creditor simultaneously with the payment for early repayment of the loan indebtedness on the credit.

A fee for early repayment of the credit shall not be charged:
- if funds are received toward repayment of the credit in accordance with clauses 8.1.1, 8.2.1 or 8.2.8 herein;
- if funds are received toward repayment of the credit under the terms of an agreement entered into between the Creditor, an insurance company, and Pledgor for the payment of an insurance claim on the pledged property, only for the repayment of the debt under the Agreement secured by a pledge of the insured property;
- in the event early repayment of the amounts of the credit is effected by using funds received from the sale of pledged real estate to third-party businesses and/or individuals.

## Article 5. Terms and Conditions of Settlements and Payments

5.1. The repayment of the credit, interest payments and other remittances under the Agreement shall be effected by payment orders from the accounts of the Borrower or third parties with the Creditor or with other banks.

The payment orders shall specify the amounts of the principal, interest, each of the payments enumerated in Article 4 herein (hereinafter, the Fees) and penalties separately for each of the specified types of payments.

5.2. The issuance date of the credit shall be the date on which loan indebtedness forms in the loan account(s).

5.3. The date of performance of obligations to remit payments under the Agreement shall be the date on which funds are debited from the accounts of the Borrower or third parties with the Creditor to repay obligations under the Agreement or the date on which funds are received toward repayment of obligations under the Agreement in the Creditor's correspondent account if the repayment is made from accounts with other banks.

5.4. If the date of an interest payment or remittance of other payments under the Agreement falls on a nonbusiness day, the obligations must be performed no later than the first business day following the nonbusiness day.

5.5. For the computation of interest, Fees and penalties, the actual number of calendar days in a month or year is used.

Charges of interest and penalties for late repayment of credit shall be effected separately for each loan account opened by the Creditor under the Agreement. The sum of the amounts received shall constitute the total amount of obligations for the payment of interest and penalties for late repayment of credit.

5.6. Funds received toward repayment of the indebtedness under the Agreement, including funds directly debited from the Borrower's accounts, as well as funds transferred by third parties, shall be allocated first, regardless of the purpose of the payment (subject to the special provisions set out in clauses 5.7, 5.10, 5.11, 5.12 and 5.13 herein) specified in the payment order, for defrayal of the Creditor's costs to receive performance, and thereafter in the following order of priority:

1)    for the posting of an overdue payment for the opening of the credit line;
2)    for the posting of an overdue payment for use of the credit line limit;
3)    for the posting of overdue debt servicing fees;
4)    for payment of overdue interest;
5)    for the posting of a regular payment due for the opening of the credit line;
6)    for the posting of a regular payment due for use of the credit line limit;
7)    for the posting of a regular payment due for the servicing of the credit;
8)    for payment of regular interest due;
9)    for repayment of overdue loan indebtedness on the credit;
10)   for the posting of a payment for early repayment of the credit;
11)   for repayment of regular loan indebtedness due on the credit;
12)   for payment of penalties for nonperformance of obligations under the Agreement according to the prescribed schedule (except penalties pursuant to clauses 11.3, 11.4, and 11.5 herein);
13)   for payment of a penalty pursuant to 11.3, 11.4, or 11.5 herein.

In addition, the loan indebtedness on the credit shall be repaid in chronological order, beginning with the loan account that was opened first.

Obligations hereunder (for the repayment of the loan indebtedness on the credit, for payment of interest and remittance of the Fees) shall become due on the date when they are scheduled to be performed in accordance with the terms and conditions prescribed by the Agreement (hereinafter, the Due Date).

Overdue obligations under the Agreement mean obligations under the Agreement that were not performed on the Due Date.

5.7. Funds that have been received in accordance with payment orders to pay penalties under the Agreement, if such purpose of the payment is specified as the sole purpose in the payment order, shall be allocated by the Creditor for payment of penalties in accordance with the order of priority of payment of penalties set out in clause 5.6 herein.

Any overpayment received shall be allocated by the Creditor to repayment of obligations in accordance with the order of priority of payments set out in clause 5.6 herein.

5.8. If the Borrower uses credit funds to finance expenditures in a different currency than the credit currency, the conversion transactions with the credit funds shall be executed with the Creditor at the exchange rate and on the terms of the Creditor as of the date the transactions are executed.

5.9. Obligations to repay loan indebtedness on the credit may be performed before the Due Date in accordance with clause 6.2 herein.

Payments received toward repayment of the loan indebtedness on the credit before the dates set by clause 6.1 herein shall be allocated by the Creditor for repayment of the aforementioned obligations toward the next scheduled payments for repayment of the credit specified in clause 6.1 herein, subject to the order of priority of payments set out in clause 5.6 herein. In this case the obligations to repay the loan indebtedness, for purposes of distribution in accordance with the order of priority of payments set out in clause 5.6 herein, shall be deemed to be due on the date the funds are received in the amount of the funds received, but not more than the amount of funds remaining after distribution for other payments specified in the order of priority of payments prior to the payment to repay the regular loan indebtedness due on the credit, and not more than the amount of the principal specified in the payment order (if specified).

Any overpayment received pursuant to this clause of the Agreement from the Borrower shall be returned by the Creditor to the Borrower's account with the Creditor no later than the first business day following the date when the funds were received.

If it is impossible to identify the purpose of a payment (the obligation(s) being performed is(are) not specified) specified in a payment order, the funds received shall be allocated by the Creditor toward repayment of the loan indebtedness on the credit pursuant to this clause of the Agreement.

5.10. Obligations in respect of interest and/or the Fees may be performed before the Due Dates in an amount not more than what has accrued as of the date of receipt of the funds by the Creditor (inclusive). In this case all obligations in respect of interest and the Fees shall become due on the date the funds are received in the amount of the funds received, but not more than what has accrued.

In addition, the funds received from the Borrower toward repayment of the above obligations, regardless of the purpose of the payment specified in the payment order, shall be allocated by the Creditor for payment of obligations in respect of interest and the Fees in accordance with the order of priority of payments set out in clause 5.6 herein, except the payment of penalties.

5.11. If 10 (Ten) or fewer business days remain until the Due Date for payment of interest and/or the Fees (hereinafter, the Early Payment Period), the amount overpaid by the Borrower pursuant to clause 5.10 herein (hereinafter, Early Payments) shall be allocated by the Creditor for repayment of the Borrower's aforementioned obligations on the next scheduled Due Dates in accordance with the order of priority of payments set out in clause 5.6 herein. If obligations to repay the loan indebtedness under the Agreement fall due during the Early Payment Period and a payment is not received from the Borrower toward repayment of the aforementioned obligations on the Due Date set by the Agreement, the Early Payments shall be allocated for payment of the aforementioned obligations.

If more than 10 (Ten) business days remain until the Due Date for payment of interest and/or the Fees, the Creditor shall allocate the Early Payments for payment of penalties in accordance with the order of priority of payment of penalties set out in clause 5.6 herein. In this case the Early Payments in the amount of penalties paid shall be returned by the Creditor to the Borrower's account with the Creditor no later than the first business day following the date when the funds were received.

5.12. During the Early Payment Period the Borrower shall have the right, within 3 (Three) business days following the date on which funds are received by the Creditor, but no later than 2 (Two) business days (inclusive) before the next scheduled Due Date, to submit a written request to the Creditor for the return or allocation toward repayment of the loan indebtedness on the credit of the Early Payments received by the Creditor pursuant to clause 5.11 herein.

The Creditor shall return the Early Payments after distribution in accordance with the order of priority of payments set out in clause 5.6 herein or shall allocate them for repayment of the loan indebtedness on the credit pursuant to clause 6.2 herein, and subject to clause 5.9 herein, no later than the first business day following the date of receipt of the Borrower's written request.

The return of Early Payments shall be effected by the Creditor to the Borrower's account with the Creditor.

If Early Payments are allocated for repayment of the loan indebtedness on the credit, the date of repayment of the loan indebtedness on the credit shall be the date when the Creditor allocates the amount paid early for repayment of the loan indebtedness on the credit.

5.13. If, on the Due Date, the amount of the payment exceeds the amount payable according to the terms and conditions herein, the overpaid amount received from the Borrower, after distribution in accordance with the order of priority of payments set out in clause 5.6 herein, shall be returned by the Creditor to the Borrower's account with the Creditor no later than the first business day following the date of the relevant payment.

5.14. If payments under the Agreement are remitted in a different currency than the payment currency specified herein, the Creditor shall have the right to convert on its own the funds received to the payment currency pursuant to the Agreement at the exchange rate and on the terms of the Creditor in effect on the date when the conversion transaction is executed, after which they shall be allocated for the repayment of the indebtedness under the Agreement.

### Article 6. Procedure for Repayment of the Credit

6.1. Date of full repayment of the credit issued: December 20, 2013.

The credit shall be repaid according to the following schedule:

| Payment Date | Payment amount as a percentage of the amount of loan indebtedness as of the Availability Period Expiration Date |
|---|---|
| December 20, 2011 | 12.23% (twelve and twenty-three hundredths per cent) |
| March 20, 2012 | 11.12% (eleven and twelve hundredths per cent) |
| June 20, 2012 | 8.60% (eight and sixty hundredths per cent) |
| September 20, 2012 | 8.61% (eight and sixty-one hundredths per cent) |
| December 20, 2012 | 11.11% (eleven and eleven hundredths per cent) |
| March 20, 2013 | 9.80% (nine and eighty hundredths per cent) |
| June 20, 2013 | 11.85% (eleven and eighty-five hundredths per cent) |
| September 20, 2013 | 14.78% (fourteen and seventy-eight hundredths per cent) |
| December 20, 2013 | 11.90% (eleven and ninety hundredths per cent) |

In the event the Borrower repays the credit after the Availability Period Expiration Date but before the dates specified this clause, pursuant to clause 6.2 herein, the credit repayment amounts according to the above schedule shall be reduced by the credit amounts repaid before the dates specified this clause, beginning with the next payment on the schedule after the actual repayment. Each subsequent payment on the schedule shall be reduced by the credit amounts repaid before the dates specified in this clause that are in excess of the amounts of the previous payments on the schedule.

If the date of repayment of the relevant credit amount falls on a nonbusiness day, the period of use of the relevant credit amount shall be extended through the first business day (including that day) following the nonbusiness day on which the date of repayment of the relevant credit amount falls.

6.2. The Borrower shall have the right to effect full or partial repayment of the amounts of credit issued before the dates specified in clause 6.1 herein, with payment of the interest and Fees prescribed by the terms and conditions herein and of penalties, except penalties under clauses 11.3, 11.4, and 11.5 herein.

The Borrower shall send the Creditor a notice of its intention to repay the credit before the dates set by clause 6.1 herein according to the procedure prescribed herein, specifying the amount and the payment date, at least 30 (Thirty) calendar days before the date of the repayment of the credit (or of a portion thereof) (inclusive). The date on which the Creditor received the notice shall not be included in the calculation of the number of days.

In addition, the loan indebtedness on the credit shall be repaid in chronological order, beginning with the indebtedness that is to be repaid on the next scheduled date specified in clause 6.1 herein after the actual repayment date.

If the credit is repaid before the dates set by clause 6.1 herein without prior notification of the Creditor or with notification fewer than 30 (Thirty) calendar days before the date of the repayment of the credit (or of a portion thereof), the Borrower shall pay the Creditor a fee for early credit repayment according to the procedure prescribed by Article 4 herein.

## Article 7. Creditor's Duties and Rights

7.1. The Creditor shall have the right:

7.1.1. Unilaterally and at its discretion, to raise the interest rate under the Agreement, including but not exclusively as a result of the adoption by the Bank of Russia of decisions to raise the discount rate (refinancing rate of the Bank of Russia), and shall notify the Borrower thereof without recording such change in an amendment to the Agreement. If the Creditor raises the interest rate unilaterally, said change shall enter into force 30 (Thirty) calendar days from the date the Creditor sends the notice, unless the notice specifies a later date for the change to enter into force.

The Borrower shall be notified of the above changes to the Agreement according to the procedure prescribed herein.

7.1.2. Unilaterally and at its discretion, to lower the interest rate under the Agreement, including but not exclusively as a result of the adoption by the Bank of Russia of decisions to lower the discount rate (refinancing rate of the Bank of Russia), and shall notify the Borrower thereof without recording such change in an amendment to the Agreement. If the Creditor lowers the interest rate unilaterally, said change shall enter into force 30 (Thirty) calendar days from the date the Creditor sends the notice, unless the notice specifies a later date for the change to enter into force.

The Borrower shall be notified of the above changes to the Agreement according to the procedure prescribed herein.

7.1.3. Unilaterally and at its discretion, to reduce the amount of a penalty and/or set a period of time during which the penalty will not be collected, and shall notify the Borrower thereof without recording such change in an amendment to the Agreement.

The reduction in the amount of a penalty and/or the beginning of the period of time during which the penalty will not be collected shall enter into force 30 (Thirty) calendar days from the date the Creditor sends the notice, unless the notice specifies a later date for the change to enter into force.

The Borrower shall be notified of the above changes to the Agreement according to the procedure prescribed herein.

7.1.4. To request from the Borrower information and documents supporting the targeted use of the credit, based on which the credit funds shall be transferred from the Borrower's transaction account in accordance with the designated purpose of the credit.

7.1.5. In the event of overdue loan indebtedness on the credit and/or overdue indebtedness on interest and/or on other payments specified herein and/or penalties under the Agreement, to directly debit funds from the Borrower's accounts with the Creditor and with other banks as the funds come in, in the currency of the obligation, toward payment of the overdue arrears and penalties.

The Creditor shall inform the Borrower in writing of the fact that funds have been directly debited from its accounts toward payment of overdue arrears and penalties according to the procedure prescribed herein.

7.1.6. If there are insufficient funds in the Borrower's account with the Creditor in the currency of the obligation to pay overdue arrears under the Agreement, to debit funds from the Borrower's accounts with the Creditor and with other banks as the funds come in, in a different currency than the currency of the obligation, then to convert the debited funds at the exchange rate and on the terms set by the Creditor and other banks for the execution of conversion transactions as of the transaction date, and to credit the funds obtained as a result of the conversion to the Borrower's account with the Creditor and with other banks in the currency of the obligation.

The Creditor shall inform the Borrower in writing of the fact that funds have been directly debited from its accounts and said funds have been converted according to the procedure prescribed herein.

7.1.7. To discontinue the issuance of credit and/or to demand from the Borrower early repayment of the entire amount of the credit and payment of the interest due for use of the credit, penalties and other charges specified by the terms and conditions herein, and to seize the pledged property in the following cases:

a) nonperformance or improper performance by Borrower or the Group companies listed in Addendum 1 of their payment obligations under the Agreement or any other contract (including, but not limited to, a credit facility agreement, an agreement on the opening of a revolving/nonrevolving credit line, an agreement on the granting of a bank guarantee, a suretyship agreement, and other types of contracts) that has been entered into (or may be entered into during the effective period of the Agreement) by and between the Borrower or the Group companies listed in Addendum 1 and the Creditor, or other obligations (or fulfillment of other terms and conditions) under the aforementioned contracts and agreements, whose nonperformance or improper performance (or fulfillment) is the basis for making a demand for early repayment of credit amounts/the Creditor's refusal to perform its duty of granting credit/a guarantee in accordance with the terms and conditions of the aforementioned contracts and agreements, as well as payment obligations to the Creditor and/or third parties to pay promissory notes, redeem bonds, pay out coupon income or make a mandatory/voluntary offer based on the Federal Law "On Joint Stock Companies" that have been established (or may be established during the effective period of the Agreement);

b) nonperformance or improper performance by the Borrower or the Group companies listed in Addendum 1 of their obligations under credit facility agreements (including agreements on the opening of a nonrevolving/revolving credit line) that have been entered into (or may be entered into during the effective period of the Agreement) between the Borrower or the Group companies listed in Addendum 1 and any other creditor, such that it entailed a demand for the Borrower to make early repayment of credit amounts;

c) depreciation of the security, loss of the security or a worsening of its conditions, as well as the threat of loss of the security or threat of a worsening of its conditions under circumstances for which the Creditor is not responsible;

d) if the representations, documents, certifications or information, including information specified in Article 2 herein, that have been provided by the Borrower to Creditor, including regarding the Group companies listed in Addendum 1, are untrue, incomplete, or unverified;

e) use of the credit for other than its designated purpose or return to the Borrower of funds transferred by the Borrower using the credit pursuant to the designated purpose of the credit;

f) filing of an application with an arbitrazh court to declare the Borrower and/or the pledgor insolvent (bankrupt) as prescribed by current law, subject to the provisions of clause 8.2.9 herein;

g) if claims are filed against the Borrower for the payment or a monetary sum or for reclamation of property for an aggregate amount of more than 50,000,000 (Fifty million) rubles. The amount of a claim filed in a foreign currency shall be recalculated in rubles at the Bank of Russia exchange rate as of the date the claim is filed;

h) decisions are adopted on reorganization, liquidation or a decrease in the shared capital of the Borrower and/or the pledgor, subject to the provisions of clause 8.2.9 herein;

i) the Borrower and/or Pledgor is declared insolvent (bankrupt) as prescribed by current law;

j) the submission by the Borrower to the Creditor of reports and/or information that are untrue and/or different from reports and/or information submitted by the Borrower to state authorities, the Bank of Russia and/or published by the Borrower and/or in the possession of credit bureaus;

k) nonperformance by the Borrower of the obligations specified in clauses 8.2.8 and/or 8.2.9 and/or 8.2.11 and/or 8.2.13 and/or 8.2.14 and/or 8.2.15 and/or 8.2.16, and/or 10.1, and/or 10.2 herein;

l) nonperformance by the Borrower of the obligation to secure the participatory interest(s) in share capital held as collateral by the Creditor specified in clause 9.1.3 herein;

m) a breach by the Borrower of the provisions of clauses 8.2.4 and/or 8.2.5 and/or 8.2.6 and/or 8.2.7 herein;

n) the withdrawal (a decrease in the interest) of any member of the Borrower from the company, except cases in which members sell their interest to third parties or to other members;

o) if the amount of any funds borrowed by the Borrower (including the receipt of credit facilities, the issuance of its own promissory notes and other repayable forms of fund-raising, excluding obligations for the payment of interest and the payout of income on securities) from third parties and/or the granting of any suretyship/guarantee (including in the form of avalization of promissory notes and endorsement of notes, excluding "without recourse") will increase, beginning on the execution date of the Agreement, the total amount of borrowed funds granted (including in the form of avalization of promissory notes and endorsement of notes, excluding "without recourse") to more than 500,000,000 (five hundred million) rubles.

The amount of any borrowed funds and/or suretyships/guarantees granted (including in the form of avalization of promissory notes and endorsement of notes, excluding "without recourse") and/or guarantees other banks have issued to third parties on the Borrower's behalf in foreign currency shall be recalculated in rubles at the Bank of Russia exchange rate as of the last day of the last calendar quarter.

p) a worsening of the financial condition of the Borrower that in the Creditor's assessment poses a threat to the timely performance of obligations under the Agreement;

q) a reduction in the ownership stake in the Borrower's share capital owned by Probusinessbank Joint Stock Commercial Bank (Open Joint-Stock Company) located at 3 ul. Pudovkina, Moscow, 119285, PSRN [Primary State Registration No.] 1027700508978) to below 20%.

The above breaches of the terms and conditions of the Agreement and changes in circumstances are material for the Creditor.

The Creditor shall notify the Borrower of its demands according to the procedure prescribed by the Agreement.

7.1.8. To unilaterally close the available balance of the credit line limit under the Agreement if the issuance of credit is discontinued for the reasons specified in clause 7.1.7 herein, in which case the Creditor shall notify the Borrower as prescribed herein.

7.1.9. To refuse to perform its duty of issuing the credit in full or in part if circumstances occur that clearly indicate that the debt amount will not be repaid by the Borrower according to the schedule set herein.

7.1.10. To review, in a form convenient to it, the accuracy of the reporting and planning indicators submitted by the Borrower regarding its business and financial activities and to request other details having a bearing on the use of credit funds and on the performance of obligations under the Agreement.

7.1.11. To request that the Borrower, during the effective period of the Agreement, enter into (or arrange for entry into) an agreement (agreements) on the Creditor's right to directly debit the payer's funds in order to pay overdue arrears from the accounts of the Borrower at other banks, in the form and according to the schedule set by the Creditor.

The Borrower shall be notified of such request in the manner prescribed herein.

7.2. The Creditor shall assume the following obligations:

7.2.1. If the conditions specified in Article 3 herein are fulfilled and if, at the time the credit is granted, none of the conditions prevails that entitle the Creditor to discontinue the issuance of credit and to demand early repayment of the credit, the Creditor shall execute the transfer of credit amounts within the bounds of the available balance of the credit line limit to the Borrower's transaction account on the basis of the Borrower's instructions formulated in accordance with the terms and conditions herein.

### Article 8. Borrower's Duties and Rights

8.1. The Borrower shall have the right:

8.1.1. If the Creditor raises the interest rate pursuant to clause 7.1.1 herein, to repay a portion or the entire amount of the credit with the payment of the interest, Fees and penalties accrued as of the repayment date, except penalties under clauses 11.3, 11.4, and 11.5 herein, on the previous terms and conditions, within 30 (Thirty) calendar days from the date the Creditor sends the Borrower a written notice amending the terms and conditions of the granting of credit.

The Borrower shall not pay a fee for early repayment of the credit.

8.2. The Borrower shall assume the following obligations:

8.2.1. Within 5 (Five) business days from the receipt of the notice or communication containing the Creditor's demand for early repayment of the credit pursuant to clause 7.1.7 herein, to repay the loan indebtedness on the credit and to pay the interest due for the use of the credit, the Fees and the penalties that have accrued as of the repayment date.

8.2.2. To utilize the credit strictly for its designated purpose pursuant to Article 1 herein.

8.2.3. To provide the Creditor with properly completed payment orders and addenda in accordance with the designated purpose of the credit (clause 1.1 herein) no later than the scheduled date of use of the relevant credit amount.

8.2.4. To provide the Creditor, on a quarterly basis, no later than 5 (Five) business days from the last day of the period prescribed by Russian Federation law for the submission of accounting statements to the tax authorities with:

- an accounting statement in its entirety according to the forms prescribed by the Russian Finance Ministry, with a notation about the method by which the document was sent to the subdivision of the Russian Federal Tax Service, authenticated by the chief executive and the seal of the Borrower, with the attachment of a memorandum (to the annual statement) and an audit opinion (or its executive summary) (when an audit of the accounting statement is mandatory under Russian Federation law);
- a breakdown of accounts payable and receivable, listing the names of creditors, debtors, the amounts owed and the dates when the indebtedness originated, and specifying the status of each item (overdue/current);
- a breakdown of short- and long-term financial investments, listing the types, investment amounts and names of organizations and enterprises;
- a breakdown of indebtedness by long- and short-term credit facilities and loans (including promissory notes and bonds), listing the creditors, amounts owed, the credit term, the interest rate (coupon yield), schedule for repayment and interest payments, and overdue interest amounts;
- a breakdown of security interests received (listing from whom and for whose benefit they were received) and security interests issued (listing for whom and for whose benefit they were issued, and the periods of performance of the obligations);

- fact sheets on transactions and balances in transaction accounts in Russian Federation currency and foreign currency and the existence of any claims against the accounts;
- information as of the last reporting date on subsidiary (more than 50% in share capital) and dependent (more than 20% in share capital) entities, listing participatory interests in the share capital of the subsidiaries and dependent entities in percent;
- a fact sheet from a subdivision of the Russian Federal Tax Service on the status of tax payments or a reconciliation statement of tax payments (if overdue arrears are owed to government budgets of any level, a taxpayer's fact sheet listing the dates, amounts and reasons for the debt);
- copies of revisions and additions to constitutional documents (registered as prescribed by law) and copies of certificates on entries in the USRLE on the state registration of amendments to constitutional documents, either notarized or authenticated by the registering authority, if the amendments to the constitutional documents were made during the last calendar quarter;
- information on the members of the collective and executive administrative bodies (Board of Directors) and on the individual performing the functions of the single-member executive body (specifying the job title, and in the case of additional jobs, other places of work), if during the last calendar quarter changes have occurred in the membership of the executive and/or collective administrative bodies or a new person was appointed to perform the functions of the single-member executive body;
- information on the makeup of the Management Company's collective administrative and executive bodies (Supervisory Board / Board of Directors / Management Board) and on the person fulfilling the role of the chief executive (including job title and other places of employment, if any), if in the most recent calendar quarter an agreement was entered into with a Management Company, there were changes to the Management Company's executive and/or collective administrative bodies, or a new person was appointed as the Management Company's chief executive;
- information on the roster of members who own 5.0 or more percent of the participatory interests in share capital if during the last calendar quarter changes have occurred in the roster of members who own 5.0 or more percent of the participatory interests in share capital;
- information on changes in the total proportion of ownership by Probusiness Bank Joint Stock Commercial Bank (Open Joint Stock Company; 3 ul. Pudovkina, Moscow, 119285, PSRN 1027700508978) of the Borrower's share capital, if such changes took place occurred the last calendar quarter.

In addition, the Borrower shall, at the Creditor's request, provide other reporting and financial documents within 10 (Ten) business days from the date of receipt of such request.

8.2.5. In the event of liquidation, reorganization or a reduction of share capital, or a change in the roster of members, to notify the Creditor within 3 (Three) business days from the date the relevant decision is adopted by the authorized collective administrative body. The Creditor shall be notified in the manner prescribed herein.

8.2.6. To approve with the Creditor in writing any new borrowings from third parties (including the receipt of credit facilities, the issuance of its own promissory notes and other repayable forms of fund-raising) and/or the provision to third parties of any suretyship/guarantee (including in the form of avalization of promissory notes and endorsement of notes, excluding "without recourse"), including guarantees other banks have issued to third parties on the Borrower's behalf, as well as for extending or refinancing existing borrowings, if the total liability would exceed the Borrower's total obligations as of the execution date of the Agreement by 500,000,000 (five hundred million) rubles.

To provide the Creditor with properly certified copies of the relevant contracts (addenda) and, at the Creditor's request, properly certified additional documents needed by the Creditor to verify compliance with the provision specified in sub-clause 7.1.7(p) herein.

The aforementioned transactions may only be concluded after receiving the Creditor's written approval.

8.2.7. Not to make changes to its own equity capital without written approval from the Creditor, until complete fulfillment of the obligations to the Creditor under the Agreement.

8.2.8. To provide additional collateral or to repay the unsecured amount of the credit within 10 (ten) business days of the date of receipt of the relevant notification from the Creditor if, during the effective period of the Agreement, the collateral value of the pledged property specified in Mortgage Agreement No. 1758/1, dated August 4, 2011, and sub-clause 9.1.2 herein, as a result of the loss of the collateral item (collateral items) (due to destruction, shortage, retirement, damage, theft or other reasons beyond the Creditor's control), has fallen below that of the obligations under the Agreement (the loan indebtedness on the credit and the interest accrued for 6 months of use of the credit or before the date of full repayment of the credit specified in clause 1.1 herein if less than 6 months remains until said date. The collateral value of a collateral item (items) for purposes of this sub-clause means the collateral value of a collateral item (collateral items) determined in accordance with the terms and conditions of Mortgage Agreement No. 1758/1, dated August 4, 2011, and sub-clause 9.1.2 herein, less the collateral value of any lost collateral item (collateral items).

8.2.9. If a claim is filed against the pledgor on the credit for payment of a monetary sum or reclamation of property whose amount poses a threat to the performance of obligations under the pledge agreement, or an application is filed with an arbitrazh court to declare the pledgor insolvent (bankrupt) according to the procedure prescribed by current law, and/or decisions are adopted on reorganization, liquidation or a reduction of the share capital of the pledgor, to arrange a replacement, within 20 (Twenty) calendar days from the date the Creditor sends a request for a replacement, of the pledged property for a similar amount. The makeup of the pledged property must be acceptable to the Creditor and approved by it.

8.2.10. To enter into an agreement on the Creditor's right to directly debit funds for repayment of overdue arrears from new accounts of the Borrower with the Creditor within 5 (five) business days of when the Creditor issues a notice that a new account has been opened, and, also at the Creditor's request, from the accounts of the Borrower. The Borrower shall be notified of said request(s) in the manner prescribed herein.

8.2.11. To provide documents certifying the targeted use of the credit funds, at the Creditor's request and according to the schedule set in the request.

8.2.12. To notify the Creditor, in the manner prescribed herein, of the possible occurrence of the situations and events specified in clause 7.1.7 herein, as well as of the actual occurrence of such situations and events.

8.2.13. To obtain preliminary written approval from the Creditor of the key terms and conditions of agreements to be entered into (including preliminary agreements) and addenda thereto, in which the subject of the transaction consists of units in the Facility.

8.2.14. To conduct settlements related to construction of the Facility and the sale of units in the Facility through accounts with the Creditor.

8.2.15. To transfer funds received as a result of entering into sales and purchase agreements and other contracts, which result in the transfer of units in the Facility that have been pledged to the Creditor pursuant to clause 9.1.1 herein, for early repayment of the indebtedness on the credit in an amount not less than the collateral value of the units in the Facility thereto as specified in the pledge agreement(s) entered into in accordance with clause 9.1.1 herein, no later than 3 (Three) business days from the date of receipt of funds in the Borrower's accounts.

8.2.16. Within 5 (five) business days of the end of each calendar quarter, to provide the Creditor with a fact sheet from the Borrower on transactions on current and transaction accounts in foreign currencies, indicating the contracting parties and purpose of each payment that the Borrower sent or received in the recently concluded calendar quarter.

**Article 9. Security**

9.1. As security for the timely and full performance of the Borrower's obligations under the Agreement, including the repayment of the credit and payment of the interest and the Fees specified by the terms and conditions herein, the Borrower shall provide/arrange the provision to the Creditor of:

9.1.1. a pledge of real estate property: apartments in the low-rise residential townhouses located at 1 ul. Sanatornaya, Ivanteyevka, Moscow Region, owned by Probusiness-Development Limited Liability Company (PSRN 1077746278279, belonging to 6A ul. Belomorskaya, Moscow, 125195), pursuant to Mortgage Agreement No. 1758/1, dated August 4, 2011.

9.1.2. a pledge of the land parcel located at 1 ul. Sanatornaya, Ivanteyevka, Moscow Region, Cadastral No. 50:43:070101:31, belonging to M.K.F. Sistema-Briz Limited Liability Company (PSRN 1027739831283, located at 6A ul. Belomorskaya, Moscow, 125195), with a collateral value of at least 88,548,000 (eighty-eight million five hundred forty-eight thousand) rubles. The collateral value is defined as the appraised value using a discount of 30 (thirty) per cent.

9.1.3. participatory interests in the share capital of Probusiness-Development Limited Liability Company (PSRN 1077746278279, located at 6A ul. Belomorskaya, Moscow, 125195), hereafter referred to as the Company, belonging to Probusinessbank Joint-Stock Commercial Bank (Open Joint-Stock Company, PSRN 1027700508978), which must be no less than 20 (twenty) per cent of the share capital as of the execution date of the pledge agreement.

Hereafter, if the Company's share capital is increased, the Borrower shall, within 10 (Ten) business days from the date of registration by authorized state bodies of amendments to the Company's constitutional documents, ensure that the Creditor is provided with an interest (interests) in the Company's share capital in an amount such that after the increase the interest in the Company's share capital held as collateral by the Creditor is at least 20 (Twenty) percent of the Company's share capital.

**Article 10. Insurance**

10.1. The Borrower shall insure the property(ies) transferred as collateral pursuant to clause 9.1.1 herein, against the risk of damage, being stolen or loss, with the Creditor named as beneficiary for all events covered by the insurer's rules of insurance (required package) and renew the insurance in a timely manner until the obligations under the Agreement are performed in full.

10.2. When insuring the property, the Borrower must first obtain approval (arrange approval) from the Creditor of the terms and conditions of the insurance contract, including but not limited to the amount of coverage and the ability to renew the insurance contract.

Insurance may be provided by any insurance companies that satisfy the Creditor's requirements, including those that have entered with the Creditor into a Cooperation Agreement and those that are included in the list of insurance companies participating in the insurance coverage of pledged property, which is posted on the Creditor's website.

If, upon the expiration of the insurance contract, the insurance company no longer meets the Creditor's requirements posted on its website, the Creditor shall be entitled to request that the insurance company be replaced, and the Borrower shall replace (arrange the replacement of) the insurance company within the time frame specified in the Creditor's request.

The Borrower shall deliver (arrange delivery) to the Creditor of a copy of the insurance policy (if any) and/or a copy of the insurance contract (if any) (an amendment on the renewal of the insurance contract), authenticated by the signature of the chief executive and the seal of the insured, within 3 (Three) business days from the execution date of the insurance contract or the amendment on the renewal of the insurance contract.

If the insurance contract is renewed, the amount of coverage may be changed with the Creditor's approval.

When entering into an insurance agreement, the Borrower shall enter into an agreement or agreements between the Creditor, insurance company, and the Borrower that the insurance benefit for the collateral property may only be applied to repaying debts under the Agreement that were secured by the insured property and for which agreements had been signed granting the Creditor the right to directly debit funds.

When entering into a new insurance agreement or an amendment renewing an insurance agreement, within 3 (three) business days of doing so the Borrower shall enter into a new agreement on how the insurance benefit will be used. The Creditor shall unilaterally define the terms of the agreement on how the insurance benefit will be used.

The beneficiary under an insurance contract may be replaced only after receiving the Creditor's written consent.

### Article 11. Liability of the Parties

11.1. The Parties shall be liable for nonperformance or improper performance of obligations under the Agreement in accordance with current Russian Federation law.

11.2. In the event of a late transfer of a payment to repay the credit, or payment of interest or the Fees, except a payment for early repayment of the credit, the Borrower shall pay the Creditor a penalty in the amount of double the per annum interest rate specified in clause 4.1. The penalty shall be added to the amount of the overdue payment for each day it is past due during the period from the date when the overdue arrears arose (not including that date) through the date of full payment of the overdue arrears (inclusive).

The date when the overdue arrears arose under the Agreement means the Due Date on which the Borrower failed to perform its obligations specified herein.

11.3. In the event the Creditor is not given notice or given late notice of changes in the roster and powers of officers authorized to enter into any transactions on the Borrower's behalf, in the seal or other information the Creditor needs in order to properly perform its obligations under the Agreement:

a) the Creditor shall not be liable for the consequences of executing the Borrower's instructions for the transfer of credit signed by unauthorized persons;

b) the Borrower shall pay the Creditor a penalty in the amount of 100,000 (One hundred thousand) rubles. The penalty shall be payable within 5 (Five) business days of the receipt from the Creditor of the relevant notice on payment of the penalty (including the date of receipt).

11.4. If the condition stipulated by clause 14.5 is violated, the Borrower shall pay the Creditor a penalty equal to 0.01% (one hundredth of a per cent) of the credit limit in clause 1.1. The penalty must be paid within 5 (five) business days of receiving the corresponding notice from the Creditor that the penalty is due (including the date of receipt).

11.5. In the event the provision specified in clause 8.2.4. herein is breached, the Borrower shall pay the Creditor a penalty in the amount of 0.01 (one hundredth) percent of the credit line limit specified in clause 1.1 herein. The penalty shall be payable within 5 (Five) business days of the receipt from the Creditor of the relevant notice on payment of the penalty (including the date of receipt).

### Article 12. Special Provisions

12.1. The Creditor may not provide credit bureaus (registered in accordance with Russian Federation law) with information on the Borrower specified by Article 4 of Federal Law No. 218-FZ of 12/30/2004 "On Credit Histories".

12.2. The Borrower shall:

a) arrange for the provision of the collateral specified in clauses 9.1.2 and 9.1.3 within 45 days of the Agreement's conclusion, including registering the pledge with the competent government authorities, subject to the signing of an agreement specifying extrajudicial procedures for seizing said collateral;

b) once credit has been extended to repay the outstanding loan from Solidarnost CB OJSC in full, within 3 (three) business days from when the credit is extended, provide the Creditor with documents confirming that the Borrower's outstanding liability to Solidarnost CB OJSC has been satisfied in full, and within 15 (fifteen) business days of the specified date provide documents confirming that the loan account has been closed;

c) not enter into a transaction or multiple interrelated transactions involving the direct or indirect disposal or potential disposal of property without the Creditor's written approval, if the book value of such property (or the total book value, if entering into multiple interrelated transactions) is more than 300,000,000 (three hundred million) rubles according to the accounting statements as of the most recent reporting date;

d) not enter into a transaction or multiple interrelated transactions involving the pledging of the Borrower's property assets, whether to secure its own liabilities to third parties or third parties' liabilities, without the Creditor's written approval, if the book value of such assets is more than 300,000,000 (three hundred million) rubles according to the accounting statements for the most recent reporting date;

e) provide the Creditor with monthly reports on the sale of the Facility's units in a format approved by the Creditor, confirmed by extracts from the Unified State Register of Real Estate Rights and Transactions;

f) until all obligations to the Creditor under the Agreement have been performed, not take the following actions without the Creditor's written approval:

- change the makeup of the company's members;
- change the company's share capital;
- change the company's legal structure;
- change the management bodies and/or their powers;
- create subsidiary and dependent entities;

g) until all obligations to the Creditor under the Agreement have been performed, not distribute its own net profits to its shareholders without the Creditor's written approval;

h) while the Agreement is in effect, maintain the value of net assets above the minimum share capital amount set by Russian Federation law;

i) by 7/1/2012, enter into an amendment with M.K.F. Sistema-Briz LLC (PSRN 1027739831283, located at 6A ul. Belomorskaya, Moscow, 125195) to Investment Agreement No. IN-2/19-d-07, dated 12/19/2007, clarifying the land parcels on which the Facility is being constructed.

12.3. The Creditor shall have the right to discontinue the issuance of the credit and/or to demand from the Borrower early repayment of the entire credit amount and payment of the interest due for use of the credit, penalties and other charges specified by the terms and conditions of the Agreement, and seize the pledged property if the Borrower fails to perform the obligations stipulated by clause 12.2 herein.

12.4. The collateral specified in clause 9.1.1 herein may be partially released by the Creditor once funds greater than or equal to the value of the released apartments have been transferred to cover outstanding balances under the Agreement.

### Article 13. Effective Period of the Agreement

13.1. The Agreement shall take effect on the date of its execution by the Parties and shall remain in effect until the Parties perform their obligations in full under the Agreement.

## Article 14. Other Provisions

14.1. All revisions and additions to the Agreement, except the cases specified in clauses 7.1.1, 7.1.2, 7.1.3, and 7.1.8 herein, shall be valid only if they are done in writing and signed by persons so authorized.

14.2. If one of the Parties changes its place of business or mailing address, it shall inform the other Party thereof not later than 1 (One) business day from the date of such changes.

If the bank information of one of the Parties changes, it shall inform the other Party thereof before the changes take effect.

The Borrower shall notify the Creditor of changes in the roster and powers of officers authorized to enter into any transactions on the Borrower's behalf, in the seal or other information the Creditor needs in order to properly perform its obligations under the Agreement, not later than the day the changes take effect and shall provide, within 3 (Three) business days, copies of duly authenticated supporting documents.

14.3. Any notification or other communication sent by the Parties to each other under the Agreement shall be done in writing. Such notification or communication shall be deemed to have been duly sent if it has been delivered to the addressee by courier or registered mail, or by telegram with a notification, to the address specified herein (or to an address specified by the Party pursuant to clause 14.2 herein) over the signature of an authorized person.

14.4. All disputes in respect of the Agreement shall be heard in accordance with current Russian Federation law at the Moscow City Arbitrazh Court.

14.5. The Borrower shall not disclose in any form (including but not limited to: in the form of interviews, published reports, advertising) information concerning the terms and conditions of the Agreement without the Creditor's written consent.

This provision shall not apply to the mandatory provision of information in cases defined by Russian Federation law or if it is necessary for the Borrower to provide such information as part of its existing or newly assumed obligations to disclose information to other creditors, ratings agencies and financial institutions.

14.6. The Borrower shall arrange for individuals whose personal data is contained in the documents that are provided to the Creditor to grant their consent to the verification and processing (including automated processing) of such data by the Creditor pursuant to the requirements of current Russian Federation law, including Federal Law No. 152-FZ of 7/27/2006 "On Personal Data".

14.7. Addendum 1, Addendum 2, and Addendum 3 shall be an integral part of the Agreement.

14.8    This Agreement is done in two counterparts, each having equal legal force, one counterpart each for the Creditor and the Borrower

## Article 15. Place of Business and Essential Information of the Parties

15.1. **Creditor:** Sberbank of Russia Open Joint Stock Company, Moscow Bank, a branch of Sberbank of Russia OJSC

Place of business: 19 ul. Vavilova, Moscow, 117997

Mailing address: Moscow Bank of Sberbank of Russia OJSC, 6 B. Andronyevskaya, Moscow, 109544

TIN 7707083893, PSRN 1027700132195, TRC 775001001, NCEO [National Classifier of Enterprises and Organizations] 57972160

[signature] **Creditor**                                                                                          **Borrower**    17

Correspondent account No. 30101810400000000225 at the Operations Department of the Moscow Main Territorial Department of the Bank of Russia

Transaction account No. 30301810500001000014 at Sberbank of Russia OJSC, BIC 044525225

Phone/fax: 781-12-35, 781-12-70

15.2. **Borrower:** Probusiness-Development Limited Liability Company

Place of business: 6A ul. Belomorskaya, Moscow, 125195

Mailing address: 6A ul. Belomorskaya, Moscow, 125195

TIN 7743629120, PSRN 1077746278279, TRC 774301001, NCEO 99058167

Transaction account No. 40702810538180003904 at Sberbank of Russia OJSC, branch: Moscow Bank of Sberbank of Russia OJSC

Phone: (495) 933-37-37, ext. 2000, (495) 933-37-37, ext. 2025

**Signatures of the Parties**

| **Creditor** | **Borrower** |
|---|---|
| Credit Department Director | General Director |
| Moscow Bank of Sberbank of Russia OJSC | Probusiness-Development LLC |
| [signature]  P.S. Belov | [signature]  D.K. Kovalchuk |
| L.S. | L.S. |
| [stamp:] | [stamp:] Probusiness-Development |
| Moscow Bank of Sberbank of Russia OJSC | LIMITED LIABILITY COMPANY PSRN |
| 18 | 1077746278279, MOSCOW |
| Branch of the Joint Stock Commercial Savings Bank of the Russian Federation (Open Joint Stock Company) | |
| Joint Stock Commercial Savings Bank of the Russian Federation (Open Joint Stock Company) | |
| [Sberbank logo] Founded in 1841 | |

Addendum 1
to Agreement
No. 1758 on the Opening of a Nonrevolving
Credit Line, dated August 4, 2011

**List of Group Companies**

| No. | Full Company Name | PSRN | Location |
|-----|-------------------|------|----------|
| 1. | Probusiness-Development LLC | 1077746278279 | 6A ul. Belomorskaya, Moscow, 125195 |
| 2. | Probusinessbank JSCB OJSC | 1027700508978 | 3 ul. Pudovkina, Moscow, 119285 |
| 3. | M.K.F. Sistema-Briz LLC | 1027739831283 | 6A ul. Belomorskaya, Moscow, 125195 |

**Signatures of the Parties**

| **Creditor** | **Borrower** |
|---|---|
| Credit Department Director | General Director |
| Moscow Bank of Sberbank of Russia OJSC | Probusiness-Development LLC |
| | |
| [signature]  P.S. Belov | [signature]  D.K. Kovalchuk |
| | |
| L.S. | L.S. |
| [stamp:] | [stamp:] Probusiness-Development |
| Moscow Bank of Sberbank of Russia OJSC | LIMITED LIABILITY COMPANY PSRN 1077746278279, |
| 18 | MOSCOW |
| Branch of the Joint Stock Commercial Savings Bank of the Russian | |
| Federation (Open Joint Stock Company) | |
| Joint Stock Commercial Savings Bank of the Russian Federation | |
| (Open Joint Stock Company) | |
| [Sberbank logo] Founded in 1841 | |

[signature] **Creditor**                                            **Borrower**   19

*Non-Revolving Credit Line Agreement No. 1758, dated August 4, 2011*                [signature]

Addendum 2 to Agreement
No. 1758 on the Opening of a Nonrevolving Credit Line, dated
August 4, 2011

| Full name of corporate account owner | PSRN | Place of business | Account Type | Account Number | Creditor's Subdivision |
|---|---|---|---|---|---|
| **Borrower account to which credit is to be transferred:** | | | | | |
| Probusiness-Development Limited Liability Company | 1077746 278279 | 6A ul. Belomorskaya, Moscow, 125195 | 40702810538180003904 | | Moscow Bank of Sberbank of Russia OJSC |
| **Accounts regarding which agreements are to be prepared on Creditor's right to directly debit funds for payment of overdue arrears:** | | | | | |
| Probusiness-Development Limited Liability Company | 1077746 278279 | 6A ul. Belomorskaya, Moscow, 125195 | 40702810538180003904 | | Moscow Bank of Sberbank of Russia OJSC |
| | | | | | |
| | | | | | |

**Signatures of the Parties**

| **Creditor** | **Borrower** |
|---|---|
| Credit Department Director | General |
| Moscow Bank of Sberbank of Russia OJSC | Probusiness-Development LLC |
| | |
| [signature]  P.S. Belov | [signature]  D.K. Kovalchuk |
| | |
| L.S. | L.S. |
| [stamp:] | [stamp:] Probusiness-Development |
| Moscow Bank of Sberbank of Russia OJSC | LIMITED LIABILITY COMPANY PSRN 1077746278279, |
| 18 | MOSCOW |
| Branch of the Joint-Stock Commercial Savings Bank of the Russian | |
| Federation (Open Joint Stock Company) | |
| Joint Stock Commercial Savings Bank of the Russian Federation | |
| (Open Joint Stock Company) | |
| [Sberbank logo] Founded in 1841 | |

[signature] **Creditor**                                                     **Borrower**   20

*Non-Revolving Credit Line Agreement No. 1758, dated August 4, 2011*          [signature]

Addendum 3

to Agreement No. 1758 on the Opening of a Nonrevolving Credit Line

dated August 4, 2011

Credit Department

Moscow Bank of Sberbank of Russia OJSC

Outgoing No. _____ dated __/__/200_

### INSTRUCTIONS FOR THE TRANSFER OF CREDIT

I request that credit funds be provided with the following specifications:

| | |
|---|---|
| 1. Borrower Name | Probusiness-Development Limited Liability Company |
| 2. Agreement on the Opening of a Nonrevolving Credit Line | No. 1758, dated August 4, 2011 |
| 3. Date credit funds are to be provided | |
| 4. Amount, currency of credit | _____ (_____) <br> *(in numbers and words), including credit currency* |
| 5. Transaction account | *40702810538180003904* |

_____       _____ (full name)
(Indicate title of Borrower's officer authorized to          (signature)
manage credit funds)


Borrower's Chief Accountant       _____ (full name)
(indicate, if any)                       (signature)
                            L.S.

or

Certification of digital signature of person authorized by Borrower to manage credit funds

### Signatures of the Parties

| Creditor | Borrower |
|---|---|

Creditor

Credit Department Director
Moscow Bank of Sberbank of Russia OJSC
[signature]  P.S. Belov
L.S.
[stamp:]
Moscow Bank of Sberbank of Russia OJSC
18
Branch of the Joint Stock Commercial Savings Bank
of the Russian Federation (Open Joint Stock
Company)
Joint Stock Commercial Savings Bank of the Russian
Federation (Open Joint Stock Company)
[Sberbank logo] Founded in 1841

Borrower

CEO
Probusiness-Development LLC
[signature]  D.K. Kovalchuk
L.S.
[stamp:] Probusiness-Development
LIMITED LIABILITY COMPANY PSRN
1077746278279, MOSCOW

| *Total stitched, paginated and authenticated with seals 21 (twenty-one) pages* | |
|---|---|
| **Creditor** | **Borrower** |
| Credit Department Director | CEO |
| Moscow Bank of Sberbank of Russia OJSC | Probusiness-Development LLC |
| [signature]  P.S. Belov | [signature]  D.K. Kovalchuk |
| L.S. | |
| [stamp:] | L.S. |
| Moscow Bank of Sberbank of Russia OJSC | [stamp:] Probusiness-Development |
| 18 | LIMITED LIABILITY COMPANY PSRN |
| Branch of the Joint Stock Commercial Savings Bank | 1077746278279, MOSCOW |
| of the Russian Federation (Open Joint Stock | |
| Company) | |
| Joint Stock Commercial Savings Bank of the Russian | |
| Federation (Open Joint Stock Company) | |
| [Sberbank logo] Founded in 1841 | |



**СБЕРБАНК РОССИИ**
Основан в 1841 году

Код 012140027/2

### ДОГОВОР № 1758
#### об открытии невозобновляемой кредитной линии

г. Москва

«04» августа 2011 г

Открытое акционерное общество «Сбербанк России», именуемое в дальнейшем «Кредитор», в лице директора Управления кредитования Московского банка Сбербанка России ОАО Белова Петра Сергеевича, действующего на основании Устава ОАО «Сбербанк России», Положения о Московском банке Сбербанка России ОАО и доверенности №365 от 01 апреля 2011 года, с одной стороны, и Общество с ограниченной ответственностью «Пробизнес-Девелопмент», именуемое в дальнейшем «Заемщик», в лице Генерального директора Ковальчука Дмитрия Кимовича, действующего на основании Устава, с другой стороны, далее совместно именуемые «Стороны», заключили настоящий договор, именуемый в дальнейшем «Договор», о нижеследующем:

### Статья 1. Предмет Договора

1.1. Кредитор обязуется открыть Заемщику невозобновляемую кредитную линию для рефинансирования затрат по проекту строительства малоэтажных блокированных жилых домов в рамках строительства жилого комплекса «Зеленая роща» по адресу: Московская область, г. Ивантеевка, ул. Санаторная, д.1 (далее – Объект), в т.ч. для погашения ссудной задолженности по Кредитным договорам, заключенным с ОАО КБ «Солидарность» №КЛ-11-018 от 21.02.2011 в сумме до 230 000 000 (Двести тридцать миллионов) рублей (включительно) и № КР-11-038 от 14.03.2011, в сумме до 90 000 000 (Девяносто миллионов) рублей (включительно) в полном объеме на срок по «20» декабря 2013 г. с лимитом:

| Период действия лимита | Сумма лимита |
| --- | --- |
| С «12» августа 2011г. по «04» декабря 2011г | 320 000 000 (Триста двадцать миллионов) рублей |

Заемщик обязуется возвратить Кредитору полученный кредит и уплатить проценты за пользование им и другие платежи в размере, в сроки и на условиях Договора.

### Статья 2. Заверения и гарантии

2.1. Заемщик является юридическим лицом, надлежащим образом учрежденным и законно действующим в соответствии с законодательством Российской Федерации.

2.2. Заемщик подтверждает, что все согласия, необходимые для заключения Договора и иных договоров и соглашений, предусмотренных Договором, были получены и вступили в действие, или, если они не были получены, – то будут получены и/или вступят в действие в установленном порядке до заключения соответствующих договоров и соглашений в соответствии с действующим законодательством Российской Федерации.

2.3. Заемщик заверяет, что случаи и события, перечисленные в п. 7.1.7 Договора, на дату заключения Договора не наступили и предпримет все действия, чтобы они не наступили в течение срока действия Договора.

2.4. Вся фактическая информация, представленная Заемщиком Кредитору, является достоверной и правильной во всех существенных аспектах на дату ее предоставления. На дату заключения Договора не было утаено какой-либо информации, что могло бы в результате сделать представленную информацию неверной или вводящей в заблуждение Кредитора в каких-либо существенных аспектах.

**Кредитор**

**Заемщик**    1

2.5. В отношении Заемщика и каждой из компаний Группы, указанных в Приложении №1, не возбуждалось судебное, арбитражное или административное производство в каком-либо суде, арбитраже или органе, которое могло бы привести к невозможности Заемщика надлежащим образом исполнять свои обязательства по Договору.

2.6. Заемщиком, а также каждой компанией Группы, указанной в Приложении №1, исполнялись и соблюдались, равно как и в настоящее время исполняются и соблюдаются во всех существенных аспектах требования законодательства, неисполнение или несоблюдение которых могло бы привести Заемщика к невозможности надлежащим образом исполнять свои обязательства по Договору.

2.7. Заемщик имеет действительный и законный правовой титул или законное право пользования и эксплуатации в отношении активов, необходимых для осуществления его деятельности.

2.8. Насколько известно Заемщику, не имеют место какие-либо события или обстоятельства, которые могли бы повлиять на исполнение им обязательств по любым другим договорам или финансовым инструментам, а также которые бы могли привести Заемщика к невозможности надлежащим образом исполнять свои обязательства по Договору.

2.9. Заключение и исполнение Заемщиком Договора не противоречит его учредительным документам.

### Статья 3. Порядок предоставления кредита

3.1. Выдача любой суммы кредита производится в пределах свободного остатка лимита, определенного по следующей формуле:

$$СОЛ = Лим – (СЗ + ПЗ), где$$

СОЛ – свободный остаток лимита;

Лим – лимит, установленный в п.1.1 Договора;

СЗ - фактическая ссудная задолженность по кредиту на текущую дату;

ПЗ - сумма ранее осуществленного погашения кредита.

Погашение любой суммы кредита не увеличивает свободного остатка лимита кредитной линии.

3.2. Выдача кредита производится перечислением сумм кредита на расчетный счет Заемщика, указанный в Приложении №2, на основании распоряжений Заемщика, оформленных в соответствии с Приложением №3 к Договору.

Перечисление сумм кредита производится при отсутствии просроченной задолженности по Договору и по всем иным кредитным договорам (в том числе договорам об открытии кредитной линии) и/или договорам поручительства, и/или договорам о предоставлении банковских гарантий/контргарантий/поручительств, заключенным (которые могут быть заключены) между Кредитором и Заемщиком.

3.3. Выдача кредита производится:

3.3.1. После надлежащего оформления указанного в п.п. 9.1.1 Договора обеспечения по кредиту, включая регистрацию залога в уполномоченных государственных органах, в соответствии с п.п. 9.1.1 Договора, и при условии заключения соглашения о внесудебном порядке обращения взыскания на указанное обеспечение.

3.3.2. После заключения и предоставления Кредитору соглашения(ий) о праве Кредитора на безакцептное списание средств в погашение просроченной задолженности со счета(ов) Заемщика, указанных в Приложении №2.

3.3.3. После перечисления платы за открытие кредитной линии.

3.3.4. После выполнения условий, указанных в п.п. 10.1, 10.2 Договора, относительно имущества, передаваемого в залог в соответствии с п.п. 9.1.1 Договора, а также предоставления Кредитору соглашения о порядке работы со страховым возмещением.

3.3.5. Выдача кредита на погашение ссудной задолженности Заемщика перед ОАО КБ «Солидарность» осуществляется после предоставления Заемщиком Кредитору копии письма в адрес ОАО КБ «Солидарность», с отметкой ОАО КБ «Солидарность» о получении указанного

письма о намерении погасить кредит ОАО КБ «Солидарность», а также выписки по ссудному счету Заемщика/письма ОАО КБ «Солидарность», подтверждающей остаток ссудной задолженности Заемщика по кредиту ОАО КБ «Солидарность» на дату, предшествующую дате выдачи кредита по Договору.

3.3.6. Выдача кредита на погашение ссудной задолженности Заемщика перед ОАО КБ «Солидарность» осуществляется после предоставления Кредитору документов, подтверждающих остаток ссудной задолженности по Кредитным договорам №КЛ-11-018 от 21.02.2011 на сумму не более 230 000 000 (Двести тридцать миллионов) рублей и № КР-11-038 от 14.03.2011 на сумму не более 90 000 000 (Девяносто миллионов) рублей.

3.3.7. После получения Кредитором от Заемщика документов по форме и содержанию удовлетворительных для Кредитора, свидетельствующих о субординации займов, привлеченных Заемщиком по отношению к кредиту, выдаваемому в соответствии с Договором, на следующих условиях:

- обязательства Заемщика по полному погашению кредита по Договору должны быть исполнены ранее погашения обязательств по займам, кредитам и иным формам привлечения денежных средств на возвратной основе от третьих лиц (без учета обязательств по уплате процентов и выплате дохода по ценным бумагам).

Переоформление займов осуществляется путем заключения Заемщиком с третьими лицами, предоставившими заемные средства Заемщику, дополнительных соглашений к действующим договорам займа (и иным аналогичным по сути договорам) по форме и содержанию, удовлетворительным для Кредитора. Дополнительные соглашения должны предусматривать, в том числе, но не исключительно, что погашение займов производится Заемщиком только после полного выполнения Заемщиком своих обязательств перед Кредитором по Договору, что займы не могут быть досрочно истребованы у Заемщика, а также, что неуплата Заемщиком процентов по займам не является для сторон существенным изменением обстоятельств как это толкуется статьей 451 Гражданского кодекса Российской Федерации.

В договорах займа (и иных аналогичных по сути договорах), заключенных между Заемщиком с контрагентами отличными от Кредитора, также должно быть предусмотрено, что указанные в настоящем пункте Договора условия договоров, включая процентную ставку по договорам займа, не могут быть изменены без письменного согласия Кредитора.

При этом Заемщик обязуется не вносить изменения в указанные выше дополнительные соглашения и договоры займа в течение срока действия Договора без предварительного письменного согласия Кредитора.

Заемщик обязан предоставлять Кредитору не позднее 10 (Десятого) числа первого месяца каждого календарного квартала в течение срока действия Договора справку по форме удовлетворительной для Кредитора, подтверждающую не внесение изменений в указанные выше дополнительные соглашения и договоры займа в течение срока действия Договора кроме изменений, согласованных с Кредитором.

3.4. Выдача кредита производится по «04» декабря 2011 г. (далее по тексту – Дата окончания периода доступности). В случае, если в Дату окончания периода доступности кредитная линия будет использована Заемщиком не полностью, свободный остаток лимита кредитной линии закрывается.

3.5. Выдача кредита отражается на отдельных ссудных счетах, открываемых Кредитором по Договору, в зависимости от срока с даты выдачи (не включая эту дату) по дату полного погашения кредита, указанную в п. 1.1 Договора (включительно).

### Статья 4. Проценты и комиссионные платежи

4.1. Заемщик уплачивает Кредитору проценты за пользование кредитом по ставке 9,3 % годовых (Девять целых и три десятых) процентов годовых.

4.2. Проценты начисляются на сумму фактической ссудной задолженности по кредиту начиная с даты, следующей за датой образования задолженности по ссудному счету (включительно), и по дату полного погашения кредита (включительно).

**Кредитор**                                                                    **Заемщик**  3
*Договор об открытии невозобновляемой кредитной линии № 1758  от «04» августа 2011г.*

Уплата процентов производится ежеквартально 20 числа третьего месяца каждого календарного квартала и в дату полного погашения кредита, указанную в п. 1.1 Договора, или в дату полного погашения кредита, осуществленного ранее указанной в п. 1.1 Договора даты, при условии выборки лимита кредитной линии в полном объеме и/или после Даты окончания периода доступности, в сумме начисленных на указанные даты процентов (включительно).

В случае несвоевременного погашения кредита (просрочки) на сумму непогашенного в срок кредита проценты не начисляются, начиная с даты, следующей за датой погашения соответствующей суммы кредита, установленной п. 6.1 Договора (включительно).

4.3. С Заемщика взимается плата за открытие кредитной линии в размере 0,7 (Ноль целых и семь десятых) процентов от лимита кредитной линии, указанного в п. 1.1 Договора, что составляет 2 240 000 (Два миллиона двести сорок тысяч) рублей.

Плата за открытие кредитной линии уплачивается Заемщиком Кредитору единовременно до первой выдачи кредита, но не позднее «04» сентября 2011г.

4.4. С Заемщика взимается плата за пользование лимитом кредитной линии в размере 2 (Два) процентов годовых от свободного остатка лимита, рассчитанного в соответствии с п. 3.1 Договора.

Начисление платы производится за период с даты начала действия лимита, указанной в п. 1.1 Договора (не включая эту дату), по Дату окончания периода доступности или по дату полного погашения кредита, осуществленного ранее Даты окончания периода доступности, при условии выборки лимита кредитной линии в полном объеме (включительно).

Плата за пользование лимитом кредитной линии уплачивается Заемщиком Кредитору в установленные условиями Договора даты уплаты процентов, в сумме начисленной на указанные даты (включительно) платы.

4.5. Заемщик уплачивает Кредитору плату за обслуживание кредита в размере 0,1 (Ноль целых и одна десятая) процентов годовых. Плата за обслуживание кредита начисляется на сумму фактической ссудной задолженности по кредиту в соответствии с условиями, установленными Договором для начисления процентов.

Плата за обслуживание кредита уплачивается Заемщиком Кредитору в установленные условиями Договора даты уплаты процентов, в сумме начисленной на указанные даты (включительно) платы.

4.6. При погашении кредита (полностью или частично) ранее установленных п. 6.1. Договора дат без предварительного письменного уведомления или при уведомлении менее чем за 30 (Тридцать) календарных дней до даты погашения (включительно, при этом дата поступления уведомления Кредитору в расчет количества дней не включается), Заемщик уплачивает Кредитору плату за досрочный возврат кредита.

Плата уплачивается в размере 2 (Два) процентов годовых от досрочно возвращаемой суммы кредита за период с даты фактического погашения задолженности (не включая эту дату), а при погашении в соответствии с п. 5.12 Договора с даты получения Кредитором письменного заявления Заемщика (не включая эту дату), по ближайшую к ней дату, указанную в п. 6.1 Договора (включительно), по которой имеется непогашенная ссудная задолженность по кредиту в соответствующем размере.

Плата за досрочный возврат кредита уплачивается Заемщиком Кредитору одновременно с платежом по досрочному погашению ссудной задолженности по кредиту.

Плата за досрочный возврат кредита не взимается:

- при поступлении средств в погашение кредита в соответствии с п.п. 8.1.1, 8.2.1, 8.2.8 Договора;

- при поступлении средств в погашение кредита в соответствии с условиями соглашения, заключенного между Кредитором, страховой компанией и Залогодателем о перечислении страхового возмещения по заложенному имуществу только на погашение обеспеченной залогом застрахованного имущества задолженности по Договору;

- в случае осуществления досрочного погашения сумм кредита за счет средств, полученных от реализации объектов недвижимости, являющихся предметом залога, сторонним организациям и/или физическим лицам.

**Кредитор**

**Заемщик** 4

*Договор об открытии невозобновляемой кредитной линии № 1758 от «04» августа 2011г.*

### Статья 5. Условия расчетов и платежей

5.1. Погашение кредита, уплата процентов и других платежей по Договору производится платежными поручениями со счетов Заемщика или третьих лиц у Кредитора или в других банках.

В платежных поручениях суммы основного долга, процентов, каждой из плат, перечисленных в статье 4 Договора (далее – Комиссионные платежи) и неустоек указываются отдельно по каждому из указанных видов платежей.

5.2. Датой выдачи кредита является дата образования ссудной задолженности по ссудному(ым) счету(ам).

5.3. Датой исполнения обязательств по уплате платежей по Договору является дата списания средств со счетов Заемщика или третьих лиц у Кредитора в погашение обязательств по Договору или дата поступления средств в погашение обязательств по Договору на корреспондентский счет Кредитора, в случае если погашение осуществляется со счетов, открытых в других банках.

5.4. Если дата уплаты процентов или внесения других платежей по Договору приходится на нерабочий день, то обязательства должны быть исполнены не позднее первого рабочего дня, следующего за нерабочим днем.

5.5. При исчислении процентов, Комиссионных платежей и неустойки используется фактическое число календарных дней в месяце и году.

Начисление процентов, платы за обслуживание кредита и неустойки за несвоевременное погашение кредита осуществляется отдельно по каждому из ссудных счетов, открытых Кредитором по Договору. Сумма полученных величин составляет общую сумму обязательств по уплате процентов, внесению платы за обслуживание кредита и неустойке за несвоевременное погашение кредита.

5.6. Средства, поступившие в счет погашения задолженности по Договору, в том числе списанные в безакцептном порядке со счетов Заемщика, а также перечисленные третьими лицами, направляются вне зависимости от назначения платежа (с учетом особенностей, изложенных в п.п. 5.7., 5.10., 5.11., 5.12., 5.13. Договора), указанного в платежном документе, в первую очередь на возмещение судебных и иных расходов Кредитора по взысканию задолженности, далее в следующей очередности:
1) на внесение просроченной платы за открытие кредитной линии;
2) на внесение просроченной платы за пользование лимитом кредитной линии;
3) на внесение просроченной платы за обслуживание кредита;
4) на уплату просроченных процентов;
5) на внесение срочной платы за открытие кредитной линии;
6) на внесение срочной платы за пользование лимитом кредитной линии;
7) на внесение срочной платы за обслуживание кредита;
8) на уплату срочных процентов;
9) на погашение просроченной ссудной задолженности по кредиту;
10) на внесение платы за досрочный возврат кредита;
11) на погашение срочной ссудной задолженности по кредиту;
12) на уплату неустойки за неисполнение обязательств по Договору в установленный срок (за исключением неустойки в соответствии с п.п. 11.3, 11.4, 11.5 Договора);
13) на уплату неустойки в соответствии с п.п. 11.3, 11.4, 11.5 Договора.

При этом ссудная задолженность по кредиту погашается в хронологическом порядке, начиная со ссудного счета, открытого первым.

Обязательства по Договору (по погашению ссудной задолженности по кредиту, по уплате процентов и внесению Комиссионных платежей) становятся срочными в дату наступления срока их исполнения в соответствии с условиями, установленными Договором (далее – Дата платежа).

Под просроченными обязательствами в рамках Договора понимаются обязательства по Договору, не исполненные в Дату платежа.



**Кредитор**    **Заемщик** 5

*Договор об открытии невозобновляемой кредитной линии № 1758  от «04» августа 2011г.*

5.7. Денежные средства, поступившие в соответствии с платежными поручениями в уплату неустоек по Договору, при указании данного назначения платежа в качестве единственного в платежном документе, направляются Кредитором на уплату неустоек в соответствии с очередностью уплаты неустоек, установленной п. 5.6. Договора.

Излишне полученная сумма направляется Кредитором на погашение обязательств в соответствии с очередностью платежей, установленной п. 5.6. Договора.

5.8. При финансировании Заемщиком за счет средств кредита расходов в валюте, отличной от валюты кредита, конверсионные операции со средствами кредита проводятся у Кредитора по курсу и на условиях Кредитора на дату совершения операций.

5.9. Обязательства по погашению ссудной задолженности по кредиту могут быть исполнены ранее Даты платежа в соответствии с п. 6.2. Договора.

Платежи, поступившие в счет погашения ссудной задолженности по кредиту ранее дат, установленных п. 6.1. Договора, направляются Кредитором на погашение указанных обязательств в счет ближайших по срокам платежей в погашение кредита, установленных п. 6.1. Договора, с учетом очередности платежей, установленной п. 5.6. Договора. В этом случае обязательства по погашению ссудной задолженности в целях распределения в соответствии с очередностью платежей, установленной п. 5.6 Договора, становятся срочными к погашению в дату поступления средств в размере поступивших денежных средств, но не более суммы денежных средств, оставшейся после распределения на иные платежи, указанные в очередности платежей до платежа на погашение срочной ссудной задолженности по кредиту, и не более суммы основного долга, указанной в платежном документе (при его указании).

Излишне полученная в соответствии с настоящим пунктом Договора от Заемщика сумма возвращается Кредитором на счет Заемщика, открытый у Кредитора, не позднее первого рабочего дня, следующего за датой поступления денежных средств.

При невозможности идентификации назначения платежа (не указано(ы) обязательство(а), которое(ые) исполняется(ются)), указанного в платежном документе, поступившие средства направляются Кредитором в счет погашения ссудной задолженности по кредиту в соответствии с настоящим пунктом Договора.

5.10. Обязательства по процентам и/или Комиссионным платежам могут быть исполнены ранее Дат платежа в сумме не более начисленных на дату поступления Кредитору (включительно) денежных средств. В этом случае все обязательства по процентам и Комиссионным платежам становятся срочными к погашению в дату поступления средств в размере поступивших денежных средств, но не более начисленных.

При этом, денежные средства, поступившие от Заемщика в погашение указанных обязательств, вне зависимости от назначения платежа, указанного в платежном документе, направляются Кредитором на погашение обязательств по процентам и Комиссионным платежам в соответствии с очередностью платежей, установленной п. 5.6. Договора, кроме уплаты неустоек.

5.11. Если до Даты платежа по уплате процентов и/или внесению Комиссионных платежей остается 10 (Десять) и менее рабочих дней (далее - Период досрочной уплаты), то излишне полученную в соответствии с п.5.10. Договора от Заемщика сумму (далее – Досрочные платежи) Кредитор направляет в погашение указанных обязательств Заемщика в ближайшие Даты платежей в соответствии с очередностью платежей, установленной п. 5.6. Договору. При возникновении в Период досрочной уплаты срочных обязательств по погашению ссудной задолженности по Договору и непоступлении от Заемщика платежа в погашение указанных обязательств в установленную Договором Дату платежа Досрочные платежи направляются в погашение указанных обязательств.

Если до Даты платежа по уплате процентов и/или внесению Комиссионных платежей остается более 10 (Десяти) рабочих дней, Кредитор направляет Досрочные платежи на уплату неустоек в соответствии с очередностью платежей, установленной п. 5.6 Договора. При этом Досрочные платежи в размере превышения величины уплаченных неустоек возвращаются Кредитором на счет Заемщика, открытый у Кредитора, не позднее первого рабочего дня, следующего за датой поступления денежных средств.

5.12. В Период досрочной уплаты Заемщик имеет право в течение 3 (Трех) рабочих дней, следующих за датой поступления средств Кредитору, но не позднее, чем за 2 (Два) рабочих дня (включительно) до ближайшей Даты платежа, обратиться к Кредитору с письменным заявлением о возврате или о направлении в счет погашения ссудной задолженности по кредиту Досрочных платежей, полученных Кредитором в соответствии с п. 5.11 Договора.

Кредитор возвращает Досрочные платежи после распределения в соответствии с очередностью платежей, установленной п. 5.6 Договора, либо направляет их на погашение ссудной задолженности по кредиту в соответствии с п. 6.2 Договора и с учетом п. 5.9 Договора, не позднее первого рабочего дня, следующего за датой получения письменного заявления Заемщика.

Возврат Досрочных платежей осуществляется Кредитором на счета Заемщика, открытые у Кредитора.

При направлении Досрочных платежей на погашение ссудной задолженности по кредиту датой погашения ссудной задолженности по кредиту является дата направления Кредитором досрочно уплаченной суммы на погашение ссудной задолженности по кредиту.

5.13. Если в Дату платежа, сумма платежа превышает сумму, причитающуюся к уплате в соответствии с условиями Договора, то излишне полученная от Заемщика сумма, после распределения в соответствии с очередностью платежей, установленной п. 5.6 Договора, возвращается Кредитором на счет Заемщика, открытый у Кредитора, не позднее первого рабочего дня, следующего за Датой соответствующего платежа.

5.14. В случае уплаты платежей по Договору в валюте, отличной от валюты платежа, установленной Договором, Кредитор имеет право самостоятельно осуществить конверсию полученных средств в валюту платежа по Договору по курсу и на условиях Кредитора, действующих на дату совершения конверсионной операции, с их дальнейшим направлением на погашение задолженности по Договору.

### Статья 6. Порядок погашения кредита

6.1. Дата полного погашения выданного кредита: «20» декабря 2013г.

Погашение кредита производится по следующему графику:

| Дата погашения | Размер платежа в процентах от размера ссудной задолженности на Дату окончания периода доступности |
|---|---|
| 20 декабря 2011 г. | 12,23 % (Двенадцать целых двадцать три сотых процентов) |
| 20 марта 2012 г. | 11,12% (Одиннадцать целых двенадцать сотых процентов) |
| 20 июня 2012 г. | 8,60% (Восемь целых шестьдесят сотых процентов) |
| 20 сентября 2012 г. | 8,61% (Восемь целых шестьдесят одна сотая процентов) |
| 20 декабря 2012 г. | 11,11% (Одиннадцать целых одиннадцать сотых процентов) |
| 20 марта 2013 г. | 9,80% (Девять целых восемьдесят сотых процентов) |
| 20 июня 2013 г. | 11,85% (Одиннадцать целых восемьдесят пять сотых процентов) |
| 20 сентября 2013 г. | 14,78% (Четырнадцать целых семьдесят восемь сотых процентов) |
| 20 декабря 2013 г. | 11,90% (Одиннадцать целых девяносто сотых процентов) |

В случае погашения Заемщиком кредита после Даты окончания периода доступности, но ранее дат, установленных настоящим пунктом, в соответствии с п. 6.2 Договора, суммы погашения кредита по вышеуказанному графику уменьшаются на погашенные ранее установленных настоящим пунктом дат суммы кредита, начиная с ближайшего к дате фактического погашения платежа по графику. Каждый последующий платеж по графику уменьшается на погашенные ранее установленных настоящим пунктом дат суммы кредита, превышающие сумму предыдущих платежей по графику.

Если дата погашения соответствующей суммы кредита приходится на нерабочий день, срок пользования соответствующей суммой кредита устанавливается по первый рабочий день (включая этот день), следующий за нерабочим днем, на который приходится дата погашения соответствующей суммы кредита.

6.2. Заемщик имеет право произвести полное или частичное погашение сумм выданного кредита ранее дат, установленных п. 6.1. Договора, с уплатой начисленных на дату погашения

**Кредитор**

**Заемщик** 7

процентов, Комиссионных платежей, предусмотренных условиями Договора, и неустоек, за исключением неустойки в соответствии с п.п. 11.3, 11.4, 11.5 Договора.

Заемщик направляет Кредитору уведомление о намерении погасить кредит ранее дат, установленных п. 6.1. Договора, в порядке, предусмотренном Договором, с указанием суммы и даты погашения, не менее чем за 30 (Тридцать) календарных дней до даты возврата кредита (или его части) (включительно). Дата поступления уведомления Кредитору в расчет количества дней не включается.

При этом ссудная задолженность по кредиту погашается в хронологическом порядке, начиная с задолженности, погашение которой должно быть произведено в ближайшую к дате фактического погашения кредита дату, указанную в п.6.1. Договора.

В случае погашения кредита ранее дат, установленных п. 6.1. Договора, без предварительного уведомления Кредитора или уведомления Кредитора менее чем за 30 (Тридцать) календарных дней до даты фактического погашения кредита (или его части), Заемщик уплачивает Кредитору плату за досрочный возврат кредита в порядке, предусмотренном статьей 4 Договора.

### Статья 7. Обязанности и права Кредитора

7.1. Кредитор имеет право:

7.1.1. В одностороннем порядке по своему усмотрению производить увеличение процентной ставки по Договору, в том числе, но не исключительно, в связи с принятием Банком России решений по увеличению учетной ставки (ставки рефинансирования Банка России), с уведомлением об этом Заемщика без оформления этого изменения дополнительным соглашением. В случае увеличения Кредитором процентной ставки в одностороннем порядке указанное изменение вступает в силу через 30 (Тридцать) календарных дней с даты отправления уведомления Кредитором, если в уведомлении не указана более поздняя дата вступления изменения в силу.

Уведомление Заемщика об указанных изменениях Договора производится в порядке, предусмотренном Договором.

7.1.2. В одностороннем порядке по своему усмотрению производить уменьшение процентной ставки по Договору, в том числе, но не исключительно в связи с принятием Банком России решений по снижению учетной ставки (ставки рефинансирования Банка России), с уведомлением об этом Заемщика без оформления этого изменения дополнительным соглашением. В случае уменьшения Кредитором процентной ставки в одностороннем порядке указанное изменение вступает в силу через 30 (Тридцать) календарных дней с даты отправления уведомления Кредитором, если в уведомлении не указана иная дата вступления изменения в силу.

Уведомление Заемщика об указанных изменениях Договора производится в порядке, предусмотренном Договором.

7.1.3. В одностороннем порядке по своему усмотрению производить уменьшение размера неустойки и/или устанавливать период времени, в течение которого неустойка не взимается, с уведомлением об этом Заемщика без оформления этого изменения дополнительным соглашением.

Уменьшение размера неустойки и/или наступление периода времени, в течение которого неустойка не взимается, вступает в силу через 30 (Тридцать) календарных дней с даты отправления уведомления Кредитором, если в уведомлении не указана иная дата вступления изменения в силу.

Уведомление Заемщика об указанных изменениях Договора производится в порядке, предусмотренном Договором.

7.1.4. Требовать от Заемщика предоставления сведений и документов, подтверждающих целевое использование кредита, на основании которых осуществляется перечисление средств кредита с расчетного счета Заемщика в соответствии с целевым назначением кредита.

7.1.5. В случае возникновения просроченной ссудной задолженности по кредиту и/или по процентам, и/или по другим платежам, предусмотренным Договором, по мере поступления

**Кредитор**                                                                    **Заемщик** 8

*Договор об открытии невозобновляемой кредитной линии № 1758 от «04» августа 2011г.*



средств списывать их со счетов Заемщика у Кредитора и в других банках в валюте обязательства в безакцептном порядке в счет погашения просроченных платежей и неустойки.

Кредитор письменно информирует Заемщика о факте безакцептного списания средств с его счетов в счет погашения просроченных платежей и неустойки в порядке, предусмотренном Договором.

7.1.6. При недостаточности средств на счете Заемщика у Кредитора в валюте обязательства для погашения просроченной задолженности по Договору по мере поступления средств производить списание средств со счетов Заемщика у Кредитора и в других банках в валюте, отличной от валюты обязательства, с последующей конверсией списанных средств по курсу и на условиях, установленных Кредитором и другими банками для совершения конверсионных операций на дату совершения операции, с зачислением полученных в результате конверсии средств на счет Заемщика у Кредитора и в других банках в валюте обязательства.

Кредитор письменно информирует Заемщика о факте безакцептного списания средств с его счетов и конверсии указанных средств в порядке, предусмотренном Договором.

7.1.7. Прекратить выдачу кредита и/или потребовать от Заемщика досрочного возврата всей суммы кредита и уплаты причитающихся процентов за пользование кредитом, неустоек и других платежей, предусмотренных условиями Договора, а также обратить взыскание на заложенное имущество в случаях:

а) неисполнения или ненадлежащего исполнения Заемщиком или компаниями Группы, указанными в Приложении №1, платежных обязательств по Договору или любому из договоров (в том числе, но не исключительно: кредитному, об открытии возобновляемой/невозобновляемой кредитной линии, договору о предоставлении банковской гарантии, договору поручительства, иным видам договоров) и соглашений, которые заключены (могут быть заключены в течение срока действия Договора) между Заемщиком или компаниями Группы, указанными в Приложении №1, и Кредитором, иных обязательств (или выполнения иных условий) по указанным договорам и соглашениям, неисполнение или ненадлежащее исполнение (или выполнение) которых является основанием для предъявления требования о досрочном возврате сумм кредита/отказа Кредитора от обязанности предоставления кредита/гарантии в соответствии с условиями указанных договоров и соглашений, а также платежных обязательств перед Кредитором и/или третьими лицами по оплате векселей, погашению облигаций, выплате купонного дохода, обязательной/добровольной оферте в силу Федерального закона «Об акционерных обществах», которые возникли (могут возникнуть в течение срока действия Договора);

б) неисполнения или ненадлежащего исполнения Заемщиком или компаниями Группы, указанными в Приложении №1, обязательств по кредитным договорам (в том числе договорам об открытии невозобновляемой/возобновляемой кредитной линии), которые заключены (могут быть заключены в течение срока действия Договора) между Заемщиком или компаниями Группы, указанными в Приложении №1, и любым иным кредитором, и повлекшее за собой предъявление к Заемщику или компаниям Группы, указанным в Приложении №1, требования о досрочном возврате сумм кредита;

в) обесценения обеспечения, утраты обеспечения или ухудшения его условий, а также угрозы утраты обеспечения или угрозы ухудшения его условий по обстоятельствам, за которые Кредитор не отвечает;

г) если заявления, документы, подтверждения или информация, включая информацию, указанную в Статье 2 Договора, предоставленные Заемщиком Кредитору, в том числе в отношении компаний Группы, указанных в Приложении №1, являются недостоверными, неполными или непроверенными;

д) использования кредита не по целевому назначению или возврата Заемщику денежных средств, перечисленных Заемщиком за счет кредита в соответствии с целевым назначением кредита;

е) предъявления заявления в арбитражный суд о признании Заемщика и/или Залогодателя несостоятельным (банкротом) в установленном действующим законодательством

**Кредитор**                                                        **Заемщик**   9

*Договор об открытии невозобновляемой кредитной линии № 1758 от «04» августа 2011г.*

порядке с учетом положений п. 8.2.9 Договора;

ж) если Заемщику предъявлены иски об уплате денежной суммы или об истребовании имущества на совокупную сумму более 50 000 000 (Пятьдесят миллионов) рублей. Сумма иска, предъявленного в иностранной валюте, пересчитывается в рубли по курсу Банка России на дату предъявления иска;

з) принятия решений о реорганизации, ликвидации или уменьшении уставного капитала, Заемщика, и/или залогодателя с учетом положений п. 8.2.9 Договора;

и) объявления Заемщика и/или залогодателя несостоятельным (банкротом) в установленном действующим законодательством порядке;

к) предоставления Заемщиком Кредитору отчетности и/или сведений, которые являются недостоверными и/или отличными от отчетности и/или сведений, предоставленных Заемщиком органам государственной власти, Банку России и/или опубликованных Заемщиком и/или находящихся в бюро кредитных историй;

л) невыполнения Заемщиком обязательств, предусмотренных п.п. 8.2.8 и/или 8.2.9 и/или 8.2.11 и/или 8.2.13 и/или 8.2.14 и/или 8.2.15 и/или 8.2.16 и/или 10.1 и/или 10.2 Договора;

м) невыполнения Заемщиком обязательства по обеспечению доли участия в уставном капитале, находящемся в залоге у Кредитора, предусмотренного п. 9.1.3 Договора;

н) нарушения Заемщиком условий п.п. 8.2.4 и/или 8.2.5 и/или 8.2.6 и/или 8.2.7 Договора;

о) выхода (или уменьшения доли) какого-либо из участников Заемщика из общества, за исключением случаев продажи участниками своей доли третьим лицам или другим участникам;

п) если общая сумма привлеченных Заемщиком от третьих лиц без согласования с Кредитором заимствований денежных средств (включая получение кредитов, эмиссию собственных векселей и иных форм привлечения денежных средств на возвратной основе, без учета обязательств по уплате процентов и выплате дохода по ценным бумагам), включая предоставленные Заемщиком третьим лицам поручительства/гарантии (в том числе в форме авалирования векселей, индоссирования векселей, за исключением «без оборота на меня»), включая суммы гарантий, предоставленных за Заемщика другими банками в пользу третьих лиц превысит на 500 000 000 (Пятьсот) миллионов рублей сумму обязательств Заемщика, существовавших на дату заключения Договора.

Сумма любого заимствования, привлеченного Заемщиком от третьих лиц, и/или предоставленных поручительств/гарантий (в том числе в форме авалирования векселей, индоссирования векселей, за исключением «без оборота на меня»), и/или гарантий, предоставленных за Заемщика другими банками в пользу третьих лиц, в иностранной валюте, пересчитывается в рубли по курсу Банка России на последнюю дату истекшего календарного квартала.

р) ухудшения финансового состояния Заемщика, что, по оценке Кредитора, ставит под угрозу своевременное выполнение обязательств по Договору;

с) снижения доли владения Акционерного коммерческого банка «ПРОБИЗНЕСБАНК» (Открытое акционерное общество), 119285, г. Москва, ул. Пудовкина, д.3, ОГРН 1027700508978 до уровня ниже 20 % в уставном капитале Заемщика.

Указанные выше нарушения условий Договора и изменения обстоятельств являются существенными для Кредитора.

При этом Кредитор извещает Заемщика о своих требованиях в порядке, предусмотренном Договором.

7.1.8. В одностороннем порядке закрыть свободный остаток лимита кредитной линии по Договору в случае прекращения выдачи кредита по причинам, указанным в п.7.1.7. Договора, о чем Кредитор уведомляет Заемщика в порядке, предусмотренном Договором.

7.1.9. Отказаться от обязанности выдать кредит полностью или частично при наличии обстоятельств, очевидно свидетельствующих о том, что сумма долга не будет возвращена Заемщиком в установленные Договором сроки.

7.1.10. В удобной для него форме осуществлять проверки достоверности предоставляемых Заемщиком отчетных и плановых показателей его хозяйственно-финансовой деятельности, а также требовать иные данные, имеющие отношение к использованию

кредитных средств и к исполнению обязательств по Договору.

7.1.11. Требовать от Заемщика в течение срока действия Договора заключения (обеспечения заключения) соглашения(ий) о праве Кредитора на безакцептное списание средств в погашение просроченной задолженности со счетов Заемщика, открытых в других банках, по форме и в сроки, установленные Кредитором.

Уведомление Заемщика об указанном требовании производится в порядке, предусмотренном Договором.

7.2. Кредитор принимает на себя следующие обязательства:

7.2.1. При выполнении условий, указанных в статье 3 Договора, а также, если на момент предоставления кредита не имеет место ни одно из условий, при которых Кредитор имеет право прекратить выдачу кредита и потребовать досрочного возврата кредита, производить перечисление сумм кредита в пределах свободного остатка лимита кредитной линии на расчетный счет Заемщика на основании распоряжений Заемщика, оформленных в соответствии с условиями Договора.

### Статья 8. Обязанности и права Заемщика

8.1. Заемщик имеет право:

8.1.1. При увеличении Кредитором процентной ставки в соответствии с п. 7.1.1. Договора погасить часть или всю сумму кредита с уплатой начисленных на дату погашения процентов, Комиссионных платежей и неустойки, за исключением неустойки в соответствии с п.п. 11.3, 11.4, 11.5 Договора, на прежних условиях в течение 30 (Тридцати) календарных дней с даты направления Кредитором Заемщику письменного уведомления об изменении условий предоставления кредита.

При этом Заемщик не уплачивает плату за досрочный возврат кредита.

8.2. Заемщик принимает на себя следующие обязательства:

8.2.1. В течение 5 (Пяти) рабочих дней с даты получения требования Кредитора о досрочном погашении кредита в соответствии с п. 7.1.7. Договора погасить ссудную задолженность по кредиту и уплатить причитающиеся проценты за пользование кредитом, Комиссионные платежи и неустойки, начисленные на дату погашения.

8.2.2. Использовать кредит строго по целевому назначению в соответствии со Статьей 1 Договора.

8.2.3. Предоставлять Кредитору правильно оформленные платежные документы и приложения в соответствии с целевым назначением кредита (п.1.1 Договора) не позднее планируемой даты использования соответствующей суммы кредита.

8.2.4. Предоставлять Кредитору ежеквартально не позднее 5 (Пяти) рабочих дней с даты окончания периода, установленного законодательством Российской Федерации для представления бухгалтерской отчетности в налоговые органы:

- бухгалтерский отчет в полном объеме по формам, установленным Минфином России, с отметкой о способе отправления документа в подразделение ФНС России, заверенный руководителем и печатью Заемщика, с приложением пояснительной записки (к годовой отчетности) и аудиторского заключения (или его итоговой части) (при обязательном по законодательству Российской Федерации аудите бухгалтерской отчетности);
- расшифровки кредиторской и дебиторской задолженности с указанием наименований кредиторов, должников, суммы задолженности и дат возникновения задолженности, с указанием статуса данной задолженности (просроченная/текущая);
- расшифровки краткосрочных и долгосрочных финансовых вложений с указанием видов, сумм вложений, наименований организаций и предприятий;
- расшифровки задолженности по долгосрочным и краткосрочным кредитам и займам (включая вексельные и облигационные) с указанием кредиторов, суммы задолженности, срока кредитования, процентной ставки (доходности купона), графика погашения и уплаты процентов, суммы просроченных процентов;
- расшифровки полученных обеспечений (с указанием от кого и в пользу кого получено) и выданных обеспечений (с указанием за кого и в пользу кого выдано, сроков исполнения

обязательств);

- справки об оборотах и остатках на расчетных счетах в валюте Российской Федерации и иностранной валюте и наличии претензий к счетам;
- информацию на последнюю отчетную дату о дочерних (более 50% в уставном капитале) и зависимых (более 20% в уставном капитале) организациях с указанием долей участия в уставном капитале дочерних или зависимых организаций в процентах;
- справку из подразделения ФНС России о состоянии расчетов с бюджетом или акт сверки расчетов с бюджетом (при наличии просроченной задолженности перед бюджетами какого-либо уровня – справку налогоплательщика с указанием сроков, объемов и причин возникновения долга);
- копии изменений и дополнений к учредительным документам (зарегистрированных в установленном законодательством порядке) и копии свидетельств о внесении записей в ЕГРЮЛ о государственной регистрации изменений в учредительные документы, удостоверенные нотариально или регистрирующим органом, если в течение истекшего календарного квартала внесены изменения в учредительные документы;
- информацию о персональном составе коллегиальных и исполнительных органов управления (Совета Директоров), о лице, осуществляющем функции единоличного исполнительного органа (с указанием занимаемой должности, в случае совмещения деятельности – иных мест работы), если в течение истекшего календарного квартала произошли изменения в составе исполнительных и/или коллегиальных органов управления, назначено новое лицо, осуществляющее функции единоличного исполнительного органа;
- информацию о персональном составе коллегиальных и исполнительных органов управления Управляющей компании (Наблюдательного совета / Совета Директоров / Правления), о лице, осуществляющем функции единоличного исполнительного органа (с указанием занимаемой должности, в случае совмещения деятельности – иных мест работы), если в течение истекшего календарного квартала заключен договор с Управляющей компанией, произошли изменения в составе исполнительных и/или коллегиальных органов управления Управляющей компании, назначено новое лицо, осуществляющее функции единоличного исполнительного органа, либо произошла замена Управляющей компании;
- информацию о составе участников, владеющих 5,0 и более процентами долей в уставном капитале, если в течение истекшего календарного квартала произошли изменения в составе участников, владеющих 5,0 и более процентами долей в уставном капитале;
- информацию об изменении доли владения АКЦИОНЕРНОГО КОММЕРЧЕСКОГО БАНКА «ПРОБИЗНЕСБАНК» (ОТКРЫТОЕ АКЦИОНЕРНОЕ ОБЩЕСТВО), 119285, г. Москва, ул. Пудовкина, д.3, ОГРН 1027700508978 в уставном капитале Заемщика, если указанные изменения произошли в течение истекшего календарного квартала.

Кроме того, Заемщик обязан по требованию Кредитора предоставлять другие отчетно-финансовые документы в течение 10 (Десяти) рабочих дней с даты получения указанного требования.

8.2.5. При ликвидации, реорганизации или уменьшении уставного капитала, изменении в составе участников уведомить Кредитора в течение 3 (Трех) рабочих дней с даты принятия соответствующего решения уполномоченным коллегиальным органом управления. Уведомление Кредитора производится в порядке, предусмотренном Договором.

8.2.6. Письменно согласовывать с Кредитором осуществление новых заимствований у третьих лиц (включая получение кредитов, эмиссию собственных векселей и иные формы привлечения денежных средств на возвратной основе) и/или предоставление третьим лицам любого поручительства/гарантии (в том числе в форме авалирования векселей, индоссирования векселей, за исключением «без оборота на меня»), и/или предоставление за Заемщика другими банками гарантий в пользу третьих лиц, а также пролонгацию или рефинансирование заимствований, если общий размер обязательств превысит на 500 000 000 (Пятьсот миллионов) рублей сумму обязательств Заемщика, существовавших на дату заключения Договора.

Предоставлять Кредитору надлежаще заверенные копии соответствующих договоров (дополнительных соглашений), а также, по требованию Кредитора, надлежаще заверенные

дополнительные документы, необходимые Кредитору для проверки выполнения условия, указанного в подпункте 7.1.7 п) Договора.

Указанные сделки совершаются только после получения письменного согласия Кредитора.

8.2.7. До полного исполнения обязательств по Договору перед Кредитором не проводить изменение собственного уставного капитала без письменного согласования с Кредитором.

8.2.8. Предоставить дополнительное обеспечение либо погасить необеспеченную сумму кредита в течение 10 (Десяти) рабочих дней с даты получения соответствующего извещения Кредитора в случае, если в период действия Договора залоговая стоимость предмета(ов) залога, указанного(ых) в Договоре ипотеки № 1758/1 от «04» августа 2011г., пп. 9.1.2. Договора, в результате утраты предмета(ов) залога (вследствие гибели, недостачи, выбытия, повреждения, хищения, угона, а также по иным причинам, не зависящим от Кредитора) стала меньше обязательств по Договору (ссудная задолженность по кредиту и проценты, начисленные исходя из процентной ставки по Договору за 6 месяцев пользования кредитом или до даты полного погашения кредита, указанной в п. 1.1 Договора в случае, если до указанной даты осталось менее 6 месяцев). Под залоговой стоимостью предмета(ов) залога в целях настоящего подпункта понимается залоговая стоимость предмета(ов) залога, определенная в соответствии с условиями Договора ипотеки № 1758/1 от «04» августа 2011г., пп. 9.1.2. Договора, за вычетом залоговой стоимости утраченного(ых) предмета(ов) залога.

8.2.9. При предъявлении залогодателю по кредиту иска об уплате денежной суммы или об истребовании имущества, размер которого ставит под угрозу выполнение обязательств по договору залога и/или предъявлении заявления в арбитражный суд о признании залогодателя несостоятельным (банкротом) в установленном действующим законодательством порядке, и/или принятии решений о реорганизации, ликвидации или уменьшении уставного капитала обеспечить замену в течение 20 (Двадцати) календарных дней с даты отправления Кредитором требования о замене заложенного имущества на аналогичную сумму. При этом, состав заложенного имущества должен быть приемлемым для Кредитора и им согласован.

8.2.10. Заключить соглашение о праве Кредитора на безакцептное списание средств в погашение просроченной задолженности с новых счетов Заемщика, открываемых у Кредитора, в течение 5 (Пяти) рабочих дней с даты выдачи Кредитором уведомления об открытии нового счета, а также, по требованию Кредитора, со счетов Заемщика. Уведомление Заемщика об указанном требовании производится в порядке, предусмотренном Договором.

8.2.11. Предоставлять документы, подтверждающие целевое использование кредитных средств, по требованию Кредитора и в сроки, указанные в требовании.

8.2.12. Уведомлять Кредитора в порядке, предусмотренном Договором, о возможном наступлении случаев и событий, указанных в п. 7.1.7 Договора, а также о фактическом наступлении указанных случаев и событий.

8.2.13. Осуществлять предварительное письменное согласование с Кредитором основных условий заключаемых договоров (в том числе предварительных договоров) и дополнительных соглашений к ним, предметом сделки которых являются площади Объекта.

8.2.14. Осуществлять расчеты, связанные со строительством Объекта, реализацией площадей Объекта через счета, открытые у Кредитора.

8.2.15. Перечислять денежные средства, поступившие в результате заключения договоров купли-продажи или иных договоров, в соответствии с которыми происходит отчуждение площадей Объекта, предоставленных в залог Кредитору в соответствии с п. 9.1.1 Договора, в счет досрочного погашения задолженности по кредиту в размере, не меньшем залоговой стоимости отчуждаемых площадей Объекта, установленной в договоре залога, заключенном в соответствии с п. 9.1.1 Договора, в срок не позднее 3 (Трех) рабочих дней с даты поступления денежных средств на счета Заемщика.

8.2.16. Ежеквартально, в течение 5 (Пяти) рабочих дней после окончания каждого календарного квартала, предоставлять Кредитору справку Заемщика об оборотах по расчетным и текущим валютным счетам с указанием контрагентов и назначений платежей, произведенных

**Кредитор**

**Заемщик** 13

*Договор об открытии невозобновляемой кредитной линии № 1758 от «04» августа 2011г.*

и полученных Заемщиком за последний календарный квартал.

## Статья 9. Обеспечение

9.1. В качестве обеспечения своевременного и полного выполнения обязательств Заемщика по Договору, в том числе возврата кредита, уплаты процентов, Комиссионных платежей, предусмотренных условиями Договора, Заемщик предоставляет/обеспечивает предоставление Кредитору:

9.1.1. залог объектов недвижимости – квартиры в малоэтажных блокированных жилых домах, расположенные по адресу: Московская область, г. Ивантеевка, ул. Санаторная, д. 1, принадлежащие Обществу с ограниченной ответственностью «Пробизнес-Девелопмент» (ОГРН 1077746278279, местонахождение: 125195, г.Москва, ул. Беломорская, д.6А ), в соответствии с Договором ипотеки № 1758/1 от «04» августа 2011г.

9.1.2 залог земельного участка по адресу: Московская область, г. Ивантеевка, ул. Санаторная, д. 1 кадастровый номер 50:43:070101:31, принадлежащего Обществу с ограниченной ответственностью «М.К.Ф. Система-Бриз» (ОГРН 1027739831283, местонахождение: Россия, г. Москва, ул. Беломорская, д. 6А) залоговой стоимостью не менее 88 548 000 (Восемьдесят восемь миллионов пятьсот сорок восемь тысяч) рублей. Залоговая стоимость определяется на основании оценочной с использованием дисконта в размере 30 (Тридцать) процентов.

9.1.3. Доли участия в уставном капитале Общества с ограниченной ответственностью «Пробизнес-Девелопмент» (ОГРН 1077746278279, местонахождение: 125195, г. Москва, ул. Беломорская, д.6А), именуемого далее «Общество», принадлежащие АКЦИОНЕРНОМУ КОММЕРЧЕСКОМУ БАНКУ «ПРОБИЗНЕСБАНК» (ОТКРЫТОЕ АКЦИОНЕРНОЕ ОБЩЕСТВО), ОГРН 1027700508978, в размере не менее 20 (Двадцать) процентов от уставного капитала на дату заключения договора залога.

В дальнейшем, в случае увеличения уставного капитала Общества, Заемщик обязуется в течение 10 (Десяти) рабочих дней с даты регистрации уполномоченными государственными органами изменений, вносимых в учредительные документы Общества, обеспечить предоставление Кредитору доли в уставном капитале Общества в таком размере, чтобы доля уставного капитала Общества, находящегося в залоге у Кредитора, составляла после увеличения не менее 20 (Двадцать) процентов от уставного капитала Общества.

## Статья 10. Страхование

10.1. Заемщик обязан застраховать имущество, переданное в залог в соответствии с п.п. 9.1.1 Договора, от риска гибели, утраты, недостачи или повреждения, с назначением в качестве выгодоприобретателя Кредитора на все случаи, предусмотренные правилами страхования страховщика (необходимый пакет), и своевременно продлевать страхование до полного исполнения обязательств по Договору.

10.2. При страховании имущества Заемщик должен предварительно согласовать с Кредитором условия договора страхования, в том числе, но не исключительно, страховую сумму, возможность продления срока действия договора страхования.

Страхование может осуществляться всеми страховыми компаниями, удовлетворяющими требованиям Кредитора, в том числе заключившими с Кредитором Соглашение о сотрудничестве и включенными в публикуемый на официальном сайте Кредитора в сети Интернет перечень страховых компаний, участвующих в страховании залогового имущества.

Если по истечении срока действия договора страхования страховая компания перестала удовлетворять требованиям Кредитора, опубликованным на его официальном сайте в сети Интернет, Кредитор вправе потребовать заменить страховую компанию, а Заемщик обязан заменить страховую компанию в срок, указанный в требовании Кредитора.

Заемщик обязан передать Кредитору копию страхового полиса (если такой имеется) и/или копию договора страхования (если такой имеется) (дополнительного соглашения о продлении срока действия договора страхования), заверенные подписью руководителя и

печатью Заемщика, в течение 3 (Трех) рабочих дней с даты заключения договора страхования или дополнительного соглашения о продлении срока действия договора страхования.

При продлении срока действия договора страхования страховая сумма может быть изменена по согласованию с Кредитором.

При заключении договора страхования Заемщик обязан заключить соглашение(я) между Кредитором, страховой компанией и Заемщиком о перечислении страхового возмещения по заложенному имуществу только на погашение обеспеченной залогом застрахованного имущества задолженности по Договору, к которым оформлены соглашения о безакцептном списании средств в пользу Кредитора.

При заключении нового договора страхования или дополнительного соглашения о продлении срока действия договора страхования Заемщик обязан в течение 3 (Трех) рабочих дней с даты заключения нового договора страхования или дополнительного соглашения о продлении срока действия договора страхования заключить новое соглашение о порядке работы со страховым возмещением. При этом условия соглашения о порядке работы со страховым возмещением определяются Кредитором в одностороннем порядке.

Замена выгодоприобретателя по договору страхования возможна только после получения письменного согласия Кредитора.

### Статья 11. Ответственность Сторон

11.1. За неисполнение или ненадлежащее исполнение обязательств по Договору Стороны несут ответственность в соответствии с действующим законодательством Российской Федерации.

11.2. При несвоевременном перечислении платежа в погашение кредита, или уплату процентов, или Комиссионных платежей, за исключением платы за досрочный возврат кредита, Заемщик уплачивает Кредитору неустойку процентной ставки, указанной в п. 4.1 увеличенной в 2 (Два) раза, в процентах годовых. Неустойка начисляется на сумму просроченного платежа за каждый день просрочки в период с даты возникновения просроченной задолженности (не включая эту дату) по дату полного погашения просроченной задолженности (включительно).

Под датой возникновения просроченной задолженности в рамках Договора понимается Дата платежа, в которую Заемщиком не исполнены предусмотренные Договором обязательства.

11.3. В случае неуведомления или несвоевременного уведомления Кредитора об изменениях состава и полномочий должностных лиц, уполномоченных на заключение каких-либо сделок от имени Заемщика, оттиска печати и иных сведений, необходимых Кредитору для надлежащего выполнения им обязательств по Договору:

а) Кредитор не несет ответственности за последствия исполнения распоряжений Заемщика на перечисление кредита, подписанных неуполномоченными лицами;

б) Заемщик уплачивает Кредитору неустойку в размере 100 000 (Сто тысяч) рублей. Неустойка подлежит уплате в течение 5 (Пять) рабочих дней с момента получения от Кредитора соответствующего извещения об уплате неустойки (включая дату получения).

11.4. В случае нарушения условия, предусмотренного п. 14.5. Договора Заемщик уплачивает Кредитору неустойку в размере 0,01 (Ноль целых одна сотая) процентов от лимита кредитной линии, указанного в п. 1.1. Договора. Неустойка подлежит уплате в течение 5 (Пять) рабочих дней с даты получения от Кредитора соответствующего извещения об уплате неустойки (включая дату получения).

11.5. В случае неисполнения условия п. 8.2.4. Договора Заемщик уплачивает Кредитору неустойку в размере 0,01 (Ноль целых одна сотая) процентов от лимита кредитной линии, указанного в п. 1.1. Договора. Неустойка подлежит уплате в течение 5 (Пять) рабочих дней с даты получения от Кредитора соответствующего извещения об уплате неустойки (включая дату получения).

### Статья 12. Особые условия

12.1. Кредитор не вправе предоставлять в бюро кредитных историй (зарегистрированных в соответствии с законодательством Российской Федерации) информацию о Заемщике,

---

**Кредитор**                                          **Заемщик** 15

*Договор об открытии невозобновляемой кредитной линии № 1758  от «04» августа 2011г.*

предусмотренную статьей 4 Федерального закона «О кредитных историях» № 218-ФЗ от 30.12.2004г.

12.2. Заемщик обязан:

а) обеспечить предоставление обеспечения, указанного в п.п. 9.1.2, 9.1.3 Договора в течение 45 дней с даты заключения Договора, включая регистрацию залога в уполномоченных государственных органах, и при условии заключения соглашения о внесудебном порядке обращения взыскания на указанное обеспечение;

б) после предоставления кредита на погашение ссудной задолженности по кредиту ОАО КБ «Солидарность» в полном объеме предоставить Кредитору в течение 3 (Трех) рабочих дней с даты предоставления Кредитором кредитных средств документы, подтверждающие погашение ссудной задолженности Заемщика перед ОАО КБ «Солидарность» в полном объеме, а в течение 15 (Пятнадцать) рабочих дней от указанной даты – документы, подтверждающие закрытие ссудного счета;

в) не заключать без  письменного согласования с Кредитором сделки или несколько взаимосвязанных сделок, связанных с отчуждением или возможностью отчуждения прямо либо косвенно имущества, если балансовая стоимость такого имущества (суммарная балансовая стоимость при заключении нескольких взаимосвязанных сделок) составляет более 300 000 000 (Триста миллионов) рублей в соответствии с бухгалтерской  отчетностью на последнюю отчетную дату;

г) не заключать без  письменного согласования с Кредитором сделки или несколько взаимосвязанных сделок, связанных с обременением залогом имущественных активов, принадлежащих Заемщику, балансовая стоимость которых в соответствии с бухгалтерской отчетностью на последнюю отчетную дату превышает 300 000 000 (Триста миллионов) рублей, по своим обязательствам перед третьими лицами или обязательствам третьих лиц;

д) предоставлять Кредитору ежемесячные отчеты о реализации площадей Объекта по форме, согласованной с Кредитором, и подтвержденные выписками из ЕГРП;

е) до полного исполнения обязательств по Договору перед Кредитором не проводить без письменного согласования с Кредитором:

- изменение состава участников общества;

- изменение уставного капитала общества;

- изменение организационно-правовой формы общества;

- изменение органов управления и/или полномочий;

- создание дочерних и зависимых обществ;

ж) до полного исполнения обязательств по Договору перед Кредитором не распределять собственную чистую прибыль между участниками Заемщика без письменного согласования с Кредитором;

з) поддерживать в течение срока действия Договора значение величины чистых активов в размере не ниже установленного законодательством Российской Федерации  минимального значения уставного капитала;

и) в срок до 01.07.2012 заключить Дополнительное соглашение к Договору инвестирования №ИН-2/19-д-07 от 19.12.2007 с ООО «М.К.Ф. Система Бриз» (ОГРН 1027739831283, местонахождение: Россия, г. Москва, ул. Беломорская, д. 6А) об  уточнении земельных участков, на которых ведется строительство Объекта.

12.3. Кредитор имеет право прекратить выдачу кредита и/или потребовать от Заемщика досрочного возврата всей суммы кредита и уплаты причитающихся процентов за пользование кредитом, неустоек и других платежей, предусмотренных условиями Договора, а также обратить взыскание на заложенное имущество в случае невыполнения Заемщиком обязательств, предусмотренных п.12.2. Договора.

12.4. Предмет залога, указанный в п.п. 9.1.1 Договора может быть частично освобожден Кредитором от залога после перечисления в счет погашения задолженности по Договору денежных средств в сумме не менее залоговой стоимости освобождаемых от залога квартир.

**Статья 13. Срок действия Договора**

**Кредитор**                                                                                        **Заемщик** 16

*Договор об открытии невозобновляемой кредитной линии № 1758  от «04» августа 2011г.*

13.1. Договор вступает в силу с даты его подписания Сторонами и действует до полного выполнения Сторонами своих обязательств по Договору.

## Статья 14. Прочие условия

14.1. Все изменения и дополнения к Договору, кроме случаев, указанных в п.п. 7.1.1, 7.1.2, 7.1.3, 7.1.8 Договора, действительны лишь в том случае, если они совершены в письменной форме и подписаны уполномоченными на то лицами.

14.2. В случае изменения одной из Сторон своего местонахождения или почтового адреса она обязана информировать об этом другую Сторону в срок не позднее 1 (Одного) рабочего дня с даты указанных изменений.

В случае изменения у одной из Сторон банковских реквизитов, она обязана информировать об этом другую Сторону до вступления изменений в силу.

Заемщик обязан уведомить Кредитора об изменениях состава и полномочий должностных лиц, уполномоченных на заключение каких-либо сделок от имени Заемщика, оттиска печати и иных сведений, необходимых Кредитору для надлежащего выполнения им обязательств по Договору, не позднее дня вступления изменений в силу с предоставлением в течение 3 (Трех) рабочих дней копий подтверждающих документов, заверенных надлежащим образом.

14.3. Любое уведомление и иное сообщение, направляемое Сторонами друг другу по Договору, должно быть совершено в письменной форме. Такое уведомление или сообщение считается направленным надлежащим образом, если оно доставлено адресату посыльным или заказным письмом по адресу, указанному в Договоре (или по адресу, указанному Стороной в соответствии с п.14.2. Договора), и за подписью уполномоченного лица.

14.4. Все споры по Договору рассматриваются в соответствии с действующим законодательством Российской Федерации в Арбитражном суде города Москвы.

14.5. Заемщик обязуется не разглашать в любой форме (в том числе, но не исключительно: в форме интервью, публикаций, рекламных акций) информацию, касающуюся условий Договора без письменного согласия Кредитора.

Данное условие не распространяется на обязательное предоставление информации в случаях, определенных законодательством Российской Федерации, а также в случае необходимости предоставления такой информации Заемщиком в рамках существующих или вновь принятых на себя обязательств по раскрытию информации перед другими кредиторами, рейтинговыми агентствами, финансовыми институтами.

14.6. Заемщик обязан обеспечить предоставление физическими лицами, чьи персональные данные содержатся в предоставляемых им Кредитору документах, согласия на проверку и обработку (включая автоматизированную обработку) этих данных Кредитором в соответствии с требованиями действующего законодательства Российской Федерации, в том числе Федерального закона «О персональных данных» №152-ФЗ от 27.07.2006г.

14.7. Приложение №1, Приложение №2 и Приложение №3 являются неотъемлемой частью Договора.

14.8. Договор составлен в двух экземплярах, имеющих одинаковую юридическую силу, один экземпляр для Кредитора и Заемщика.

## Статья 15. Местонахождение и реквизиты Сторон

15.1. **Кредитор:** Открытое акционерное общество «Сбербанк России», филиал – Московский банк Сбербанка России ОАО

Местонахождение: 117997, г. Москва, ул. Вавилова, дом 19.

Почтовый адрес: 109544, Москва, Б. Андроньевская, д.6, Московский банк  Сбербанка России ОАО

ИНН 7707083893, ОГРН 1027700132195, КПП 775001001, ОКПО 57972160.

рреспондентский счет № 30101810400000000225 в ОПЕРУ Московского ГТУ Банка России
счетный счет № 3030181050001000014 в ОАО «Сбербанк России», БИК 044525225
факс: 781-12-35, 781-12-70
2. **Заемщик:** Общество с ограниченной ответственностью «Пробизнес-Девелопмент»
естонахождение: 125195, г.Москва, ул. Беломорская, д.6А
чтовый адрес: 125195, г.Москва, ул. Беломорская, д.6А
НН 7743629120, ОГРН 1077746278279, КПП 774301001, ОКПО 99068167.
счетный счет № 40702810538180003904 в ОАО «Сбербанк России», филиале – Московский
нк Сбербанка России ОАО
лефон: (495) 933-37-37 доб.2000, (495) 933-37-37 доб.2025

## Подписи сторон

|  |  |
|---|---|
| **Кредитор** | **Заемщик** |

| Директор Управления кредитования | Генеральный директор |
| Московского банка | ООО «Пробизнес-Девелопмент» |
| Сбербанка России ОАО | |



И.С.Белов                                                              Д.К.Ковальчук

М.П.                                                                      М.П.

к договору об открытии невозобновляемой кредитной линии
№1758  от  «04» августа 2011г.

## Состав компаний Группы

| № п/п | Полное наименование компании | ОГРН | Местонахождение |
|---|---|---|---|
| 1. | ООО «Пробизнес-Девелопмент» | 1077746278279 | 125195, г.Москва, ул. Беломорская, д.6А |
| 2. | ОАО АКБ "Пробизнесбанк" | 1027700508978 | 119285, г. Москва, ул. Пудовкина, д.3 |
| 3. | ООО "М.К.Ф. Система-Бриз" | 1027739831283 | 125195, г.Москва, ул. Беломорская, д.6А |

## Подписи Сторон

**Кредитор**
Директор Управления кредитования
Московского  банка
Сбербанка России ОАО

_____ П.С.Белов

М.П.

**Заемщик**
Генеральный директор
ООО «Пробизнес-Девелопмент»

_____ Д.К.Ковальчук

М.П.

_____
**Кредитор**                                                   **Заемщик**

*Договор об открытии невозобновляемой кредитной линии № 1758  от «04» августа 2011г*

19

Приложение №2 к Договору об открытии невозобновляемой кредитной линии № 1758 от 04.08.2011 г.

| Полное наименование компании - владельца счета | ОГРН | Местонахождение | Вид счета | Номер счета | Подразделение Кредитора |
|---|---|---|---|---|---|
| Счет Заемщика, на который производится перечисление кредита: | | | | | |
| Общество с ограниченной ответственностью «Пробизнес-Девелопмент» | 1077746 278279 | г.Москва, ул. Беломорская, д.6А | 40702810538180003904 | | Московский банк ОАО «Сбербанк России» |
| Счета, по которым оформляются соглашения о праве Кредитора на безакцептное списание средств в погашение просроченной задолженности: | | | | | |
| Общество с ограниченной ответственностью «Пробизнес-Девелопмент» | 1077746 278279 | г.Москва, ул. Беломорская, д.6А | 40702810538180003904 | | Московский банк ОАО «Сбербанк России» |
| | | | | | |
| | | | | | |

**Подписи Сторон**

**Кредитор**
Директор     Управления     кредитования
Московского банка ОАО «Сбербанк России»

П.С.Белов

М.П.

**Заемщик**
Генеральный директор
ООО «Пробизнес-Девелопмент»

Д.К.Ковальчук

М.П.

Заемщик                    20

*Договор об открытии невозобновляемой кредитной линии № 1758  от «04» августа 2011г*

Приложение № 3

к Договору об открытии невозобновляемой

кредитной линии  № 1758  от «04» августа2011г.

Управление кредитования

Московского банка Сбербанка России ОАО

Исх. № _____ от ___.___.200__г.

РАСПОРЯЖЕНИЕ НА ПЕРЕЧИСЛЕНИЕ КРЕДИТА

Прошу предоставить кредитные средства в соответствии со следующими условиями:

| | |
|---|---|
| 1. Наименование Заемщика | Общество с ограниченной ответственностью «Пробизнес-Девелопмент» |
| 2. Договор об открытии невозобновляемой кредитной линии | № 1758 от «04» августа 2011г. |
| 3. Дата предоставления кредитных средств | |
| 4. Сумма, валюта кредита | _____ (_____) *(цифрами и прописью) с указанием валюты кредита* |
| 5. Расчетный счет | 40702810538180003904 |

_____       _____       (Ф.И.О.)

(Указывается должность уполномоченного          (подпись)
на распоряжение кредитными средствами
лица Заемщика)

Главный бухгалтер Заемщика          _____       (Ф.И.О.)

(Указывается при наличии)          (подпись)
М.П.

или

Подтверждение ЭЦП лица, уполномоченного Заемщиком на распоряжение кредитными средствами.

**Подписи сторон**

| **Кредитор** | **Заемщик** |
|---|---|

Директор Управления кредитования          Генеральный директор
Московского  банка          ООО «Пробизнес-Девелопмент»
Сбербанка России ОАО

П.С.Белов          Д.К.Ковальчук

М.П.

**Кредитор**          **Заемщик**  21

*Договор об открытии невозобновляемой кредитной линии № 1758  от «04» августа 2011г.*

*Всего прошит, пронумерован, скреплен печатями 21 (Двадцать один) лист*

| **Кредитор** | **Заемщик** |
|---|---|
| Директор | Генеральный директор |
| Управления кредитования | ООО «Пробизнес-Девелопмент» |
| Московского банка | |
| Сбербанка России ОАО | |
| _____ П.С.Белов | _____ Д.К.Ковальчук |
| М.П. | М.П. |



translations@geotext.com
wwww.geotext.com

STATE OF NEW YORK )
)
) ss
COUNTY OF NEW YORK )

### CERTIFICATION

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate translation from Russian into English of the attached Agreement No. 1758, dated August 4, 2011.

Kristen Duffy, Senior Managing Editor
Geotext Translations, Inc.

Sworn to and subscribed before me

this _3_ day of _January_, 20_18_.

JEFFREY AARON CURETON
NOTARY PUBLIC-STATE OF NEW YORK
No. 01CU6169789
Qualified in New York County
My Commission Expires September 23, 2019

New York
t: +1.212.631.7432

Washington, D.C.
t: +1.202.828.1267

Chicago
t: +1.312.242.3756

Houston
t: +1.713.353.3909

San Francisco
t: +1.415.576.9500

London
t: +44.20.7553.4100

Paris
t: +33.1.42.68.51.47

Stockholm
t: +46.8.463.11.87

Frankfurt
t: +49.69.7593.8434

Hong Kong
t: +852.2159.9143