# EXHIBIT 28

# SBERBANK OF RUSSIA
Founded in 1841

Code 012140027/5
BKI

**AGREEMENT No. 2017**
**on the Opening of a Nonrevolving Credit Line**

Moscow                                                                                    January 10, 2013

Sberbank of Russia Open Joint Stock Company, hereinafter referred to as "the Creditor," represented by Pyotr Sergeyevich Belov, director of the Lending Department of the Moscow Bank, acting on the basis of the Charter; the Statute on the Moscow Bank, a branch of Sberbank of Russia Open Joint Stock Company; and power of attorney No. 365 dated April 1, 2011, the party of the first part, and Kholmeks Limited Liability Company, hereinafter referred to as "the Borrower," represented by Aleksey Igorevich Pakhomov, acting on the basis of a power of attorney dated 12/27/2012, the party of the second part, hereinafter jointly referred to as "the Parties," have entered into this agreement, hereinafter referred to as "the Agreement, as to the following:

## Article 1. Subject of the Agreement

1.1. The Creditor shall open for the Borrower a nonrevolving credit line for the financing of expenditures on the project for construction of "the Residential Development on the Land Parcel at the address: Village of Podolino, Solnechnogorsk District, Moscow Region," located at the address: Village of Podolino, Solnechnogorsk District, Moscow Region (hereinafter, the Facility), referred to as a whole as the Project, and the refinancing of expenditures on the Project, including for repayment of the debt under the Agreement on the Rescission of the Agreement on Investment in the Construction of a Residential Development at the address: Village of Podolino, Solnechnogorsk District, Moscow Region, No. IN-3/25-a-08 dated 4/25/2008, with a provision on the novation of a debt into a loan obligation, which was entered into by and between the Borrower and Probusiness Development Limited Liability Company (hereinafter, the Loan), in an amount of not more than 368,410,000 (three hundred sixty-eight million four hundred ten thousand) rubles for the term through December 28, 2015, with the following limit:

| Effective period of limit | Amount of limit |
|---|---|
| From January 10, 2012, through June 9, 2014 | 919,800,000 (nine hundred nineteen million eight hundred thousand) rubles |

The Borrower shall repay the Creditor the credit received and shall pay interest for its use and other fees in the amounts, according to the schedule and under the terms and conditions of the Agreement.

## Article 2. Representations and Warranties

2.1. The Borrower is a legal entity that was duly established and operates legally under the laws of the Russian Federation.

2.2. The Borrower affirms that all the consents required to enter into the Agreement and other contracts and agreements provided for by the Agreement have been obtained and have taken effect or, if they have not been obtained, they will be obtained and/or will take effect in the prescribed manner before the relevant contracts and agreements are entered into pursuant to the current laws of the Russian Federation.

2.3. The Borrower represents that the situations and events enumerated in clause 7.1.7 herein have not occurred as of the date of the Agreement and shall take all actions to ensure that they do not occur during the term of the Agreement.

2.4. All the factual information provided by the Borrower to the Creditor is true and correct in all material aspects as of the date that it was provided. As of the execution date of the Agreement no information was

**Creditor**                                                                                    **Borrower**

concealed that could, as a result, render the information provided untrue or misleading to the Creditor in any material aspects.

2.5. No judicial, arbitrazh or administrative proceedings have been instituted against the Borrower in any court, arbitrazh authority or body such that they could make it impossible for the Borrower to properly perform its obligations hereunder.

2.6. The Borrower has implemented and complied with, and currently implements and complies in, all material aspects with the requirements of laws such that failure to implement or comply with them could make it impossible for the Borrower to properly perform its obligations hereunder.

2.7. The Borrower has a valid and legal title or legal right to use and operate the assets required to conduct its activities.

2.8. To the Borrower's knowledge, there are no events or circumstances that could affect its performance of obligations under any other contracts or financial instruments or that could make it impossible for the Borrower to properly perform its obligations hereunder.

2.9. The Borrower's entry into, and performance of, the Agreement do not contravene its constitutional documents.

## Article 3. Procedure for Provision of the Facility

3.1. The issuance of any amount of the credit shall be effected within the bounds of the available balance of the limit, as determined according to the following formula:

ABL = Lim – (LB + RB), where

ABL is the available balance of the limit;
Lim is the limit specified in clause 1.1 herein;
LB is the actual outstanding loan balance on the credit as of the current date;
RB is the amount of the credit previously repaid.
The repayment of any amount of the credit shall not increase the available balance of the limit of the credit line.

3.2. The credit shall be issued by transferring the amounts of credit to the Borrower's transaction account specified in Addendum 1 on the basis of the Borrower's instructions set out in accordance with Addendum 2 hereto.

The amounts of the credit shall be transferred if there is no overdue indebtedness or unpaid penalties under the Agreement or under any other credit facility agreements (including agreements on the opening of a credit line) and/or other agreements and/or suretyship agreements and/or agreements on granting bank guarantees/counter-guarantees/suretyships that have been entered into by and between the Creditor and the Borrower.

Payouts of funds as part of each installment shall be made after the Borrower submits duly completed documents that certify the targeted use of the funds, in accordance with clause 8.2.12 herein, and the Creditor conducts an expert review of the submitted documents and the work performed on the Facility.

3.3. The credit shall be issued:

3.3.1. After the security for the credit as specified in clauses 9.1.1–9.1.8 herein has been properly formalized in accordance with the requirements of current Russian Federation law, including the transfer by the pledgor to the Creditor of the collateral, in respect of the security specified in clause 9.1.4, and the registration of the pledge with the authorized state bodies in respect of the security specified in clause 9.1.2 herein.

3.3.2. After the entry into, and submission to the Creditor of, the agreement(s) on the Creditor's right to directly debit funds from the payer to pay off overdue indebtedness from the account(s) of the Borrower or the surety, as specified in Addendum 1.

3.3.3. After the transfer of the fee for the opening of the credit line.

3.3.4. After the conditions specified in clause 10.3 herein are met.

3.3.5. After the Borrower effects the subordination of borrowed funds to the Creditor's credit and the Borrower submits to the Creditor documents whose content and form are satisfactory to the Creditor and which certify the reprocessing of funds borrowed as of the execution date of the Credit Facility Agreement for a term that exceeds the term of the credit by at least 6 (six) months.

In the process, borrowed funds in the amount of at least 416,667,406 (four hundred sixteen million six hundred sixty-seven thousand four hundred six) rubles must be subordinated to the Creditor's credit by means of conversion to promissory notes of the Borrower with a maturity date that is at least 6 (six) months later than the expiration date of the credit, with said notes to be then processed as collateral pledged to the Creditor.

3.3.6. After submission by the Borrower to the Creditor of documents certifying the sources of payment of interest on the Creditor's credit in the investment phase in a form and content satisfactory to the Creditor (including by submitting documents certifying the entry into a loan agreement with Life Factoring Company LLC for an amount of at least 128,200,000 (one hundred twenty-eight million two hundred thousand) rubles, whose term must exceed the term of the credit by at least 6 (six) months.

3.3.7. After submission by the Borrower to the Creditor of all executed contracts (with all revisions and additions) related to the transfer of units in the Facility on which payment has not been made, as well as a memorandum from the Borrower on the contracts that have been entered into as of the execution date of the Credit Facility Agreement.

3.3.8. After submission to the Creditor of a copy of duly processed revisions of the project statement of the Kholmeks Limited Liability Company for construction of the Facility, including the following points:

• the projected cost of construction of the Facility;

• a presentation in the project statement of the structure of financing of the Facility, including the Creditor's credit funds in the amount specified in clause 1.1 herein;

• a reference in the project statement to the fact that the Developer shall carry out construction of the Facility by using the Creditor's credit funds;

• a reference in the project statement that the land parcels specified in clause 9.1.2 herein shall be held as collateral by the Creditor;

a notation of the Federal Registration Service confirming receipt of the above document.

3.4. The credit shall be issued through June 9, 2014 (hereinafter, the Availability Period Expiration Date). If the Borrower has not made full use of the credit line by the Availability Period Expiration Date, the available balance of the limit of the credit line shall be closed.

3.5. The issuance of the credit shall be recorded in separate loan accounts that are to be opened by the Creditor under the Agreement, depending on the period from the issuance date (not including said date) through the date of full repayment of the credit specified in clause 1.1 herein (inclusive).

## Article 4. Interest and Fees

4.1. The Borrower shall pay the Creditor interest for use of the credit at a rate of 13.5 (thirteen and five-tenths) percent per annum.

4.2. The interest shall accrue on the amount of the actual outstanding loan balance on the credit beginning on the date following the date on which the indebtedness forms in the loan account(s) (inclusive) through the date of full repayment of the credit (inclusive).

Interest shall be paid on March 28, 2013, and thereafter on a quarterly basis on the 28th day of each calendar quarter and on the date of full repayment of the credit specified in clause 1.1 herein, or on the date of full repayment of the credit effected before the date specified in clause 1.1 herein, provided that the credit line limit has been drawn down in full and/or after the Availability Period Expiration Date, in the amount of the interest accrued as of the aforementioned date(s) (inclusive).

In the event of late repayment of the credit (delinquency) interest shall not accrue on the amount of the credit not repaid on time, beginning on the date following the date of repayment of the relevant amount of the credit, as specified in clause 6.1 herein.

4.3. The Borrower shall be charged a fee for the opening of the credit line in the amount of 1 (one) percent of the credit line limit specified in clause 1.1 herein, which is 9,198,000 (nine million one hundred ninety-eight thousand) rubles.

The fee for the opening of the credit line shall be paid by the Borrower to the Creditor in a lump sum before the first issuance of the credit, but no later than February 6, 2013.

4.4. The Borrower shall be charged a fee for use of the credit line limit in the amount of 1 (one) percent per annum of the available balance of the limit, as calculated in accordance with clause 3.1 herein.

The fee shall be charged for the period from the effective date of the limit specified in clause 1.1 herein (not including that date) through the Availability Period Expiration Date or through the date of full repayment of the credit effected before the Availability Period Expiration Date, provided that the credit line limit has been drawn down in full (inclusive).

The fee for use of the credit line limit shall be paid by the Borrower to the Creditor on the dates set by the terms and conditions of the Agreement for interest payments, in the amount of the fee charged as of the aforementioned dates (inclusive).

4.5. If the credit is repaid (in full or in part) before the dates set by clause 6.1 herein without prior written notice or with notice fewer than 30 (thirty) calendar days before the repayment date (inclusive, with the date of receipt of the notice by the Creditor not included in the calculation of the number of days), the Borrower shall pay the Creditor a fee for prepayment of the credit.

The fee shall be paid in the amount of 2 (two) percent per annum of the amount of the credit repaid early, for the period from the date of the actual repayment of the debt (not including such date), and if repayment is made pursuant to clause 5.12 herein, then from the date of receipt by the Creditor of the Borrower's written notification (not including such date), through the date closest to it that is specified in clause 6.1 herein and for which there is an unrepaid outstanding loan balance on the credit in the relevant amount.

The fee for prepayment of the credit shall be paid by the Borrower to the Creditor simultaneously with the remittance of the prepayment of the outstanding loan balance on the credit.

A fee for prepayment of the credit shall not be charged:

- if funds are received toward repayment of the credit in accordance with clauses 8.1.1, 8.2.1 or 8.2.8 herein;
- if insurance indemnity funds are received toward repayment of the credit in accordance with the terms and conditions of the insurance on the property processed as collateral;
- in the event of prepayment of amounts of the credit if the period from the date of the actual repayment of the debt (not including such date), and if repayment is made pursuant to clause 5.12 herein, then from the date of receipt by the Creditor of the Borrower's written notification (not including such date), through the date closest to it that is specified in clause 6.1 herein and for which there is an unrepaid outstanding loan balance on the credit in the relevant amount, does not exceed 30 (thirty) calendar days;
- in the event the Creditor sends the Borrower a notice consenting to prepayment of the credit (in full or in part) according to the procedure prescribed herein;
- in the event prepayment of the amounts of the credit is effected by using funds received from the sale of property rights to units in the Facility and/or from the sale of units in the Facility.

**Creditor**                                                                                           **Borrower**

*Agreement on the Opening of a Nonrevolving Credit Line No. 2017 of January 10, 2013*

**Article 5. Terms and Conditions of Settlements and Payments**

5.1. The repayment of the credit, interest payments and other remittances under the Agreement shall be effected by payment orders from the accounts of the Borrower or third parties with the Creditor or with other banks.

The payment orders shall specify the amounts of the principal, interest, each of the payments enumerated in Article 4 herein (hereinafter, the Fees) and penalties separately for each of the specified types of payments.

5.2. The issuance date of the credit shall be the date on which outstanding loan balance forms in the loan account(s).

5.3. The date of performance of obligations to remit payments under the Agreement shall be the date on which funds are debited from the accounts of the Borrower or third parties with the Creditor to repay obligations under the Agreement or the date on which funds are received toward repayment of obligations under the Agreement in the Creditor's correspondent account if the repayment is made from accounts with other banks.

5.4. If the date of an interest payment or remittance of other payments under the Agreement falls on a nonbusiness day, the obligations must be performed no later than the first business day following the nonbusiness day.

5.5. For the computation of interest, Fees and penalties, the actual number of calendar days in a month or year is used.

Charges of interest and penalties for late repayment of credit shall be effected separately for each loan account opened by the Creditor under the Agreement. The sum of the amounts received shall constitute the total amount of obligations for the payment of interest and penalties for late repayment of credit.

5.6. Funds received toward repayment of the indebtedness under the Agreement, including funds directly debited from the Borrower's accounts, as well as funds transferred by third parties, shall be allocated first, regardless of the purpose of the payment (subject to the special provisions set out in clauses 5.7, 5.10, 5.11, 5.12 and 5.13 herein) specified in the payment order, for defrayal of the Creditor's costs to receive performance, and thereafter in the following order of priority:

1) for the posting of an overdue payment for the opening of the credit line;
2) for the posting of an overdue payment for use of the credit line limit;
3) for payment of overdue interest;
4) for the posting of a regular payment due for the opening of the credit line;
5) for the posting of a regular payment due for use of the credit line limit;
6) for payment of regular interest due;
7) for repayment of overdue outstanding loan balance on the credit;
8) for the posting of a prepayment of the credit;
9) for repayment of regular outstanding loan balance due on the credit;
10) for payment of penalties for nonperformance of obligations under the Agreement according to the prescribed schedule (except penalties pursuant to clauses 11.3 and 11.4 herein);
11) for payment of a penalty pursuant to clauses 11.3 and 11.4 herein.

In addition, the outstanding loan balance on the credit shall be repaid in chronological order, beginning with the loan account that was opened first.

Obligations hereunder (for the repayment of the outstanding loan balance on the credit, for payment of interest and remittance of the Fees) shall become due on the date when they are scheduled to be performed in accordance with the terms and conditions prescribed by the Agreement (hereinafter, the Due Date).

Overdue obligations under the Agreement mean obligations under the Agreement that were not performed on the Due Date.

5.7. Funds that have been received in accordance with payment orders to pay penalties under the Agreement, if such purpose of the payment is specified as the sole purpose in the payment order, shall be

allocated by the Creditor for payment of penalties in accordance with the order of priority of payment of penalties set out in clause 5.6 herein.

Any overpayment received shall be allocated by the Creditor to repayment of obligations in accordance with the order of priority of payments set out in clause 5.6 herein.

5.8. If the Borrower uses credit funds to finance expenditures in a different currency than the credit currency, the conversion transactions with the credit funds shall be executed with the Creditor at the exchange rate and on the terms of the Creditor as of the date the transactions are executed.

5.9. Obligations to repay outstanding loan balance on the credit may be performed before the Due Date in accordance with clause 6.2 herein.

Payments received toward repayment of the outstanding loan balance on the credit before the dates set by clause 6.1 herein shall be allocated by the Creditor for repayment of the aforementioned obligations toward the next scheduled payments for repayment of the credit specified clause 6.1 herein, subject to the order of priority of payments set out in clause 5.6 herein. In this case the obligations to repay the outstanding loan balance, for purposes of distribution in accordance with the order of priority of payments set out in clause 5.6 herein, shall be deemed to be due on the date the funds are received in the amount of the funds received, but not more than the amount of funds remaining after distribution for other payments specified in the order of priority of payments prior to the payment to repay the regular outstanding loan balance due on the credit, and not more than the amount of the principal specified in the payment order (if it is specified).

Any overpayment received pursuant to this clause of the Agreement from the Borrower shall be returned by the Creditor to the Borrower's account with the Creditor no later than the first business day following the date when the funds were received.

If it is impossible to identify the purpose of a payment (the obligation(s) being performed is (are) not specified) specified in a payment order, the funds received shall be allocated by the Creditor toward repayment of the outstanding loan balance on the credit pursuant to this clause of the Agreement.

5.10. Obligations in respect of interest and/or the Fees may be performed before the Due Dates in an amount not more than what has accrued as of the date of receipt of the funds by the Creditor (inclusive). In this case all obligations in respect of interest and the Fees shall become due on the date the funds are received in the amount of the funds received, but not more than what has accrued.

In addition, the funds received from the Borrower toward repayment of the above obligations, regardless of the purpose of the payment specified in the payment order, shall be allocated by the Creditor for payment of obligations in respect of interest and the Fees in accordance with the order of priority of payments set out in clause 5.6 herein, except the payment of penalties.

5.11. If 10 (Ten) or fewer business days remain until the Due Date for payment of interest and/or the Fees (hereinafter, the Early Payment Period), the amount overpaid by the Borrower pursuant to clause 5.10 herein (hereinafter, Early Payments) shall be allocated by the Creditor for repayment of the Borrower's aforementioned obligations on the next scheduled Due Dates in accordance with the order of priority of payments set out in clause 5.6 herein. If obligations to repay the outstanding loan balance under the Agreement come due during the Early Payment Period and a payment is not received from the Borrower toward repayment of the aforementioned obligations on the Due Date set by the Agreement, the Early Payments shall be allocated for payment of the aforementioned obligations.

If more than 10 (Ten) business days remain until the Due Date for payment of interest and/or the Fees, the Creditor shall allocate the Early Payments for payment of penalties in accordance with the order of priority of payment of penalties set out in clause 5.6 herein. In this case the amount of Early Payments the amount of penalties paid shall be returned by the Creditor to the Borrower's account with the Creditor no later than the first business day following the date when the funds were received.

5.12. During the Early Payment Period the Borrower shall have the right, within 3 (Three) business days following the date on which funds are received by the Creditor, but no later than 2 (Two) business days (inclusive) before the next scheduled Due Date, to submit a written request to the Creditor for the return or allocation toward repayment of the outstanding loan balance on the credit of the Early Payments received by the Creditor pursuant to clause 5.11 herein.

The Creditor shall return the Early Payments after distribution in accordance with the order of priority of payments set out in clause 5.6 herein or shall allocate them for repayment of the outstanding loan balance on the credit pursuant to clause 6.2 herein, and subject to clause 5.9 herein, no later than the first business day following the date of receipt of the Borrower's written request.

The return of Early Payments shall be effected by the Creditor to the Borrower's account with the Creditor.

If Early Payments are allocated for repayment of the outstanding loan balance on the credit, the date of repayment of the outstanding loan balance on the credit shall be the date when the Creditor allocates the amount paid early for repayment of the outstanding loan balance on the credit.

5.13. If, on the Due Date or the date when funds are received for payment of penalties, the amount of the payment exceeds the amount payable according to the terms and conditions herein, the overpaid amount received from the Borrower, after distribution in accordance with the order of priority of payments set out in clause 5.6 herein, shall be returned by the Creditor to the Borrower's account with the Creditor no later than the first business day following the date of the relevant payment / date of receipt of the funds.

5.14. If payments under the Agreement are remitted in a different currency than the payment currency specified herein, the Creditor shall have the right to convert on its own the funds received to the payment currency pursuant to the Agreement at the exchange rate and on the terms of the Creditor in effect on the date when the conversion transaction is execution, after which they shall be allocated for the repayment of the indebtedness under the Agreement.

## Article 6. Procedure for Repayment of the Credit

6.1. Date of full repayment of the credit issued: December 28, 2015.
The credit shall be repaid according to the following schedule:

| Payment date | Payment amount as a percentage of the amount of outstanding loan balance as of the Availability Period Expiration Date |
|---|---|
| June 28, 2014 | 13.05% |
| September 28, 2014 | 16.31% |
| December 28, 2014 | 16.31% |
| March 28, 2015 | 10.87% |
| June 28, 2015 | 13.05% |
| September 28, 2015 | 16.31% |
| December 28, 2015 | 14.10% |

In the event the Borrower repays the credit after the Availability Period Expiration Date but before the dates specified in this clause, pursuant to clause 6.2 herein, the credit repayment amounts according to the above schedule shall be reduced by the credit amounts repaid before the dates specified in this clause, beginning with the next payment on the schedule after the actual repayment. Each subsequent payment on the schedule shall be reduced by the credit amounts repaid before the dates specified in this clause that are in excess of the amounts of the previous payments on the schedule.

If the date of repayment of the relevant credit amount falls on a nonbusiness day, the period of use of the relevant credit amount shall be extended through the first business day (including that day) following the nonbusiness day on which the date of repayment of the relevant credit amount falls.

---

**Creditor**                                                                                          **Borrower**

*Agreement on the Opening of a Nonrevolving Credit Line No. 2017 of January 10, 2013*

6.2. The Borrower shall have the right to effect full or partial repayment of the amounts of credit issued before the dates specified clause 6.1 herein, with payment of the interest and Fees prescribed by the terms and conditions herein and of penalties that have accrued as of the repayment date.

The Borrower shall send the Creditor a notice of its intention to repay the credit before the dates set by clause 6.1 herein according to the procedure prescribed herein, specifying the amount and the payment date, at least 30 (Thirty) calendar days before the date of the repayment of the credit (or of a portion thereof) (inclusive). The date on which the Creditor received the notice shall not be included in the calculation of the number of days.

In addition, the outstanding loan balance on the credit shall be repaid in chronological order, beginning with the indebtedness that is to be repaid on the next scheduled date specified clause 6.1 herein after the actual repayment date.

In the credit is repaid before the dates set by clause 6.1 herein without prior notification of the Creditor or with notification fewer than 30 (Thirty) calendar days before the date of the repayment of the credit (or of a portion thereof), the Borrower shall pay the Creditor a fee for early credit repayment according to the procedure prescribed by Article 4 herein.

## Article 7. Creditor's Duties and Rights

7.1. The Creditor shall have the right:

7.1.1. Unilaterally and at its discretion, to raise the interest rate under the Agreement, including but not exclusively as a result of the adoption by the Bank of Russia of decisions to raise the discount rate (refinancing rate of the Bank of Russia), and shall notify the Borrower thereof without recording such change in an amendment to the Agreement. If the Creditor raises the interest rate unilaterally, said change shall enter into force 30 (Thirty) calendar days from the date the Creditor sends the notice, unless the notice specifies a later date for the change to enter into force.

The Borrower shall be notified of the above changes to the Agreement according to the procedure prescribed herein.

7.1.2. Unilaterally and at its discretion, to lower the interest rate under the Agreement, including but not exclusively as a result of the adoption by the Bank of Russia of decisions to lower the discount rate (refinancing rate of the Bank of Russia), and shall notify the Borrower thereof without recording such change in an amendment to the Agreement. If the Creditor lowers the interest rate unilaterally, said change shall enter into force 30 (Thirty) calendar days from the date the Creditor sends the notice, unless the notice specifies a later date for the change to enter into force.

The Borrower shall be notified of the above changes to the Agreement according to the procedure prescribed herein.

7.1.3. Unilaterally and at its discretion, to reduce the amount of a penalty and/or set a period of time during which the penalty will not be collected, and shall notify the Borrower thereof without recording such change in an amendment to the Agreement.

The reduction in the amount of a penalty and/or the beginning of the period of time during which the penalty will not be collected shall enter into force 30 (Thirty) calendar days from the date the Creditor sends the notice, unless the notice specifies a later date for the change to enter into force.

The Borrower shall be notified of the above changes to the Agreement according to the procedure prescribed herein.

7.1.4. To request from the Borrower information and documents supporting the targeted use of the credit, based on which the credit funds shall be transferred from the Borrower's transaction account in accordance with the designated purpose of the credit.

7.1.5. In the event of an overdue outstanding loan balance on the credit and/or overdue indebtedness on interest and/or on other payments specified herein and/or penalties under the Agreement, to directly debit funds from the Borrower's accounts with the Creditor and with other banks as the funds come in, in the currency of the obligation, toward payment of the overdue arrears and penalties.

The Creditor shall have the right, in accordance with the terms and conditions of the agreement on the Creditor's right to directly debit funds from the payer, entered into by and between the Creditor and the Borrower, to debit funds from the Borrower's accounts with the Creditor in the currency of the obligation in order to repay the indebtedness due under the Agreement on the date when performance of obligations is due.

The Creditor shall inform the Borrower in writing of the fact that funds have been directly debited from its accounts toward payment of overdue arrears and penalties according to the procedure prescribed herein.

7.1.6. If there are insufficient funds in the Borrower's account with the Creditor in the currency of the obligation to pay overdue arrears and/or penalties under the Agreement, to debit funds from the Borrower's accounts with the Creditor and with other banks as the funds come in, in a different currency than the currency of the obligation, then to convert the debited funds at the exchange rate and on the terms set by the Creditor and other banks for the execution of conversion transactions as of the transaction date, and to credit the funds obtained as a result of the conversion to the Borrower's account with the Creditor and with other banks in the currency of the obligation.

The Creditor shall have the right, in accordance with the terms and conditions of the agreement on the Creditor's right to directly debit funds from the payer, entered into by and between the Creditor and the Borrower, if there are insufficient funds in the Borrower's account with the Creditor in the currency of the obligation to repay the regularly scheduled indebtedness due under the Agreement that has formed as of the due date for performance of the obligations, to directly debit funds from the Borrower's accounts with the Creditor in a different currency than the currency of the obligation, then to convert the debited funds at the exchange rate and on the terms set by the Creditor for the execution of conversion transactions as of the transaction date, and to credit the funds obtained as a result of the conversion to the Borrower's account with the Creditor in the currency of the obligation.

The Creditor shall inform the Borrower in writing of the fact that funds have been directly debited from its accounts and said funds have been converted according to the procedure prescribed herein.

7.1.7. To discontinue the issuance of credit and/or to demand from the Borrower early repayment of the entire amount of the credit and payment of the interest due for use of the credit, penalties and other charges specified by the terms and conditions herein. In addition, the Creditor has the right to make similar demands of sureties and guarantors and to seize the pledged property in the following cases:

a) nonperformance or improper performance by the Borrower of its payment obligations under the Agreement or any other contract (including, but not limited to, a credit facility agreement, an agreement on the opening of a revolving/nonrevolving credit line, an agreement on the granting of a bank guarantee, a suretyship agreement, and other types of contracts) that has been entered into (or may be entered into during the effective period of the Agreement) by and between the Borrower and the Creditor or other obligations (or fulfillment of other terms and conditions) under the aforementioned contracts and agreements, whose nonperformance or improper performance (or fulfillment) is the basis for making a demand for early repayment of credit amounts/the Creditor's refusal to perform its duty of granting credit/a guarantee in accordance with the terms and conditions of the aforementioned contracts and agreements, as well as payment obligations to the Creditor and/or third parties to pay promissory notes, redeem bonds, pay out coupon income or make a mandatory/voluntary offer based on the Federal Law "On Joint Stock Companies" that have been established (or may be established during the effective period of the Agreement);

---

**Creditor**                                                                                           **Borrower**

*Agreement on the Opening of a Nonrevolving Credit Line No. 2017 of January 10, 2013*

b) nonperformance or improper performance by the Borrower of obligations under credit facility agreements (including agreements on the opening of a nonrevolving/revolving credit line) that have been entered into (or may be entered into during the effective period of the Agreement) by and between the Borrower and any other creditor, such that it entailed a demand for the Borrower to make early repayment of credit amounts. A credit amount demanded for early repayment in a different currency than the currency in which the value specified in this subclause is set shall be recalculated in the currency of the value specified in this subclause at the Bank of Russia exchange rate as of the date the demand for early repayment of the credit amount is made;

c) depreciation of the security, loss of the security or a worsening of its conditions, as well as the threat of loss of the security or threat of a worsening of its conditions under circumstances for which the Creditor is not responsible;

d) if the representations, documents, certifications or information, including information specified in Article 2 herein, that have been provided by the Borrower to Creditor are untrue, incomplete or unverified;

e) use of the credit for other than its designated purpose or return to the Borrower of funds transferred by the Borrower using the credit pursuant to the designated purpose of the credit;

f) filing of an application with an arbitrazh court to declare the Borrower and/or the surety and/or the pledgor insolvent (bankrupt) as prescribed by current law, subject to the provisions of clause 8.2.9 herein;

g) if claims are filed against the Borrower for the payment or a monetary sum or for the recovery of property for an aggregate amount of more than 50,000,000 (Fifty million) rubles. The amount of a claim filed in a foreign currency shall be recalculated in rubles at the Bank of Russia exchange rate as of the date the claim is filed.

h) decisions are adopted on reorganization, liquidation or a decrease in the shared capital of the Borrower and/or the surety and/or the pledgor, and/or the death of the surety, subject to the provisions of clause 8.2.9 herein;

i) the Borrower and/or the surety and/or the pledgor is declared insolvent (bankrupt) as prescribed by current law;

j) the submission by the Borrower to the Creditor of reports and/or information that are untrue and/or different from reports and/or information submitted by the Borrower to state authorities, the Bank of Russia and/or published by the Borrower and/or in the possession of credit bureaus;

k) nonperformance by the Borrower of obligations specified clauses 8.2.8 and/or 8.2.9 and/or 8.2.11 8.2.12 and/or 8.2.14 and/or 8.2.15 and/or 8.2.16 and/or 8.2.17 and/or 8.2.19 and/or 8.2.20 and/or 8.2.21 and/or 8.2.22 and/or 8.2.23 and/or 8.2.24 and/or 8.2.25 and/or 8.2.26 and/or 8.2.27 and/or 8.2.28 and/or 8.2.29 and/or 8.2.30 and/or 8.2.31 and/or 8.2.32 and/or 8.2.33 and/or 8.2.34 and/or 12.2 and/or 12.3 and/or 12.4 and/or 12.5 and/or 12.6 and/or 12.7 and/or 12.8 and/or 12.9 and/or 10.1 and/or 10.2 and/or 10.3 herein;

l) nonperformance by the Borrower of the obligation to secure the participatory interest(s) in share capital held as collateral by the Creditor specified clause 9.1.3 herein;

m) a breach by the Borrower of the provisions of clauses 8.2.5 and/or 8.2.6 and/or 8.2.7 herein;

n) nonperformance or improper performance by the Borrower of the obligations specified in clause 8.2.4 herein;

o) the withdrawal (a decrease in the interest) of any member of the Borrower from the company, except cases in which members sell their interest to third parties or to other members;

p) if the amount of any funds borrowed by the Borrower (including the receipt of credit facilities, the issuance of its own promissory notes and other repayable forms of fund-raising, excluding obligations for the payment of interest and the payout of income on securities) from third parties and/or the granting of any suretyship/guarantee (including in the form of avalization of promissory notes and endorsement of notes, excluding "without recourse") will increase, beginning on the execution date of the Agreement, the total amount

of borrowed funds and/or suretyships/guarantees granted (including in the form of avalization of promissory notes and endorsement of notes, excluding "without recourse") to more than 1,646,200,000 (One billion six hundred forty-six million two hundred thousand) rubles.

As of the execution date of the Agreement, the total amount of borrowed funds and/or suretyships/guarantees granted (including in the form of avalization of promissory notes and endorsement of notes, excluding "without recourse") is 1,094,808,400 (One billion ninety-four million eight hundred eight thousand four hundred) rubles.

The amounts of borrowed funds and/or suretyships/guarantees granted (including in the form of avalization of promissory notes and endorsement of notes, excluding "without recourse") in a different currency than the currency of the credit under the Agreement have been recalculated in the currency of the credit under the Agreement at the Bank of Russia exchange rate as of the execution date of the Agreement).

The amount of any borrowed funds and/or suretyships/guarantees granted (including in the form of avalization of promissory notes and endorsement of notes, excluding "without recourse") in a different currency than the currency of the credit under the Agreement that is taken out by the Borrower after the execution date of the Agreement shall be recalculated in the currency of the credit under the Agreement at the Bank of Russia exchange rate as of the last day of the last calendar quarter.

q) a worsening of the financial condition of the Borrower and/or the surety that in the Creditor's assessment poses a threat to the timely performance of obligations under the Agreement and/or the suretyship agreement;

r) a failure to ensure that the Tsentr Limited Liability Company (TIN [Tax ID No.] 3702576802, PSRN [Primary State Registration No.] 1093702001744, place of business: 153A Prospekt Fridrikha Engelsa, city of Ivanovo, Ivanovo Region) maintains an interest in the Borrower's share capital that is unpledged and unencumbered by other obligations at a level not below 100 (One hundred) percent of the Borrower's share capital.

An interest may be changed only by written agreement with the Creditor.

The above breaches of the terms and conditions of the Agreement and changes in circumstances are material for the Creditor.

The Creditor shall notify the Borrower of its demands according to the procedure prescribed by the Agreement.

7.1.8. To unilaterally close the available balance of the credit line limit under the Agreement if the issuance of credit is discontinued for reasons specified in clause 7.1.7 herein, in which case the Creditor shall notify the Borrower as prescribed herein.

7.1.9. To refuse to perform its duty of issuing the credit in full or in part if circumstances occur that clearly indicate that the debt amount will not be repaid by the Borrower according to the schedule set herein.

7.1.10. To review, in a form convenient to it, the accuracy of the reporting and planning indicators submitted by the Borrower regarding its business and financial activities and to request other details having a bearing on the use of credit funds and on the performance of obligations under the Agreement.

7.1.11. To request that the Borrower, during the effective period of the Agreement, enter into (or arrange for entry into) an agreement (agreements) on the Creditor's right to directly debit the payer's funds in order to pay overdue arrears from the accounts of the Borrower or the surety specified in clause 9.1.5 herein at other banks, in the form and according to the schedule specified the Creditor.

The Borrower shall be notified of such request in the manner prescribed herein.

7.2. The Creditor shall assume the following obligations:

7.2.1. If the conditions specified in Article 3 herein are fulfilled and if, at the time the credit is granted, none of the conditions prevails that entitle the Creditor to discontinue the issuance of credit and to demand early repayment of the credit, the Creditor shall execute the transfer of credit amounts within the bounds of the available balance of the credit line limit to the Borrower's transaction account on the basis of the Borrower's

---

**Creditor**                                                                                             **Borrower**

instructions formulated in accordance with the terms and conditions herein.

## Article 8. Borrower's Duties and Rights

8.1. The Borrower shall have the right:

8.1.1. If the Creditor raises the interest rate pursuant to clause 7.1.1 herein, to repay a portion or the entire amount of the credit with the payment of the interest, Fees and penalties accrued as of the repayment date, on the previous terms and conditions, within 30 (Thirty) calendar days from the date the Creditor sends the Borrower a written notice amending the terms and conditions of the granting of credit.

The Borrower shall not pay a fee for prepayment of the credit.

8.2. The Borrower shall assume the following obligations:

8.2.1. Within 5 (Five) business days from the Delivery Date of the notice or communication with the Creditor's demand for early repayment of the credit pursuant to clauses 7.1.7 and 14.3 herein, to repay the outstanding loan balance on the credit and to pay the interest due for the use of the credit, the Fees and the penalties that have accrued as of the repayment date.

8.2.2. To utilize the credit strictly for its designated purpose pursuant to Article 1 herein.

8.2.3. To provide the Creditor with properly completed payment orders and addenda in accordance with the designated purpose of the credit (clause 1.1 herein) no later than the scheduled date of use of the relevant credit amount.

8.2.4. To provide the Creditor, on a quarterly basis, no later than 5 (Five) business days from the last day of the period prescribed by Russian Federation law for the submission of accounting statements to the tax authorities:

- an accounting statement in its entirety according to the forms prescribed by the Russian Finance Ministry, with a notation about the method by which the document was sent to the subdivision of the Russian Federal Tax Service, authenticated by the chief executive and the seal of the Borrower, with the attachment of a memorandum (to the annual statement) and an audit opinion (or its executive summary) (when an audit of the accounting statement is mandatory under Russian Federation law);
- a breakdown of accounts payable and receivable, listing the names of creditors, debtors, the amounts owed and the dates when the indebtedness originated, and specifying the status of each item (overdue/current);
- a breakdown of short- and long-term financial investments, listing the types, investment amounts and names of organizations and enterprises;
- a breakdown of indebtedness by long- and short-term credit facilities and loans (including promissory notes and bonds), listening the creditors, amounts owed, the credit term, the interest rate (coupon yield), schedule for repayment and interest payments, and overdue interest amounts;
- a breakdown of security interests received (listing from whom and for whose benefit they were received) and security interests issued (listing for whom and for whose benefit they were issued, and the periods of performance of the obligations);
- fact sheets on transactions and balances in transaction accounts in Russian Federation currency and foreign currency and the existence of any claims against the accounts;
- information as of the last reporting date on subsidiary (more than 50% in share capital) and dependent (more than 20% in share capital) entities, listening participatory interests in the share capital of the subsidiaries and dependent entities in percent;
- a fact sheet from a subdivision of the Russian Federal Tax Service on the status of tax payments or a reconciliation statement of tax payments (if overdue arrears are owed to government treasuries of any level, a taxpayer's fact sheet listing the dates, amounts and reasons for the debt);
- copies of revisions and additions to constitutional documents (registered as prescribed by law) and copies of certificates on entries in the USRLE on the state registration of amendments to constitutional documents,

either notarized or authenticated by the registering authority, if the amendments to the constitutional documents were made during the last calendar quarter;

- information on the members of the collective and executive administrative bodies, the Board of Directors/Management Board and about the individual performing the functions of the single-member executive body (specifying the job title, and in the case of additional jobs, other places of work), if during the last calendar quarter changes have occurred in the membership of the executive and/or collective administrative bodies or a new person was appointed to perform the functions of single-member executive body;

- on the information on the roster of members who own 5.0 or more percent of the participatory interests in share capital if during the last calendar quarter changes have occurred in the roster of members who own 5.0 or more percent of the participatory interests in share capital;

- information on changes in the total proportion of ownership of Tsentr Limited Liability Company (TIN 3702576802, PSRN 1093702001744, place of business: 153A Prospekt Fridrikha Engelsa, city of Ivanovo, Ivanovo Region) direct or indirect, through third parties, in the Borrower's share capital if such changes occurred during the last calendar quarter.

In addition, the Borrower shall, at the Creditor's request, provide other reporting and financial documents within 10 (Ten) business days from the date of receipt of such request.

8.2.5. In the event of liquidation, reorganization or a reduction of share capital, or a change in the roster of members, to notify the Creditor within 3 (Three) business days from the date the relevant decision is adopted by the authorized collective administrative body.

The Borrower shall be notified in the manner prescribed herein.

8.2.6. To notify the Creditor in the manner prescribed herein of new obligations that arise in respect of borrowed funds owed to third parties (including the receipt of credit facilities, the issuance of its own promissory notes and other repayable forms of fund-raising) and/or the provision to third parties of any suretyship/guarantee (including in the form of avalization of promissory notes and endorsement of notes, excluding "without recourse") and or the granting for the Borrower by other banks and/or other parties of suretyships/guarantees for the benefit of third parties (except suretyships/guarantees that constitute security on the Borrower's aforementioned borrowed funds), as well as the extension or refinancing of borrowed funds, no later than 10 (Ten) business days from the execution date of the relevant contracts (addenda) (issuance of promissory notes, fund-raising in another form) and/or the provision to third parties of any suretyship/guarantee (including in the form of avalization of promissory notes and endorsement of notes, excluding "without recourse") and/or of the provision for the Borrower by other banks and/or other parties of suretyships/guarantees for the benefit of third parties (except suretyships/guarantees that constitute security on the Borrower's aforementioned borrowed funds) and shall provide the Creditor with properly certified copies of the relevant contracts (addenda) and, at the Creditor's request, properly certified additional documents needed by the Creditor to verify compliance with the provision specified in subclause 7.1.7(p).

8.2.7. Until complete fulfillment of the obligations to the Creditor under the Agreement, not to make any change in equity capital and to ensure that there is no change in the share capital of the companies specified in clauses 9.1.3, 9.1.5 and 9.1.6 herein without the Creditor's written consent.

8.2.8. To provide additional security or to repay the unsecured amount of the credit within 10 (Ten) days of the date of receipt of the relevant notification from the Creditor if, during the effective period of the Agreement, the collateral value of the collateral item(s) specified in clause 9.1.1 herein, as a result of loss of the collateral item (collateral items) (due to destruction, shortage, retirement, damage, theft or other reasons beyond

**Creditor**                                                                                                      **Borrower**

*Agreement on the Opening of a Nonrevolving Credit Line No. 2017 of January 10, 2013*

the Creditor's control), has fallen below that of the obligations under the Agreement (the outstanding loan balance on the credit and the interest accrued for 6 (Six) months of use of the credit or before the date of full repayment of the credit specified in clause 1.1 herein if less than 6 (Six) months remains until said date. The collateral value of a collateral item (items) for purposes of this subclause means the collateral value of a collateral item (collateral items) determined in accordance with the terms and conditions of clause 9.1.1 herein, less the collateral value of any lost collateral item (collateral items).

8.2.9. If a claim is filed against the pledgor and/or the surety on the credit for payment of a monetary sum or reclamation of property whose amount poses a threat to the performance of obligations under the suretyship agreement/pledge agreement, or an application is filed with an arbitrazh court to declare the pledgor and/or surety insolvent (bankrupt) according to the procedure prescribed by current law, and/or decisions are adopted on reorganization, liquidation or a reduction of the share capital of the pledgor and/or the surety, to arrange a replacement, within 20 (Twenty) calendar days from the date the Creditor sends a request for a replacement, of the surety/pledged property for a similar amount. The surety/makeup of the pledged property must be acceptable to the Creditor and approved by it.

8.2.10. At the Creditor's request, to enter into (arrange for entry into) an agreement (agreements) on the Creditor's right to directly debit funds for repayment of overdue arrears from new accounts of the Borrower or the surety with the Creditor within 5 (Five) business days from the date of receipt of the Creditor's request, and, also at the Creditor's request, from the accounts of the Borrower or the surety specified in clause 9.1.5 herein with other banks, in the form and according to the schedule set by the Creditor. The Borrower shall be notified of said request(s) in the manner prescribed herein.

8.2.11. To submit to the Creditor, on a monthly basis no later than the 10th day of the month following the last calendar month, with a progress report on the project in a form approved by the Creditor.

The Creditor shall have the right to amend the frequency of the submission to the Creditor of a progress report on the project, including on the prices and volume of sales of units in the Facility and/or property rights thereto.

The Borrower shall be notified of such changes to the Agreement in the manner prescribed by clause 14.3 herein.

8.2.12. To provide documents certifying the targeted use of the credit funds, at the Creditor's request and according to the schedule set in the request.

8.2.13. To notify the Creditor, in the manner prescribed herein, of the possible occurrence of the situations and events specified in clause 7.1.7 herein, as well as of the actual occurrence of such situations and events, no later than 3 (Three) business days from the date following the date when the Borrower learned of the possible (actual) occurrence of such situation (event).

8.2.14. To obtain preliminary written approval from the Creditor of the key terms and conditions of agreements to be entered into (including preliminary agreements) and addenda thereto, in which the subject of the transaction consists of units in the Facility and/or property rights thereto.

8.2.15. To conduct settlements related to construction of the Facility and the sale of units in the Facility and/or property rights thereto through accounts with the Creditor.

8.2.16. To transfer funds received as a result of entering into sales and purchase agreements and other contracts, which result in the transfer of units in the Facility and/or property rights thereto that have been pledged to the Creditor pursuant to clause 9.1.1 herein, for prepayment of the indebtedness on the credit (including the principal for an amount not less than the collateral value of the units in the Facility being released from collateral, interest for use of the credit, and the fees specified in clauses 4.3, 4.4 and 11.4 herein as of the payment date in an

---

**Creditor**                                                                                              **Borrower**

*Agreement on the Opening of a Nonrevolving Credit Line No. 2017 of January 10, 2013*

amount not less than the collateral value of the units in the Facility and/or property rights thereto as specified in the pledge agreement(s) entered into in accordance with clause 9.1.1 herein, no later than 3 (Three) business days from the date of receipt of funds in the Borrower's accounts.

8.2.17. On a monthly basis, no later than the 10th day of the month following the last calendar month, to provide the Creditor with an Extract from the Unified State Register of Real Estate Rights and Transactions on the agreements entered into for participation in shared-equity construction of the Facility.

The Creditor shall have the right to amend the frequency of the provision to the Creditor of the Extract from the Unified State Register of Real Estate Rights and Transactions.

The Borrower shall be notified of such changes to the Agreement in the manner prescribed herein.

8.2.18. To obtain approval from the Creditor of the use of a trademark and its elements, the Creditor's name, as of the actions that are to be used during the Facility's construction and advertising campaign.

8.2.19. The register a mortgage (mortgages) for units in the Facility specified in clause 1.1 herein when construction has been completed, from among the property rights processed as collateral for the Creditor pursuant to clause 9.1.1 herein, for which property rights will not have been sold at the time the Borrower's title is registered, within 60 (Sixty) calendar days of the registration of such units in the Facility under the Borrower's ownership.

8.2.20. To obtain preliminary written approval from the Creditor of changes to the construction project for the Facility, including but not limited to a change in the construction schedule, a change in the size of units, a change in the purposes of the use of units and a change in the roster of participants in the project.

8.2.21. To make changes to the project statement for construction of the Facility only with the written consent of the Creditor.

8.2.22. On a quarterly basis, within 5 (Five) business days from the last day of the period specified by RF Government Resolution No. 645 of 10/27/2005, to arrange for submission of progress reports by the developer of construction of the Facility on activities related to fund-raising from participants in shared-equity construction for the last calendar quarter.

8.2.23. Not to enter into, without the Creditor's written approval, a transaction or multiple interrelated transactions involving the transfer or the possibility of a transfer, direct or indirect, of property if the book value of such property (the total book value in the case of multiple interrelated transactions) is more than 5 (Five) percent of the book value of the Borrower's assets according to the accounting statement as of the last reporting date.

8.2.24. Not to enter into, without the Creditor's written approval, a transaction or multiple interrelated transactions involving the placement of a lien on property assets belonging to the Borrower whose book value is more than 5 (Five) percent of the book value of the Borrower's assets according to the accounting statement as of the last reporting date, in respect of its obligations to third parties or the obligations of third parties.

8.2.25. Maintain the level of net assets in an amount not less than the minimum value of share capital prescribed by law as of each reporting date during the effective period of the Credit Facility Agreement.

The value of net assets shall be determined in accordance with Order No. 10n of the Russian Finance Ministry and No. 03-6/pz of 1/29/2003 of the Federal Securities Market Commission "On Approval of the Procedure for Appraising the Value of Net Assets of Joint Stock Companies."

8.2.26. Until the obligations to the Creditor under the Agreement are performed in full, not to take the following actions/to ensure that the following actions are not taken without the written approval of Tsentr Limited Liability Company (TIN 3702576802), PSRN 1093702001744, place of business: 153A Prospekt Fridrikha Engelsa, city of Ivanovo, Ivanovo Region); Probusiness-Development Limited Liability Company (PSRN 1077746278279, TIN 7743629120, place of business: 6A Ul. Belomorskaya, Moscow, 125195), Life Factoring Company Limited Liability Company (PSRN 1077759960740, TIN 7743658843, place of business: 6A Ul. Belomorskaya, Moscow, 125195); and the Creditor:

- changes in the roster of members of the companies;
- changes in the organizational and legal form of the companies;
- changes in the administrative bodies of the companies and/or their authority;
- the creation of subsidiaries and dependent entities.

8.2.27. Until the obligations to the Creditor under the Agreement are performed in full, not to distribute net earnings among the members of the Borrower without the Creditor's written approval.

8.2.28. To maintain the proportion of internal funds invested in the Project relative to the total amount of financing of the Project for construction of the Facility at a level not below that specified in clause 12.11 herein throughout the credit period (not including expenditures on the payment of interest and fees on the credit borrowed from the Creditor).

8.2.29. To sell property rights for ownership of units in the financed Facility provided and/or to raise funds from participants in the shared-equity construction of the financed Facility for which property rights have been recorded as security on the credit only if the following conditions are met:

- for individuals, by entering into a contract of participation in shared-equity construction pursuant to Federal Law No. 214-FZ of 12/30/2004 "On Participation in the Shared-Equity Construction of Apartment Buildings and Other Real Estate Facilities and on Amendments to Certain Legislative Acts of the Russian Federation," where the cost of the contract of participation in shared-equity construction is calculated as the total of funds for the financing and reimbursement of the costs of construction of the facility in shared-equity construction and funds to pay for the developer's services;
- for legal entities and sole proprietors, by entering into a contract of participation in shared-equity construction pursuant to Federal Law No. 214-FZ of 12/30/2004 "On Participation in the Shared-Equity Construction of Apartment Buildings and Other Real Estate Facilities and on Amendments to Certain Legislative Acts of the Russian Federation," where the cost of the contract of participation in shared-equity construction is calculated as the total of funds for the financing and reimbursement of the costs of construction of the facility in shared-equity construction or entering into a contract pursuant to Russian Federation law on investment activities;
- for federal formations and formations of constituent entities of the federation, by entering into a state contract on shared-equity participation/sale and purchase of apartments or a contract pursuant to Russian Federation law on investment activities.

8.2.30. To maintain the active status of the permit for construction of the Facility until the end of the investment stage of the Project.

8.2.31. To arrange, if necessary, a timely (before the expiration) renewal of the insurance agreement for construction and installation work and the associated risks and civil liability during the performance of construction and installation work for the period required to complete construction of the Facility.

8.2.32. Within 90 (Ninety) calendar days from the date the completed Facility is put into operation, to provide the Creditor with a certificate of state registration of the title to the unsold units of the Facility.

8.2.33. To provide the Creditor with a copy, certified by the Borrower, of the Operational Acceptance Certificate for the units of the Facility within 3 (Three) business days from the date of receipt of said document.

8.2.34. Not to enter into, without the Creditor's written approval, a transaction or multiple interrelated transactions related to the provision by the Borrower of any loans (including loans and other repayable forms of providing funds) to third parties if the total amount of such loans exceeds the amount of funds provided by the Borrower to third parties as of the execution date of the Credit Facility Agreement.

### Article 9. Security

9.1. As security for the timely and full performance of the Borrower's obligations under the Agreement, including the repayment of the credit and payment of the interest and the Fees specified by the terms and conditions herein, the Borrower shall provide/arrange the provision to the Creditor of:

9.1.1. A pledge of property rights to obtain ownership of 96.89 (Ninety-six and eighty-nine hundredths) percent of the units of the Facility under construction—townhouses—with a total area of at least 38,176.64 (Thirty-eight and [typo; should be "thousand"] one hundred seventy-six and sixty-four hundredths) sq. m. located at the address: Village of Podolino, Kutuzovskoye Rural Settlement, Solnechnogorsk District, Moscow Region, belonging to Kholmeks Limited Liability Company (PSRN 5067746400552, TIN 7726547734, place of business: 6A Ul. Belomorskaya, Moscow, 125195) pursuant to Property Rights Agreement No. 2017/ip of January 10, 2013.

9.1.2. A pledge of land parcels belonging to Kholmeks Limited Liability Company (PSRN 5067746400552, TIN 7726547734, place of business: 6A Ul. Belomorskaya, Moscow, 125195):

a) with an area of 29,781 (Twenty-nine thousand seven hundred eighty-one) sq. m.; Cadastral No. 50:09:0070705:18; land category—community land; authorized use—low-rise housing construction, address of facility: Village of Podolino, Kutuzovskoye Rural Settlement, Solnechnogorsk District, Moscow Region;

b) with an area of 29,996 (Twenty-nine thousand nine hundred ninety-six) sq. m.; Cadastral No. 50:09:0070705:19; land category—community land; authorized use—low-rise housing construction, address of facility: Village of Podolino, Kutuzovskoye Rural Settlement, Solnechnogorsk District, Moscow Region;

c) with an area of 1,500 (One thousand five hundred) sq. m.; Cadastral No. 50:09:0070705:33; land category—community land; authorized use—low-rise housing construction, address of facility: lot 36, Village of Podolino, Kutuzovskoye Rural Settlement, Solnechnogorsk District, Moscow Region;

d) with an area of 1,500 (One thousand five hundred) sq. m.; Cadastral No. 50:09:0070705:34; land category—community land; authorized use—low-rise housing construction, address of facility: lot 35, Village of Podolino, Kutuzovskoye Rural Settlement, Solnechnogorsk District, Moscow Region.
pursuant to Mortgage Agreement No. 1917/I of January 10, 2013.

9.1.3. A pledge of a participatory interest in the share capital of Kholmeks Limited Liability Company (PSRN 5067746400552, TIN 7726547734, place of business: 6A Ul. Belomorskaya, Moscow, 125195), hereinafter referred to as "the Company," in an amount of at least 100 (One hundred) percent of the share capital as of the execution date of the pledge agreement. The collateral value of the interest(s) shall be determined on the basis of the face value, using a discount of 50 (Fifty) percent.

**Creditor**                                                                                    **Borrower**

Hereafter, if the Company's share capital is increased, the Borrower shall, within 10 (Ten) business days from the date of registration by authorized state bodies of amendments to the Company's constitutional documents, ensure that the Creditor is provided with an interest (interests) in an amount such that after the increase the interest in the Company's share capital held as collateral by the Creditor is at least 100 (One hundred) percent of the Company's share capital.

All expenses on notarizing the pledge agreement(s) shall be borne by the pledgor.

9.1.4. A pledge of interest-bearing promissory notes of Kholmeks Limited Liability Company (PSRN 5067746400552, TIN 7726547734, place of business: 6A Ul. Belomorskaya, Moscow, 125195) belonging to Probusiness-Development Limited Liability Company (PSRN 1077746278279, TIN 7743629120, place of business: 6A Ul. Belomorskaya, Moscow, 125195) with a face value of 416,667,406 (Four hundred sixteen million six hundred sixty-seven thousand four hundred six) rubles. The collateral value shall be determined on the basis of the face value, taken to be the appraisal value with a discount of 0 (Zero) percent.

9.1.5. A suretyship of Probusiness-Development Limited Liability Company (PSRN 1077746278279, TIN 7743629120, place of business: 6A Ul. Belomorskaya, Moscow, 125195) for the entire amount of the Borrower's obligations under the Agreement.

9.1.6. A suretyship of Life Factoring Company Limited Liability Company (PSRN 1077759960740, TIN 7743658843, place of business: 6A Ul. Belomorskaya, Moscow, 125195) with a maximum total liability of the surety to the Creditor for the Borrower's performance of obligations under the Agreement in the amount of 128,200,000 (One hundred twenty-eight million two hundred thousand) rubles.

9.1.7. A suretyship of Aleksandr Dmitriyevich Zheleznyak, passport details: Series 45 11 No. 168408 issued by the Khoroshevsky District Branch of the Moscow Office of the Russian Federal Migration Service on 6/2/2011 with a maximum total liability of the surety to the Creditor for the Borrower's performance of obligations under the Agreement in the amount of 1,000,000 (One million) rubles.

9.1.8. No later than February 6, 2013, to enter into a preliminary mortgage agreement for units in the Facilities under which the pledgor specified in clause 9.1.1 herein shall enter with the Creditor into a mortgage agreement for units in the Facility for which the property rights have been processed as collateral for the Creditor pursuant to clause 9.1.1 herein, within 60 (Sixty) calendar days after their registration under the pledgor's ownership.

## Article 10. Insurance

10.1. The Borrower shall insure the property (-ies) transferred as collateral pursuant to clause 8.2.19 herein, against the risk of damage, being stolen (theft, robbery, robbery with violence) or loss, with the Creditor named as beneficiary for all events covered by the insurer's rules of insurance (required package) and renew the insurance in a timely manner until the obligations under the Agreement are performed in full.

The property mortgaged pursuant to clause 8.2.19 herein shall be insured no later than 10 (Ten) business days from the date of registration of the Borrower's title to the units in the Facility being mortgaged pursuant to clause 8.2.19 herein, for which the property rights have been accepted as collateral pursuant to clause 9.1.1 herein.

10.2. When insuring the property, the Borrower must first obtain approval (arrange approval) from the Creditor of the terms and conditions of the insurance contract, including but not limited to the amount of coverage and the ability to renew the insurance contract.

Insurance may be provided by any insurance companies that satisfy the Creditor's requirements, including those that have entered with the Creditor into a Cooperation Agreement and those that are included in the list of insurance companies participating in the insurance coverage of pledged property, which is posted on the Creditor's website.

If, upon the expiration of the insurance contract, the insurance company no longer meets the Creditor's requirements posted on its website, the Creditor shall be entitled to request that the insurance company be replaced, and the Borrower shall replace (arrange the replacement of) the insurance company within the time frame specified in the Creditor's request.

The Borrower shall deliver (arrange delivery) to the Creditor of a copy of the insurance certificate (if any) and/or a copy of the insurance contract (if any) (an amendment on the renewal of the insurance contract), authenticated by the signature of the chief executive and the seal of the insured, within 3 (Three) business days from the execution date of the insurance contract or the amendment on the renewal of the insurance contract.

The Borrower shall deliver (arrange delivery) to the Creditor of copies of the payment orders proving payment of the insurance premium (each portion of the insurance premium), authenticated by the signature of the chief executive and the seal of the payer, within 5 (Five) business days of the date of remittance of the insurance premium (the relevant portion of the insurance premium).

If the insurance contract is renewed, the amount of coverage may be changed with the Creditor's approval.

If an insurance contract is entered into with an insurance company that has not entered into a Cooperation Agreement with the Creditor, the Borrower must enter into (arrange entry into) an agreement on work procedure with an insurance indemnity on terms and conditions to be determined unilaterally by the Creditor.

If a new insurance contract is entered into with an insurance company that has not entered into a Cooperation Agreement with the Creditor, the Borrower must, within 3 (Three) business days from the execution date of the new insurance contract, enter into (arrange entry into) a new agreement on work procedure with an insurance indemnity on terms and conditions to be determined unilaterally by the Creditor.

The beneficiary under an insurance contract may be replaced only after receiving the Creditor's written consent.

10.3 The Borrower shall insure against construction and installation risks and liability when performing construction and installation work at the Facility with the insured designated as the beneficiary under the insurance contract and arrange in a timely manner for its renewal prior to delivering the Facility for operation.

The Borrower shall obtain prior approval from the Creditor of the terms and conditions of an insurance contract (insurance contracts), except if an executed insurance contract (executed insurance contracts) against construction and installation risks and liability when performing construction and installation work at the Facility exists, as of the execution date of the Agreement.

Insurance may be provided by any insurance companies that satisfy the Creditor's requirements, including those that have entered with the Creditor into a Cooperation Agreement and those that are included in the list of insurance companies participating in the insurance coverage of pledged property, which is posted on the Creditor's website, except if an executed insurance contract (executed insurance contracts) against construction and installation risks and liability when performing construction and installation work at the Facility exists as of the execution date of the Agreement.

The Borrower shall deliver to the Creditor a copy of the insurance policy (if any) and/or a copy of the insurance contract (if any) (an amendment on the renewal of the insurance contract), authenticated by the signature of the chief executive and the seal of the insured, within 3 (Three) business days from the execution date of the insurance contract or the amendment on the renewal of the insurance contract, and the payment order within 3 (Three) business days of the date of remittance of payment.

**Creditor**                                                                                                                                    **Borrower**

*Agreement on the Opening of a Nonrevolving Credit Line No. 2017 of January 10, 2013*

## Article 11. Liability of the Parties

11.1. The Parties shall be liable for nonperformance or improper performance of obligations under the Agreement in accordance with current Russian Federation law.

11.2. In the event of a late transfer of a payment to repay the credit, or payment of interest or the Fees, except a payment for early repayment of the credit, the Borrower shall pay the Creditor a penalty in the amount of the interest rate specified in clause 4.1 herein increased by a factor of 1.5 (One and five-tenths) in percent per annum. The penalty shall be added to the amount of the overdue payment for each day it is past due during the period from the date when the overdue arrears arose (not including that date) through the date of full payment of the overdue arrears (inclusive).

The date when the overdue arrears arose under the Agreement means the Due Date on which the Borrower failed to perform its obligations specified herein.

11.3. In the event the Creditor is not given notice or given late notice of changes in the roster and powers of officers authorized to enter into any transactions on the Borrower's behalf, in the seal or other information the Creditor needs in order to properly perform its obligations under the Agreement:

a) the Creditor shall not be liable for the consequences of executing the Borrower's instructions for the transfer of credit signed by unauthorized persons;

b) the Borrower shall pay the Creditor a penalty in the amount of 100,000 (One hundred thousand) rubles. The penalty shall be payable within 5 (Five) business days of the receipt from the Creditor of the relevant notice on payment of the penalty (including the date of receipt).

11.4. In the event the provision specified in clause 14.5 herein is breached, the Borrower shall pay the Creditor a penalty in the amount of 0.1 (Zero and one-tenth) percent of the credit line limit specified in clause 1.1 herein. The penalty shall be payable within 5 (Five) business days of the receipt from the Creditor of the relevant notice on payment of the penalty (including the date of receipt).

## Article 12. Special Provisions

12.1. The Borrower does not object to the provision by the Creditor to a credit bureau (registered in accordance with Russian Federation law) of the information on the Borrower specified by Article 4 of Federal Law No. 218-FZ of 12/30/2004 "On Credit Histories".

12.2. The Borrower shall have the unconditional obligation to the Creditor not to raise funds, without the Creditor's written consent, from participants in shared-equity construction for the construction of the Facility on the basis of contracts of participation in shared-equity construction pursuant to Federal Law No. 214-FZ of 12/30/2004 "On Participation in the Shared-Equity Construction of Apartment Buildings and Other Real Estate Facilities and on Amendments to Certain Legislative Acts of the Russian Federation" and/or similar contracts, under which the Borrower raises funds from individuals and/or legal entities for the financing of the construction of the Facility and assumes obligations after construction is completed to transfer units in the Facility to individuals and/or legal entities that have provided funds for the financing of the construction of the Facility.

12.3. Collateral in the form of property rights (claims) to receive ownership of apartments in the Facility that have been processed as collateral for the Creditor pursuant to clause 9.1.1 herein may be replaced by other unsold property rights (claims) to receive ownership of apartments in the Facility that have not been pledged, not assigned, not contested and/or not attached, with a collateral value not less than the collateral value of the property rights (claims) to be replaced.

Replacement of the pledge of property rights (claims) shall be effected by signing an amendment to the pledge agreement.

**Creditor**                                                                                              **Borrower**

*Agreement on the Opening of a Nonrevolving Credit Line No. 2017 of January 10, 2013*

12.4. The collateral value of property rights (claims) to receive ownership of apartments in the Facility that have been processed as collateral for the Creditor pursuant to clause 9.1.1 herein may be reviewed by the Parties after the Borrower provides documents in a quantity and a form that are satisfactory to the Creditor.

A change in the collateral value of property rights (claims) shall be effected by signing an amendment to the pledge agreement.

12.5. Collateral in the form of property rights (claims) to receive ownership of apartments in the Facility that have been processed as collateral for the Creditor pursuant to clause 9.1.1 herein, or to receive apartments in the Facility, may be released by the Creditor from collateral after funds are transferred toward repayment of the indebtedness under the Agreement in an amount not less than the collateral value of the units to be released from collateral.

The release of the aforementioned collateral (or a portion thereof) shall be effected by signing an amendment.

12.6. The Creditor shall have the right to discontinue the issuance of the credit and/or to demand from the Borrower early repayment of the entire credit amount and payment of the interest due for use of the credit, penalties and other charges specified by the terms and conditions of the Credit Facility Agreement. In addition, the Creditor has the right to make similar demands of the surety and to seize the pledged property in instances in which the Borrower breaches its obligations in respect of the deadline for processing the mortgage for the completed Facility, as specified in clause 8.2.19 herein, by more than 90 (Ninety) calendar days.

12.7. The Borrower shall obtain written approval from the Creditor of all changes made to general contractor agreements, to agreements for performing the functions of a technical client, for the delivery of process equipment and other agreements for the expenditure part of the Project.

12.8. The Borrower shall provide to the Creditor:
- the results of geological surveys on the feasibility of supplying water to the Facility from an artesian well or an approval on the feasibility of connecting the Facility to a water-supply entity not later than 4/30/2013;
- approvals for water-intake units (WIUs) and a license to use the subsurface (in the case of use of an artesian well for the Facility's water supply) not later than 12/30/2013;
- the technical specifications for the Facility's water supply (in the case of connection of the Facility to a water-supply entity) not later than 8/30/2013;
- documents certifying the connection of the Facility to a water supply (certificate of fulfillment of technical specifications and other documents) not later than 3/30/2014.

12.9. The Borrower shall, within 60 (Sixty) calendar days from the date of state registration of the title / of the signing of the certificate of delivery and acceptance of the fixed asset (except buildings and structures), enter into an agreement on the pledge of the water-intake installation.

12.10. The Creditor shall have the right to lower the credit line limit while simultaneously reducing the amount of security pledged as a result of the sale of units in the Facility:

1) If a collective body of the Creditor has adopted a decision regarding a transaction and credit documentation that is being processed: the credit line limit shall be lowered by an amount not less than the collateral value of the sold property rights to the units in the Facility that were previously planned to be processed as collateral for the Creditor (the sold property rights to the units in the Facility that were previously planned to be processed shall not be processed).

In addition, it is mandatory that the investment of the funds received from the sale of the property rights to units in the Facility for the financing of expenditures on the Project, that are provided for by the Project budget approved by the Creditor, be confirmed.

2) If there is an existing Agreement on the Opening of a Credit Line and no balance owed on the principal: the credit line limit shall be lowered by an amount not less than the collateral value of the sold property

rights to the units in the Facility processed as collateral for the Creditor, in which case said property rights shall be released from collateral. In addition, it is mandatory that the investment of the funds received from the sale of the property rights to units in the Facility for the financing of expenditures on the Project that are provided for by the Project budget approved by the Creditor be confirmed.

In this situation the lowering of the limit and the lack of processing/partial release of units from collateral are not regarded as a change in the credit terms under the transaction; it is executed by a lending subdivision of the Creditor on its own and is overseen by the Creditor's subdivision responsible for monitoring security on credit. No separate decision by a collective body of the Creditor on this matter is required.

12.11. Financing structure of the Project:

Borrower's internal funds: 30.0% of the cost of the Project.

Form of investment: loans taken out from companies economically interrelated with the Borrower.

Funds of participants in shared-equity construction: 3.8% of the cost of the Project.

Form of investment: Funds from the sale of units in the Facility and/or property rights thereto under agreements on participation in shared-equity construction during the investment stage of the Project.

Borrowed funds: 66.2% of the cost of the Project, of which credit from the Creditor constitutes 66.2% of the cost of the Project.

### Article 13. Effective Period of the Agreement

13.1. The Agreement shall take effect on the date of its execution by the Parties and shall remain in effect until the Parties perform their obligations in full under the Agreement.

### Article 14. Other Provisions

14.1. All revisions and additions to the Agreement, except the cases specified in clauses 4.1, 7.1.1, 7.1.2, 7.1.3 and 7.1.8 herein, shall be valid only if they are drawn up in writing and signed by persons so authorized.

14.2. If one of the Parties changes its place of business or mailing address, it shall inform the other Party thereof not later than 1 (One) business day from the date of such changes.

If the bank information of one of the Parties changes, it shall inform the other Party thereof before the changes take effect.

The Borrower shall notify the Creditor of changes in the roster and powers of officers authorized to enter into any transactions on the Borrower's behalf, in the seal or other information the Creditor needs in order to properly perform its obligations under the Agreement, not later than the day the changes take effect and shall provide, within 3 (Three) business days, copies of duly authenticated supporting documents.

14.3. Any notification or other communication sent by the Parties to each other under the Agreement shall be done in writing.

Such notification or communication shall be deemed to have been duly sent if it has been delivered to the addressee by courier or registered mail, or by telegram with a notification, to the address specified herein (or to an address specified by the Party pursuant to clause 14.2 herein) and with the signature of an authorized person.

A notification or communication from the Creditor shall be regarded as duly delivered if it was received by the Borrower, as well as in cases in which, notwithstanding the sending of the notification (communication) by the Creditor pursuant to the terms and conditions herein, the Borrower did not come to receive it, or declined to accept it, or the notification (communication) was not delivered due to the absence of the addressee at the address specified in the notification (communication), whereof the postal authority informed the Creditor. The delivery

**Creditor**                                                                                                    **Borrower**

*Agreement on the Opening of a Nonrevolving Credit Line No. 2017 of January 10, 2013*

date of the Creditor's notification or communication shall be defined as the date of receipt by the Borrower, and if the Borrower does not come to receive the notification (communication) with a request from the Creditor or declines to accept, or if the notification (communication) is not delivered due to the absence of the addressee at the address specified in the notification (communication), then it will be defined as the date the postal authority sent the Creditor a notice of nondelivery to the Borrower of the Creditor's request.

14.4. All disputes in respect of the Agreement shall be heard in accordance with current Russian Federation law at the Moscow City Arbitrazh Court.

14.5. The Borrower shall not disclose in any form (including but not limited to: in the form of interviews, published reports, advertising) information concerning the terms and conditions of the Agreement without the Creditor's written consent.

This provision shall not apply to the mandatory provision of information in cases defined by Russian Federation law or if it is necessary for the Borrower to provide such information as part of its existing or newly assumed obligations to disclose information to other creditors, ratings agencies and financial institutions.

14.6. The Borrower shall arrange for individuals whose personal data is contained in the documents that it provided to the Creditor to grant their consent to the verification and processing (including automated processing) of such data by the Creditor pursuant to the requirements of current Russian Federation law, including Federal Law No. 152-FZ of 7/27/2006 "On Personal Data."

14.7. Addendum 1 and Addendum 2 shall be an integral part of the Agreement.

14.8. The Agreement is drawn up in two counterparts, each having equal legal force, one counterpart each for the Creditor and the Borrower.

### Article 15. Place of Business and Essential Information of the Parties

15.1. **The Creditor:** Sberbank of Russia Open Joint Stock Company; Moscow Bank, a branch of Sberbank of Russia OJSC
Place of business: 19 Ul. Vavilova, Moscow, 117997
Mailing address: Moscow Bank of Sberbank of Russia OJSC, 6 B. Andronyevskaya, Moscow, 109544
Correspondent account No. 30101810400000000225 at the Operations Department of the Moscow Main Territorial Department of the Bank of Russia
Transaction account No. 30301810500000100014 at Sberbank of Russia OJSC
BIC [Bank ID Code] 044525225, TIN 7707083893, PSRN 1027700132195, TRC [Tax Registration Code] 775001001, NCEO [National Classifier of Enterprises and Organizations] 00032537,
Tel./fax: 781-68-52
15.2. **The Borrower:** Kholmeks Limited Liability Company
Place of business: 6A Ul. Belomorskaya, Moscow, 125195
Mailing address: 6A Ul. Belomorskaya, Moscow, 125195
TIN 7726547734, PSRN 5067746400552, TRC 774301001, NCEO 97196518.
Transaction account No. 40702810038180006359 at Multifunctional Subsidiary Office No. 01754 of the Moscow Bank of Sberbank of Russia OJSC
Telephone: (495) 933-37-37, ext. 2000

### Signatures of the Parties

**PLEDGEHOLDER**
Director, Credit Department
Moscow Bank of Sberbank of Russia OJSC

_____ [signature] P. S. Belov

L.S.

| [stamp:] SBERBANK – Moscow Bank, Moscow – branch of Sberbank of Russia Open Joint Stock Company – Sberbank of Russia Open Joint Stock Company, Moscow |

**PLEDGOR**
Representative of Kholmeks LLC
by power of attorney

_____ [signature] A. I. Pakhomov

| [stamp:] KHOLMEKS – Limited Liability Company – PSRN 5067746400552 - Moscow |

**Creditor**                                                                                          **Borrower**

*Agreement on the Opening of a Nonrevolving Credit Line No. 2017 of January 10, 2013*

Addendum 1 to Agreement No. 2017 on the Opening of a
Nonrevolving Credit Line dated January 10, 2013

| Full name of corporate account owner | PSRN | Place of business | Account type | Account No. | Subdivision of Creditor/name of other bank where account was opened |
|---|---|---|---|---|---|
| Borrower's account to which credit is to be transferred: | | | | | |
| Kholmeks Limited Liability Company | 5067746400552 | 6A Ul. Belomorskaya, Moscow, 125195 | transaction | 40702810038180006359 | Multifunctional Subsidiary Office No. 01754 of the Moscow Bank of Sberbank of Russia OJSC, TIN 7707083893, TRC 775001001, BIC 044525225 |
| Accounts regarding which agreements are to be prepared on Creditor's right to directly debit funds for payment of overdue arrears: | | | | | |
| Kholmeks Limited Liability Company | 5067746400552 | 6A Ul. Belomorskaya, Moscow, 125195 | transaction | 40702810038180006359 | Multifunctional Subsidiary Office No. 01754 of the Moscow Bank of Sberbank of Russia OJSC, TIN 7707083893, TRC 775001001, BIC 044525225 |
| Kholmeks Limited Liability Company | 5067746400552 | 6A Ul. Belomorskaya, Moscow, 125195 | transaction | 40702810700000120373 | Probusinessbank JSCB OJSC, TIN 7729086087, TRC 775001001 |
| Kholmeks Limited Liability Company | 5067746400552 | 6A Ul. Belomorskaya, Moscow, 125195 | transaction | 40702810509000020373 | Probusinessbank JSCB OJSC, TIN 7729086087, TRC 775001001 |
| Kholmeks Limited Liability Company | 5067746400552 | 6A Ul. Belomorskaya, Moscow, 125195 | transaction | 40702810800000020373 | Probusinessbank JSCB OJSC, TIN 7729086087, TRC 775001001 |
| Kholmeks Limited Liability Company | 5067746400552 | 6A Ul. Belomorskaya, Moscow, 125195 | transaction | 40702840100000020373 | Probusinessbank JSCB OJSC, TIN 7729086087, TRC 775001001 |
| Probusiness-Development Limited Liability Company | 1077746278279 | 6A Ul. Belomorskaya, Moscow, 125195 | transaction | 40702810601000027331 | Interprombank JSCB CJSC, TIN 77041332246, TRC 774401001 |
| Probusiness-Development Limited Liability Company | 1077746278279 | 6A Ul. Belomorskaya, Moscow, 125195 | transaction | 40702810538180003904 | Multifunctional Subsidiary Office No. 01754 of the Moscow Bank of Sberbank of Russia OJSC, TIN 7707083893, TRC 775001001, BIC 044525225 |
| Probusiness-Development Limited Liability Company | 1077746278279 | 6A Ul. Belomorskaya, Moscow, 125195 | transaction | 40702810700000001793 | Unifin CB CJSC, TIN 6312013912, TRC 774401001 |

| | | | | | |
|---|---|---|---|---|---|
| Probusiness-Development Limited Liability Company | 1077746278279 | 6A Ul. Belomorskaya, Moscow, 125195 | transaction | 40701810900000000039 | Rosavtobank CB LLC, TIN 7717004724, TRC 775001001 |
| Probusiness-Development Limited Liability Company | 1077746278279 | 6A Ul. Belomorskaya, Moscow, 125195 | transaction | 40702810800010004765 | Branch of Khanty-Mansi Bank OJSC, TIN 8601000666, TRC 775002001 |
| Probusiness-Development Limited Liability Company | 1077746278279 | 6A Ul. Belomorskaya, Moscow, 125195 | transaction | 40702810200800000004 | Moscow Credit Bank OJSC, TIN 7734202860, TRC 775001001 |
| Probusiness-Development Limited Liability Company | 1077746278279 | 6A Ul. Belomorskaya, Moscow, 125195 | transaction | 40702978200000021377 | Probusinessbank JSCB OJSC, TIN 7729086087, TRC 775001001 |
| Probusiness-Development Limited Liability Company | 1077746278279 | 6A Ul. Belomorskaya, Moscow, 125195 | transaction | 40702840900001021377 | Probusinessbank JSCB OJSC, TIN 7729086087, TRC 775001001 |
| Probusiness-Development Limited Liability Company | 1077746278279 | 6A Ul. Belomorskaya, Moscow, 125195 | transaction | 40702840600000021377 | Probusinessbank JSCB OJSC, TIN 7729086087, TRC 775001001 |
| Probusiness-Development Limited Liability Company | 1077746278279 | 6A Ul. Belomorskaya, Moscow, 125195 | transaction | 40702810300000021377 | Probusinessbank JSCB OJSC, TIN 7729086087, TRC 775001001 |
| **Accounts in which Borrower must arrange for proceeds to be received pursuant to terms and conditions of the Agreement:** | | | | | |
| Kholmeks Limited Liability Company | 5067746400552 | 6A Ul. Belomorskaya, Moscow, 125195 | transaction | 40702810038180006359 | Multifunctional Subsidiary Office No. 01754 of the Moscow Bank of Sberbank of Russia OJSC, TIN 7707083893, TRC 775001001, BIC 044525225 |
| | | | | | |

## Signatures of the Parties

**CREDITOR**
Director, Credit Department
Moscow Bank of Sberbank of Russia OJSC

**BORROWER**
Representative of Kholmeks LLC
by power of attorney

_____[signature] P. S. Belov

_____[signature] A. I. Pakhomov

L.S.   [stamp:] SBERBANK – Moscow Bank, Moscow – branch of Sberbank of Russia Open Joint Stock Company – Sberbank of Russia Open Joint Stock Company, Moscow

[stamp:] KHOLMEKS – Limited Liability Company – PSRN 5067746400552 - Moscow

Addendum 2 [sic] to Agreement No. 2017 on the Opening of a Nonrevolving Credit Line dated January 10, 2013

Addendum 2

to Agreement No. 2017 on the Opening of a Nonrevolving
Credit Line dated January 10, 2013

to the Credit Department of the Moscow Bank
of Sberbank of Russia OJSC

Outgoing No. _____ of __/__/20__

### INSTRUCTIONS FOR THE TRANSFER OF CREDIT

I request that credit funds be provided with the following specifications:

| | |
|---|---|
| 1. Borrower name | Kholmeks Limited Liability Company |
| 2. Agreement on the Opening of a Nonrevolving Credit Line | No. 2017 dated January 10, 2013 |
| 3. Date credit funds are to be provided | *Specify scheduled date for receipt of credit* |
| 4. Amount, currency of credit | _____ (_____)<br>*Specify requested amount of credit (in numbers and words) and currency of credit* |
| 5. Transaction account | 40702810038180006359 |

_____          _____  (full name)
(Indicate title of Borrower's officer authorized to              (signature)
handle credit funds)

Borrower's chief accountant                 _____  (full name)
(indicate, if any)                                      (signature)
                                                              L.S.
*or*
Certification of digital signature of person authorized by Borrower to handle credit funds.

**Signatures of the Parties**

**CREDITOR**                                    **BORROWER**
Director, Credit Department                 Representative of Kholmeks LLC
Moscow Bank of Sberbank of Russia OJSC      by power of attorney

____[signature] P. S. Belov                 ____[signature] A. I. Pakhomov

L.S.   [stamp:] SBERBANK –                   [stamp:] KHOLMEKS – Limited
       Moscow Bank, Moscow –                 Liability Company – PSRN
       branch of Sberbank of Russia          5067746400552 - Moscow
       Open Joint Stock Company –
       Sberbank of Russia Open Joint
       Stock Company, Moscow

_____
**Creditor**                                                        **Borrower**

26

*Total stitched, paginated and authenticated with seals 26 (Twenty-six) pages*

| **Creditor** | **Borrower** |
|---|---|
| Director, Credit Department | Representative of Kholmeks LLC |
| Moscow Bank | by power of attorney |
| of Sberbank of Russia OJSC | |
| | |
| _____[signature] P. S. Belov | _____[signature] A. I. Pakhomov |
| | |
| L.S. | |

[stamp:] SBERBANK – Moscow Bank, Moscow – branch of Sberbank of Russia Open Joint Stock Company – Sberbank of Russia Open Joint Stock Company, Moscow

[stamp:] KHOLMEKS – Limited Liability Company – PSRN 5067746400552 - Moscow

# SBERBANK OF RUSSIA

Founded in 1841

### Amendment No. 1 to AGREEMENT No. 2017
### on the Opening of a Nonrevolving Credit Line dated January 10, 2013

Moscow                                                                                                April 1, 2013

**Sberbank of Russia Open Joint Stock Company**, hereinafter referred to as "the Creditor," represented by German Ivanovich Barg, Director of the Real Estate Financing Department of Sberbank of Russia OJSC, acting on the basis of the Charter; the Statute on the Moscow Bank, a branch of Sberbank of Russia Open Joint Stock Company; and power of attorney No. 1064 dated March 12, 2013, the party of the first part, and

**Kholmeks Limited Liability Company**, hereinafter referred to as "the Borrower," represented by Roman Nikolayevich Zemskov, General Director, acting on the basis of the Charter, the party of the second part, hereinafter jointly referred to as "the Parties," have entered into this amendment, hereinafter referred to as "the Amendment," to Agreement No. 2017 on the Opening of a Nonrevolving Credit Line dated January 10, 2013, hereinafter referred to as "the Agreement," as to the following:

**1. The first two paragraphs of clause 8.2.4 of the Agreement are to be worded as follows:**

"8.2.4. To provide the Creditor, on a quarterly basis, no later than the calendar month following the reporting period (quarter, six months, nine months), and at the end of the reporting year no later than 5 (Five) business days from the last day of the period prescribed by Russian Federation law for the submission of annual accounting (financial) statements to the tax authorities:

- an accounting (financial) statement with the elements and according to the forms prescribed by Russian Federation law, with a notation about the method by which the document was sent to the subdivision of the Russian Federal Tax Service (for annual statements), authenticated by the chief executive and the seal of the Borrower, and an audit opinion (or its executive summary) (when an audit of the accounting (financial) statement is mandatory under Russian Federation law);"

2. This Amendment shall be an integral part of the Agreement and shall take effect on the date it is signed.

3. In all other matters not referred to herein, the terms and conditions of the Agreement shall govern.

4. This Amendment is drawn up in 2 (Two) counterparts, each having equal force, one counterpart each for the Creditor and the Borrower.

### Place of Business and Essential Information of the Parties

**The Creditor:**
Sberbank of Russia Open Joint Stock Company; Moscow Bank, a branch of Sberbank of Russia OJSC
Place of business: 19 Ul. Vavilova, Moscow, 117997
Mailing address: Moscow Bank of Sberbank of Russia OJSC, 6 B. Andronyevskaya, Moscow, 109544
Correspondent account No. 30101810400000000225 at the Operations Department of the Moscow Main Territorial Department of the Bank of Russia
Transaction account No. 30301810500000100014 at Sberbank of Russia OJSC
BIC 044525225, TIN 7707083893, PSRN 1027700132195, TRC 775001001, NCEO 00032537,
Tel./fax: 781-68-52
**The Borrower:**
Kholmeks Limited Liability Company
Place of business: 6A Ul. Belomorskaya, Moscow, 125195
Mailing address: 6A Ul. Belomorskaya, Moscow, 125195
TIN 7726547734, PSRN 5067746400552, TRC 774301001, NCEO 97196518.
Transaction account No. 40702810038180006359 at Multifunctional Subsidiary Office No. 01754 of the Moscow Bank of Sberbank of Russia OJSC
Telephone: (495) 933-37-37, ext. 2000

### SIGNATURES OF THE PARTIES

|  Creditor  |  Borrower  |
|---|---|
| Director, Real Estate Financing Department | General Director |
| of Moscow Bank | Kholmeks LLC |
| Moscow Bank of Sberbank of Russia OJSC | |

_____[signature] G. I. Barg                         _____[signature] R. N. Zemskov
L.S.

[stamp:] SBERBANK – Moscow Bank, Moscow – branch of Sberbank of Russia Open Joint Stock Company – Sberbank of Russia Open Joint Stock Company, Moscow

[stamp:] KHOLMEKS – Limited Liability Company – PSRN 5067746400552 - Moscow

1

**SBERBANK OF RUSSIA**
Founded in 1841

**Amendment No. 2 to AGREEMENT No. 2017**
**on the Opening of a Nonrevolving Credit Line dated January 10, 2013**

Moscow                                                                                           September 6, 2013

      **Sberbank of Russia Open Joint Stock Company**, hereinafter referred to as "the Creditor," represented by **Oksana Nikolayevna Mironova**, Deputy Director of the Real Estate Financing Department, acting on the basis of the Charter; the Statute on the Moscow Bank, a branch of Sberbank of Russia Open Joint Stock Company; and power of attorney No. 1065 dated March 12, 2013, the party of the first part, and
      **Kholmeks Limited Liability Company**, hereinafter referred to as "the Borrower," represented by **Roman Nikolayevich Zemskov**, General Director, acting on the basis of the Charter, the party of the second part, hereinafter jointly referred to as "the Parties," have entered into this amendment, hereinafter referred to as "the Amendment," to Agreement No. 2017 on the Opening of a Nonrevolving Credit Line dated January 10, 2013, as revised by Amendment No. 1 dated April 1, 2013, hereinafter referred to as "the Agreement," as to the following:

      **1. Clause 9.1.1 of the Agreement is to be worded as follows:**
      "9.1.1. A pledge of property rights to obtain ownership of at least 95.98 (Ninety-five and ninety-eight hundredths) percent of the units of the Facility under construction—townhouses—with a total area of at least 38,176.64 (Thirty-eight and [sic] one hundred seventy-six and sixty-four hundredths) sq. m. located at the address: Village of Podolino, Kutuzovskoye Rural Settlement, Solnechnogorsk District, Moscow Region, belonging to Kholmeks Limited Liability Company (PSRN 5067746400552, TIN 7726547734, place of business: 6A Ul. Belomorskaya, Moscow, 125195) pursuant to Property Rights Agreement No. 2017/ip of January 10, 2013."

      **2.** The terms and definitions used herein correspond to the terms and definitions adopted by the Parties in the Agreement.
      **3.** This Amendment shall be an integral part of the Agreement and shall take effect on the date it is signed.
      **4.** In all other matters not referred to herein, the terms and conditions of the Agreement shall govern.
      **5.** This Amendment is drawn up in 2 (Two) counterparts, each having equal force, one counterpart each for the Creditor and the Borrower.

**Place of Business and Essential Information of the Parties**

**The Creditor:**
Place of business: 19 Ul. Vavilova, Moscow, 117997
Mailing address: Moscow Bank of Sberbank of Russia OJSC, 6 B. Andronyevskaya, Moscow, 109544
Correspondent account No. 30101810400000000225 at the Operations Department of the Moscow Main Territorial Department of the Bank of Russia
Transaction account No. 30301810500001000014 at Sberbank of Russia OJSC
BIC 044525225, TIN 7707083893, PSRN 1027700132195, TRC 775001001, NCEO 00032537,
Tel./fax: 781-68-52
**The Borrower:**
Place of business: 6A Ul. Belomorskaya, Moscow, 125195

Mailing address: 6A Ul. Belomorskaya, Moscow, 125195
TIN 7726547734, PSRN 5067746400552, TRC 774301001, NCEO 97196518.
Transaction account No. 40702810038180006359 at Multifunctional Subsidiary Office No. 01754 of the Moscow
Bank of Sberbank of Russia OJSC
Telephone: (495) 933-37-37, ext. 2000

## SIGNATURES OF THE PARTIES

| **Creditor** | **Borrower** |
|---|---|
| Deputy Director | General Director |
| Real Estate Financing Department | Kholmeks LLC |
| Moscow Bank of Sberbank of Russia OJSC | |

_____ [signature] **O. N. Mironova**       _____ [signature] **R. N. Zemskov**

**L.S.**                                    **L.S.**

[stamp:] SBERBANK –
Moscow Bank, Moscow –
branch of Sberbank of Russia
Open Joint Stock Company –
Sberbank of Russia Open Joint
Stock Company, Moscow

[stamp:] KHOLMEKS – Limited
Liability Company – PSRN
5067746400552 - Moscow

**SBERBANK OF RUSSIA**
Founded in 1841


**Amendment No. 3 to Agreement
on the Opening of a Nonrevolving Credit Line No. 2017 dated January 10, 2013**


Moscow                                                        December *13,* 2013


    **Sberbank of Russia Open Joint Stock Company**, hereinafter referred to as "the Creditor," represented by **German Ivanovich Barg**, Director of the Real Estate Financing Department of the Moscow Bank, acting on the basis of the Charter; the Statute on the Moscow Bank, a branch of Sberbank of Russia Open Joint Stock Company; and Power of Attorney No. 01-353 dated November 19, 2013, the party of the first part, and
    **Kholmeks Limited Liability Company**, hereinafter referred to as "the Borrower," represented by **Roman Nikolayevich Zemskov**, General Director, acting on the basis of the Charter, the party of the second part, hereinafter jointly referred to as "the Parties," have entered into this amendment, hereinafter referred to as "the Amendment," to Agreement on the Opening of a Nonrevolving Credit Line No. 2017 dated January 10, 2013, as revised by Amendment No. 1 dated April 1, 2013 and Amendment No. 2 dated September 6, 2013, hereinafter referred to as "the Agreement," as to the following:

    **1. Clause 8.2.16 of the Agreement is to be worded as follows:**
    "8.2.16. To transfer funds received as a result of entering into sales and purchase agreements and other contracts, which result in the transfer of units in the Facility and/or property rights thereto that have been pledged to the Creditor pursuant to clause 9.1.1 herein, for prepayment of the indebtedness on the credit (including the principal for an amount not less than the collateral value of the units in the Facility being released from collateral, interest for use of the credit, and the fees specified in clauses 4.3, 4.4 and 11.4 herein as of the payment date in the amount of the value of the units in the Facility released from collateral as specified in the relevant sales and purchase agreement, no later than 3 (Three) business days from the date of receipt of funds in the Borrower's accounts."
    **2. Clause 8.2.35 is to be added to the Agreement, with the following wording:**
    "8.2.35. Within 10 (Ten) calendar days from the date of state registration of the title to newly formed land parcels (as a result of the division of the land parcel, Cadastral No. 50:09:0070705:18, with an area of 29,781 sq. m., located at: Village of Podolino, Kutuzovskoye Rural Settlement, Solnechnogorsk District, Moscow Region), to provide the Creditor with copies of the certificates on state registration of the title to the newly formed land parcels, cadastral certificates for the newly formed land parcels and current extracts from the Unified State Register of Real Estate Rights and Transactions (for a period of up to 30 calendar days) in respect of the newly formed land parcels."
    **3. Clause 8.2.36 is to be added to the Agreement, with the following wording:**
    "8.2.36. Within 60 (Sixty) calendar days from the date of state registration of the title to newly formed land parcels (as a result of the division of the land parcel, Cadastral No. 50:09:0070705:18, with an area of 29,781 sq. m., located at: Village of Podolino, Kutuzovskoye Rural Settlement, Solnechnogorsk District, Moscow Region), to formalize a mortgage for said newly formed land parcels with the Creditor by entering into an amendment to Mortgage Agreement No. 2017/I-1 dated January 10, 2013."

2

**4.** The terms and definitions used herein correspond to the terms and definitions adopted by the Parties in the Agreement.

**5.** This Amendment shall be an integral part of the Agreement and shall take effect on the date it is signed.

**6.** In all other matters not referred to herein, the terms and conditions of the Agreement shall govern.

**7.** This Amendment is drawn up in 2 (Two) counterparts, each having equal force, one counterpart each for the Creditor and the Borrower.

**Place of Business and Essential Information of the Parties**

**The Creditor:**
Place of business: 19 Ul. Vavilova, Moscow, 117997
Mailing address: Moscow Bank of Sberbank of Russia OJSC, 6 B. Andronyevskaya, Moscow, 109544
Correspondent account No. 30101810400000000225 at the Operations Department of the Moscow Main Territorial Department of the Bank of Russia
Transaction account No. 30301810500001000014 at Sberbank of Russia OJSC
BIC 044525225, TIN 7707083893, PSRN 1027700132195, TRC 775001001, NCEO 00032537,
Tel./fax: 781-68-52
**The Borrower:**
Place of business: 6A Ul. Belomorskaya, Moscow, 125195
Mailing address: 6A Ul. Belomorskaya, Moscow, 125195
TIN 7726547734, PSRN 5067746400552, TRC 774301001, NCEO 97196518.
Transaction account No. 40702810038180006359 at Multifunctional Subsidiary Office No. 01754 of the Moscow Bank of Sberbank of Russia OJSC
Telephone: (495) 933-37-37, ext. 2000

**SIGNATURES OF THE PARTIES**

|  Creditor | Borrower |
| --- | --- |
| Director | General Director |
| Real Estate Financing Department | Kholmeks LLC |
| Moscow Bank of Sberbank of Russia OJSC | |

_____ [signature] **G. I. Barg**           _____ [signature] **R. N. Zemskov**

**L.S.**     [stamp:] SBERBANK – Moscow Bank, Moscow – branch of Sberbank of Russia Open Joint Stock Company – Sberbank of Russia Open Joint Stock Company, Moscow

**L.S.**     [stamp:] KHOLMEKS – Limited Liability Company – PSRN 5067746400552 - Moscow

1

**SBERBANK OF RUSSIA**
Founded in 1841

**Amendment No. 4 to Agreement on the Opening
of a Nonrevolving Credit Line No. 2017 dated January 10, 2013**

Moscow                                                                                      June 26, 2014

**Sberbank of Russia Open Joint Stock Company**, hereinafter referred to as "the Creditor," represented by **German Ivanovich Barg**, Director of the Real Estate Financing Department of the Moscow Bank, acting on the basis of the Charter; the Statute on the Moscow Bank, a branch of Sberbank of Russia Open Joint Stock Company (Moscow Bank of Sberbank of Russia OJSC); and Power of Attorney No. 01-353 dated November 19, 2013, the party of the first part, and

**Kholmeks Limited Liability Company**, hereinafter referred to as "the Borrower," represented by **Roman Nikolayevich Zemskov**, General Director, acting on the basis of the Charter, the party of the second part, hereinafter jointly referred to as "the Parties," have entered into this amendment, hereinafter referred to as "the Amendment," to Agreement on the Opening of a Nonrevolving Credit Line No. 2017 dated January 10, 2013, as revised by Amendment No. 1 dated April 1, 2013; Amendment No. 2 dated September 6, 2013; and Amendment No. 3 dated December 13, 2013, hereinafter referred to as "the Agreement," as to the following:

**1. Clause 6.1 of the Agreement is to be worded as follows:**
"6.1. Date of full repayment of the credit issued: December 28, 2015.
The credit shall be repaid according to the following schedule:

| Payment date | Payment amount as a percentage of the amount of the credit limit drawn down as of the Availability Period Expiration Date |
|---|---|
| June 28, 2014 | 13.05% |
| September 28, 2014 | 16.31% |
| December 28, 2014 | 16.31% |
| March 28, 2015 | 10.87% |
| June 28, 2015 | 13.05% |
| September 28, 2015 | 16.31% |
| December 28, 2015 | 14.10% |

In the event the Borrower repays the credit after the Availability Period Expiration Date but before the dates specified in this clause, pursuant to clause 6.2 herein, the credit repayment amounts according to the above schedule shall be reduced by the credit amounts repaid before the dates specified in this clause, beginning with the next payment on the schedule after the actual repayment. Each subsequent payment on the schedule shall be reduced by the credit amounts repaid before the dates specified in this clause that are in excess of the amounts of previous payments on the schedule.

If the date of repayment of the relevant credit amount falls on a nonbusiness day, the period of use of the relevant credit amount shall be extended through the first business day (including that day) following the nonbusiness day on which the date of repayment of the relevant credit amount falls."

**2.** The terms and definitions used herein correspond to the terms and definitions adopted by the Parties in the Agreement.

**3.** This Amendment shall be an integral part of the Agreement and shall take effect on the date it is signed.

**4.** In all other matters not referred to herein, the terms and conditions of the Agreement shall govern.

**5.** This Amendment is drawn up in 2 (Two) counterparts, each having equal force, one counterpart each for the Creditor and the Borrower.

**Place of Business and Essential Information of the Parties**

**The Creditor: Sberbank of Russia Open Joint Stock Company; Moscow Bank, a branch of Sberbank of Russia OJSC**

Place of business: 19 Ul. Vavilova, Moscow, 117997

Mailing address: Moscow Bank of Sberbank of Russia OJSC, 6 B. Andronyevskaya, Moscow, 109544

Correspondent account No. 30101810400000000225 at the Operations Department of the Main Department of the Central Bank of the Russian Federation for the Central Federal District, Moscow (Moscow Operations Department)

Transaction account No. 30301810000006000014 at Sberbank of Russia OJSC

BIC 044525225, TIN 7707083893, PSRN 1027700132195, TRC 775001001, NCEO 00032537,

Tel./fax: (495) 781-68-52

**The Borrower: Kholmeks Limited Liability Company**

Place of business: 6A Ul. Belomorskaya, Moscow, 125195

Mailing address: 6A Ul. Belomorskaya, Moscow, 125195

TIN 7726547734, PSRN 5067746400552, TRC 774301001, NCEO 97196518.

Transaction account No. 40702810038180006359 at Multifunctional Subsidiary Office No. 01754 of the Moscow Bank of Sberbank of Russia OJSC

Telephone: (495) 933-37-37, ext. 2000

**SIGNATURES OF THE PARTIES**

| Creditor | Borrower |
|---|---|
| Director | General Director |
| Real Estate Financing Department | Kholmeks LLC |
| Moscow Bank of Sberbank of Russia OJSC | |

_____ [signature] **G. I. Barg**          _____ [signature] **R. N. Zemskov**

**L.S.**          **L.S.**

[stamp:] SBERBANK – Moscow Bank, Moscow – branch of Sberbank of Russia Open Joint Stock Company – Sberbank of Russia Open Joint Stock Company, Moscow

[stamp:] KHOLMEKS – Limited Liability Company – PSRN 5067746400552 - Moscow

1

**SBERBANK OF RUSSIA**
Founded in 1841


**Amendment No. 5 to Agreement on the Opening
of a Nonrevolving Credit Line No. 2017 dated January 10, 2013**


Moscow                                                                    September 30, 2014


     **Sberbank of Russia Open Joint Stock Company**, hereinafter referred to as "the Creditor," represented by **German Ivanovich Barg**, **Director of the Real Estate Financing Department of the Moscow Bank**, acting on the basis of the Charter; the Statute on the Moscow Bank, a branch of Sberbank of Russia Open Joint Stock Company; and Power of Attorney No. 01-353 dated November 19, 2013, the party of the first part, and
     **Kholmeks Limited Liability Company**, hereinafter referred to as "the Borrower," represented by **Roman Nikolayevich Zemskov**, General Director, acting on the basis of the Charter, the party of the second part, hereinafter jointly referred to as "the Parties," have entered into this amendment, hereinafter referred to as "the Amendment," to Agreement on the Opening of a Nonrevolving Credit Line No. 2017 dated January 10, 2013, as revised by Amendment No. 1 dated April 1, 2013; Amendment No. 2 dated September 6, 2013; Amendment No. 3 dated December 13, 2013; and Amendment No. 4 dated June 26, 2014, hereinafter referred to as "the Agreement," as to the following:


     **1. Add Clause 4.6 to the Agreement, with the following wording:**
     "4.6. The Borrower shall pay the Creditor a fee for credit servicing in the amount of RUB 100,000 (One hundred thousand). The fee for credit servicing shall be paid by the Borrower to the Creditor in a lump sum within 5 (Five) business days from the execution date of the Agreement."


     **2. Clause 8.2.32 of the Agreement is to be worded as follows:**
     "8.2.32. Within **170 (One hundred seventy)** calendar days from the date the completed Facility is put into operation, to provide the Creditor with a certificate of state registration of the title to the unsold units of the Facility.


     3. The terms and definitions used herein correspond to the terms and definitions adopted by the Parties in the Agreement.
     4. This Amendment shall be an integral part of the Agreement and shall take effect on the date it is signed.
     5. In all other matters not referred to herein, the terms and conditions of the Agreement shall govern.
     6. This Amendment is drawn up in 2 (Two) counterparts, each having equal force, one counterpart each for the Creditor and the Borrower.


**Place of Business and Essential Information of the Parties**


**The Creditor: Sberbank of Russia Open Joint Stock Company; Moscow Bank, a branch of Sberbank of Russia OJSC**
Place of business: Moscow
Address: 19 Ul. Vavilova, Moscow, 117997

Mailing address: Moscow Bank of Sberbank of Russia OJSC, 6 B. Andronyevskaya, Moscow, 109544
BIC 044525225, TIN 7707083893, PSRN 1027700132195, TRC 775001001, NCEO 00032537
Correspondent account No. 30101810400000000225 at the Operations Department of the Main Department of the Central Bank of the Russian Federation for the Central Federal District, Moscow (Moscow Operations Department)
Account No. 30301810000006000014 at Sberbank of Russia OJSC
Tel./fax: (495) 781-68-52, 781-69-20

**The Borrower: Kholmeks Limited Liability Company**
Place of business: Moscow
Mailing address: 6A Ul. Belomorskaya, Moscow, 125195
TIN 7726547734, PSRN 5067746400552, TRC 774301001, NCEO 97196518.
Transaction account No. 40702810038180006359 at Multifunctional Subsidiary Office No. 01754 of the Moscow Bank of Sberbank of Russia OJSC
Telephone: (495) 933-37-37, ext. 2000

## SIGNATURES OF THE PARTIES

|  |  |
|---|---|
| **Creditor** | **Borrower** |
| Director | General Director |
| Real Estate Financing Department | Kholmeks LLC |
| Moscow Bank of Sberbank of Russia OJSC | |
| \_\_\_\_[signature] **G. I. Barg** | \_\_\_\_[signature] **R. N. Zemskov** |
| **L.S.** | **L.S.** |

[stamp:] SBERBANK – Moscow Bank, Moscow – branch of Sberbank of Russia Open Joint Stock Company – Sberbank of Russia Open Joint Stock Company, Moscow

[stamp:] KHOLMEKS – Limited Liability Company – PSRN 5067746400552 - Moscow



СБЕРБАНК РОССИИ
Основан в 1841 году

Код 012140027/5
БКИ

### ДОГОВОР № 2017
#### об открытии невозобновляемой кредитной линии

г. Москва

«10» января 2013 г.

Открытое акционерное общество «Сбербанк России», именуемое в дальнейшем «Кредитор», в лице директора Управления кредитования Московского банка Белова Петра Сергеевича, действующего на основании Устава, Положения о филиале Открытого акционерного общества «Сбербанк России» - Московском банке и доверенности № 365 от 01 апреля 2011 года, с одной стороны, и Общество с ограниченной ответственностью «ХОЛМЭКС», именуемое в дальнейшем «Заемщику, в лице Пахомова Алексея Игоревича, действующего на основании Доверенности от 27.12.2012г., с другой стороны, далее совместно именуемые «Стороны», заключили настоящий договор, именуемый в дальнейшем «Договор», о нижеследующем:

### Статья 1. Предмет Договора

1.1. Кредитор обязуется открыть Заемщику невозобновляемую кредитную линию для финансирования затрат по проекту строительства «Жилого комплекса на земельном участке по адресу: Московская область, Солнечногорский район, д.Подолино», расположенного по адресу: Московская область, Солнечногорский район, д.Подолино (далее - Объект), в целом именуемый – Проект и рефинансирования затрат по Проекту, в том числе для погашения задолженности по Соглашению о расторжении договора инвестирования строительства жилого комплекса по адресу: Московская область, Солнечногорский район, д. Подолино № ИН-3/25-а-08 от 25.04.2008 с условием о новации долга в заемное обязательство, заключенному между Заемщиком и Обществом с ограниченной ответственностью «Пробизнес-Девелопмент» (далее – Займ), в сумме не более 368 410 000 (Триста шестьдесят восемь миллионов четыреста десять тысяч) рублей на срок по «28» декабря 2015 г. с лимитом:

| Период действия лимита | Сумма лимита |
|---|---|
| С «10» января 2012г. по «09» июня 2014г. | 919 800 000 (Девятьсот девятнадцать миллионов восемьсот тысяч) рублей |

Заемщик обязуется возвратить Кредитору полученный кредит и уплатить проценты за пользование им и другие платежи в размере, в сроки и на условиях Договора.

### Статья 2. Заверения и гарантии

2.1. Заемщик является юридическим лицом, надлежащим образом учрежденным и законно действующим в соответствии с законодательством Российской Федерации.

2.2. Заемщик подтверждает, что все согласия, необходимые для заключения Договора и иных договоров и соглашений, предусмотренных Договором, были получены и вступили в действие, или, если они не были получены, – то будут получены и/или вступят в действие в установленном порядке до заключения соответствующих договоров и соглашений в соответствии с действующим законодательством Российской Федерации.

2.3. Заемщик заверяет, что случаи и события, перечисленные в п. 7.1.7 Договора, на дату заключения Договора не наступили и предпримет все действия, чтобы они не наступили в течение срока действия Договора.

2.4. Вся фактическая информация, представленная Заемщиком Кредитору, является достоверной и правильной во всех существенных аспектах на дату ее предоставления. На дату заключения Договора не было утаено какой-либо информации, что могло бы в результате

---

Кредитор                                                                                      Заемщик

сделать представленную информацию неверной или вводящей в заблуждение Кредитора в каких-либо существенных аспектах.

2.5. В отношении Заемщика не возбуждалось судебное, арбитражное или административное производство в каком-либо суде, арбитраже или органе, которое могло бы привести к невозможности Заемщика надлежащим образом исполнять свои обязательства по Договору.

2.6. Заемщиком исполнялись и соблюдались, равно, как и в настоящее время исполняются и соблюдаются во всех существенных аспектах требования законодательства, неисполнение или несоблюдение которых могло бы привести Заемщика к невозможности надлежащим образом исполнять свои обязательства по Договору.

2.7. Заемщик имеет действительный и законный титул или законное право пользования и эксплуатации в отношении активов, необходимых для осуществления его деятельности.

2.8. Насколько известно Заемщику, не имеют место какие-либо события или обстоятельства, которые могли бы повлиять на исполнение им обязательств по любым другим договорам или финансовым инструментам, а также которые бы могли привести Заемщика к невозможности надлежащим образом исполнять свои обязательства по Договору.

2.9. Заключение и исполнение Заемщиком Договора не противоречит его учредительным документам.

### Статья 3. Порядок предоставления кредита

3.1. Выдача любой суммы кредита производится в пределах свободного остатка лимита, определенного по следующей формуле:

СОЛ = Лим – (СЗ + ПЗ), где

СОЛ – свободный остаток лимита;
Лим – лимит, установленный в п.1.1 Договора;
СЗ - фактическая ссудная задолженность по кредиту на текущую дату;
ПЗ – сумма ранее осуществленного погашения кредита.
Погашение любой суммы кредита не увеличивает свободного остатка лимита кредитной линии.

3.2. Выдача кредита производится перечислением сумм кредита на расчетный счет Заемщика, указанный в Приложении №1 на основании распоряжений Заемщика, оформленных в соответствии с Приложением №2 к Договору.

Перечисление сумм кредита производится при отсутствии просроченной задолженности и неуплаченных неустоек по Договору и по всем иным кредитным договорам (в том числе договорам об открытии кредитной линии) и/или соглашениям, и/или договорам поручительства, и/или договорам о предоставлении банковских гарантий/контргарантий/ поручительств, заключенным (которые могут быть заключены) между Кредитором и Заемщиком.

Выплаты денежных средств в рамках каждого транша осуществляются после предоставления Заемщиком надлежащим образом оформленных документов, подтверждающих целевое использование денежных средств, в соответствии с п. 8.2.12 Договора, а также проведения Кредитором экспертизы представленных документов и выполненных на Объекте работ.

3.3. Выдача кредита производится:

3.3.1. После надлежащего оформления указанного в п.п. 9.1.1 – 9.1.8 Договора обеспечения по кредиту в соответствии с требованиями действующего законодательства Российской Федерации, включая передачу залогодателем Кредитору предмета заклада, в отношении обеспечения, указанного в п. 9.1.4, регистрацию залога в уполномоченных государственных органах в отношении обеспечения указанного в п.п. 9.1.2 Договора.

---

**Кредитор**                                                                 **Заемщик**

*Договор об открытии невозобновляемой кредитной линии № 2017 от «10» января 2013г.*

3.3.2. После заключения и предоставления Кредитору соглашения(ий) о праве Кредитора на списание средств без распоряжения плательщика в погашение просроченной задолженности со счета(ов) Заемщика, а также поручителя, указанных в Приложении №1.

3.3.3. После перечисления платы за открытие кредитной линии.

3.3.4. После выполнения условий, указанных в п. 10.3. Договора.

3.3.5. После осуществления Заемщиком субординации привлеченных заимствований по отношению к кредиту Кредитора и предоставление Заемщиком Кредитору документов, по содержанию и форме удовлетворительных для Кредитора, подтверждающих переоформление привлеченных на дату заключения Кредитного договора заимствований на срок, превышающий срок кредита не менее чем на 6 (Шесть) месяцев.

При этом заимствования в сумме не менее 416 667 406 (Четыреста шестнадцать миллионов шестьсот шестьдесят семь тысяч четыреста шесть) рублей подлежат субординации по отношению к кредиту Кредитора путем конвертации в простые векселя Заемщика со сроком погашения, превышающим срок кредита не менее чем на 6 (Шесть) месяцев, с последующим оформлением данных векселей в заклад Кредитору.

3.3.6. После предоставления Заемщиком Кредитору документов, подтверждающих источники уплаты процентов по кредиту Кредитора на инвестиционной фазе по удовлетворительной для Кредитора форме и содержанию (в т.ч. путем предоставления документов, подтверждающих заключение договора займа с ООО Факторинговая компания «Лайф» на сумму не менее 128 200 000 (Сто двадцать восемь миллионов двести тысяч) рублей, срок которого должен превышать срок кредита не менее чем на 6 (Шесть) месяцев).

3.3.7. После предоставления Заемщиком Кредитору всех заключенных договоров (со всеми изменениями и дополнениями), связанных с отчуждением площадей Заемщика, оплата по которым не произведена, а также информационного письма Заемщика о заключенных договорах на дату заключения Кредитного договора.

3.3.8. После предоставления Кредитору копии надлежащим образом оформленных изменений в проектную декларацию Общества с ограниченной ответственностью «ХОЛМЭКС» по строительству Объекта с отражением следующих положений:

• указания планируемой стоимости строительства Объекта;

• отражения в проектной декларации структуры финансирования Объекта, в т.ч. кредитные средства Кредитора в размере, указанном в п. 1.1. Договора;

• указания в проектной декларации, что Застройщик осуществляет строительство Объекта за счет кредитных средств Кредитора;

• указания в проектной декларации, что земельные участки, указанные в п. 9.1.2. Договора, находится в залоге у Кредитора;

с отметкой Федеральной регистрационной службы о получении указанного документа.

3.4. Выдача кредита производится по «09» июня 2014 г. (далее по тексту – Дата окончания периода доступности). В случае, если в Дату окончания периода доступности кредитная линия будет использована Заемщиком не полностью, свободный остаток лимита кредитной линии закрывается.

3.5. Выдача кредита отражается на отдельных ссудных счетах, открываемых Кредитором по Договору, в зависимости от срока с даты выдачи (не включая эту дату) по дату полного погашения кредита, указанную в п. 1.1 Договора (включительно).

## Статья 4. Проценты и комиссионные платежи

4.1. Заемщик уплачивает Кредитору проценты за пользование кредитом по ставке 13,5 (Тринадцать целых пять десятых) процентов годовых.

4.2. Проценты начисляются на сумму фактической ссудной задолженности по кредиту начиная с даты, следующей за датой образования задолженности по ссудному(ым) счету(ам) (включительно), и по дату полного погашения кредита (включительно).

**Кредитор**                                                                                               **Заемщик**

*Договор об открытии невозобновляемой кредитной линии № 2017 от «10» января 2013г.*

3

Уплата процентов производится «28» марта 2013г. и далее ежеквартально «28» числа каждого календарного квартала и в дату полного погашения кредита, указанную в п. 1.1 Договора, или в дату полного погашения кредита, осуществленного ранее указанной в п.1.1 Договора даты, при условии выборки лимита кредитной линии в полном объеме и/или после Даты окончания периода доступности, в сумме начисленных на указанную(ые) дату(ы) процентов (включительно).

В случае несвоевременного погашения кредита (просрочки) на сумму непогашенного в срок кредита проценты не начисляются, начиная с даты, следующей за датой погашения соответствующей суммы кредита, установленной п. 6.1 Договора (включительно).

4.3. С Заемщика взимается плата за открытие кредитной линии в размере 1 (Один) процент от лимита кредитной линии, указанного в п. 1.1 Договора, что составляет 9 198 000 (Девять миллионов сто девяносто восемь тысяч) рублей.

Плата за открытие кредитной линии уплачивается Заемщиком Кредитору единовременно до первой выдачи кредита, но не позднее «06» февраля 2013 г.

4.4. С Заемщика взимается плата за пользование лимитом кредитной линии в размере 1 (Один) процент годовых от свободного остатка лимита, рассчитанного в соответствии с п. 3.1 Договора.

Начисление платы производится за период с даты начала действия лимита, указанной в п. 1.1 Договора (не включая эту дату), по Дату окончания периода доступности или по дату полного погашения кредита, осуществленного ранее Даты окончания периода доступности, при условии выборки лимита кредитной линии в полном объеме (включительно).

Плата за пользование лимитом кредитной линии уплачивается Заемщиком Кредитору в установленные условиями Договора даты уплаты процентов, в сумме начисленных на указанные даты (включительно) платы.

4.5. При погашении кредита (полностью или частично) ранее установленных п. 6.1. Договора дат без предварительного письменного уведомления или при уведомлении менее чем за 30 (Тридцать) календарных дней до даты погашения (включительно, при этом дата поступления уведомления Кредитору в расчет количества дней не включается), Заемщик уплачивает Кредитору плату за досрочный возврат кредита.

Плата уплачивается в размере 2 (Двух) процентов годовых от досрочно возвращаемой суммы кредита за период с даты фактического погашения задолженности (не включая эту дату), а при погашении в соответствии с п. 5.12 Договора с даты получения Кредитором письменного заявления Заемщика (не включая эту дату), по ближайшую к ней дату, указанную в п. 6.1 Договора (включительно), по которой имеется непогашенная ссудная задолженность по кредиту в соответствующем размере.

Плата за досрочный возврат кредита уплачивается Заемщиком Кредитору одновременно с платежом по досрочному погашению ссудной задолженности по кредиту.

Плата за досрочный возврат кредита не взимается:
- при поступлении средств в погашение кредита в соответствии с п.п. 8.1.1, 8.2.1, 8.2.8 Договора;
- при поступлении средств страхового возмещения в погашение кредита в соответствии с условиями страхования переданного в залог имущества;
- в случае осуществления досрочного погашения сумм кредита, если период с даты фактического погашения (не включая эту дату), а при погашении в соответствии с п. 5.12 Договора с даты получения Кредитором письменного заявления Заемщика (не включая эту дату), по ближайшую к ней дату, указанную в п. 6.1 Договора (включительно), по которой имеется непогашенная ссудная задолженность по кредиту в соответствующем размере, не превышает 30 (Тридцать) календарных дней;
- в случае направления Кредитором Заемщику уведомления о согласии на досрочное погашение кредита (полное или частичное), в порядке, предусмотренном Договором;
- в случае осуществления досрочного погашения сумм кредита за счет средств, полученных от реализации имущественных прав на площади Объекта, и/или от реализации площадей Объекта.

**Кредитор**                                                                              **Заемщик**

## Статья 5. Условия расчетов и платежей

5.1. Погашение кредита, уплата процентов и других платежей по Договору производится платежными поручениями со счетов Заемщика или третьих лиц у Кредитора или в других банках.

В платежных поручениях суммы основного долга, процентов, каждой из плат, перечисленных в статье 4 Договора (далее – Комиссионные платежи) и неустоек указываются отдельно по каждому из указанных видов платежей.

5.2. Датой выдачи кредита является дата образования ссудной задолженности по ссудному(ым) счету(ам).

5.3. Датой исполнения обязательств по уплате платежей по Договору является дата списания средств со счетов Заемщика или третьих лиц у Кредитора в погашение обязательств по Договору или дата поступления средств в погашение обязательств по Договору на корреспондентский счет Кредитора, в случае если погашение осуществляется со счетов, открытых в других банках.

5.4. Если дата уплаты процентов или внесения других платежей по Договору приходится на нерабочий день, то обязательства должны быть исполнены не позднее первого рабочего дня, следующего за нерабочим днем.

5.5. При исчислении процентов, Комиссионных платежей и неустоек используется фактическое число календарных дней в месяце и году.

Начисление процентов и неустойки за несвоевременное погашение кредита осуществляется отдельно по каждому из ссудных счетов, открытых Кредитором по Договору. Сумма полученных величин составляет общую сумму обязательств по уплате процентов и неустойке за несвоевременное погашение кредита.

5.6. Средства, поступившие в счет погашения задолженности по Договору, в том числе списанные без распоряжения Заемщика со счетов Заемщика, а также перечисленные третьими лицами, направляются вне зависимости от назначения платежа (с учетом особенностей, изложенных в п.п. 5.7, 5.10, 5.11, 5.12, 5.13 Договора), указанного в платежном документе, в первую очередь на возмещение издержек Кредитора по получению исполнения, далее в следующей очередности:

1) на внесение просроченной платы за открытие кредитной линии;
2) на внесение просроченной платы за пользование лимитом кредитной линии;
3) на уплату просроченных процентов;
4) на внесение срочной платы за открытие кредитной линии;
5) на внесение срочной платы за пользование лимитом кредитной линии;
6) на уплату срочных процентов;
7) на погашение просроченной ссудной задолженности по кредиту;
8) на внесение платы за досрочный возврат кредита;
9) на погашение срочной ссудной задолженности по кредиту;
10) на уплату неустоек за неисполнение обязательств по Договору в установленный срок (за исключением неустойки в соответствии с п.п. 11.3, 11.4 Договора;
11) на уплату неустойки в соответствии с п.п. 11.3, 11.4 Договора.

При этом ссудная задолженность по кредиту погашается в хронологическом порядке, начиная со ссудного счета, открытого первым.

Обязательства по Договору (по погашению ссудной задолженности по кредиту, по уплате процентов и внесению Комиссионных платежей) становятся срочными в дату наступления срока их исполнения в соответствии с условиями, установленными Договором (далее – Дата платежа).

Под просроченными обязательствами в рамках Договора понимаются обязательства по Договору, не исполненные в Дату платежа.

5.7. Денежные средства, поступившие в соответствии с платежными поручениями в уплату неустоек по Договору, при указании данного назначения платежа в качестве

единственного в платежном документе, направляются Кредитором на уплату неустоек в соответствии с очередностью уплаты неустоек, установленной п. 5.6 Договора.

Излишне полученная сумма направляется Кредитором на погашение обязательств в соответствии с очередностью платежей, установленной п. 5.6 Договора.

5.8. При финансировании Заемщиком за счет средств кредита расходов в валюте, отличной от валюты кредита, конверсионные операции со средствами кредита проводятся у Кредитора по курсу и на условиях Кредитора на дату совершения операций.

5.9. Обязательства по погашению ссудной задолженности по кредиту могут быть исполнены ранее Даты платежа в соответствии с п. 6.2. Договора.

Платежи, поступившие в счет погашения ссудной задолженности по кредиту ранее дат, установленных п. 6.1. Договора, направляются Кредитором на погашение указанных обязательств в счет ближайших по срокам платежей в погашение кредита, установленных п. 6.1. Договора, с учетом очередности платежей, установленной п. 5.6. Договора. В этом случае обязательства по погашению ссудной задолженности в целях распределения в соответствии с очередностью платежей, установленной п. 5.6 Договора, признаются срочными к погашению в дату поступления средств в размере поступивших денежных средств, но не более суммы денежных средств, оставшейся после распределения на иные платежи, указанные в очередности платежей до платежа на погашение срочной ссудной задолженности по кредиту, и не более суммы основного долга, указанной в платежном документе (при его указании).

Излишне полученная в соответствии с настоящим пунктом Договора сумма возвращается Кредитором на счет Заемщика, открытый у Кредитора, не позднее первого рабочего дня, следующего за датой поступления денежных средств.

При невозможности идентификации платежа (не указано(ы) обязательство(а), которое(ые) исполняется(ются)), указанного в платежном документе, поступившие средства направляются Кредитором в счет погашения ссудной задолженности по кредиту в соответствии с настоящим пунктом Договора.

5.10. Обязательства по процентам и/или Комиссионным платежам могут быть исполнены ранее Дат платежа в сумме не более начисленных на дату поступления Кредитору (включительно) денежных средств. В этом случае все обязательства по процентам и Комиссионным платежам становятся срочными к погашению в дату поступления средств в размере поступивших денежных средств, но не более начисленных.

При этом, денежные средства, поступившие от Заемщика в погашение указанных обязательств, вне зависимости от назначения платежа, указанного в платежном документе, направляются Кредитором на погашение обязательств по процентам и Комиссионным платежам в соответствии с очередностью платежей, установленной п. 5.6. Договора, кроме уплаты неустоек.

5.11. Если до Даты платежа по уплате процентов и/или внесению Комиссионных платежей остается 10 (Десять) и менее рабочих дней (далее - Период досрочной уплаты), то излишне полученную в соответствии с п. 5.10 Договора от Заемщика сумму (далее – Досрочные платежи) Кредитор направляет в погашение указанных обязательств Заемщика в ближайшие Даты платежей в соответствии с очередностью платежей, установленной п. 5.6. Договора. При возникновении в Период досрочной уплаты срочных обязательств по погашению ссудной задолженности по Договору и непоступлении от Заемщика платежа в погашение указанных обязательств в установленную Договором Дату платежа Досрочные платежи направляются в погашение указанных обязательств.

Если до Даты платежа по уплате процентов и/или внесению Комиссионных платежей остается более 10 (Десяти) рабочих дней, Кредитор направляет Досрочные платежи на уплату неустоек в соответствии с очередностью уплаты неустоек, установленной п. 5.6 Договора. При этом Досрочные платежи в размере превышения величины уплаченных неустоек возвращаются Кредитором на счет Заемщика, открытый у Кредитора, не позднее первого рабочего дня, следующего за датой поступления денежных средств.

---

**Кредитор**                                                                                           **Заемщик**

*Договор об открытии невозобновляемой кредитной линии № 2017 от «10» января 2013г.*

6

5.12. В Период досрочной уплаты Заемщик имеет право в течение 3 (Трех) рабочих дней, следующих за датой поступления средств Кредитору, но не позднее, чем за 2 (Два) рабочих дня (включительно) до ближайшей Даты платежа, обратиться к Кредитору с письменным заявлением о возврате или о направлении в счет погашения ссудной задолженности по кредиту Досрочных платежей, полученных Кредитором в соответствии с п. 5.11. Договора.

Кредитор возвращает Досрочные платежи после распределения в соответствии с очередностью платежей, установленной п. 5.6 Договора, либо направляет их на погашение ссудной задолженности по кредиту в соответствии с п. 6.2 Договора и с учетом п. 5.9 Договора, не позднее первого рабочего дня, следующего за датой получения письменного заявления Заемщика.

Возврат Досрочных платежей осуществляется Кредитором на счета Заемщика, открытые у Кредитора.

При направлении Досрочных платежей на погашение ссудной задолженности по кредиту датой погашения ссудной задолженности по кредиту является дата направления Кредитором досрочно уплаченной суммы на погашение ссудной задолженности по кредиту.

5.13. Если в Дату платежа или дату поступления денежных средств в уплату неустоек сумма платежа превышает сумму, причитающуюся к уплате в соответствии с условиями Договора, то излишне полученная от Заемщика сумма после распределения в соответствии с очередностью платежей, установленной п. 5.6 Договора, возвращается Кредитором на счет Заемщика, открытый у Кредитора, не позднее первого рабочего дня, следующего за Датой соответствующего платежа / датой поступления денежных средств.

5.14. В случае уплаты платежей по Договору в валюте, отличной от валюты платежа, установленной Договором, Кредитор имеет право самостоятельно осуществить конверсию полученных средств в валюту платежа по Договору по курсу и на условиях Кредитора, действующих на дату совершения конверсионной операции, с их дальнейшим направлением на погашение задолженности по Договору.

## Статья 6. Порядок погашения кредита

6.1. Дата полного погашения выданного кредита: «28» декабря 2015г.

Погашение кредита производится по следующему графику:

| Дата погашения | Размер платежа в процентах от размера ссудной задолженности на Дату окончания периода доступности |
|---|---|
| 28 июня 2014г. | 13,05 % |
| 28 сентября 2014г. | 16,31 % |
| 28 декабря 2014г. | 16,31 % |
| 28 марта 2015 г. | 10,87 % |
| 28 июня 2015 г. | 13,05 % |
| 28 сентября 2015 г. | 16,31 % |
| 28 декабря 2015г. | 14,10 % |

В случае погашения Заемщиком кредита после Даты окончания периода доступности, но ранее дат, установленных настоящим пунктом, в соответствии с п. 6.2 Договора, суммы погашения кредита по вышеуказанному графику уменьшаются на погашенные ранее установленных настоящим пунктом дат суммы кредита, начиная с ближайшего к дате фактического погашения платежа по графику. Каждый последующий платеж по графику уменьшается на погашенные ранее установленных настоящим пунктом дат суммы кредита, превышающие сумму предыдущих платежей по графику.

Если дата погашения соответствующей суммы кредита приходится на нерабочий день, срок пользования соответствующей суммой кредита устанавливается по первый рабочий день (включая этот день), следующий за нерабочим днем, на который приходится дата погашения соответствующей суммы кредита.

6.2. Заемщик имеет право произвести полное или частичное погашение сумм выданного кредита ранее дат, установленных п. 6.1. Договора, с уплатой начисленных на дату погашения процентов, Комиссионных платежей, предусмотренных условиями Договора, и неустоек.

Заемщик направляет Кредитору уведомление о намерении погасить кредит ранее дат, установленных п. 6.1. Договора, в порядке, предусмотренном Договором, с указанием суммы и даты погашения, не менее чем за 30 (Тридцать) календарных дней до даты возврата кредита (или его части) (включительно). Дата поступления уведомления Кредитору в расчет количества дней не включается.

При этом ссудная задолженность по кредиту погашается в хронологическом порядке, начиная с задолженности, погашение которой должно быть произведено в ближайшую к дате фактического погашения кредита дату, указанную в п.6.1. Договора.

В случае погашения кредита ранее дат, установленных п. 6.1. Договора, без предварительного уведомления Кредитора или уведомления Кредитора менее чем за 30 (Тридцать) календарных дней до даты фактического погашения кредита (или его части), Заемщик уплачивает Кредитору плату за досрочный возврат кредита в порядке, предусмотренном статьей 4 Договора.

### Статья 7. Обязанности и права Кредитора

7.1. Кредитор имеет право:

7.1.1. В одностороннем порядке по своему усмотрению производить увеличение процентной ставки по Договору, в том числе, но не исключительно, в связи с принятием Банком России решений по увеличению учетной ставки (ставки рефинансирования Банка России), с уведомлением об этом Заемщика без оформления этого изменения дополнительным соглашением. В случае увеличения Кредитором процентной ставки в одностороннем порядке указанное изменение вступает в силу через 30 (Тридцать) календарных дней с даты отправления уведомления Кредитором, если в уведомлении не указана более поздняя дата вступления изменения в силу.

Уведомление Заемщика об указанных изменениях Договора производится в порядке, предусмотренном Договором.

7.1.2. В одностороннем порядке по своему усмотрению производить уменьшение процентной ставки по Договору, в том числе, но не исключительно в связи с принятием Банком России решений по снижению учетной ставки (ставки рефинансирования Банка России) с уведомлением об этом Заемщика без оформления этого изменения дополнительным соглашением. В случае уменьшения Кредитором процентной ставки в одностороннем порядке указанное изменение вступает в силу через 30 (Тридцать) календарных дней с даты отправления уведомления Кредитором, если в уведомлении не указана иная дата вступления изменения в силу.

Уведомление Заемщика об указанных изменениях Договора производится в порядке, предусмотренном Договором.

7.1.3. В одностороннем порядке по своему усмотрению производить уменьшение размера неустойки и/или устанавливать период времени, в течение которого неустойка не взимается, с уведомлением об этом Заемщика без оформления этого изменения дополнительным соглашением.

Уменьшение размера неустойки и/или наступление периода времени, в течение которого неустойка не взимается, вступает в силу через 30 (Тридцать) календарных дней с даты отправления уведомления Кредитором, если в уведомлении не указана иная дата вступления изменения в силу.

Уведомление Заемщика об указанных изменениях Договора производится в порядке, предусмотренном Договором.

7.1.4. Требовать от Заемщика предоставления сведений и документов, подтверждающих целевое использование кредита, на основании которых осуществляется перечисление средств кредита с расчетного счета Заемщика в соответствии с целевым назначением кредита.

**Кредитор**                                                                                                      **Заемщик**

7.1.5. В случае возникновения просроченной ссудной задолженности по кредиту и/или просроченной задолженности по процентам, и/или по другим платежам, предусмотренным Договором, и/или неустоек по Договору, по мере поступления средств списывать их со счетов Заемщика у Кредитора и в других банках в валюте обязательства без распоряжения Заемщика в счет погашения просроченных платежей и неустоек.

Кредитор имеет право в соответствии с условиями соглашения о праве Кредитора на списание средств без распоряжения плательщика, заключенного между Кредитором и Заемщиком, без распоряжения Заемщика производить списание средств со счетов Заемщика у Кредитора в валюте обязательства с целью погашения срочной задолженности по Договору в дату наступления срока выполнения обязательств.

Кредитор письменно информирует Заемщика о факте списания средств без распоряжения Заемщика с его счетов в счет погашения просроченных платежей и неустоек в порядке, предусмотренном Договором.

7.1.6. При недостаточности средств на счете Заемщика у Кредитора в валюте обязательства для погашения просроченной задолженности и/или неустоек по Договору по мере поступления средств производить списание средств со счетов Заемщика у Кредитора и в других банках в валюте, отличной от валюты обязательства, с последующей конверсией списанных средств по курсу и на условиях, установленных Кредитором и другими банками для совершения конверсионных операций на дату совершения операции, с зачислением полученных в результате конверсии средств на счет Заемщика у Кредитора и в других банках в валюте обязательства.

Кредитор имеет право в соответствии с условиями соглашения о праве Кредитора на списание средств без распоряжения плательщика, заключенного между Кредитором и Заемщиком, при недостаточности средств на счете Заемщика у Кредитора в валюте обязательства, для погашения срочной задолженности по Договору, образовавшейся на дату выполнения обязательств, без распоряжения Заемщика производить списание средств со счетов Заемщика у Кредитора в валюте, отличной от валюты обязательства, с последующей конверсией списанных средств по курсу и на условиях, установленных Кредитором для совершения конверсионных операций на дату совершения операции, с зачислением полученных в результате конверсии средств на счет Заемщика у Кредитора в валюте обязательства.

Кредитор письменно информирует Заемщика о факте списания средств без распоряжения Заемщика с его счетов и конверсии указанных средств в порядке, предусмотренном Договором.

7.1.7. Прекратить выдачу кредита и/или потребовать от Заемщика досрочного возврата всей суммы кредита и уплаты причитающихся процентов за пользование кредитом, неустоек и других платежей, предусмотренных условиями Договора, при этом Кредитор имеет право предъявить аналогичные требования поручителям и гарантам, а также обратить взыскание на заложенное имущество в случаях:

а) неисполнения или ненадлежащего исполнения Заемщиком платежных обязательств по Договору или любому из договоров (в том числе, но не исключительно: кредитному, об открытии возобновляемой/невозобновляемой кредитной линии, договору о предоставлении банковской гарантии, договору поручительства, иным видам договоров) и соглашений, которые заключены (могут быть заключены в течение срока действия Договора) между Заемщиком и Кредитором, иных обязательств (или выполнения иных условий) по указанным договорам и соглашениям, неисполнение или ненадлежащее исполнение (или выполнение) которых является основанием для предъявления требования о досрочном возврате сумм кредита/отказа Кредитора от обязанности предоставления кредита/гарантии в соответствии с условиями указанных договоров и соглашений, а также платежных обязательств перед Кредитором и/или третьими лицами по оплате векселей, погашению облигаций, выплате купонного дохода, обязательной/добровольной оферте в силу Федерального закона «Об акционерных обществах», которые возникли (могут возникнуть в течение срока действия Договора);

**Кредитор**                                                                                       **Заемщик**

б) неисполнения или ненадлежащего исполнения Заемщиком обязательств по кредитным договорам (в том числе договорам об открытии невозобновляемой/возобновляемой кредитной линии), которые заключены (могут быть заключены в течение срока действия Договора) между Заемщиком и любым иным кредитором, и повлекшее за собой предъявление к Заемщику требования о досрочном возврате сумм кредита. Сумма кредита, предъявленная к досрочному погашению в валюте, отличной от валюты, в которой установлено указанное в настоящем подпункте значение, пересчитывается в валюту установленного настоящим подпунктом значения по курсу Банка России на дату требования о досрочном возврате суммы кредита;

в) обесценения обеспечения, утраты обеспечения или ухудшения его условий, а также угрозы утраты обеспечения или угрозы ухудшения его условий по обстоятельствам, за которые Кредитор не отвечает;

г) если заявления, документы, подтверждения или информация, включая информацию, указанную в Статье 2 Договора, предоставленные Заемщиком Кредитору, являются недостоверными, неполными или непроверенными;

д) использования кредита не по целевому назначению или возврата Заемщику денежных средств, перечисленных Заемщиком за счет кредита в соответствии с целевым назначением кредита;

е) предъявления заявления в арбитражный суд о признании Заемщика или поручителя, и/или залогодателя несостоятельным (банкротом) в установленном действующим законодательством порядке с учетом положений п. 8.2.9 Договора;

ж) если Заёмщику предъявлены иски об уплате денежной суммы или об истребовании имущества на совокупную сумму более 50 000 000 (Пятьдесят миллионов) рублей. Сумма иска, предъявленного в иностранной валюте, пересчитывается в рубли по курсу Банка России на дату предъявления иска.

з) принятия решений о реорганизации, ликвидации или уменьшении уставного Заемщика, и/или поручителя, и/или залогодателя, и/или смерти поручителя с учетом положений п. 8.2.9 Договора;

и) объявления Заемщика и/или поручителя и/или залогодателя несостоятельным (банкротом) в установленном действующим законодательством порядке;

к) предоставления Заемщиком Кредитору отчетности и/или сведений, которые являются недостоверными и/или отличными от отчетности и/или сведений, предоставленных Заемщиком органам государственной власти, Банку России и/или опубликованных Заемщиком и/или находящихся в бюро кредитных историй;

л) невыполнения Заемщиком обязательств, предусмотренных п.п. 8.2.8 и/или 8.2.9, и/или 8.2.11, и/или 8.2.12, и/или 8.2.14, и/или 8.2.15, и/или 8.2.16, и/или 8.2.17, и/или 8.2.19, и/или 8.2.20, и/или 8.2.21, и/или 8.2.22, и/или 8.2.23, и/или 8.2.24, и/или 8.2.25, и/или 8.2.26, и/или 8.2.27, и/или 8.2.28, и/или 8.2.29, и/или 8.2.30, и/или 8.2.31, и/или 8.2.32, и/или 8.2.33, и/или 8.2.34, и/или 12.2, и/или 12.3, и/или 12.4, и/или 12.5, и/или 12.6, и/или 12.7, и/или 12.8, и/или 12.9, и/или 10.1, и/или 10.2, и/или 10.3 Договора;

м) невыполнения Заемщиком обязательства по обеспечению доли(ей) участия в уставном капитале, находящемся в залоге у Кредитора, предусмотренного п. 9.1.3 Договора;

н) нарушения Заемщиком условий п.п. 8.2.5 и/или 8.2.6 и/или 8.2.7 Договора;

о) неисполнения или ненадлежащего исполнения Заемщиком обязательств, предусмотренных п. 8.2.4 Договора;

п) выхода (или уменьшения доли) какого-либо из участников Заемщика из общества, за исключением случаев продажи участниками своей доли третьим лицам или другим участникам;

р) если сумма привлеченных Заёмщиком любых заимствований денежных средств (включая получение кредитов, эмиссию собственных векселей и иных форм привлечения денежных средств на возвратной основе, без учета обязательств по уплате процентов и выплате дохода по ценным бумагам) от третьих лиц и/или предоставления любого поручительства/гарантии (в том числе в форме авалирования векселей, индоссирования векселей, за исключением «без оборота на меня»,) увеличит начиная с даты заключения

**Кредитор**                                                                                                          **Заемщик**

Договора общую сумму привлеченных заимствований и/или предоставленных поручительств/гарантий (в том числе в форме авалирования векселей, индоссирования векселей, за исключением «без оборота на меня», до размера свыше 1 646 200 000 (Один миллиард шестьсот сорок шесть миллионов двести тысяч) рублей.

На дату заключения Договора общая сумма привлеченных заимствований и/или предоставленных поручительств/гарантий (в том числе в форме авалирования векселей, индоссирования векселей, за исключением «без оборота на меня») составляет 1 094 808 400 (Один миллиард девяносто четыре миллиона восемьсот восемь тысяч четыреста) рублей.

Суммы заимствований и/или предоставленных поручительств/гарантий (в том числе в форме авалирования векселей, индоссирования векселей, за исключением «без оборота на меня»,) в валюте, отличной от валюты кредита по Договору пересчитаны в валюту кредита по Договору по курсу Банка России на дату заключения Договора.)

Сумма любого заимствования и/или предоставленных поручительств/гарантий (в том числе в форме авалирования векселей, индоссирования векселей, за исключением «без оборота на меня»,) в валюте, отличной от валюты кредита по Договору, которое будет привлечено Заёмщиком после даты подписания Договора, пересчитывается в валюту кредита по Договору по курсу Банка России на последнюю дату истекшего календарного квартала.

с) ухудшения финансового состояния Заемщика и/или поручителя, что, по оценке Кредитора, ставит под угрозу своевременное выполнение обязательств по Договору и/или договору поручительства;

т) необеспечения поддержания Обществом с ограниченной ответственностью "Центр" (ИНН 3702576802, ОГРН 1093702001744, местонахождение: Ивановская область, г.Иваново, проспект Фридриха Энгельса, д.153А) в течение срока действия Договора не заложенной и не обремененной иными обязательствами доли в уставном капитале Заемщика на уровне не ниже 100 (Сто) процентов от уставного капитала Заемщика.

Изменение доли возможно только по письменному согласованию с Кредитором.

Указанные выше нарушения условий Договора и изменения обстоятельств являются существенными для Кредитора.

При этом Кредитор извещает Заемщика о своих требованиях в порядке, предусмотренном Договором.

7.1.8. В одностороннем порядке закрыть свободный остаток лимита кредитной линии по Договору в случае прекращения выдачи кредита по причинам, указанным в п.7.1.7 Договора, о чем Кредитор уведомляет Заемщика в порядке, предусмотренном Договором.

7.1.9. Отказаться от обязанности выдать кредит полностью или частично при наличии обстоятельств, очевидно свидетельствующих о том, что сумма долга не будет возвращена Заемщиком в установленные Договором сроки.

7.1.10 В удобной для него форме осуществлять проверки достоверности предоставляемых Заемщиком отчетных и плановых показателей его хозяйственно-финансовой деятельности, а также требовать иные данные, имеющие отношение к использованию кредитных средств и к исполнению обязательств по Договору.

7.1.11 Требовать от Заемщика в течение срока действия Договора заключения (обеспечения заключения) соглашения(ий) о праве Кредитора на списание средств без распоряжения плательщика в погашение просроченной задолженности со счетов Заемщика, а также поручителя, указанного в п. 9.1.5 Договора, открытых в других банках, по форме и в сроки, установленные Кредитором.

Уведомление Заемщика об указанном требовании производится в порядке, предусмотренном Договором.

7.2. Кредитор принимает на себя следующие обязательства:

7.2.1. При выполнении условий, указанных в статье 3 Договора, а также, если на момент предоставления кредита не имеет место ни одно из условий, при которых Кредитор имеет право прекратить выдачу кредита и потребовать досрочного возврата кредита, производить перечисление сумм кредита в пределах свободного остатка лимита кредитной линии на

**Кредитор**                                                                                            **Заемщик**

расчетный счет Заемщика на основании распоряжений Заемщика, оформленных в соответствии с условиями Договора.

## Статья 8. Обязанности и права Заемщика

8.1. Заемщик имеет право:

8.1.1. При увеличении Кредитором процентной ставки в соответствии с п. 7.1.1. Договора погасить часть или всю сумму кредита с уплатой начисленных на дату погашения процентов, Комиссионных платежей и неустоек на прежних условиях в течение 30 (Тридцати) календарных дней с даты направления Кредитором Заемщику письменного уведомления об изменении условий предоставления кредита.

При этом Заемщик не уплачивает плату за досрочный возврат кредита.

8.2. Заемщик принимает на себя следующие обязательства:

8.2.1. В течение 5 (Пяти) рабочих дней с Даты доставки уведомления или сообщения с требованием Кредитора о досрочном погашении кредита в соответствии с п.п. 7.1.7, 14.3 Договора погасить ссудную задолженность по кредиту и уплатить причитающиеся проценты за пользование кредитом, Комиссионные платежи и неустойки, начисленные на дату погашения.

8.2.2. Использовать кредит строго по целевому назначению в соответствии со Статьей 1 Договора.

8.2.3. Предоставлять Кредитору правильно оформленные платежные документы и приложения в соответствии с целевым назначением кредита (п.1.1 Договора) не позднее планируемой даты использования соответствующей суммы кредита.

8.2.4. Предоставлять Кредитору ежеквартально не позднее 5 (Пяти) рабочих дней с даты окончания периода, установленного законодательством Российской Федерации для представления бухгалтерской отчетности в налоговые органы:

- бухгалтерский отчет в полном объеме по формам, установленным Минфином России, с отметкой о способе отправления документа в подразделение ФНС России, заверенный руководителем и печатью Заемщика, с приложением пояснительной записки (к годовой отчетности) и аудиторского заключения (или его итоговой части) (при обязательном по законодательству Российской Федерации аудите бухгалтерской отчетности);
- расшифровки кредиторской и дебиторской задолженности с указанием наименований кредиторов, должников, суммы задолженности и дат возникновения задолженности, с указанием статуса данной задолженности (просроченная/текущая);
- расшифровки краткосрочных и долгосрочных финансовых вложений с указанием видов, сумм вложений, наименований организаций и предприятий;
- расшифровки задолженности по долгосрочным и краткосрочным кредитам и займам (включая вексельные и облигационные) с указанием кредиторов, суммы задолженности, срока кредитования, процентной ставки (доходности купона), графика погашения и уплаты процентов, суммы просроченных процентов;
- расшифровки полученных обеспечений (с указанием от кого и в пользу кого получено) и выданных обеспечений (с указанием за кого и в пользу кого выдано, сроков исполнения обязательств);
- справки об оборотах и остатках на расчетных счетах в валюте Российской Федерации и иностранной валюте и наличии претензий к счетам;
- информацию на последнюю отчетную дату о дочерних (более 50% в уставном капитале) и зависимых (более 20% в уставном капитале) организациях с указанием долей участия в уставном капитале дочерних или зависимых организаций в процентах;
- справку из подразделения ФНС России о состоянии расчетов с бюджетом или акт сверки расчетов с бюджетом (при наличии просроченной задолженности перед бюджетами какого-либо уровня – справку налогоплательщика с указанием сроков, объемов и причин возникновения долга);
- копии изменений и дополнений к учредительным документам (зарегистрированных в установленном законодательством порядке) и копии свидетельств о внесении записей в

**Кредитор**                                                                                           **Заемщик**

ЕГРЮЛ о государственной регистрации изменений в учредительные документы, удостоверенные нотариально или регистрирующим органом, если в течение истекшего календарного квартала внесены изменения в учредительные документы;

- информацию о персональном составе коллегиальных и исполнительных органов управления Совета Директоров / Правления, о лице, осуществляющем функции единоличного исполнительного органа (с указанием занимаемой должности, в случае совмещения деятельности – иных мест работы), если в течение истекшего календарного квартала произошли изменения в составе исполнительных и/или коллегиальных органов управления, назначено новое лицо, осуществляющее функции единоличного исполнительного органа;
- информацию о составе участников, владеющих 5,0 и более процентами долей в уставном капитале, если в течение истекшего календарного квартала произошли изменения в составе участников, владеющих 5,0 и более процентами долей в уставном капитале;
- информацию об изменении совокупной доли владения Обществом с ограниченной ответственностью "Центр" (ИНН 3702576802, ОГРН 1093702001744, местонахождение: Ивановская область, г.Иваново, проспект Фридриха Энгельса, д.153А) прямо(го) или опосредованно(го) через третьих лиц, в уставном капитале Заемщика, если указанные изменения произошли в течение истекшего календарного квартала.

Кроме того, Заемщик обязан по требованию Кредитора предоставлять другие отчетно-финансовые документы в течение 10 (Десяти) рабочих дней с даты получения указанного требования.

8.2.5. При ликвидации, реорганизации или уменьшении уставного капитала, изменении в составе участников, уведомить Кредитора в течение 3 (Трех) рабочих дней с даты принятия соответствующего решения уполномоченным коллегиальным органом управления. Уведомление Кредитора производится в порядке, предусмотренном Договором.

8.2.6. Уведомлять Кредитора в порядке, предусмотренном Договором, о возникновении новых обязательств по заимствованиям перед третьими лицами (включая получение кредитов, эмиссию собственных векселей и иных форм привлечения денежных средств на возвратной основе) и/или о предоставлении третьим лицам любого поручительства/гарантии (в том числе в форме авалирования векселей, индоссирования векселей, за исключением «без оборота на меня»), и/или о предоставлении за Заемщика другими банками и/или иными лицами поручительств/гарантий в пользу третьих лиц (за исключением поручительств/гарантий, являющихся обеспечением по вышеуказанным заимствованиям Заемщика), а также о пролонгации или рефинансировании заимствований не позднее 10 (Десяти) рабочих дней с даты заключения соответствующих договоров (дополнительных соглашений) (эмиссии векселей, привлечения денежных средств в иной форме) и/или предоставления третьим лицам любого поручительства/гарантии (в том числе в форме авалирования векселей, индоссирования векселей, за исключением «без оборота на меня»), и/или предоставления за Заемщика другими банками и/или иными лицами поручительств/гарантий в пользу третьих лиц (за исключением поручительств/гарантий, являющихся обеспечением по вышеуказанным заимствованиям Заемщика) с предоставлением Кредитору надлежаще заверенных копий соответствующих договоров (дополнительных соглашений), а также, по требованию Кредитора, надлежаще заверенных дополнительных документов, необходимых Кредитору для проверки выполнения условия, указанного в подпункте 7.1.7 р) Договора.

8.2.7. До полного исполнения обязательств по Договору перед Кредитором не проводить изменение собственного уставного капитала и обеспечить неизменение уставного капитала компаний, указанных в п. 9.1.3, 9.1.5., 9.1.6 Договора, без письменного согласования с Кредитором.

8.2.8. Предоставить дополнительное обеспечение либо погасить необеспеченную сумму кредита в течение 10 (Десяти) рабочих дней с даты получения соответствующего извещения Кредитора в случае, если в период действия Договора залоговая стоимость предмета(ов) залога, указанного(ых) в п.п. 9.1.1. Договора, в результате утраты предмета(ов) залога (вследствие гибели, недостачи, выбытия, повреждения, хищения, а также по иным причинам, не зависящим

---

**Кредитор**                                                                                                    **Заемщик**

от Кредитора) стала меньше обязательств по Договору (ссудная задолженность по кредиту и проценты, начисленные за 6 (Шесть) месяца(ев) пользования кредитом или до даты полного погашения кредита, указанной в п. 1.1 Договора в случае, если до указанной даты осталось менее 6 (Шести) месяцев. Под залоговой стоимостью предмета(ов) залога в целях настоящего подпункта понимается залоговая стоимость предмета(ов) залога, определенная в соответствии с условиями п.п. 9.1.1. Договора, за вычетом залоговой стоимости утраченного(ых) предмета(ов) залога.

8.2.9. При предъявлении залогодателю и/или поручителю по кредиту иска об уплате денежной суммы или об истребовании имущества, размер которого ставит под угрозу выполнение обязательств по договору поручительства/договору залога, и/или предъявлении заявления в арбитражный суд о признании залогодателя и/или поручителя несостоятельным (банкротом) в установленном действующим законодательством порядке, и/или принятии решений о реорганизации, ликвидации или уменьшении уставного капитала залогодателя и/или поручителя обеспечить замену в течение 20 (Двадцати) календарных дней с даты отправления Кредитором требования о замене поручителя/заложенного имущества на аналогичную сумму. При этом, поручитель/состав заложенного имущества должен быть приемлемым для Кредитора и им согласован.

8.2.10 Заключить (обеспечить заключение) по требованию Кредитора соглашения(ий) о праве Кредитора на списание средств без распоряжения плательщика в погашение просроченной задолженности с новых счетов Заемщика, а также поручителя, открываемых у Кредитора, в течение 5 (Пяти) рабочих дней с даты получения требования Банка, а также, по требованию Кредитора, со счетов Заемщика, а также поручителя, указанного в п. 9.1.5 Договора, открытых в других банках, по форме и в сроки, установленные Кредитором. Уведомление Заемщика об указанном(ых) требовании(ях) производится в порядке, предусмотренном Договором.

8.2.11. Ежемесячно не позднее «10»-го числа месяца, следующего за истекшим календарным месяцем, предоставлять Кредитору отчет о ходе реализации проекта по форме, согласованной с Кредитором.

Кредитор имеет право изменить периодичность предоставления Кредитору отчета о ходе реализации проекта, в том числе о ценах и объемах реализации площадей Объекта и/или имущественных прав на них.

Уведомление Заемщика об указанных изменениях Договора производится в порядке, предусмотренном п. 14.3 Договора.

8.2.12. Предоставлять документы, подтверждающие целевое использование кредитных средств, по требованию Кредитора и в сроки, указанные в требовании.

8.2.13. Уведомлять Кредитора в порядке, предусмотренном Договором, о возможном наступлении случаев и событий, указанных в п. 7.1.7 Договора, а также о фактическом наступлении указанных случаев и событий в срок не позднее 3 (Трех) рабочих дней с даты, следующей за датой, когда Заемщику стало известно о возможном (фактическом) наступлении соответствующего случая (события).

8.2.14. Осуществлять предварительное письменное согласование с Кредитором основных условий заключаемых договоров (в том числе предварительных договоров) и дополнительных соглашений к ним, предметом сделки которых являются площади Объекта и/или имущественные права на них.

8.2.15. Осуществлять расчеты, связанные со строительством Объекта, реализацией площадей Объекта и/или имущественных прав на них, через счета, открытые у Кредитора.

8.2.16. Перечислять денежные средства, поступившие в результате заключения договоров купли-продажи или иных договоров, в соответствии с которыми происходит отчуждение площадей Объекта и/или имущественных прав на них, предоставленных в залог Кредитору в соответствии с п. 9.1.1. Договора, в счет досрочного погашения задолженности по кредиту (включая основной долг на сумму не менее залоговой стоимости освобождаемых от залога площадей Объекта, проценты за пользование кредитом, а также комиссионные платежи,

указанные в п. 4.3, 4.4, 11.4 Договора на дату платежа в размере, не меньшем залоговой стоимости отчуждаемых площадей Объекта и/или имущественных прав на них, установленной в договоре (ах) залога, заключенном (ых) в соответствии с п.9.1.1. Договора, в срок не позднее 3 (Трех) рабочих дней с даты поступления денежных средств на счета Заемщика.

8.2.17. Ежемесячно, не позднее «10»-го числа месяца, следующего за истекшим календарным месяцем предоставлять Кредитору Выписку из Единого государственного реестра прав на недвижимое имущество и сделок с ним о заключенных договорах участия в долевом строительстве Объекта.

Кредитор имеет право изменить периодичность предоставления Кредитору Выписки из Единого государственного реестра прав на недвижимое имущество и сделок с ним.

Уведомление Заемщика об указанных изменениях Договора производится в порядке, предусмотренном Договором.

8.2.18. Согласовывать с Кредитором использование товарного знака и его элементов, наименования Кредитора, а также мероприятия, которые планируется использовать в ходе строительства и рекламной кампании Объекта.

8.2.19. Оформить ипотеку(и) площадей Объекта, указанного в п. 1.1 Договора, завершенного строительством, из состава предоставленных в залог Кредитору имущественных прав в соответствии с п. 9.1.1. Договора, имущественные права на которые не будут реализованы на момент оформления права собственности Заемщика, в течение 60 (Шестидесяти) календарных дней после оформления указанных площадей Объекта в собственность Заемщика.

8.2.20. Осуществлять предварительное письменное согласование с Кредитором внесения изменений в проект строительства Объекта, в том числе, но не исключительно, изменение сроков строительства, изменение размера площадей, изменение целей использования площадей, а также изменение состава участников проекта.

8.2.21. Вносить изменения в проектную декларацию по строительству Объекта только с письменного согласия Кредитора.

8.2.22. Ежеквартально в течение 5 (Пяти) рабочих дней с даты окончания периода, установленного Постановлением Правительства РФ от 27.10.2005 N 645, обеспечить предоставление отчетности застройщика строительства Объекта об осуществлении деятельности, связанной с привлечением денежных средств участников долевого строительства за прошедший календарный квартал.

8.2.23. Не заключать без письменного согласования с Кредитором сделки или несколько взаимосвязанных сделок, связанных с отчуждением или возможностью отчуждения прямо либо косвенно имущества, если балансовая стоимость такого имущества (суммарная балансовая стоимость при заключении нескольких взаимосвязанных сделок) составляет более 5 (Пять) процентов от балансовой стоимости активов Заемщика в соответствии с бухгалтерской отчетностью на последнюю отчетную дату.

8.2.24. Не заключать без письменного согласования с Банком сделки или несколько взаимосвязанных сделок, связанных с обременением залогом имущественных активов, принадлежащих Заемщику, балансовая стоимость которых превышает 5 (Пять) процентов от балансовой стоимости активов Заемщика в соответствии с бухгалтерской отчетностью на последнюю отчетную дату, по своим обязательствам перед третьими лицами или обязательствам третьих лиц.

8.2.25. Обеспечить величину чистых активов в размере не ниже установленного законодательством минимального значения уставного капитала на каждую отчетную дату в течение срока действия Кредитного договора.

Стоимость чистых активов определяется в соответствии с Приказом Минфина России №10н и Федеральной комиссии по рынку ценных бумаг № 03-6/пз от 29.01.2003 г. «Об утверждении порядка оценки стоимости чистых активов акционерных обществ».

8.2.26. До полного исполнения обязательств по Договору перед Кредитором не проводить/обеспечить непроведение без письменного согласования с Обществом с ограниченной ответственностью «Центр» 3702576802, ОГРН 1093702001744, местонахождение: Ивановская область, г.Иваново, проспект Фридриха Энгельса, д.153А), Обществом с ограниченной ответственностью «Пробизнес-Девелопмент» (ОГРН 1077746278279, ИНН 7743629120, местонахождение: 125195, г. Москва, ул. Беломорская, д.6А), Обществом с ограниченной ответственностью «Факторинговая компания «Лайф» (ОРГН 1077759960740, ИНН 7743658843, местонахождение: 125195, г. Москва, ул. Беломорская, д.6А) с Кредитором:
-   изменения состава участников обществ;
-   изменения организационно-правовой формы обществ;
-   изменения органов управления обществ и/или их полномочий;
-   создания дочерних и зависимых обществ.

8.2.27. До полного исполнения обязательств по Договору перед Кредитором не распределять собственную чистую прибыль между участниками Заемщика без письменного согласования с Кредитором.

8.2.28. Поддерживать долю собственных средств, инвестированных в Проект, в общем объеме финансирования Проекта строительства Объекта в размере не менее установленных п. 12.11 Договора на протяжении всего периода кредитования (не включая затраты по уплате процентов и комиссионных платежей по привлекаемому кредиту Кредитора).

8.2.29. Осуществление реализации имущественных прав на получение в собственность площадей кредитуемого Объекта и/или привлечение средств участников долевого строительства кредитуемого Объекта, имущественные права в отношении которых оформлены в качестве обеспечения по кредиту только при соблюдении следующих условий:
-   физическим лицам путем заключения договора участия в долевом строительстве в соответствии с Федеральным законом «Об участии в долевом строительстве многоквартирных домов и иных объектов недвижимости и о внесении изменений в некоторые законодательные акты Российской Федерации» от 30.12.2004 г. №214-ФЗ с определением цены договора участия в долевом строительстве как суммы денежных средств на финансирование и возмещение затрат на строительство объекта долевого строительства и денежных средств на оплату услуг застройщика;
-   юридическим лицам и индивидуальным предпринимателям путем заключения договора участия в долевом строительстве в соответствии с Федеральным законом «Об участии в долевом строительстве многоквартирных домов и иных объектов недвижимости и о внесении изменений в некоторые законодательные акты Российской Федерации» от 30.12.2004 г. №214-ФЗ с определением цены договора участия в долевом строительстве как суммы денежных средств на финансирование и возмещение затрат на строительство объекта долевого строительства или заключения договора в соответствии с законодательством Российской Федерации об инвестиционной деятельности;
-   федеральным образованиям и образованиям субъектов федерации путем заключения государственного контракта долевого участия/купли-продажи квартир или договора в соответствии с законодательством Российской Федерации об инвестиционной деятельности.

8.2.30. Поддерживать действующий статус разрешения на строительство Объекта до окончания инвестиционной стадии Проекта.

8.2.31. Обеспечить при необходимости своевременное (до истечения срока действия) продление договора страхования строительно-монтажных работ и связанных с ними рисков и гражданской ответственности при проведении строительно-монтажных работ на срок, необходимый для завершения строительства Объекта.

---

Кредитор                                                                                              Заемщик

*Договор об открытии невозобновляемой кредитной линии № 2017 от «10» января 2013г.*

8.2.32. В течение 90 (Девяноста) календарных дней с даты ввода построенного Объекта в эксплуатацию предоставить Кредитору свидетельства о государственной регистрации права собственности на нереализованные площади Объекта.

8.2.33. Предоставить Кредитору заверенную Заемщиком копию Акта ввода в эксплуатацию площадей Объекта в течение 3 (Трех) рабочих дней с даты получения указанного документа.

8.2.34. Не заключать без письменного согласования с Кредитором сделки или несколько взаимосвязанных сделок, связанных с предоставлением Заемщиком любых займов (включая предоставление займов и иные формы предоставления денежных средств на возвратной основе) третьим лицам, если общий объем таких займов превысит сумму предоставленных Заемщиком третьим лицам денежных средств на дату заключения Кредитного договора.

### Статья 9. Обеспечение

9.1. В качестве обеспечения своевременного и полного выполнения обязательств Заемщика по Договору, в том числе возврата кредита, уплаты процентов, Комиссионных платежей, предусмотренных условиями Договора, Заемщик предоставляет/обеспечивает предоставление Кредитору:

9.1.1. Залог имущественных прав на получение в собственность 96,89 (Девяносто шесть целых восемьдесят девять сотых) процентов площадей строящегося Объекта- домов блокированной застройки общей площадью - не менее 38 176,64 (Тридцать восемь целых сто семьдесят шесть целых шестьдесят четыре сотых) кв.м, расположенных по адресу: Московская область, Солнечногорский район, сельское поселение Кутузовское, д. Подолино, принадлежащих Обществу с ограниченной ответственностью «ХОЛМЭКС» (ОГРН 5067746400552, ИНН7726547734, местонахождение: 125195, г. Москва, ул. Беломорская, д. 6А) в соответствии с Договором имущественных прав № 2017/ип от «10» января 2013г.

9.1.2. Залог земельных участков, принадлежащих Обществу с ограниченной ответственностью «ХОЛМЭКС» (ОГРН 5067746400552, ИНН7726547734, местонахождение: 125195, г. Москва, ул. Беломорская, д. 6А):

а) площадью 29 781 (Двадцать девять тысяч семьсот восемьдесят один) кв.м., кадастровый номер – 50:09:0070705:18, категория земель – земли населенных пунктов, разрешенное использование – малоэтажное жилищное строительство, адрес объекта: Московская область, Солнечногорский район, сельское поселение Кутузовское, д.Подолино;

б) площадью 29 996 (Двадцать девять тысяч девятьсот девяносто шесть) кв.м., кадастровый номер –, 50:09:0070705:19, категория земель – земли населенных пунктов, разрешенное использование – малоэтажное жилищное строительство, адрес объекта: Московская область, Солнечногорский район, сельское поселение Кутузовское, д.Подолино;

в) площадью 1 500 (Одна тысяча пятьсот) кв.м., кадастровый номер – 50:09:0070705:33, категория земель – земли населенных пунктов, разрешенное использование – малоэтажное жилищное строительство, адрес объекта: Московская область, Солнечногорский район, сельское поселение Кутузовское, д.Подолино, уч. 36;

г) площадью 1 500 (Одна тысяча пятьсот) кв.м., кадастровый номер – 50:09:0070705:34, категория земель – земли населенных пунктов, разрешенное использование – малоэтажное жилищное строительство, адрес объекта: Московская область, Солнечногорский район, сельское поселение Кутузовское, д.Подолино, уч. 35.
в соответствии с Договором ипотеки № 1917/И от «10» января 2013 г.

9.1.3. Залог доли участия в уставном капитале Общества с ограниченной ответственностью «ХОЛМЭКС» (ОГРН 5067746400552, ИНН7726547734, местонахождение: 125195, г. Москва, ул. Беломорская, д. 6А), именуемого далее «Общество», в размере не менее 100 (Сто) процентов от уставного капитала на дату заключения договора залога. Залоговая стоимость доли(ей) определяется на основании номинальной стоимости с использованием дисконта в размере 50 (Пятьдесят) процентов.

| Кредитор | Заемщик |
|---|---|

В дальнейшем, в случае увеличения уставного капитала Общества, Заемщик обязуется в течение 10 (Десяти) рабочих дней с даты регистрации уполномоченными государственными органами изменений, вносимых в учредительные документы Общества, обеспечить предоставление Кредитору доли(ей) в уставном капитале Общества в таком размере, чтобы доля уставного капитала Общества, находящегося в залоге у Кредитора, составляла после увеличения не менее 100 (Сто) процентов от уставного капитала Общества.

Все расходы по нотариальному удостоверению договора(ов) залога несет залогодатель.

9.1.4. Заклад простых процентных векселей Общества с ограниченной ответственностью «ХОЛМЭКС» (ОГРН 5067746400552, ИНН 7726547734, местонахождение: 125195, г. Москва, ул. Беломорская, д. 6А), принадлежащих Обществу с ограниченной ответственностью «Пробизнес-Девелопмент» (ОГРН 1077746278279, ИНН 7743629120, местонахождение: 125195, г.Москва, ул. Беломорская, д.6А) номинальной стоимостью 416 667 406 (Четыреста шестнадцать миллионов шестьсот шестьдесят семь тысяч четыреста шесть) рублей. Залоговая стоимость определяется на основании номинальной стоимости, принимаемой в качестве оценочной с использованием дисконта в размере 0 (Ноль) процентов.

9.1.5. Поручительство Общества с ограниченной ответственностью «Пробизнес-Девелопмент» (ОГРН 1077746278279, ИНН 7743629120, местонахождение: 125195, г. Москва, ул. Беломорская, д.6А) на всю сумму обязательств Заемщика по Договору.

9.1.6. Поручительство Общества с ограниченной ответственностью «Факторинговая компания «Лайф» (ОРГН 1077759960740, ИНН 7743658843, местонахождение: 125195, г. Москва, ул. Беломорская, д.6А) с пределом общей ответственности поручителя перед Кредитором за исполнение Заемщиком обязательств по Договору в размере 128 200 000 (Сто двадцать восемь миллионов двести тысяч) рублей.

9.1.7. Поручительство Железняка Александра Дмитриевича, паспортные данные: серия 45 11 № 168408 выдан Отделением УФМС России по гор. Москве по району Хорошевский 02.06.2011г. с пределом общей ответственности поручителя перед Кредитором за исполнение Заемщиком обязательств по Договору в размере 1 000 000 (Один миллион) рублей.

9.1.8. В срок не позднее «06» февраля 2013 г. заключить предварительный договор ипотеки площадей Объекта, в соответствии с которым залогодатель, указанный в п. 9.1.1. Договора, обязуется заключить с Кредитором договор ипотеки площадей Объекта, имущественные права на которые предоставлены в залог Кредитору в соответствии с п. 9.1.1. Договора, в течение 60 (Шестидесяти) календарных дней после оформления их в собственность залогодателя.

### Статья 10. Страхование

10.1. Заемщик обязан застраховать имущество(а), переданное(го) в залог в соответствии с п.п. 8.2.19. Договора, от риска ущерба, хищения (кражи, грабежа, разбоя), утраты с назначением в качестве выгодоприобретателя Кредитора на все случаи, предусмотренные правилами страхования страховщика (необходимый пакет), и своевременно продлевать страхование до полного исполнения обязательств по Договору.

Страхование имущества, передаваемого в ипотеку в соответствии с п.п. 8.2.19 Договора производится не позднее 10 (Десяти) рабочих дней с даты оформления права собственности Заемщика на оформляемые в ипотеку в соответствии с п.п. 8.2.19 площади Объекта, имущественные права на которые приняты в залог в соответствии с п. 9.1.1 Договора.

10.2. При страховании имущества Заемщик должен предварительно согласовать (обеспечить согласование) с Кредитором условия договора страхования, в том числе, но не исключительно, страховую сумму, возможность продления срока действия договора страхования.

Страхование может осуществляться всеми страховыми компаниями, удовлетворяющими требованиям Кредитора, в том числе заключившими с Кредитором Соглашение о сотрудничестве и включенными в публикуемый на официальном сайте Кредитора в сети Интернет перечень страховых компаний, участвующих в страховании залогового имущества.

**Кредитор**                                                                                                   **Заемщик**

Если по истечении срока действия договора страхования страховая компания перестала удовлетворять требованиям Кредитора, опубликованным на его официальном сайте в сети Интернет, Кредитор вправе потребовать заменить страховую компанию, а Заемщик обязан заменить (обеспечить замену) страховую компанию в срок, указанный в требовании Кредитора.

Заемщик обязан передать (обеспечить передачу) Кредитору копию страхового полиса (если такой имеется) и/или копию договора страхования (если такой имеется) (дополнительного соглашения о продлении срока действия договора страхования), заверенные подписью руководителя и печатью страхователя, в течение 3 (Трех) рабочих дней с даты заключения договора страхования или дополнительного соглашения о продлении срока действия договора страхования.

Заемщик обязан передать (обеспечить передачу) Кредитору копий платежных документов, подтверждающих оплату страховой премии (каждой части страховой премии), заверенные подписью руководителя и печатью плательщика, в течение 5 (Пяти) рабочих дней с даты оплаты страховой премии (соответствующей части страховой премии).

При продлении срока действия договора страхования страховая сумма может быть изменена по согласованию с Кредитором.

При заключении договора страхования со страховой компанией, не заключившей с Кредитором Соглашение о сотрудничестве, Заемщик обязан заключить (обеспечить заключение) соглашение о порядке работы со страховым возмещением на условиях, определяемых Кредитором в одностороннем порядке.

При заключении нового договора страхования со страховой компанией, не заключившей с Кредитором Соглашение о сотрудничестве, Заемщик обязан в течение 3 (Трех) рабочих дней с даты заключения нового договора страхования заключить (обеспечить заключение) новое соглашение о порядке работы со страховым возмещением на условиях, определяемых Кредитором в одностороннем порядке.

Замена выгодоприобретателя по договору страхования возможна только после получения письменного согласия Кредитора.

10.3. Заемщик обязан застраховать строительно-монтажные(х) риски(ов) и ответственность(и) при проведении строительных и монтажных работ на Объекте с назначением выгодоприобретателем по договору страхования страхователя и своевременно обеспечивать его продление до сдачи Объекта в эксплуатацию.

Заемщик должен предварительно согласовать с Кредитором условия(й) договора(ов) страхования, за исключением случая наличия заключенного(ых) договора(ов) страхования строительно-монтажных рисков и ответственности при проведении строительных и монтажных работ на Объекте на дату заключения Договора.

Страхование может осуществляться всеми страховыми компаниями, удовлетворяющими требованиям Кредитора, в том числе заключившими с Кредитором Соглашение о сотрудничестве и включенными в публикуемый на официальном сайте Кредитора в сети Интернет перечень страховых компаний, участвующих в страховании залогового имущества, за исключением случая наличия заключенного договора страхования строительно-монтажных рисков и ответственности при проведении строительных и монтажных работ на Объекте на дату заключения Договора.

Заемщик обязан передать Кредитору копию(и) страхового полиса (если такой имеется) и/или копию(и) договора страхования (если такой имеется) (дополнительного соглашения о продлении срока действия договора страхования), заверенные подписью руководителя и печатью страхователя в течение 3 (Трех) рабочих дней с даты заключения договора страхования или дополнительного соглашения о продлении срока действия договора страхования, платежный документ – в течение 3 (Трех) рабочих дней с даты совершения оплаты.

## Статья 11. Ответственность Сторон

11.1. За неисполнение или ненадлежащее исполнение обязательств по Договору Стороны несут ответственность в соответствии с действующим законодательством Российской Федерации.

11.2. При несвоевременном перечислении платежа в погашение кредита, или уплату процентов, или Комиссионных платежей, за исключением платы за досрочный возврат кредита, Заемщик уплачивает Кредитору неустойку в размере процентной ставки, указанной в п. 4.1 Договора, увеличенной в 1,5 (Одну целую пять десятых) раза в процентах годовых. Неустойка начисляется на сумму просроченного платежа за каждый день просрочки в период с даты возникновения просроченной задолженности (не включая эту дату) по дату полного погашения просроченной задолженности (включительно).

Под датой возникновения просроченной задолженности в рамках Договора понимается Дата платежа, в которую Заемщиком не исполнены предусмотренные Договором обязательства.

11.3. В случае неуведомления или несвоевременного уведомления Кредитора об изменениях состава и полномочий должностных лиц, уполномоченных на заключение каких-либо сделок от имени Заемщика, оттиска печати и иных сведений, необходимых Кредитору для надлежащего выполнения им обязательств по Договору:

а) Кредитор не несет ответственности за последствия исполнения распоряжений Заемщика на перечисление кредита, подписанных неуполномоченными лицами;

б) Заемщик уплачивает Кредитору неустойку в размере 100 000 (Сто тысяч) рублей. Неустойка подлежит уплате в течение 5 (Пяти) рабочих дней с момента получения от Кредитора соответствующего извещения об уплате неустойки (включая дату получения).

11.4. В случае нарушения условия, предусмотренного п. 14.5. Договора Заемщик уплачивает Кредитору неустойку в размере 0,1 (Ноль целых одна десятая) процента от лимита кредитной линии, указанного в п. 1.1. Договора. Неустойка подлежит уплате в течение 5 (Пяти) рабочих дней с даты получения от Кредитора соответствующего извещения об уплате неустойки (включая дату получения).

## Статья 12. Особые условия

12.1. Заемщик не возражает против предоставления Кредитором в бюро кредитных историй (зарегистрированных в соответствии с законодательством Российской Федерации) информации о Заемщике, предусмотренной статьей 4 Федерального закона «О кредитных историях» № 218-ФЗ от 30.12.2004г.

12.2. Заемщик несет безусловное обязательство перед Кредитором не привлекать без письменного согласия Кредитора денежные средства участников долевого строительства для строительства Объекта на основании договоров участия в долевом строительстве в соответствии с Федеральным законом «Об участии в долевом строительстве многоквартирных домов и иных объектов недвижимости и о внесении изменений в некоторые законодательные акты Российской Федерации» от 30.12.2004 № 214-ФЗ и/или аналогичных договоров, в соответствии с которыми Заемщик привлекает денежные средства физических и/или юридических лиц для финансирования строительства Объекта и принимает обязательства после окончания строительства передать площади Объекта физическим и/или юридическим лицам, предоставившим денежные средства для финансирования строительства Объекта.

12.3. Предмет залога в виде имущественных прав (прав требования) на получение в собственность квартир в Объекте, оформленных в залог Кредитору в соответствии с п. 9.1.1. Договора, может быть замещен другими нереализованными имущественными правами (правами требования) на получение в собственность квартир в Объекте, не заложенными, не уступленными, не состоящими в споре и/или под арестом, залоговой стоимостью не менее залоговой стоимости замещаемых имущественных прав (прав требования).

Замена залога имущественных прав (прав требования) осуществляется путем подписания дополнительного соглашения к договору залога.

---

**Кредитор**                                                                    **Заемщик**

*Договор об открытии невозобновляемой кредитной линии № 2017 от «10» января 2013г.*

12.4. Залоговая стоимость имущественных прав (прав требования) на получение в собственность квартир в Объекте, оформленных в залог Кредитору в соответствии с п. 9.1.1. Договора, может быть пересмотрена Сторонами после предоставления Заемщиком документов в объеме и по форме, удовлетворительным для Кредитора.

Изменение залоговой стоимости имущественных прав (прав требования) осуществляется путем подписания дополнительного соглашения к договору залога.

12.5. Предмет залога в виде имущественных прав (прав требования) на получение в собственность квартир в Объекте, оформленных в залог Кредитору в соответствии с п. 9.1.1. Договора, а также квартир в Объекте, может быть освобожден Кредитором от залога после перечисления в счет погашения задолженности по Договору денежных средств в сумме, не менее залоговой стоимости освобождаемых от залога площадей.

Освобождение вышеуказанного предмета залога (или его части) от залога осуществляется путем подписания дополнительного соглашения.

12.6. Кредитор имеет право прекратить выдачу кредита и/или потребовать от Заемщика досрочного возврата всей суммы кредита и уплаты причитающихся процентов за пользование кредитом, неустоек и других платежей, предусмотренных условиями Кредитного договора, при этом Кредитор имеет право предъявить аналогичные требования к поручителю, а также обратить взыскание на заложенное имущество в случаях нарушения Заемщиком обязательства относительно срока оформления ипотеки завершенного строительством Объекта, указанного в п. 8.2.19 Договора, более чем на 90 (Девяносто) календарных дней.

12.7. Заемщик обязан письменно согласовывать с Кредитором все изменения, вносимые в договоры генерального подряда, на выполнение функций технического заказчика, на поставку технологического оборудования и иные договоры по затратной части Проекта.

12.8. Заемщик обязан предоставить Кредитору:
- результаты геологических изысканий о возможности водоснабжения Объекта от артезианской скважины или согласование о возможности подключения Объекта к водоснабжающей организации в срок не позднее 30.04.2013,
- согласования на водозаборные устройства (ВЗУ) и лицензию на право пользования недрами (в случае использования для водоснабжения Объекта артезианской скважины) в срок не позднее 30.12.2013,
- технические условия на водоснабжение Объекта (в случае подключения объекта к водоснабжающей организации) в срок не позднее 30.08.2013,
- документы, подтверждающие подключение Объекта к водоснабжению (акт о выполнении технических условий и иные документы) в срок не позднее 30.03.2014.

12.9. Заемщик обязан в течение 60 (Шестидесяти) календарных дней с даты государственной регистрации права собственности / подписания акта о приеме-передаче объекта основных средств (кроме зданий сооружений), заключить договор залога водозаборного узла.

12.10. Кредитор имеет право снизить лимит кредитной линии при одновременном уменьшении объема залогового обеспечения в связи с реализацией площадей Объекта:
1) При наличии принятого Решения коллегиального органа Кредитора по сделке и находящейся в стадии оформления кредитной документации: лимит кредитной линии уменьшается на сумму не менее залоговой стоимости реализованных имущественных прав на площади Объекта, ранее планировавшихся к оформлению в залог Кредитору (реализованные имущественные права на площади Объекта, ранее планировавшихся к оформлению не оформляются).

При этом, обязательным является подтверждение вложения денежных средств, полученных от реализации имущественных прав на площади Объекта, в финансирование затрат по Проекту, предусмотренных согласованным с Кредитором бюджетом Проекта.

2) При наличии действующего Договора об открытии кредитной линии и отсутствии остатка задолженности по основному долгу: лимит кредитной линии уменьшается на сумму не

менее залоговой стоимости реализованных имущественных прав на площади Объекта, оформленные в залог Кредитору, при этом данные имущественные права выводятся из залога.

При этом, обязательным является подтверждение вложения денежных средств, полученных от реализации имущественных прав на площади Объекта, в финансирование затрат по Проекту, предусмотренных согласованным с Кредитором бюджетом Проекта.

В данном случае снижение лимита и не оформление/ частичный вывод из залога площадей не рассматривается как изменение условий кредитования по сделке, осуществляется кредитующим подразделением Кредитора самостоятельно и контролируется подразделением Кредитора, ответственным за проведение мониторинга обеспечения по кредиту. Отдельное решение коллегиального органа Кредитора по данному вопросу не требуется.

12.11. Структура финансирования Проекта:

Собственные средства Заемщика: 30.0 % от стоимости Проекта.

Форма инвестирования: займы, привлеченные от экономически взаимосвязанных с Заемщиком компаний.

Средства участников долевого строительства: 3.8% от стоимости Проекта.

Форма инвестирования: средства от продажи площадей Объекта и/или имущественных прав на них по договорам участия в долевом строительстве в течение инвестиционной стадии Проекта.

Заемные средства: 66.2 % от стоимости Проекта, в т.ч. кредит Кредитора 66.2 % от стоимости Проекта.

## Статья 13. Срок действия Договора

13.1. Договор вступает в силу с даты его подписания Сторонами и действует до полного выполнения Сторонами своих обязательств по Договору.

## Статья 14. Прочие условия

14.1. Все изменения и дополнения к Договору, кроме случаев, указанных в п.п. 4.1, 7.1.1, 7.1.2, 7.1.3, 7.1.8 Договора, действительны лишь в том случае, если они совершены в письменной форме и подписаны уполномоченными на то лицами.

14.2. В случае изменения одной из Сторон своего местонахождения или почтового адреса она обязана информировать об этом другую Сторону в срок не позднее 1 (Одного) рабочего дня с даты указанных изменений.

В случае изменения у одной из Сторон банковских реквизитов, она обязана информировать об этом другую Сторону до вступления изменений в силу.

Заемщик обязан уведомить Кредитора об изменениях состава и полномочий должностных лиц, уполномоченных на заключение каких-либо сделок от имени Заемщика, оттиска печати и иных сведений, необходимых Кредитору для надлежащего выполнения им обязательств по Договору, не позднее дня вступления изменений в силу с предоставлением в течение 3 (Трех) рабочих дней копий подтверждающих документов, заверенных надлежащим образом.

14.3. Любое уведомление и иное сообщение, направляемое Сторонами друг другу по Договору, должно быть совершено в письменной форме.

Такое уведомление или сообщение считается направленным надлежащим образом, если оно доставлено адресату посыльным или заказным письмом, или телеграммой с уведомлением, по адресу, указанному в Договоре (или по адресу, указанному Стороной в соответствии с п.14.2. Договора), и за подписью уполномоченного лица.

Уведомление или сообщение Кредитора считается доставленным Заемщику надлежащим образом, если оно получено Заемщиком, а также в случаях, если, несмотря на направление уведомления (сообщения) Кредитором в соответствии с условиями Договора, Заемщик не явился за его получением или отказался от его получения, или уведомление (сообщение) не вручено в связи с отсутствием адресата по указанному в уведомлении (сообщении) адресу, о чем орган связи проинформировал Кредитора. Датой доставки

**Кредитор**                                                                                    **Заемщик**

*Договор об открытии невозобновляемой кредитной линии № 2017 от «10» января 2013г.*

уведомления или сообщения Кредитора считается дата его получения Заемщиком, а при неявке Заемщика за получением уведомления (сообщения) с требованием Кредитора или отказе от его получения, или его невручении в связи с отсутствием адресата по указанному в уведомлении (сообщении) адресу - дата отправки органом связи уведомления Кредитору о невручении Заемщику требования Кредитора.

14.4. Все споры по Договору рассматриваются в соответствии с действующим законодательством Российской Федерации в Арбитражном города Москвы.

14.5. Заемщик обязуется не разглашать в любой форме (в том числе, но не исключительно: в форме интервью, публикаций, рекламных акций) информацию, касающуюся условий Договора без письменного согласия Кредитора.

Данное условие не распространяется на обязательное предоставление информации в случаях, определенных законодательством Российской Федерации, а также в случае необходимости предоставления такой информации Заемщиком в рамках существующих или вновь принятых на себя обязательств по раскрытию информации перед другими кредиторами, рейтинговыми агентствами, финансовыми институтами.

14.6. Заемщик обязан обеспечить предоставление физическими лицами, чьи персональные данные содержатся в предоставляемых им Кредитору документах, согласия на проверку и обработку (включая автоматизированную обработку) этих данных Кредитором в соответствии с требованиями действующего законодательства Российской Федерации, в том числе Федерального закона «О персональных данных» №152-ФЗ от 27.07.2006г.

14.7. Приложение №1, Приложение №2 является(ются) неотъемлемой частью Договора.

14.8. Договор составлен в двух экземплярах, имеющих одинаковую юридическую силу, по одному экземпляру для Кредитора и Заемщика.

### Статья 15. Местонахождение и реквизиты Сторон

15.1. **Кредитор:** Открытое акционерное общество «Сбербанк России», филиал – Московский банк ОАО «Сбербанк России»

Местонахождение: 117997, Москва, ул. Вавилова, д.19.

Почтовый адрес: 109544, Москва, Б. Андроньевская, д.6, Московский банк ОАО «Сбербанк России»;

Корреспондентский счет № 30101810400000000225 в ОПЕРУ Московского ГТУ Банка России Расчетный счет № 30301810500001000014 в ОАО «Сбербанк России»

БИК 044525225, ИНН 7707083893, ОГРН 1027700132195, КПП 775001001, ОКПО 00032537, Тел./факс: 781-68-52

15.2. **Заемщик:** Общество с ограниченной ответственностью «ХОЛМЭКС»

Местонахождение: 125195, г. Москва, ул. Беломорская, д. 6А

Почтовый адрес: 125195, г. Москва, ул. Беломорская, д. 6А

ИНН 7726547734, ОГРН 5067746400552, КПП 774301001, ОКПО 97196518.

Расчетный счет № 40702810038180006359 в Универсальном дополнительном офисе № 01754 Московского банка ОАО «Сбербанк России»

Телефон: (495) 933-37-37, доб. 2000

### Подписи Сторон

**ЗАЛОГОДЕРЖАТЕЛЬ**
Директор Управления кредитования
Московского банка ОАО «Сбербанк России»

П.С.Белов

М.П.

**Кредитор**

**ЗАЛОГОДАТЕЛЬ**
Представитель ООО «ХОЛМЭКС»
по доверенности

А.И.Пахомов

**Заемщик**

*Договор об открытии невозобновляемой кредитной линии № 2017 от «10» января 2013г.*

23

Приложение №1 к Договору № 2017 об открытии невозобновляемой кредитной линии от «10» января 2013 г.

| Полное наименование компании - владельца счета | ОГРН | Местонахождение | Вид счета | Номер счета | Подразделение Кредитора/ наименование другого банка, в котором открыт счет |
|---|---|---|---|---|---|
| **Счет Заемщика, на который производится перечисление кредита:** | | | | | |
| Общество с ограниченной ответственностью «ХОЛМЭКС» | 5067746400552 | 125195, г. Москва, ул. Беломорская, д. 6А | расчетный | 40702810038180006359 | Универсальном дополнительном офисе № 01754 Московского банка ОАО «Сбербанк России», ИНН 7707083893, КПП 775001001, БИК 044525225 |
| **Счета, по которым оформляются соглашения о праве Кредитора на списание средств без распоряжения плательщика в погашение просроченной задолженности:** | | | | | |
| Общество с ограниченной ответственностью «ХОЛМЭКС» | 5067746400552 | 125195, г. Москва, ул. Беломорская, д. 6А | расчетный | 40702810038180006359 | Универсальном дополнительном офисе № 01754 Московского банка ОАО «Сбербанк России», ИНН 7707083893, КПП 775001001, БИК 044525225 |
| Общество с ограниченной ответственностью «ХОЛМЭКС | 5067746400552 | 125195, г. Москва, ул. Беломорская, д. 6А | расчетный | 40702810700000120373 | ОАО АКБ «ПРОБИЗНЕСБАНК», ИНН 7729086087, КПП 775001001 |
| Общество с ограниченной ответственностью «ХОЛМЭКС | 5067746400552 | 125195, г. Москва, ул. Беломорская, д. 6А | расчетный | 40702810509000020373 | ОАО АКБ «ПРОБИЗНЕСБАНК», ИНН 7729086087, КПП 775001001 |
| Общество с ограниченной ответственностью «ХОЛМЭКС | 5067746400552 | 125195, г. Москва, ул. Беломорская, д. 6А | расчетный | 40702810800000020373 | ОАО АКБ «ПРОБИЗНЕСБАНК», ИНН 7729086087, КПП 775001001 |
| Общество с ограниченной ответственностью «ХОЛМЭКС | 5067746400552 | 125195, г. Москва, ул. Беломорская, д. 6А | расчетный | 40702840100000020373 | ОАО АКБ «ПРОБИЗНЕСБАНК», ИНН 7729086087, КПП 775001001 |
| Общество с ограниченной ответственностью «Пробизнес-Девелопмент» | 1077746278279 | 125195, г. Москва, ул. Беломорская, д. 6А | расчетный | 40702810601000027331 | ЗАО АКБ «ИНТЕРПРОМБАНК», ИНН 77041332246, КПП 774401001 |
| Общество с ограниченной ответственностью «Пробизнес-Девелопмент» | 1077746278279 | 125195, г. Москва, ул. Беломорская, д. 6А | расчетный | 40702810538180003904 | Универсальном дополнительном офисе № 01754 Московского банка ОАО «Сбербанк России», ИНН 7707083893, КПП 775001001, БИК 044525225 |
| Общество с ограниченной ответственностью «Пробизнес-Девелопмент» | 1077746278279 | 125195, г. Москва, ул. Беломорская, д. 6А | расчетный | 40702810700000001793 | КБ «УНИФИН» ЗАО, ИНН 6312013912, КПП 774401001 |

24

| | | | | | | |
|---|---|---|---|---|---|---|
| Общество с ограниченной ответственностью «Пробизнес-Девелопмент» | 1077746278279 | 125195, г. Москва, ул. Беломорская, д. 6А | расчетный | 40701810900000000039 | ООО КБ «РОСАВТОБАНК», ИНН 7717004724, КПП 775002001 |
| Общество с ограниченной ответственностью «Пробизнес-Девелопмент» | 1077746278279 | 125195, г. Москва, ул. Беломорская, д. 6А | расчетный | 40702810800010004765 | Ф-Л ОАО ХАНТЫ-МАНСИЙСКОГО БАНКА, ИНН 8601000666, КПП 775002001 |
| Общество с ограниченной ответственностью «Пробизнес-Девелопмент» | 1077746278279 | 125195, г. Москва, ул. Беломорская, д. 6А | расчетный | 40702810200800000004 | ОАО «МОСКОВСКИЙ КРЕДИТНЫЙ БАНК», ИНН 7734202860, КПП 775001001 |
| Общество с ограниченной ответственностью «Пробизнес-Девелопмент» | 1077746278279 | 125195, г. Москва, ул. Беломорская, д. 6А | расчетный | 40702978200000021377 | ОАО АКБ «ПРОБИЗНЕСБАНК», ИНН 7729086087, КПП 775001001 |
| Общество с ограниченной ответственностью «Пробизнес-Девелопмент» | 1077746278279 | 125195, г. Москва, ул. Беломорская, д. 6А | расчетный | 40702840900001021377 | ОАО АКБ «ПРОБИЗНЕСБАНК», ИНН 7729086087, КПП 775001001 |
| Общество с ограниченной ответственностью «Пробизнес-Девелопмент» | 1077746278279 | 125195, г. Москва, ул. Беломорская, д. 6А | расчетный | 40702840600000021377 | ОАО АКБ «ПРОБИЗНЕСБАНК», ИНН 7729086087, КПП 775001001 |
| Общество с ограниченной ответственностью «Пробизнес-Девелопмент» | 1077746278279 | 125195, г. Москва, ул. Беломорская, д. 6А | расчетный | 40702810300000021377 | ОАО АКБ «ПРОБИЗНЕСБАНК», ИНН 7729086087, КПП 775001001 |
| **Счета, поступление выручки на которые обязан обеспечить Заемщик в соответствии с условиями Договора:** | | | | | |
| Общество с ограниченной ответственностью «ХОЛМЭКС» | 5067746400552 | 125195, г. Москва, ул. Беломорская, д. 6А | расчетный | 40702810038180006359 | Универсальном дополнительном офисе № 01754 Московского банка ОАО «Сбербанк России», ИНН 7707083893, КПП 775001001, БИК 044525225 |

## Подписи сторон

**КРЕДИТОР**

Директор Управления кредитования
Московского банка ОАО «Сбербанк России»

_____П.С.Белов

М.П.

**ЗАЕМЩИК**

Представитель ООО «ХОЛМЭКС»
по доверенности

_____И.Пахомов

Приложение №2 к Договору № 2017 об открытии невозобновляемой кредитной линии от «10» января 2013 г.

25

Приложение № 2

к Договору об открытии невозобновляемой кредитной линии № 2017 от «10» января 2013г.

в Управление кредитования Московского банка

ОАО «Сбербанк России»

Исх. №_____ от ___.___.20___г.

## РАСПОРЯЖЕНИЕ НА ПЕРЕЧИСЛЕНИЕ КРЕДИТА

Прошу предоставить кредитные средства в соответствии со следующими условиями:

| | |
|---|---|
| 1. Наименование Заемщика | Общество с ограниченной ответственностью «ХОЛМЭКС» |
| 2. Договор об открытии невозобновляемой кредитной линии | № 2017 от «10» января 2013г. |
| 3. Дата предоставления кредитных средств | *Указывается планируемая дата получения кредита* |
| 4. Сумма, валюта кредита | _____ (_____) *Указывается запрашиваемая сумма кредита (цифрами и прописью) с указанием валюты кредита* |
| 5. Расчетный счет | 40702810038180006359 |

_____     _____     (Ф.И.О.)
(Указывается должность уполномоченного          (подпись)
на распоряжение кредитными средствами
лица Заемщика)

Главный бухгалтер Заемщика          _____     (Ф.И.О.)
(Указывается при наличии)               (подпись)
                                   М.П.

*или*

Подтверждение ЭЦП лица, уполномоченного Заемщиком на распоряжение кредитными средствами.

**Подписи Сторон**

| **КРЕДИТОР** | **ЗАЕМЩИК** |
|---|---|
| Директор | Представитель ООО «ХОЛМЭКС» |
| Управления кредитования | по доверенности |
| Московского банка ОАО «Сбербанк России» | |

П.С.Белов                                   А.И.Пахомов

М.П.

_____

**Кредитор**                                   **Заемщик**



*Всего прошито, пронумеровано, скреплено печатями 26 (Двадцать шесть) листов*

**Кредитор**
Директор Управления кредитования
Московского банка
ОАО «Сбербанк России»

_____ П.С.Белов

М.П.

**Заемщик**
Представитель ООО «ХОЛМЭКС»
по доверенности

_____ А.И.Пахомов



### СБЕРБАНК РОССИИ
Основан в 1841 году

## Дополнительное соглашение № 1 к ДОГОВОРУ № 2017
## об открытии невозобновляемой кредитной линии от «10» января 2013г.

г. Москва                                                                «01» апреля 2013 г.

**Открытое акционерное общество «Сбербанк России»**, именуемое в дальнейшем «Кредитор», в лице директора Управления финансирования недвижимости ОАО «Сбербанк России» Барга Германа Ивановича, действующего на основании Устава, Положения о филиале ОАО «Сбербанк России» - Московском банке   и Доверенности № 1064  от "12" марта 2013 г., с одной стороны, и

**Общество с ограниченной ответственностью «ХОЛМЭКС»**, именуемое в дальнейшем «Заемщик», в лице Генерального директора Земскова Романа Николаевича, действующего на основании Устава, с другой стороны, далее совместно именуемые «Стороны», заключили настоящее дополнительное соглашение, именуемое в дальнейшем «Соглашение»  к Договору № 2017 об открытии  невозобновляемой кредитной линии от «10» января 2013г., именуемый в дальнейшем «Договор», о нижеследующем:

1. **Изложить первые два абзаца пункта 8.2.4. Договора в следующей редакции:**

«8.2.4. Предоставлять Кредитору ежеквартально не позднее календарного месяца, следующего за отчетным периодом (кварталом, полугодием, 9 месяцев), а по окончании отчетного года - не позднее 5 (Пяти) рабочих дней с даты окончания периода, установленного законодательством Российской Федерации для представления годовой бухгалтерской (финансовой) отчетности в налоговые органы:

- б ухгалтерскую (финансовую) отчетность в составе и по формам, установленным законодательством Российской Федерации, с отметкой о способе отправления документа в подразделение ФНС России (для годовой отчетности), заверенную руководителем и печатью Заемщика и аудиторское заключение (или его итоговую часть) (при обязательном по законодательству Российской Федерации аудите бухгалтерской (финансовой) отчетности);»

2. Настоящее Соглашение является неотъемлемой частью Договора и вступает в силу с даты его подписания.
3. Во всем остальном, что не предусмотрено настоящим Соглашением, действуют условия Договора.
4. Настоящее Соглашение составлено в 2 (Двух) экземплярах, имеющих одинаковую юридическую силу, по одному экземпляру для Кредитора и Заемщика.

### Местонахождение и реквизиты Сторон

**Кредитор:**
Открытое акционерное общество «Сбербанк России», филиал – Московский банк ОАО «Сбербанк России»
Местонахождение: 117997, Москва, ул. Вавилова, д.19.
Почтовый адрес: 109544, Москва, Б. Андроньевская, д.6, Московский банк  ОАО «Сбербанк России»;
Корреспондентский счет № 30101810400000000225 в ОПЕРУ Московского ГТУ Банка России
Расчетный счет № 30301810500001000014 в ОАО «Сбербанк России»
БИК 044525225,  ИНН 7707083893, ОГРН 1027700132195, КПП 775001001, ОКПО 00032537,
Тел./факс: 781-68-52
**Заемщик:**
Общество с ограниченной ответственностью «ХОЛМЭКС»
Местонахождение: 125195, г. Москва, ул. Беломорская, д. 6А
Почтовый адрес: 125195, г. Москва, ул. Беломорская, д. 6А
ИНН 7726547734, ОГРН 5067746400552, КПП 774301001, ОКПО 97196518.
Расчетный счет № 40702810038180006359 в Универсальном дополнительном офисе № 01754 Московского банка ОАО «Сбербанк России»
Телефон: (495) 933-37-37, доб. 2000

### ПОДПИСИ СТОРОН

**Кредитор**                                                         **Заемщик**
Директор Управления финансирования                    Генеральный директор
недвижимости Московского банка                          ООО «ХОЛМЭКС»
Московского банка ОАО «Сбербанк России»



Г.И.Барг                                                          Р.Н.Земсков

М.П.                                                             М.П.

1

 **СБЕРБАНК РОССИИ**
Основан в 1841 году

**Дополнительное соглашение № 2 к ДОГОВОРУ № 2017**
**об открытии невозобновляемой кредитной линии от «10» января 2013г.**

г. Москва                                              «06» сентября 2013 года

      **Открытое акционерное общество «Сбербанк России»**, именуемое в дальнейшем «Кредитор», в лице Заместителя Директора управления финансирования недвижимости **Мироновой Оксаны Николаевны**, действующей на основании Устава, Положения о филиале Открытого акционерного общества «Сбербанк России» – Московском банке (Московский банк ОАО «Сбербанк России») и Доверенности № 1065 от «12» марта 2013 г., с одной стороны, и
      **Общество с ограниченной ответственностью «ХОЛМЭКС»**, именуемое в дальнейшем «Заемщик», в лице Генерального директора **Земскова Романа Николаевича**, действующего на основании Устава, с другой стороны, далее совместно именуемые «Стороны», заключили настоящее дополнительное соглашение, именуемое в дальнейшем «Соглашение», к Договору об открытии невозобновляемой кредитной линии №2017 от «10» января 2013г. в редакции дополнительного соглашения №1 от «01» апреля 2013г., именуемому в дальнейшем «Договор» о нижеследующем:

1. **Изложить п.п. 9.1.1 Договора в следующей редакции:**
      «9.1.1. Залог имущественных прав на получение в собственность не менее 95,98 (Девяносто пять целых девяносто восемь сотых) процентов площадей строящегося Объекта - домов блокированной застройки общей площадью - не менее 38 176,64 (Тридцать восемь целых сто семьдесят шесть целых шестьдесят четыре сотых) кв.м, расположенных по адресу: Московская область, Солнечногорский район, сельское поселение Кутузовское, д. Подолино, принадлежащих Обществу с ограниченной ответственностью «ХОЛМЭКС» (ОГРН 5067746400552, ИНН7726547734, местонахождение: 125195, г. Москва, ул. Беломорская, д. 6А) в соответствии с Договором имущественных прав № 2017/ип от «10» января 2013г.»

2. Термины и определения, используемые в настоящем Соглашении, соответствуют терминам и определениям, принятым Сторонами в Договоре.
3. Настоящее Соглашение является неотъемлемой частью Договора и вступает в силу с даты его подписания.
4. Во всем остальном, что не предусмотрено настоящим Соглашением, действуют условия Договора.
5. Настоящее Соглашение составлено в 2 (Двух) экземплярах, имеющих одинаковую юридическую силу, по одному экземпляру для Кредитора и Заемщика.

**Местонахождение и реквизиты Сторон**

**Кредитор:**
Местонахождение: 117997, Москва, ул. Вавилова, д.19.
Почтовый адрес: 109544, Москва, Б. Андроньевская, д.6, Московский банк ОАО «Сбербанк России»;
Корреспондентский счет № 30101810400000000225 в ОПЕРУ Московского ГТУ Банка России
Расчетный счет № 30301810500001000014 в ОАО «Сбербанк России»
БИК 044525225, ИНН 7707083893, ОГРН 1027700132195, КПП 775001001, ОКПО 00032537,
Тел./факс: 781-68-52
**Заемщик:**
Местонахождение: 125195, г. Москва, ул. Беломорская, д. 6А

2

Почтовый адрес: 125195, г. Москва, ул. Беломорская, д. 6А
ИНН 7726547734, ОГРН 5067746400552, КПП 774301001, ОКПО 97196518.
Расчетный счет № 40702810038180006359 в Универсальном дополнительном офисе № 01754 Московского банка ОАО «Сбербанк России»
Телефон: (495) 933-37-37, доб. 2000

## ПОДПИСИ СТОРОН

| Кредитор | Заемщик |
|---|---|
| Заместитель директора | Генеральный директор |
| Управления финансирования недвижимости | ООО «ХОЛМЭКС» |
| Московского банка ОАО «Сбербанк России» | |

_____ О.Н. Миронова          _____ Р.Н. Земсков

М.П.                                      М.П.



**СБЕРБАНК РОССИИ**
Основан в 1841 году

### Дополнительное соглашение №3 к Договору об открытии невозобновляемой кредитной линии № 2017 от «10» января 2013г.

г. Москва

«_13_» декабря 2013 года

**Открытое акционерное общество «Сбербанк России»**, именуемое в дальнейшем «Кредитор», в лице Директора Управления финансирования недвижимости Московского банка **Барга Германа Ивановича**, действующего на основании Устава, Положения о филиале Открытого акционерного общества «Сбербанк России» - Московском банке (Московский банк ОАО «Сбербанк России») и Доверенности №01-353 от «19» ноября 2013 года, с одной стороны, и

**Общество с ограниченной ответственностью «ХОЛМЭКС»**, именуемое в дальнейшем «Заемщик», в лице Генерального директора **Земскова Романа Николаевича**, действующего на основании Устава, с другой стороны, далее совместно именуемые «Стороны», заключили настоящее дополнительное соглашение, именуемое в дальнейшем «Соглашение», к Договору об открытии невозобновляемой кредитной линии №2017 от «10» января 2013г. в редакции дополнительного соглашения №1 от «01» апреля 2013г. и дополнительного соглашения №2 от «06» сентября 2013г., именуемому в дальнейшем «Договор» о нижеследующем:

1. **Изложить п. 8.2.16 Договора в следующей редакции:**
«8.2.16. Перечислять денежные средства, поступившие в результате заключения договоров купли-продажи или иных договоров, в соответствии с которыми происходит отчуждение площадей Объекта и/или имущественных прав на них, предоставленных в залог Кредитору в соответствии с п. 9.1.1. Договора, в счет досрочного погашения задолженности по кредиту (включая основной долг на сумму не менее залоговой стоимости освобождаемых от залога площадей Объекта, проценты за пользование кредитом, а также комиссионные платежи, указанные в п. 4.3, 4.4, 11.4 Договора на дату платежа в размере стоимости освобождаемых от залога площадей Объекта, указанной в соответствующем договоре купли-продажи, в срок не позднее 3 (Трех) рабочих дней с даты поступления денежных средств на счета Заемщика.»

2. **Дополнить Договор пунктом 8.2.35 следующего содержания:**
«8.2.35. В течение 10 (Десяти) календарных дней с даты государственной регистрации права собственности на вновь образованные земельные участки (в результате размежевания земельного участка, кадастровый номер 50:09:0070705:18, площадью 29 781 кв.м, местонахождение: Московская область, Солнечногорский район, сельское поселение Кутузовское, д.Подолино), предоставить Кредитору копии свидетельств о государственной регистрации права собственности на вновь образованные земельные участки, кадастровые паспорта вновь образованных земельных участков, а также актуальные выписки из Единого государственного реестра прав на недвижимое имущество и сделок с ним (сроком до 30 календарных дней) в отношении вновь образованных земельных участков.»

3. **Дополнить Договор пунктом 8.2.36 следующего содержания:**
«8.2.36. В течение 60 (Шестидесяти) календарных дней с даты государственной регистрации права собственности на вновь образованные земельные участки (в результате размежевания земельного участка, кадастровый номер 50:09:0070705:18, площадью 29 781 кв.м, местонахождение: Московская область, Солнечногорский район, сельское поселение Кутузовское, д.Подолино), оформить данные вновь образованные земельные участки в ипотеку Кредитору путем заключения дополнительного соглашения к Договору ипотеки №2017/И-1 от «10» января 2013г.»

4. Термины и определения, используемые в настоящем Соглашении, соответствуют терминам и определениям, принятым Сторонами в Договоре.

5. Настоящее Соглашение является неотъемлемой частью Договора и вступает в силу с даты его подписания.

6. Во всем остальном, что не предусмотрено настоящим Соглашением, действуют условия Договора.

7. Настоящее Соглашение составлено в 2 (Двух) экземплярах, имеющих одинаковую юридическую силу, по одному экземпляру для Кредитора и Заемщика.

### Местонахождение и реквизиты Сторон

**Кредитор:**

Местонахождение: 117997, Москва, ул. Вавилова, д.19.

Почтовый адрес: 109544, Москва, Б. Андроньевская, д.6, Московский банк ОАО «Сбербанк России»;

Корреспондентский счет № 30101810400000000225 в ОПЕРУ Московского ГТУ Банка России

Расчетный счет № 30301810500001000014 в ОАО «Сбербанк России»

БИК 044525225, ИНН 7707083893, ОГРН 1027700132195, КПП 775001001, ОКПО 00032537,

Тел./факс: 781-68-52

**Заемщик:**

Местонахождение: 125195, г. Москва, ул. Беломорская, д. 6А

Почтовый адрес: 125195, г. Москва, ул. Беломорская, д. 6А

ИНН 7726547734, ОГРН 5067746400552, КПП 774301001, ОКПО 97196518.

Расчетный счет № 40702810038180006359 в Универсальном дополнительном офисе № 01754 Московского банка ОАО «Сбербанк России»

Телефон: (495) 933-37-37, доб. 2000

### ПОДПИСИ СТОРОН

| Кредитор | Заемщик |
|---|---|
| Директор Управления | Генеральный директор |
| финансирования недвижимости | ООО «ХОЛМЭКС» |
| Московского банка ОАО «Сбербанк России» | |

Г.И. Барг                                  Р.Н. Земсков

М.П.                                          М.П.



**СБЕРБАНК РОССИИ**
Основан в 1841 году

I

### Дополнительное соглашение №4 к Договору об открытии невозобновляемой кредитной линии № 2017 от «10» января 2013г.

г. Москва                                                                                     «26» июня 2014 года

**Открытое акционерное общество «Сбербанк России»,** именуемое в дальнейшем «Кредитор», в лице Директора Управления финансирования недвижимости Московского банка **Барга Германа Ивановича,** действующего на основании Устава, Положения о филиале Открытого акционерного общества «Сбербанк России» - Московском банке (Московский банк ОАО «Сбербанк России») и Доверенности №01-353 от «19» ноября 2013 года, с одной стороны, и

**Общество с ограниченной ответственностью «ХОЛМЭКС»,** именуемое в дальнейшем «Заемщик», в лице Генерального директора **Земскова Романа Николаевича,** действующего на основании Устава, с другой стороны, далее совместно именуемые «Стороны», заключили настоящее дополнительное соглашение, именуемое в дальнейшем «Соглашение», к Договору об открытии невозобновляемой кредитной линии №2017 от «10» января 2013г. в редакции дополнительного соглашения №1 от «01» апреля 2013г., дополнительного соглашения №2 от «06» сентября 2013г., дополнительного соглашения №3 от «13» декабря 2013г., именуемому в дальнейшем «Договор» о нижеследующем:

### 1. Изложить п. 6.1 Договора в следующей редакции:

«6.1. Дата полного погашения выданного кредита: «28» декабря 2015г.
Погашение кредита производится по следующему графику:

| Дата погашения | Размер платежа в процентах от размера выбранного лимита на Дату окончания периода доступности |
|---|---|
| 28 июня 2014г. | 13,05 % |
| 28 сентября 2014г. | 16,31 % |
| 28 декабря 2014г. | 16,31 % |
| 28 марта 2015 г. | 10,87 % |
| 28 июня 2015 г. | 13,05 % |
| 28 сентября 2015 г. | 16,31 % |
| 28 декабря 2015г. | 14,10 % |

В случае погашения Заемщиком кредита после Даты окончания периода доступности, но ранее дат, установленных настоящим пунктом, в соответствии с п. 6.2 Договора, суммы погашения кредита по вышеуказанному графику уменьшаются на погашенные ранее установленных настоящим пунктом дат суммы кредита, начиная с ближайшего к дате фактического погашения платежа по графику. Каждый последующий платеж по графику уменьшается на погашенные ранее установленных настоящим пунктом дат суммы кредита, превышающие сумму предыдущих платежей по графику.

Если дата погашения соответствующей суммы кредита приходится на нерабочий день, срок пользования соответствующей суммой кредита устанавливается по первый рабочий день (включая этот день), следующий за нерабочим днем, на который приходится дата погашения соответствующей суммы кредита.».

2

2. Термины и определения, используемые в настоящем Соглашении, соответствуют терминам и определениям, принятым Сторонами в Договоре.
3. Настоящее Соглашение является неотъемлемой частью Договора и вступает в силу с даты его подписания.
4. Во всем остальном, что не предусмотрено настоящим Соглашением, действуют условия Договора.
5. Настоящее Соглашение составлено в 2 (Двух) экземплярах, имеющих одинаковую юридическую силу, по одному экземпляру для Кредитора и Заемщика.

### Местонахождение и реквизиты Сторон

**Кредитор: Открытое акционерное общество «Сбербанк России», филиал – Московский банк ОАО «Сбербанк России»**

Местонахождение: 117997, Москва, ул. Вавилова, д.19.

Почтовый адрес: 109544, Москва, Б. Андроньевская, д.6, Московский банк  ОАО «Сбербанк России»;

Корреспондентский счет № 30101810400000000225 в Операционном управлении Главного управления Центрального банка Российской Федерации по Центральному федеральному округу г. Москва (ОПЕРУ Москва)

Расчетный счет № 30301810000006000014 в ОАО «Сбербанк России»

БИК 044525225,  ИНН 7707083893, ОГРН 1027700132195, КПП 775001001, ОКПО 00032537, Тел./факс: (495) 781-68-52

**Заемщик: Общество с ограниченной ответственностью «ХОЛМЭКС»**

Местонахождение: 125195, г. Москва, ул. Беломорская, д. 6А

Почтовый адрес: 125195, г. Москва, ул. Беломорская, д. 6А

ИНН 7726547734, ОГРН 5067746400552, КПП 774301001, ОКПО 97196518.

Расчетный счет № 40702810038180006359 в Универсальном дополнительном офисе № 01754 Московского банка ОАО «Сбербанк России»

Телефон: (495) 933-37-37, доб. 2000

### ПОДПИСИ СТОРОН

| Кредитор | Заемщик |
|---|---|
| Директор Управления финансирования недвижимости Московского банка ОАО «Сбербанк России» | Генеральный директор ООО «ХОЛМЭКС» |
| Г.И. Барг | Р.Н. Земсков |
| М.П. | М.П. |



СБЕРБАНК РОССИИ
Основан в 1841 году

I

### Дополнительное соглашение № 5 к Договору об открытии невозобновляемой кредитной линии № 2017 от «10» января 2013 г.

г. Москва                                                                      «30» сентября 2014 г.

**Открытое акционерное общество «Сбербанк России»,** именуемое в дальнейшем «Кредитор», в лице **Директора Управления финансирования недвижимости Московского банка Барга Германа Ивановича,** действующего на основании Устава, Положения о филиале Открытого акционерного общества «Сбербанк России» - Московском банке (Московский банк ОАО «Сбербанк России») и Доверенности №01-353 от «19» ноября 2013 г., с одной стороны, и

**Общество с ограниченной ответственностью «ХОЛМЭКС»,** именуемое в дальнейшем «Заемщик», в лице Генерального директора **Земскова Романа Николаевича,** действующего на основании Устава, с другой стороны, далее совместно именуемые «Стороны», заключили настоящее дополнительное соглашение, именуемое в дальнейшем «Соглашение», к Договору об открытии невозобновляемой кредитной линии № 2017 от «10» января 2013 г. в редакции дополнительного соглашения № 1 от «01» апреля 2013 г., дополнительного соглашения № 2 от «06» сентября 2013 г., дополнительного соглашения № 3 от «13» декабря 2013 г., дополнительного соглашения № 4 от «26» июня 2014 г., именуемому в дальнейшем «Договор» о нижеследующем:

### 1. Дополнить Договор пунктом 4.6 следующего содержания:

«4.6. Заемщик уплачивает Кредитору плату за обслуживание кредита в размере 100 000 (Сто тысяч) рублей. Плата за обслуживание кредита уплачивается Заемщиком Кредитору единовременно в течение 5 (Пять) рабочих дней с даты заключения Соглашения.».

### 2. Изложить п. 8.2.32 Договора в следующей редакции:

«8.2.32. В течение **170 (Сто семьдесят)** календарных дней с даты ввода построенного Объекта в эксплуатацию предоставить Кредитору свидетельства о государственной регистрации права собственности на нереализованные площади Объекта.».

3. Термины и определения, используемые в настоящем Соглашении, соответствуют терминам и определениям, принятым Сторонами в Договоре.
4. Настоящее Соглашение является неотъемлемой частью Договора и вступает в силу с даты его подписания Сторонами.
5. Во всем остальном, что не предусмотрено настоящим Соглашением, действуют условия Договора.
6. Настоящее Соглашение составлено в 2 (Двух) экземплярах, имеющих одинаковую юридическую силу, по одному экземпляру для Кредитора и Заемщика.

### Местонахождение, адреса и реквизиты Сторон

**Кредитор: Открытое акционерное общество «Сбербанк России», филиал – Московский банк ОАО «Сбербанк России»**
Местонахождение: г. Москва.
Адрес: 117997, г. Москва, ул. Вавилова, д. 19

2

Почтовый адрес: 109544, Москва, Б. Андроньевская, д.6, Московский банк   ОАО «Сбербанк России»;
БИК 044525225,   ИНН 7707083893, ОГРН 1027700132195, КПП 775001001, ОКПО 00032537.
Корреспондентский счет № 30101810400000000225 в Операционном управлении Главного управления Центрального банка Российской Федерации по Центральному федеральному округу, г. Москва (ОПЕРУ Москва)
Счет № 30301810000006000014 в ОАО «Сбербанк России»
Тел./факс: (495) 781-68-52, 781-69-20

**Заемщик: Общество с ограниченной ответственностью «ХОЛМЭКС»**
Местонахождение: г. Москва
Почтовый адрес: 125195, г. Москва, ул. Беломорская, д. 6А
ИНН 7726547734, ОГРН 5067746400552, КПП 774301001, ОКПО 97196518.
Расчетный счет № 40702810038180006359 в Универсальном дополнительном офисе № 01754 Московского банка ОАО «Сбербанк России»
Телефон: (495) 933-37-37, доб. 2000

## ПОДПИСИ СТОРОН

**Кредитор**
Директор Управления
финансирования недвижимости
Московского банка ОАО «Сбербанк России»

М.П.                    Г.И. Барг

**Заемщик**
Генеральный директор
ООО «ХОЛМЭКС»

М.П.                    Р.Н. Земсков



translations@geotext.com
wwww.geotext.com

STATE OF NEW YORK        )
                         )     ss
COUNTY OF NEW YORK       )

## CERTIFICATION

This is to certify that the attached translation is, to the best of my knowledge and belief, a true

and accurate translation from Russian into English of the attached Agreement No. 2017, dated

January 10, 2013.

Kristen Duffy, Senior Managing Editor
Geotext Translations, Inc.

Sworn to and subscribed before me

this _3_ day of _January_ , 20 _18_ .

JEFFREY AARON CURETON
NOTARY PUBLIC-STATE OF NEW YORK
No. 01CU6169789
Qualified in New York County
My Commission Expires September 23, 2019

New York
t: +1.212.631.7432

Washington, D.C.
t: +1.202.828.1267

Chicago
t: +1.312.242.3756

Houston
t: +1.713.353.3909

San Francisco
t: +1.415.576.9500

London
t: +44.20.7553.4100

Paris
t: +33.1.42.68.51.47

Stockholm
t: +46.8.463.11.87

Frankfurt
t: +49.69.7593.8434

Hong Kong
t: +852.2159.9143