# EXHIBIT 32

SUPREME COURT OF THE STATE OF NEW YORK
NEW YORK COUNTY

PRESENT: **BARRY R. OSTRAGER** JSC   PART _61_
                                  Justice

| Index Number : 656007/2016 | INDEX NO. _____ |
| AVILON AUTOMOTIVE GROUP ET AL | MOTION DATE _____ |
| vs. | MOTION SEQ. NO. _____ |
| SERGEY LEONTIEV ET AL | |
| SEQUENCE NUMBER : 001 | |
| LEAVE TO FILE AMENDED 2ND COMPLAINT | |

The following papers, numbered 1 to _____, were read on this motion to/for _____

Notice of Motion/Order to Show Cause — Affidavits — Exhibits _____ | No(s). _____
Answering Affidavits — Exhibits _____ | No(s). _____
Replying Affidavits _____ | No(s). _____

Upon the foregoing papers, it is ordered that this motion is for leave to serve a Second Amended Complaint is denied, as the action has been dismissed, pursuant to the decision issued in connection with motion sequences 005 and 006.

Dated: _October 5, 2017_                    _____, J.S.C.
                                             **BARRY R. OSTRAGER**

1. CHECK ONE: .................................................... ☒ CASE DISPOSED    ☐ NON-FINAL DISPOSITION
2. CHECK AS APPROPRIATE: ..........................MOTION IS: ☐ GRANTED  ☒ DENIED  ☐ GRANTED IN PART  ☐ OTHER
3. CHECK IF APPROPRIATE: ................................ ☐ SETTLE ORDER         ☐ SUBMIT ORDER
                                                           ☐ DO NOT POST  ☐ FIDUCIARY APPOINTMENT  ☐ REFERENCE

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE
FOR THE FOLLOWING REASON(S):

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: IAS PART 61
———————————————————————————X

AVILON AUTOMOTIVE GROUP and
KAREN AVAGUMYAN,

                        Plaintiffs,                     INDEX NO. 656007/16

        -against-                          Motion Seq. Nos. 005 & 006

SERGEY LEONTIEV, LEONID LEONTIEV,
WONDERWORKS INVESTMENTS LIMITED,
LEGION TRUST, and SOUTHPAC TRUST
INTERNATIONAL INC. AS TRUSTEE OF
LEGION TRUST,

                        Defendants.
———————————————————————————X

OSTRAGER, J:

## Introduction

Pending before the Court are three motions: (1) plaintiffs' motion for leave to file a Second Amended Complaint (seq. 001); (2) defendant Wonderworks Investments Limited's ("Wonderworks") motion to dismiss for lack of jurisdiction and based on *res judicata* and failure to state a cause of action (seq. 005); and (3) defendant Sergey Leontiev's ("Leontiev") motion to dismiss on the ground that plaintiffs should have raised their claims in the prior federal action and for failure to state a claim (seq. 006). Leontiev has opposed plaintiffs' motion for leave to amend, and plaintiffs have opposed both motions to dismiss. Defendants Legion Trust and Southpac Trust International Inc. as Trustee of Legion Trust have not appeared in this action, despite service early this year (See NYSCEF Doc. Nos. 90-97). Defendant Leonid Leontiev, the father of Sergey and the Protector and a beneficiary of the Legion Trust, was served in Austria in August 2017, and has not appeared, although his counsel informed plaintiffs' counsel that he does not contest service (NYSCEF Doc. No. 187).

For the reasons stated below, the motion to amend is denied as moot and this action is dismissed in its entirety with prejudice.

With the exception of defendant Sergey Leontiev, a Russian national who fled to New York in August 2015 after the Russian authorities commenced a criminal investigation against him (State Amended Complaint "SAC", NYSCEF Doc. No. 8, ¶45), none of the parties involved in this action has any connection to New York. Even Sergey Leontiev claims to be domiciled in Cyprus. Plaintiff Avilon Automotive Group ("Avilon") is incorporated in Russia with its principal place of business in Moscow (SAC ¶12). Co-plaintiff Karen Avagumyan ("Avagumyan") is a Russian national who resides in Moscow (¶13). Defendant Wonderworks Investments Limited ("Wonderworks") is a foreign corporation incorporated and headquartered in Cyprus (¶15). Plaintiffs allege that Wonderworks is controlled by Leontiev and that Leontiev allegedly used it as a vehicle to transfer funds to an offshore account to hide money from creditors like Avilon and Avagumyan (¶¶ 35-39). Wonderworks and Leontiev have separate counsel in this action, and Wonderworks has separately moved to dismiss the case on the ground that it is not subject to personal jurisdiction in New York.

Defendant Legion Trust is a trust registered under the laws of the Cook Islands, a nation in the Pacific Ocean with political ties to New Zealand, into which Leontiev allegedly deposited funds (¶16). Defendant Southpac Trust International Inc. ("Southpac"), the trustee of Legion, is also incorporated in the Cook Islands (¶17). Defendant Leonid Leontiev, the father of Sergey, is a Russian national residing in Austria and the Protector and contingent beneficiary of the Legion Trust (¶19).

According to the Amended Complaint, defendant Sergey Leontiev ("Leontiev") and Alexander Zheleznyak ("Zheleznyak") were business partners (¶1). Leontiev was a majority shareholder in an umbrella entity called Financial Group <Life> ("FG Life"), and Zheleznyak a minority shareholder (¶2). Leontiev and Zheleznyak also owned a large Russian commercial bank called Probusinessbank (¶2).

Leontiev allegedly instructed Zheleznyak to raise funds for the partners' use in their business interests by creating various shell corporations, including but not limited to Ambika Investments Limited, Vennop Trading Limited, and ZAO Financial Group "Life" (¶25). The tens of millions of dollars that these two partners borrowed from investors pursuant to promissory notes and loan agreements, including from Avilon and from plaintiff Avagumyan, were loaned to third parties at higher interest rates for one-year terms that could be renewed from year to year at substantial profit to Leontiev and his companies (¶¶3, 4).

The Amended Complaint alleges that there was a meeting in Moscow on August 14, 2015 between Leontiev, Zheleznyak, and Varshavsky (¶43), the President of Avilon. At that meeting and at a subsequent meeting in London on August 21, 2015, Leontiev and Zheleznyak allegedly promised to repay Varshavsky and Avilon (¶¶47, 49). Later, on or about November 19, 2015, after Leontiev had fled Russia and was in New York, Leontiev allegedly transferred funds from several of his shell companies to Wonderworks (¶37) and later to the Legion Trust in the Cook Islands (¶¶ 61-62). Subsequently, in January 2016, during another meeting between Leontiev, Varshavsky and Avagumyan in New York, Leontiev allegedly changed his position and refused to repay Avilon and Avagumyan (¶57).

The Amended Complaint in this action asserts five causes action sounding in (i) unjust enrichment against defendant Leontiev, (ii) unjust enrichment against defendant Wonderworks, (iii) unjust enrichment against defendants Legion Trust and Southpac, (iv) unjust enrichment against defendant Leonid Leontiev, and (v) fraudulent conveyance against all defendants. The plaintiffs seek disgorgement of Leontiev's "ill-gotten gains and unjustly-obtained funds" and the ordering of the restitution of no less than $29.6 million to Avilon and $28 million to Avagumyan, plus pre- and post-judgment interest and attorneys' fees and costs (NYSCEF Doc. No. 8).

Avilon and Avagumyan commenced this action in November 2016 seeking to recover nearly $30M in debt due to Avilon and $28M due to Avagumyan (¶¶32, 33). This state court action was commenced notwithstanding the pendency of active litigation between Leontiev and Varshavsky in federal court concerning Leontiev's liability under the notes at issue. The federal litigation required, *inter alia*, 15 depositions, the production of tens of thousands of pages of documents, and expert affidavits on Russian, Cypriot, and English law, as well as extensive motion practice, briefing on veil-piercing and alter the ego doctrines of Cyprus and Russia, English law declarations regarding Leontiev's personal liability on the loans, and discovery disputes. During the pendency of the federal court litigation, Judge Rakoff, the federal judge presiding over the case, held numerous conferences, entertained multiple oral arguments and issued at least four written opinions aggregating dozens of pages. Varshavsky specifically alleged in the federal litigation that his collection efforts "were on behalf of his company, Avilon, as well as on behalf of 'certain' of the individual lenders." (NYSCEF Doc. No. 44 at p 17, citing Ans. III, ¶8).

As noted, several months before the November 2016 filing of this action, Leontiev filed a two-count complaint against Varshavsky in May 2016 in the U.S. District Court for the Southern District of New York (the "federal action"; see Affirmation of Marshall R. King in opposition to plaintiffs' motion to amend and exhibits attached thereto, NYSECEF Doc. Nos. 30-47). The parties to the federal action consented to a Case Management Plan in June 2016 which established various deadlines for discovery and trial, including the "*joinder of parties*" (emphasis added) by July 15, 2016, the end of discovery by October 28, 2016, and a jury trial by December 15, 2016 (*see* NYSCEF Doc. No. 34). Varshavsky admitted in his amended answer in the federal action that he had authority to negotiate, and did demand from Leontiev, repayment of the debts on behalf of Avilon and others, including, presumably, Avagumyan, whose father is a co-owner of Avilon (NYSCEF Doc. No. 33).

In count one of the complaint in the federal action, Leontiev sought a declaratory judgment that he "does not owe a debt or obligation to Mr. Varshavsky, or anyone acting in concert or participation with Mr. Varshavsky, relating to the Alleged Loans." (NYSCEF Doc. No. 31, ¶44). He also requested "injunctive relief preventing Mr. Varshavsky, or anyone action in concert or participation with Mr. Varshavsky, from taking any further steps to enforce these debts against Mr. Leontiev in his personal capacity, including, but not limited to, continuing threats, demands for payment, and pursuing litigation." (NYSCEF Doc. No. 31, ¶45). In count two, Leontiev sought damages for intentional infliction of emotional distress arising from Varshavsky's efforts to obtain repayment of the monies Varshavsky had invested in Leontiev's enterprises, and in his prayer for relief he requested $25M in punitive damages.

By Memorandum Order dated September 1, 2016, the federal court dismissed count two on the pleadings, concluding that "defendant's alleged statements, while distasteful, do not remotely meet" the legal standard for a claim of intentional infliction of emotional distress (NYSCEF Doc. No. 71, p 11). Leontiev then moved for summary judgment on the first, and only remaining, cause of action. By the first count of the complaint, Leontiev sought a declaratory judgment that he was not personally liable under any legal theory for the monies lent by Varshavsky, and an injunction preventing Varshavsky and "*anyone acting in concert or participation with*" Varshavsky, from seeking repayment from Leontiev.

In an 18-page decision dated December 4, 2016, the federal court noted that during oral argument on September 21, 2016 Leontiev had narrowed the scope of his requested relief to a declaration that he did not owe a debt to *Varshavsky alone* (*see* NYSCEF Doc. No. 44 at 2). The focus of the decision, however, was a detailed analysis of plaintiff Leontiev's motion for judgment on the pleadings on his claim for a declaratory judgment. The court summarized the facts and confirmed (at pp 3-4) Varshavsky's position as the president of the corporate lender, Avilon, with "authority to seek

-5-

repayment on its behalf." After much discovery and motion practice, reflected in the 74 docket entries, the case was ultimately resolved by a Final Judgment *on consent* dated March 1, 2017 (NYSCEF Doc. No. 46), which stated that:

> the Court hereby grants summary judgment in favor of the plaintiff and declares that Sergey Leontiev owes no debt or obligation to defendant Alexander Varshavsky in the defendant's personal capacity with respect to the loans and other debt instruments described in paragraph 32 of the complaint in this case ... The Clerk of the Court is directed to close the motion... and to close this case.

It is undisputed that this lawsuit arises out of investments made by a Russian company (Avilon) and a Russian national residing in Moscow (Avagumyan) to various foreign companies allegedly controlled by Leontiev with no connection to New York. It is alleged that the money was ultimately transferred to entities incorporated in Cyprus and the Cook Islands. The sole predicate for this case being venued in New York County is that Leontiev, a Russian national and domiciliary of Cyprus, allegedly orchestrated at least some of these alleged fraudulent transfers from New York where he currently resides. It is also undisputed that this state court action was commenced during the pendency of a federal action in which the federal court entertained extensive briefing on veil-piercing issues under Cyprian, English, and Russian law, in addition to extensive discovery disputes and motion practice, in relation to claims that are virtually identical to the claims now asserted in this state court action. When this enormous expenditure of judicial resources was on the verge of concluding, Leontiev and Varshavsky reached a consensual resolution, and the interests Varshavsky represents essentially transported the subject matter of the federal dispute to this forum.

## Analysis

Passing, in retrospect, the blatant misuse of the federal forum where a stunning amount of discovery was conducted and multiple motions were made, argued, and decided, the plaintiffs in this action oppose dismissal of their case, arguing that Avilon and Avagumyan could not have litigated their

claims in the federal action because diversity jurisdiction would have been destroyed under 28 U.S.C. § 1332(a).

Leontiev commenced the federal action based on diversity jurisdiction, pleading that he was a domiciliary of Cyprus and that Varshavsky was a citizen of New Jersey (Fed. Compl., ¶¶14-15). For this reason, plaintiffs Avilon and Avagumyan, both residents of Russia, assert that they initiated this state court action rather than proceed in the federal court because the federal court lacked subject matter jurisdiction over their claims in that the joinder would have destroyed diversity. Plaintiffs principally rely on *Universal Licensing Cop. v Paola del Lungo S.p.A.*, 293 F.3d 579, 580-81(2d Cir. 2002), which held:

> Diversity exists pursuant to 28 U.S.C. § 1332(a)(2) ("§ 1332(a)(2)") when an action is between "citizens of a State and citizens or subjects of a foreign state," or pursuant to § 1332(a)(3) when the action is between "citizens of different States and in which citizens or subjects of a foreign state are additional parties." *However, diversity does not exist within the meaning of these sections* where on both sides of the dispute the parties are all foreign entities, or *where on one side there are citizens and aliens and on the opposite side there are only aliens*. (Emphasis added).

This argument is flawed. Courts in the Southern District of New York permit joinder of a party that destroys diversity "when consistent with principles of fundamental fairness as appraised using the following factors: (1) any delay, as well as the reason for delay, in seeking joinder; (2) resulting prejudice to defendant; (3) risk of multiple litigation; and (4) plaintiff's motivation for the amendment seeking joinder" (*Nazario v Deere & Co.*, 295 F.Supp.2d 360 [S.D.N.Y. 2003] [Buchwald, J.], *citing Soto v Banitt*, 2000 WL 1206603 at *3 [S.D.N.Y. 2000] and *Gursky v Northwestern Mutual Life Ins. Co.*, 139 FRD 279, 282 [E.D.N.Y. 1991]). *See also, Ambac Assur. Corp. v EMC Mortg. Corp.*, 2011 WL 566776 [S.D.N.Y. 2011] [Berman, J.]) ("District Courts in this Circuit permit a joinder which destroys diversity 'when consistent with principals of fundamental fairness' and after consideration of such factors" as pronounced in *Nazario*). Indeed, the case management order in the federal action made

-7-

provision relating to the joinder of additional parties and reference was made in the federal action to adding additional parties to the case. Joinder, however, was not the only option available to plaintiffs in the federal action.

Plaintiffs in this action could have intervened in the federal action where, as here, the claims arise from a common nucleus of operative facts. Federal courts may exercise supplemental jurisdiction over third-party claims for which there is no independent jurisdictional basis. While 28 U.S.C. § 1367(b) deprives the court of supplemental jurisdiction over a proposed intervenor seeking to intervene as a *plaintiff* under Rule 24, "[i]f, on the other hand, a proposed intervenor seeks to intervene as a *defendant*, and his or her claims are viewed as counterclaims, nothing in Section 1367(b) prohibits the Court from exercising supplemental jurisdiction over the counterclaim" (*Mayer Rosen Equities LLC v Lincoln National Life Ins. Co.*, 2015 WL 9660015 [S.D.N.Y. 2015] [Fox, J.], citing *Colonial Penn Ins. Co., v American Centennial Ins.*, 1992 WL 350838 [S.D.N.Y. 1992] [Patterson, J.]) (emphasis added).

Plaintiffs in this action could have sought intervention as defendants in the federal action, filed counterclaims, and litigated this dispute efficiently and fully in an action in which fifteen depositions were being conducted, 45,000 pages of documents were produced, and extensive briefing on veil-piercing and alter ego theories were litigated. Plaintiffs had more than ample time to intervene in the federal action during extensive discovery concerning the issues now raised in this case.

In all events, plaintiffs' opposition papers mistakenly conflate joinder and intervention analyses to avoid the simple fact that plaintiffs could have elected to intervene and assert the claims they make here as counterclaims in the federal action. Indeed, rather than having Varshavsky assert their claims as affirmative defenses, plaintiffs could have sought to use the federal forum for purposes of resolving all issues arising out of the same nucleus of operative facts.

At a minimum, plaintiffs could have assigned their claims to Varshavsky. Since plaintiffs could have intervened to assert their claims as counterclaims under the federal court's supplemental jurisdiction, as explained above, an assignment to Varshavsky would not have "manufactured" federal jurisdiction in the manner Congress intended to prevent when it enacted 28 U.S.C. § 1359. *See Kramer v Caribbean Mills, Inc.*, 394 U.S. 823, 829 (1969). Varshavsky was already properly before the federal court purporting to have just such an assignment for months during a no holds barred litigation, prior to reversing course at the summary judgment stage and *consenting* to summary judgment in favor of Leontiev. Since plaintiffs had to be fully aware of Varshavsky's litigation position in the federal action and his assertion that he had authority to act on their behalf, plaintiffs cannot now, while being represented by the same eminent counsel as represented Varshavsky in the federal action, claim that the assignment Varshavsky purported to have was legally impermissible. Nor is it reasonable for plaintiffs to have failed to formally assign their claims to Varshavsky and now seek a do-over of the federal case in this Court.

Plaintiffs simply cannot have a second bite at the apple particularly where, as here, other than defendant Leontiev, no party and no claim has any purposeful nexus with New York County. This Court will not continue to countenance the misallocation of judicial resources plaintiffs seek by transporting their Russia-originated dispute from federal court to state court. Moreover, the Court lacks personal jurisdiction over Wonderworks and undoubtedly also lacks personal jurisdiction over any of the defendants other than, perhaps, Leontiev, the very party who was adverse to Varshavsky in the federal action.

For all the foregoing reasons, it is hereby

ORDERED that this action is dismissed in its entirety with prejudice, and the Clerk is directed to enter judgment accordingly.

| 10/5/2017 | | *Barry Ostrager* |
|---|---|---|
| DATE | | J.S.C. |
| | | **BARRY R. OSTRAGER** |
| | | JSC |

| CHECK ONE: | X | CASE DISPOSED | | | | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|---|
| | | GRANTED | | DENIED | | GRANTED IN PART | X | OTHER |
| APPLICATION: | | SETTLE ORDER | | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | DO NOT POST | | | | FIDUCIARY APPOINTMENT | | REFERENCE |