# EXHIBIT 18

DIA

||||||||||||||||||||||||||||||||||    Decree on Prosecution

Moscow                                                    October 13, 2016

Investigator for Particularly Important Cases of the Main Investigations Department of the Investigative Committee of the Russian Federation Major of Justice D.Kh. Khuramshin, having studied the materials of criminal case No. 11602007703000015,

## FOUND:

Not later than in September 2014 (the exact date was not identified), in Moscow, Probusinessbank's President Leontiev Sergey Leonidovich together with Probusinessbank's Chairman of the Management Board A.D. Zheleznyak created an organized group in order to embezzle (appropriate) the Bank's funds in an especially large amount.

OAO AKB Probusinessbank (a commercial bank and a publicly held company incorporated under Russian law) (Probusinessbank, hereinafter the Bank) with registered office at 119285, Moscow, Pudovkina st., 3, actual address at Moscow, Petrovka, 18/2 bld, 1, Primary State Registration Number (OGRN) 1027700508978, was incorporated and registered in the Book for State Registration (KGR) of the Bank of Russia on 07.07.1993, correspondent account No. 30101810600000000986 opened with the Main Branch of the Bank of Russia for the Central Federal District of Moscow (hereinafter, the MB of the BoR for the Central Federal District of Moscow), BIK 044525986, Taxpayer Identification Number (INN) 7729086087, conducted its activity based on general banking license No. 2412 dd. 13.08.2012.

The Charter of said credit institution approved by the General Meeting on 28.06.2013 states that the Chairman of the Management Board is in charge of the Bank's operating activity, acts on behalf of the Bank without powers of attorney, enters into transactions on behalf of the Bank, disposes of the Bank's property and assets, issues and signs PoA's on behalf of the Bank, etc. at its own discretion in accordance with current laws and the Charter. Therefore, A.D. Zheleznyak was the person performing managerial functions in Probusinessbank and having organizational and management as well as administrative and economic functions. Thus, the Bank's property and assets were entrusted to him.

S.L. Leontiev and A.D. Zheleznyak owned controlling interest of 52,9467% in Probusinessbank. This means that they, as individuals, had the right to perform strategic and operative management of Probusinessbank and other affiliated legal entities,

2

which were a part of the financial group, and, therefore, became leaders of the organized group.

From September 2014 to August 2015, the organized group under their overall leadership included Ya.V. Alekseev, V.V. Kazantsev, A.V. Lomov, N.V. Alekseev, S.V. Kalachev, M.M. Krylova, and other unidentified persons, each playing their own role in the group.

In order to achieve the stated goal, members of the organized group led by S.L. Leontiev and A.D. Zheleznyak developed a scheme to embezzle the funds and allocated responsibilities among the parties to the crime (criminal participants):

-S.L. Leontiev was a principal shareholder and the President (since 28.05.1996) of Probusinessbank. He performed the strategic management and was supposed together with A.D. Zheleznyak to determine the amount of funds to be embezzled, specify the method of embezzlement, exercise the overall control over the group members when committing the crime, and use the embezzled funds at their own discretion, including for the benefit of members outside the Russian Federation;

- A.D. Zheleznyak was a principal shareholder and the Chairman of the Management Board of Probusinessbank. He had powers to manage the Bank's operating activity, to enter into transaction on behalf of the Bank, dispose of the Bank's assets and property. He and S.L. Leontiev were supposed to determine the amount of funds to be embezzled, specify the method of embezzlement, issue PoAs to their intermediaries in order for the groups members to sign credit contracts and other relevant documents. He and S.L. Leontiev were also supposed to exercise overall control over the group's actions when committing the crime and use the embezzled funds at their discretion.

- Ya.V. Alekseev was the vice-president for corporate finances. His task was, pursuant to Leontiev's and Zheleznyak's plan, (i) to choose legal entities to use them in the embezzlement scheme, i.e. to provide loans to them, (ii) to transfer the funds to the companies controlled by the group members in order to accumulate them on accounts of OOO Kollektorskoe Agentstvo Life (Life Collection Agency) headed by S.V. Kalachev, a member of the organized group, and Vermenda Holdings Limited (Cyprus) controlled by the members of the organized group and in order to transfer some monetary funds to the Cypriot company's account opened with a Latvian

3

bank, (iii) to choose intermediaries (fiduciaries) that were supposed to prepare documents and give a veneer of legality to the embezzlement scheme.

- V.V. Kazantsev, A.V. Lomov, N.V. Alekseev held managerial positions in the Bank. Bank's management authorized them through PoAs to enter into credit contracts and dispose of the Bank's funds, that is to perform managerial functions of administrative and economic nature related to disposal of the Bank's funds entrusted to them. Their task was, following the instructions of the group leaders and using their official position, to sign on behalf of the Bank knowingly unenforceable Medium-Term Lending Contract with IvSpetsGarant, Engineering-Royalty, Vostok-Cargo-Plus, Tsentr Torgovli, NewHowTrade controlled by the group members;

- M.M. Krylova was the head of the shareholders and subsidiaries cooperation division. She was in charge of a purposefully created entity — OOO Bukhgalterskiy tsentr Balance (Balance Accounting Centre) that prepared (i) documents that supported settlements (payments) between the companies used by the group members to remit funds, (ii) accounting and tax reporting documents to submit them to Russian regulatory authorities, as well as managed accounts of the controlled entities.

- S.V. Kalachev was the head of the division for non-performing loans and the CEO of Life Collection Agency. He, having an advance knowledge about the fact that the group members guided by S.L. Leontiev and A.D. Zheleznyak were embezzling the Bank's monies, undertook to conceal the funds by making available an account of Life Collection Agency for accumulation of a portion of the embezzled funds, which were then disguised as payments under credit/repayment contracts and transferred to the account of Vermenda Holdings Limited, a Cyprus-based company controlled by the group members.

- other unidentified persons who were supposed, at the instruction of Ya.V. Alekseev, to prepare documents supporting the provision of loans to the controlled entities and the further transfer of monies to Vermenda Holdings Limited.

This organized group, members of which joined together in advance to commit the crimes, was sustainable due to the fact that its members had long known each other and

4

had permanent connection between each other. This was also due to their working relations, commonality of the mercenary interest, strict segregation of duties and functions both in anticipation of the embezzlement and when realizing their criminal intent, and thoroughly developed embezzlement scheme.

In addition, the group members engaged CEO of IvSpetsGarant I.P. Polikarpov, CEO of Engineering-Royalty A.V. Simakov, CEO of Vostok-Cargo-Plus A.V. Danukin, CEO of Tsentr Torgovli L.B. Shpagina, CEO of NewHowTrade O.V. Kravchenko, as well as other persons who controlled Probusiness-Development, Personnel+, ELSO, Alliance, Iston, ProgmaTrade, PC-Technologies, Eskada Financial Centre, Sunrise, Vermenda Holdings Limited, and other unidentified persons, who were acting as accessories to the crime.

The MB of the BoR for the Central Federal District of Moscow and the Bank of Russia issued multiple instructions to the Bank requiring to remedy violations of banking laws and Central Bank's banking regulations and policies and stating that banks may have they license immediately revoked if they violate laws on multiple occasions. In September 2014 (the exact time was not identified) in Moscow, the group members guided by S.L. Leontiev and A.D. Zheleznyak, having concerns that the Bank's license may be revoked, developed an action plan in order to embezzle the Bank's funds in an especially large amount via unlawful appropriation, acting out of mercenary interest and with the purpose of personal enrichment.

By that time, Life Financial Group was created on the basis of the Bank. The group included OAO VUZ-Bank, OAO KB Poidem!, AO AKB Express-Volga, ZAO Natial Savings Bank, OAO Gazenergobank, OAO KB Solidarnost, Life Collection Agency, Life Factoring Company, OOO Probusiness-Development (a real estate development company), Poidem Holdings Limited (a Cyprus-based company), and other entities.

In total, Life Financial Group, of which the Bank was the parent (umbrella) organization, had over 800 branches in 75 regions of the Russian Federation, over 4 000 000 individuals and 200 000 legal entities as its clients, monetary funds, securities, and other assets that were entrusted to Life Financial Group and the Bank.

Ya.V. Alekseev, using human resources of the Bank and acting under the direction of S.L. Leontiev and

5

A.D. Zheleznyak, used previously established legal entities — so called 'shareholders' companies' — which did not engage in any real economic activity and were fully controlled by the members of the organized group. The Bank's employees and other persons had been appointed as directors of those entities for a nominal remuneration of RUB 10,000–20,000 per month. The legal entities included: Engineering-Royalty, Elso, Personnel +, Alliance, Iston, PC-Technologies, Sunrise.

Members of the organized group also used legal entities affiliated to the Bank and its managers, that is IvSpetsGarant, Probusiness-Development, Life Collection Agency, Vostok-Cargo-Plus, when realizing their criminal intent and in order to embezzle the funds.

Transactions accounts of these entities were opened with Probusinessbank, managed by the Bank's employees and Balance Accounting Centre, and located at: 76 Butyrskaya bld. 1, Moscow.

The general idea of the crime was committing wilful acts in order to provide knowingly irrecoverable (non-performing), unsecured by pledge loans in especially large amounts to the controlled companies, transferring the credit funds to the loan and settlement (transaction) accounts of the said companies, and then transferring the funds disguised as payments in sham transactions in order to cover up the committed crime to the accounts of the controlled legal entities.

Then, the embezzled funds in RUB had been fully converted in USD and transferred to the settlement (transaction) account of Vermenda Holdings Limited, an entity controlled by the members of the organized group located at: Griva Digeni, P.C. 3101, Limassol, Cyprus. The account was opened with Trasta Komercbanka Riga, a non-resident credit institution (Latvia).

In order to give a veneer of legality to the transactions, provision of loans was documented and was legal in its nature. In fact, however, the documents contained false information, and parties to the crime committed their actions in order to realize their criminal intent, that is to embezzle the Bank's funds in an especially large amount.

When entering into medium-term lending contracts, parties to such contracts were supposed to act in accordance with transactions rules and pursuant to Article 10 of the Civil Code of the Russian Federation. Reasonable actions and good faith of the parties participating in civil-law relations

6

shall in this case be presumed. Thus, persons who signed the medium-term lending contracts with Probusinessbank's funds as the subject matter were obliged to act in good faith and do not undertake any actions related to fraud, including misstatements about the intended use of loans.

Therefore, S.L. Leontiev and A.D. Zheleznyak, who were in charge of the organized group, and Ya.V. Alekseev, V.V. Kazantsev, A.V. Lomov, N.V. Alekseev, S.V. Kalachev, M.M. Krylova, and other members of the organized group committed their actions in order to realize their joint intent to seize the funds without any compensation and to cause damage to the other person (Probusinessbank) in violation of Article 10 of the Civil Code (Limits of Exercise of Civil-law Rights). This Article prohibits any actions of individuals and legal entities committed only in order to inflict harm on another person and abuses of rights in other forms. Therefore, the stated seizure of funds is illegal.

Acting within their roles in the organized group, V.V. Kazantsev, Lomov A.V., and V.N. Alekseev entered into medium-term lending contracts in order to embezzle the funds and give a veneer of civil-law relations with the purpose to follow the illegal instructions received from the leaders of the organized group, that is S.L. Leontiev and A.D. Zheleznyak. Thus, they wilfully violated Article 1 of Federal Law No. 395-1 dd. 02.12.1990 (On Banks and Banking Activity). Under this Law, a credit organisation shall invest the funds attracted from individuals and legal entities on its behalf and at its own expense on conditions of repayment, interest payment, and maturity.

This allowed the group members, acting on behalf of the Bank but against its interests, to illegally, without compensation, irrecoverably convert the funds to their own use by transferring the title to the shell companies.

Before 15.09.2014 in Moscow, a member of the organized group, vice-president for corporate business development V.V. Kazantsev, acting on behalf of the Bank and by virtue of PoA No. 610/1 dd. 16.07.2014 that was issued by one of the leaders of the organized group, that is the Chairman of the Management Board (A.D. Zheleznyak), under which V.V. Kazantsev was granted powers to enter into credit contracts and dispose of the Bank's funds, that is to perform managerial functions of administrative and economic nature related to disposal of the Bank's funds entrusted to him, following the instructions of the group's leaders, that is A.D. Zheleznyak and S.L. Leontiev, acting wilfully and in cooperation with other members of the organized group, signed on behalf of the Bank knowingly unenforceable Medium-Term Lending Contract No. 211-810/14ю dd. 15.09.2014

7

with IvSpetsGarant represented by the CEO I.P. Polikarpov. Under the Contract, the Bank undertook to grant a loan to the company through the lines of credit with maximum credit limit of RUB 500,000,000.

At the same time, when aiding the crime by providing information and eliminating obstacles that might prevent the crime, I.P. Polikarpov understood that the company headed by him did not engage in any real economic activity, the purpose of granting the loan was knowingly false, and receiving the loan represented a method of embezzlement of the Bank's funds, and signed, out of mercenary interest, the above stated Contract.

On 15.09.2014, in furtherance of the Contract and based on the application filed by (on behalf of) I.P. Polikarpov, RUB 280,000,000 was transferred via payment order No. 1018062751 dd. 15.09.2014 from Bank's correspondent account No. 30101810600000000986 opened in the Operations Department of MBBR for CFD in Moscow located at: Moscow, 2 Balchug, to Vostok-Kargo-Plus settlement (transactions) account No. 45207810600000127604 opened with the Bank located at Moscow, Petrovka st., 18/2, bld. 1.

At the same day, after the funds had been credited to the account of Vostok-Cargo-Plus, I.P. Polikarpov, continuing participating in the crime, aiding the crime by providing information and eliminating obstacles that might prevent the crime, transferred RUB 280,000,000 in several payments:

- RUB 24,157,808.21 via payment orders No. 751, 752, 763, 746 dd. 15.09.2014 to Personell+'s transaction account No. 40702810300110117621 opened with the Bank;

- RUB 34,471,698.63 via payment orders No. 747, 748, 749, 750, 757, 758, 759, 760, 761, 762 dd. 15.09.2014 to transaction account No. 40702810300110117621 (opened with the Bank) of Life Collection Agency headed by S.V. Kalachev, a member of the group;

- RUB 222,016,835.04 via payment orders No. 765, 766, dd. 15.09.2014 to Probusiness-Development's transaction account No. 40702810300000021377 opened with the same Bank.

At the same day, after the funds had been credited to the account of Probusiness-Development, RUB 221,370,994.73 embezzled from the Bank was transferred via payment orders No. 857, 861, 853, 856, 852 dd. 15.09.2014

8

to Elso's transaction account No. 40702810800020115239 opened with the Bank.

Then, on 16.09.2014, RUB 221,000,000 was transferred via payment order No. 321 dd. 16.09.2014 to Life Collection Agency's account No. 40702810300110117621 opened with the Bank.

On 16.09.2014, after the Bank's funds had been transferred to Personnel+'s account, RUB 24,157,808.21 embezzled from the Bank was transferred, as a portion of other funds of RUB 499,500,000, via payment order No. 133 dd. 16.09.2014 to Life Collection Agency's account No. 40702810300110117621 opened with the Bank.

Therefore, monetary funds in the amount of RUB 280,000,000 embezzled from the Bank and disguised as knowingly irrecoverable (non-performing) loans were accumulated on the account of Life Collection Agency controlled by the group members and headed by S.V. Kalachev, a party to the crime.

Then, on 16.09.2014, that is on that same day after the embezzled funds had been credited to Life Collection Agency's transaction account, CEO of this company S.V. Kalachev, being aware of the criminal nature of his acts, continuing to play his role in the group, transferred RUB 608,000,000 (including RUB 280,000,000 embezzled from the Bank) via payment order No. 1563 dd. 16.09.2014 to account No. 40807810900010030608 (opened with the Bank) of Vermenda Holdings Limited controlled by the group members.

Then, on 18.09.2014, after RUB 280,000,000 embezzled from the Bank had been transferred to Vermenda Holdings Limited's account, this amount, as a portion of other funds of RUB 578,655,792, was converted into USD (USD 15,080,000) and simultaneously credited to Vermenda's account No. 40807840200010030608.

At that same day, the converted amount was transferred, as a portion of other funds of USD 13,000,000, from Vermenda's foreign currency account No. 40807840200010030608 to its foreign currency account No. LV63KBRB1111215921001 opened with Trasta Komercbanka Riga (Latvia) located at: Palasta iela 1, Riga LV-1050, Latvija.

9

Therefore, the members of the organized group led by S.L. Leontiev and A.D. Zheleznyak appropriated RUB 280,000,000 of the Bank's funds by providing a loan to IvSpetsGarant in September 2014. Thus, the credit organization sustained damage in the amount of RUB 280,000,000.

In addition, prior to 09.04.2015 in Moscow, a member of the group — head of the department for corporate finances N.V. Alekseev, continuing to realize the criminal intent to embezzle the Bank's monies, acting on behalf of the Bank by virtue of PoA 120/2 dd. 17.02.2015 that was issued by one of the leaders of the organized group, that is the Chairman of the Management Board (A.D. Zheleznyak), under which N.V. Alekseev received authorities to enter into credit contracts and dispose of the Bank's funds, that is to perform managerial functions of administrative and economic nature related to disposal of the Bank's funds entrusted to him, carrying out instructions of the group's leaders, that is S.L. Leontiev and A.D. Zheleznyak, acting wilfully and in cooperation with other members of the organized group, signed on behalf of the Bank knowingly unenforceable Medium-Term Lending Contract No.044-810/15ro dd. 09.04.2015 with Engineering-Royalty controlled by the group members and represented by CEO A.V. Simakov. Under the Contract, the Bank undertook to grant a loan to the company through the lines of credit with maximum credit limit of RUB 1,000,000,000.

At the same time, when aiding the crime by providing information and eliminating obstacles that might prevent the crime, A.V. Simakov understood that the company headed by him did not engage in any real economic activity, the purpose of granting the loan was knowingly false, and receiving the loan represented a method of embezzlement of the Bank's funds, and signed, out of mercenary interest, the above stated Contract No. 044-810/15ro.

On 09.04.2015, in furtherance of the Contract and based on the application filed by (on behalf of) A.V. Simakov, RUB 600,000,000 was transferred via payment order No. 1019700947 dd. 09.04.2015 from Bank's correspondent account No. 30101810600000000986 opened in the Operations Department of MBBR for CFD in Moscow located at: Moscow, 2 Balchug, to Engineering-Royalty's transactions account No. 45204810400000135572 opened with the Bank located at: Moscow, 18/2 Petrovka, bld. 1.

At the same day, after the funds had been credited to Engineering-Royalty's account

No. 40702810900110035572, A.V. Danukin, continuing participating in the crime, aiding the crime by providing information and eliminating obstacles that might prevent the crime, transferred RUB 600,000,000 via payment order No. 22 dd. 09.04.2015 to Alliance's account No. 40702810500000113328 opened with the Bank.

On 09.04.2015, that is on the next day, after the Bank's funds had been transferred to Alliance's account, RUB 600,000,000 was transferred via payment order No. 33 dd. 09.04.2015 to Personnel+'s account No. 40728103000000102610 opened with the Bank.

Furthermore, on 09.04.2015, after the Bank's funds had been transferred to Personnel+'s account, RUB 600,000,000 embezzled from the Bank was transferred via payment order No. 144 dd. 09.04.2015 to Vermenda Holdings Limited's account No. 40807810900010030608 opened with the Bank.

Then, on 09.04.2015 and 13.04.2015, after RUB 600,000,000 embezzled from the Bank had been transferred to Vermenda Holdings Limited's account, this amount, as a portion of other funds of RUB 600,069,891.60, was converted into USD (USD 11,182,000) and simultaneously credited to Vermenda's account No. 40807840000010030608.

The converted amount was transferred, as a portion of other funds of USD 12,110,000, from Vermenda's foreign currency account No. 40807840200010030608 to its foreign currency account No. LV63KBRB1111215921001 opened with Trasta Komercbanka Riga (Latvia) located at: Palasta iela 1, Riga LV-1050, Latvija.

Therefore, the group members led by S.L. Leontiev and A.D. Zheleznyak appropriated RUB 600,000,000 of the Bank's funds by providing a loan to Engineering-Royalty in April 2015. Thus, the credit organization sustained damage in the amount of RUB 600,000,000.

In addition, prior to 15.05.2015 in Moscow, a member of the group — head of the department for corporate finances N.V. Alekseev, continuing to realize the criminal intent to embezzle the Bank's monies,

11

acting on behalf of the Bank by virtue of PoA 120/2 dd. 17.02.2015 that was issued by one of the leaders of the organized group, that is the Chairman of the Management Board (A.D. Zheleznyak), based on which N.V. Alekseev was granted powers to enter into credit contracts and dispose of the Bank's funds, that is to perform managerial functions of administrative and economic nature related to disposal of the Bank's funds entrusted to him, carrying out instructions of the group's leaders, that is S.L. Leontiev and A.D. Zheleznyak, acting wilfully and in cooperation with other members of the organized group, signed on behalf of the Bank knowingly unenforceable Medium-Term Lending Contract No. 071-810/15ю dd. 15.05.2015 Vostok-Cargo-Plus controlled by the members of the group and represented by CEO A.V. Danukin. Under the Contract, the Bank undertook to grant a knowingly irrecoverable (non-performing) loan to the company through the lines of credit with maximum credit limit of RUB 500,000,000.

At the same time, when aiding the crime by providing information and eliminating obstacles that might prevent the crime, A.V. Danukin understood that the company headed by him did not engage in any real economic activity, the loan purpose was knowingly false, and receiving the loan represented a method of embezzlement of the Bank's funds, and signed, out of mercenary interest, the above stated Contract No. 071-810/15ю on behalf of the company.

On 18.05.2015 and 19.05.2015, in furtherance of the Contract and based on the application filed by (on behalf of) A.V. Danukin, RUB 365,000,000 was transferred via payment orders No. 1019906802 dd. 18.05.2015, No. 1019915598 dd. 19.05.2015 from Bank's correspondent account No. 30101810600000000986 opened in the Operations Department of MBBR for CFD in Moscow located at: Moscow, 2 Balchug, to Vostok-Kargo-Plus's account No. 45205810500100107477 opened with the Bank located at Moscow, 18/2 Petrovka, bld. 1.

On 18.05.2015 and 19.05.2015, after the funds had been credited to Vostok-Kargo-Plus's account, A.V. Danukin, continuing participating in the crime, aiding the crime by providing information and eliminating obstacles that might prevent the crime, transferred RUB 365,000,000 via payment orders No. 1054 dd. 18.05.2015 and No. 1057 dd. 19.05.2015 to Iston's account No. 40702810900000100889 opened with the Bank.

On 18.05.2015 and 19.05.2015, after the Bank's funds had been credited to Iston's account, RUB 364,700,000 embezzled from the Bank was transferred via payment orders No. 39, 40 dd. 18.05.2015 and 19.05.2015

12

to Elso's account No. 40702810800020115239 opened with the Bank.

On 18.05.2015 and 19.05.2015, after the Bank's funds had been transferred to Elso's account, a portion of funds embezzled from the Bank of RUB 347,000,000 was transferred via payment orders No. 199 dd. 18.05.2015 and No. 120 dd. 19.05.2015 to Vermenda Holdings Limited's account No. 40807810900010030608 opened with the Bank.

Then, on 18.05.2015 and 19.05.2015, after RUB 347,000,000 embezzled from the Bank had been transferred to Vermenda Holdings Limited's account, RUB 346,958,345 was converted into USD (USD 7,014,000) and simultaneously credited to Vermenda's foreign currency account No. 40807840200010030608.

The converted amount was transferred, as a portion of other funds of USD 7,600,000, from Vermenda's foreign currency account No. 40807840200010030608 to its foreign currency account
No. LV63KBRB1111215921001 opened with Trasta Komercbanka Riga located at: Palasta iela 1, Riga LV-1050, Latvija.

Therefore, the group members led by S.L. Leontiev and A.D. Zheleznyak appropriated RUB 365,000,000 of the Bank's funds by providing a loan to Vostok-Cargo-Plus in May 2015. Thus, the credit organization sustained damage in the amount of RUB 365,000,000.

Subsequently, on 06.08.2015, i.e. on the day when the Bank's banking license was revoked, accomplices to the crime, that is the vice-president for finances (Deputy Chairman of the Management Board A.V. Lomov) and CEO of Vostok-Cargo-Plus A.V. Danukin, entered into Accord and Satisfaction Agreement dd. 06.08.2015 in order to cover up the embezzlement in an especially large amount and give a veneer of legality to the sham transactions. Under Accord and Satisfaction Agreement, obligations of Vostok-Cargo-Plus under Medium-Term Lending Contract No. 071-810/15to dd. 15.05.2015 were terminated. Iston, an entity controlled by the parties to the crime which was not engaged in any real economic activity, became the new obligor; claims (to repay the money) to Iston were accepted by the Bank.

In addition, prior to 22.06.2015 in Moscow,

13

a member of the group, that is the vice-president for finances (Deputy Chairman of the Management Board A.V. Lomov), continuing to realize the criminal intent to embezzle the Bank's monies, acting on behalf of the Bank by virtue of PoA 92/5 dd. 09.02.2015 that was issued by one of the leaders of the organized group, that is the Chairman of the Management Board (A.D. Zheleznyak), under which A.V. Lomov was granted powers to enter into credit contracts and dispose of the Bank's funds, that is to perform managerial functions of administrative and economic nature related to disposal of the Bank's funds entrusted to him, following instructions of the group's leaders, that is S.L. Leontiev and A.D. Zheleznyak, acting wilfully and in cooperation with other members of the organized group, signed on behalf of the Bank knowingly unenforceable Medium-Term Lending Contract No. 099-810/15ю dd. 22.06.2015 with Tsentr Torgovli controlled by the group members and represented by CEO L.B. Shpagina. Under the Contract, the Bank undertook to grant a knowingly irrecoverable (non-performing) loan to the company through the lines of credit with maximum credit limit of RUB 1,000,000,000.

At the same time, when aiding the crime by providing information and eliminating obstacles that might prevent the crime, L.B. Shpagina understood that the company headed by her did not engage in any real economic activity, the loan purpose was knowingly false, and receiving the loan represented a method of embezzlement of the Bank's funds, and signed, out of mercenary interest, the above stated Contract 22.06.2015 No. 099-810/15ю.

On 23.06.2015, in furtherance of the Contract and based on the application filed by (on behalf of) L.B. Shpagina, RUB 698,200,000 was transferred via payment orders No. 1020125374 dd. 23.06.2015 from Bank's correspondent account No. 30101810600000000986 opened in the Operations Department of MBBR for CFD in Moscow located at: Moscow, 2 Balchug, to Tsentr Torgovli's transaction account No. 45205810300200007965 opened with the Bank located at Moscow, 18/2 Petrovka, bld. 1.

On 23.06.2015, after the funds had been credited to Tsentr Torgovli's account No. 45205810300200007965 opened with the Bank, L.B. Shpagina, continuing participating in the crime, aiding the crime by providing information and eliminating obstacles that might prevent the crime, transferred RUB 698,200,000 via payment order No. 94 dd. 23.06.2015 to ProgmaTrade's transaction account No. 40702810000000207844 opened with the Bank.

On 23.06.2015, after the embezzled funds had been credited

14

to ProgmaTrade's account, RUB 698,200,000 was transferred via payment order No. 85 dd. 23.06.2015 to PC-Technologies's transaction account No. 40702810200110035573 opened with the Bank.

Then, on 23.06.2015, that is on that same day, after the Bank's funds had been transferred to PC-Technologies's account, RUB 698,200,000 was transferred via payment order No. 124 dd. 23.06.2015 to account No. 40702810300110117621 of Life Collection Agency (headed by an accomplice to the crime — S.V. Kalachev) opened with the Bank.

On 24.06.2015, after the embezzled funds had been credited to Life Collection Agency's transaction account, CEO of this company S.V. Kalachev, continuing to play his role in the group, transferred the embezzled funds (among other funds of RUB 700,000,000) via payment orders No. 11114, 1115, 1116 dd. 24.06.2015 to account No. 40807810900010030608 (opened with the Bank) of Vermenda Holdings Limited controlled by the group members.

Then, on 25.06.2015, after RUB 698,200,000 embezzled from the Bank had been transferred to Vermenda Holdings Limited's account, this amount, as a portion of other funds of RUB 702,969,800, was converted into USD (USD 13,000,000) and simultaneously credited to Vermenda's account No. 40807840200010030608.

The converted amount was transferred, as a portion of other funds of USD 13,000,000, from Vermenda's foreign currency account No. 40807840200010030608 to its foreign currency account No. LV63KBRJB1111215921001 opened with Trasta Komercbanka Riga (Latvia) located at: Palasta iela 1, Riga LV-1050, Latvija.

On 03.08.2015, accomplices to the crime –– head of the department for corporate finances N.V. Alekseev and CEO of Tsentr Torgovli L.B. Shpagina — entered into Accord and Satisfaction Agreement dd. 03.08.2015 in order to cover up the embezzlement in an especially large amount and give a veneer of legality to the sham transactions. Under Accord and Satisfaction Agreement, obligations of Tsentr Torgovli under Medium-Term Lending Contract No. 099-810/15ю dd. were terminated. PC-Technologies, an entity

15

controlled by the parties to the crime which was not engaged in any real economic activity, became the new obligor; claims (to repay the money) to PC-Technologies were accepted by the Bank.

Therefore, the group members led by S.L. Leontiev and A.D. Zheleznyak appropriated RUB 698,200,000 of the Bank's funds by providing a loan to Tsentr Torgovli in June 2015. Thus, the credit organization sustained damage in the amount of RUB 698,200,000.

In addition, prior to 28.07.2015 in Moscow, a member of the group — head of the department for corporate finances N.V. Alekseev, continuing to realize the criminal intent to embezzle the Bank's monies, acting on behalf of the Bank by virtue of PoA 120/2 dd. 17.02.2015 that was issued by one of the leaders of the organized group, that is the Chairman of the Management Board (A.D. Zheleznyak), under which N.V. Alekseev was granted powers to enter into credit contracts and dispose of the Bank's funds, that is to perform managerial functions of administrative and economic nature related to disposal of the Bank's funds entrusted to him, following the instructions of the group's leaders, that is S.L. Leontiev and A.D. Zheleznyak, acting wilfully and in cooperation with other members of the organized group, signed on behalf of the Bank knowingly unenforceable (irrecoverable) Medium-Term Lending Contract No.137-810/15ю dd. 28.07.2015 with NewHowTrade controlled by the group members and represented by CEO O.V. Kravchenko. Under the Contract, the Bank undertook to grant a loan to the company through the lines of credit with maximum credit limit of RUB 1,000,000,000.

At the same time, when aiding the crime by providing information and eliminating obstacles that might prevent the crime, O.V. Kravchenko understood that the company headed by her did not engage in any real economic activity, the loan purpose was knowingly false, and receiving the loan represented a method of embezzlement of the Bank's funds, and signed, out of mercenary interest, the above stated Contract dd. No. 137-810/15ю.

On 28.07.2015, in furtherance of the Contract and based on the application filed by (on behalf of) O.V. Kravchenko, RUB 499,995,968 was transferred via payment order No. 1020346334 dd. 28.07.2015 from Bank's correspondent account No. 30101810600000000986 opened in the Operations Department of MBBR for CFD in Moscow located at: Moscow, 2 Balchug, to

to NewHowTrade's account No. 45205810900200007734 opened with the Bank located at Moscow, 18/2 Petrovka, bld. 1.

On 28.07.2015, after the funds had been credited to NewHowTrade's account, O.V. Kravchenko, continuing participating in the crime, aiding the crime by providing information and eliminating obstacles that might prevent the crime, transferred RUB 499,995,968 embezzled from the Bank via payment order No. 9 dd. 28.07.2015 to Eskada's account No. 40702810800000210934 opened with the Bank.

On 28.07.2015, after the embezzled funds had been transferred to Eskada's account, RUB 499,995,968 was transferred via payment order No. 35 dd. 28.07.2015 to Sunrise's account No. 40702810500070015537 opened with the Bank.

On 29.07.2015, that is on the next day, after the Bank's funds had been transferred to Sunrise's account, RUB 498,871,028.03 was transferred via payment orders No. 44, 45, 46 47, 48, 49, 50, 51, 52, 53, 54, 55, 56 dd. 29.07.2015 to account No. 40702810300110117621 of Life Collection Agency controlled by an accomplice to the crime S.V. Kalachev.

On 29.07.2015 and 30.07.2015, after the embezzled funds had been credited to Life Collection Agency's transaction account, CEO of this company S.V. Kalachev, continuing to play his role in the group, transferred RUB 600,000,000, including RUB 499,995,968 embezzled from the Bank, via payment orders No. 1372 dd. 29.07.2015, No. 1373 dd. 29.07.2015, No. 1374 dd. 29.07.2015, No. 1426 dd. 30.07.2015 to account No. 40807810900010030608 (opened with the Bank) of Vermenda Holdings Limited controlled by the group members.

Then, on 30.07.2015, after the funds had been transferred to Vermenda Holdings Limited's account, this amount, as a portion of other funds of RUB 598,561,497.50, was converted into USD (USD 10,015,000) and simultaneously credited to Vermenda's account No. 40807840200010030608.

The converted amount of USD 10,000,000 was transferred from Vermenda's foreign currency account No. 40807840200010030608 to its foreign currency account

17

No. LV63KBRJB1111215921001 opened with Trasta Komercbanka Riga located at: Palasta iela 1, Riga LV-1050, Latvija.

On 29.07.2015, that is on the next day after the loan had been provided, accomplices to the crime — head of the department for corporate finances N.V. Alekseev and CEO of NewHowTrade O.V. Kravchenko — entered into Accord and Satisfaction Agreement dd. 29.07.2015 in order to cover up the embezzlement in an especially large amount and give a veneer of legality to the sham transactions. Under Accord and Satisfaction Agreement, obligations of Tsentr Torgovli under Medium-Term Lending Contract No. 099-810/15ю dd. 28.07.2015 were terminated. Sunrise, an entity controlled by the parties to the crime which was not engaged in any real economic activity, became the new obligor; claims (to repay the money) to Sunrise were accepted by the Bank.

Therefore, the group members led by S.L. Leontiev and A.D. Zheleznyak appropriated RUB 499,995,968 of the Bank's funds by providing a loan to NewHowTrade in July 2015. Thus, the credit organization sustained damage in the amount of RUB 499,995,968.

In total, the group members led by S.L. Leontiev and A.D. Zheleznyak had embezzled RUB 2,443,195,968 from September 2014 to August 2015 by granting loans to IvSpetsGarant, Engineering-Royalty, Vostok-Cargo-Plus, Tsentr Torgovli, and NewHowTrade. Thus, Probusinessbank sustained damage in an especially large amount.

On 12.08.2015, by reason of the Bank's failure to comply with federal banking regulations as well as regulations of the Bank of Russia appeared as a result of its statutory equity (capital) adequacy ratio being lower than 2%, reduction of its equity (capital) stated as of the registration date of the institution, the Bank of Russia revoked its banking license based on Order No. ОД-2071 dd. 12.08.2015.

On 28.10.2015, based on a judgement of Moscow Commercial Arbitration Court in case No. A40-154909/15 dd. 28.10.2015, the Bank was declared insolvent (bankrupt); Deposit Insurance Agency State Corporation was appointed as its bankruptcy manager (receiver); pursuant to Article 189.78 of Federal Law on Insolvency (Bankruptcy) No. 127-FZ dd. 26.10.2002, the DIA exercises functions of Bank's governing bodies.

18

To that end, S.L. Leontiev wilfully appropriated (embezzled) the other's property entrusted to him using his official position, in an especially large scale, i.e. committed the crime specified in Article 160.4 of the Criminal Code.

In view of the foregoing and being guided by Articles 38, 171, 172 of the Code of Criminal Procedure of the Russian Federation, the investigator

RULED:

To declare Leontiev Sergey Leonidovich, born on July 11, 1965 in Moscow, an accused in this criminal case, to charge him with the crime specified in Article 160.4 of the Criminal Code, and to inform him thereof.

Investigator for Particularly Important Cases
of the Main Investigations Department of
the Investigative Committee of the Russian

Major of Justice

/signature/

This Decree was announced to me

———

Nature of the charges brought was explained to me. The following rights specified in Article 47.4 of the Code of Criminal Procedure of the Russian Federation have been explained to me:

1) to know what I am accused of;

2) to receive a copy of the decree on prosecution, a copy of the order imposing a pre-trial restriction against me, a copy of the indictment;

3) object against charges, testify on the charges brought against me or refuse to testify. I was notified in advance that if I agree to testify my testimony may be used as an evidence in criminal case, including if I withdraw my testimony save as provided in Article 75.2.1 of the Code of Criminal Procedure of the Russian Federation;

4) to present evidence;

5) to present motions (petitions) and propose disqualifications (recusations);

6) to testify and express myself in my mother tongue or in a language that I have a command of;

7) to use a translator's services free of charge;

8) to use a defence attorney's services, including free of charge, as stipulated in the Code of Criminal Procedure of the Russian Federation;

9) to have meetings with my defence attorney in private and in confidence, including before the first interrogation, without any limitation as to their number or duration;

10) to take part in the investigative activities conducted upon my motion (petition) or a motion of my defence attorney or my council based on the investigator's consent, get familiarized with records of such actions and present comments thereon;

11) to get familiarized with the decree on initiation of a forensic examination, present questions to the expert, and get familiarized with the expert's opinion;

12) to get familiarized will all materials of the criminal case and take out (copy) any information in any amount after the end of the preliminary investigation;

13) to copy (at one's own expense) materials of the criminal case, including with the use of hardware/software;

14) to file complaints against acts (omissions) and decisions of an inquiry body, inquirer, investigator, head of an investigation body, prosecutor, and court as prescribed by Article 16 of the Code of Criminal Procedure;

15) to object against termination of a criminal case on the grounds stated Article 27.2 of the Code of Criminal Procedure of the Russian Federation;

16) to participate in criminal proceedings in trial courts, appellate courts, and supervisory courts; in hearings regarding

20

the application of pre-trial restrictions and other issues as specified in Article 29.2.1–29.2.3, and Article 29.2.10 of the Code of Criminal Procedure;

17) to get familiarized with minutes of court hearings and present comments thereon;

18) to appeal against a sentence, finding, decree (resolution) of a court and receive copies of appealed judgements (decisions);

19) to receive copies of complaints and filings filed in a criminal case and appeal against such complaints and filings;

20) to take part in examination of issues related to enforcement of a sentence;

21) to be entitled to other defences not prohibited by the Code of Criminal Procedure.

Accused

Defense council                                          /signature/

Decree was announced, rights were explained, copy of this decree was sent to the defendant and his lawyer on
October 14, 2016                                          /signature/
Investigator

Copy of this document was sent to
the Deputy Prosecutor General of the Russian Federation on October 14, 2016

Investigator                                2016 /signature/

# ПРИЛОЖЕНИЕ 18

ГК АСВ

ВХ № 4225 от 30.01.2017

ПОСТАНОВЛЕНИЕ
о привлечении в качестве обвиняемого

город Москва                                                    13 октября 2016 года

Следователь по особо важным делам Главного следственного управления Следственного комитета Российской Федерации майор юстиции Хурамшин Д.Х., рассмотрев материалы уголовного дела № 11602007703000015,

УСТАНОВИЛ:

Президент АКБ «Пробизнесбанк» (ОАО) Леонтьев Сергей Леонидович, совместно с Председателем Правления АКБ «Пробизнесбанк» (ОАО) Железняком А.Д., не позднее сентября 2014 года, точное время следствием не установлено, в городе Москве создал организованную группу с целью хищения путем присвоения вверенного имущества – денежных средств Банка в особо крупном размере.

Открытое акционерное общество акционерный коммерческий банк «Пробизнесбанк», сокращённое наименование АКБ «Пробизнесбанк» (ОАО) (далее по тексту Банк), юридический адрес: 119285, гор. Москва, ул. Пудовкина, д. 3, фактический адрес: гор. Москва, ул. Петровка, д. 18/2, стр. 1, основной государственный регистрационный номер (ОГРН) 1027700508978, учреждён и зарегистрирован в книге государственной регистрации (КГР) Банка России 07.07.1993, корреспондентский счёт № 30101810600000000986 в Главном управлении Банка России по Центральному федеральному округу г. Москва (далее по тексту ГУ Банка России по ЦФО г. Москва), банковский идентификационный код (БИК) 044525986, индивидуальный номер налогоплательщика (ИНН) 7729086087, генеральная лицензия на осуществление банковских операций от 13.08.2012 № 2412 выдана Банком России.

В соответствии с уставом кредитного учреждения, утвержденного общим собранием акционеров 28.06.2013, Председатель Правления Банка осуществляет руководство текущей деятельностью Банка, без доверенности действует от имени Банка, совершает сделки от имени Банка, распоряжается в соответствии с действующим законодательством и Уставом всем имуществом и средствами Банка, выдает и подписывает доверенности от имени Банка по своему усмотрению и прочее. Таким образом Железняк А.Д. являлся лицом, выполняющим управленческие функции в АКБ «Пробизнесбанк» (ОАО), и обладал полномочиями организационно-распорядительного и административно-хозяйственного характера, то есть имущество и средства Банка были ему вверены.

Владение Леонтьевым С.Л. и Железняком А.Д. контрольным пакетом акций АКБ «Пробизнесбанк» (ОАО) в размере 52,9467%, обеспечило им как физическим лицам право осуществлять стратегическое и оперативное управление этим кредитным учреждением и другими аффилированными

2

компаниями, входящими в финансовую группу, что в свою очередь обеспечило им руководящую роль в организованной группе.

В состав организованной группы под руководством Леонтьева С.Л. и Железняка А.Д. в период с сентября 2014 года по август 2015 года вошли Алексеев Я.В., Казанцев В.В., Ломов А.В., Алексеев Н.В., Калачев С.В., Крылова М.М. и другие неустановленные лица, каждому из которых была определена своя роль.

Для достижения поставленной цели под руководством Леонтьева С.Л. и Железняка А.Д. членами организованной группы была разработана схема хищения денежных средств и распределены роли участников преступления:

- Леонтьев С.Л., являясь основным акционером АКБ «Пробизнесбанк» (ОАО), занимая с 28.05.1996 года должность Президента Банка, фактически осуществляя стратегическое управление деятельностью Банка, должен был совместно с Железняком А.Д. определить суммы денежных средств, которые намеревались похитить, способ их хищения, осуществлять общее руководство действиями всех членов организованной группы при совершении преступления и использовать по своему усмотрению полученные в процессе совершения преступления денежные средства, в том числе их использование в интересах членов организованной группы за пределами Российской Федерации;

- Железняк А.Д., являясь основным акционером АКБ «Пробизнесбанк» (ОАО), занимая должность Председателя Правления указанного кредитного учреждения, обладая полномочиями руководства текущей деятельностью банка, совершения сделок от имени Банка, распоряжения имуществом и средствами Банка, должен был совместно с Леонтьевым С.Л. определить суммы денежных средств, которые намеревались похитить, определить способ их хищения, выдать доверенности лицам, воспользовавшись которыми члены организованной группы должны были подписать кредитные договоры и иные сопутствующие документы, а также совместно с Леонтьевым С.Л. осуществлять общее руководство действиями всех членов организованной группы при совершении преступления и использовать по своему усмотрению полученные в процессе совершения преступления денежные средства;

- Алексеев Я.В., во исполнение разработанного под руководством Леонтьева С.Л. и Железняка А.Д. плана, являясь вице-президентом по корпоративным финансам, должен был определить юридические лица для использования в хищении денежных средств под видом их кредитования и обеспечить перечисление денежных средств на подконтрольные членам организованной группы общества для их аккумуляции на счетах ООО «Коллекторское агентсво «Лайф», возглавляемого членом организованной группы Калачевым С.В., и Vermenda Holdings Limited (Верменда Холдингс Лимитед, Кипр), подконтрольного членам организованной группы, а также последующего перевода необходимых денежных средств на счет этой кипрской компании, открытый в Латвийской

3

Республике, определить доверенных лиц, которые должны были подготовить документы для придания видимости законности совершения хищения денежных средств;

- Казанцев В.В., Ломов А.В. и Алексеев Н.В., занимая руководящие должности в Банке, уполномоченные доверенностями, согласно которым им руководством Банка делегированы полномочия по заключению кредитных договоров и распоряжению денежными средствами Банка, то есть управленческие функции административно-хозяйственного характера по распоряжению вверенными им денежными средствами Банка, действуя по указанию руководителей организованной группы и используя свое служебное положение, должны были с целью присвоения денежных средств подписать от имени Банка заведомо не исполнимые Договоры об условиях среднесрочного кредитования с подконтрольными членами организованной группы ООО «ИСК «ИвСпецГарант», ООО «Инжиниринг-Роялти», ООО «Восток-Карго-Плюс», ООО «Центр Торговли» и ООО «НьюХауТрейд»;

- Крылова М.М., занимая должность начальника управления по обеспечению взаимодействия с акционерами и дочерними организациями Банка, возглавила специально учрежденное ООО «Бухгалтерский центр «Баланс», сотрудниками которой под руководством последней осуществлялась подготовка документов, обосновывающих расчеты между обществами, привлекаемыми членами организованной группы для транзита денежных средств, их бухгалтерской и налоговой отчетности для предоставления в контролирующие органы Российской Федерации, а также управление счетами подконтрольных юридических лиц;

- Калачев С.В., являясь начальником управления по работе с проблемной задолженностью и генеральным директором ООО «Коллекторское агентство «Лайф», заведомо зная о том, что участниками организованной группы под руководством Железняка А.Д. и Леонтьева С.Л. совершается хищение денежных средств Банка, принял на себя обязательство заранее обещанного укрывательства путем предоставления счета возглавляемого им ООО «Коллекторское агентство «Лайф», на котором аккумулировалась часть похищаемых денежных средств, которые в последующем под видом договоров займа/погашения займов перечислялись на расчётный счет подконтрольного членам организованной группы кипрской компании Vermenda Holdings Limited (Верменда Холдингс Лимитед).

- иные неустановленные следствием лица, которые должны были по указанию члена организованной группы Алексеева Я.В. оформить документы, обосновывающие выдачу кредита подконтрольным юридическим лицам и дальнейшее движение денежных средств до кипрской компании Vermenda Holdings Limited.

Устойчивость этой организованной группы, заранее объединившейся для совершения преступлений, была обусловлена длительным знакомством и

4

постоянной    связью    между    ее    участниками,    служебными взаимоотношениями, общностью корыстной цели, четким распределением ролей и функций как при подготовке к совершению хищения, так и при осуществлении преступного умысла, тщательной проработкой хищения.

Кроме того, участники организованной группы в вышеуказанный период  времени  в  качестве  пособников  преступления  привлекли генерального директора ООО «ИСК «ИвСпецГарант» Поликарпова И.П., генерального  директора  ООО  «Инжиниринг-Роялти»  Симакова  А.В., генерального  директора  ООО  «Восток-Карго-Плюс»  Данукина  А.В., генерального директора ООО «Центр Торговли» Шпагину Л.Б., генерального директора ООО «НьюХауТрейд» Кравченко О.В., а также лиц из числа контролирующих        деятельность        ООО        «Пробизнес-Девелопмент», ООО  «Персонал+»,  ООО  «ЭЛСО»,  ООО  «Альянс»,  ООО  «Истон», ООО «ПрогмаТрейд», ООО «ПК-Технолоджис», ООО «Финансовый центр «Эскада», ООО «Санрис», кипрской компании Vermenda Holdings Limited (Верменда Холдингс Лимитед) и иных неустановленных лиц.

В сентябре 2014 года, точное время следствием не установлено, в    гор.    Москве,    члены    организованной    группы,    возглавляемой Леонтьевым С.Л. и Железняком А.Д., в связи с опасениями отзыва у руководимого ими Банка лицензии на осуществление банковских операций, вызванными неоднократными предписаниями ГУ Банка России по ЦФО г.   Москва   и   Банка   России   об   устранении   нарушений   Банком законодательства в банковской сфере и проводимой Банком России политики в  сфере  правового  регулирования  банковской  деятельности,  относительно незамедлительного отзыва лицензий на осуществление банковских операций у  банков  неоднократно  нарушающих  законодательство,  действуя  из корыстных побуждений, с целью личного обогащения, разработали план действий, направленный на хищение путем присвоения денежных средств Банка в особо крупном размере.

К тому времени на базе Банка была образована Финансовая группа «Лайф», в состав которой вошли ОАО «ВУЗ-банк», ОАО КБ «Пойдем!», АО   АКБ   «Экспресс-Волга»,   ЗАО   Национальный   Банк   Сбережений, ОАО  «Газэнергобанк»,  ОАО КБ  «Солидарность»,  ООО  «Коллекторское агентство  «Лайф»,  Факторинговая  компания  «Лайф»,  девелоперская компания ООО «Пробизнес-Девелопмент», кипрская компания «Пойдём Холдингс Лимитед» (Республика Кипр) и другие организации.

В совокупности Финансовая группа «Лайф», головной организацией которой  является  Банк,  имела  свыше  800  отделений  в  75  регионах Российской  Федерации,  4 000 000  клиентов  физических  лиц  и  200 000 клиентов юридических лиц, денежные средства, ценные бумаги и иные активы которых были вверены в управление Финансовой группе «Лайф» и её головной организации – Банку.

Используя  кадровые  возможности  Банка,  членом  организованной группы Алексеевым Я.В., действующим под руководством Леонтьева С.Л. и

5

Железняка А.Д., были использованы ранее учрежденные юридические лица, так называемые «компании акционеров», не осуществляющие реальной хозяйственной деятельности и полностью подконтрольные членам организованной группы, директорами которых назначались сотрудники Банка и иные лица за номинальное вознаграждение в размере 10 000 – 20 000 рублей в месяц. В число таких юридических лиц вошли: ООО «Инжиниринг-Роялти», ООО «Элсо», ООО «Персонал+», ООО «Альянс», ООО «Истон», ООО «ПК-Технолоджис», ООО «Санрис».

Также в ходе выполнения преступного замысла, направленного на присвоение денежных средств, членами организованной группы, были использованы юридические лица, аффилированные Банку и его руководителям – ООО «ИСК «ИвСпецГарант», ООО «Пробизнес-Девелопмент», ООО «Коллекторское агентство «Лайф», ООО «Восток-Карго-Плюс».

Расчетные счета всех указанных юридических лиц, были открыты в АКБ «Пробизнесбанк» (ОАО) и управлялись сотрудниками Банка и ООО «БЦ «Баланс» в помещениях, расположенных по адресу: гор. Москва, ул. Бутырская, д. 76, стр. 1.

Общий принцип совершения преступления предусматривал совершение умышленных действий, направленных на выдачу подконтрольным обществам заведомо невозвратных, не обеспеченных залоговым имуществом кредитов в особо крупных размерах, перечисление кредитных денежных средств на ссудные и расчетные счета указанных обществ, после чего под видом оплаты фиктивных сделок, с целью сокрытия совершенного преступления проводилось перечисление денежных средств на счета подконтрольных юридических лиц.

Затем, похищенные денежные средства в рублях Российской Федерации конвертировались в полном объёме в доллары США и перечислялись на расчётный счёт подконтрольного членам организованной группы юридического лица – нерезидента Российской Федерации – компании Vermenda Holdings Limited (Верменда Холдингс Лимитед), зарегистрированной по адресу: Griva Digeni, P.C. 3101, Limassol, Cyprus, открытый в кредитной организации – нерезиденте Trasta Komercbanka Riga (Траста Комерцбанка Рига) (Латвийская Республика).

Документальное оформление выдачи кредитов, с целью придания видимости законности производимых сделок, формально носило законный характер, однако фактически указанные документы содержали недостоверные сведения и все действия участников преступления были направлены на достижение преступного умысла, то есть на хищение денежных средств Банка в особо крупном размере.

При заключении договоров об условиях среднесрочного кредитования лица, выступающие сторонами договора, должны были действовать в соответствии с правилами заключения сделок, основываясь на требованиях ст. 10 ГК РФ. Разумность действий и добросовестность участников

6

гражданских правоотношений предполагаются. Тем самым, лица, подписывающие договоры об условиях среднесрочного кредитования, предметом которых были денежные средства АКБ «Пробизнесбанк» (ОАО), обязаны были действовать добросовестно и не совершать действия, связанные с обманом, в том числе о целевом назначении кредита.

Таким образом, Леонтьев С.Л. возглавляя совместно с Железняком А.Д. организованную группу, совместно с Алексеевым Я.В., Казанцевым В.В., Ломовым А.В, Алексеевым В.Н., Калачевым С.В., Крыловой М.М. и другими членами организованной группы, действовали во исполнение единого умысла, направленного на безвозмездное изъятие денежных средств и с намерением причинить вред другому лицу, то есть в нарушение ст. 10 ГК РФ «Пределы осуществления гражданских прав», в соответствии с которым не допускаются действия граждан и юридических лиц, осуществляемые исключительно с намерением причинить вред другому лицу, а также злоупотребление правом в иных формах, и, следовательно, противоправно.

Действующие согласно отведенной им в организованной группе роли Казанцев В.В., Ломов А.В. и Алексеев В.Н., заключая договоры об условиях среднесрочного кредитования, с целью присвоения денежных средств для создания видимости гражданско-правовых отношений во исполнение незаконных указаний руководителей организованной группы Леонтьева С.Л. и Железняка А.Д., умышленно нарушили положения ст. 1 Федерального закона «О банках и банковской деятельности» № 395-1 от 02.12.1990, обязывающий кредитную организацию размещать привлекаемые денежные средства физических и юридических лиц от своего имени и за свой счет на условиях возвратности, платности, срочности.

Это позволило членам организованной группы, действовавшим от имени Банка, но вопреки интересам кредитного учреждения, противоправно, безвозмездно, безвозвратно обратить вверенные им денежные средства в свою пользу, обеспечив переход права собственности подконтрольным им подставным компаниям.

Так, в период предшествующий 15.09.2014, в гор. Москве, участник организованной группы – вице-президент по развитию корпоративного бизнеса Банка Казанцев В.В. действуя от имени Банка, на основании доверенности № 610/1 от 16.07.2014, выданной одним из руководителей организованной группы – председателем Правления Банка Железняком А.Д., согласно которой ему делегированы полномочия по заключению кредитных договоров и распоряжению денежными средствами Банка, то есть управленческие функции административно-хозяйственного характера по распоряжению вверенными ему денежными средствами Банка, выполняя указания руководителей организованной группы Леонтьева С.Л. и Железняка А.Д., действуя умышленно и согласованно с другим членами организованной группы подписал от имени Банка заведомо не исполнимый Договор об условиях среднесрочного кредитования от 15.09.2014

7

№ 211-810/14ю с подконтрольным членам организованной группы ООО «Инновационно-строительная компания «ИвСпецГарант» в лице генерального директора общества Поликарпова И.П., согласно которому Банк обязуется предоставить указанному обществу кредит в рамках открываемых кредитных линий с максимальным размером лимита задолженности в размере 500 000 000 рублей.

При этом, Поликарпов И.П., оказывая содействие совершению преступления предоставлением информации и устранением препятствий его совершения, осознавал, что возглавляемое им общество не ведёт какой-либо хозяйственной деятельности, цель получения кредита является заведомо ложной, а получение кредита является способом хищения денежных средств Банка, из корыстных побуждений подписал от имени общества вышеуказанный Договор об условиях среднесрочного кредитования от 15.09.2014 № 211-810/14ю.

15.09.2014 во исполнение вышеуказанного Договора, согласно представленной заявки от имени Поликарпова И.П., платежным поручением № 1018062751 от 15.09.2014, денежные средства в сумме 280 000 000 рублей перечислены с корреспондентского счета Банка № 30101810600000000986, открытого в операционном управлении ГУ Банка России по ЦФО гор. Москва, расположенном по адресу: гор. Москва, ул. Балчуг, д. 2 на ссудный счет ООО «ИСК «ИвСпецГарант» № 45207810600000127604, открытый в Банке, расположенном по адресу: гор. Москва, ул. Петровка, д. 18/2, стр. 1.

В тот же день, после поступления денежных средств на расчётный счёт ООО «ИСК «ИвСпецГарант» № 40702810308180027604, открытый в Банке, Поликарпов И.П. продолжая выполнять отведённую ему роль в совершении преступления, оказывая содействие его совершению предоставлением информации и устранением препятствий, перечислил денежные средства, полученные в виде кредита от Банка в сумме 280 000 000 рублей, несколькими платежами, в числе прочих денежных средств:

- 24 157 808,21 рублей платёжными поручениями №№ 751, 752, 763, 764 от 15.09.2014 на расчётный счёт ООО «Персонал+» № 40702810300110117621, открытый в том же Банке;

- 34 471 698,63 рублей платёжными поручениями №№ 747, 748, 749, 750, 757, 758, 759, 760, 761, 762 от 15.09.2014 на расчётный счёт ООО «Коллекторское агентство «Лайф» № 40702810300110117621, открытый в том же Банке, возглавляемого членом организованной группы Калачевым С.В.;

- 222 016 835,04 рублей платёжными поручениями №№ 765, 766 от 15.09.2014 на расчётный счёт ООО «Пробизнес-Девелопмент» № 40702810300000021377, открытый в том же Банке.

В тот же день, после поступления денежных средств на расчётный счет ООО «Пробизнес-Девелопмент», платежными поручениями №№ 857, 861, 853, 856, 852 от 15.09.2014 денежные средства, похищенные у Банка, в сумме

8

221 370 994,73 рублей перечислены на расчётный счёт ООО «ЭЛСО», № 40702810800020115239, открытый в том же Банке.

Затем, 16.09.2014 с расчётного счета ООО «ЭЛСО» платежным поручением № 321 от 16.09.2014 денежные средства в сумме 221 000 000 рублей перечислены на расчётный счёт ООО «Коллекторское агентство «Лайф» № 40702810300110117621, открытый в том же Банке.

16.09.2014, то есть на следующий день, после перечисления денежных средств Банка на расчётный счет ООО «Персонал+», платежным поручением № 133 от 16.09.2014, денежные средства в сумме 24 157 808,21 рублей, похищенные у Банка, в числе прочих денежных средств в сумме 499 500 000 рублей перечислены на расчётный счёт ООО «Коллекторское агентство «Лайф» № 40702810300110117621, открытый в том же Банке.

Таким образом, денежные средства, похищенные у Банка под видом выдачи заведомо невозвратных кредитов, в сумме 280 000 000 рублей, в числе прочих денежных средств, аккумулировались на расчётном счете подконтрольного членам организованной группы ООО «Коллекторское агентство «Лайф», возглавляемого участником преступления Калачевым С.В.

После чего, 16.09.2014, то есть в этот же день, после поступления похищенных у Банка денежных средств на расчётный счет ООО «Коллекторское агентство «Лайф», генеральный директор указанного общества Калачев С.В., сознавая преступность своих действий, направленных на хищение денежных средств Банка в особо крупном размере, продолжая выполнять отведённую ему роль в составе организованной группы, платежным поручением № 1563 от 16.09.2014 перечислил денежные средства в сумме 608 000 000 рублей, в том числе и похищенные у Банка денежные средства в сумме 280 000 000 рублей, на расчётный счёт подконтрольной членам организованной группы Vermenda Holdings Limited (Верменда Холдингс Лимитед) № 40807810900010030608, открытый в том же Банке.

Затем, 18.09.2014, после поступления похищенных у Банка денежных средств в сумме 280 000 000 рублей на расчётный счет Vermenda Holdings Limited (Верменда Холдингс Лимитед), в числе прочих денежных средств в сумме 578 655 792 рубля, были конвертированы в доллары США с одновременным зачислением на валютный счёт компании-нерезидента Vermenda Holdings Limited (Верменда Холдингс Лимитед) № 40807840200010030608 денежных средств в сумме 15 080 000 долларов США.

В тот же день конвертированные в доллары США, в числе прочих денежных средств в сумме 13 000 000 долларов США, перечислены с валютного счета компании-нерезидента Vermenda Holdings Limited (Верменда Холдингс Лимитед) № 40807840200010030608 на валютный счёт этой организации № LV63KBRB1111215921001, открытый в Trasta Komercbanka Riga (Траста Комерцбанка Рига) (Латвийская Республика), расположенном по адресу: Palasta iela 1, Riga LV-1050, Latvija.

9

Таким образом, членами организованной группы, возглавляемой Леонтьевым С.Л. совместно с Железняком А.Д., в сентябре 2014 года путем выдачи кредита подконтрольному ООО «ИСК «ИвСпецГарант» было присвоено 280 000 000 рублей, принадлежащих Банку, тем самым причинен этой кредитной организации ущерб на указанную сумму.

Также, в период предшествующий 09.04.2015, в гор. Москве, продолжая реализовывать преступный умысел, направленный на хищение денежных средств Банка, в особо крупном размере, участник организованной группы – начальник департамента корпоративных финансов Банка Алексеев Н.В., действуя от имени Банка, на основании доверенности № 120/2 от 17.02.2015, выданной одним из руководителей организованной группы – председателем Правления Банка Железняком А.Д., согласно которой ему делегированы полномочия по заключению кредитных договоров и распоряжению денежными средствами Банка, то есть управленческие функции административно-хозяйственного характера по распоряжению вверенными ему денежными средствами Банка, выполняя указание руководителей организованной группы Леонтьева С.Л. и Железняка А.Д., действуя умышленно и согласованно с другим членами организованной группы подписал от имени Банка заведомо не исполнимый Договор об условиях среднесрочного кредитования от 09.04.2015 № 044-810/15ю с подконтрольным членам организованной группы ООО «Инжиниринг-Роялти» в лице генерального директора общества Симакова А.В., согласно которому Банк обязуется предоставить указанному обществу кредит в рамках открываемых кредитных линий с максимальным размером лимита задолженности в размере 1 000 000 000 рублей.

При этом, Симаков А.В. оказывая содействие совершению преступления, предоставлением информации и устранением препятствий его совершения, осознавал, что возглавляемое им общество не ведёт какой-либо хозяйственной деятельности, цель получения кредита является заведомо ложной, а получение кредита является способом хищения денежных средств Банка, из корыстных побуждений подписал от имени общества вышеуказанный Договор об условиях среднесрочного кредитования от 09.04.2015 № 044-810/15ю.

09.04.2015 во исполнение вышеуказанного Договора, согласно представленной заявки от имени Симакова А.В., платежным поручением № 1019700947 от 09.04.2015, денежные средства в сумме 600 000 000 рублей перечислены с корреспондентского счета Банка № 30101810600000000986, открытого в операционном управлении ГУ Банка России по ЦФО гор. Москва, расположенном по адресу: гор. Москва, ул. Балчуг, д. 2 на ссудный счет ООО «Инжиниринг-Роялти» № 45204810400000135572, открытый в Банке, расположенном по адресу: гор. Москва, ул. Петровка, д. 18/2, стр. 1.

В этот же день, после поступления денежных средств на расчётный

10

счёт ООО «Инжиниринг-Роялти» № 40702810900110035572, открытый в Банке, Симаков А.В. продолжая выполнять отведённую ему роль в совершении преступления, оказывая содействие его совершению, предоставлением информации и устранением препятствий, перечислил денежные средства в сумме 600 000 000 рублей платёжным поручением № 22 от 09.04.2015 на расчётный счёт ООО «Альянс» № 40702810500000113328, открытый в том же Банке.

09.04.2015, то есть в этот же день, после перечисления денежных средств Банка на расчётный счет ООО «Альянс», платежным поручением № 33 от 09.04.2015 денежные средства в сумме 600 000 000 рублей перечислены на расчётный счёт ООО «Персонал +» № 40728103000000102610, открытый в том же Банке.

Также, 09.04.2015, то есть в этот же день, после поступления похищенных у Банка денежных средств на расчётный счет ООО «Персонал +», платежным поручением № 144 от 09.04.2015 денежные средства в сумме 600 000 000 рублей, похищенные у Банка, перечислены на расчётный счёт подконтрольной членам организованной группы Vermenda Holdings Limited (Верменда Холдингс Лимитед) № 40807810900010030608, открытый в том же Банке.

Затем, 09.04.2015 и 13.04.2015, после поступления похищенных у Банка денежных средств в сумме 600 000 000 рублей на расчётный счет Vermenda Holdings Limited (Верменда Холдингс Лимитед), в числе прочих денежных средств в сумме 600 069 891,60 рублей, были конвертированы в доллары США с одновременным зачислением на валютный счёт компании-нерезидента Vermenda Holdings Limited (Верменда Холдингс Лимитед) № 40807840200010030608 денежных средств в сумме 11 182 000 долларов США.

Конвертированные в доллары США, в числе прочих денежных средств в сумме 12 110 000 долларов США перечислены с валютного счета компании-нерезидента Vermenda Holdings Limited (Верменда Холдингс Лимитед) № 40807840200010030608 на валютный счёт этой организации № LV63KBRB1111215921001, открытый в Trasta Komercbanka Riga (Траста Комерцбанка Рига) (Латвийская Республика), расположенном по адресу: Palasta iela 1, Riga LV-1050, Latvija.

Таким образом, членами организованной группы, возглавляемой Леонтьевым С.Л. совместно с Железняком А.Д., в апреле 2015 года путем выдачи кредита подконтрольному ООО «Инжиниринг-Роялти» было присвоено 600 000 000 рублей, принадлежащих Банку, тем самым причинен этой кредитной организации ущерб на указанную сумму.

Также, в период предшествующий 15.05.2015, в гор. Москве, продолжая реализовывать преступный умысел, направленный на хищение денежных средств Банка, в особо крупном размере, участник организованной группы — начальник департамента корпоративных финансов Банка

11

Алексеев Н.В., действуя от имени Банка, на основании доверенности № 120/2 от 17.02.2015, выданной одним из руководителей организованной группы – председателем Правления Банка Железняком А.Д., согласно которой ему делегированы полномочия по заключению кредитных договоров и распоряжению денежными средствами Банка, то есть управленческие функции административно-хозяйственного характера по распоряжению вверенными ему денежными средствами Банка, выполняя указание руководителей организованной группы Леонтьева С.Л. и Железняка А.Д., действуя умышленно и согласованно с другим членами организованной группы подписал от имени Банка заведомо не исполнимый Договор об условиях среднесрочного кредитования от 15.05.2015 № 071-810/15ю с подконтрольным членам организованной группы ООО «Восток-Карго-Плюс» в лице генерального директора общества Данукина А.В., согласно которому Банк обязуется предоставить указанному обществу заведомо невозвратный кредит в рамках открываемых кредитных линий с максимальным размером лимита задолженности в размере 500 000 000 рублей.

При этом, Данукин А.В. оказывая содействие совершению преступления предоставлением информации и устранением препятствий его совершения, осознавал, что возглавляемое им общество не ведёт какой-либо хозяйственной деятельности, цель получения кредита является заведомо ложной, а получение кредита является способом хищения денежных средств Банка, из корыстных побуждений, подписал от имени общества вышеуказанный Договор об условиях среднесрочного кредитования от 15.05.2015 № 071-810/15ю.

18.05.2015 и 19.05.2015 во исполнение вышеуказанного Договора, согласно представленной заявки от имени Данукина А.В., платёжными поручениями № 1019906802 от 18.05.2015, № 1019915598 от 19.05.2015 денежные средства в сумме 365 000 000 рублей перечислены с корреспондентского счета Банка № 30101810600000000986, открытого в операционном управлении ГУ Банка России по ЦФО гор. Москва, расположенном по адресу: гор. Москва, ул. Балчуг, д. 2 на ссудный счет ООО «Восток-Карго-Плюс» № 45205810500100107477, открытый в Банке, расположенном по адресу: гор. Москва, ул. Петровка, д. 18/2, стр. 1.

18.05.2015 и 19.05.2015, после поступления денежных средств на расчётный счёт ООО «Восток-Карго-Плюс» № 40702810700000107477, открытый в Банке, Данукин А.В. продолжая выполнять отведённую ему роль в совершении преступления, оказывая содействие его совершению, предоставлением информации и устранением препятствий, перечислил денежные средства, полученные в виде кредита от Банка в сумме 365 000 000 рублей, на основании платёжных поручений № 1054 от 18.05.2015 и № 1057 от 19.05.2015 на расчётный счёт ООО «Истон» № 40702810900000100889, открытый в том же Банке.

18.05.2015 и 19.05.2015, после перечисления денежных средств Банка на расчётный счет ООО «Истон», платежными поручениями № 39 от

12

18.05.2015 и № 40 от 19.05.2015 денежные средства, похищенные у Банка, в сумме 364 700 000 рублей перечислены на расчётный счёт ООО «ЭЛСО» № 40702810800020115239, открытый в том же Банке.

18.05.2015 и 19.05.2015, после поступления похищенных у Банка денежных средств на расчётный счет ООО «ЭЛСО», платежными поручениями № 199 от 18.05.2015 и № 120 от 19.05.2015 часть похищенных у Банка денежных средств в сумме 347 000 000 рублей перечислены на расчётный счёт подконтрольной членам организованной группы Vermenda Holdings Limited (Верменда Холдингс Лимитед) № 40807810900010030608, открытый в том же Банке.

Затем, 18.05.2015 и 19.05.2015, после поступления похищенных у Банка денежных средств на расчётный счет Vermenda Holdings Limited (Верменда Холдингс Лимитед), денежные средства в сумме 346 958 345 рублей были конвертированы в доллары США с одновременным зачислением на валютный счёт компании-нерезидента Vermenda Holdings Limited (Верменда Холдингс Лимитед) № 40807840200010030608 денежных средств в сумме 7 014 000 долларов США.

Конвертированные в доллары США, в числе прочих денежных средств, в сумме 7 600 000 долларов США перечислены с валютного счета компании-нерезидента Vermenda Holdings Limited (Верменда Холдингс Лимитед) № 40807840200010030608 на валютный счёт этой организации № LV63KBRB1111215921001, открытый в Trasta Komercbanka Riga (Траста Комерцбанка Рига) (Латвийская Республика), расположенном по адресу: Palasta iela 1, Riga LV-1050, Latvija.

Таким образом, членами организованной группы, возглавляемой Леонтьевым С.Л. совместно с Железняком А.Д., в мае 2015 года путем выдачи кредита подконтрольному ООО «Восток-Карго-Плюс» было присвоено 365 000 000 рублей, принадлежащих Банку, тем самым причинен этой кредитной организации ущерб на указанную сумму.

Впоследствии, 06.08.2015, в день отзыва у Банка лицензии на право осуществления банковских операций, соучастники преступления — вице-президент по финансам – заместитель Председателя Правления Банка Ломов А.В. и генеральный директор ООО «Восток-Карго-Плюс» Данукин А.В., с целью сокрытия совершенного у Банка хищения денежных средств в особо крупном размере и придания видимости законности совершенных мнимых сделок, заключили Соглашение об отступном от 06.08.2015, согласно которому обязательства ООО «Восток-Карго-Плюс» по Договору об условиях среднесрочного кредитования от 15.05.2015 № 071-810/15ю были прекращены, а в качестве исполнителя обязательств по выплате кредитных денежных средств Банк принял право требования к ООО «Истон», не осуществляющему какой-либо фактической хозяйственной деятельности.

Также, в период предшествующий 22.06.2015, в гор. Москве,

13

продолжая реализовывать преступный умысел, направленный на хищение денежных средств Банка, в особо крупном размере, участник организованной группы – вице президент по финансам – заместитель председателя правления Банка Ломов А.В. действуя от имени Банка, на основании доверенности № 92/5 от 09.02.2015, выданной одним из руководителей организованной группы – председателем Правления Банка Железняком А.Д., согласно которой ему делегированы полномочия по заключению кредитных договоров и распоряжению денежными средствами Банка, то есть управленческие функции административно-хозяйственного характера по распоряжению вверенными ему денежными средствами Банка, выполняя указание руководителей организованной группы Леонтьева С.Л. и Железняка А.Д., действуя умышленно и согласованно с другим членами организованной группы подписал от имени Банка заведомо не исполнимый Договор об условиях среднесрочного кредитования от 22.06.2015 № 099-810/15ю с подконтрольным членам организованной группы ООО «Центр торговли» в лице генерального директора общества Шпагиной Л.Б., согласно которому Банк обязуется предоставить указанному обществу заведомо невозвратный кредит в рамках открываемых кредитных линий с максимальным размером лимита задолженности в размере 1 000 000 000 рублей.

При этом, Шпагина Л.Б. оказывая содействие совершению преступления, предоставлением информации и устранением препятствий его совершения, осознавала, что возглавляемое ей общество не ведёт какой-либо хозяйственной деятельности, цель получения кредита является заведомо ложной, а получение кредита является способом хищения денежных средств Банка, из корыстных побуждений, подписала от имени общества вышеуказанный Договор об условиях среднесрочного кредитования от 22.06.2015 № 099-810/15ю.

23.06.2015 во исполнение вышеуказанного Договора, согласно представленной заявки от имени Шпагиной Л.Б., платёжными поручениями № 1020125374 от 23.06.2015 денежные средства в сумме 698 200 000 рублей перечислены с корреспондентского счета Банка № 30101810600000000986, открытого в операционном управлении ГУ Банка России по ЦФО гор. Москва, расположенном по адресу: гор. Москва, ул. Балчуг, д. 2 на ссудный счет ООО «Центр торговли» № 45205810300200007965, открытый в Банке, расположенном по адресу: гор. Москва, ул. Петровка, д. 18/2, стр. 1.

23.06.2015, после поступления денежных средств на расчётный счёт ООО «Центр торговли» № 40702810400000207965, открытый в Банке, Шпагина Л.Б. продолжая выполнять отведённую ей роль в совершении преступления, оказывая содействие его совершению, предоставлением информации и устранением препятствий, перечислила денежные средства, похищенные у Банка, платёжным поручением № 94 от 23.06.2015 на расчётный счёт ООО «ПрогмаТрейд» № 40702810000000207844 в сумме 698 200 000 рублей, открытый в том же Банке.

23.06.2015 после поступления похищенных у Банка денежных средств

14

на расчётный счет ООО «ПрогмаТрейд», платежным поручением № 85 от 23.06.2015 денежные средства в сумме 698 200 000 рублей перечислены на расчётный счёт ООО «ПК-Технолоджис» № 40702810200110035573, открытый в том же Банке.

Затем, 23.06.2015, то есть в этот же день, после перечисления денежных средств Банка на расчётный счет ООО «ПК-Технолоджис», платежным поручением № 124 от 23.06.2015 денежные средства в сумме 698 200 000 рублей перечислены на расчётный счёт ООО «Коллекторское агентство «Лайф» № 40702810300110117621, возглавляемого соучастником преступления Калачевым С.В.

После чего, 24.06.2015 после поступления похищенных у Банка денежных средств на расчётный счет ООО «Коллекторское агентство «Лайф», генеральный директор указанного общества Калачев С.В., продолжая выполнять отведённую ему роль в организованной группе, направленную на хищение денежных средств Банка, в особо крупном размере, платежными поручениями №№ 1114, 1115, 1116 от 24.06.2015 перечислил денежные средства, похищенные у Банка, в числе прочих денежных средств в сумме 700 000 000 рублей, на расчётный счёт подконтрольной членам организованной группы Vermenda Holdings Limited (Верменда Холдингс Лимитед) № 40807810900010030608, открытый в том же Банке.

Затем, 25.06.2015, после поступления похищенных у Банка денежных средств в сумме 698 200 000 рублей на расчётный счет Vermenda Holdings Limited (Верменда Холдингс Лимитед), в числе прочих денежных средств в сумме 702 969 800 рублей были конвертированы в доллары США с одновременным зачислением на валютный счёт компании-нерезидента Vermenda Holdings Limited (Верменда Холдингс Лимитед) № 40807840200010030608 денежных средств в сумме 13 000 000 долларов США.

Конвертированные в доллары США, в числе прочих денежных средств в сумме 13 000 000 долларов США, перечислены с валютного счета компании-нерезидента Vermenda Holdings Limited (Верменда Холдингс Лимитед) № 40807840200010030608 на валютный счёт этой организации № LV63KBRB1111215921001, открытый в Trasta Komercbanka Riga (Траста Комерцбанка Рига) (Латвийская Республика), расположенном по адресу: Palasta iela 1, Riga LV-1050, Latvija.

03.08.2015, соучастники преступления – начальник Департамента корпоративных финансов Банка Алексеев Н.В. и генеральный директор ООО «Центр торговли» Шпагина Л.Б., с целью сокрытия совершённого у Банка хищения денежных средств в особо крупном размере и придания видимости законности совершенных мнимых сделок, заключили Соглашение об отступном от 03.08.2015, согласно которому обязательства ООО «Центр торговли» по Договору об условиях среднесрочного кредитования от 22.06.2015 № 099-810/15ю были прекращены, а в качестве исполнителя

15

обязательств по выплате кредитных денежных средств Банк принял право требования к подконтрольному участникам преступления ООО «ПК-Технолоджис», не осуществляющему какой-либо фактической хозяйственной деятельности.

Таким образом, членами организованной группы, возглавляемой Леонтьевым С.Л. совместно с Железняком А.Д., в июне 2015 года путем выдачи кредита подконтрольному ООО «Центр торговли» было присвоено 698 200 000 рублей, принадлежащих Банку, тем самым причинен этой кредитной организации ущерб на указанную сумму.

Также, в период предшествующий 28.07.2015, в гор. Москве, продолжая реализовывать преступный умысел, направленный на хищение денежных средств Банка, в особо крупном размере, участник организованной группы – начальник департамента корпоративных финансов Банка Алексеев Н.В., действуя от имени Банка, на основании доверенности № 120/2 от 17.02.2015, выданной одним из руководителей организованной группы – председателем Правления Банка Железняком А.Д., согласно которой ему делегированы полномочия по заключению кредитных договоров и распоряжению денежными средствами Банка, то есть управленческие функции административно-хозяйственного характера по распоряжению вверенными ему денежными средствами Банка, выполняя указание руководителей организованной группы Леонтьева С.Л. и Железняка А.Д., действуя умышленно и согласованно с другим членами организованной группы подписал от имени Банка заведомо не исполнимый Договор об условиях среднесрочного кредитования от 28.07.2015 № 137-810/15ю с подконтрольным членам организованной группы ООО «НьюХауТрейд» в лице генерального директора общества Кравченко О.В., согласно которому Банк обязуется предоставить указанному обществу кредит в рамках открываемых кредитных линий с максимальным размером лимита задолженности в размере 1 000 000 000 рублей.

При этом, Кравченко О.В. оказывая содействие совершению преступления, предоставлением информации и устранением препятствий его совершения, осознавала, что возглавляемое ей общество не ведёт какой-либо хозяйственной деятельности, цель получения кредита является заведомо ложной, а получение кредита является способом хищения денежных средств Банка, из корыстных побуждений, подписала от имени общества вышеуказанный Договор об условиях среднесрочного кредитования от 28.07.2015 № 137-810/15ю.

28.07.2015 во исполнение вышеуказанного Договора, согласно представленной заявки от имени Кравченко О.В., платёжным поручением № 1020346334 от 28.07.2015 денежные средства в сумме 499 995 968 рублей перечислены с корреспондентского счета Банка № 30101810600000000986, открытого в операционном управлении ГУ Банка России по ЦФО гор. Москва, расположенном по адресу: гор. Москва, ул. Балчуг, д. 2 на

16

ссудный счет ООО «НьюХауТрейд» № 45205810900200007734, открытый в Банке, расположенном по адресу: гор. Москва, ул. Петровка, д. 18/2, стр. 1.

28.07.2015, после поступления денежных средств на расчётный счёт ООО «НьюХауТрейд» № 40702810000000207734, открытый в Банке, Кравченко О.В. продолжая выполнять отведённую ей роль в совершении преступления, оказывая содействие его совершению, предоставлением информации и устранением препятствий, перечислила денежные средства, похищенные у Банка, в сумме 499 995 968 рублей платёжным поручением № 9 от 28.07.2015 на расчётный счёт ООО «Финансовый центр «Эскада» № 40702810800000210934, открытый в том же Банке.

28.07.2015 после поступления похищенных у Банка денежных средств на расчётный счет ООО «Финансовый центр «Эскада», платежным поручением № 35 от 28.07.2015 денежные средства в сумме 499 995 968 рублей перечислены на расчётный счёт ООО «Санрис» № 40702810500070015537, открытый в том же Банке.

Затем, 29.07.2014, то есть на следующий день, после перечисления денежных средств Банка на расчётный счет ООО «Санрис», платежными поручениями №№ 44, 45, 46. 47, 48, 49, 50, 51, 52, 53, 54, 55, 56 от 29.07.2015, денежные средства в сумме 498 871 028,03 рублей перечислены на расчётный счёт ООО «Коллекторское агентство «Лайф» № 40702810300110117621, возглавляемого соучастником преступления Калачевым С.В.

29.07.2015 и 30.07.2015 после поступления похищенных у Банка денежных средств на расчётный счет ООО «Коллекторское агентство «Лайф», генеральный директор указанного общества Калачёв С.Б., продолжая выполнять отведённую ему роль в составе организованной группы, направленную на хищение денежных средств Банка, в особо крупном размере, платёжными поручениями № 1372 от 29.07.2015, № 1373 от 29.07.2015, № 1374 от 29.07.2015, № 1426 от 30.07.2015 перечислил денежные средства в сумме 600 000 000 рублей, в том числе и похищенные у Банка денежные средства в сумме 499 995 968 рублей, на расчётный счёт подконтрольной членам организованной группы Vermenda Holdings Limited (Верменда Холдингс Лимитед) № 40807810900010030608, открытый в том же Банке.

Затем, 30.07.2015, после поступления похищенных у Банка денежных средств на расчётный счет Vermenda Holdings Limited (Верменда Холдингс Лимитед), в числе прочих денежных средств в сумме 598 561 497,50 рублей были конвертированы в доллары США с одновременным зачислением на валютный счёт компании-нерезидента Vermenda Holdings Limited (Верменда Холдингс Лимитед) № 40807840200010030608 денежных средств в сумме 10 015 000 долларов США.

Конвертированные в доллары США денежные средства в сумме 10 000 000 долларов США, перечислены с валютного счета компании-нерезидента Vermenda Holdings Limited (Верменда Холдингс Лимитед) № 40807840200010030608 на валютный счёт этой организации

17

№ LV63KBRB1111215921001, открытый в Trasta Komercbanka Riga (Траста Комерцбанка Рига) (Латвийская Республика), расположенном по адресу: Palasta iela 1, Riga LV-1050, Latvija.

Впоследствии, 29.07.2015, то есть на следующий день после выдачи кредита, соучастники преступления – начальник Департамента корпоративных финансов Банка Алексеев Н.В. и генеральный директор ООО «НьюХауТрейд» Кравченко О.В., с целью сокрытия совершенного у Банка хищения денежных средств в особо крупном размере и придания видимости законности совершенных мнимых сделок, заключили Соглашение об отступном от 29.07.2015, согласно которому обязательства ООО «НьюХауТрейд» по Договору об условиях среднесрочного кредитования от 28.07.2015 № 137-810/15ю были прекращены, а в качестве исполнителя обязательств по выплате кредитных денежных средств Банк принял право требования к подконтрольному участникам преступления ООО «Санрис», не осуществляющему какой-либо фактической хозяйственной деятельности.

Таким образом, членами организованной группы, возглавляемой Леонтьевым С.Л. совместно с Железняком А.Д., в июле 2015 года путем выдачи кредита подконтрольному ООО «НьюХауТрейд» было присвоено 499 995 968 рублей, принадлежащих Банку, тем самым причинен этой кредитной организации ущерб на указанную сумму.

Всего, членами организованной группы, которую возглавляли Леонтьев С.Л. и Железняк А.Д., с сентября 2014 года по июль 2015 года путем выдачи кредитов ООО «ИСК ИвСпецГарант», ООО «Инжиниринг-Роялти», ООО «Восток-Карго-Плюс», ООО «НьюХауТрейд» и ООО «Центр Торговли» было присвоено 2 443 195 968 (два миллиарда четыреста сорок три миллиона сто девяносто пять тысяч девятьсот шестьдесят восемь) рублей и тем самым причинён ущерб АКБ «Пробизнесбанк» (ОАО) в особо крупном размере.

12.08.2015 в связи с неисполнением Банком федеральных законом, регулирующих банковскую деятельность, а также нормативных актов Банка России, значением всех нормативов достаточности собственных средств (капитала) ниже 2 процентов, снижением размера собственных средств (капитала), установленного на дату государственной регистрации кредитной организации, приказом Банка России от 12.08.2015 № ОД-2071 у Банка с 12.08.2015 отозвана лицензия на осуществление банковских операций.

28.10.2015 решением Арбитражного суда города Москвы по делу № А40-154909/15 от 28.10.2015 Банк признан несостоятельным (банкротом), функции конкурсного управляющего возложены на государственную корпорацию «Агентство по страхованию вкладов», которая в соответствии со ст. 189.78 Федерального закона «О несостоятельности (банкротстве)» от 26.10.2002 №127-ФЗ осуществляет полномочия органов управления Банка.

18

Таким образом, своими умышленными действиями Леонтьев С.Л. совершил присвоение, то есть хищение чужого имущества, вверенного виновному, лицом с использованием своего служебного положения, в особо крупном размере, организованной группой, то есть преступление, предусмотренное ч. 4 ст. 160 УК РФ.

На основании изложенного, руководствуясь ст.ст. 38, 171, 172 УПК РФ,

ПОСТАНОВИЛ:

Привлечь Леонтьева Сергея Леонидовича, 11 июля 1965 года рождения, уроженца гор. Москвы, в качестве обвиняемого по данному уголовному делу, предъявив ему обвинение в совершении преступления, предусмотренного ч. 4 ст. 160 УК РФ, о чем ему объявить.

Следователь по особо важным делам
Главного следственного управления
Следственного комитета Российской Федерации

майор юстиции                                                      Д.Х. Хурамшин

19

Настоящее постановление мне объявлено «\_\_\_\_» _____ г.

в \_\_\_\_ ч \_\_\_\_ мин., его текст _____

Сущность предъявленного обвинения разъяснена. Одновременно мне разъяснены права, предусмотренные ч. 4 ст. 47 УПК РФ, а именно:

1) знать, в чем я обвиняюсь;

2) получить копию постановления о привлечении меня в качестве обвиняемого, копию постановления о применении ко мне меры пресечения, копию обвинительного заключения или обвинительного акта;

3) возражать против обвинения, давать показания по предъявленному мне обвинению либо отказаться от дачи показаний. При согласии дать показания я предупрежден о том, что мои показания могут быть использованы в качестве доказательств по уголовному делу, в том числе и в случае моего последующего отказа от этих показаний, за исключением случая, предусмотренного п. 1 ч. 2 ст. 75 УПК РФ;

4) представлять доказательства;

5) заявлять ходатайства и отводы;

6) давать показания и объясняться на родном языке или на языке, которым я владею;

7) пользоваться помощью переводчика бесплатно;

8) пользоваться помощью защитника, в том числе бесплатно в случаях, предусмотренных УПК РФ;

9) иметь свидания с защитником наедине и конфиденциально, в том числе и до первого допроса, без ограничения их числа и продолжительности;

10) участвовать с разрешения следователя в следственных действиях, проводимых по моему ходатайству или по ходатайству моего защитника либо законного представителя, знакомиться с протоколами этих действий и подавать на них замечания;

11) знакомиться с постановлением о назначении судебной экспертизы, ставить вопросы эксперту и знакомиться с заключением эксперта;

12) знакомиться по окончании предварительного расследования со всеми материалами уголовного дела и выписывать из него любые сведения и в любом объеме;

13) снимать за свой счет копии с материалов уголовного дела, в том числе с помощью технических средств;

14) приносить жалобы на действия (бездействие) и решения органа дознания, дознавателя, следователя, руководителя следственного органа, прокурора и суда в порядке, предусмотренном гл. 16 УПК РФ, и принимать участие в их рассмотрении судом;

15) возражать против прекращения уголовного дела по основаниям, предусмотренным ч. 2 ст. 27 УПК РФ;

16) участвовать в судебном разбирательстве уголовного дела в судах первой, второй и надзорной инстанций, а также в рассмотрении судом

20

вопроса об избрании в отношении меня меры пресечения и в иных случаях, предусмотренных п. 1-3 и 10 ч. 2 ст. 29 УПК РФ;

17) знакомиться с протоколом судебного заседания и подавать на него замечания;

18) обжаловать приговор, определение, постановление суда и получать копии обжалуемых решений;

19) получать копии принесенных по уголовному делу жалоб и представлений и подавать возражения на эти жалобы и представления;

20) участвовать при рассмотрении вопросов, связанных с исполнением приговора;

21) защищаться иными средствами и способами, не запрещенными УПК РФ.

Обвиняемый

Защитник

(подпись)

(подпись)

Постановление объявил, права разъяснил, копию настоящего постановления обвиняемому и его защитникам вручил « 14 » октября 2016 года.

Следователь

Копия настоящего постановления направлена заместителю Генерального прокурора Российской Федерации « 14 » октября 2016 года.

Следователь

Копию постановления получил
14. 10. 2016г.

Бытенский В.О.