# EXHIBIT 19

Decree on Prosecution

Moscow                                                        July 10, 2017

    Investigator for  Particularly Important Cases of the Main Investigations Department of the Investigative Committee of the Russian Federation Major of Justice D.Kh. Khuramshin, having studied materials of criminal case No. 11602007703000015,

## HAS ESTABLISHED THE FOLLOWING:

    Leontiev Sergey Leonidovich, born on July 11, 1965 in Moscow, being the person who designed the crime and guided commission thereof, as well as created an organized group, has committed misappropriation, that is embezzlement of the other's funds entrusted to a perpetrator (securities and monetary funds of Probusinessbank CJSB OJSC (the Bank)) committed by a person who used its official position, by an organized group in an especially large amount under the following circumstances.

    Probusinessbank, registered office: Moscow, Pudivkina st., 3, Primary State Registration Number (OGRN) 1027700508978, founded on 25.11.1992 and registered in the Book for State Registration of Credit Institutions of the Bank of Russia on 07.07.1993, correspondent account No. 30101810600000000986 opened with the Main Branch of the Bank of Russia for the Central Federal District of Moscow (hereinafter, the MB of the BoR for the Central Federal District of Moscow), BIC, Taxpayer Identification Number (INN) 7729086087, conducted its activity based on general banking licenses No. 2412 dd. 28.04.2003   and dd. 13.08.2012.

    From 2009 to 2010, but not later than 23.06.2010, S.L. Leontiev, who together with A.D. Zheleznyak has been the actual owner of Probusinessbank from the moment of its foundation, decided to create an organized group in order to realize his criminal intent and embezzle the Bank's funds via misappropriation. The group included A.D. Zheleznyak, a shareholder and the Chairman of the Management Board of the Bank who exercised managerial, organizational and management, as well as administrative and economic functions, that is a person to whom the Bank's assets and funds were entrusted; Vice-president for finances - Deputy Chairman of the Management Board A.V. Lomov, and other unidentified persons having their own roles in the crime.

    In accordance with the Charter of the above stated credit institution approved by the General Meeting on  28.06.2013,

2

the Bank is a credit organization incorporated as open joint-stock company. The purpose of the Bank's activity is making profit. Based on the license issued by the Bank of Russia, the Bank may take monetary funds of individuals and legal entities to deposits, invest the attracted funds on its behalf and at its own expense, grant sureties for third parties providing for a discharge of liabilities in monetary form. The Bank has separate assets recognized on its own books, including assets transferred to the Bank by the shareholders as consideration for shares.

Following the instructions of S.L. Leontiev and A.D. Zheleznyak, unidentified members of the organized group entered into a client agreement with a brokerage company Otkritie Securities Limited on 23.06.2010 in an unidentified location in order to implement their criminal plan. Under this agreement, the Bank acceded to its business terms and conditions as a professional client and qualified investor (hereinafter, terms of business).

Knowing for a fact that under EU directive No. 2002/47/EC dd. 06.06.2002 On Financial Collateral an ownership right to monetary funds and securities on brokerage accounts shall vest in a broker and in accordance with the terms of business, the Bank, from June 2010 to August 2015, placed RUB 3,306,173,280.43 and the following securities on its brokerage accounts opened with OSL: federal bonds of the Ministry of Finance of the Russian Federation, issue RF42 - 148 bonds, RF28 - 42 200, and RF42 - 148; US Treasury bonds, issue USDPE2018-1 - 799 600 bonds, issue USDPE2020-2 - 380 000, and issue USDPE2024-1 - 130 000; eurobonds of Sberbank of Russia, issue SBCLE2022 - 18 000 bonds; eurobonds of VEB, issue VEBFE2022 - 12 000 bonds; eurobonds of Gazprombank, issue GBPEE2017 - 27 910 bonds; depositary receipts of GAZPROM NEFT JSC (ADR), issue GAZND0 - 37 000; depositary receipts of LUKOIL (ADR), issue LKOHD - 10 500; GDR of MEGAFON OJSC/GDR, issue MFOND1 - 5 000; GDR of GAZPROM, issue GAZPD0 - 90 000; eurobonds of VTB Capital S.A., issue VTBCE2022 - 26 800 for the total amount of RUB 19,989,981,786.96.

By reason of such actions, the Bank obtained rights of claim to OSL against similar assets in the form of securities or monetary funds.

At the same time, starting from 06.08.2009, members of the organized group

facilitated entering of Ambika Investments Limited controlled by them into similar terms of business with OSL in an unidentified location.

Unidentified members of the organized group acting on behalf of Ambika Investments Limited with common intent to embezzle the Bank's funds via misappropriation entered into the following securities lending agreements with OSL in an unidentified location: No. 1 dd. 29.11.2012 for USD 39,648,125, No. 2 dd. 29.11.2012 for USD 59,986,316.30; No. 3 dd. 20.12.2012 for USD 99,500,000 ; No. 4 dd. 15.03.2013 for USD 98,872,651.4, for the total amount of USD 298,007,092.7, and No. 1/MLA dd. 11.03.2014 where the amount of loan had been fixed based on separate applications (requests) from Ambika Investments Limited.

At the same time, knowing for a fact that Ambika Investments Limited did not have any real capacity to meet its obligations to repay (return) the borrowed securities to OSL under the above stated loan agreements and did not intend to do so, A.D Zheleznyak and A.V. Lomov acting in cooperation with S.L. Leontiev and other unidentified persons, continuing to realize their intent to embezzle the Bank's funds via misappropriation, signed addenda (supplementary agreements) dd. 29.11.2012, 20.12.2012, 15.03.2013, and 11.03.2014 in an unidentified location. Under these agreements, they pledged the Bank's securities deposited with OSL as collateral (security) for Ambika Investments Limited obligations under all its contracts with this brokerage company.

Then, unidentified accomplices acting on behalf of Ambika Investments Limited had been selling borrowed securities back to OSL without any intention to repurchase them jointly and in cooperation with S.L. Leontiev, A.D. Zheleznyak, and other unidentified persons, based on the terms of business and Global Master Repurchase Agreement/GMRA MA dd. 16.01.2013.

As the result of this interrelated transactions, USD 337,492,834.38 had been transferred to settlement (transactions) account No. 40807840400000030269 of Ambika Investments Limited opened the Bank located at Moscow, Pudivkina st., 3, from settlement (transactions) account No. GB97CHAS60924238003101 of OSL opened with JPMORGAN CHASE BANK, N.A. (EUROPEAN HEADQUARTERS) LONDON, CHASGB2L, from 30.11.2012 to 25.04.2014 as a consideration for securities in repurchase transactions, became available for the members of the organized group.

As the result of this consistent and interrelated actions by

4

the members of the organized group, on 12.08.2015, the following securities, which served as a collateral (security) for Ambika Investments Limited to OSL, were debited from (written off) brokerage account of Probusinessbank No. PB1594 opened with Otkritie Capital International Limited (until 18.06.2015 - OSL) due to a deliberate default of Ambika Investments Limited:

- US Treasury bonds, issue USDPE2018-1 - 799 600 bonds, ISIN US912828H375, value RUB 5,153,543,992.12;

- US Treasury bonds, issue USDPE2020-2 - 380 000 bonds, ISIN US912828J504, value RUB 2,452,889,102.28;

- US Treasury bonds, issue USDPE2024-1 - 130 000 bonds, ISIN US912828G385, value RUB 848,575,073.98;

- federal bonds of the Ministry of Finance of the Russian Federation, issue RF22 - 153 bonds, ISIN XS0767472458, value RUB 1,938,321,386.10;

- federal bonds of the Ministry of Finance of the Russian Federation, issue RF28 - 42 200 bonds, value RUB 4,392,177,192.89;

- eurobonds of Gazprombank, issue GBPEE2017 - 27 910 bonds, ISIN XS078329122, value RUB 1,838,664,857.25;

- eurobonds of VEB, issue VEBFE2022 - 12 000 bonds ISIN XS0800817073, value RUB 706,585, 740.31;

- eurobonds of Sberbank of Russia, issue SBCLE2022 - 18 000 bonds, ISIN XS0743596040, value RUB 1,169,114,334.17;

Consequently, Probusinessbank became unable to claim back the above stated securities or similar securities or the funds in the total amount of RUB 18,498,871,679.10.

Furthermore, on 29.03.2013, A.V. Lomov, continuing to realize the criminal intent in order to embezzle the Bank's funds via misappropriation, following the instructions of S.L. Leontiev and A.D. Zheleznyak, being authorized by power of attorney No. 1580/2 dd. 14.12.2012, acting on behalf of the Bank, entered into client agreement No. 5046/13 on provision of financial services for qualified investors (hereinafter Agreement No. 5046/13) with BrokerCreditService (Cyprus) Limited (BCS) in an unidentified location.

Knowing for a fact that under EU directive No.

5

2002/47/EC dd. 06.06.2002 On Financial Collateral an ownership right to monetary funds and securities on brokerage accounts shall vest in a broker and in accordance with Agreement No. 5046/13, the Bank, from 29.03.2013 to 01.08.2015, placed RUB 555,350,178.03 and the following securities for the total amount of RUB 9,764,653,000 on its brokerage accounts opened with BCS: federal bonds of the Ministry of Finance of the Russian Federation: issue RF42, US Treasury bonds: issue USDPE2020, USDPE2020-1, and USDPE2024.

By reason of such actions, members of the organized group obtained rights of claim to BCS against similar assets in the form of securities or monetary funds.

At the same day, on 29.03.2013, members of the organized group facilitated entering of Merrianol Investments Limited, a Cyprus-based company controlled by the members, into similar agreement No. 5047/13 with BCS in an unidentified location.

Unidentified members of the organized group acting on behalf of Merrianol Investments Limited and with common intent to embezzle the Bank's funds via misappropriation entered into Securities Lending Agreement No. 120412-1 dd. 12.04.2013 with BCS in an unidentified location. Under this Agreement, loan in the total amount of RUB 8,432,981,305.09 had been systematically provided based on separate applications from Merrianol Investments Limited.

At the same time, knowing for a fact that Merrianol Investments Limited did not have any real capacity to meet its obligations to repay (return) the borrowed securities to BCS under the above stated loan agreement and did not intend to do so, A.V. Lomov acting in cooperation with S.L. Leontiev, A.D. Zheleznyak, and other unidentified persons, continuing to realize their intent to embezzle the Bank's funds via misappropriation, signed an addendum (supplementary agreement) to Agreement No. 5046/13. on 12.04.2013 in an unidentified location. Under this agreement, they pledged the Bank's securities deposited with BCS as collateral (security) for Merrianol Investments Limited obligations under all its contracts with this brokerage company.

Then, unidentified accomplices acting on behalf of Merrianol Investments Limited had been selling borrowed securities back to BCS without any intention to repurchase them jointly and in cooperation with S.L. Leontiev, A.D. Zheleznyak, and other unidentified persons, based on Agreement No. 5047/13 dd. 29.03.2013.

As the result of this interrelated operations, USD 327,608,698.73 had been transferred to settlement (transactions) account No. LV79KBRB1111215989001 of Merrianol Investments Limited

6

opened with Trasta Komercbanka Riga located at Palasta iela 1, Riga LV-1050, Latvija from settlement (transactions) accounts of BCS No. 40807840400000105771 opened with BKS-Investment Bank located at Novosibirsk, Sovetskaya st., 37, and No. NL85DEUT0265021774 and NL35DEUT0265064481 opened with Deutsche Bank A.G. Amsterdam located at: Oval Tower, De Entrée 99-197, 1101 HE Amsterdam, Nederland from 18.04.2013 to 01.07.2014 as a consideration for securities in repurchase transactions and became available for the members of the organized group.

As the result of actions committed by the members of the organized group, on 12.08.2015, the following securities, which served as a collateral (security) for Merrianol Investments Limited obligations to BCS, were debited from (written off) brokerage accounts of Probusinessbank No. 10268 and 10278 opened with BCS due to a deliberate default of Merrianol Investments Limited:

- US Treasury bonds, issue USDPE2018 - 135 000 bonds, ISIN US912828HR40, value RUB 943, 731,972.63;

- US Treasury bonds, issue USDPE2020 - 481 062 bonds, ISIN US912828MP29, value RUB 3,341, 679,158.94;

- US Treasury bonds, issue USDPE2020-1 - 158 000 bonds, ISIN US912828H524, value RUB 980,178,730.06;

- US Treasury bonds, issue USDPE2024 - 203 000 bonds, ISIN US912828WJ58, value RUB 1,253,483,349.14;

Consequently, Probusinessbank became unable to claim back the above stated securities or similar securities or the funds in the total amount of RUB 6,519,073,210.77.

Members of the organized group under the leadership of S.L. Leontiev have caused damages in the amount of 25,017,944,889.87 to Probusinessbank, which equals to the value of the Bank's misappropriated property in the form of securities and rights to claim back the securities or similar securities, or monetary funds.

To that end, S.L. Leontiev has organized misappropriation (peculation), that is embezzlement of the other's property entrusted to a perpetrator committed by a person through his official position, in an especially large scale - the crime stipulated in Part 3 Article 33, Part 4 Article 160 of the Criminal Code of the Russian Federation.

7

Apart from that, S.L. Leontiev, being a person who organized and directed the commission of the crime and created an organized group, has embezzled via unlawful appropriation the entrusted funds of the Bank in an especially large amount under the following circumstances.

Pursuant to Article 1 of Federal Law On Banks and Banking Activity No. 395-1 dd. 02.12.1990, bank is a credit institution that has an exclusive right to carry out the following banking activities in combination: taking monetary funds from individuals and legal entities to deposits, investing these funds on its behalf and at its own expense on conditions of repayment, interest payment, and maturity, opening and maintaining accounts of individuals and legal entities.

In accordance with the Charter of the above stated credit institution approved by the General Meeting on 28.06.2013, the Bank is a credit organization incorporated as open joint-stock company. The purpose of the Bank's activity is making profit. The Bank may take monetary funds of individuals and legal entities to deposits and invest the attracted funds on its behalf and at its own expense. The Bank has separate assets recognized on its own books (separate balance sheet), including assets transferred to the Bank by the shareholders as consideration for shares.

By 2014, S.L. Leontiev and A.D. Zheleznyak owned controlling interest of more than 50%; and they, as individuals who had shares of Alivikt Holding Limited, a Cyprus-based company, in their ownership, secured the right to perform strategic and operative management of Probusinessbank CJSB and other affiliated legal entities, which were a part of the financial group.

The controlling interest allowed them to hold key managerial positions at the Bank.

For instance, based on the Charter, S.L. Leontiev organized the work of the Board of Directors and chaired the General Meeting. At the same time, since the Bank's creation and based on the resolution of the Board, which he was in charge of, he was the President of Probusinessbank CJSB. This enabled him to identify priority activities of the Bank. A.D. Zheleznyak who was the Chairman of the Management Board and the Bank's Vice-president undertook to be in charge of the Bank's current activities.

In accordance with the Charter of the above stated credit institution approved by the General Meeting on 28.06.2013, the Chairman of the Management Board shall in charge of the Bank's current activity, act on behalf of the Bank without powers of attorney, enter into transactions on behalf of the Bank,

8

dispose of the Bank's property and assets, issue and sing PoA's on behalf of the Bank at its own discretion in accordance with current legislation and the Charter, etc. Therefore, A.D. Zheleznyak was the person performing managerial functions in Probusinessbank CJSB and having organizational and management as well as administrative and economic functions. Thus, the Bank's property and assets had been entrusted to him.

S.L. Leontiev and A.D. Zheleznyak, who fully controlled the Bank's activity, created an organized group under their leadership in order to embezzle via unlawful appropriation the Bank's monetary funds entrusted to A.D. Zheleznyak starting from September 2014 in Moscow (the exact date and location have not been identified). Within the stated period, the organized group under their overall leadership included Ya.V. Alekseev, V.V. Kazantsev, A.V. Lomov, N.V. Alekseev, S.V. Kalachev, M.M. Krylova, K.V. Artemov, and other unidentified persons, each with his/her own role in the group.

In order to attain the stated goal, members of the organized group under the leadership of S.L. Leontiev and A.D. Zheleznyak developed a scheme to embezzle the funds and allocated responsibilities among the parties to the crime (criminal participants):

- S.L. Leontiev was the principal shareholder of Probusinessbank CJSB with 40.15% of shareholding interest (as of 31.12.2014). He had been repeatedly re-elected as the President of the Bank by the Board of Directors, including in accordance with the minutes of the Board's meeting No. 10 dd. 25.07.2014. In fact, he was engaged in strategic management of the Bank's activity. Leontiev's task was, together with A.D. Zheleznyak, to estimate the amount of funds to be embezzled, specify the method of embezzlement, give orders to transfer the funds to the settlement (transactions) accounts of the straw (false/fake) borrowers, exercise overall control over the all members of the organized group when committing the crime, and use the embezzled funds at their own discretion, including the use thereof for the benefit of members outside the Russian Federation;

- A.D. Zheleznyak was the principal shareholder of Probusinessbank CJSB with 11.05% of shareholding interest (as of 31.12.2014). He was appointed as the Chairman of the Management Board according to the Bank's Order No. 181-K dd. 02.06.1993. At the same time, he had been the First Vice-president of the Bank and, in accordance with the Charter, had managerial powers and authorities over the Bank's activity as well as to enter into transaction on behalf of the Bank, dispose of the Bank's assets and property. Zheleznyak's task was, together with S.L. Leontiev, to estimate the amount of funds to be embezzled, specify the method of embezzlement, sign a resolution to grant a loan to IvSpetsGarant Innovative Construction Company Limited Liability Company (OOO) (hereinafter, IvSpetsGarant), issue PoAs to his fiduciaries (intermediaries) and those of S.L. Leontiev, using which the members of the organized group were supposed to sign loan agreements and other accompanying

documents, give orders to transfer the funds to the settlement (transactions) accounts of the straw (false/fake) borrowers, exercise overall control together with S.L. Leontiev over the all members of the organized group when committing the crime, and use the embezzled funds at their own discretion;

- Ya.V. Alekseev was appointed as the Vice-president for corporate finances according to the Bank's Order No. 5330-к dd. 19.10.2011. Alekseev's task was to develop the embezzlement scheme, exercise control over the employees of the Department for Corporate Finances subordinated to him, who chose straw borrowers from the list of the companies controlled by the members of the organized group as well as other companies in order to use them in their embezzlement scheme that was disguised as provision of loans (lending), give orders to produce credit reports to the subordinated employees in order to give a veneer of legality to the provision of credit funds and to give an order to K.V. Artemov subordinated to him to transfer the embezzled funds to the settlement (transactions) accounts of the controlled legal entities and accumulate the funds on the accounts of Personnel+ LLC (OOO) and Life Collection Agency LLC (OOO) for its further transfer to Vermenda Holdings Limited, a Cyprus-based company, pay for illegal services rendered by O.E. Papakhin, who made available legal entities controlled by him for fictitious lending;

- V.V. Kazantsev was appointed as the Vice-president for corporate business development according to Bank's Order No. 4846-к dd. 13.12.2007. As an intermediary of A.D. Zheleznyak, Kazantsev was tasked to sign a knowingly unenforceable, irrecoverable, and unsecured medium-term lending contract and accompanying documents with the straw borrower controlled by members of the organized group, that is IvSpetsGarant, on behalf of the Bank, acting by virtue of the PoA that authorised him to dispose of the Bank's property, based on the instructions received from the leaders of the organized group, using his official position in order to embezzle the funds;

- A.V. Lomov was appointed as the Vice-president for finances and Deputy Chairman of the Management Board according to the Bank's Order No. 564-к dd. 23.07.2001. Lomov's task was to sign a knowingly unenforceable, irrecoverable, and unsecured medium-term lending contract and accompanying documents with the straw borrower, that is Tsentr Torgovli LLC (OOO), on behalf of the Bank, acting by virtue of the PoA that authorised him to dispose of the Bank's property, based on the instructions received from the leaders of the organized group, using his official position in order to embezzle the funds;

- N.V. Alekseev was appointed as the Head of the Department for Corporate Finances according to the Bank's Order No. 1130-к dd. 16.02.2015.

Aleskeev's task was to sign a knowingly unenforceable, irrecoverable, and unsecured medium-term lending contract and accompanying documents with the straw borrowers, that is Engineering-Royalty LLC (OOO), Vostok-Cargo-Plus LLC (OOO), and NewHowTrade LLC (OOO) on behalf of the Bank, acting by virtue of the PoA that authorised him to dispose of the Bank's property, based on the instructions received from the leaders of the organized group, using his official position in order to embezzle the funds;

- K.V. Artemov was appointed as the Head of the Directorate for Project Financing of the Department for Corporate Finances according to the Bank's Order No. 3711-к dd. 01.07.2014.

Artemov's task was, based on the instructions received from Ya.V. Alekseev, to monitor financial standing of the companies controlled by and affiliated to the members of the organized group, obtain information about the arrival of funds, which were embezzled via provision of loans to the straw persons, to the specified controlled companies, give orders to transfer the funds to, and accumulate them on, the accounts of Life Collection Agency and Vermenda Holdings Limited, and transfer a portion of the monetary funds as a remuneration for making available Tsentr Torgovli and NewHowTrade as the straw borrowers to O.E. Papakhin, who provided assistance in embezzling the funds to the members of the organized group;

S.V. Kalachev was the CEO of Life Collection Agency.

This person, having an advance knowledge about the fact that the members of the organized group under the leadership of S.L. Leontiev and A.D. Zheleznyak had been embezzling the Bank's funds via unlawful appropriation, made available an account in Life Collection Agency for accumulation of the embezzled funds disguised as sham credit/repayment contracts. Then, the embezzled funds had been transferred to the settlement (transactions) account of Vermenda Holdings Limited, a Cyprus-based company, controlled by the members of the organized group. Kalachev's task was also to sign sham credit contracts, which were used to transfer the embezzled funds between shell companies and give a veneer of legality to the transactions, on a regular basis and as necessary;

- M.M. Krylova was appointed as the Head of the Shareholders and Subsidiaries Cooperation Directorate according to the Bank's Order No. 6492-к dd. 19.11.2008. She was in charge of purposefully created Balance Accounting Centre LLC (OOO). Employees of this company, that is D.A. Samoylenko and O.M. Yachina, who had no knowledge about the criminal intent of the accomplices in the crime, prepared documents that supported settlements between the companies used by the members of the organized group as straw borrowers and

11

lenders in order to transfer the funds. The employees also prepared accounting statements and tax reporting of the companies in order to submit them to the supervisory authorities of the Russian Federation and managed accounts of the controlled legal entities.

Other unidentified persons' task was to commit other actions to ensure the organized group's activity and provide other assistance to the accomplices when committing the crime. This included supplying information, instruments of the crime, eliminating obstacles that prevented commission thereof, covering up the crime, and making available legal entities controlled by them, both residents and non-residents of the Russian Federation, to transfer the embezzled funds to the accounts thereof and distribute them between the accomplices.

This organized group, members of which joined together in advance to embezzle the funds via appropriation, was sustainable due to the fact that its members had long known each other and had permanent connection between each other. This was also due to their working relations, commonality of the mercenary interest, strict segregation of duties and functions both in anticipation of the embezzlement and when realizing their criminal intent, and thoroughly developed embezzlement scheme.

Furthermore, in Moscow and Ivanovo of Ivanovo Region (the more exact date and location have not been identified), members of the organized group engaged CEO of IvSpetsGarant I.P. Polikarpov, CEO of Engineering-Royalty A.V. Simakov, CEO of Vostok-Cargo-Plus A.V. Danukin, actual head of Aimak Companies Group O.E. Papakhin, CEO of Tsentr Torgovli L.B. Shpagina, CEO of NewHowTrade O.V. Kravchenko, and other unidentified persons as accessories to the crime as necessary and from time to time, from September 2014 to August 2015.

In September 2014, the exact time has not been identified, S.L. Leontiev and A.D. Zheleznyak developed an action plan in order to embezzle the Bank's funds in an especially large amount via unlawful appropriation, acting out of mercenary interest and with purpose of personal enrichment.

Ya.V. Alekseev, using human resources of the Bank and acting in accordance with the instructions received from S.L. Leontiev and A.D. Zheleznyak, used previously established legal entities, which did not engage in any real economic activity and were fully controlled by the members of the organized group. The Bank's employees and other persons had been appointed as directors of these entities receiving a nominal remuneration

of RUB 10,000 - 20,000 per month. These legal entities included: Engineering-Royalty, Elso, Personnel +, Alliance, Iston, PC-Technologies, Sunrise.

Members of the organized group also used legal entities affiliated to the Bank and controlled by the Bank's managers, that is IvSpetsGarant, Probusiness-Development, Life Collection Agency, when realizing their criminal intent in order to embezzle the funds.

Furthermore, within the stated period of time and in order to avoid suspicion that may be raised by the Bank of Russia, members of the organized group used Tsentr Torgovli, NewHowTrade, Eskada Financial Centre, ProgmaTrade controlled by O.E. Papakhin, who agreed to act as an accessory to the crime for a monetary remuneration and contribute to the commission of the crime by making available Tsentr Torgovli and NewHowTrade for receiving credit funds intended for embezzlement, entering into sham financial transaction using the stated funds and transferring them to the settlement (transactions) accounts of PC-Technologies and Sunrise.

Settlement accounts of the stated legal entities used to transfer the funds were opened with Probusinessbank CJSB. Except for NewHowTrade, all other entities, that is Tsentr Torgovli, Eskada Financial Centre, and ProgmaTrade, had been managed by the Bank's unidentified employees, as well as D.A. Samoylenko and O.M. Yachina in the offices located at: Moscow, Dobrolyubov st., h. 3, bld. 1

The general idea of the crime was committing wilful acts in order to provide knowingly irrecoverable (non-performing), unsecured by pledge loans in especially large amounts to the controlled companies, transferring the credit funds to the loan and settlement (transaction) accounts of the said companies, and then transferring the funds disguised as payments in sham transactions in order to cover up the committed crime to the accounts of the controlled legal entities.

Then, the embezzled funds in RUB had been fully converted in USD and transferred to the settlement (transactions) account of Vermenda Holdings Limited controlled by the members of the organized group, not engaged in any real economic activity, non-resident of the Russian Federation. Vermenda Holdings Limited is located at: Griva Digeni, P.C. 3101, Limassol, Cyprus. The settlement account was opened with

Trasta Komercbanka Riga, a non-resident credit organization, located at: Palasta iela 1, Riga LV-1050, Latvija.

In order to give a veneer of legality to the transactions, provision of loans had been documented and had been legal in its nature. In fact, however, the documents contained false information, and parties to the crime committed all the actions in order to realize their criminal intent, that is to embezzle the Bank's funds in an especially large amount via appropriation.

When entering into medium-term lending contracts, parties to such contracts were supposed to act in accordance with transaction rules and based on Article 10 of the Civil Code of the Russian Federation which provides for reasonable actions and good faith of the parties participating in civil-law relations. Thus, persons singing the medium-term lending contracts, with Probusinessbank's CJSB funds as the subject matter, were obliged to act in good faith and do not undertake any actions related to fraud, including misstatements about the intended use of a loan.

Therefore, S.L. Leontiev and A.D. Zheleznyak, who were in charge of the organized group, and Ya.V. Alekseev, V.V. Kazantsev, A.V. Lomov, N.V. Alekseev, S.V. Kalachev, M.M. Krylova, K.V. Artemov, and other members of the organized group acting under the leadership of S.L. Leontiev and A.D. Zheleznyak committed their actions in order to realize their joint intent to seize the funds without any compensation and to inflict harm on the other person (Probusiness CJSB) in violation of Article 10 of the Civil Code (Limits of Exercise of Civil-law Rights). This Article prohibits any actions of individuals and legal entities committed only in order to inflict harm on another person and abuses of rights in other forms. Therefore, the stated seizure of funds is illegal.

Acting within their roles in the organized group, V.V. Kazantsev, Lomov A.V., and N.V. Alekseev entered into medium-term lending contracts in order to embezzle the funds and give a veneer of civil-law relations with the purpose to follow the illegal instructions received from the leaders of the organized group, that is S.L. Leontiev and A.D. Zheleznyak. Thus, they wilfully violated Article 1 of Federal Law No. 395-1 dd. 02.12.1990 (On Banks and Banking Activity). Under this Law, a credit organisation shall invest the funds attracted from individuals and legal entities on its behalf and at its own expense on conditions of repayment, interest payment, and maturity.

This allowed the members of the organized group acting on behalf of the Bank but against its interests to illegally and irrecoverably convert without compensation the funds to their own use by transferring the funds to the ownership

14

of the shell companies controlled by the accomplices and, therefore, embezzle the funds via unlawful appropriation.

For instance, before 16.09.2014 (the more exact date has not been identified), V.V. Kazantsev, being at his workplace located at: Moscow, Volgogradskiy avenue, 43, bld. 3, acting on behalf of the Bank by virtue of PoA 610/1 dd. 16.07.2014 that was issued by one of the leaders of the organized group, that is the Chairman of the Management Board (A.D. Zheleznyak), under which V.V. Kazantsev receives authorities to enter into credit contracts and dispose of the Bank's funds, that is to perform managerial functions of administrative and economic nature related to disposal of the Bank's funds entrusted to him, carrying out instructions of the group's leaders, that is S.L. Leontiev and A.D. Zheleznyak, acting wilfully and in cooperation with other members of the organized group, using his official position, signed Medium-Term Lending Contract No.211-810/14ю dd. 15.09.2014 with IvSpetsGarant controlled by the members of the group and represented by CEO I.P. Polikarpov. Under the Contract, the Bank undertakes to grant a loan to the company through the lines of credit with maximum credit limit of RUB 500,000,000.

I.P. Polikarpov contributed to the commission of the crime by providing information and eliminating obstacles that may prevent such crime. He was not a part of the organized group. At the same time, he, being at his workplace located at: Ivanovo, Sheremetevskiy avenue. h. 153A, singed Medium-Term Lending Contract No. № 211-810/14ю dd. 15.09.2014. He realized that the company headed by him would not direct the obtained credit funds to its economic activity, Rather, these credit funds transferred to his company would be embezzled.

On 15.09.2014, in pursuance of the Contract and in accordance with the request submitted on behalf of I.P. Polikarpov, as well as with Transaction Memo No. 1018062751 dd. 15.09.2014, monetary funds in the amount of RUB 280,000,000 had been transferred from loan account of IvSpetsGarant No. 45207810600000127604 to settlement account No. 40702810308180027604 of this company opened with the Bank located at Moscow, Pudovkina st., h. 3.

At the same day after the funds had been credited to account of IvSpetsGarant No. 40702810308180027604 opened with the Bank, chief accountant of the company E.S. Stulova, who had no knowledge about the criminal intent of the members of the organized group, having received instructions from unidentified employees

of Probusiness-Development via e-mail and in coordination with I.P. Polikarpov, transferred the above stated funds in several payments in order to give a veneer of legality to the flow of credit funds of RUB 280,000,000. The funds had been transferred among other monetary funds:

- RUB 24,157,808.21 as repayment of interest and principal amount under previously executed sham loan agreements No. 26/08/14-И dd. 26.08.2014 and No. 14/07/14-И dd. 14.07.2014, and payment orders No. 751, 752, 763, 764 dd. 15.09.2014 to settlement account No. 40702810300110117621 of Personnel+ controlled by the members of the organized group and not engaged in any real economic activity, opened with the same Bank;

- RUB 34,471,698.63 as repayment of interest and principal amount under previously executed sham loan agreements No. 30/06/14 dd. 30.06.2014, No. 31/07/14 dd. 31.07.2014, No. 29/08-14 dd. 29.08.2014, and payment orders No. 747, 748, 749, 750, 757, 758, 759, 760, 761, 762 dd. 15.09.2014 to settlement account No. 40702810300110117621 of Life Collection Agency controlled by a member of the organized group S.V. Kalachev opened with the same Bank;

- RUB 222,016,835.04 as a repayment under previously executed sham agreement dd. 30.06.2012 on termination of Investment Contract No. ИЛ-7/28-М-08 dd. 28.05.2008, payment orders No. 765, 766 dd. 15.09.2014 to settlement account No. 40702810300000021377 of Probusiness-Development affiliated to the Bank, opened with the same Bank.

At the same day, after the funds had been credited to the settlement account of Probusiness-Development, unidentified employees of the Bank, who had the access to the Bank-Client (internet banking) system, continued realizing the criminal intent of the members of the organized group. Using payment orders No. 853, 852, 856, 857, 861 dd. 15.09.2014, they transferred a portion of the embezzled funds in the amount of RUB 221,370,994.73 as repayment of principal amount and accrued interest under  previously executed sham interest-bearing loan agreements No. 16/11/11-ПД dd. 16.11.2011, No. 30/11/11-ПД dd. 30.11.2011, No. 0/11/2013-ПД dd. 30.12.2013 to settlement account No. 40702810800020115239 of ELSO, an entity controlled by the members of the organized group and not engaged in any real economic activity, opened with the same Bank.

Then, D.A. Samoylenko, who had no knowledge about the criminal intent of the members of the organized group, based on the instructions received from unidentified persons, in coordination with M.M. Krylova, and using Payment Order No. 321 dd. 16.09.2014, transferred a portion of the embezzled funds in the amount of RUB 221,000,000 disguised as repayment of principal amount and interest under previously executed sham Interest-Bearing Loan Agreement No. 07/07/14 dd. 07.07.2014 from the above stated settlement account of ELSO to settlement account No. 40702810300110117621 of Life Collection Agency, which was controlled

by a member of the organized group S.V. Kalachev, opened with the same Bank.

On 16.09.2014, that is on the next day after the Bank's funds had been transferred to the settlement account of Personnel+, D.A. Samoylenko, following the instructions received from unidentified persons, acting in coordination with a member of the organized group M.M. Krylova, and using Payment Order No. 133 dd. 16.09.2014, transferred a portion of the embezzled funds in the amount of RUB 24,157,808.21. The funds had been transferred among the monetary funds in the amount of RUB 499,500,000 as a loan under sham Interest-Bearing Loan Agreement No. 16/09/14-KA dd. 16.09.2014 signed by S.V. Kalachev. The loan had been granted to Life Collection Agency and transferred to settlement account No. 40702810300110117621 of this organization opened with the same Bank.

On 16.09.2014, that is on the same day after the funds had been transferred to the settlement account of Life Collection Agency, D.A. Samoylenko, using Payment Order No. 1563 dd. 16.09.2014, transferred the embezzled funds in the amount of RUB 280,000,000. The funds had been transferred among the monetary funds in the amount of RUB 608,000,000 as repayment of principal amount under sham Credit Contract No. 30-08/13 dd. 30.08.2013 previously executed by S.V. Kalachev. The funds had been transferred to settlement account No. 40807810900010030608 of Vermenda Holdings Limited controlled by the members of the organized group and not engaged in any real economic activity, opened with the same Bank.

Then, on 18.09.2014, embezzled funds in the amount of RUB 280,000,000, as a portion of other funds of RUB 578,655,792, had been converted in USD by unidentified persons controlling settlement account No. 40807810900010030608 of Vermenda Holdings Limited. Simultaneously, USD 15,080,000 had been transferred to foreign currency account No. 40807840200010030608 of Vermenda Holdings Limited, a non-resident company. A portion of these funds, USD 13,000,000, had been transferred via payment order No. 217 dd. 18.09.2014 to account No. LV63KBRB1111215921001of this company opened with Trasta Komercbanka Riga located at: Palasta iela 1, Riga LV-1050, Latvija.

After the funds had been transferred to the account of Vermenda Holdings Limited opened with Trasta Komercbanka Riga and having disguised, through multiple financial transactions, the real intended purpose of the loan in the amount of RUB 280,000,000 granted to IvSpetsGarant, the leaders of the organized group, that is S.L. Leontiev and A.D. Zheleznyak, had a real opportunity to manage the funds at their own discretion.

17

Therefore, the members of the organized group under the leadership of S.L. Leontiev and A.D. Zheleznyak appropriated RUB 280,000,000 of the Bank's funds by providing a loan to IvSpetsGarant controlled by the members in September 2014. Thus, the credit organization sustained damages in the amount of RUB 280,000,000.

Before 10.04.2015, Ya.V. Alekseev chose Engineering-Royalty as a shell company that was supposed to receive a loan from the Bank in order to implement the embezzlement plan developed by S.L. Leontiev and A.D. Zheleznyak. Engineering-Royalty did not engage in any economic activity. Starting from 14.10.2014, the only shareholder and CEO of the company was a former employee of the Bank A.V. Simakov, who previously was a senior specialist for bad loans of Moscow Regional Directorate of Probusinessbank CJSB.

A.V. Simakov acted out mercenary interest, was not a member of the organized group, and represented the company headed by him. At the same time, by supplying information and eliminating obstacles that may prevent the embezzlement, he agreed to provide assistance to the members of the group in order for them to embezzle the Bank's funds via unlawful appropriation.

Continuing to realize the criminal intent to embezzle the Bank's funds in an especially large amount, a member of the organized group, that is the Head of the Department for Corporate Finances (N.V. Alekseev), being at his workplace at: Moscow, Butyrskaya st., 62, acting on behalf of the Bank by virtue of PoA 120/2 dd. 17.02.2015 that was issued by one of the leaders of the organized group, that is the Chairman of the Management Board (A.D. Zheleznyak), under which N.V. Alekseev receives authorities to enter into credit contracts and dispose of the Bank's funds, that is to perform managerial functions of administrative and economic nature related to disposal of the Bank's funds entrusted to him, carrying out instructions of the group's leaders, that is S.L. Leontiev and A.D. Zheleznyak, acting wilfully and in cooperation with other members of the organized group, using his official position, signed Medium-Term Lending Contract No.044-810/15ю dd. 09.04.2015 with Engineering-Royalty controlled by the members of the group and represented by CEO A.V. Simakov. Under the Contract, the Bank undertakes to grant a loan to the company through the lines of credit with maximum credit limit of RUB 1,000,000,000.

A.V. Simakov realized that the purpose of the loan was knowingly false and that the loan provision itself represented an embezzlement method. Within the stated period of time, being near

18

his residential address at: Mosow, Vysokovoltoviy lane, h. 1., bld, 8, he signed Medium-Term Lending Contract No. № 044-810/15to dd. 09.04.2015.

On 09.04.2015, in pursuance of the Contract and in accordance with the request submitted on behalf of A.V. Simakov, as well as with Transaction Memo No. 1019700947 dd. 09.04.2015, monetary funds in the amount of RUB 600,000,000 had been transferred from loan account of Engineering-Royalty No. 45204810400000135572 to settlement account No. 40702810900110035572 of this company opened with the Bank located at Moscow, Pudovkina st., h. 3.

At the same day after the funds had been credited to settlement account of Engineering-Royalty No. 40702810900110035572, O.M. Yachina, who had no knowledge about the criminal intent of the members of the organized group, following the instructions received from K.V. Artemov and in coordination with M.M. Krylova, transferred the embezzled funds in the amount of RUB 600,000,000 as a loan under sham Interest-Bearing Loan Agreement No. 09/04/2015 dd. 09.04.2015 via Payment Order No. 22 dd. 09.04.2015 to settlement (transactions) account No. 40702810500000113328 opened with the same Bank of Alliance LLC (OOO), an entity controlled by the members of the organized group and not engaged in any real economic activity.

On 09.04.2015, that is on the same day after the Bank's funds had been transferred to the settlement account of Alliance, O.M. Yachina, using Payment Order No. 33 dd. 09.04.2015, transferred the embezzled funds in the amount of RUB 600,000,000 as partial repayment of principal amount under sham Interest-Bearing Loan Agreement No. 29/08-A dd. 29.08.2014 to settlement account No. 40728103000000102610 opened with the same Bank of Personnel + controlled by the members of the organized group and not engaged in any real economic activity.

On the same day after the Bank's funds had been transferred to the settlement account of Alliance, O.M. Yachina, using Payment Order No. 144 dd. 09.04.2015, transferred the embezzled funds in the amount of RUB 600,000,000 as partial repayment of principal amount under sham Loan Agreement No. 0603/15-A dd. 06.03.2015 to settlement account No. 40807810900010030608 of Vermenda Holdings Limited, an entity controlled by the members of the organized group and not engaged in any real economic activity, opened with the same Bank.

Then, on 09.04.2015 and 13.04.2015, the embezzled funds in the amount of RUB 600,000,000 as a portion of other funds in the amount of RUB 600,069,891.60 had been converted in USD by unidentified persons controlling settlement account No. 40807810900010030608 of Vermenda Holdings Limited.

19

Simultaneously, USD 11,182,000 had been transferred to foreign currency account No. 40807840200010030608 of Vermenda Holdings Limited, a non-resident company. A portion of these funds in the amount of USD 10,000,000 had been transferred via Payment Order No. 271 dd. 09.04.2015 to account No. LV63KBRB1111215921001 of this company opened with Trasta Komercbanka Riga located at: Palasta iela 1, Riga LV-1050, Latvija.

Having transferred the funds to the account of Vermenda Holdings Limited opened with Trasta Komercbanka Riga and disguised, through multiple financial transactions, the real intended purpose of the loan in the amount of RUB 600,000,000 granted to Engineering-Royalty, the leaders of the organized group, that is S.L. Leontiev and A.D. Zheleznyak, had a real opportunity to manage the funds at their own discretion.

Therefore, the members of the organized group under the leadership of S.L. Leontiev and A.D. Zheleznyak appropriated RUB 600,000,000 of the Bank's funds by providing a loan to Engineering-Royalty controlled by the members in April 2015. Thus, the credit organization sustained damages in the amount of RUB 600,000,000.

Before 16.05.2015, Ya.V. Alekseev chose Vostok-Cargo-Plus as a shell company that was supposed to receive a loan from the Bank in order to implement the embezzlement plan developed by S.L. Leontiev and A.D. Zheleznyak. A.V. Danukin was the only shareholder and CEO of the company as from the date of its incorporation (17.12.2012).

A.V. Danukin acted out mercenary interest, was not a member of the organized group, and represented the company headed by him. At the same time, by supplying information and eliminating obstacles that may prevent the embezzlement, he agreed to provide assistance to the members of the group in order for them to embezzle the Bank's funds via appropriation.

Prior to 16.05.2015, continuing to realize the criminal intent to embezzle the Bank's funds in an especially large amount, a member of the organized group, that is the Head of the Department for Corporate Finances (N.V. Alekseev), being at his workplace at: Moscow, Butyrskaya st., 62, acting on behalf of the Bank by virtue of PoA 120/2 dd. 17.02.2015 that was issued by one of the leaders of the organized group, that is the Chairman of the Management Board (A.D. Zheleznyak), under which N.V. Alekseev receives authorities to enter into credit contracts and dispose of the Bank's funds, that is to perform managerial functions of administrative and economic nature related to disposal of the Bank's funds entrusted to him,

20

carrying out instructions of the group's leaders, that is S.L. Leontiev and A.D. Zheleznyak, acting wilfully and in cooperation with other members of the organized group, using his official position, signed Medium-Term Lending Contract No.071-810/15ю dd. 15.05.2015 with Vostok-Cargo-Plus controlled by the members of the group and represented by CEO A.V. Simakov. Under the Contract, the Bank undertakes to grant a loan to the company through the lines of credit with maximum credit limit of RUB 500,000,000.

A.V. Danukin realized that the purpose of the loan was knowingly false and that the loan provision itself represented an embezzlement method. Within the stated period of time, being in an unidentified location in Moscow, he signed Medium-Term Lending Contract No. 071-810/15ю dd. 15.05.2015 on behalf of his company.

On 18.05.2015 and 19.05.2015, in furtherance of the Contract and in accordance with the request submitted by A.V. Danukin, as well as with transaction memos No. 1019906802 dd. 18.05.2015 and No. 1019915598 dd. 19.05.2015, monetary funds in the amount of RUB 365,000,000 had been transferred from loan account of Vostok-Cargo-Plus No. 45205810500100107477 to settlement (transcactions) account of Vostok-Cargo-Plus No. 40702810700000107477 opened with the Bank located at: Moscow Pudovkina st., 3.

On 18.05.2015 and 19.05.2015, after the embezzled funds had been credited to the settlement account of the company, A.V. Danukin continued to play his part in the crime. He contributed to the commission of the crime by providing information and eliminating obstacles that may prevent such crime. He transferred the funds that were fictitiously acquired as a loan in the amount of RUB 365,000,000 via payment orders No. 1054 dd. 18.05.2015 and No. 1057 dd. 19.05.2015 and interest-bearing loan agreements No. 15/05-И dd. 15.05.2015 and No. 18/05-И dd. 18.05.2015 to settlement account No. 40702810900000100889 of Iston, an entity controlled by the members of the organized group and not engaged in any real economic activity, opened with the same Bank.

On 18.05.2015 and 19.05.2015, after the Bank's funds had been transferred to the settlement account of Iston, O.M. Yachina, who had no knowledge about the criminal intent of the members of the organized group, following the instructions received from K.V. Artemov, using transaction memos No. 39 dd. 18.05.2015 and No. 40 dd. 19.05.2015, transferred a portion of the embezzled funds in the amount of RUB 364,700,000 as a loan under sham interest-bearing loan agreements No. 18/05 dd. 18.05.2015 and No. 19/05 dd. 19.05.2015 signed on behalf of Life Collection Agency by S.V. Kalachev to

21

settlement account No. 40702810800020115239 opened with the same Bank of this company controlled by the members of the organized group and not engaged in any real economic activity.

On 18.05.2015 and 19.05.2015, after the embezzled funds had been transferred to the settlement account of Life Collection Agency, O.M. Yachina, using payment orders No. 119 dd. 18.05.2015 and No. 120 dd. 19.05.2015, transferred a portion of the embezzled funds in the amount of RUB 347,000,000 as partial repayment of principal amount under sham loan agreements No. 2901-15 dd. 29.01.2015 and No. 2804 dd. 28.04.2014 to settlement account No. 40807810900010030608 of Vermenda Holdings Limited, an entity controlled by the members of the organized group and not engaged in any real economic activity, opened with the same Bank.

Then, on 18.05.2015 and 19.05.2015, a portion of the embezzled funds in the amount of RUB 346,958,345 had been converted in USD by unidentified persons controlling settlement account No. 40807810900010030608 of Vermenda Holdings Limited. Simultaneously, USD 7,014,000, as a portion of other funds in the amount of USD 7,600,000, had been transferred to foreign currency account No. 40807840200010030608 of Vermenda Holdings Limited, a non-resident company, by unidentified persons via payment orders No. 278 dd. 18.05.2015 and No. 279 dd. 19.05.2015 to account No. LV63LV63KBRBI111215921001 of this company opened with Trasta Komercbanka Riga located at: Palasta iela 1, Riga LV-1050, Latvija.

Having transferred the funds to the account of Vermenda Holdings Limited opened with Trasta Komercbanka Riga and disguised, through multiple financial transactions, the real intended purpose of the loan in the amount of RUB 365,000,000 granted to Vostok-Cargo-Plus, the leaders of the organized group, that is S.L. Leontiev and A.D. Zheleznyak, had a real opportunity to manage the funds at their own discretion.

Therefore, the members of the organized group under the leadership of S.L. Leontiev and A.D. Zheleznyak appropriated RUB 365,000,000 of the Bank's funds by providing a loan to Engineering-Royalty controlled by the members in May 2015. Thus, the credit organization sustained damages in the amount of RUB 365,000,000.

Subsequently, on 06.08.2015, when the Bank's banking license had been revoked, accomplices to the crime, that is Vice-president for finances (Deputy Chairman of the Management Board A.V. Lomov) and CEO of Vostok-Cargo-Plus A.V. Danukin, entered into Accord and Satisfaction Agreement dd. 06.08.2015 in order to cover up the embezzlement in an especially large amount and give a veneer of legality to the sham transactions. Under Accord and Satisfaction Agreement, obligations of Vostok-Cargo-Plus

22

under Medium-Term Lending Contract No. 071-810/15to dd.15.05.2015 had been fully terminated. Right of claim to Iston, which was not engaged in any real economic activity, was accepted by the Bank, which covered liabilities to repay credit funds.

Before 23.06.2015, members of the organized group had substantially changed the embezzlement plan. In order to continue to realize the criminal intent aimed at embezzling the Bank's funds, Ya.V. Alekseev, acting under the leadership of S.L. Leontiev and A.D. Zheleznyak, engaged (procured services of) the actual head of several companies (including Tsentr Torgovli, NewHowTrade, Eskada Financial Centre, ProgmaTrade), that is O.E. Papakhin, to involve him in committing the crime in Moscow. O.E. Papakhin agreed to act as an accessory for monetary remuneration and contribute to the commission of the crime by making available Tsentr Torgovli and NewHowTrade for taking out a loan by them and making sham transaction in order to credit the funds to the settlement accounts of PC-Technologies and Sunrise controlled by the members of the organized group.

O.E. Papakhin, in his turn, engaged nominee directors of Tsentr Torgovli and NewHowTrade controlled by him, that is L.B. Shpagina, O.V. Kravchenko respectively, as accessories, within the stated period in Moscow (the exact date and location have not been identified).

According to the scheme, the above stated companies were supposed to act as straw borrowers of the Bank. After they received the credit funds, they were supposed to transfer them to the accounts of Sunrise and PC-Technologies controlled by the members of the organized group. O.E. Papakhin provided all the documents necessary to create a credit report, sign contracts, and transfer monetary funds. He also arranged signing of the necessary documents by his companies.

A member of the organized group, that is Vice-president for finances (Deputy Chairman of the Management Board, A.V. Lomov), continuing to realize the criminal intent to embezzle the Bank's funds in an especially large amount, being at his workplace at: Moscow, Snezhnaya st., h.26, acting on behalf of the Bank and by virtue of PoA No. 92/5 dd. 02.09.2015 that was issued by one of the leaders of the organized group, that is the Chairman of the Management Board (A.D. Zheleznyak), under which A.V. Lomov receives authorities to enter into credit contracts

23

and dispose of the Bank's funds, that is to perform managerial functions of administrative and economic nature related to disposal of the Bank's funds entrusted to him, carrying out the instructions of the group's leaders, that is S.L. Leontiev and A.D. Zheleznyak, acting wilfully and in cooperation with other members of the organized group, using his official position, signed Medium-Term Lending Contract No. 099-810/15ю dd. 22.06.2015 on behalf of the Bank with Tsentr Torgovli made available by O.E. Papakhin and represented by CEO L.B. Shpagina. Under the Contract, the Bank undertakes to grant a loan to the company through the lines of credit with maximum credit limit of RUB 1,000,000,000.

L.B. Shpagina, following the instructions received from O.E. Papakhin, realized that the purpose of the loan was knowingly false and that the loan provision itself represented an embezzlement method. On 22.06.2015, being in the Bank's offices located at: Moscow Volgogradskiy avenue, h. 43, bld. 3, she signed Medium-Term Lending Contract No. № 099-810/15ю dd. 22.06.2015.

On 23.06.2015, in pursuance of the Contract and in accordance with the request submitted on behalf of L.B. Shpagina, as well as with Transaction Memo No. 1020125374 dd. 23.06.2015, monetary funds in the amount of RUB 698,200,000 had been transferred from loan account of Tsentr Torgovli No. 45205810300200007965 to settlement account No. 40702810400000207965 of this company opened with the Bank located at Moscow, Pudovkina st., h. 3.

Then, at the same day after the funds in the amount of RUB 698,200,000 had been credited to settlement account No. 40702810400000207965 of Tsentr Torgovli opened with the Bank, upon O.E. Papakhin's instruction, unidentified persons, using Payment Order No. 94 dd. 23.06.2015, transferred the funds disguised as a payment under sham Investment Units Sale and Purchase Agreement No. ПТ-ЦТ/0406 dd. 04.06.2015 to settlement account No. 40702810000000207844 of ProgmaTrade controlled by O.E. Papakhin, opened with the same Bank.

On 23.06.2015, after the Bank's funds had been transferred to the settlement account of ProgmaTrade, unidentified persons, using Payment Order No. 85 dd. 23.06.2015, transferred the embezzled funds in the amount of RUB 698,200,000 under sham Interest-Bearing Loan Agreement No. 22-06 dd. 22.06.2015 to settlement account No. 40702810200110035573 of PC-Technologies, an entity controlled by the members of the organized group and not engaged in any real economic activity, opened with the same Bank.

On 23.06.2015, that is on the same day after the funds had been transferred to the settlement account of PC-Technologies,

24

O.M. Yachina, who had no knowledge about the criminal intent of the members of the organized group, following the instructions received from K.V. Artemov, acting in coordination with M.M. Krylova and using Payment Order No. 124 dd. 23.06.2015, transferred the embezzled funds in the amount of RUB 698,200,000 as a loan under sham Interest-Bearing Loan Agreement No. 23-06/2015 dd. 23.06.2015 signed by Life Collection Agency represented by S.V. Kalachev to settlement (transactions) account No. 40702810300110117621 opened with the same Bank of this company controlled by the members of the organized group and not engaged in any real economic activity.

Then, on 24.06.2015, after the funds had been credited to the settlement account of Life Collection Agency, O.M. Yachina, using payment orders No. 1114, 1115, 1116 dd. 24.06.2015 transferred the embezzled funds in the amount of RUB 698,200,000, as a portion of other funds in the amount of RUB 700,000,000, as repayment of principal amount under loan agreements No. 06-07/12 dd. 06.07.2012, 29-01/2011-3 dd. 29.07.2011, 28-12/1 dd. No. 28-12/1 dd. 28.12.2012 to settlement account No. 40807810900010030608 of Vermenda Holdings Limited, an entity controlled by the members of the organized group and not engaged in any real economic activity, opened with the same Bank.

Then, on 25.06.2015, embezzled funds in the amount of RUB 698,200,000 as a portion of other funds of RUB 702,969,800, had been converted in USD by unidentified persons controlling settlement account No. 40807810900010030608 of Vermenda Holdings Limited. Simultaneously, USD 13,000,000 had been transferred to foreign currency account No. 40807840200010030608 of Vermenda Holdings Limited, a non-resident company, and then transferred on the same day via payment order No. 281 dd. 25.06.2015 to account No. LV63KBRB1111215921001 of this company opened with Trasta Komercbanka Riga located at: Palasta iela 1, Riga LV-1050, Latvija.

Having transferred the funds to the account of Vermenda Holdings Limited opened with Trasta Komercbanka Riga and disguised, through multiple financial transactions, the real intended purpose of the loan in the amount of RUB 698,200,000 granted to Tsentr Torgovli, the leaders of the organized group, that is S.L. Leontiev and A.D. Zheleznyak, had a real opportunity to manage the funds at their own discretion.

Therefore, the members of the organized group under the leadership of S.L. Leontiev and A.D. Zheleznyak unlawfully appropriated RUB 698,200,000 of the Bank's funds by providing a loan to Tsentr Torgovli controlled by the members in June 2015. Thus, the credit organization sustained damages in the amount of RUB 698,200,000.

25

On 03.08.2015, accomplices to the crime, the Head of the Department for Corporate Finances (N.V. Aleskeev) and CEO of Tsentr Torgovli L.B. Spagina, entered into Accord and Satisfaction Agreement dd. 03.08.2015 in order to cover up the embezzlement in an especially large amount and give a veneer of legality to the sham transactions. Under Accord and Satisfaction Agreement, obligations of Tsentr Torgovli under Medium-Term Lending Contract No. 099-810/15ю dd. 22.06.2015 had been fully terminated. Right of claim to PC-Technologies controlled by the parties to the crime, which was not engaged in any real economic activity, was accepted by the Bank, which covered liabilities to repay credit funds.

A member of the organized group, Head of the Department for Corporate Finances (N.V. Alekseev), acting on behalf of the Bank and by virtue of PoA No. 120/2 dd. 17.02.2015 that was issued by one of the leaders of the organized group, that is the Chairman of the Management Board (A.D. Zheleznyak), under which N.V. Alekseev receives authorities to enter into credit contracts and dispose of the Bank's funds, that is to perform managerial functions of administrative and economic nature related to disposal of the Bank's funds entrusted to him, carrying out the instruction of the group's leaders, that is A.D. Zheleznyak and S.L. Leontiev, acting wilfully and in cooperation with other members of the organized group, using his official position, being at his workplace at: Moscow, Byturskaya st., 62, signed Medium-Term Lending Contract No. 137-810/15ю dd. 28.07.2015 on behalf of the Bank with NewHowTrade made available by O.E. Papakhin and represented by CEO O.V. Kravchenko. Under the Contract, the Bank undertakes to grant a loan to the company through the lines of credit with maximum credit limit of RUB 1,000,000,000.

O.V. Kravchenko, following the instructions received from O.E. Papakhin, realized that the purpose of the loan was knowingly false and that the loan provision itself represented an embezzlement method. On 28.07.2015, O.V. Kravchenko, being in the Bank's offices located at: Moscow, Butyrskaya st., 62, signed Medium-Term Lending Contract No. 137-810/15ю dd. 28.07.2015 on behalf of her shell company.

On 28.07.2015, in pursuance of the Contract and in accordance with the request submitted on behalf of O.V. Kravchenko, as well as with Transaction Memo No. 1020346334 dd. 28.07.2015, monetary funds in the amount of RUB 499,995,968 had been transferred from loan account of NewHowTrade No. 45205810900200007734 to settlement account No. 40702810000000207734 of this company opened with the Bank located at Moscow,

26

Pudovkin st., h.3,

On 28.07.2015, after the funds had been credited to settlement account No. 40702810000000207734 of NewHowTrade opened with the Bank, upon O.E. Papakhin's instruction, unidentified persons, using Transaction Memo No. 9 dd. 28.07.2015, transferred RUB 499,995,968 disguised as a payment under sham Investment Units Sale and Purchase Agreement No. ЭС- НХТЭ2015-1Б dd. 28.07.2015 to settlement account No. 40702810800000210934 of Eskada Financial Centre, an entity controlled by O.E. Papakhin, opened with the same Bank.

On 29.07.2015, after the embezzled funds had been credited to the settlement account of Eskada Financial Centre, unidentified persons, following the instructions of O.E. Papakhin, using Payment Order No. 35 dd. 28.07.2015, transferred the embezzled funds of RUB 499,995,968 under sham Interest-Bearing Loan Agreement No. 28-07 dd. 28.07.2015 to settlement account No. 40702810500070015537 of Sunrise, an entity controlled by the members of the organized group and not engaged in any real economic activity, opened with the same Bank.

Then, on 29.07.2015, that is on the next day after the funds had been transferred to the settlement account of Sunrise, O.M. Yachina, who had no knowledge about the criminal intent of the members of the organized group, following the instructions received from K.V. Artemov, acting in coordination with M.M. Krylova and using payment orders No. 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, transferred RUB 498,871,028.03 as repayment of interest and principal amount under previously executed sham interest-bearing loan agreements No. 01/08/13-САН, 26/12/13- САН, № 31/01/12-САН, № 02/03/12-САН, 27/02/12-САН, № 12/10/12_САН dd. 01.08.2013, 26.12.2013, 31.01.12, 02.03.2012, 27.02.2012, 12.10.2012 and as provision of loan under sham Interest-Bearing Loan Agreement No. 29/07/15-САН dd. 29.07.2015 entered into by Life Collection Agency represented by S.V. Kalachev to settlement (transactions) account No. 40702810300110117621 opened with the same Bank.

Then, on 29.07.2015 and 30.07.2015, after the funds had been credited to the settlement account of Life Collection Agency, O.M. Yachina, using payment orders No. 1372, 1373, 1374 dd. 29.07.2015 and No. 1426 dd. 30.07.2015, transferred the embezzled funds among other funds in the amount of RUB 600,000,000 as repayment of principal amount under sham loan agreements No. 06-07/12, 30-08/12, 28-12/1, and 2804 dd. 06.07.2012, 30.08.2012, 28.12.2012, 28.04.2014 to settlement account No. 40807810900010030608 of Vermenda Holdings Limited, an entity controlled by the members of the organized group and not engaged in any real economic activity,

27

opened with the same Bank.

Then, on 30.07.2015, embezzled funds in the amount of RUB 499,995,968, as a portion of other funds of RUB 600,000,000, had been converted in USD by unidentified persons controlling settlement account No. 40807810900010030608 of Vermenda Holdings Limited. Simultaneously, USD 10,015,000 had been transferred to foreign currency account No. 40807840200010030608 of Vermenda Holdings Limited, a non-resident company. A portion of these funds, USD 10,000,000, had been transferred by unidentified persons via payment orders No. 290 and 291 dd. 30.07.2015 to account No. LV63KBRB1111215921001 of this company opened with Trasta Komercbanka Riga located at: Palasta iela 1, Riga LV-1050, Latvija.

Having transferred the funds to the account of Vermenda Holdings Limited opened with Trasta Komercbanka Riga and disguised, through multiple financial transactions, the real intended purpose of the loan in the amount of RUB 499,995,968 granted to NewHowTrade, the leaders of the organized group, that is S.L. Leontiev and A.D. Zheleznyak, had a real opportunity to manage the funds at their own discretion.

Therefore, the members of the organized group under the leadership of S.L. Leontiev and A.D. Zheleznyak appropriated RUB 499,995,968 of the Bank's funds by providing a loan to NewHowTrade controlled by the members in July 2015. Thus, the credit organization sustained damages in the amount of RUB 499,995,968.

Then, on 29.07.2015, that is on the next day after the loan was granted, accomplices to the crime, the Head of the Department for Corporate Finances (N.V. Aleskeev) and CEO of NewHowTrade O.V. Kravchenko, entered into Accord and Satisfaction Agreement dd. 29.07.2015 in order to cover up the embezzlement in an especially large amount and give a veneer of legality to the sham transactions. Under Accord and Satisfaction Agreement, obligations of Tsentr Torgovli under Medium-Term Lending Contract No. 137-810/15to dd. 28.07.2015 had been fully terminated. Right of claim to Sunrise controlled by the parties to the crime, which was not engaged in any real economic activity, was accepted by the Bank, which covered liabilities to repay credit funds.

From September 2014 to August 2015, the organized group under the leadership of S.L Leontiev and A.D. Zheleznyak embezzled RUB 2,443,195,968 by granting loans to IvSpetsGarant, Engineering-Royalty, Vostok-Cargo-Plus, Tsentr Torgovli, and NewHowTrade.

28

Thus, Probusinessbank CJSB sustained damages in the especially large amount. Based on the above and being guided by Articles 38, 171, 172, and 175, the Investigator

### HAS RULED AS FOLLOWS:

To declare Leontiev Sergey Leonidovich, born on July 11, 1965 in Moscow, an accused in this criminal case, to charge him with the crime stipulated in Part 3 Article 33, Part 4 Article 160 and Part 3 Article 33, Part 4 Article 160 of the Criminal Code of the Russian Federation, and to inform him thereof.

Investigator for Particularly Important Cases
of the Main Investigations Department of
the Investigative Committee of the Russian Federation
Major of Justice

D.Kh. Khuramshin
/signature/

29

This Decree was announced to me on _____, at_____, the text thereof____

Nature of the charges brought has been explained to me. The following rights specified in Part 3 and 4 Article 47 of the Code of Criminal Procedure of the Russian Federation have been explained to me:

to defend my rights and legitimate interests, to have enough time and a possibility to prepare for such defence;

1) to know what I am accused and to receive a copy of a decree on initiation of criminal proceedings, where I have been prosecuted, if I have not received such copy pursuant to par. 1 of Part 4 Article 46 of the Code of Criminal Procedure;

2) to receive a copy of a decree on prosecution, a copy of an order imposing a pre-trial restriction, a copy of a bill or letter of indictment or accusation;

3) to object against charges, testify on the charges brought against me or refuse to testify. I have been notified in advance that if I agree to testify, my testimony may be used as evidence in criminal case, including if I retract my testimony save as provided in par. 1 of Part 2 Article 75 of the Code of Criminal Procedure;

4) to present evidence;

5) to present motions (petitions) and propose disqualifications;

6) to testify and express myself in my mother tongue or in a language that I have a command of;

7) to use translator's services free of charge;

8) to use defence attorney's services, including for free, as stipulated in the Code of Criminal Procedure of the Russian Federation;

9) to have meetings with my defence attorney in private and in confidence, including before the first interrogation, without any limitation as to their number or duration;

9.1) to have meetings with a notary public without any limitation as to their number or duration in order to certify a PoA for business purposes after a pre-trial detention or house arrest has been imposed against me. Any notarial procedures in respect of property, monetary funds, or other valuables that may be seized (arrested) pursuant to this Code shall be prohibited;

10) to take part in investigative activities conducted upon my motion (petition) or a motion of my defence attorney or my council based on an investigator's or inquirer's consent, get familiarized with records of such actions and present comments thereon;

11) to get familiarized with a decree on initiation of a forensic examination, present questions to an expert, and get familiarized with an expert's opinion;

12) to get familiarized will all materials of a criminal case and take out (copy) any information in any amount after the end of a preliminary investigation;

13) to copy (at one's own expense) materials of a criminal case, including with the use of hardware/software;

14) to file complaints against acts (omissions) and decisions of an inquirer, head of an inquiry division, investigator, head of an inquiry body, inquiry body, investigator, prosecutor, and court and take part in judicial consideration thereof;

15) to object against termination of a criminal case on the grounds stated in Part 2 of Article 27 of the Code of Criminal Procedure of the Russian Federation;

16) to participate in criminal proceedings in the courts of first, second and supervisory instances as well as in courts hearings on applying a pre-trial restriction, and in other cases specified in par. 1-3, 10 of Part 2 Article 29 of the Code of Criminal Procedure of the Russian Federation;

17) to get familiarized with minutes of court hearings and present comments thereon;

18) to appeal against a sentence, finding, decree (resolution) of a court and receive copies of appealed judgements (decisions);

19) to receive copies of complaints and filings filed in a criminal case and appeal against such complaints and filings;

20) to take part in examination of issues related to enforcement of a sentence;

21) to be entitled to other defences not prohibited by this Code.

I have been notified that pursuant to Part 5 Article 47 of the Code of Criminal Procedure, participation of a defence attorney or a legal representative in a criminal case shall not constitute a ground for limitation of rights of an accused.

Defendant

/signature/

Defence Attorney

/signature/

Defence Attorney

/signature/

31

Decree has been announced, rights have been explained, copy of this decree has been sent to the defendant and his attorneys on July 11, 2017.

Defendant

Defence                                                    /signature/

Attorney                                                  /signature/

Defence                                                   /signature/

Attorney
                                                          /signature/

Copy of this decree has been sent to the Deputy Prosecutor General of the Russian Federation on July 11, 2017.

Investigator
/signature/

# ПРИЛОЖЕНИЕ 19

ПОСТАНОВЛЕНИЕ
о привлечении в качестве обвиняемого

город Москва                                                10 июля 2017 года

Следователь по особо важным делам Главного следственного управления Следственного комитета Российской Федерации майор юстиции Хурамшин Д.Х., рассмотрев материалы уголовного дела № 11602007703000015,

УСТАНОВИЛ:

Леонтьев Сергей Леонидович, 11 июля 1965 года рождения, уроженец гор. Москвы, являясь организатором – лицом, организовавшим совершение преступления и руководившим его исполнением, создавшим организованную группу, совершил растрату, то есть хищение чужого имущества, вверенного виновному – ценных бумаг и денежных средств АКБ «Пробизнесбанк» (ОАО), (далее по тексту Банк, АКБ «Пробизнесбанк»), совершенное лицом с использованием своего служебного положения, организованной группой, в особо крупном размере, при следующих обстоятельствах.

АКБ «Пробизнесбанк», юридический адрес: гор. Москва, ул. Пудовкина, д. 3, основной государственный регистрационный номер (ОГРН) 1027700508978, учреждён 25.11.1992 и зарегистрирован в книге государственной регистрации (КГР) Банка России 07.07.1993, корреспондентский счёт № 30101810600000000986 в Главном управлении Банка России по Центральному федеральному округу г. Москва (далее по тексту ГУ Банка России по ЦФО г. Москва), банковский идентификационный код (БИК) 044525986, индивидуальный номер налогоплательщика (ИНН) 7729086087, осуществлял свою деятельность на основании генеральных лицензий на осуществление банковских операций № 2412, от 28.04.2003 и от 13.08.2012 выданных Банком России.

В период с 2009 по 2010 гг., но не позднее 23.06.2010, Леонтьев С.Л., являясь с момента основания, совместно с Железняком А.Д., фактическим владельцем АКБ «Пробизнесбанк», в целях реализации возникшего у него преступного умысла на хищение путём растраты имущества Банка – ценных бумаг, решил создать организованную группу в состав которой вовлек: акционера и одновременно председателя правления Банка – Железняка А.Д., выполнявшего управленческие функции в АКБ «Пробизнесбанк» ОАО, обладавшего полномочиями организационно-распорядительного и административно-хозяйственного характера, то есть, лицо, которому были вверены имущество и средства Банка; вице президента по финансам - заместителя председателя правления Банка Ломова А.В. и иных неустановленных лиц, каждому из которых была определена своя роль в преступлении.

В соответствии с Уставом вышеуказанного кредитного учреждения, утвержденным общим собранием акционеров от 25.03.1998 Банк является

2

кредитной организацией в форме открытого акционерного общества. Целью деятельности Банка является извлечение прибыли. Банк, на основании соответствующей лицензии, выданной Банком России может осуществлять: привлечение денежных средств физических и юридических лиц во вклады, размещать привлечённые средства от своего имени и за свой счёт, выдавать поручительства за третьих лиц, предусматривающих исполнения обязательств в денежной форме. Банк имеет в собственности обособленное имущество, отражаемое на его самостоятельном балансе, включая имущество, переданное ему акционерами в счёт оплаты акций.

Для реализации преступного замысла по указаниям Леонтьева С.Л. и Железняка А.Д., неустановленные члены организованной группы от имени Банка 23.06.2010 в неустановленном месте заключили клиентское соглашение с брокерской компанией «Otkritie Securities Limited» (Открытие Секьюритиз Лимитед) (далее по тексту OSL) в соответствии с которым Банк присоединился к условиям сотрудничества для профессиональных клиентов и квалифицированных инвесторов (далее по тексту - Условия сотрудничества).

Достоверно зная, что на основании директивы Европейского союза от 06.06.2002 № 2002/47/ЕС «О соглашениях по Финансовому Залоговому Обеспечению» право собственности на денежные средства и ценные бумаги, размещенные на брокерских счетах клиента, переходят брокеру, в соответствии с указанными Условиями сотрудничества, Банк в период с июня 2010 года по август 2015 года разместил на брокерских счетах, открытых в OSL денежные средства на сумму 3 306 173 280,43 руб. и ценные бумаги, а именно: облигации Федерального займа Министерства Финансов Российской Федерации выпуска RF22 в количестве 153 штук, RF28 в количестве 42 200 штук и RF42 в количестве 148 штук; казначейские облигации США выпуска USDPE2018-1 в количестве 799 600 штук, выпуска USDPE2020-2 в количестве 380 000 штук и выпуска USDPE2024-1 в количестве 130 000 штук; еврооблигации ОАО «Сбербанк России» выпуска SBCLE2022 в количестве 18 000 штук; еврооблигации ОАО «ВЭБ» выпуска VEBFE2022 в количестве 12 000 штук; еврооблигации ОАО «Газпромбанк» выпуска GBPEE2017 в количестве 27 910 штук; депозитарные расписки GAZPROM NEFT JSC (ADR) («Газпромнефть (ОАО) выпуска GAZND0 в количестве 37 000 штук; депозитарные расписки LUKOIL (ADR) (Лукойл (ОАО) выпуска LKOHD в количестве 10 500 штук; глобальные депозитарные расписки MEGAFON OJSC/GDR (Мегафон ОАО) выпуска MFOND1 в количестве 5 000 штук; глобальные депозитарные расписки GAZPROM («Газпром» ОАО) выпуска GAZPD0 в количестве 90 000 штук; еврооблигации VTB Capital S.A. выпуска VTBCE2022 в количестве 26 800 штук на общую сумму 19 989 981 786,96 руб.

В результате указанных действий у Банка возникало право требования к OSL аналогичных активов в виде ценных бумаг либо денежных средств.

Одновременно с этим, членами организованной группы

3

заблаговременно, с 06.08.2009, было обеспечено заключение в неустановленном месте подконтрольной им кипрской компанией Ambika Investments Limited (Амбика Инвестментс Лимитед) аналогичных Условий сотрудничества с брокерской компанией OSL.

Неустановленные члены организованной группы, действовавшие от имени Ambika Investments Limited, действуя с единым умыслом на хищение имущества АКБ «Пробизнесбанк» (ОАО) путем растраты, в неустановленном следствием месте заключили с OSL договоры займа ценных бумаг: № 1 от 29.11.2012 на сумму 39 648 125 долларов США; № 2 от 29.11.2012 на сумму 59 986 316,30 долларов США; № 3 от 20.12.2012 на сумму 99 500 000 долларов США; № 4 от 15.03.2013 на сумму 98 872 651,4 долларов США, а всего на общую сумму 298 007 092,7 долларов США, а также №1/MLA от 11.03.2014, по которому размер займа устанавливался отдельными заявками, поступающими от Ambika Investments Limited.

При этом, достоверно зная, что по вышеуказанным договорам займа Ambika Investments Limited не имеет реальной возможности и не будет исполнять принятые на себя обязательства по возврату заемных ценных бумаг OSL, Железняк А.Д. и Ломов А.В., действуя по согласованию с Леонтьевым С.Л. и другими неустановленными лицами, продолжая реализацию умысла на хищение имущества АКБ «Пробизнесбанк» (ОАО) путем растраты, в неустановленном месте подписали дополнительные соглашения от 29.11.2012, от 20.12.2012, от 15.03.2013 и от 11.03.2014, в соответствии с которыми гарантировали ценными бумагами Банка, находящимися в OSL, исполнение обязательств компании Ambika Investments Limited по всем заключенным ею договорам с данной брокерской компанией.

После чего, неустановленные соучастники, действующие от компании Ambika Investments Limited, совместно и согласованно с Леонтьевым С.Л., Железняком А.Д. и иными неустановленными лицами, на основании Условий сотрудничества и Соглашения по сделкам РЕПО от 16.01.2013 (Global Master Repurchase Agreement/GMRA MA) реализовывали, полученные в заем ценные бумаги, обратно брокерской компании OSL, при этом, заведомо не намереваясь выполнить последующие обязанности выкупа этих ценных бумаг.

В результате указанных взаимосвязанных операций, на расчетный счет № 40807840400000030269 компании Ambika Investments Limited, открытый в АКБ «Пробизнесбанк» (ОАО), расположенному по адресу: гор. Москва, ул. Пудовкина, д. 3, с расчетного счета № GB97CHAS60924238003101 брокерской компании OSL, открытого JPMORGAN CHASE BANK, N.A. (EUROPEAN HEADQUARTERS) LONDON, CHASGB2L, в период с 30.11.2012 по 25.04.2014 в счет уплаты за ценные бумаги по сделкам РЕПО было перечислено 337 492 834,38 долларов США, которые поступили в распоряжение членов организованной группы.

Вследствие указанных последовательных и взаимосвязанных действий

4

членов организованной группы, ценные бумаги, выступавшие гарантией обеспечения обязательств Ambika Investments Limited перед OSL, 12.08.2015 в связи с умышленным неисполнением обязательств Ambika Investments Limited с брокерского счета АКБ «Пробизнесбанк» № РВ1594, открытого в брокерской компании Otkritie Capital International Limited» (Открытие Капитал Интернэшнл Лимитед, до 18.06.2015 OSL) были списаны следующие ценные бумаги:

- казначейские облигации США выпуска USDPE2018-1 в количестве 799 600 штук, с идентификационными номерами (ISIN) US912828H375 стоимостью 5 153 543 992,12 руб.;

- казначейские облигации США выпуска USDPE2020-2 в количестве 380 000 штук, с идентификационными номерами (ISIN) US912828J504 стоимостью 2 452 889 102,28 руб.;

- казначейские облигации США выпуска USDPE2024-1 в количестве 130 000 штук, с идентификационными номерами (ISIN) US912828G385 стоимостью 848 575 073,98 руб.;

- облигации Федерального займа Министерства Финансов Российской Федерации выпуска RF22 в количестве 153 штук с идентификационными номерами (ISIN) XS0767472458 стоимостью 1 938 321 386,10 руб.;

- облигации федерального займа Министерства Финансов Российской Федерации выпуска RF28 в количестве 42 200 штук стоимостью 4 392 177 192,89 руб.;

- еврооблигации ОАО «Газпромбанк» выпуска GBPEE2017 в количестве 27 910 штук с идентификационными номерами (ISIN) XS0783291221стоимостью 1 838 664 857,25 руб.;

- еврооблигации ОАО «ВЭБ» выпуска VEBFE2022 в количестве 12 000 с идентификационными номерами (ISIN) XS0800817073 стоимостью 706 585 740,31 руб.;

- еврооблигации ОАО «Сбербанк России» выпуска SBCLE2022 в количестве 18 000 штук с идентификационными номерами (ISIN) XS0743596040 стоимостью 1 169 114 334,17 руб.

В связи с чем АКБ «Пробизнесбанк» утратил возможность требований возврата вышеперечисленных ценных бумаг, либо эквивалентных ценных бумаг, либо денежных средств на общую сумму 18 498 871 679,10 руб.

Кроме того, продолжая реализацию преступного умысла, направленного на хищение имущества АКБ «Пробизнесбанк» путем растраты, Ломов А.В., действуя по указаниям Леонтьева С.Л. и Железняка А.Д., уполномоченный доверенностью от 14.12.2012 № 1580/2, действуя от имени Банка, 29.03.2013 в неустановленном месте заключил клиентское соглашение № 5046/13 о предоставлении финансовых услуг для квалифицированных инвесторов (далее по тексту Соглашение № 5046/13) с брокерской компанией «BrokerCreditService (Cyprus) Limited» («БрокерКредитСервис (Кипр) Лимитед») (далее по тексту BCS).

Достоверно зная, что на основании директивы Европейского союза от

5

06.06.2002 № 2002/47/ЕС «О соглашениях по Финансовому Залоговому Обеспечению» право собственности на денежные средства и ценные бумаги, размещенные на брокерских счетах клиента, переходят брокеру, в соответствии с Соглашение № 5046/13, Банк в период с 29.03.2013 по 01.08.2015 с разместил на брокерском счете, открытом в BCS денежные средства в размере 555 350 178,03 руб. и ценные бумаги на общую сумму 9 764 653 000 руб., а именно: облигация федерального займа Министерства Финансов Российской Федерации выпуска RF42, казначейские облигации США выпуска USDPE2020, USDPE2020-1 и USDPE2024.

В результате указанных действий членов организованной группы у Банка возникало право требования к BCS аналогичных активов в виде ценных бумаг либо денежных средств.

В тот же день, 29.03.2013, членами организованной группы было обеспечено заключение с подконтрольной членам организованной группы кипрской компанией Merrianol Investments Limited (Меррианол Инвестментс Лимитед) в неустановленном месте аналогичного клиентского соглашения с BCS за № 5047/13.

Неустановленные члены организованной группы, действовавшие от имени Merrianol Investments Limited, действуя с единым умыслом на хищение имущества АКБ «Пробизнесбанк» (ОАО) путем растраты, в неустановленном следствием месте заключили с BCS договор займа ценных бумаг № 120412-1 от 12.04.2013, на основании которого отдельными заявками, поступающими от Merrianol Investments Limited, последней компании систематически предоставлены займы на общую сумму 8 432 981 305,09 руб.

При этом, достоверно зная, что по вышеуказанному договору займа Merrianol Investments Limited не имеет реальной возможности и не будет исполнять принятые на себя обязательства по возврату заемных ценных бумаг BCS, Ломов А.В., действуя по согласованию с Леонтьевым С.Л., Железняком А.Д. и другими неустановленными лицами, продолжая реализацию умысла на хищение имущества АКБ «Пробизнесбанк» путем растраты, в неустановленном следствием месте 12.04.2013 подписал дополнительное соглашение к Соглашению № 5046/13, в соответствии с которым гарантировал ценными бумагами Банка, находящимися в BCS, исполнение обязательств компании Merrianol Investments Limited по всем заключенным ею договорам с данной брокерской компанией.

После чего, неустановленные соучастники, действующие от компании Merrianol Investments Limited, совместно и согласованно с Леонтьевым С.Л., Железняком А.Д. и иными неустановленными лицами, на основании Соглашения № 5047/13 от 29.03.2013 реализовывали полученные в заем ценные бумаги обратно брокерской компании BCS, при этом, заведомо не намереваясь выполнять последующие обязанности выкупа этих ценных бумаг.

В результате указанных взаимосвязанных операций, на расчетный счет № LV79 KBRB 1111 2159 8900 1 компании Merrianol Investments Limited,

6

открытый в Trasta KommercBanka, Riga (Траста КоммерцБанка), расположенном по адресу: Palasta iela 1, Riga LV-1050, Latvija (Паласта иела 1, Рига LV-1050), с расчетных счетов брокерской компании BCS № 40807840400000105771, открытого в АО «БКС-Инвестиционный Банк», расположенном по адресу: гор. Новосибирск, ул. Советская, д. 37, и № NL85DEUT0265021774 и NL35DEUT0265064481, открытых в Deutsche Bank A.G. Amsterdam (Дойче Банк А.Г., Амстердам), расположенном по адресу: Oval Tower, De Entrée 99-197, 1101 HE Amsterdam, Nederland (Овал Тауэр, Де Ентри 99-197, 1101 НЕ Амстердам, Нидерланды), в период с 18.04.2013 по 01.07.2014 в счет уплаты за ценные бумаги по сделкам РЕПО было перечислено 327 608 698,73 долларов США, которые поступили в распоряжение членов организованной группы.

В результате указанных последовательных и взаимосвязанных действий членов организованной группы, ценные бумаги, выступавшие гарантией обеспечения обязательств компании Merrianol Investments Limited перед BCS, 12.08.2015 в связи с умышленным неисполнением обязательств Merrianol Investments Limited с брокерского счета АКБ «Пробизнесбанк» №№ 10268 и 10278, открытых в брокерской компании BCS, были списаны следующие ценные бумаги:

- казначейские облигации США выпуска USDPE2018 в количестве 135 000 штук, с идентификационными номерами (ISIN) US912828HR40 стоимостью 943 731 972,63 руб.;
- казначейские облигации США выпуска USDPE2020 в количестве 481 062 штуки, с идентификационными номерами (ISIN) US912828MP29 стоимостью 3 341 679 158,94 руб.;
- казначейские облигации США выпуска USDPE2020-1 в количестве 158 000 штук, с идентификационными номерами (ISIN) US912828H524 стоимостью 980 178 730,06 руб.;
- казначейские облигации США выпуска USDPE2024 в количестве 203 000 штук, с идентификационными номерами (ISIN) US912828WJ58 стоимостью 1 253 483 349,14 руб.

В связи с чем АКБ «Пробизнесбанк» утратил возможность требований возврата вышеперечисленных ценных бумаг, либо эквивалентных ценных бумаг, либо денежных средств на общую сумму 6 519 073 210,77 руб.

Всего членами организованной группы под руководством Леонтьева С.Л. АКБ «Пробизнесбанк» причинен ущерб в размере 25 017 944 889,87 руб., равный стоимости растраченного имущества Банка в виде ценных бумаг и прав требования возврата ценных бумаг, либо эквивалентных ценных бумаг, либо денежных средств.

Таким образом, своими умышленными действиями Леонтьев С.Л. организовал совершение растраты, то есть хищение чужого имущества, вверенного виновному, лицом с использованием своего служебного положения, в особо крупном размере, организованной группой, то есть преступление, предусмотренное ч. 3 ст. 33 ч. 4 ст. 160 УК РФ.

7

Кроме того, Леонтьев С.Л., являясь организатором – лицом, организовавшим совершение преступления и руководившим его исполнением, создавшим организованную группу, совершил хищение путем присвоения вверенного имущества – денежных средств Банка, в особо крупном размере, при следующих обстоятельствах.

В соответствии со ст. 1 Федерального закона «О банках и банковской деятельности» от 02.12.1990 № 395-1 банком является кредитная организация, которая имеет исключительное право осуществлять в совокупности следующие банковские операции: привлечение во вклады денежных средств физических и юридических лиц, размещение указанных средств от своего имени и за свой счёт на условиях возвратности, платности, срочности, открытие и ведение банковских счетов физических и юридических лиц.

В соответствии с Уставом вышеуказанного кредитного учреждения, утвержденным общим собранием акционеров 28.06.2013, Банк является кредитной организацией в форме открытого акционерного общества. Целью деятельности Банка является извлечение прибыли. Банк может осуществлять привлечение денежных средств физических и юридических лиц во вклады и размещать привлечённые средства от своего имени и за свой счёт. Банк имеет в собственности обособленное имущество, отражаемое на его самостоятельном балансе, включая имущество, переданное ему акционерами в счёт оплаты акций.

К 2014 году Леонтьев С.Л. и Железняк А.Д., владея контрольным пакетом акций Банка долей более 50% путем владения акциями кипрской компании Alivikt Holding Limited (Аливикт Холдинг Лимитед) обеспечили себе как физические лица право осуществлять стратегическое и оперативное управление АКБ «Пробизнесбанк» и другими аффилированными юридическими лицами, входящими в финансовую группу.

Владение контрольным пакетом акций позволило им занять ключевые руководящие должности в Банке.

Так, Леонтьев С.Л., который, в соответствии с Уставом Банка организовывал работу Совета Директоров, а также председательствовал на Общем собрании акционеров, с момента учреждения Банка на основании решений Совета Директоров Банка, который он сам же и возглавлял, занимал должность Президента АКБ «Пробизнесбанк», что позволяло ему определять приоритетные направления деятельности Банка. В свою очередь, Железняк А.Д., как председатель Правления Банка – первый вице-Президент Банка принял на себя обязательство руководства текущей деятельностью Банка.

В соответствии с Уставом вышеуказанного кредитного учреждения, утвержденного общим собранием акционеров 28.06.2013, Председатель Правления осуществляет руководство текущей деятельностью Банка, без доверенности действует от имени Банка, совершает сделки от имени Банка, распоряжается в соответствии с действующим законодательством и Уставом

8

всем имуществом и средствами Банка, выдает и подписывает доверенности от имени Банка по своему усмотрению и прочее. Таким образом, Железняк А.Д. являлся лицом, выполняющим управленческие функции в АКБ «Пробизнесбанк», и обладал полномочиями организационно-распорядительного и административно-хозяйственного характера, то есть имущество и средства Банка были ему вверены.

Леонтьев С.Л. и Железняк А.Д., полностью контролируя деятельность Банка, начиная с сентября 2014 года в гор. Москве, точные время и место следствием не установлены, с целью хищения путем присвоения вверенных Железняку А.Д. денежных средств Банка создали организованную группу, определив в ней свою руководящую роль. В состав организованной группы под их общим руководством в указанный период времени были вовлечены Алексеев Я.В., Казанцев В.В., Ломов А.В., Алексеев Н.В., Калачев С.В., Крылова М.М., Артемов К.В. и другие неустановленные лица, каждому из которых была определена своя роль.

Для достижения поставленной цели под руководством Железняка А.Д. и Леонтьева С.Л. членами организованной группы была разработана схема хищения денежных средств и распределены роли участников преступления:

- Леонтьев С.Л., являясь основным акционером АКБ «Пробизнесбанк» с долей в размере 40,15% акций (на 31.12.2014), неоднократно избираемый Советом Директоров на должность Президента Банка, в том числе в соответствии с протоколом заседания Совета Директоров № 10 от 25.07.2014, фактически осуществляя стратегическое управление деятельностью Банка, должен был совместно с Железняком А.Д. определить суммы денежных средств, которые намеревались похитить, способ их хищения, распорядиться о перечислении денежных средств на расчетные счета подставных заемщиков, осуществлять общее руководство действиями всех членов организованной группы при совершении преступления и использовать по своему усмотрению полученные в процессе совершения преступления денежные средства, в том числе их использование в интересах членов организованной группы за пределами Российской Федерации;

- Железняк А.Д., являясь основным акционером АКБ «Пробизнесбанк» с долей в размере 11,05% акций (на 31.12.2014), назначенный приказом Банка от 02.06.1993 № 181-К Председателем Правления и одновременно занимая должность первого вице-президента указанного кредитного учреждения, обладая в соответствии с уставом полномочиями руководства текущей деятельностью банка, совершения сделок от имени Банка, распоряжения имуществом и средствами Банка, должен был совместно с Леонтьевым С.Л. определить суммы денежных средств, которые намеревались похитить, определить способ их хищения, подписать решение о выдаче кредита ООО «Инновационно-строительная компания «ИвСпецГарант» (далее по тексту (ООО «ИСК «ИвСпецГарант»), выдать доверенности доверенным ему и Леонтьеву С.Л. лицам, воспользовавшись которыми члены организованной группы должны были подписать кредитные договоры и иные сопутствующие

9

документы, распорядиться о перечислении денежных средств на расчетные счета подставных заемщиков, а также совместно с Леонтьевым С.Л. осуществлять общее руководство действиями всех членов организованной группы при совершении преступления и использовать по своему усмотрению полученные в процессе совершения преступления денежные средства;

- Алексеев Я.В., назначенный приказом Банка от 19.10.2011 № 5330-к на должность вице-президента Банка по корпоративным финансам, должен был разработать схему хищения денежных средств, руководить действиями подчиненных ему сотрудников департамента корпоративных финансов, которые определяли подставных заемщиков Банка из числа подконтрольных участникам организованной группы и сторонних компаний для их последующего использования в хищении денежных средств под видом кредитования, дать распоряжение подчиненным ему сотрудникам о формировании кредитных досье с целью придания видимости законности выдачи кредитных денежных средств, а также дать указание подчиненному ему Артемову К.В. о перечислении похищаемых денежных средств на расчетные счета подконтрольных юридических лиц и их аккумуляции на счетах ООО «Персонал+» и ООО «Коллекторское агентство «Лайф» для последующего перечисления на кипрскую компанию Vermenda Holdings Limited (Верменда Холдингс Лимитед); оплатить незаконные услуги Папахина О.Е., предоставившего подконтрольные ему юридические лица для фиктивного кредитования;

- Казанцев В.В., занимая на основании приказа Банка от 03.12.2007 № 4846-к должность вице-президента по развитию корпоративного бизнеса Банка, являясь доверенным лицом Железняка А.Д., должен был на основании доверенности, предоставляющей право распоряжаться имуществом кредитного учреждения, действуя по указанию руководителей организованной группы, используя свое служебное положение, с целью присвоения денежных средств, подписать от имени Банка заведомо неисполнимый невозвратный и необеспеченный договор об условиях среднесрочного кредитования и сопутствующие документы с подконтрольным членам организованной группы подставным заемщиком – ООО «ИСК «ИвСпецГарант»;

- Ломов А.В., занимая на основании приказа Банка от 23.07.2001 № 564-к должность вице-президента по финансам – заместителя председателя Правления Банка, должен был на основании доверенности, предоставляющей право распоряжаться имуществом кредитного учреждения, действуя по указанию руководителей организованной группы, используя свое служебное положение, с целью присвоения денежных средств, подписать от имени Банка заведомо неисполнимый невозвратный и необеспеченный договор об условиях среднесрочного кредитования и сопутствующие документы с подставным заемщиком ООО «Центр Торговли»;

- Алексеев Н.В., занимая на основании приказа Банка от 16.02.2015 № 1130-к должность начальника департамента корпоративных финансов

10

Банка, должен был на основании доверенности, предоставляющей право распоряжаться имуществом кредитного учреждения, действуя по указанию руководителей организованной группы, используя свое служебное положение, с целью присвоения денежных средств, подписать от имени Банка заведомо неисполнимый невозвратный и необеспеченный договор об условиях среднесрочного кредитования и сопутствующие документы с подставными заемщиками ООО «Инжиниринг-Роялти», ООО «Восток-Карго-Плюс» и ООО «НьюХауТрейд»;

- Артемов К.В., назначенный приказом Банка от 01.07.2014 № 3711-к начальником управления проектного финансирования департамента корпоративных финансов Банка, действуя по указанию Алексеева Я.В., должен был осуществлять мониторинг финансового состояния подконтрольных и аффилированных членам организованной группы обществ, получать информацию о поступлении денежных средств, похищаемых путем выдачи кредитов на подставные юридические лица, на конкретные подконтрольные общества и давать указания о перечислении денежных средств для их аккумуляции на счетах ООО «Коллекторское агентство «Лайф» и Vermenda Holdings Limited, а также передать Папахину О.Е., оказывающему содействие членам организованной группы в совершении хищения денежных средств Банка, часть наличных денежных средств в качестве вознаграждения за предоставление последним ООО «Центр Торговли» и ООО «НьюХауТрейд» в качестве подставных заемщиков;

- Калачев С.В., являясь генеральным директором ООО «Коллекторское агентство «Лайф», заведомо зная о том, что участниками организованной группы под руководством Леонтьева С.Л. и Железняка А.Д. совершается хищение денежных средств Банка путем присвоения, предоставил счет возглавляемого им ООО «Коллекторское агентство «Лайф» для аккумуляции под видом фиктивных договоров займа/погашения похищаемых денежных средств, которые в последующем под видом погашения займов перечислялись на расчётный счет подконтрольного членам организованной группы кипрской компании Vermenda Holdings Limited; также Калачев С.В. на регулярной основе по мере необходимости должен был подписывать фиктивно заключаемые договоры займов, на основании которых, придавая видимость законности совершаемых сделок, похищаемые денежные средства перечислялись между подставными обществами;

- Крылова М.М., занимая на основании приказа Банка от 19.11.2008 № 6492-к должность начальника управления по обеспечению взаимодействия с акционерами и дочерними организациями Банка, возглавила специально учрежденное ООО «Бухгалтерский центр «Баланс», сотрудники которого Самойленко Д.А. и Ячина О.М., неосведомленные о преступных намерениях соучастников преступления, осуществляли подготовку документов, обосновывающих расчеты между обществами, привлекаемыми членами организованной группы в качестве подставных заемщиков и

11

займодавцев/займодателей для транзита денежных средств, их бухгалтерской и налоговой отчетности для предоставления в контролирующие органы Российской Федерации, а также управление счетами подконтрольных юридических лиц.

- иные неустановленные лица, роль которых состояла в совершении иных действий по обеспечению деятельности организованной группы при совершении преступления и оказании иного содействия соучастникам преступления в совершении преступления, в том числе предоставлением информации, средств совершения преступления и устранением препятствия его совершения, сокрытием совершенного преступления, а также в предоставлении подконтрольных им юридических лиц как резидентов так и нерезидентов Российской Федерации с целью последующего перечисления на их счета похищенных денежных средств и распределения среди соучастников преступления.

Устойчивость этой организованной группы, заранее объединившейся для совершения хищения путем присвоения, была обусловлена длительным знакомством и постоянной связью между ее участниками, служебными взаимоотношениями, общностью корыстной цели, четким распределением ролей и функций как при подготовке к совершению хищения, так и при осуществлении преступного умысла, тщательной проработкой схемы хищения.

Кроме того, участники организованной группы по мере необходимости в различное время в период с сентября 2014 года по август 2015 года в городе Москве и городе Иваново Ивановской области, более точное время и место не установлены, в качестве пособников преступления привлекли генерального директора ООО «ИСК «ИвСпецГарант» Поликарпова И.П., генерального директора ООО «Инжиниринг-Роялти» Симакова А.В., генерального директора ООО «Восток-Карго-Плюс» Данукина А.В., фактического руководителя группы компаний «Аймак» Папахина О.Е., генерального директора ООО «Центр Торговли» Шпагину Л.Б., генерального директора ООО «НьюХауТрейд» Кравченко О.В. и иных неустановленных лиц.

В сентябре 2014 года, точное время следствием не установлено, в гор. Москве, члены организованной группы, возглавляемой Леонтьевым С.Л. и Железняком А.Д., действуя из корыстных побуждений, с целью личного обогащения, разработали план действий, направленный на хищение путем присвоения денежных средств Банка в особо крупном размере.

Используя кадровые возможности Банка, членом организованной группы Алексеевым Я.В., действующим по указанию Леонтьева С.Л. и Железняка А.Д., были использованы ранее учрежденные юридические лица, не осуществляющие реальной хозяйственной деятельности и полностью подконтрольные членам организованной группы, директорами которых назначались сотрудники Банка и иные лица за номинальное вознаграждение

12

в размере 10 000 – 20 000 рублей в месяц. В число таких юридических лиц вошли: ООО «Инжиниринг-Роялти», ООО «Элсо», ООО «Персонал+», ООО «Альянс», ООО «Истон», ООО «ПК-Технолоджис», ООО «Санрис».

Также в ходе выполнения преступного замысла, направленного на присвоение денежных средств, членами организованной группы, были использованы юридические лица аффилированные Банку и подконтрольные руководителям Банка – ООО «ИСК «ИвСпецГарант», ООО «Пробизнес-Девелопмент», ООО «Коллекторское агентство «Лайф».

Кроме того, участники организованной группы, в указанный период времени с целью избежать подозрений со стороны регулятора – Банка России и правоохранительных органов в хищении вверенных денежных средств, использовали ООО «Центр Торговли», ООО «НьюХауТрейд», ООО «Финансовый центр «Эскада» и ООО «ПрогмаТрейд», деятельность которых контролировалась Папахиным О.Е., который согласился выступить в качестве пособника за денежное вознаграждение и содействовать совершению преступления путем предоставления компаний ООО «Центр Торговли» и ООО «НьюХауТрейд» для получения в кредит денежных средств, подлежащих хищению, осуществлению фиктивных финансовых операций с указанными денежными средствами и их перечислению на расчетные счета подконтрольных членам организованной группы ООО «ПК-Технолоджис» и ООО «Санрис».

Используемые для операций по перечислению денежных средств расчетные счета всех указанных юридических лиц, были открыты в АКБ «Пробизнесбанк» и, за исключением ООО «НьюХауТрейд», ООО «Центр Торговли», ООО «Финансовый центр «Эскада» и ООО «ПрогмаТрейд», управлялись неустановленными сотрудниками Банка, а также Самойленко Д.А. и Ячиной О.М. в помещениях, расположенных по адресу: гор. Москва, ул. Добролюбова, д. 3, стр. 1.

Общий принцип совершения преступления предусматривал совершение умышленных действий, направленных на выдачу подконтрольным обществам заведомо невозвратных, необеспеченных залоговым имуществом кредитов в особо крупных размерах, перечисление кредитных денежных средств на ссудные и расчетные счета указанных обществ, после чего под видом оплаты фиктивных сделок, с целью сокрытия совершенного преступления, перечисление денежных средств на счета подконтрольных юридических лиц.

Затем, похищенные денежные средства в рублях Российской Федерации конвертировались в полном объёме в доллары США и перечислялись на расчётный счёт подконтрольного членам организованной группы юридического лица, не осуществляющего реальной хозяйственной деятельности, – нерезидента Российской Федерации – компании Vermenda Holdings Limited (Верменда Холдингс Лимитед), зарегистрированной по адресу: Griva Digeni, P.C. 3101, Limassol, Cyprus (Грива Дигени, п/я 3101, Лимассол, Кипр), открытый в кредитной организации – нерезиденте Trasta

13

Komercbanka Riga (Траста Комерцбанка Рига), расположенном по адресу: Palasta iela 1, Riga LV-1050, Latvija (Паласта иела 1, Рига LV-1050, Латвийская Республика).

Документальное оформление выдачи кредитов, с целью придания видимости законности производимых сделок, формально носило законный характер, однако фактически указанные документы содержали недостоверные сведения и все действия участников преступления были направлены на достижение преступного умысла, то есть на хищение путем присвоения денежных средств Банка в особо крупном размере.

При заключении договоров об условиях среднесрочного кредитования лица, выступающие сторонами договора, должны были действовать в соответствии с правилами заключения сделок, основываясь на требованиях ст. 10 ГК РФ, предусматривающей разумность действий и добросовестность участников гражданских правоотношений. Тем самым, лица, подписывающие договоры об условиях среднесрочного кредитования, предметом которых были денежные средства АКБ «Пробизнесбанк», обязаны были действовать добросовестно и не совершать действий, связанных с обманом, в том числе о целевом назначении кредита.

Таким образом, Леонтьев С.Л. и Железняк А.Д., возглавляя организованную группу, и действующие под их руководством Алексеев Я.В., Казанцев В.В., Ломов А.В., Алексеев Н.В., Калачев С.В., Крылова М.М., Артемов К.В. и другие члены организованной группы, действовали во исполнение единого умысла, направленного на безвозмездное изъятие денежных средств и с намерением причинить вред другому лицу (АКБ «Пробизнесбанк»), то есть в нарушение ст. 10 ГК РФ «Пределы осуществления гражданских прав», в соответствии с которой не допускаются действия граждан и юридических лиц, осуществляемые исключительно с намерением причинить вред другому лицу, а также злоупотребление правом в иных формах, и, следовательно, противоправно.

Действующие согласно отведенной им в организованной группе роли Казанцев В.В., Ломов А.В. и Алексеев В.Н., заключая договоры об условиях среднесрочного кредитования, с целью присвоения денежных средств для создания видимости гражданско-правовых отношений во исполнение незаконных указаний руководителей организованной группы Леонтьева С.Л. и Железняка А.Д., умышленно нарушили положения ст. 1 Федерального закона «О банках и банковской деятельности» № 395-1 от 02.12.1990 г., обязывающий кредитную организацию размещать привлекаемые денежные средства физических и юридических лиц от своего имени и за свой счет на условиях возвратности, платности, срочности.

Это позволило членам организованной группы, действовавшим от имени Банка, но вопреки интересам кредитного учреждения, противоправно, безвозмездно, безвозвратно обратить вверенные им денежные средства в свою пользу, обеспечив их переход в собственность подконтрольных

14

соучастникам подставных компаний и тем самым совершить их хищение путем присвоения.

Так, в период предшествующий 16.09.2014, более точное время следствием не установлено, Казанцев В.В., находясь на своём рабочем месте, расположенном по адресу: гор. Москва, Волгоградский пр-т, д. 43 корп. 3, действуя от имени Банка, на основании доверенности № 610/1 от 16.07.2014, выданной одним из руководителей организованной группы – председателем правления Банка Железняком А.Д., согласно которой ему делегированы полномочия по заключению кредитных договоров и распоряжению денежными средствами Банка, то есть управленческие функции административно-хозяйственного характера по распоряжению вверенными ему денежными средствами Банка, выполняя указания руководителей организованной группы Леонтьева С.Л. и Железняка А.Д., действуя умышленно и согласованно с другими членами организованной группы, используя свое служебное положение, подписал от имени Банка Договор об условиях среднесрочного кредитования от 15.09.2014 № 211-810/14ю с подконтрольным членам организованной группы ООО «ИСК «ИвСпецГарант» в лице генерального директора общества Поликарпова И.П., согласно которому Банк обязуется предоставить указанному обществу кредит в рамках открываемых кредитных линий с максимальным размером лимита задолженности в размере 500 000 000 руб.

При этом, Поликарпов И.П., оказывая содействие совершению преступления предоставлением информации и устранением препятствий его совершения, не являясь участником организованной группы, в вышеуказанный период времени, находясь на своем рабочем месте, расположенном по адресу: гор. Иваново, Проспект Шереметьевский, д. 153А, подписал от имени общества вышеуказанный Договор об условиях среднесрочного кредитования от 15.09.2014 № 211-810/14ю, осознавая, что возглавляемое им общество не направит полученные денежные средства в виде кредита на хозяйственную деятельность, а посредством оформления кредита на возглавляемое им общество денежные средства участники организованной группы похитят путем присвоения.

15.09.2014 во исполнение вышеуказанного Договора, согласно представленной заявки от имени Поликарпова И.П., согласно мемориального ордера от 15.09.2014 № 1018062751, денежные средства в размере 280 000 000 руб. перечислены со ссудного счета ООО «ИСК «ИвСпецГарант» № 45207810600000127604 на расчетный счет этой организации № 40702810308180027604, открытые в Банке, расположенном по адресу: гор. Москва, ул. Пудовкина, д. 3.

В тот же день, после поступления денежных средств на расчётный счёт ООО «ИСК «ИвСпецГарант» № 40702810308180027604, открытый в Банке, главный бухгалтер Общества Стулова Е.С., неосведомленная о преступных намерениях участников организованной группы, получив указания посредством электронной почты от неустановленных сотрудников

15

ООО «Пробизнес-Девелопмент», по согласованию с Поликарповым И.П., с целью придания видимости законного движения кредитных денежных средств в размере 280 000 000 руб., перечислила их несколькими платежами, в числе прочих денежных средств:

- 24 157 808,21 руб. под видом погашения процентов и основного долга по ранее заключенным фиктивным договорам займа от 26.08.2014 № 26/08/14-И и от 14.07.2014 № 14/07/14-И платёжными поручениями от 15.09.2014 №№ 751, 752, 763, 764 на расчётный счёт подконтрольного членам организованной группы и не ведущего реальной хозяйственной деятельности ООО «Персонал+» № 40702810300110117621, открытый в том же Банке;

- 34 471 698,63 руб. под видом погашения процентов и основного долга по ранее заключенным фиктивным договорам займа от 30.06.2014 № 30/06-14, от 31.07.2014 № 31/07-14 и от 29.08.2014 № 29/08-14, платёжными поручениями от 15.09.2014 №№ 747, 748, 749, 750, 757, 758, 759, 760, 761, 762 на расчётный счёт возглавляемого членом организованной группы Калачевым С.В. ООО «Коллекторское агентство «Лайф» № 40702810300110117621, открытый в том же Банке;

- 222 016 835,04 руб. под видом погашения ранее заключенного фиктивного соглашения от 30.06.2012 о расторжении договора об инвестировании от 28.05.2008 № ИЛ-7/28-м-08 платёжными поручениями от 15.09.2014 №№ 765, 766 на расчётный счёт аффилированного Банку ООО «Пробизнес-Девелопмент» № 40702810300000021377, открытый в том же Банке.

В тот же день, после поступления денежных средств на расчётный счет ООО «Пробизнес-Девелопмент», неустановленные сотрудники Банка, имеющие доступ к системе «Банк-Клиент» Общества, продолжая реализацию преступного замысла участников организованной группы, платёжными поручениями от 15.09.2014 №№ 853, 852, 856, 857, 861 перечислили часть похищенных денежных средств в размере 221 370 994,73 руб. под видом погашения основного долга и начисленных процентов ранее заключенных фиктивных договоров процентных займов от 16.11.2011 № 16/11/11-ПД, от 30.11.2011 № 30/11/11-ПД и от 30.12.2013 № 30/11/2013-ПД на расчётный счёт подконтрольного членам организованной группы и не ведущего реальной хозяйственной деятельности ООО «ЭЛСО» № 40702810800020115239, открытый в том же Банке.

Затем, 16.09.2014, Самойленко Д.А., неосведомленная о преступных намерениях членов организованной группы, по указанию неустановленных лиц и по согласованию с участником организованной группы Крыловой М.М., платёжным поручением от 16.09.2014 № 321 перечислила часть похищенных денежных средств в размере 221 000 000 руб. под видом погашения основного долга и процентов ранее заключенного фиктивного договора процентного займа от 07.07.2014 № 07/07-14 с вышеуказанного расчётного счета ООО «ЭЛСО» на расчётный счёт возглавляемого членом

16

организованной группы Калачевым С.В. ООО «Коллекторское агентство «Лайф» № 40702810300110117621, открытый в том же Банке.

16.09.2014, то есть на следующий день, после перечисления денежных средств Банка на расчётный счет ООО «Персонал+», та же Самойленко Д.А., действующая по указанию неустановленных лиц и по согласованию с участником организованной группы Крыловой М.М., платежным поручением от 16.09.2014 № 133 перечислила со счета указанного общества часть похищенных денежных средств в размере 24 157 808,21 руб., в числе прочих денежных средств в размере 499 500 000 руб., под видом предоставления займа по фиктивному договору процентного займа от 16.09.2014 № 16/09/14-КА подписанного участником организованной группы Калачевым С.В. со стороны ООО «Коллекторское агентство «Лайф», на расчётный счёт этой организации № 40702810300110117621, открытый в том же Банке.

16.09.2014, то есть в этот же день, после поступления их на расчётный счет ООО «Коллекторское агентство «Лайф», похищенные денежные средства в размере 280 000 000 руб. в числе прочих денежных средств в размере 608 000 000 руб., той же Самойленко Д.А., платежным поручением № 1563 от 16.09.2014 под видом погашения основного долга по ранее заключенному участником организованной группы Калачевым С.В. фиктивному договору займа от 30.08.2013 № 30-08/13 перечислены на расчётный счёт подконтрольной членам организованной группы и не ведущей реальной хозяйственной деятельности компании Vermenda Holdings Limited № 40807810900010030608, открытый в том же Банке.

Затем, 18.09.2014, похищенные денежные средства в размере 280 000 000 руб. в числе прочих денежных средств в размере 578 655 792 руб., неустановленными следствием лицами, осуществляющими управление расчетным счетом Vermenda Holdings Limited № 40807810900010030608, конвертированы в доллары США с одновременным зачислением на валютный счёт компании-нерезидента Vermenda Holdings Limited № 40807840200010030608 денежных средств в размере 15 080 000 долларов США, часть из которых в размере 13 000 000 долларов США в тот же день неустановленными следствием лицами на основании платежного поручения от 18.09.2014 № 217 перечислена на счёт этой организации № LV63KBRB1111215921001, открытый в Trasta Komercbanka Riga (Траста Комерцбанка Рига), расположенном по адресу: Palasta iela 1, Riga LV-1050, Latvija (Паласта иела 1, Рига LV-1050, Латвийская Республика).

Переведя денежные средства на счет Vermenda Holdings Limited в Trasta Komercbanka Riga, руководители организованной группы Леонтьев С.Л. и Железняк А.Д. получили реальную возможность распоряжаться ими по своему усмотрению, сокрыв путем многочисленных финансовых операций истинное предназначение кредита в размере 280 000 000 руб., выданного ООО «ИСК «ИвСпецГарант».

17

Таким образом, членами организованной группы, под руководством Леонтьева С.Л. и Железняка А.Д., в сентябре 2014 года путем выдачи кредита подконтрольному членам организованной группы ООО «ИСК «ИвСпецГарант» было присвоено 280 000 000 руб., принадлежащих Банку, тем самым причинен этой кредитной организации ущерб на указанную сумму.

В период предшествующий 10.04.2015, Алексеевым Я.В., во исполнение разработанного Леонтьевым С.Л. и Железняком А.Д. плана хищения, в качестве подставной организации, на которую должен был быть выдан кредит Банком, было определено ООО «Инжиниринг-Роялти», не ведущее какой-либо хозяйственной деятельности, единственным участником и генеральным директором которого с 14.10.2014 являлся бывший сотрудник Банка Симаков А.В., ранее занимавший должность старшего специалиста управления по работе с проблемной задолженностью Московской региональной дирекции АКБ «Пробизнесбанк».

При этом, Симаков А.В., действуя из корыстной заинтересованности, не являясь участником организованной группы, предоставив возглавляемое им общество, согласился оказать содействие членам организованной группы в совершении хищения путем присвоения денежных средств Банка предоставлением информации и устранением препятствий его совершения.

Продолжая реализовывать преступный умысел, направленный на хищение денежных средств Банка, в особо крупном размере, участник организованной группы – начальник департамента корпоративных финансов Банка Алексеев Н.В., в период предшествующий 10.04.2015, точное время следствием не установлено, находясь на своем рабочем месте, расположенном по адресу: г. Москва, ул. Бутырская, д. 62, действуя от имени Банка, на основании доверенности № 120/2 от 17.02.2015, выданной одним из руководителей организованной группы – председателем правления Банка Железняком А.Д., согласно которой ему делегированы полномочия по заключению кредитных договоров и распоряжению денежными средствами Банка, то есть управленческие функции административно-хозяйственного характера по распоряжению вверенными ему денежными средствами Банка, выполняя указание руководителей организованной группы Железняка А.Д. и Леонтьева С.Л., действуя умышленно и согласованно с другим членами организованной группы, используя свое служебное положение, подписал от имени Банка Договор об условиях среднесрочного кредитования от 09.04.2015 № 044-810/15ю с подконтрольным членам организованной группы ООО «Инжиниринг-Роялти» в лице генерального директора общества Симакова А.В., согласно которому Банк обязуется предоставить указанному обществу кредит в рамках открываемых кредитных линий с максимальным размером лимита задолженности в размере 1 000 000 000 руб.

При этом, Симаков А.В. осознавал, что цель получения кредита является заведомо ложной, а получение кредита является способом хищения денежных средств Банка, в вышеуказанный период времени, находясь около

18

своего дома, расположенного по адресу: гор. Москва, Высоковольтовый проезд, д. 1, корп. 8, подписал от имени возглавляемого им общества вышеуказанный Договор об условиях среднесрочного кредитования от 09.04.2015 № 044-810/15ю.

09.04.2015 во исполнение вышеуказанного Договора, согласно представленной заявки от имени Симакова А.В., согласно мемориального ордера от 09.04.2015 № 1019700947, денежные средства в размере 600 000 000 руб. перечислены со ссудного счета ООО «Инжиниринг-Роялти» № 45204810400000135572 на расчетный счет этой организации № 40702810900110035572, открытые в Банке, расположенном по адресу: гор. Москва, ул. Пудовкина, д. 3.

В этот же день, после поступления денежных средств на расчётный счёт ООО «Инжиниринг-Роялти» № 40702810900110035572, Ячиной О.М., неосведомлённой о преступных намерениях членов организованной группы, действующей по указанию Артемова К.В. и по согласованию с Крыловой М.М., похищаемые денежные средства в размере 600 000 000 руб. под видом предоставления займа по фиктивному договору процентного займа от 09.04.2015 № 09/04/2015 платёжным поручением от 09.04.2015 № 22 перечислены на расчётный счёт подконтрольного членам организованной группы и не ведущего реальной хозяйственной деятельности ООО «Альянс» № 40702810500000113328, открытый в том же Банке.

09.04.2015, то есть в этот же день, после перечисления денежных средств Банка на расчётный счет ООО «Альянс», той же Ячиной О.М., платёжным поручением от 09.04.2015 № 33 похищенные денежные средства в размере 600 000 000 руб. под видом частичного погашения основного долга по ранее заключенному фиктивному договору процентного займа от 29.08.2014 № 29/08-Л перечислены на расчётный счёт подконтрольного членам организованной группы и не ведущего реальной хозяйственной деятельности ООО «Персонал+» № 40728103000000102610, открытый в том же Банке.

В этот же день, после поступления денежных средств на расчётный счет ООО «Персонал +», той же Ячиной О.М., платежным поручением № 144 от 09.04.2015 денежные средства в размере 600 000 000 руб., похищенные у Банка, под видом частичного погашения основного долга по ранее заключенному фиктивному договору займа от 06.03.2015 № 0603/15 перечислены на расчётный счёт подконтрольной членам организованной группы и не ведущей реальной хозяйственной деятельности компании Vermenda Holdings Limited № 40807810900010030608, открытый в том же Банке.

Затем, 09.04.2015 и 13.04.2015 похищенные денежные средства в размере 600 000 000 руб., в числе прочих денежных средств в размере 600 069 891,60 руб., неустановленными следствием лицами, осуществляющими управление расчетным счетом Vermenda Holdings Limited № 40807810900010030608, конвертированы в доллары США с

19

одновременным зачислением на валютный счёт компании-нерезидента Vermenda Holdings Limited № 40807840200010030608 денежных средств в размере 11 182 000 долларов США, часть из которых в размере 10 000 000 долларов США неустановленными следствием лицами на основании платежного поручения от 09.04.2015 № 271 перечислена на счёт этой организации № LV63KBRB1111215921001, открытый в Trasta Komercbanka Riga (Траста Комерцбанка Рига), расположенном по адресу: Palasta iela 1, Riga LV-1050, Latvija (Паласта иела 1, Рига LV-1050, Латвийская Республика).

Переведя денежные средства на счет Vermenda Holdings Limited в Trasta Komercbanka Riga, руководители организованной группы Леонтьев С.Л. и Железняк А.Д. получили реальную возможность распоряжаться ими по своему усмотрению, скрыв путем многочисленных финансовых операций истинное предназначение кредита в размере 600 000 000 руб., выданного ООО «Инжиниринг-Роялти».

Таким образом, членами организованной группы, под руководством Леонтьева С.Л. и Железняка А.Д., в апреле 2015 года путем выдачи кредита подконтрольному ООО «Инжиниринг-Роялти» было присвоено 600 000 000 руб., принадлежащих Банку, тем самым причинен этой кредитной организации ущерб на указанную сумму.

В период предшествующий 16.05.2015, Алексеевым Я.В., действующим во исполнение разработанного Леонтьевым С.Л. и Железняком А.Д. плана хищения, в качестве подставной организации, на которую должен был быть выдан кредит Банком, было определено ООО «Восток-Карго-Плюс», единственным участником и генеральным директором которого с момента учреждения (17.12.2012) являлся подконтрольный членам организованной группы Данукин А.В.

При этом, Данукин А.В., действуя из корыстной заинтересованности, не являясь участником организованной группы, предоставив возглавляемое им общество, согласился оказать содействие членам организованной группы в совершении хищения путем присвоения денежных средств Банка предоставлением информации и устранением препятствий его совершения.

Продолжая реализовывать преступный умысел, направленный на хищение денежных средств Банка, в особо крупном размере, участник организованной группы – начальник департамента корпоративных финансов Банка Алексеев Н.В., в период предшествующий 16.05.2015, точное время следствием не установлено, находясь на своем рабочем месте, расположенном по адресу: г. Москва, ул. Бутырская, д. 62, действуя от имени Банка, на основании доверенности № 120/2 от 17.02.2015, выданной одним из руководителей организованной группы – председателем правления Банка Железняком А.Д., согласно которой ему делегированы полномочия по заключению кредитных договоров и распоряжению денежными средствами Банка, то есть управленческие функции административно-хозяйственного характера по распоряжению вверенными ему денежными средствами Банка,

20

выполняя указание руководителей организованной группы Железняка А.Д. и Леонтьева С.Л., действуя умышленно и согласованно с другим членами организованной группы, используя свое служебное положение, подписал от имени Банка Договор об условиях среднесрочного кредитования от 15.05.2015 № 071-810/15ю с ООО «Восток-Карго-Плюс» в лице генерального директора общества Данукина А.В., согласно которому Банк обязуется предоставить указанному обществу кредит в рамках открываемых кредитных линий с максимальным размером лимита задолженности в размере 500 000 000 руб.

При этом, Данукин А.В. осознавал, что цель получения кредита является заведомо ложной, а получение кредита является способом хищения денежных средств Банка, в вышеуказанный период времени, находясь в неустановленном месте гор. Москвы, подписал от имени возглавляемого им общества вышеуказанный Договор об условиях среднесрочного кредитования от 15.05.2015 № 071-810/15ю.

18.05.2015 и 19.05.2015 во исполнение вышеуказанного Договора, согласно представленной заявки от имени Данукина А.В., согласно мемориальных ордеров от 18.05.2015 № 1019906802 и от 19.05.2015 № 1019915598 денежные средства в размере 365 000 000 руб. перечислены со ссудного счета ООО «Восток-Карго-Плюс» № 45205810500100107477 на расчётный счёт ООО «Восток-Карго-Плюс» № 40702810700000107477, открытые в Банке, расположенном по адресу: гор. Москва, ул. Пудовкина, д. 3.

18.05.2015 и 19.05.2015, после поступления похищаемых денежных средств на указанный расчетный счет Общества, Данукин А.В. продолжая выполнять отведённую ему роль в совершении преступления, оказывая содействие его совершению предоставлением информации и устранением препятствий, перечислил денежные средства, фиктивно полученные в виде кредита от Банка в размере 365 000 000 руб., на основании платёжных поручений от 18.05.2015 № 1054 и от 19.05.2015 № 1057 под видом предоставления фиктивного займа по договорам процентных займов от 15.05.2015 № 15/05-И и от 18.05.2015 № 18/05-И на расчётный счёт подконтрольного членам организованной группы и не ведущего реальной хозяйственной деятельности ООО «Истон» № 40702810900000100889, открытый в том же Банке.

18.05.2015 и 19.05.2015, после перечисления денежных средств Банка на расчётный счет ООО «Истон», Ячиной О.М., неосведомленной о преступных намерениях членов организованной группы, действующей по указанию Артемова К.В., часть похищенных денежных средств в размере 364 700 000 руб. мемориальными ордерами от 18.05.2015 № 39 и от 19.05.2015 № 40 под видом предоставления займа по фиктивным договорам процентных займов от 18.05.2015 № 18/05 и от 19.05.2015 № 19/05, подписанных со стороны ООО «Коллекторское агентство «Лайф» участником организованной группы Калачевым С.В., перечислены на

21

расчётный счёт этой организации № 40702810800020115239, открытый в том же Банке.

18.05.2015 и 19.05.2015, после поступления похищенных у Банка денежных средств на расчётный счет ООО «Коллекторское агентство «Лайф», той же Ячиной О.М., платежными поручениями № 119 от 18.05.2015 и № 120 от 19.05.2015 часть похищенных у Банка денежных средств в размере 347 000 000 руб. под видом частичного погашения основного долга по фиктивным договорам займа от 29.01.2015 № 2901-15 и от 28.04.2014 № 2804 перечислена на расчётный счёт подконтрольной членам организованной группы и не ведущего реальной хозяйственной деятельности компании Vermenda Holdings Limited № 40807810900010030608, открытый в том же Банке.

Затем, 18.05.2015 и 19.05.2015 часть из похищенных денежных средств в размере 346 958 345 руб., неустановленными следствием лицами, осуществляющими управление расчетным счетом Vermenda Holdings Limited № 40807810900010030608, конвертированы в доллары США с одновременным зачислением на валютный счёт компании-нерезидента Vermenda Holdings Limited № 40807840200010030608 денежных средств в размере 7 014 000 долларов США, и в числе прочих денежных средств в размере 7 600 000 долларов США неустановленными следствием лицами на основании платежных поручений от 18.05.2015 № 278 и от 19.05.2015 № 279 перечислены на счёт этой организации № LV63KBRB1111215921001, открытый в Trasta Komercbanka Riga (Траста Комерцбанка Рига), расположенном по адресу: Palasta iela 1, Riga LV-1050, Latvija (Паласта иела 1, Рига LV-1050, Латвийская Республика).

Переведя денежные средства на счет Vermenda Holdings Limited в Trasta Komercbanka Riga, руководители организованной группы Леонтьев С.Л. и Железняк А.Д. получили реальную возможность распоряжаться ими по своему усмотрению, сокрыв путем многочисленных финансовых операций истинное предназначение кредита в размере 365 000 000 руб., выданного ООО «Восток-Карго-Плюс».

Таким образом, членами организованной группы, под руководством Леонтьева С.Л. и Железняка А.Д., в мае 2015 года путем выдачи кредита подконтрольному ООО «Восток-Карго-Плюс» было присвоено 365 000 000 руб., принадлежащих Банку, тем самым причинен этой кредитной организации ущерб на указанную сумму.

Впоследствии, 06.08.2015, в день отзыва у Банка лицензии на право осуществления банковских операций, соучастники преступления — вице-президент по финансам — заместитель Председателя Правления Банка Ломов А.В. и генеральный директор ООО «Восток-Карго-Плюс» Данукин А.В., с целью сокрытия совершенного у Банка хищения денежных средств в особо крупном размере и придания видимости законности совершенных мнимых сделок, заключили Соглашение об отступном от 06.08.2015, согласно которому обязательства ООО «Восток-Карго-Плюс» по

22

Договору об условиях среднесрочного кредитования от 15.05.2015 № 071-810/15ю были прекращены, а в качестве исполнителя обязательств по выплате кредитных денежных средств Банк принял право требования к ООО «Истон», не осуществляющему какой-либо фактической хозяйственной деятельности.

В период предшествующий 23.06.2015, членами организованной группы план хищения денежных средств Банка был существенно изменен. С целью продолжения реализации преступного замысла, направленного на присвоение денежных средств Банка, членом организованной группы Алексеевым Я.В., действующим под руководством Леонтьева С.Л. и Железняка А.Д., к совершению преступления в период предшествующий 23.06.2015 в гор. Москве, точные время и место следствием не установлены, в качестве пособника привлечен фактический руководитель ряда компаний, в том числе ООО «Центр Торговли», ООО «НьюХауТрейд», ООО «Финансовый центр «Эскада» и ООО «ПрогмаТрейд» Папахин О.Е., который согласился выступить в качестве пособника за денежное вознаграждение и содействовать совершению преступления путем предоставления ООО «Центр Торговли» и ООО «НьюХауТрейд» для оформления им фиктивного кредита и совершения фиктивных операций по перечислению денежных средств на расчетные счета подконтрольных членам организованной группы ООО «ПК-Технолоджис» и ООО «Санрис».

В свою очередь Папахин О.Е., в указанный период времени в гор. Москве, точные время и место следствием не установлены, в качестве пособников привлек подконтрольных ему подставных генеральных директоров ООО «Центр Торговли» и ООО «НьюХауТрейд», Шпагину Л.Б. и Кравченко О.В., соответственно.

Согласно разработанной схеме, вышеуказанные общества должны были выступить фиктивными заемщиками Банка и после получения денежных средств в виде кредита, проведя операции с ценными бумагами, перечислить их на счета подконтрольных членам организованной группы ООО «Санрис» и ООО «ПК Техноложис». При этом Папахин О.Е. обеспечил предоставление всех документов, необходимых для формирования кредитного досье, подписание договоров и перечисление денежных средств, организовал подписание необходимых документов со стороны подконтрольных ему лиц.

Участник организованной группы – вице президент по финансам – заместитель председателя правления Банка Ломов А.В., в период предшествующий 23.06.2015, точное время следствием не установлено, находясь на своем рабочем месте, расположенном по адресу: гор. Москва, ул. Снежная, д. 26, продолжая реализовывать преступный умысел, направленный на хищение денежных средств Банка, в особо крупном размере, действуя от имени Банка, на основании доверенности № 92/5 от 09.02.2015, выданной ему одним из руководителей организованной группы – председателем правления Банка Железняком А.Д., согласно которой ему делегированы полномочия по заключению кредитных договоров и

23

распоряжению денежными средствами Банка, то есть управленческие функции административно-хозяйственного характера по распоряжению вверенными ему денежными средствами Банка, выполняя указание руководителей организованной группы Леонтьева С.Л. и Железняка А.Д., действуя умышленно и согласованно с другим членами организованной группы, используя свое служебное положение, подписал от имени Банка Договор об условиях среднесрочного кредитования от 22.06.2015 № 099-810/15ю с предоставленным Папахиным О.Е. ООО «Центр торговли» в лице генерального директора общества Шпагиной Л.Б., согласно которому Банк обязуется предоставить указанному обществу в рамках открываемых кредитных линий с максимальным размером лимита задолженности в размере 1 000 000 000 руб.

При этом, Шпагина Л.Б., действуя по указанию Папахина О.Е. осознавала, что цель получения кредита ООО «Центр Торговли» является заведомо ложной, а получение кредита является способом хищения денежных средств Банка. Шпагина Л.Б., 22.06.2015, находясь в помещении Банка, расположенном по адресу: гор. Москва, Волгоградский проспект, д. 43, корп. 3, подписала от имени фиктивно возглавляемого общества вышеуказанный Договор об условиях среднесрочного кредитования от 22.06.2015 № 099-810/15ю.

23.06.2015 во исполнение вышеуказанного Договора, согласно представленной заявки от имени Шпагиной Л.Б., согласно мемориального ордера от 23.06.2015 № 1020125374 денежные средства в размере 698 200 000 руб. перечислены со ссудного счета ООО «Центр торговли» № 45205810300200007965 на расчетный счет этой организации № 40702810400000207965, открытые в Банке, расположенном по адресу: гор. Москва, ул. Пудовкина, д. 3.

После чего, денежные средства в размере 698 200 000 руб. по указанию Папахина О.Е., в тот же день, после их поступления на расчетный счет ООО «Центр торговли» № 40702810400000207965, открытый в Банке, мемориальным ордером от 23.06.2015 № 94 перечислены неустановленными лицами под видом оплаты фиктивного договора купли-продажи инвестиционных паев № ПТ-ЦТ/0406 от 04.06.2015 на расчётный счёт подконтрольного Папахину О.Е. ООО «ПрогмаТрейд» № 40702810000000207844, открытый в том же Банке.

23.06.2015 после поступления похищаемых денежных средств на расчётный счет ООО «ПрогмаТрейд», платежным поручением от 23.06.2015 № 85 денежные средства в размере 698 200 000 руб. неустановленными лицами перечислены по фиктивному договору процентного займа № 22-06 от 22.06.2015 на расчётный счёт подконтрольного членам организованной группы и не ведущего реальной хозяйственной деятельности ООО «ПК-Технолоджис» № 40702810200110035573, открытый в том же Банке.

Затем, 23.06.2015, то есть в этот же день, после перечисления похищенных денежных средств на расчётный счет ООО «ПК-Технолоджис»,

24

Ячиной О.М., неосведомлённой о преступных намерениях членов организованной группы, действующей по указанию Артемова К.В. и по согласованию с Крыловой М.М., платежным поручением от 23.06.2015 № 124 под видом предоставления займа по фиктивному договору процентного займа от 23.06.2015 № 23-06/2015, заключенному со стороны ООО «Коллекторское агентство «Лайф» участником организованной группы Калачевым С.В., денежные средства в размере 698 200 000 руб. перечислены на расчётный счёт этой организации № 40702810300110117621, открытый в том же Банке.

После чего, 24.06.2015 после поступления похищенных у Банка денежных средств на расчётный счет ООО «Коллекторское агентство «Лайф», той же Ячиной О.М., платежными поручениями от 24.06.2015 №№ 1114, 1115, 1116 под видом погашения основного долга по договорам займа от 06.07.2012 № 06-07/12, от 29.07.2011 № 29-01/2011-3 и от 28.12.2012 № 28-12/1 денежные средства в размере 698 200 000 руб., похищенные у Банка, в числе прочих денежных средств в размере 700 000 000 руб., перечислены на расчётный счёт подконтрольной членам организованной группы и не ведущей реальной хозяйственной деятельности компании Vermenda Holdings Limited № 40807810900010030608, открытый в том же Банке.

Затем, 25.06.2015, похищенные денежные средства в размере 698 200 000 руб., в числе прочих денежных средств в размере 702 969 800 руб., неустановленными следствием лицами, осуществляющими управление расчетным счетом Vermenda Holdings Limited № 40807810900010030608, конвертированы в доллары США с одновременным зачислением на валютный счёт компании-нерезидента Vermenda Holdings Limited № 40807840200010030608 денежных средств в размере 13 000 000 долларов США, которые в тот же день неустановленными следствием лицами на основании платежного поручения от 25.06.2015 № 281 перечислены на счёт этой организации № LV63KBRB1111215921001, открытый в Trasta Komercbanka Riga (Траста Комерцбанка Рига), расположенном по адресу: Palasta iela 1, Riga LV-1050, Latvija (Паласта иела 1, Рига LV-1050, Латвийская Республика).

Переведя денежные средства на счет Vermenda Holdings Limited в Trasta Komercbanka Riga, руководители организованной группы Леонтьев С.Л. и Железняк А.Д. получили реальную возможность распоряжаться ими по своему усмотрению, сокрыв путем многочисленных финансовых операций истинное предназначение кредита в размере 698 200 000 руб., выданного ООО «Центр Торговли».

Таким образом, членами организованной группы, под руководством Леонтьева С.Л. и Железняка А.Д., в июне 2015 года путем выдачи кредита ООО «Центр торговли» было похищено путем присвоения 698 200 000 руб., принадлежащих Банку, тем самым причинен этой кредитной организации ущерб на указанную сумму.

25

03.08.2015, соучастники преступления — начальник Департамента корпоративных финансов Банка Алексеев Н.В. и генеральный директор ООО «Центр торговли» Шпагина Л.Б., с целью сокрытия совершенного у Банка хищения денежных средств в особо крупном размере и придания видимости законности совершенных мнимых сделок, заключили Соглашение об отступном от 03.08.2015, согласно которому обязательства ООО «Центр торговли» по Договору об условиях среднесрочного кредитования от 22.06.2015 № 099-810/15ю были прекращены, а в качестве исполнителя обязательств по выплате кредитных денежных средств Банк принял право требования к подконтрольному участникам преступления ООО «ПК-Технолоджис», не осуществляющему какой-либо фактической хозяйственной деятельности.

Участник организованной группы — начальник департамента корпоративных финансов Банка Алексеев Н.В., действуя от имени Банка, на основании доверенности № 120/2 от 17.02.2015, выданной одним из руководителей организованной группы — председателем правления Банка Железняком А.Д., согласно которой ему делегированы полномочия по заключению кредитных договоров и распоряжению денежными средствами Банка, то есть управленческие функции административно-хозяйственного характера по распоряжению вверенными ему денежными средствами Банка, выполняя указание руководителей организованной группы Железняка А.Д. и Леонтьева С.Л., действуя умышленно и согласованно с другим членами организованной группы, используя свое служебное положение, 28.07.2015, находясь на своем рабочем месте, расположенном по адресу: г. Москва, ул. Бутырская, д. 62, подписал от имени Банка Договор об условиях среднесрочного кредитования от 28.07.2015 № 137-810/15ю с предоставленным Папахиным О.Е. ООО «НьюХауТрейд» в лице генерального директора общества Кравченко О.В., согласно которому Банк обязуется предоставить указанному обществу кредит в рамках открываемых кредитных линий с максимальным размером лимита задолженности в размере 1 000 000 000 рублей.

При этом, Кравченко О.В., действуя по указанию Папахина О.Е. осознавала, что цель получения кредита ООО «НьюХауТрейд» является заведомо ложной, а получение кредита является способом хищения денежных средств Банка. Кравченко О.В. 28.07.2015, находясь в помещении Банка, расположенном по адресу: гор. Москва, Бутырская, д. 62, подписала от имени фиктивно возглавляемого общества вышеуказанный Договор об условиях среднесрочного кредитования от 28.07.2015 № 137-810/15ю.

28.07.2015 во исполнение вышеуказанного Договора, согласно представленной заявки от имени Кравченко О.В. и мемориального ордера от 28.07.2015 № 1020346334 денежные средства в размере 499 995 968 руб. перечислены со ссудного счета ООО «НьюХауТрейд» № 45205810900200007734 на расчетный счет № 40702810000000207734 этой организации, открытые в Банке, расположенном по адресу: гор. Москва,

ул. Пудовкина, д. 3.

28.07.2015, после поступления денежных средств на расчётный счёт ООО «НьюХауТрейд» № 40702810000000207734, открытый в Банке, денежные средства в размере 499 995 968 руб., похищенные у Банка, мемориальным ордером от 28.07.2015 № 9 неустановленными лицами по указанию Папахина О.Е. перечислены под видом оплаты по фиктивному договору купли-продажи инвестиционных паев от 28.07.2015 № ЭС-НХТЭ2015-1Б на расчётный счёт подконтрольного Папахину О.Е. ООО «Финансовый центр «Эскада» № 40702810800000210934, открытый в том же Банке.

28.07.2015 после поступления похищенных у Банка денежных средств на расчётный счет ООО «Финансовый центр «Эскада», платежным поручением № 35 от 28.07.2015 похищенные денежные средства в размере 499 995 968 руб. по фиктивному договору процентного займа от 28.07.2015 № 28-07 неустановленными лицами по указанию Папахина О.Е. перечислены на расчётный счёт подконтрольного членам организованной группы и не ведущего реальной хозяйственной деятельности ООО «Санрис» № 40702810500070015537, открытый в том же Банке.

Затем, 29.07.2015, то есть на следующий день, после перечисления похищенных денежных средств на расчётный счет ООО «Санрис», Ячиной О.М., неосведомлённой о преступных намерениях членов организованной группы, действующей по указанию Артемова К.В. и по согласованию с Крыловой М.М., платежными поручениями от 29.07.2015 №№ 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, основная часть денежных средств в размере 498 871 028,03 руб. под видом погашения процентов и основного долга по ранее заключенным фиктивным договорам процентных займов от 01.08.2013 № 01/08/13-САН, от 26.12.2013 № 26/12/13-САН, от 31.01.12 № 31/01/12-САН, от 02.03.2012 № 02/03/12-САН, от 27.02.2012 № 27/02/12-САН, от 12.10.2012 № 12/10/12_САН и предоставления займа по фиктивному договору процентного займа от 29.07.2015 № 29/07/15-САН, заключенных со стороны ООО «Коллекторское агентство «Лайф» участником организованной группы Калачевым С.В., перечислены на расчётный счёт этой организации № 40702810300110117621, открытый в том же Банке.

29.07.2015 и 30.07.2015 после поступления похищенных у Банка денежных средств на расчётный счет ООО «Коллекторское агентство «Лайф», той же Ячиной О.М., платежными поручениями от 29.07.2015 № 1372, № 1373, № 1374 и от 30.07.2015 № 1426 под видом погашения основного долга по фиктивным договорам займа от 06.07.2012 № 06–07/12, от 30.08.2012 № 30-08/12, от 28.12.2012 № 28-12/1 и от 28.04.2014 2804 денежные средства, похищенные у Банка, в числе прочих денежных средств в размере 600 000 000 руб. перечислены на расчётный счёт подконтрольной членам организованной группы и не ведущей реальной хозяйственной деятельности компании Vermenda Holdings Limited

27

№ 40807810900010030608, открытый в том же Банке.

Затем, 30.07.2015, похищенные денежные средства в размере 499 995 968 руб., в числе прочих денежных средств в размере 600 000 000 руб., неустановленными следствием лицами, осуществляющими управление расчетным счетом Vermenda Holdings Limited № 40807810900010030608, конвертированы в доллары США с одновременным зачислением на валютный счёт компании-нерезидента Vermenda Holdings Limited № 40807840200010030608 денежных средств в размере 10 015 000 долларов США, часть из которых в размере 10 000 000 долларов США в тот же день неустановленными следствием лицами на основании платежных поручений от 30.07.2015 №№ 290 и 291 перечислены на счёт этой организации № LV63KBRB1111215921001, открытый в Trasta Komercbanka Riga (Траста Комерцбанка Рига,), расположенном по адресу: Palasta iela 1, Riga LV-1050, Latvija (Паласта иела 1, Рига LV-1050, Латвийская Республика).

Переведя денежные средства на счет Vermenda Holdings Limited в Trasta Komercbanka Riga, руководители организованной группы Леонтьев С.Л. и Железняк А.Д. получили реальную возможность распоряжаться ими по своему усмотрению, сокрыв путем многочисленных финансовых операций истинное предназначение кредита в размере 499 995 968 руб., выданного ООО «НьюХауТрейд».

Таким образом, членами организованной группы, под руководством Леонтьева С.Л. и Железняка А.Д., в июле 2015 года путем выдачи кредита ООО «НьюХауТрейд» было похищено путем присвоения 499 995 968 руб., принадлежащих Банку, тем самым причинен этой кредитной организации ущерб на указанную сумму.

Впоследствии, 29.07.2015, то есть на следующий день после выдачи кредита, соучастники преступления – начальник Департамента корпоративных финансов Банка Алексеев Н.В. и генеральный директор ООО «НьюХауТрейд» Кравченко О.В., с целью сокрытия совершенного у Банка хищения денежных средств в особо крупном размере и придания видимости законности совершенных мнимых сделок, заключили Соглашение об отступном от 29.07.2015, согласно которому обязательства ООО «НьюХауТрейд» по Договору об условиях среднесрочного кредитования от 28.07.2015 № 137-810/15ю были прекращены, а в качестве исполнителя обязательств по выплате кредитных денежных средств Банк принял право требования к подконтрольному участникам преступления ООО «Саприс», не осуществляющему какой-либо фактической хозяйственной деятельности.

Всего, членами организованной группы, под руководством Леонтьева С.Л. и Железняка А.Д., с сентября 2014 года по август 2015 года путем выдачи кредитов ООО «ИСК ИвСпецГарант», ООО «Инжиниринг-Роялти», ООО «Восток-Карго-Плюс», ООО «Центр Торговли» и ООО «НьюХауТрейд» было присвоено 2 443 195 968 (два миллиарда четыреста сорок три миллиона сто девяносто пять тысяч девятьсот

28

шестьдесят восемь) руб. и тем самым причинён ущерб АКБ «Пробизнесбанк» в особо крупном размере.

На основании изложенного, руководствуясь ст. ст. 38, 171, 172 и 175 УПК РФ,

### ПОСТАНОВИЛ:

Привлечь Леонтьева Сергея Леонидовича, 11 июля 1965 года рождения, уроженца гор. Москвы, гражданина Российской Федерации, в качестве обвиняемого по данному уголовному делу, предъявив ему обвинение в совершении преступлений, предусмотренных ч. 3 ст. 33 ч. 4 ст. 160 и ч. 3 ст. 33 ч. 4 ст. 160 УК РФ, о чем ему объявить.

Следователь по особо важным делам
Главного следственного управления
майор юстиции                                                      Д.Х. Хурамшин

29

Настоящее постановление мне объявлено «____» _____ г.

в ____ ч ____ мин., его текст _____

Сущность предъявленного обвинения разъяснена. Одновременно мне разъяснены права, предусмотренные ч.ч. 3 и 4 ст. 47 УПК РФ, а именно:

Защищать свои права и законные интересы и иметь достаточное время и возможность для подготовки к защите;

1)    знать, в чем я обвиняюсь, и получить копию постановления о возбуждении уголовного дела, по которому я привлечен в качестве обвиняемого, если копию такого постановления не получил в соответствии с пунктом 1 части четвертой статьи 46 УПК РФ;

2)    получить копию постановления о привлечении в качестве обвиняемого, копию постановления о применении меры пресечения, копию обвинительного заключения, обвинительного акта или обвинительного постановления;

3)    возражать против обвинения, давать показания по предъявленному ему обвинению либо отказаться от дачи показаний. При согласии дать показания я предупрежден о том, что мои показания могут быть использованы в качестве доказательств по уголовному делу, в том числе и при последующем отказе от этих показаний, за исключением случая, предусмотренного пунктом 1 части второй статьи 75 УПК РФ;

4) представлять доказательства;

5) заявлять ходатайства и отводы;

6) давать показания и объясняться на родном языке или языке, которым он владеет;

7) пользоваться помощью переводчика бесплатно;

8) пользоваться помощью защитника, в том числе бесплатно в случаях, предусмотренных УПК РФ;

9) иметь свидания с защитником наедине и конфиденциально, в том числе до первого допроса обвиняемого, без ограничения их числа и продолжительности;

9.1) с момента избрания меры пресечения в виде заключения под стражу или домашнего ареста иметь свидания без ограничения их числа и продолжительности с нотариусом в целях удостоверения доверенности на право представления интересов обвиняемого в сфере предпринимательской деятельности. При этом запрещается совершение нотариальных действий в отношении имущества, денежных средств и иных ценностей, на которые может быть наложен арест в случаях, предусмотренных настоящим Кодексом;

10)    участвовать с разрешения следователя или дознавателя в следственных действиях, производимых по его ходатайству или ходатайству его защитника либо законного представителя, знакомиться с протоколами этих действий и подавать на них замечания;

30

11) знакомиться с постановлением о назначении судебной экспертизы, ставить вопросы эксперту и знакомиться с заключением эксперта;

12) знакомиться по окончании предварительного расследования со всеми материалами уголовного дела и выписывать из уголовного дела любые сведения и в любом объеме;

13) снимать за свой счет копии с материалов уголовного дела, в том числе с помощью технических средств;

14) приносить жалобы на действия (бездействие) и решения дознавателя, начальника подразделения дознания, начальника органа дознания, органа дознания, следователя, прокурора и суда и принимать участие в их рассмотрении судом;

15) возражать против прекращения уголовного дела по основаниям, предусмотренным частью второй статьи 27 УПК РФ;

16) участвовать в судебном разбирательстве уголовного дела в судах первой, второй, кассационной и надзорной инстанций, а также в рассмотрении судом вопроса об избрании в отношении его меры пресечения и в иных случаях, предусмотренных пунктами 1 - 3 и 10 части второй статьи 29 УПК РФ;

17) знакомиться с протоколом судебного заседания и подавать на него замечания;

18) обжаловать приговор, определение, постановление суда и получать копии обжалуемых решений;

19) получать копии принесенных по уголовному делу жалоб и представлений и подавать возражения на эти жалобы и представления;

20) участвовать в рассмотрении вопросов, связанных с исполнением приговора;

21) защищаться иными средствами и способами, не запрещенными настоящим Кодексом.

Также мне разъяснено, что в соответствии с ч. 5 ст. 47 УПК РФ участие в уголовном деле защитника или законного представителя обвиняемого не служит основанием для ограничения какого-либо права обвиняемого.


Обвиняемый

Защитник

Защитник

31

Постановление объявил, права разъяснил, копию настоящего постановления обвиняемому и его защитникам вручил « 11 » июля 2017 года.

Обвиняемый

Защитник _____ (подпись)

Защитник _____ (подпись)

_____ (подпись)

Следователь _____ (подпись)

Копия настоящего постановления направлена заместителю Генерального прокурора Российской Федерации « 11 » июля 2017 года.

Следователь _____ (подпись)