# EXHIBIT 20

Case №1-216/17

SENTENCE in the name of Russian Federation

Date: April 26, 2017

Place: Moscow

The Ostankino District court of Moscow, Chaired by Ya.V.Isaeva and in the presence of the clerk A. Yu. Kozhemyako, along with State Prosecutor, Senior Prosecutor of the 3rd department of the State Prosecutors of the Main Criminal and Judicial Directorate of the Office of the Prosecutor General of the Russian Federation A. S. Ustaeva, representative of injured party V. A. Savina, advocate M. A. Yakunova who presented Warrant of Attorney № 26 and legal practicing certificate № 16030, the accused N.V. Alexeev and his defense attorney O.A. Zvyagin who presented Warrant of Attorney № 111692 and legal practicing certificate № 9742 having tried in the public session of the court a criminal case against Alexeev Nikolay Viktorovich (date of birth: 09.05.1969; place of birth pos. Kupanskoe Pereslavsky rayon, Yaroslavl oblast; Nationality: Russian Federation; having higher education; married; having minor dependents; working as financial Director of OOO Aktiv; having registered address at the following location: Moscow region, Korolev, Komintern street house 12, apartment 76; having no convictions before), who's accused in a crime stipulated by Part 4 Article 160 of Criminal Code of Russian Federation,

HOLD:

The Court found N. V. Alexeev guilty of committed misappropriation, in other words embezzlement of entrusted property in a grand scale by means of abusing of his position and acting in an organized manner.

The crime was committed at the following circumstances:

N. V. Alexeev within the period of September 2014, but not later than 15.09.2014 in Moscow (details regarding right time and right place was not determined) joined to organized group created by the first identified person, who's President of Open Joint Stock Company incorporated commercial bank Probusinessbank, (hereinafter referred to as AKB Probusinessbank, or the Bank) and the second identified person, who's Chairman of the Board of the Bank, with the purpose to steal (appropriate the property) the Bank's funds in a special large scale.

AKB Probusinessbank (having its legal address at: Moscow, Pudovkin street house 3, OGRN (Primary State Registration Number): 1027700508978 founded on 25.11.1992; registered in the Book of the State Registration of Bank of Russia on 07.07.1993; corresponding account No: 30101810600000000986 in the Main Branch of the Bank of Russia for Central Federal District, Moscow; BIK
I

(Bank Identifier Code) 044525986, INN (Individual taxpayer Number): 7729086087, General License to perform bank operations No. 2412 dated 13.08.2012, issued by Bank of Russia.

In accordance with Article 1 of Federal Law "On Banks and Banking" dated 02.12.1990 (FZ 395-1) the term "bank" shall be used for organization which shall have exclusive right to perform the following bank operations: take household and corporate funds on deposit; invest funds (on behalf of the Bank and at the Bank's expenses) at the conditions of recoverability, serviceability, promptness; bank account opening and keeping (for legal entities and individuals).

In accordance with Charter of Credit organization approved by General shareholders meeting on 28.06.2013, the Bank shall be a Credit organization in a form of OJSC. The purpose of the organization shall be making profits. The Bank may take household and corporate funds on deposit; invest funds (on behalf of the Bank and at the Bank's expenses. The Bank owns property, independent assets, charged on the Bank's balance, including property handed over to the Bank by shareholders for remuneration of their shares.

In 2014 the first and second identified person were owning a control share of the Bank (more than 50 % of shares) through ownership of shares of Cyprus Company Alivikt Holding Limited and have got a right to act as a natural persons and perform strategy and operating management of AKB Probusinessbank, along with the other affiliated legal entities incorporated in the financial group.

Controlling the share let them hold key managing positions in the Bank.

E.g. the first identified person, who's in accordance with the Charter of the Bank had arranged the activity of the Board of the Directors, as well as served as chairman of General shareholders meeting and served as President of the Bank too. The situation allowed him to determine and prioritize the Bank's activity. Whereas the second identified person acting as Chairman of a Board – first Vice President of the Bank was responsible for operating management of the Bank.

In accordance with the Charter of the Credit organization, approved by general shareholders meeting on 28.06.2013, the chairman of the Board performed operating management of the Bank, acted (without power of attorney) on behalf of the Bank, settled deals on behalf of the Banks, disposed the Bank's Property / funds (basing on acting legislation and the Charter); issued and signed powers of attorney (on behalf of the Bank) as he liked and so on. Hence, the second identified person was a person performing management

2

activity in AKB Probusinessbank and was engaged in performing of managerial, administrative and economic activity, hence the property and funds of the Bank entrusted him.

The first identified person and the second identified person completely controlling the operating activity of the Bank within the period of September 2014 in Moscow (details regarding right time and right place was not determined) created organized group with the purpose to steal (appropriate) the Bank's property entrusted to the second identified person and having determined the leading role in the group. Within the time under their leadership to the group were involved the following persons: N. V. Alexeev, and the third, the fourth, the fifth, the sixth, the seventh and the eighth identified persons and other unidentified persons, each of which performed his \ her own role.

To achieve their targets, the group under leadership of the first identified person and the second identified person had prepared embezzlement scheme and have determined the roles of the participants of the crime:

- The first identified person was a main shareholder of AKB Probusinessbank (having a share equal to 40.15% of the Bank's shares as of 31.12.2014) and many times was elected by the Board of the Directors to the position of the President of the Bank (including the case when it was performed in accordance with MoM of the Board of the Directors No. 10 dated 25.07.2014) actually performed strategy management of the Bank's activity and should determine (along with the second identified person) the amount of funds to be appropriated, as well as, ways it should be performed. Issue an order regarding funds transfer in favour of false borrowers; perform general management of the activities of the group during performing the crime and use at their own will, the funds obtained during the crime (including cases when the funds shall be used outside of Russian Federation within the interests of the members of the group);

- The second identified person was a main shareholder of AKB Probusinessbank (having a share equal to 11.05% of the Bank's shares, as of 31.12.2014) who's nominated (by order of the Bank under the No. 181-K dated 02.06.1993) to the position of the Chairman of the Board and simultaneously performing activities of the first Vice President of the Bank, having in accordance with the Charter right to perform operating management of the Bank, settle deals on behalf of the Banks, dispose the Bank's Property / funds, should (along with The first identified person) determine the amount of funds to be appropriated, as well as, ways it should be performed. Sign decision regarding issuing a credit to OOO Innovation Construction Company Ivspetsgarant (hereinafter referred as OOO ISK Investgarant), issue powers of attorney to his and The first identified person's trustees which should be used by the people (involved in organized group) for signing credit contracts and other relevant documentation, issue orders regarding funds transfer in favour of false borrowers, as well as, (along with the first identified person) perform general management of the activities of the

3

group during performing the crime and use at their own will, the funds obtained during the crime;

- The third identified person was appointed to the position of Vice President Corporate finance (appointed by the Bank Order No. 5330-k dated 19.10.2011) should prepare the scheme of embezzlement, manage and issue orders for his subordinates (working in corporate finance department) who selected false borrowers of the Bank out of the list controlled by the group or contractors with the purpose of further embezzlement under the pretense of crediting; issue orders to his subordinate regarding preparation of credit report with the purpose to give a veneer of legality to issuing credit funds, as well as issuing an order to his subordinate the sixth identified person regarding transferring of stolen funds (and their accumulation) to the accounts of the following legal entities being under control of the group: OOO Personal+, *OOO Debt collection Agency LIFE* for further credit to Cyprus company Vermenda Holdings Limited; pay for illegal services performed by O.E. Papakhin (who provided legal entities being under his control) for false crediting;

- The fourth identified person was appointed to the position of Vice President Corporate business development (appointed by the Bank Order No. 4846-k dated 03.12.2007). He was trusted man of the second identified person and basing on power of attorney (authorizing him to dispose the Bank's property) and acting as ordered by heads of organized group, abusing his position with the purpose to appropriate the funds and sign (on behalf of the Bank) certainly inexecutable , irrecoverable and unsecured contract regarding medium-term crediting and other relevant documents with the company being under control of the group and performing role of false borrower (OOO ISK Ivspetsgarant);

- The fifth identified person was appointed to the position of Vice President Finance / Deputy Chairman of the Board of Directors (appointed by the Bank Order No. 564-k dated 23.07.2001). He should act on a basis of power of attorney (authorizing him to dispose the Bank's property) and acting as ordered by heads of organized group, abusing his position with the purpose to appropriate the funds and sign (on behalf of the Bank) certainly inexecutable , irrecoverable and unsecured contract regarding medium-term crediting and other relevant documents with the company, performing role of false borrower (OOO Tsentr Torgovli);

- N.V. Alexeev was appointed to the position of Corporate finance department head (appointed by the Bank Order No. 1130-k dated 16.02.2015). He should act on a basis of power of attorney (authorizing him to dispose the Bank's property) and acting as ordered by heads of organized group, abusing his position with the purpose to appropriate the funds and sign (on behalf of the Bank) certainly inexecutable , irrecoverable and unsecured contract

4

regarding medium-term crediting and other relevant documents with the company being under control of the group performing role of false borrowers (OOO Engineering Royalty, OOO Vostok Cargo plus, OOO KnewHowTrade);

- The sixth identified person was appointed to the position of project financing division in Corporate finance department (appointed by the Bank Order No. 3711-k dated 01.07.2014). He was acting as ordered by his head (the third identified person) should monitor financial status of companies affiliated to the group or being under the control of the group, get an information regarding arrival of funds to the account (appropriated through issuing credits to false legal entities or companies being under the control of the group) as well as issue orders regarding transferring funds (and their accumulating) to the accounts of *OOO Debt collection Agency LIFE* and *Vermencla Holdings Limited*; as well as to give to O.E. Papakhin (who supported the group and provided the following false borrowers: OOO Tsentr Torgovli , OOO KnewHowTrade) a part of stolen disposable funds in the form of remuneration.

- The seventh identified person was a General Director of *OOO Debt collection Agency LIFE*. He was being aware about stealing of the Bank's funds by means of appropriation (performed by organized group under leadership of the first identified person and the second identified person) provided account of *OOO Debt collection Agency LIFE* for accumulation of funds (under the pretense of false loan agreements \ repayment agreement ), though the stolen funds under the pretense of repayment were transferred to the accounts of Cyprus company Vermenda Holdings limited (controlled by the group); besides it, the seventh identified person on regular basis (whenever it was required) should from time to time sign false loan agreements with the purpose to give a veneer of legality of the deals whenever stolen funds were divided amongst the false companies;
- The eighth identified person was appointed to the position of Head of Shareholders and Subsidiaries Cooperation Department (appointed by the Bank Order No. 6492-k dated 19.01.2008), besides it, she was a head of specially founded company (OOO Bukhgaltersky tsentr Balans) which performed (by means of unaware in crime intentions of the group employees: D.A. Samoylenko and O.M. Yachina) preparation of the documents justifying calculations between companies (which were involved by the group as false borrowers and money-lenders to transit the funds; their accountant and tax reporting to be delivered to controlling bodies of Russian Federation, as well as managing accounts of legal entities controlled by the group).
- Other unidentified persons, who performed other roles in the group when the crime took place and who assisted the

5

group in the crime by means of providing information, facilities used for the crime and eliminating obstacles to perform the crime, concealment of the crime, as well as providing legal entities (as residents of Russian Federation, so non-residents of Russian Federation) for transferring the funds to the accounts of the companies and further division the funds among criminal participants

Stability of the group (united in advance to perform the crime) arising out of long term relationship and permanent communication between the participants, as well as company connection, commonness of mercenary motives, clear determination of roles and functions during preparation of the crime plan and after the crime, as well as detailed preparation of the scheme of the appropriation.

Besides it, the participants of the group had a meeting (upon necessity) in Moscow and Ivanovo city from September 2014 to August 2015 (specific date and time was not fixed). Among the aiders of the crime were the following persons: General Director of OOO ISK IvSpetsGarant (I. P. Polikarpov); General Director of OOO Engineering Royalty (A. V. Simakov); General Director of OOO Vostok-Cargo-Plus (A. V. Danukin); Real head of *Aymak group of companies* (O. E. Papakhin), General Director of OOO Tsentr Torgovli (L. B. Shpagina); General Director of OOO KnewHowTrade (O.V. Kravchenko) and other unidentified persons.

In September 2014 (right time were not fixed by the investigation) in Moscow, the group headed by the first identified person and the second identified person acting out of mercenary motives and to ensure enriching themselves had prepared an action plan aimed at embezzlement of funds in a special large scale(the Bank's funds).

Using the Bank's resources, participant of the group (the third identified person) as ordered by the first identified person and the second identified person used previously founded legal entities (not performing real economic activities and completely under the control of the group). The directors of the companies had been assigned out of the Bank employees and other persons getting nominal remuneration (at the amount RUB 10000 – 20000 per a month). The following companies were included in the scheme: OOO Engineering Royalty, OOO Elso, OOO Personal+, OOO Alliance, OOO Easton, OOO PK Technologies, and OOO Sanris.

Besides it, performing their criminal plan aimed at appropriation of the funds, members of organized group used the following companies (affiliated to the Bank or being under control of the leaders): OOO ISK IvSpetsGarant, OOO Probusiness Development, OOO *Debt collection Agency LIFE*.

6

Besides it, members of the group used within the period (with the purpose to avoid suspicion from Central Bank of Russia – a body regulating financial sphere and Law Enforcement Agencies) the following companies to perform the embezzlement: OOO Tsentr Torgovli, OOO KnewHowTrade, OOO Financial Center Eskada, OOO ProgmaTrade, which were controlled by O. E. Papakhin, who agreed to be an aider for remuneration and assisted the crime through providing the following companies: OOO Tsentr Torgovli, OOO KnewHowTrade to get funds to be appropriated and their transfer to the accounts of OOO PK-Technologies and OOO Sanris (these companies were controlled by the group).

Accounts used for the operations (transferring of funds to the companies' accounts) had been opened in AKB Probusinessbank, except OOO KnewHowTrade, OOO Tsentr Torgovli, OOO Financial Center Eskada, and OOO ProgmaTrade and was managed by unidentified persons and D.A. Samoylenko, and O.M. Yachina. The works hold at the following address: Moscow, Dobrolyubova street, house 3 building 1.

The general principle of the crime, envisaged performance of deliberate acts, aimed at issuing credits, which were certainly irrecoverable and unsecured (by pledged assets), large sum credits, transfer large funds to credit accounts and accounts of mentioned hereabove companies and the funds later were used for repayment of false deals (with the purpose to conceal the crime) and transferring the funds to the accounts of companies controlled by the group.

Later on, appropriated (stolen) funds (in rubles) were converted to USD completely and had been transferred to the accounts of the companies controlled by the group. In fact, the companies have been not performing any real activity and have been non-resident of Russian Federation. There is a list of the companies: Vermenda Holdings Limited (registered address: Griva Digeni, P.C. 3101, Limassol, Cyprus,) which were opened in credit organization (non-resident of the Russian Federation - Trasta Komercbanka Riga registered address: Palasta iela 1, Riga LV-1050, Latvija).

Paperwork related to issuing the credits with the purpose to give a veneer of legality formally was legal, however actually delivered documents contained incorrect information and participants of the group aided to perform the crime, namely embezzlement by means of stealing funds in a special large scale.

7

When concluding agreements for medium term crediting, parties on the agreement should follow rules stipulated in Article 10 of Civil Code of Russian Federation following to reasonability of actions and fair practice of participants of relationship under civil law. Hence, persons signing agreements related to issuing medium term crediting (subject of the agreements issuing credits by AKB Probusinessbank) should act in accordance with fair practice and not to perform any deceitful action (including indication the credits' purpose).

Therefore, the first identified person and the second identified person were leading the group and issuing orders for Ya. V. Alexeev and the third, the fourth, the fifth, the sixth, the seventh and the eighth identified persons and other participants of the crime group acting with common intent aimed at free appropriation of the funds with a purpose to injury another (legal) entity (AKB Probusinessbank), hence there's violation of article 10 of Civil Code of Russian Federation (Limits of execution of civil rights). Due to the article actions of the citizens \ legal entities aimed at injury of other person(s), as well as abusing the rights in other forms shall not be allowed and hence illegal.

V.N. Alexeev and the fourth / fifth identified person were acting according to pre agreed role and concluded medium term crediting agreements with the purpose to appropriate funds and to create visibility of civil relationship and pursuing orders of leaders of the group (The first identified person and The second identified person) intentionally violated provisions of the Article 1 of Federal Law "On Banks and Banking" dated 02.12.1990 (FZ 395-1), requesting crediting organization to place attracted funds of legal entities and individuals (at their name and expenses) at the conditions of recoverability, serviceability, promptness.

The issue allowed participants of the group acting on behalf of the Bank, but contrary to the interests of the credited organization, illegally, free of charge, non-returnable way to appropriate the funds by means

of transfer the funds into accounts of companies (being under control of the group) and hence perform embezzlement by means of appropriation.

E.g. within the period preceding to 16.09.2016 (more detailed information is not available), the fourth identified person staying at his working place at the following address: Moscow Volgogradsky prospect, house 43 building 1, acting on behalf of the Bank on a basis of power of attorney No. 610/1 dated 16.07.2014 issued by one of the leader of the group – Chairman of the board of the Directors (the second identified person), the power of attorney authorized him to conclude credit agreements and manage funds of the Bank, hence he was engaged in performing of managerial, administrative and economic activity. Following the orders of leaders of the group (the first identified person and the second identified person).
8

and acting intentionally and in alignment with other members of the group and abusing his position, he had signed on behalf of the Bank a medium term Agreement No. 211-810 /14yu dated 15.09.2014 with a company OOO ISK IvSpetsGarant (the company was controlled by the group) represented by General Director of the Company – I. P. Polikarpov. Basing on the terms of the Agreement the Bank should provide the company a credit within the framework of the credit lines with maximum amount of debt ceiling equal to RUB 500,000,000.

At the same time, I.P. Polikarpov who rendered assistance to this crime, by means of providing information and through elimination of obstacles for their performance, but not being a participant of the group at the time and being at his working place at the following address: Ivanovo city, prospect Sheremetyevsky, house 153A, he had signed the medium term crediting Agreement (No. 211-810 /14yu dated 15.09.2014), being aware that his company shall not send credited funds for business operation of his company, and funds (in the form of credit) issued for his company shall be appropriated by organized group.

On 15.09.2014 when performing the Agreement, basing on application prepared on behalf of I. P. Polikarpov and according to memorial slip No. 1018062751 dated 15.09.2014 the funds at the amount RUB 280,000,000 was transferred from credit account belonging to OOO ISK IvSpetsGarant (Account No. 45207810600000127604) to the account of the Company (Account No. 40702810308180027604) opened in the Bank at the following address: Moscow, Pudovkin street, house 3.

The same day upon arrival the funds to the account of OOO ISK IvSpetsgarant (Account No. 40702810308 180027604) opened in the Bank, the Chief Accountant of the Company (E.S. Stulova) being unaware about crime intentions of the group received an email from unidentified employees of OOO Probusiness Development and basing on approval of I. P. Polikarpov with the purpose to give a veneer of legality to the accepted funds (at the amount RUB 280,00,000) transferred the amounts by a number of payments, including the following payments, at the following amounts:

- 24 157 808 rubles 21 kopecks under the pretense of payment of interests and principal amount of loan for earlier concluded false loan agreement No. 26/08/ 14-I dated 26.08.2014 and No. 14/07/ 14-I dated 14.07.2014 by payment order No. 751, 752, 763, 764 dated 15.09.2014 to the account of company Personal+ (account No. 40702810300000102610 opened in the same Bank), not performing real activities and completely under the control of the group

- 34 471 698 rubles 63 kopecks under the pretense of payment of interests and principal amount of loan for earlier concluded false loan agreements Nos. 30/06-14 dated 30.06.2014; No. 31/07 -14 dated 31.07.2014; No. 29/08-14 dated 29.08.2014, by payment order dated 15.09.2014 and having No. 747, 748, 749, 750, 757, 758, 759, 760, 761, 762 to the account of OOO Debt collection Agency Life (headed by the seventh identified person), (Account No. 40702810300110117621 opened in the same Bank).
9

762 to the account of OOO Debt collection Agency Life (headed by the seventh identified person), (Account No. 40702810300110117621 opened in the same Bank);

- 222016835 rubles 04 kopecks under the pretense of payment for earlier concluded false agreement dated 30.06.2014, regarding termination of investment agreement under the No IL-7/28-m-08 dated 28 .05.2008

by payment order dated 15.09.2014 and having Nos. 765, 766 to the account of OOO Probusiness Development (company affiliated to the Bank) to the Account No 40702810300000021377 opened in the same Bank.

Same day upon arrival of funds to Account of OOO Probusiness Development, unidentified employees of the Bank having access to Bank – Client system of the company following to realization of criminal plan of the group by means of payment order dated 15.09.2014 and having No 853, 852, 856, 857, 861 had transferred part of appropriate funds at the amount 221,370,994 rubles 73 kopecks under the pretense of payment for earlier concluded false interest bearing loan agreements under the No 16/ 11/1 1-PD dated 16.11.2011; under the No 30/11/1 1-PD dated 30.11.2011; under the No 30/11/2013-PD dated 30.12.2013, to the account of company OOO Elso (account No. 40702810800020115239 opened in the same Bank). The Company was not performing real activities and completely under the control of the group.

Later on (on 16.09.2014), D. A. Samoylenko being unaware regarding crime intention of the participants of the group upon order of unidentified persons and upon approval of the eighth identified person by means of payment order under the no. 321 dated 16.09.2014 had transferred part of appropriate funds at the amount RUB 221,000,000 under the pretense of payment of principal debt loan and interests for earlier concluded false interest bearing loan agreements dated 07.07.2014, No. 07/07-14 from the account of OOO Elso to account No. 4070281030011011762 1 (opened in the same Bank) belonging to OOO *Debt collection Agency LIFE* (headed by the seventh identified person).

Next day (16.09.2014) the funds were transferred to the account of OOO Personal+, the same person (D. A. Samoylenko) upon order of unidentified persons and upon approval of the eighth identified person, performed again by means of payment order dated 16.09.2014 under the no. 133 had transferred part of appropriate funds from the account of the company at the amount 24,157,808 rubles 21 kopecks, and RUB 499,500,OOO under the pretense of payment for earlier concluded false interest bearing loan agreement (signed by the seventh identified person) dated 16.11.2011 under the No 16/09/14 KA to account No. 4070281030011011762 1 (opened in the same Bank) belonging to OOO *Debt collection Agency LIFE.*

On the same day (16.09.2014) after arrival of funds to the account of OOO *Debt collection Agency LIFE,* appropriated funds at the amount RUB 280,000,000 among other appropriated funds at the amount RUB 608,000,000 the same person (D. A. Samoylenko) performed again by means of payment order dated under the no. 1563 16.09.2014 under the pretense of payment of principal debt loan and interests for

10

earlier concluded loan agreement (signed by the seventh identified person) dated 30.08.2013 No. 30-08 /dated 16.11.2011 to account No. 40807810900010030608 (opened in the same Bank) belonging to Vermenda Holdings Limited.

Later on (on 18.09.2014) appropriated funds at the amount RUB 280,000,000, among other appropriated funds at the amount RUB 578,655,792 upon order of unidentified persons performing managing of account No. 40807810900010030608 belonging to Vermenda Holdings Limited had been converted into USD and charged to hard currency account No. 40807840200010030608 (belonging to Vermenda Holdings Limited) and the part of this transfer at the amount USD 13,000,000 was transferred via payment order under the No. 217 dated 18.09.2014 by unidentified persons to the account of the company (Account No. LV63KBRB11112 15921001, opened in Trasta Komercbanka Riga, registered address Palasta iela 1 Riga LV-1050, Latvija).

Having transferred the funds to the account of Vermenda Holdings Limited in Trasta Komercbanka Riga, the leaders of the Group (the first identified person and the second identified person) got possibility in fact use appropriated funds at their own discretion, concealing (through the number of financial operations) the real purpose of the credit at the amount RUB 280,000,000 issued for OOO ISK IvSpetsGarant.

Hence, participants of the group (including N. V. Alexeev) as ordered by the first identified person and the second identified person had issued the credit to OOO ISK IvSpetsGarant (the company was under the group's control) in September 2014, hence the group appropriated the funds (at the amount RUB 280,000,000) and the Bank incurred losses for the same amount.

Within the period preceding to 10.04.2015 N.V. Alexeev following orders \ appropriation plan prepared by the first identified person and the second identified person had selected a false organization, which should get the credit from the Bank. It was OOO Engineering Royalty (the company, which was not performing

any economic activity). The sole participant and General Director of the Company (from 14.10.2014) was former employee of the Bank – A.V. Simakov (earlier he was Senior Specialist of non-performing loan management division of Moscow regional Directorate of AKB Probusinessbank.

At the same time A.V. Simakov acting out of mercenary motives and not being a participant of the group had agreed to assist the group through providing information and eliminating obstacles to perform the crime.
Realizing the criminal plan (for appropriation
11

of the Bank's funds / to steal funds in a special large scale) participant of the group – N.V. Alexeev (head of corporate finance department) within the period preceding to 10.04.2015 (details regarding right time and right place was not determined) being at his working place (location address: Butyrskaya street house 62), acting on behalf of the bank on a basis of power of attorney No. 120/2 dated 17.02.2015 issued by Chairman of the Board of the Directors (The second identified person). The power of attorney allowed Alexeev to conclude credit contracts and dispose funds (he was engaged in performing of managerial, administrative and economic activity allowing him dispose the Bank's funds). Following orders of the leaders of the group (the first identified person and the second identified person) and acting intentionally and in agreed way, abusing his position Alexeev signed (on behalf of the Bank) a medium term agreement No. 044-810/15yu dated 09/04/2015 with OOO Engineering Royalty (company was under the control of the group) represented by General Director of the Company A.V. Simakov. According to the terms of the agreement, the bank should issue a credit (within the framework of the credit lines). Maximum amount of debt ceiling equal to RUB 1,000,000,000.

A.V. Simakov was aware that the purpose of the credit was a false and issuing / obtaining the credit is a way to appropriate the Bank's funds. Simakov at the time stayed close to his home (location address: Moscow, Vysokovoltovyi lane, house 1 building 8) had signed (staying outside of his home) the medium term crediting agreement No. 044-810/15yu dated 09.04.2015 on behalf of the company.

On 09.04.2015 in pursuance of the agreement, basing on application provided on behalf of A.V. Simakov as per a memorial slip No. 1019700947 dated 09.04.2015 the funds at the amount RUB 600,000,000 had been transferred from credit account of OOO Engineering Royalty (Account No. 45204810400000135572 to the Bank Account of the Company (Account No. 40702810900110035572). The Bank's location address: Moscow, Pudovkin street, house 3).

Later in the day, upon arrival of funds to account of OOO Engineering Royalty (Account No. 40702810900 110035572), O. M. Yachina being unaware of criminal intentions of participants of the group acting as ordered by the sixth identification person and with approval of the eighth identified person, appropriated funds at the amount RUB 600,000,000 under the pretense of credited for concluded false interest bearing loan agreement under the No. 09/04/2015 dated 09.04.2015, to the account of company OOO Alliance (account No. 40702810500000113328 opened in the same Bank). The company was not performing real activities and completely under the control of the group.

Later in the day (on 09.04.2015) upon transferring the Bank's funds to the account of OOO Alliance, O. M. Yachina performed by means of payment order under the
12

no. 33 dated 09.04.2015 under the pretense of partial payment of principal debt loan for earlier concluded interest bearing loan agreement dated 29.08.2013 No. 29-08-A to account No. 40728103O0000102610 (opened in the same Bank) belonging to OOO Personal+. The Company in fact was not performing real activity and controlled by the group.

Later in the day upon arrival of the funds to the account of OOO Personal+, O.M. Yachina performed again by means of payment order under the no. 144 dated 09.04.2015 (amount of payment RUB 600,000,000) under the pretense of partial payment of principal debt loan for earlier concluded loan agreement dated 06.03.2015 No. 06-03/15 to account No. 40807810900010030608 (opened in the same Bank) belonging to Vermenda Holdings Limited.

Later in the day (on 09.04.2015) and on 13.04.2015 appropriated funds at the amount RUB 600,000,000 among other appropriated funds at the amount 600069891 rubles 60 kopecks had been converted into USD (equivalent amount: USD 11,182,000) by unidentified persons performing managing of account No.

40807810900010030608 belonging Vermenda Holdings Limited and charged the sum to hard currency account No. 40807840200010030608 (belonging to non-resident Vermenda Holdings Limited) and the part of this transfer at the amount USD 10,000,000 was transferred by payment order under the No. 271 dated 09.04.2014 by unidentified persons to the account of the company (Account No. LV63KBRB11112 15921001, opened in Trasta Komercbanka Riga, registered address: Palasta iela 1 Riga LV-1050, Latvija). Having transferred the funds to the account of Vermenda Holdings Limited in Trasta Komercbanka Riga, the leaders of the Group (the first identified person and the second identified person) got possibility in fact use appropriated funds at their own discretion, concealing (through the number of financial operations the real purpose of the credit at the amount RUB 600,000,000 issued for OOO Engineering Royalty).

Hence, participants of the group (including N. V. Alexeev) as ordered by the first identified person and the second identified person had issued the credit to OOO Engineering Royalty (the company was under the group's control) in April 2015, hence the group appropriated the funds (at the amount RUB 600,000,000) and the Bank incurred losses for the same amount.

Within the period preceding to 16.05.2015, the third identified person following orders \ appropriation plan prepared by the first identified person and the second identified person had selected a false organization, which should get the credit from the Bank. It was OOO Vostok Cargo Plus. The sole participant and General Director.

13

of the Company (from 17.12.2012) was a person (A.V. Danukin) completely controlled by the group.

At the same time A.V. Danukin acting out of mercenary motives and not being a participant of the group had agreed to assist the appropriation to the group through providing information and elimination obstacles to perform the crime.

Realizing the criminal plan (for appropriation of the Bank's funds / to steal funds in a special large scale) participant of the group – N.V. Alexeev (head of corporate finance department) within the period preceding to 16.05.2015 (details regarding right time and right place was not determined) being at his working place (location address: Butyrskaya street, house 62), acting on behalf of the bank on a basis of power of attorney No. 120/2 dated 17.02.2015 issued by Chairman of the Board of the Directors (the second identified person). The power of attorney allowed Alexeev to conclude credit contracts and dispose funds (he was engaged in performing of managerial, administrative and economic activity allowing him dispose the Bank's funds). Following orders of the leaders of the group (the first identified person and the second identified person) and acting intentionally and in agreed way, abusing his position Alexeev signed (on behalf of the Bank) a medium term agreement No. 071-810/15yu dated 15.05.2015 with OOO Vostok Cargo Plus, represented by General Director of the Company A.V. Danukin. According to the terms of the agreement, the bank should issue a credit (within the framework of the credit lines). Maximum amount of debt ceiling equal to RUB 500,000,000.

A.V. Danukin was aware that the purpose of the credit was a false and issuing / obtaining the credit is a way to appropriate the Bank's funds. A.V. Danukin had signed the medium term crediting agreement No. 071-810/15yu dated 15.05.2015 (the location of signing was not identified) on behalf of the company.

On 18.05.2015 and 19.05.2015 in pursuance of the agreement, basing on application provided on behalf of A.V. Danukin as per a memorial slip No. 1019906802 dated 18.05.2015 and No. 1019915598 dated 19.05.2015 the funds at the amount RUB 365,000,000 were transferred from credit account of OOO Vostok Cargo Plus (Account No. 45205810500100107477) to the Bank Account of the Company (Account No. 40702810700000107477). The Bank's location address: Moscow, Pudovkin street, house 3).

On 18.05.2015 and 19.05.2015 upon arrival of appropriated funds to the account of the Company, A. V. Danukin continued to perform his role in the crime by means of providing information and eliminating

14

the obstacles by transferring funds received from the Bank in the form of Credit at the amount RUB 365,000,000 on a basis of payment order under the no. 1054 dated 18.05.2015 and under the no. 1057 dated 19.05.2015, under the pretense of providing a false loan for earlier concluded interest bearing loan agreement dated 15.05.2015 No.15/05-I and dated 18.05.2015 No.18/05-I to account No.

40702810900000100889 belonging to OOO Easton (opened in the same Bank). In fact, the Company was not performing real activity.

On 18.05.2015 and 19.05.2015 upon arrival of funds to account of OOO Easton, O. M. Yachina being unaware of criminal intentions of participants of the group acting as ordered the sixth identified person, transferred part of appropriated funds at the amount RUB 364 700 000 by means of payment order No. 39 dated 18.05.2015 and No. 40 dated 19.05.2015 under the pretense of credit for concluded false interest bearing loan agreement (signed the seventh identified person) under the No. 18/05 dated 18.05.2015 and No. 19/05 dated 19.05.2015 to account No. 40702810800020115239 (opened in the same Bank) belonging to OOO *Debt collection Agency LIFE*

On 18.05.2015 and 19.05.2015 upon arrival of the Bank's funds to the account of OOO *Debt collection Agency LIFE*, O. M. Yachina performed transfer by means of payment orders under the no. 199 dated 18.05.2015 and under the no. 120 dated 19.05.2015 a part of stolen / appropriated Bank's funds at the amount RUB 347 000 000 under the pretense of partial payment of principal debt loan for earlier concluded interest bearing loan agreement No. 29-01/15 dated 29.01.2015 and No. 2804 dated 28.04.2014 to account No. 40807810900010030608 (opened in the same Bank) belonging to Vermenda Holdings Limited.

On 18.05.2015 and 19.05.2015 a part of appropriated funds at the amount RUB 346,958,345 had been converted into USD by unidentified persons performing managing of account No. 40807810900010030608 belonging to Vermenda Holdings Limited and charged to hard currency account No. 40807840200010030608 (belonging to non-resident Vermenda Holdings Limited) and the part of this transfer at the amount USD 7,014,000, along with the other funds at the amount USD 7,600,000 was transferred by payment order under the No. 278 dated 18.05.2015 and under the No. 279 dated 19.05.2015 by unidentified persons to the account of the company (Account No. LV63KBRB11112 1592 1001, opened in Trasta Komercbanka Riga, registered address: Palasta iela 1 Riga LV-1050, Latvija).

Having transferred the funds to the account of Vermenda Holdings Limited in Trasta Komercbanka Riga, the leaders of the Group (The first identified person and The second identified person) got possibility in fact use appropriated funds at their own discretion, concealing (through the number of financial operations the real purpose of the credit at the amount RUB 365,000,000 issued for
15

OOO Vostok Cargo Plus).

Hence, participants of the group (including N. V. Alexeev) as ordered by the first identified person and the second identified person had issued the credit to OOO Vostok Cargo plus (the company was under the group's control) in May 2015, hence the group, appropriated the funds (at the amount RUB 365,000,000) and the Bank incurred losses for the same amount.

Later on (06.08.2015) at the day the Bank lost their Banking License, participants of the crime (namely: the fifth identified person - Vice President Finance / Deputy Chairman of the Board of Directors, A.V. Danukin - General Director of OOO Vostok Cargo Plus) with the purpose to conceal the appropriation of the Bank's funds and to give a veneer of legality to false deals had been decided that Agreement on compensation should be concluded as dated 06.08.2015. Basing on the agreement, liabilities of OOO Vostok Cargo Plus regarding conditions of medium term crediting Agreement No. 071-810/15yu dated 06.08.2015 were terminated and the bank agreed to accept OOO Easton (in fact not performing any real activity) as a company which will perform the liabilities.

Within the period, preceding to 23.06.2015 the participants of the group had decided to change the plan of appropriation of the funds. With the purpose to continue the appropriation, the participant of the group – the third identification person (acting as ordered by the first identified person and the second identified person) had involved O. E. Papakhin (within the period preceding to 23.06.2015 (the right time and place was not fixed) who's actual manager of number of companies, including: OOO Tsentr Torgovli, OOO KnewHowTrade, OOO Financial center Eskada, OOO ProgmaTrade. O.E. Papakhin had agreed to act as aider for remuneration and assist in crime by means of providing of OOO Tsentr Torgovli and OOO KnewHowTrade companies to arrange false credit and false operations related to transferring of funds to the accounts of the companies, which were under the group's control (namely: OOO PK-Technologies, OOO Sanris).

Whereas O.E. Papakhin, within the period, being in Moscow (right time and place was not fixed), had

involved aiders – General Directors of the false companies (namely, OOO Tsentr Torgovli and OOO KnewHowTrade), being under his control which were headed by Shpagina L.B. and O.V. Kravchenko accordingly.

According to prepared scheme mentioned hereabove companies should be a false borrowers of the Bank and upon getting funds (in the form of credit) through performing operations with securities and after that transfer funds to the participants of the group at the accounts of the companies being under the group's control (namely, OOO Sanris and OOO PK Technologies). For this purpose, O.E. Papakhin provided all documents required to prepare credit report, signing agreements and transferring funds using recourses of his subordinates.

16

Participant of the group and the fifth identified person was appointed to the position of Vice President Finance / Deputy Chairman of the Board of Directors within the period preceding to 23.06.2015 (right time was not fixed by investigation) staying at his working place (location address: Moscow, Snezhnaya street, house 26) continued realization of the criminal intentions with the purpose to steal funds in a special large scale. The fifth identified person was acting on a basis of power of attorney under the number 92/5 dated 09.02.2015 issued by one of the participant of the group (namely, Chairman Board of the Directors and the second identified person). The power of attorney allowed him to conclude credit agreements; to dispose the Bank's property; hence, he was engaged in performing of managerial, administrative and economic activity. Acting as ordered by heads of organized group (the first identified person, the second identified person) and acting intentionally and in agreed way, abusing his position, he signed (on behalf of the Bank) a medium term agreement No. 099-810/15yu dated 22.06.2015 with OOO Tsentr Torgovli (company was controlled by O.E. Papakhin) represented by General Director of the Company L.B. Shpagina. According to the terms of the agreement, the bank should issue a credit (within the framework of the credit lines). Maximum amount of debt ceiling equal to RUB 1,000,000,000.

Whereas L.B. Shpagina acting as ordered by O.E. Papakhin was aware that the purpose of the credit was a false and obtaining the credit for OOO Tsentr Torgovli was a way to appropriate the Bank's funds. L.B. Shpagina had signed the medium term crediting agreement No. 099-810/15yu dated 22.06.2015 being at the premises of the Bank (location address: Moscow, Volgogradsky prospect house 43 building 3) of signing was not identified) on behalf of the company.

On 23.06.2015 in pursuance of the agreement, basing on application provided on behalf of L.B. Shpagina as per a memorial slip No. 1020125374 dated 23.06.2015 the funds at the amount RUB 698,200,000 had been transferred from credit account of OOO Tsentr Torgovli (Account No. 45205810300200007965) to the Bank Account of the Company (Account No. 44070281040000020796S). The Bank's location address: Moscow, Pudovkin street, house 3).

Upon arrival of appropriated funds (at the amount RUB 698,200,000 ) to the account of OOO Tsentr Torgovli (Account No. 40702810400000207965, opened in the Bank) the funds were transferred (by unidentified persons) upon an order of O. E. Papakhin via payment order under the no. 94 dated 23.06.2015, under the pretense of payment for Investment shares sale/purchase agreement No.PT/TsT/0406 dated 04.06.2015 to account No. 40702810000000207844 belonging to OOO ProgmaTrade (opened in the same Bank).

On 23.06.2015 upon arrival of funds to

17

account of OOO ProgmaTrade, unidentified persons transferred part of appropriated funds at the amount RUB 698,200,000 by means of payment order No. 85 dated 23.06.2015 under the pretense of credit for concluded false interest bearing loan agreement under the No. 22-06 dated 22.06.2015 to account No. 40702810200110035573 (opened in the same Bank) belonging to OOO PK Technologies.

Later on (on 23.06.2015) upon arrival of the Bank's funds to the account of OOO PK Technologies, O. M. Yachina being unaware of criminal intentions of participants of the group acting as ordered by the sixth identified person and upon approval of the eighth identified person, had transferred part of appropriated funds at the amount RUB 698,200,000 via payment order under the no. 124 dated 23.06.2015 under the pretense of issuing credit for false interest bearing loan agreement No. 23-06/2015 dated 23.06.2015 to account No. 40702810300110117621 (opened in the same Bank) belonging to OOO Debt collection

Agency LIFE (controlled by the seventh identified person) .

On 24.06.2015 upon arrival of the Bank's funds to the account of OOO *Debt collection Agency LIFE*, O. M. Yachina performed transfer by means of payment orders under the nos. 1114, 1115, 1116 dated 24.06.2015 under the pretense of payment of principal debt loan for earlier concluded loan agreement No. No 06-07/12 dated 06.07.2012, No29-01 /2011-3 dated 29.07.2011 and No 28-12/1 dated 28.12.2012. Appropriated funds at the amount RUB 698,200,000 among other appropriated funds at the amount RUB 700,000,000 were transferred to account No. 40807810900010030608 (opened in the same Bank) belonging to Vermenda Holdings Limited (the Company in fact was not performing real activity and controlled by the group).

On 25.06.2015, a part of appropriated funds at the amount RUB 698,200,000 along with the other funds at the amount RUB 702,969,800 had been converted into USD by unidentified persons performing managing of account No. 40807810900010030608 belonging to Vermenda Holdings Limited and charged to hard currency account No. 40807840200010030608 (belonging to non-resident Vermenda Holdings Limited) and the funds at the amount USD 13,000,000, was transferred by payment order under the No. 281 dated 25.06.2015 by unidentified persons to the account of the company (Account No. LV63KBRB11112 15921001, opened in Trasta Komercbanka Riga, registered address: Palasta iela I Riga LV-1050, Latvija).

Having transferred the funds to the account of Vermenda Holdings Limited in Trasta Komercbanka Riga, the leaders of the group (the first identified person and the second identified person) got possibility in fact use appropriated funds at their own discretion, concealing (through the number of financial operations, the real purpose of the credit at the amount RUB 698,200,000 issued for OOO Tsentr Torgovli).
18

Hence, participants of the group (including N. V. Alexeev) as ordered by the first identified person and the second identified person had issued the credit to OOO Tsentr Torgovli (the company was under the group's control) in June 2015, hence the group appropriated the funds (at the amount RUB 698,200,000) and the Bank incurred losses for the same amount.

On 03.08.2015 participants of the crime (namely: N.V. Alexeev - Corporate finance department head), L. B. Shpagina (General Director of OOO Tsentr Torgovli) with the purpose to conceal the appropriation of the Bank's funds and to give a veneer of legality to false deals had been decided that Agreement on compensation should be concluded as dated 03.08.2015. Basing on the agreement, liabilities of OOO Tsentr Torgovli regarding conditions of medium term crediting Agreement No. 099-810/15yu dated 22.06.2015 were terminated and the bank agreed to accept OOO PK Technologies (in fact not performing any real activity) as a company which will perform the liabilities.

Participant of the group – N.V. Alexeev (head of corporate finance department), acting on behalf of the bank on a basis of power of attorney No. 120/2 dated 17.02.2015 issued by Chairman of the Board of the Directors (the second identified person). The power of attorney allowed N.V. Alexeev to conclude credit contracts and dispose funds (he was engaged in performing of managerial, administrative and economic activity allowing him dispose the Bank's funds). Following orders of the leaders of the group (the first identified person and the second identified person) and acting intentionally and in agreed way, abusing his position, staying at his working place (location address: Moscow, Butyrskaya street 62) he had signed (on behalf of the Bank) a medium term agreement No. 071-810/15yu dated 15.05.2015 with OOO KnewHowTrade (the company was under O.E. Papakhin control), represented by General Director of the Company O.V. Kravchenko. According to the terms of the agreement, the bank should issue a credit (within the framework of the credit lines). Maximum amount of debt ceiling equal to RUB 1,00,000,000.

Whereas O.V. Kravchenko acting as ordered by O.E. Papakhin was aware that the purpose of the credit was a false and obtaining the credit for OOO KnewHowTrade was a way to appropriate the Bank's funds. O.V. Kravchenko had signed on behalf of the company the medium term crediting agreement No. 137-810/15yu dated 28.06.2015 being at the premises of the Bank (location address: Butyrskaya street, house 62).

On 28.07.2015 in pursuance of the agreement, basing on application provided on behalf of O.V. Kravchenko as per a memorial slip No. 1020346334 dated 28.07.2015 the funds at the amount
19

RUB 499 995 968 were transferred from credit account of OOO KnewHowTrade (Account No. 45205810900200007734 11) to the Bank Account of the Company (Account No. 40702810000000207734). The Bank's location address: Moscow, Pudovkin street, house 3).

On 28.07.2015 upon arrival of appropriated funds to the account of OOO KnewHowTrade (Account No. 40702810000000207734, opened in the Bank) appropriated funds at the amount RUB 499995968 upon an order of O. E. Papakhin the funds were transferred (by unidentified persons) via payment order under the no. 28-07 dated 28.07.2015, under the pretense of payment for investment shares sale/purchase agreement No.ES-NHTE2015-1B dated 28.07.2015 to account No. 40702810800000210934 belonging to OOO Financial center Eskada and controlled by O.E. Papakhin (account was opened in the same Bank).

On 28.07.2015 upon arrival of funds to account of OOO Financial center Eskada (via payment order No. 35, dated 28.07.2015), unidentified persons transferred funds at the amount RUB 499,995,968 under the pretense of concluded false interest bearing loan agreement under the No. 28-08 dated 28.07.2015 to account No. 40702810500070015537 (opened in the same Bank) belonging to OOO Sanris (controlled by the group)

On 29.07.2015 upon arrival of the Bank's funds to the account of OOO Sanris, O. M. Yachina being unaware of criminal intentions of participants of the group and acting as ordered by the sixth identified person and upon approval of the eighth identified person, had transferred main part of funds at the amount 498,871,028 rubles 03 kopecks via payment orders under the nos. 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56 dated 29.07.2015, under the pretense of payment of principal debt loan and interes for earlier concluded interest bearing loan agreement dated 01.08.2013 under the No. 01/08/13-SAN; dated 26.12.2013 under the No 26/12/13-SAN; dated 31.01.12 under the No 31/01/12-SAN, dated 02.03.2012 under the No 02/03/12- SAN, dated 27.02.2012 under the No 27/02/12-SAN, dated 12.10.2012 under the No 12/10/12SAN and under the pretense of issuing credit for false interest bearing loan agreement No. 29/07/2015SAN dated 29.09.2015 concluded by OOO Debt collection Agency LIFE (by the seventh identified person) to account No. 40702810300110117621 (opened in the same Bank).

On 29.07.2015 and 30.07.2015 upon arrival of the Bank's funds to the account of OOO *Debt collection Agency LIFE*, O. M. Yachina performed transfer by means of payment orders under the Nos. 1372, 1373, 1374 dated 29.06.2015 and No. 1426 dated 30.06.2015 under the pretense of payment of principal debt loan for earlier concluded loan agreement No. 06-07/12 dated 06.07.2012, No. 30-08/12 dated 30.08.2012, No 28-12/1 dated 28.12.2012 and No 2804 dated 28.04.2014. Appropriated funds at the amount among other appropriated funds RUB 600,000,000 were transferred to account No. 40807810900010030608 (opened in the same Bank) belonging to Vermenda Holdings Limited (the Company in fact was not performing real activity and controlled by the group).

20

On 30.06.2015 a part of appropriated funds at the amount RUB 499,995,968 along with the other funds at the amount RUB 600,000,000 had been converted into USD by unidentified persons performing managing of account No. 40807810900010030608 belonging to Vermenda Holdings Limited and charged to hard currency account No. 40807840200010030608 (belonging to non-resident Vermenda Holdings Limited) the funds at the amount USD 10,015,000, and part of the funds at the amount USD 10,000,000 was transferred by payment order under the No. 290 and 291 dated 30.07.2015 by unidentified persons to the account of the company (Account No. LV63KBRB11112 15921001, opened in Trasta Komercbanka Riga, registered address: Palasta iela 1 Riga LV-1050, Latvija).

Having transferred the funds to the account of Vermenda Holdings Limited in Trasta Komercbanka Riga, the leaders of the Group (the first identified person and the second identified person) got possibility in fact use appropriated funds at their own discretion, concealing (through the number of financial operations the real purpose of the credit at the amount RUB 499,995,968 issued for OOO KnewHowTrade).

Hence, participants of the group (including N. V. Alexeev) as ordered by the first identified person and the second identified person had issued the credit to OOO KnewHowTrade (the company was under the group's control) in July 2015, hence the group appropriated the funds (at the amount RUB 499,995,968) and the Bank incurred losses for the same amount.

Next day 29.07.2015 participants of the crime (namely: N.V. Alexeev - Corporate finance department head), O.V. Kravchenko (General Director of OOO KnewHowTrade) with the purpose to conceal the appropriation of the Bank's funds and to give a veneer of legality to false deals, had been decided that

Agreement on compensation should be concluded as dated 29.07.2015. Basing on the agreement, liabilities of OOO KnewHowTrade regarding conditions of medium term crediting Agreement No. 1379-810/15yu dated 28.07.2015 were terminated and the bank agreed to accept OOO Sanris (in fact not performing any real activity) as a company which will perform the liabilities.

Totally, the participants of the group wherein the sixth identified person was included in, and directed by the first identified person and the second identified person had issued credit for the following companies: OOO IvSpetsGarant, OOO Engineering Royalty, OOO Vostok-Cargo-Plus, OOO Tsentr Torgovli, OOO KnewHowTrade within the period from September 2014 to August 2015. The group appropriated RUB 2 443 195 968 (two billion four hundred and forty-three million one hundred and ninety-five thousand nine hundred and sixty-eight rubles) and hence the Bank (AKB Probusiness) suffered a substantial property loss

21

The State Prosecutor stated at the court session that N. V. Alexeev reasonably committed to criminal proceedings based on the Part 4 Article 160 of Criminal Code of Russian Federation, his guilt is fully established by proves (available in the case file) which had been collected during the preliminary investigation

N.V. Alexeev had concluded pre-trial immunity agreement and fully performed it through revealing other participants of the crime, which helped to solve the crime.

The accused (N.V. Alexeev) had declared at the court's session that he acknowledged the guilt completely, accepted accuses and showed his remorse in the crime. During the investigation, he provided strong support to the investigation \ crime detection and reveled other participants of the crime. He had concluded pre-trial immunity agreement voluntarily through his defense advocate.

The court established that N.V. Alexeev had followed (performed) all his duties stipulated in the pre-trial immunity agreement.

The accusation was accepted by N.V. Alexeev, confirmed by proves available in the case file.

The court had qualified his activity according to Part 4 Article 160 of Criminal Code of Russian Federation qualifying them as misappropriation, in other words embezzlement of entrusted property in a grand scale by means of abusing of his position and acting in an organized manner.

The court took into account when assigning punishment to the accused, the following: feature and degree of the menace to the community of the offence, as well as the accused's character who agreed with the accusation, acknowledged the guilt completely, showed his remorse in the crime, had no convictions before, having minor dependents, a wife who suffered from diseases and having category 3 Disabled Person (individual), parents at retiring age who have category 2 and 3 Disable Person (Individual), he got a good character from his place of residence and work, which in total, the court (according to Article 61 of Criminal Code of Russian Federation) acknowledged as circumstances mitigating his punishment.

Besides it, the court acknowledged that N.V. Alexeev provided strong support to the investigation \ crime detection and reveled other participants of the crime (paragraph "i", Part 1, Article 61 of Criminal Code of Russian Federation) which should be considered as the circumstance mitigating punishment also, and hence he sentenced according to Article 62 of Criminal Code of Russian Federation.

The court had not revealed circumstances aggravating the guilt of the accused.

Taking into account actual circumstances of the crime performed by N.V. Alexeev and degree of the menace to the community, the court had not found ground to change category of the crime (through substitution by less severe punishment) according to part 6, Article 15 of Criminal Code of Russian Federation.

Notwithstanding to information related to the accused's character, absence (in the legislation) circumstances aggravating his guilt, taking into account an influence of the punishment to the accused

and life conditions of his family members, taking into account his feature and degree of the menace to the community of the offence, the court come to the conclusion that reformation and rehabilitation of the accused should be possible when isolating him from the society, only. Hence, the court give a sentence of deprivation of freedom and have not found ground to use provisions stipulated in Article 73 of Criminal Code of Russian Federation.

The court considered necessary to impose N.V. Alexeev a penalty and the amount of the penalty had to be calculated basing on accused's financial situation and his family members.

At the same time, the court found that the accused should rehabilitate without applying additional punishment in the form of restriction of liberty.

Post-trial detention of N.V. Alexeev according to paragraph "b", Part 1, Article 58 of Criminal Code of Russian Federation should perform in corrective colony of the general regime type. Prison terms should be started from the time of announcing of the sentence, and credit him the pre-trial / house arrest detention time (according to provisions stipulated in Volume 92 case file sheets № 181- 185; Volume 93 case file sheets № 61-64).

Having considered civil complaint from representative of the injured party V. A. Savin for the material damage assessment amount equal to RUB 2,443,195,968 (two billion four hundred and forty-three million one hundred and ninety-five thousand nine hundred and sixty-eight rubles) which was supported by State Prosecutor during pleadings (hearing of arguments), the court found it reasonable and meriting to satisfaction.

Basing on hereabove and guided by Article 317.7 of the Russian Federation Code of Criminal Procedure, the court,

SENTENCED:

Nikolay Viktorovich Alexeev considered guilty in committing of the crime stipulated by part 4, Article 160 of Criminal Code of Russian Federation and sentenced him to 4 (four) years of deprivation of freedom, to be served in corrective colony of the general regime type and a penalty at the amount RUB 1 000000 (one million rubles) according to provisions stipulated in Part 4, Article 160 of Criminal Code of Russian Federation.

House arrest (preventive measure used during pre-trial) had to be changed to Nikolay Viktorovich Alexeev to imprisonment. The imprisonment of Nikolay Viktorovich Alexeev s had to be performed in the courtroom.

Detention time for the accused (Nikolay Viktorovich Alexeev) had to be started from 26.04.2017. Along with credit him the pre-trial detention time (from 17.02.2016 to 26.12.2016) and house arrest detention time (from 26.12.2016 to 26.04.2017).

Civil complaint from representative of the injured party V. A. Savin for the amount equal to RUB 2,443,195,968 (two billion four hundred and forty-three million one hundred and ninety-five thousand nine hundred and sixty-eight rubles) shall be satisfied.

Collect from Nikolay Viktorovich Alexeev in favour of OAO Probusinessbank the following amount: RUB 2443195968 (two billion four hundred and forty-three million one hundred and ninety-five thousand nine hundred and sixty-eight rubles).

Material evidences (the following items were recognized):

- Employee's files and financial / economic business of OAO AKB Probusinessbank (187 pages); employee's files of OAO AKB Probusinessbank (245 pages); registration files of the following legal
23

entities: OOO Engineering Royalty (INN - Individual taxpayer Number: 7718894100), OOO ELSO (INN - Individual taxpayer Number: 7703517821), OOO Easton (INN - Individual taxpayer Number: 7718902897), OOO Sanris (INN - Individual taxpayer Number: 7743061260) totally on 611 pages; registration files of the following legal entities: OOO ELSO, OOO Engineering Royalty, OOO Easton, OOO ProgmaTrade, OOO Life processing company, OOO Probusiness Development, OOO KnewHowTrade, OOO Tsentr Torgovli, OOO Financial center Eskada, totally on 986 pages; registration files of the following legal entities: OOO PK – Technologies (INN - Individual taxpayer Number: 7722781123) and OOO Financial center Eskada (INN - Individual taxpayer Number: 7701377248): totally on 173 pages; registration files of the following legal entities: OOO Tsentr Torgovli (INN - Individual taxpayer Number: 7710872866), totally on 168 pages; registration files of the following legal entities: OOO Life processing company, OOO Probusiness Development, totally on 373 pages; registration files of the following legal entities: Legal entity OOO ProgmaTrade (181 pages); registration files of the following legal entities: Legal entity OOO Alliance (INN - Individual taxpayer Number: 6671421093) accounting records \ reports of Legal entity OOO Alliance (INN - Individual taxpayer Number: 6671421093, totally on 156 pages; registration files of the following legal entity: Legal entity OOO Personal+: totally on 136 pages; registration files of Legal entity OOO KnewHowTrade (INN - Individual taxpayer Number: 7715825429): totally on 197 pages; Voting results report (at the Board of the Directors of OAO AKD Probusinessbank) for the following period: 2010, 2011, 2012, 2013, 2014, 2015; Meeting of Board of Directors notification (along with attachment) totally on 13 pages, Resumes of the candidates to the position of the Board of the Directors: totally on 20 pages, reports (20 pages); Minutes of the meeting of unscheduled General shareholders meeting for the following period: from 2006 to 2015; Minutes of the meeting of the bank supervision department with representatives of OAO AKB Probusinessbank for the following period: from 2012 to 2015; Photocopy of audit conclusion of accounting (as of 01.01.2013) for audited company (AKB Probusinessbank) performed by auditing company *OOO SIABI auditing company*; Profit and loss statement for 2012; Cashflow statement for 2012; Statement of sufficiency of capital, amount of reserves for doubtful loans and other assets as of 01.01.2013; Liquidity requirements as of 01.01.2013; Explanation note to annual report (for 2012): totally on 38 pages; Photocopy of audit conclusion of accounting (as of 2014) for audited company (AKB Probusinessbank) performed by auditing company *OOO Fashion Audit*, totally on 70 pages; Photocopy of audit conclusion of accounting (as of 01.01.2014) for audited company (AKB Probusinessbank) performed by auditing company *Bureau Auditorskikh Resheniy*, Profit and loss statement for 2013; Cashflow statement for 2013; Statement of sufficiency of capital, amount of reserves for doubtful loans and other assets as of 01.01.2014; Liquidity requirements as of 01.01.2014; Explanation note to annual report (for 2013), totally on 61 pages; Photocopy of audit conclusion of accounting (as of 01.10.2010) for audited company (AKB Probusinessbank) performed by auditing company *OOO SIABI*

24

*auditing company*; Profit and loss statement for 2012; Cashflow statement for 2012; Statement of sufficiency of capital, amount of reserves for doubtful loans and other assets as of 01.10.2011: totally on 3 pages; Photocopy of audit conclusion of accounting (as of 01.01.2012) for audited company (AKB Probusinessbank) performed by auditing company *OOO SIABI auditing company*; Profit and loss statement for 2011; Information about companies incorporated in the group; Statement of sufficiency of capital, amount of reserves for doubtful loans and other assets as of 01.01.2012: totally on 9 pages, Photocopy of audit conclusion of accounting (as of 01.01.2012) for audited company (AKB Probusinessbank) performed by auditing company *OOO SIABI auditing company*; Profit and loss statement for 2011; Cashflow statement for 2011; Statement of sufficiency of capital, amount of reserves for doubtful loans and other assets of 01.01.2012; Liquidity requirements as 01.01.2012; Explanation note to annual report (for 2011): totally 55 on pages, Photocopy of the Financial records report (as of 31.12.2014) prepared by independent audit company *Deloitte and Touche* (audited company OAO AKB Probusiness) plus financial situation report as of 31.12.2014; consolidated profit and loss Statement, consolidated revenue, shift in capital, cashflow report for 2014: totally on 126 pages; Photocopy of audit conclusion of financial situation (as of 31.12.2013) for audited company (AKB Probusinessbank) performed by independent audit company

*Deloitte and Touche*: totally on 124 pages, Photocopy of approval of the management team regarding responsibility for preparation, approval of consolidated financial Statement prepared for AKB Probusinessbank (annual report as of 31.12.2011): totally on 117 pages; Photocopy of approval of the management team regarding responsibility for preparation, approval of consolidated financial Statement prepared for AKB Probusinessbank (annual report as of 31.12.2012): totally on 115 pages; registration files and other documents of the following legal entities: OOO Personal+, OOO Life Debt collection Agency, OOO Easton, OOO ELSO, OOO Engineering Royalty, OOO PK Technologies, totally on 382 pages; interest bearing loan agreements for the period from 2011 to 2015; Photocopy of Foundation agreement of *OOO Life Debt collection Agency* prepared on General meeting (MoM № 1 dated 29.12.2006, totally on 6 pages A4 format); Documents seized during the search which took place on 17.02.2016 in the office № 204 of OOO Vega (location address: Moscow Dobrolyubova street 3, building 1): totally on 262 pages; registration files and other documents of the following legal entities: OOO Tsentr Torgovli, OOO KnewHow trade: totally on 107 pages; kept in the materials of the case should be kept in the case.

25

iPhone (smartphone) Model: A1457, FCC ID: BCG-E2643B, IC:579C-E2643B, IMEI 352049060199057 with SIM card MTS №89701010061113707761, portable hard drive Transcend StoreJet 500 GB 282753 1758, Laptop HP S/n 5CD52302QP, Apple iPhone 5, Model: A1428, IMEI 013333002578003, should be kept in chamber of exhibits of Main Investigations department of the Investigative Committee of the Russian Federation until the issuing the decision for the case.

CD-R ERGO received from competent bodies of Latvian Republic; Optical disk Verbatim CD-R 700 mb, confiscated from GK ASV; 3 CD-R disks Verbatim provided by GK ASV and kept in the case No. 11602007703000015, should be kept in the case № 11602007703000015 until the issuing the decision for the case.

The sentence may be appealed in Moscow municipal court within 10 days it's announced and accused being under detention may appeal to the court within 10 days from accepting the copy of the court's verdict.

Explain to N.V. Alexeev that he has a right to appeal with a demand to participate in Appeals court and the issue had to be mentioned in the appeals petition or in complaints of filing petitions provided by other parties of the criminal case.

STAMP: TRUE COPY
* The Ostankino District court of Moscow of Russian Federation*
Number of pages: _____
Judge: _____
Clerk: _____

    The Judge         /SIGNATURE/         Ya. V. Isaeva

26

# ПРИЛОЖЕНИЕ 20

Дело № 1-216/17

ПРИГОВОР
Именем Российской Федерации

26 апреля 2017 года                                                                          г. Москва

Останкинский районный суд г. Москвы в составе председательствующего судьи Исаевой Я.В., при секретаре Кожемяко А.Ю., с участием государственного обвинителя – старшего прокурора 3 отдела управления Генеральной прокуратуры Российской Федерации Устькой А.С., представителя потерпевшего Савина В.А., адвоката Якуновой М.А., представившей ордер № 26 и удостоверение № 16030,

подсудимого Алексеева Н.В. и его защитника – адвоката Звягина О.А., представившего ордер № 111692 и удостоверение № 9742,

рассмотрев в открытом судебном заседании уголовное дело в отношении Алексеева Николая Викторовича, 09 мая 1969 года рождения, уроженца пос. Купанское Переславского района Ярославской области, гражданина Российской Федерации, с высшим образованием, женатого, имеющего на иждивении детей, работающего финансовым директором ООО «Актив», зарегистрированного по адресу: Московская область, г. Королев ул. Коминтерна д. 12 кв. 76, ранее не судимого,

– обвиняемого в совершении преступления, предусмотренного ч 4 ст. 160 УК РФ,

установил:

Алексеев Н.В. виновен в совершении присвоения, то есть хищения чужого имущества, вверенного виновному, лицом с использованием своего служебного положения, в особо крупном размере, организованной группой.

Преступление совершено при следующих обстоятельствах.

Алексеев Н.В., в сентябре 2014 года, но не позднее 15.09.2014, в г. Москве, точное время и место следствием не установлены, вступил в организованную группу, созданную 1 установленным лицом, являющимся Президентом Открытого акционерного общества акционерного коммерческого банка «Пробизнесбанк» (далее по тексту АКБ «Пробизнесбанк», Банк) и 2 установленным лицом, являющимся Председателем Правления Банка с целью хищения путем присвоения вверенного имущества – денежных средств Банка, в особо крупном размере.

Так, АКБ «Пробизнесбанк», юридический регистрационный адрес: гор. Москва, ул. Пудовкина, д. 3, основной государственный регистрационный номер (ОГРН) 1027700508978, учрежден 25.11.1992 и зарегистрирован в книге государственной регистрации (КГР) Банка России 07.07.1993, корреспондентский счет № 30101810600000000986 в Главном управлении Банка России по Центральному федеральному округу г. Москва (далее по тексту ГУ Банка России по ЦБО г. Москва), банковский

идентификационный код (БИК) 044525986, индивидуальный номер налогоплательщика (ИНН) 7729086087, генера...ая лицензия на осуществление банковских операций от 13.08.2012 № 2412 выдана Банком России.

В соответствии со ст. 1 Федерального закона «О банках и банковской деятельности» от 02.12.1990 № 395-1 банком является кредитная организация, которая имеет исключительное право осуществлять в совокупности следующие банковские операции: привлечение во вклады денежных средств физических и юридических лиц, размещение указанных средств от своего имени и за свой счёт на условиях возвратности, платности, срочности, открытие и ведение банковских счетов физических и юридических лиц.

В соответствии с Уставом вышеуказанного кредитного учреждения, утверждённым общим собранием акционеров 28.06.2013, Банк является кредитной организацией в форме открытого акционерного общества. Целью деятельности Банка является извлечение прибыли. Банк может осуществлять привлечение денежных средств физических и юридических лиц во вклады и размещать привлечённые средства от своего имени и за свой счёт. Банк имеет в собственности обособленное имущество, отражаемое на его самостоятельном балансе, включая имущество, переданное ему акционерами в счёт оплаты акций.

К 2014 году 1 и 2 установленные лица, владея контрольным пакетом акций Банка долей более 50% путём владения акциями кипрской компании Alivikt Holding Limited (Аливикт Холдинг Лимитед) обеспечили себе как физические лица право осуществлять стратегическое и оперативное управление АКБ «Пробизнесбанк» и другими аффилированными юридическими лицами, входящими в финансовую группу.

Владение контрольным пакетом акций позволило им занять ключевые руководящие должности в банке.

Так, 1 установленное лицо, которое, в соответствии с Уставом Банка организовывало работу Совета Директоров, а также председательствовало на Общем собрании акционеров, с момента учреждения Банка на основании решений Совета Директоров Банка, который возглавляло и занимало должность Президента АКБ «Пробизнесбанк», что позволило ему определять приоритетные направления деятельности Банка. В свою очередь, 2 установленное лицо, как председатель Правления Банка – первый вице-Президент Банка приняло на себя обязательство руководства текущей деятельностью Банка.

В соответствии с Уставом вышеуказанного кредитного учреждения, утверждённым общим собранием акционеров 28.06.2013, Председатель Правления осуществляет руководство текущей деятельностью Банка, без доверенности действует от имени Банка, совершает сделки от имени Банка, распоряжается в соответствии с действующим законодательством и Уставом всем имуществом и средствами Банка, выдаёт и подписывает доверенности от имени Банка по своему усмотрению и прочее. Таким образом, 2 установленное лицо являлось лицом, выполняющим управленческие

2

функции в АКБ «Пробизнесбанк», и обладало полномочиями организационно-распорядительного и административно-хозяйственного характера, то есть имущество и средства Банка были ему вверены.

1 и 2 установленные лица, полностью контролируя деятельность Банка, начиная с сентября 2014 года в гор. Москве, точное время и место следствием не установлены, с целью хищения путем присвоения вверенных 2 установленному лицу денежных средств Банка создали организованную группу, определив в ней свою руководящую роль. В состав организованной группы под их общим руководством в указанный период времени были вовлечены Алексеев Н.В. и 3, 4, 5, 6, 7 и 8 установленные лица и другие неустановленные лица, каждому из которых была определена своя роль.

Для достижения поставленной цели под руководством 1 и 2 установленных лиц членами организованной группы была разработана схема хищения денежных средств и распределены роли участникам преступления.

- 1 установленное лицо, являясь основным акционером АКБ «Пробизнесбанк» с долей в размере 40,13% акций (на 31.12.2014), неоднократно избираемый Советом Директоров на должность Председателя Банка, в том числе в соответствии с протоколом заседания Совета Директоров № 10 от 25.07.2014, фактически осуществляя стратегическое управление деятельностью Банка, должно было совместно со 2 установленным лицом определять суммы денежных средств, которые намеревались похитить, способ их хищения, распоряжаться о перечислении денежных средств на расчетные счета подставных заемщиков, осуществлять общее руководство действиями всех членов организованной группы по совершении преступления и использовать по своему усмотрению полученные в процессе совершения преступления денежные средства, в том числе их использование в интересах членов организованной группы за пределами Российской Федерации;

- 2 установленное лицо, являясь основным акционером АКБ «Пробизнесбанк» с долей в размере 11,05% акций (на 31.12.2014), назначенный приказом Банка от 02.06.1993 № 181-К Председателем Правления и одновременно занимая должность вице-президента указанного кредитного учреждения, обладая в соответствии с уставом полномочиями руководства текущей деятельностью банка, совершения сделок от имени Банка, распоряжения имуществом и средствами Банка, должно было совместно с 1 установленным лицом определять суммы денежных средств, которые намеревались похитить, определять способ их хищения, подписывать решение о выдаче кредита ООО «Инновационно-строительная компания «ИнСпецГарант» (далее по тексту (ООО «РСК «РифСпецГарант»), выдать доверенности доверенным лицам, воспользовавшись которыми члены организованной группы должны были подписать кредитные договоры и иные сопутствующие документы, распорядиться о перечислении денежных средств на расчетные счета подставных заемщиков, а также совместно с 1 установленным лицом осуществлять общее руководство действиями всех членов организованной

- Сотовый телефон iPhone, Model: A1457, FCC ID: BCG-E2643B, IC:579C-E2643B, IMEI 352049060199057 с СИМ-Картой МТС с №89701010061113707761, переносной жесткий диск «Transcend StoreJet 500 GB 282753 1758», ноутбук HP S/n 5CD52302QP, сотовый телефон Apple iPhone 5, Model: A1428, IMEI 013333002578003, хранящиеся в камере вещественных доказательств Главного следственного управления Следственного комитета Российской Федерации, хранить до принятия решения по выделенному уголовному делу.

- CD-R диск марки «серюо», полученный из компетентных органов Латвийской Республики, оптический диск Verbatim CD-R 700 mb, изъятый в ГК «АСВ»; 3 CD-R диска марки «Verbatim», представление ГК «АСВ», хранящиеся при уголовном деле 11602007703000015, хранить при уголовном деле № 11602007703000015 до принятия решения по выделенному уголовному делу.

Приговор может быть обжалован в апелляционном порядке в Московский городской суд в течение десяти суток со дня его провозглашения, а осужденным, содержащимся под стражей, в тот же срок, со дня вручения ему копии приговора.

Разъяснить Алексееву Н.В., что он вправе ходатайствовать о своем участии в суде апелляционной инстанции, о чем необходимо указать в апелляционной жалобе или возражениях на жалобу, представленных, принесенные другими участниками уголовного судопроизводства.

Судья                                                        Я.В. Исаева

компания « БКо бухгалтерского баланса по состоянию на 01.10.2011, отчета о прибылях и убытках за 2012 год, отчета о движении денежных средств за 2012 год, отчета об уровне достаточности капитала, величине резервов на покрытие сомнительных ссуд и иных активов по состоянию на 01.10.2011 года, на 3 листах, копия Аудиторского заключения аудируемого лица – АКБ «ПРОБИЗНЕСБАНК» (ОАО) аудитором – ООО «Аудиторская компания «СНАБ» по консолидированного балансового отчета по состоянию на 01.01.2012 года, консолидированного отчета о прибылях и убытках за 2011 год, сведений о составе участников банковской (консолидированной) группы, уровне достаточности собственных средств и величине сформированных резервов на покрытие сомнительных ссуд и иных активов по состоянию на 01.01.2012 года, на 9 листах, копия Аудиторского заключения аудируемого лица – АКБ «ПРОБИЗНЕСБАНК» (ОАО) аудитором – ООО «Аудиторская компания «СНАБ» бухгалтерского баланса по состоянию на 01.01.2012, отчета о прибылях и убытках за 2011 год, отчета о движении денежных средств за 2011 год, отчета об уровне достаточности капитала, величине резервов на покрытие сомнительных ссуд и иных активов по состоянию на 01.01.2012 года, сведений об обязательных нормативах по состоянию на 01.01.2012 года, пояснительной записки к годовому отчету за 2011 год, на 55 листах, копия Отчета независимого аудитора ЗАО «Делойт и Туш СНГ» - организации АКБ «Пробизнесбанк» (ОАО) финансовой отчетности по состоянию на 31.12.2014 года и консолидированных отчетов о прибылях и убытках и движении доходов, об изменениях капитала и о движении денежных средств за 2014 год, на 126 листах, копия Отчета независимых аудиторов ЗАО «Делойт и Туш СНГ» - организации АКБ «Пробизнесбанк» (ОАО) финансовой отчетности по состоянию на 31.12.2013 года, на 124 листах, копия Подтверждения руководства об ответственности за подготовку и утверждение консолидированной финансовой отчетности за год, закончившейся 31.12.2011 года Группы «ПРОБИЗНЕСБАНК», на 117 листах, копия Подтверждения руководства об ответственности за подготовку и утверждение консолидированной финансовой отчетности за год, закончившейся 31.12.2012 года Группы «ПРОБИЗНЕСБАНК», на 115 листах, учетно-регистрационные дела и иные документы юридических организаций: ООО «Персонал+», ООО «Коллекторское агентство «Лайф», ООО «Фетонг», ООО «ЭлСо», ООО «Инжиниринг-Роялти», ООО «ПК-Технолоджис», на 382 листах; договора процентных займов за 2011-2015 года, копия учредительного договора ООО «Коллекторское агентство «Лайф», заключенного на общем собрании участников Протокол № 1 от 29.12.2006, на 6 листах формата А 4, документы изъятые в ходе обыска 17.02.2016 в офисе № 204 ООО «ВЕГА», по адресу: г. Москва, ул. Добролюбова, д. 3, стр. 1. На 262 листах; учетно-регистрационные дела и иные документы юридических организаций: ООО «Центр Торговли», ООО «ПьюХаУГрейд» на 107 листах; хранящихся в материалах уголовного дела, хранить при деле.

группы при совершении преступления и использовать всему усмотрению получаемые в процессе совершения преступления денежные средства;

- 3 установленное лицо, назначенное приказом Банка от 19.10.2011 № 5330-к на должность вице-президента Банка по корпоративным финансам, должно было разработать схему хищения денежных средств, руководить действиями подчиненных ему сотрудников департамента корпоративных финансов, которые определяли подставных заемщиков Банка из числа подконтрольных участникам организованной группы и сторонних компаний для их последующего использования в хищении денежных средств под видом кредитования, дать распоряжение подчиненным ему сотрудникам о формировании кредитных досье с целью придания видимости законности выдачи кредитных денежных средств, а также дать указание подчиненному ему у установленному лицу о перечислении похищаемых денежных средств на расчетные счета подконтрольных юридических лиц и их аккумуляции на счетах ООО «Персонал+» и ООО «Коллекторское агентство «Лайф» для последующего перечисления на кипрскую компанию Vertranda Holdings Limited (Вертранда Холдингс Лимитед); оплатить незаконные услуги Папазяна О.Е., предоставившего подконтрольные ему юридические лица для фиктивного кредитования;

- 4 установленное лицо, занимая на основании приказа Банка от 03.12.2007 № 4846-к должность вице-президента по развитию корпоративного бизнеса Банка, являясь доверенным лицом 2 установленного лица, должно было на основании доверенности, предоставляющей право распоряжаться имуществом кредитного учреждения, действуя по указанию руководителей организованной группы, используя свое служебное положение, с целью присвоения денежных средств, подписать неисполнимый невозвратный и необеспеченный договор об условиях среднесрочного кредитования с подконтрольным членам организованной группы подставным заемщиком – ООО «РСК «ИнСпецГарант»;

- 5 установленное лицо, занимая на основании приказа Банка от 23.07.2001 № 564-к должность вице-президента по финансам – заместителя председателя Правления Банка, должно было на основании доверенности, предоставляющей право распоряжаться имуществом кредитного учреждения, действуя по указанию руководителей организованной группы, используя свое служебное положение, с целью присвоения денежных средств, подписать от имени Банка заведомо неисполнимый невозвратный и необеспеченный договор об условиях среднесрочного кредитования и сопутствующие документы с подставным заемщиком ООО «Центр Торговли»;

- Алексеев Е.В., занимая на основании приказа Банка от 16.02.2015 № 1130-к должность начальника департамента корпоративных финансов Банка, должен был на основании доверенности, предоставляющей право распоряжаться имуществом кредитного учреждения, используя свое служебное положение, с целью присвоения денежных средств, подписать от имени Банка заведомо неисполнимый невозвратный и необеспеченный договор об

условиях среднесрочного кредитования и сопутствующие документы с подставными заемщиками ООО «Инжиниринг-Роялти», ООО «Восток-Карго-Плюс» и ООО «НьюХауТрейд»;

— 6 установлено лицо, назначенное приказом Банка от 01.07.2014 № 3711-к начальником управления проектного финансирования департамента корпоративных финансов Банка, действуя по указанию 3 установленного лица, должно было осуществлять мониторинг финансового состояния подконтрольных и аффилированных членам организованной группы обществ, получать информацию о поступлении денежных средств, похищаемых путем выдачи кредитов на подставные юридические лица, на конкретные подконтрольные общества и давать указания о перечислении денежных средств для их аккумуляции на счетах ООО «Коллекторское агентство «Лайф» и Vertmeda Holdings Limited, а также передать Папазяну О.Е., оказывающему содействие членам организованной группы в совершении хищения денежных средств Банка, часть наличных денежных средств в качестве вознаграждения за предоставление последними ООО «Центр Торговли» и ООО «НьюХауТрейд» в качестве подставных заемщиков;

— 7 установленное лицо, являясь генеральным директором ООО «Коллекторское агентство «Лайф», заведомо знал о том, что участникам организованной группы под руководством 1 и 2 установленных лиц совершается хищение денежных средств Банка путем присвоения, предоставлял счет возглавляемого им ООО «Коллекторское агентство «Лайф» для аккумуляции под видом фиктивных договоров займа/погашения похищаемых денежных средств, которые в последующем под видом погашения займов перечислялись на расчетный счет подконтрольного членам организованной группы кипрской компании Vertmeda Holdings Limited; также 7 установленное лицо на регулярной основе по мере необходимости должен был подписывать фиктивные заключаемые договоры займов, на основании которых, придавая видимость законности совершаемых сделок, похищаемые денежные средства перечислялись между подставными обществами,

— 8 установленное лицо, занимая на основании приказа Банка от 19.11.2008 № 6492-к должность начальника управления по работе с акционерами и дочерними организациями Банка, возглавляло специально учрежденное ООО «Бухгалтерский центр «Баланс», сотрудники которого Самойленко Д.А. и Ячика О.М., неосведомленные о преступных намерениях соучастников преступления, осуществляли подготовку документов, обосновывающих расчеты между обществами, привлекаемыми членами организованной группы в качестве подставных заемщиков и займодавцев/заимодателей для транзита денежных средств, их бухгалтерской и налоговой отчетности для предоставления в контролирующие органы Российской Федерации, а также управления счетами подконтрольных юридических лиц,

— иные неустановленные лица, роль которых состояла в совершении иных действий по обеспечению деятельности организованной группы при совершении преступления и оказании иного содействия соучастникам

---

юридических организаций: ООО «Инжиниринг-Роялти» (ИНН 7718894100), ООО «ЭЛСо» (ИНН 7703517821), ООО «Вгтон» (ИНН 7718902897), ООО «Сагрис» (ИНН 7743061260), на 611 листах; учетно-регистрационные дела юридических организаций: ООО «ЭЛСо», ООО «Инжиниринг-Роялти», ООО «Вгтон», ООО «Прогматрейд», ООО «Процессинговая компания «Лайф», ООО «Прабизнес-Девелопмент», ООО «НьюХауТрейд», ООО «Центр Торговли», ООО «Финансовый центр «Эскадо» на 986 листах; учетно-регистрационные дела юридических организаций: ООО «ПК-Технолоджис» (ИНН 7722781123) и ООО «Финансовый центр Эскадо» (ИНН 7701377248) на 173 листах; учетно-регистрационное дело ООО «Центр Торговли» (ИНН 7710872866), на 168 листах; учетно-регистрационные дела ООО «Процессинговая компания «Лайф» и ООО «Прабизнес-Девелопмент» на 373 листах; учетно-регистрационное дело юридической организации - ООО «Пргома-Трейд» на 181 лист; учетно-регистрационное дело юридической организации ООО «Алынко» (ИНН 6671421093) и документы бухгалтерского учета и отчетности юридической организации ООО «Алынко» (ИНН 6671421093) на 156 листах; учетно-регистрационное дело юридической организации - ООО «Персонал+» на 136 листах; учетно-регистрационное дело юридической организации - ООО «НьюХауТрейд» (ИНН 7711825429) на 197 листах; протоколы об итогах голосования на заседании Совета Директоров АКБ «Прабизнесбанк» за 2010, 2011, 2012, 2013, 2014, 2015 года, уведомление о проведении заседания Совета Директоров с приложением, на 13 листах, анкеты кандидатов на должность Совета Директоров, на 20 листах, отчеты на 19 листах, протоколы внеочередного общего собрания акционеров за 2006-2015 года, протоколы совещаний в Департаменте банковского надзора о представлениях ОАО АКБ «Прабизнесбанк» за период 2012-2015 года, копия Аудиторского заключения аудируемого лица - АКБ «ПРОБИЗНЕСБАНК» (ОАО) аудитором - ООО «Аудиторская компания «СИАБ» бухгалтерского баланса по состоянию на 01.01.2013, отчета о прибылях и убытках за 2012 год, отчета о движении денежных средств за 2012 года, отчета об уровне достаточности капитала, величине резервов на покрытие сомнительных ссуд и иных активов по состоянию на 01.01.2013 года, сведений об обязательных нормативах по состоянию на 01.01.2013 года, пояснительной записки к годовому отчету за 2012 год, на 18 листах, копия Аудиторского заключения о годовой бухгалтерской отчетности АКБ «ПРОБИЗНЕСБАНК» (ОАО) за 2014 год аудитором - ООО «ФЭШН АУДИТ», на 70 листах, копия Аудиторского заключения аудируемого лица - АКБ «ПРОБИЗНЕСБАНК» (ОАО) аудитором - ООО «Бюро Аудиторских Решений бухгалтерского баланса по состоянию на 01.01.2014, отчета о прибылях и убытках за 2013 год, отчета о движении денежных средств за 2013 год, отчета об уровне достаточности капитала, величине резервов на покрытие сомнительных ссуд и иных активов по состоянию на 01.01.2014 года, сведений об обязательных нормативах по состоянию на 01.01.2014 года, пояснительной записки к годовому отчету за 2013 год, на 61 листе, копия Аудиторского заключения аудируемого лица - АКБ «ПРОБИЗНЕСБАНК» (ОАО) аудитором - ООО «Аудиторская

преступлениях в совершении преступления, в том ч предоставлением информации, средств совершения преступления и устранением препятствия его совершения, сокрытием совершенного преступления, а также в предоставлении подконтрольных им юридических лиц, как резидентов, так и нерезидентов Российской Федерации с целью последующего перечисления на их счета похищенных денежных средств и распределения среди соучастников преступления.

Устойчивость этой организованной группы, заранее объединившейся для совершения хищения путем присвоения, была обусловлена длительными знакомством и постоянной связью между ее участниками, служебными взаимоотношениями, общностью корыстной цели, четким распределением ролей и функций как при подготовке к совершению хищения, так и при осуществлении преступного умысла, тщательной проработкой схемы хищения.

Кроме того, участники организованной группы по мере необходимости в различное время в период с сентября 2014 года по август 2015 года в городе Москве и городе Иваново Ивановской области, более точное время и место не установлены, в качестве пособников преступления привлекли генерального директора ООО «ИСК «ИнСпецГарант» Поликарпова И.П., генерального директора ООО «Инжинири-Ролтин» Симакова А.В., генерального директора ООО «Восток-Карго-Плюс» Дарукина А.В., фактического руководителя группы компаний «АБмд» Папахина О.Е., генерального директора ООО «Центр Торговли» Шпагину Л.Б., генерального директора ООО «НьюХауГрейд» Кравченко О.В. и иных неустановленных лиц.

В сентябре 2014 года, точное время следствием не установлено, в гор. Москве, члены организованной группы, возглавляемой 1 и 2 установленными лицами, действуя из корыстных побуждений, с целью личного обогащения, разработали план действий, направленный на хищение денежных средств Банка в особо крупном размере.

Используя кадровые возможности Банка, 3 установленным лицом, действующим по указанию 1 и 2 установленных лиц, были использованы ранее учрежденные юридические лица, не осуществляющие реальной хозяйственной деятельности и полностью подконтрольные членам организованной группы, директорами которых назначались сотрудники Банка и иные лица за номинальное вознаграждение в размере 10 000 – 20 000 рублей в месяц. В число таких юридических лиц вошли: ООО «Инжинири-Ролтин», ООО «Эдсо», ООО «Персонал», ООО «Альные», ООО «Историк», ООО «ЦК-Технолоджис», ООО «Снирис».

Также в ходе выполнения преступного замысла, направленного на присвоение денежных средств, членами организованной группы, были использованы юридические лица аффилированные Банку и подконтрольные руководителям Банка – ООО «ИСК «ИнСпецГарант», ООО «Пробизнес-Девелопмент», ООО «Коллекторское агентство «Лайф».

исправление судимого и из условия жизни его семьи, учитывая характер и степень общественной опасности содеянного, суд приходит к выводу, что исправление и перевоспитание Алексеева Н.В. возможно лишь в условиях изоляции от общества, и назначая ему наказание в виде лишения свободы, не находит оснований для применения положений ст. 73 УК РФ.

Суд полагает необходимым назначить Алексееву Н.В. наказание в виде штрафа, размер которого определяет исходя из материального положения подсудимого и состава его семьи.

При этом, суд полагает возможным исправление подсудимого без применения дополнительного вида наказания в виде ограничения свободы.

Местом отбывания наказания Алексееву Н.В. в соответствии с п. «б» ч.1 ст. 58 УК РФ, суд назначает исправительную колонию общего режима.

Срок назначенного наказания полагает необходимым исчислять с момента постановления настоящего приговора, с зачетом времени предварительного содержания под стражей и содержания под домашним арестом (т. 92 л.д. 181-185; т. 93 л.д. 61-64).

Обсудив гражданский иск, заявленный представителем потерпевшего Савиным В.А. на сумму причиненного преступлением материального ущерба в размере 2 443 195 968,00 рублей, поддержанный государственным обвинителем и судебных прениях, суд находит обоснованным и подлежащим удовлетворению.

На основании изложенного и руководствуясь ст. 317.7 УПК РФ, суд

ПРИГОВОРИЛ:

Алексеева Николая Викторовича признать виновным в совершении преступления, предусмотренного ч. 4 ст. 160 УК РФ и назначить ему наказание по ч. 4 ст. 160 УК РФ, в виде лишения свободы сроком на 4 (четыре) года со штрафом в размере 1 000 000 (один миллион) рублей, с отбыванием наказания в исправительной колонии общего режима.

Меру пресечения подсудимому Алексееву Николаю Викторовичу в виде домашнего ареста изменить на заключение под стражу. Водворить Алексеева Н.В. под стражу в зале суда.

Срок отбывания наказания подсудимому Алексееву Николаю Викторовичу исчислять с 26.04.2017. Зачесть в срок отбывания наказания период содержания под стражей с 17.02.2016 по 26.12.2016 и под домашним арестом с 26.12.2016 по 26.04.2017.

Гражданский иск, заявленный представителем потерпевшего Савиным В.А. на сумму 2 443 195 968,00 рублей удовлетворить.

Взыскать с Алексеева Николая Викторовича в пользу ОАО «Пробизнесбанко 2 443 195 968,00 (два миллиарда четыреста сорок три миллиона сто девяносто пять тысяч девятьсот шестьдесят восемь) рублей.

Вещественные доказательства, в качестве которых признаны:

- личные дела сотрудников на 187 листах, личные дела сотрудников ОАО АКБ «Пробизнесбанко на 245 листах; учетно-регистрационные дела

ОАО АКБ «Пробизнесбанка и финансово-экономические дела

Государственный обвинитель заявил в судебном заседании, что Алексеев Н.В. обоснованно привлечен к уголовной ответственности по ч. 4 ст. 160 УК РФ, его вина полностью доказана собранными в ходе предварительного следствия доказательствами, имеющимися в материалах дела. С Алексеевым Н.В. заключено досудебное соглашение о сотрудничестве, условия которого Алексеев Н.В. выполнил в полном объеме, изобличив других участников преступления, что способствовало раскрытию и расследованию преступления.

Подсудимый Алексеев Н.В. в судебном заседании заявил, что признает вину полностью, согласен с предъявленным обвинением, раскаивается в содеянном, на протяжении всего следствия он активно способствовал раскрытию и расследованию преступлений, изобличению других соучастников преступления. Досудебное соглашение о сотрудничестве было заключено с ним добровольно и при участии защитника.

Судом установлено, что Алексеевым Н.В. соблюдены все условия и им выполнены все обязательства, предусмотренные досудебным соглашением с ним о сотрудничестве.

Обвинение, с которым согласился Алексеев Н.В., обоснованно, подтверждается доказательствами, собранными по уголовному делу.

Суд квалифицирует действия Алексеева Н.В. по ч. 4 ст. 160 УК РФ, как присвоение, то есть хищение чужого имущества, вверенного виновному, лицом с использованием своего служебного положения, в особо крупном размере, организованной группой.

При назначении наказания подсудимому суд учитывает характер и степень общественной опасности содеянного и данные о личности Алексеева Н.В., который с предъявленным обвинением согласен, вину свою признал полностью, в содеянном раскаялся, ранее не судим, имеет на иждивении несовершеннолетних детей, супругу, страдающую заболеванием, являющуюся инвалидом 3 группы, родителей пенсионного возраста, являющихся инвалидами 2 и 3 группы, положительно характеризуется по месту жительства и работы, страдает заболеваниями, что в совокупности, в соответствии со ст. 61 УК РФ, суд признает обстоятельствами, смягчающими его наказание.

Кроме того, обстоятельством, смягчающим наказание Алексеева Н.В., суд признает активное способствование раскрытию и расследованию преступления, изобличению других соучастников преступления п. «и» ч.1 ст. 61 УК РФ, и назначает наказание в соответствии со ст. 62 УК РФ.

Обстоятельств, отягчающих наказание подсудимого, судом не установлено.

Принимая во внимание фактические обстоятельства совершенного Алексеевым Н.В. преступления и степени его общественной опасности, суд не усматривает оснований для изменения согласно ч. 6 ст. 15 УК РФ категории преступления на менее тяжкую.

Несмотря на приведенные данные о личности Алексеева Н.В. и отсутствие предусмотренных законом обстоятельств, отягчающих его наказание, принимая во внимание влияние назначенного наказания на

Кроме того, участники организованной группы, в указанный период времени с целью избежать подозрений со стороны регулятора – Банка России и правоохранительных органов в хищении вверенных денежных средств, использовали ООО «Центр Торговли», ООО «НьюХауТрейд», ООО «Финансовый центр «Эскадо» и ООО «ПромагТрейд», деятельность которых контролировалась Папахчяном О.Е., который согласился выступить в качестве пособника за денежное вознаграждение и содействовал совершению преступления путем предоставления компаний ООО «Центр Торговли» и ООО «НьюХауТрейд» для получения в кредит денежных средств, подлежащих хищению, осуществлению фиктивных финансовых операций с указанными денежными средствами и их перечисление на расчетные счета подконтрольных членам организованной группы ООО «ПК-Технолоджис» и ООО «Садрес».

Используемые для операций по перечислению денежных средств расчетные счета всех указанных юридических лиц, были открыты в АКБ «Пробизнесбанк» и, за исключением ООО «НьюХауТрейд», ООО «Центр Торговли», ООО «Финансовый центр «Эскадо» и ООО «ПромагТрейд», управлялись неустановленными сотрудниками Банка, а также Самойленко Д.А. и Яшиной О.М. в помещениях, расположенных по адресу: город Москва, ул. Добролюбова, д. 3, стр. 1.

Общий принцип совершения преступления предусматривал совершение умышленных действий, направленных на выдачу подконтрольным обществам заведомо невозвратных, необеспеченных залоговым имуществом кредитов в особо крупных размерах, перечисление кредитных денежных средств на ссудные и расчетные счета указанных обществ, после чего под видом оплаты фиктивных сделок, с целью сокрытия совершенного преступления, перечисление денежных средств на счета подконтрольных юридических лиц.

Затем, похищенные денежные средства в рублях Российской Федерации конвертировались в полном объеме в доллары США и перечислялись на расчетный счет подконтрольного членам организованной группы юридического лица, не осуществляющего реальной хозяйственной деятельности, – нерезидента Российской Федерации – компания Vermenda Holdings Limited (Верменда Холдингс Лимитед), зарегистрированной по адресу: Griva Digeni, P.C. 3101, Limassol, Cyprus (Грива Дигени, п/я 3101, Лимассол, Кипр), открытый в кредитной организации – нерезиденте Trasta Komercbanka Riga (Траста Комерцбанка Рига), расположенном по адресу: Palasta iela 1, Riga LV-1050, Latvija (Паласта иела 1, Рига LV-1050, Латвийская Республика).

Документальное оформление выдачи кредитов, с целью придания видимости законности производимых сделок, формально носило законный характер, однако фактически указанные документы содержали недостоверные сведения и все действия участников преступления были направлены на достижение преступного умысла, то есть на хищение путем присвоения денежных средств Банка в особо крупном размере.

4080781090( 330608, открытый в том же Банке.

Затем, 30.07.2015, похищенные денежные средства в размере 499 995 968 руб., в числе прочих денежных средств в размере 600 000 000 руб., неустановленными следствием лицами, осуществлявшими управление расчетным счетом Vermenda Holdings Limited № 40807810900010030608, конвертированы в доллары США с одновременным зачислением на валютный счет компании-нерезидента Vermenda Holdings Limited № 40807840200010030608 денежных средств в размере 10 015 000 долларов США, часть из которых в размере 10 000 000 долларов США в тот же день неустановленными следствием лицами на основании платежных поручений от 30.07.2015 №№ 290 и 291 перечислены на счёт этой организации № LV63CBRB1111215921001, открытый в Trasta Komercbanka Rīga (Траста Комерцбанка Рига), расположенном по адресу: Palasta iela 1, Rīga LV-1050, Latvija (Паласта иела 1, Рига LV-1050, Латвийская Республика).

Переведя денежные средства на счет Vermenda Holdings Limited в Trasta Komercbanka Rīga, руководители организованной группы 1 и 2 установленные лица получили реальную возможность распоряжаться ими по своему усмотрению, скрыв путем многочисленных финансовых операций истинное предназначение кредита в размере 499 995 968 руб., выданного ООО «НьюХауТрейд».

Таким образом, членами организованной группы, под руководством 1 и 2 установленных лиц, в которую входил Алексеев Н.В., в июле 2015 года путем выдачи кредита ООО «НьюХауТрейд» было похищено путем присвоения 499 995 968 руб., принадлежащих Банку, тем самым причинен этой кредитной организации ущерб на указанную сумму.

Впоследствии, 29.07.2015, то есть на следующий день после выдачи кредита, соучастники преступления – начальник Департамента корпоративных финансов Банка Алексеев Н.В. и генеральный директор ООО «НьюХауТрейд» Кравченко О.В., с целью сокрытия совершенного у Банка хищения денежных средств в особо крупном размере и придания видимости законности совершаемых минимых сделок, заключили Соглашение об отступном от 29.07.2015, согласно которому среднесрочного кредитования от 28.07.2015 № 137-810/15ю были прекращены, а в качестве исполнителя обязательства по выплате кредитных денежных средств Банк принял право требования к подконтрольному участникам преступления ООО «Сингрэ», не осуществляющему какой-либо фактической хозяйственной деятельности.

Всего, членами организованной группы, в которую входило 6 установленное лицо, под руководством 1 и 2 установленных лиц, с сентября 2014 года по август 2015 года путем выдачи кредитов ООО «ДСК ИнСпецГарант», ООО «Инжиниринг-Ройлти», ООО «Восток-Карго-Плюс», ООО «Центр Торговли» и ООО «НьюХауТрейд» было присвоено 2 443 195 968 (два миллиарда четыреста сорок три миллиона девятьсот пять тысяч девятьсот шестьдесят восемь) руб., и тем самым причинён ущерб АКБ «Пробизнесбанк» в особо крупном размере.

---

При заключении договоров об условиях средн_ _ного кредитования лица, выступающие сторонами договора, должны были действовать в соответствии с правилами заключения сделок, основываясь на требованиях ст. 10 ГК РФ, предусматривающей разумность действий и добросовестность участников гражданских правоотношений. Тем самым, лица, подписывающие договоры об условиях среднесрочного кредитования, предметом которых были денежные средства АКБ «Пробизнесбанк», обязаны были действовать добросовестно и не совершать действий, связанных с обманом, в том числе с целевым назначением кредита.

Таким образом, 1 и 2 установленные лица, возглавляя организованную группу, и действующие под их руководством Алексеев Н.В. и 3, 4, 5, 6, 7 и 8 установленные лица, и другие члены организованной группы, действовали во исполнение единого умысла, направленного на безвозмездное изъятие денежных средств и с намерением причинить вред другому лицу (АКБ «Пробизнесбанку»), то есть в нарушение ст. 10 ГК РФ «Пределы осуществления гражданских прав», в соответствии с которой не допускаются действия граждан и юридических лиц, осуществляемые исключительно с намерением причинить вред другому лицу, а также злоупотребление правом в иных формах, и, следовательно, противозаконно.

Действующие согласно отделенной им в организованной группе роли Алексеев Н.В., 4 и 5 установленные лица, заключив договора об условиях среднесрочного кредитования, с целью присвоения денежных средств для создания видимости гражданско-правовых отношений во исполнение незаконных указаний руководителей организованной группы 1 и 2 установленных лиц, умышленно нарушили положения ст. 1 Федерального закона «О банках и банковской деятельности № 395-1 от 02.12.1990 г., обязывающей кредитную организацию размещать привлеченные денежные средства физических и юридических лиц от своего имени и за свой счет на условиях возвратности, платности, срочности.

Это позволило членам организованной группы, действовавшим от имени Банка, но вопреки интересам кредитного учреждения, противоправно, безвозмездно, безвозвратно обратить вверенные им денежные средства в свою пользу, обеспечив их переход в собственность подконтрольных соучастникам подставных компаний и тем самым совершить их хищение путем присвоения.

Так, в период предшествующий 16.09.2014, более точное время следствием не установлено, 4 установленное лицо, находясь на своём рабочем месте, расположенном по адресу: гор. Москва, Волгоградский пр-т, д. 43 корп. 3, действуя от имени Банка, на основании доверенности № 610/1 от 16.07.2014, выданной одним из руководителей организованной группы – 2 установленным лицом, заключившим председателем правления Банка, согласно которой ему делегированы полномочия по заключению кредитных договоров и распоряжению денежными средствами Банка, то есть управленческие функции административно-хозяйственного характера, по распоряжению вверенными ему денежными средствами Банка, выполняя указания руководителей организованной группы 1 и 2 установленных лиц,

действуя ум...ено и согласовано с другими членами организованной группы, используя свое служебное положение, подписал от имени Банка Договор об условиях среднесрочного кредитования от 15.09.2014 № 211-810/14о с подконтрольным членам организованной группы ООО «ИСК «ПаСпецГарант» в лице генерального директора общества Поликарпова И.П., согласно которому Банк обязуется предоставить указанному обществу кредит в рамках открываемых кредитных линий с максимальным размером задолженности в размере 500 000 000 руб.

При этом, Поликарпов И.П., оказывая содействие совершению преступления предоставлением информации и устранению препятствий его совершения, не являлся участником организованной группы, в вышеуказанный период времени, находясь на своем рабочем месте, расположенном по адресу: г. Иваново, Проспект Шереметьевский, д. 153А, подписал от имени общества вышеуказанный Договор об условиях среднесрочного кредитования от 15.09.2014 № 211-810/14о, осознавая, что возглавляемое им общество не направит полученные денежные средства в виде кредита на хозяйственную деятельность, а посредством оформления кредита на возглавляемое им общество денежные средства участники организованной группы похитят путем присвоения.

15.09.2014 во исполнение вышеуказанного Договора, согласно представленной заявки от имени Поликарпова И.П., согласно меморандного ордера от 15.09.2014 № 1018062751, денежные средства в размере 280 000 000 руб. перечислены со ссудного счета ООО «ИСК «ПаСпецГарант» № 45207810600000127604 на расчетный счет этой организации № 40702810308180027604, открытые в Банке, расположенном по адресу: гор. Москва, ул. Пудовкина, д. 3.

В тот же день, после поступления денежных средств на расчетный счёт ООО «ИСК «ПаСпецГарант» № 40702810308180027604, открытый в Банке, главный бухгалтер Общества Сунова Е.С., неосведомленная о преступных намерениях участников организованной группы, получив указания посредством электронной почты от неустановленных сотрудников ООО «ПроБизнес-Девелопмент», по согласованию с Поликарповым И.П., с целью придания видимости законного движения кредитных денежных средств в размере 280 000 000 руб., перечислила их несколькими платежами, в числе прочих денежных средств:

- 24 157 808,21 руб. под видом погашения процентов и основного долга по ранее заключенным фиктивным договорам займа от 26.08.2014 № 26/08/14-И и от 14.07.2014 № 14/07/14-И платежным поручением от 15.09.2014 №№ 751, 752, 763, 764 на расчетный счет подконтрольного членам организованной группы и не ведущего реальной хозяйственной деятельности ООО «Персонал» № 40702810300000102610, открытый в том же Банке;

- 34 471 698,63 руб. под видом погашения процентов и основного долга по ранее заключенным фиктивным договорам займа от 30.06.2014 № 30/06-14, от 31.07.2014 № 31/07-14 и от 29.08.2014 № 29/08-14, платежными поручениями от 15.09.2014 №№ 747, 748, 749, 750, 757, 758, 759, 760, 761,

9

---

перечислены со ссудного счета ООО «НьюХаусТрейд» № 45205810900200007734 на расчетный счет № 40702811090000200007734 этой организации, открытый в Банке, расположенном по адресу: гор. Москва, ул. Пудовкина, д. 3.

28.07.2015, после поступления денежных средств на расчётный счёт ООО «НьюХаусТрейд» № 40702811090000200007734, открытый в Банке, денежные средства в размере 499 995 968 руб, похищенные лицами по указанию Папахина О.Е. перечислены под видом оплаты по фиктивному договору купли-продажи инвестиционных паев от 28.07.2015 № ЭС-НХТ32015-1Б на расчётный счет подконтрольного Папахину О.Е. ООО «Финансовый центр «Эскада» № 40702810800000210934, открытый в том же Банке.

28.07.2015 после поступления похищенных средств на расчётный счет ООО «Финансовый центр «Эскада», платежным поручением № 35 от 28.07.2015 похищенные денежные средства в размере 499 995 968 руб. по фиктивному договору процентного займа от 28.07.2015 № 28-07 неустановленными лицами по указанию Папахина О.Е. перечислены на расчётный счёт подконтрольного членам организованной группы и не ведущего реальной хозяйственной деятельности ООО «Сварн» № 40702810500070015537, открытый в том же Банке.

Затем, 29.07.2015, то есть на следующий день, после перечисления похищенных денежных средств на расчётный счет ООО «Сварн», Яичной О.М., неосведомлённой о преступных намерениях членов организованной группы, действующей по указанию 6 установленных лица и по согласованию с 8 установленными лицами, платежными поручениями от 29.07.2015 №№ 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, основная часть денежных средств в размере 498 871 028,03 руб. под видом погашения процентов и основного долга по ранее заключенным фиктивным договорам процентных займов от 01.08.2013 № 01/08/13-САН, от 26.12.2013 № 26/12/13-САН, от 31.01.12 № 31/01/12-САН, от 02.03.2012 № 02/03/12-САН, от 27.02.2012 № 27/02/12-САН, от 12.10.2012 № 12/10/12 САН и предоставления займа по фиктивному договору процентного займа от 29.07.2015 № 29/07/15-САН, заключенным со стороны ООО «Коллекторское агентство «Лайф» 7 установленным лицом, перечислена их несколькими платежами этой организации № 40702810300110117621, открытый в том же Банке.

29.07.2015 и 30.07.2015 после поступления похищенных у Банка денежных средств на расчетный счет ООО «Коллекторское агентство «Лайф», той же Яичной О.М., платежными поручениями от 29.07.2015 № 1372, № 1373, № 1374 и от 30.07.2015 № 1426 под видом погашения основного долга по фиктивным договорам займа от 06.07.2012 № 06-07/12, от 30.08.2012 № 30-08/12, от 28.12.2012 № 28-12/1 и от 28.04.2014 № 2804 денежные средства, похищенные у Банка, в числе прочих денежных средств в размере 600 000 000 руб. перечислены на расчётный счет подконтрольной членам организованной группы и не ведущего реальной хозяйственной деятельности компании Vermenda Holdings Limited №

20

Таким азом, членами организованной группы, под руководством 1 и 2 установленных лиц, в которую входил Алексеев Н.В., в июне 2015 года путем выдачи кредита ООО «Центр торговли» было похищено путем присвоения 698 200 000 руб., принадлежащих Банку, тем самым причинен этой кредитной организации ущерб на указанную сумму.

03.08.2015, соучастники преступления – начальник Департамента корпоративных финансов Банка Алексеев Н.В. и генеральный директор ООО «Центр торговли» Шпагина Л.В., с целью сокрытия совершенного у Банка хищения денежных средств в особо крупном размере и придания видимости законности совершенных мнимых сделок, заключили Соглашение об отступном от 03.08.2015, согласно которому обязательства ООО «Центр торговли» по Договору об условиях среднесрочного кредитования от 22.06.2015 № 099-810/15го были прекращены, а в качестве исполнителя обязательств по выплате кредитных денежных средств Банк принял право требования к подконтрольному участникам преступления ООО «ПК-Технолоджис», не осуществляющему какой-либо фактической хозяйственной деятельности.

Участник организованной группы – начальник департамента корпоративных финансов Банка Алексеев Н.В., действуя от имени Банка, на основании доверенности № 1202 от 17.02.2015, выданной одним из руководителей организованной группы – представителем правления Банка 2 установленным лицом, согласно которой ему делегированы полномочия по заключению кредитных договоров и распоряжению денежными средствами Банка, то есть управленческие функции административно-хозяйственного характера по распоряжению вверенными ему денежными средствами Банка, выполняя указание руководителей организованной группы 1 и 2 установленных лиц, действуя умышленно и согласованно с другими членами организованной группы, используя свое служебное положение, 28.07.2015, находясь на своем рабочем месте, расположенном по адресу: г. Москва, ул. Бутырская, д. 62, подписал от имени Банка Договор об условиях среднесрочного кредитования от 28.07.2015 № 137-810/15го с предоставленным Папахиным О.Е. ООО «НьюХауТрейд» в лице генерального директора Кравченко О.В., согласно которому Банк обязуется предоставить указанному обществу кредит в рамках открываемых кредитных линий с максимальным размером лимита задолженности в размере 1 000 000 рублей.

При этом, Кравченко О.В., действуя по указанию Папахина О.Е. осознавал, что цель получения кредита ООО «НьюХауТрейд» является заведомо ложной, а получение кредита является способом хищения денежных средств Банка. Кравченко О.В. 28.07.2015, находясь в помещении Банка, расположенном по адресу: гор. Москва, Бутырская, д. 62, подписала от имени фиктивно возглавляемого общества вышеуказанный Договор об условиях среднесрочного кредитования от 28.07.2015 № 137-810/15го.

28.07.2015 во исполнение вышеуказанного Договора, согласно от имени Кравченко О.В. и меморандного ордера от 28.07.2015 № 1020346334 денежные средства в размере 499 995 968 руб.

19

762 на расчётный счёт возлагаемого 7 устано' ным лицом ООО «Коллекторское агентство «Лайф» № 40702810300011...17621, открытый в том же Банке;

- 222 016 835,04 руб. под погашения ранее заключенного фиктивного соглашения от 30.06.2012 о расторжении договора об инвестировании от 28.05.2008 № КД-7/28-и-08 платёжными поручениями от 15.09.2014 №№ 765, 766 на расчётный счёт аффилированного Банку ООО «Пробизнес-Девелопмент» № 40702810300000021377, открытый в том же Банке.

В том же день, после поступления денежных средств на расчётный счет ООО «Пробизнес-Девелопмент», неустановленные сотрудники Банка, имеющие доступ в системе «Банк-Клиент» Общества, продолжая реализацию преступного замысла участников организованной группы, платёжными поручениями от 15.09.2014 №№ 853, 852, 856, 857, 861 перечислили часть похищенных денежных средств в размере 221 370 994,73 руб. под видом погашения основного долга и начисленных процентов ранее заключенных фиктивных договоров процентных займов от 16.11.2011 № 16/11/11-ПД, от 30.11.2011 № 30/11/11-ПД и от 30.12.2013 № 30/11/2013-ПД на расчётный счёт подконтрольного членам организованной группы и не ведущего реальной хозяйственной деятельности ООО «ЭЛСО» № 40702810800002011239, открытый в том же Банке.

Затем, 16.09.2014, Самойленко Д.А., неосведомленная о преступных намерениях членов организованной группы, по указанию неустановленных лиц и по согласованию с 8 установленным лицом, платёжным поручением от 16.09.2014 № 321 перечислила часть похищенных денежных средств в размере 221 000 000 руб. под видом погашения основного долга и процентов ранее заключенного фиктивного договора процентного займа от 07.07.2014 № 07/07-14 с вышеуказанного расчётного счёта ООО «ЭЛСО» на расчётный счёт возлагаемого 7 установленным лицом ООО «Коллекторское агентство «Лайф» № 40702810300011011621, открытый в том же Банке.

16.09.2014, то есть на следующий день, после перечисления денежных средств Банка на расчётный счёт ООО «Персонал+», та же Самойленко Д.А., действующая по указанию неустановленных лиц и по согласованию с 8 установленным лицом, платёжным поручением от 16.09.2014 № 133 перечислила со счета указанного общества часть похищенных денежных средств в размере 24 157 808,21 руб., в числе прочих денежных средств в размере 499 500 000 руб, под видом предоставления займа по фиктивному договору процентного займа от 16.09.2014 № 16/09/14-КА подписанному 7 установленным лицом со стороны ООО «Коллекторское агентство «Лайф», на расчётный счёт этой организации № 40702810300011011621, открытый в том же Банке.

16.09.2014, то есть в этот же день, после поступления их на расчётный счет ООО «Коллекторское агентство «Лайф», похищенные денежные средства в размере 280 000 000 руб. в числе прочих денежных средств в размере 603 000 000 руб, той же Самойленко Д.А., платёжным поручением № 1563 от 16.09.2014 под видом погашения основного долга по ранее

10

расчётный счет ООО «ПрогтагТрейд», платежными поручением от 23.06.2015 № 85 денежные средства в размере 698 200 000 руб. неустановленными лицами перечислены по фиктивному договору процентного займа № 22-06 от 22.06.2015 на расчётный счёт подконтрольного членам организованной группы и не ведущей реальной хозяйственной деятельности ООО «ПК-Технолоджис» № 40702810200110035573, открытый в том же Банке.

Затем, 23.06.2015, то есть в этот же день, после перечисления похищенных денежных средств на расчётный счет ООО «ПК-Технолоджис», Яниной О.М., несведомой о преступных намерениях членов организованной группы, действующей по указанию 6 установленного лица и по согласованию с 8 установленным лицом, платежным поручением от 23.06.2015 № 124 под видом предоставления займа по фиктивному договору процентного займа от 23.06.2015 № 23-06/2015, заключенному со стороны ООО «Коллекторское агентство «Лайф» 7 установленным лицом, денежные средства в размере 698 200 000 руб. перечислены на расчётный счет этой организации № 40702810300110117621, открытый в том же Банке.

После чего, 24.06.2015 после поступления похищенных у Банка денежных средств на расчётный счет ООО «Коллекторское агентство «Лайф», той же Яниной О.М., платежными поручениями от 24.06.2015 №№ 1114, 1115, 1116 под видом погашения основного долга по договорам займа от 06.07.2012 № 06-0712, от 29.07.2011 № 29-01/2011-3 и от 28.12.2012 № 28-12/1 денежные средства в размере 700 000 000 руб., перечислены на расчётный счёт подконтрольной членам организованной группы и не ведущей реальной хозяйственной деятельности Vermenda Holdings Limited № 40807810900011030608, открытый в том же Банке.

Затем, 25.06.2015, похищенные денежные средства в размере 698 200 000 руб. в числе прочих денежных средств в размере 702 969 800 руб, неустановленными следствием лицами, осуществлявшими управление расчетным счетом Vermenda Holdings Limited № 40807810900011030608, конвертированы в доллары США с одновременным зачислением на валютный счёт компании-нерезидента Vermenda Holdings Limited № 40807840200011030608 денежных средств следствием лицами на основании платежного поручения от 25.06.2015 № 281 перечислены на счет этой организации № LV63KBRB1111215921001, открытый в Trasta Komercbanka Riga (Траста Комербанка Рига), расположенном по адресу: Palasta iela 1, Riga LV-1050, Latvija (Паласта иела 1, Рига LV-1050, Латвийская Республика).

Перевела денежные средства на счет Vermenda Holdings Limited в Trasta Komercbanka Riga, руководители организованной группы 1 и 2 установленные лица получили реальную возможность распоряжаться ими по своему усмотрению, сокрыв путем многочисленных финансовых операций истинное предназначение кредита в размере 698 200 000 руб., выданного ООО «Центр Торговли».

заключенному / установленным лицом фиктивному договору займа от 30.08.2013 № 30-08/13 перечислени на расчётный счёт подконтрольной членам организованной группы и не ведущей реальной хозяйственной деятельности компании Vermenda Holdings Limited № 40807810900011030608, открытый в том же Банке.

Затем, 18.09.2014, похищенные денежные средства в размере 280 000 000 руб. в числе прочих денежных средств в размере 578 655 792 руб, неустановленными следствием лицами на основании платежного поручения от 18.09.2014 № 217 перечислена на счет этой организации № LV63KBRB1111215921001, открытый в Trasta Komercbanka Riga (Траста Комербанка Рига), расположенном по адресу: Palasta iela 1, Riga LV-1050, Latvija (Паласта иела 1, Рига LV-1050, Латвийская Республика).

Перевела денежные средства на счет Vermenda Holdings Limited в Trasta Komercbanka Riga, руководители организованной группы 1 и 2 установленные лица получили реальную возможность распоряжаться ими по своему усмотрению, сокрыв путем многочисленных финансовых операций истинное предназначение кредита в размере 280 000 000 руб., выданного ООО «дГСК «ИнСпецГарант».

Таким образом, членам организованной группы, под руководством которой 1 и 2 установленные лица, в которую входил Алексеев Н.В., в сентябре 2014 года путем выдачи кредита подконтрольному членам организованной группы ООО «ГСК «ИнСпецГарант» было присвоено 280 000 000 руб., принадлежащих Банку, тем самым причинен этой кредитной организации ущерб на указанную сумму.

В период предшествующий 10.04.2015, 3 установленным лицом, во исполнение разработанного им 1 и 2 установленными лицами плана хищения, в качестве подставной организации, на которую должен был быть выдан кредит Банком, было определено ООО «ИнжинирингРоштин», не ведущее какой-либо хозяйственной деятельности, единственным участником и генеральным директором которого с 14.10.2014 являлся бывший сотрудник Банка Смажков А.В., ранее занимавший должность старшего специалиста управления по работе с проблемной задолженностью Московской региональной дирекции АКБ «Пробизнесбанк».

При этом, Смажков А.В., действуя из корыстной заинтересованности, не являясь участником организованной группы, предоставив возглавляемое им общество, согласился оказать содействие членам организованной группы в совершении хищения путем присвоения денежных средств Банка предоставлением информации и устранением препятствий его совершению.

Продолжая реализовывать преступный умысел, направленный на

5 установленное лицо, являясь вице президентом по финансам – заместителем председателя правления финансов Банка Алексеев Н.В., в период, предшествующий 23.06.2015, точное время следствием не установлено, находясь на своем рабочем месте, расположенном по адресу: гор. Москва, ул. Снежная, д. 26, продолжая реализовывать преступный умысел, направленный на хищение денежных средств Банка, в особо крупном размере, действуя от имени Банка, на основании доверенности № 92/5 от 09.02.2015, выданной ему одним из руководителей организованной группы – председателем правления Банка 2 установленным лицом, согласно которой ему делегированы полномочия по заключению кредитных договоров и распоряжению денежными средствами Банка, то есть управленческие функции административно-хозяйственного характера по распоряжению вверенными ему денежными средствами Банка, выполняя указание руководителей организованной группы 1 и 2 установленных лиц, действуя умышленно и согласованно с другим членами организованной группы, используя свое служебное положение, подписал от имени Банка Договор об условиях среднесрочного кредитования № 099-810/15зо с предоставленным Папахиным О.Е. ООО «Центр торговли» в лице генерального директора общества Шпагина Л.Б., согласно которому Банк обязуется предоставить указанному обществу в рамках открываемых кредитных линий с максимальным размером лимита задолженности в размере 1 000 000 000 руб.

При этом, Шпагина Л.Б., действуя по указанию Папахина О.Е. осознавая, что цель получения кредита ООО «Центр Торговли» является заведомо ложной, а получение кредита является способом хищения денежных средств Банка. Шпагина Л.Б., 22.06.2015, находясь в помещении Банка, расположенном по адресу: гор. Москва, Волгоградский проспект, л. 43, корп. 3, подписала от имени фиктивно возглавляемого общества вышеуказанный Договор об условиях среднесрочного кредитования от 22.06.2015 № 099-810/15зо.

23.06.2015 во исполнение вышеуказанного Договора, согласно представленной заявки от имени Шпагиной Л.Б., согласно мемориального ордера от 23.06.2015 № 1020125374 денежные средства в размере 698 200 000 руб. перечислены со ссудного счета ООО «Центр торговли» № 45208103000200007965 на расчетный счет этой организации № 40702810400000207965, открытый в Банке, расположенном по адресу: гор. Москва, ул. Пудовкина, д. 3.

После чего, денежные средства в размере 698 200 000 руб. по указанию Папахина О.Е., в тот же день, после их поступления на расчетный счет ООО «Центр торговли» № 40702810400000207965, открытый в Банке, платёжным поручением от 23.06.2015 № 94 перечислены неустановленными лицами под видом оплаты фиктивного договора купли-продажи инвестиционных паев № ПТ-ЦГ/0406 от 04.06.2015 на расчётный счет подконтрольного Папахину О.Е. ООО «ПрогмаТрейд» № 40702810000000207844, открытый в том же Банке.

23.06.2015 после поступления похищенных денежных средств на

17

---

хищение денежных средств Банка, в особо крупно. ,размере, участник организованной группы – начальник департамента корпоративных финансов Банка Алексеев Н.В., в период, предшествующий 10.04.2015, точное время следствием не установлено, находясь на своем рабочем месте, расположенном по адресу: г. Москва, ул. Бутырская, д. 62, действуя от имени Банка, на основании доверенности № 120/2 от 17.02.2015, выданной одним из руководителей организованной группы – председателем правления Банка 2 установленным лицом, согласно которой ему делегированы полномочия по заключению кредитных договоров и распоряжению денежными средствами Банка, то есть управленческие функции административно-хозяйственного характера по распоряжению вверенными ему денежными средствами Банка, выполняя указание руководителей организованной группы 1 и 2 установленных лиц, действуя умышленно и согласованно с другим членами организованной группы, подписал от имени Банка Договор об условиях среднесрочного кредитования от 09.04.2015 № 044-810/15зо с подконтрольным членам организованной группы ООО «Инжиниринг-Роялти» в лице генерального директора общества Симакова А.В., согласно которому Банк обязуется предоставить указанному обществу кредит в рамках открываемых кредитных линий с максимальным размером лимита задолженности в размере 1 000 000 000 руб.

При этом, Симаков А.В. осознавал, что цель получения кредита является заведомо ложной, а получение кредита является способом хищения денежных средств Банка, в вышеуказанный период времени, находясь около своего дома, расположенного по адресу: гор. Москва, Высоковольтный проезд, д. 1, корп. 8, подписал от имени возглавляемого им общества вышеуказанный Договор об условиях среднесрочного кредитования от 09.04.2015 № 044-810/15зо.

09.04.2015 во исполнение вышеуказанного Договора, согласно представленной заявки от имени Симакова А.В., согласно мемориального ордера от 09.04.2015 № 1019700947, денежные средства в размере 600 000 000 руб. перечислены со ссудного счета ООО «Инжиниринг-Роялти» № 45204810400000135572 на расчетный счет этой организации № 40702810900110035572, открытые в Банке, расположенном по адресу: гор. Москва, ул. Пудовкина, д. 3.

В этот же день, после поступления денежных средств на расчётный счет ООО «Инжиниринг-Роялти» № 40702810900110035572, Яниной О.М., неосведомлённой о преступных намерениях членов организованной группы, действующей по указанию 6 установленного лица и по согласованию с 8 установленным лицом, похищаемые денежные средства в размере 600 000 000 руб. под видом предоставления займа по фиктивному договору процентного займа от 09.04.2015 № 09/04/2015 платёжным поручением от 09.04.2015 № 22 перечислены на расчётный счет подконтрольного членам организованной группы и не ведущего реальной хозяйственной деятельности ООО «Альянс» № 40702810500000113328, открытый в том же Банке.

09.04.2015, то есть в этот же день, после перечисления денежных средств на расчётный счет ООО «Альянс», той же Яниной О.М.,

12

платежным поручением от 09.04.2015 № 33 похищенные денежные средства в размере 600 000 000 руб. под видом частичного погашения основного долга по ранее заключенному фиктивному договору процентного займа от 29.08.2014 № 29/08-А перечислены на расчётный счет подконтрольного членам организованной группы и не ведущего реальной хозяйственной деятельности ООО «Персонал» № 40728103000001002610, открытый в том же Банке.

В этот же день, после поступления денежных средств на расчётный счет ООО «Персонал», той же Яниной О.М., платежным поручением № 144 от 09.04.2015 денежные средства в размере 600 000 000 руб., похищенные у Банка, под видом частичного погашения основного долга по ранее заключенному фиктивному договору займа от 06.03.2015 № 0603/15 перечислены на расчётный счет подконтрольной членам организованной группы и не ведущей реальной хозяйственной деятельности компании Vermenda Holdings Limited № 40807810900010030608, открытый в том же Банке.

Затем, 09.04.2015 и 13.04.2015 похищенные денежные средства в размере 600 000 000 руб., в числе прочих денежных средств в размере 600 069 891,60 руб., неустановленными следствием лицами, осуществляющими управление расчетным счетом Vermenda Holdings Limited № 40807810900010030608, конвертированы в доллары США с одновременным зачислением за валютный счет компании-нерезидента Vermenda Holdings Limited № 40807840200010030608 денежных средств в размере 11 182 000 долларов США, часть из которых в размере 10 000 000 долларов США неустановленными следствием лицами на основании платежного поручения от 09.04.2015 № 271 перечислена на счет этой организации № LV63KBRB11112159921001, открытый в Trasta Komercbanka Riga (Траста Комерцбанка Рига), расположенному по адресу: Palasta iela 1, Riga LV-1050, Latvija (Паласта иела 1, Рига LV-1050, Латвийская Республика).

Переход денежных средств на счет Vermenda Holdings Limited в Trasta Komercbanka Riga, руководители организованной группы 1 и 2 установленные лица получили реальную возможность распоряжаться ими по своему усмотрению, скрыв путем многочисленных финансовых операций истинное предназначение кредита в размере 600 000 000 руб., выданного ООО «Инжиниринг-Роялти».

Таким образом, членами организованной группы, под руководством 1 и 2 установленных лиц, в которую входил Алексеев Н.В., в апреле 2015 года путем выдачи кредита подконтрольному ООО «Инжиниринг-Роялти» было присвоено 600 000 000 руб, принадлежащих Банку, тем самым причинен этой кредитной организации ущерб на указанную сумму.

В период предшествующий 16.05.2015, 3 установленное лицо, действующим во исполнение разработанного 1 и 2 установленными лицами плана хищения, в качестве подставной организации, на которую должен был быть выдан кредит Банком, было определено ООО «Восток-Карго-Плюс», единственным участником и генеральным директором которого с момента

выданного ООО «Восток-Карго-Плюс».

Таким образом, членами организованной группы, под руководством 1 и 2 установленных лиц, в которую входили Алексеев Н.В., в мае 2015 года путем выдачи кредита подконтрольному ООО «Восток-Карго-Плюс» было присвоено 365 000 000 руб, принадлежащих Банку, тем самым причинен этой кредитной организации ущерб на указанную сумму.

Впоследствии, 06.08.2015, в день отзыва у Банка лицензии на право осуществления банковских операций, вице- президент по финансам – заместитель Председателя Правления Банка 5 установленное лицо – и генеральный директор ООО «Восток-Карго-Плюс» Данукин А.В, с целью сокрытия совершенного у банка хищения денежных средств в особо крупном размере и придания видимости законности совершенных мнимых сделок, заключили Соглашение об отступном от 06.08.2015, согласно которому обязательства ООО «Восток-Карго-Плюс» по Договору об условиях среднесрочного кредитования от 15.05.2015 № 071-810/15кю были прекращены, а в качестве исполнителя обязательств по выплате кредитных денежных средств Банк принял право требования к ООО «Октом», не осуществляющему какой-либо фактической деятельности.

В период предшествующий 23.06.2015, членами организованной группы план хищения денежных средств Банка был существенно изменен. С целью продолжения реализации преступного замысла, направленного на присвоение денежных средств Банка, 3 установленным лицом, действующим под руководством 1 и 2 установленных лиц, к совершению преступления в период предшествующий 23.06.2015 в гор. Москве, точное время и место следствием не установлены, в качестве пособника привлечен фактический руководитель ряда компаний, в том числе ООО «Центр Торговли», ООО «НьюХауТрейд», ООО «Финансовый центр «Эскада» и ООО «ПромаГрейд» Папахин О.Е., который согласился выступить в качестве пособника за денежное вознаграждение и соодействовать совершению преступления путем предоставления им ООО «Центр Торговли» и ООО «НьюХауТрейд» для оформления им фиктивного кредита и совершения фиктивных операций по перечислению денежных средств на расчетные счета подконтрольных членам организованной группы ООО «ПК-Технология» и ООО «Саприс».

В свою очередь Папахин О.Е., в указанный период времени в гор. Москве, точное время и место следствием не установлены, в качестве пособника привлек подконтрольных ему подставных генеральных директоров ООО «Центр Торговли» и ООО «НьюХауТрейд», Штапину Л.В. и Кравцову О.В., соответственно.

Согласно разработанной схеме, вышеуказанные общества должны были выступить фиктивными заёмщиками Банка, и после получения денежных средств в виде кредита, провела операции с ценными бумагами, перечислить их на счета подконтрольных членам организованной группы ООО «Саприс» и ООО «ПК Технология». При этом Папахин О.Е. обеспечил предоставление всех документов, необходимых для формирования кредитного досье, подписание договоров и перечисление денежных средств, организовал подписание необходимых документов со стороны подконтрольных ему лиц.

учреждения (17.12.2012) являлся подконтрольный чл... организованной группы Диакуни А.В.

При этом, Диакуни А.В., действуя из корыстной заинтересованности, не являясь участником организованной группы, предоставив возглавляемое им общество, согласился оказать содействие членам организованной группы в совершении хищения путем присвоения денежных средств Банка предоставлением информации и устранением препятствий его совершения.

Продолжая реализованных преступный умысел, направленный на хищение денежных средств Банка, в особо крупном размере, участник организованной группы – начальник департамента корпоративных финансов Банка Алексеев Н.В., в период предшествующий 16.05.2015, точное время следствием не установлено, находясь на своем рабочем месте, расположенном по адресу: г. Москва, ул. Бутырская, д. 62, действуя от имени Банка, на основании доверенности № 120/2 от 17.02.2015, выданной одним из руководителей организованной группы – председателем правления Банка 2 установленным лицом, согласно которой ему делегированы полномочия по заключению кредитных договоров и распоряжению денежными средствами Банка, то есть управленческие функции административно-хозяйственного характера по распоряжению вверенного ему денежными средствами Банка, выполняя указание руководителей организованной группы 1 и 2 установленных лиц, действуя умышленно и согласованно с другими членами организованной группы, используя свое служебное положение, подписал от имени Банка Договор об условиях среднесрочного кредитования от 15.05.2015 № 071-810/15зс с ООО «Восток-Карго-Плюс» в лице генерального директора общества Диакуни А.В., согласно которого Банк обязуется предоставить указанному обществу кредит в рамках открываемых кредитных линий с максимальным размером лимита задолженности в размере 500 000 000 руб.

При этом, Диакуни А.В. осознавал, что цель получения кредита является заведомо ложной, а получение кредита является способом хищения денежных средств Банка, в вышеуказанный период времени, находясь в неустановленном месте гор. Москвы, подписал от имени возглавляемого им общества вышеуказанный Договор об условиях среднесрочного кредитования от 15.05.2015 № 071-810/15зс.

18.05.2015 и 19.05.2015 во исполнение вышеуказанного Договора, согласно представленной заявки от имени Диакуни А.В., согласно мемориальных ордеров от 18.05.2015 № 1019906802 и от 19.05.2015 № 1019915598 денежные средства в размере 365 000 000 руб. перечислены со судного счета ООО «Восток-Карго-Плюс» № 45205810500100107477 на расчётный счет ООО «Восток-Карго-Плюс» № 40702810700000107477, открытые в Банке, расположенном по адресу: гор. Москва, ул. Пудовкина, д. 3.

18.05.2015 и 19.05.2015, после поступления похищенных денежных средств на указанный расчетный счет Общества, Диакуни А.В. продолжая выполнять отведённую ему роль в совершении преступления, оказывая содействие его совершению предоставлением информации и устранением препятствий, списал денежные средства, фактически полученные в виде кредита от Банка в размере 365 000 000 руб., на основании платёжных поручений от 18.05.2015 № 1054 и от 19.05.2015 № 1057 под видом предоставления фиктивного займа по договорам процентных займов от 15.05.2015 № 15/05-И и от 18.05.2015 № 18/05-И на расчётный счет подконтрольной членам организованной группы и не ведущему реальной хозяйственной деятельности ООО «Исток» № 40702810900000100389, открытый в том же Банке.

18.05.2015 и 19.05.2015, после перечисления денежных средств Банка на расчётный счет ООО «Исток», Янкной О.М., неосведомлённой о преступных намерениях членов организованной группы, действующей по указанию о установленного лица, часть похищенных денежных средств в размере 364 700 000 руб. платежными поручениями от 18.05.2015 № 39 и от 19.05.2015 № 40 под видом предоставления займа по фиктивным договорам процентных займов от 18.05.2015 № 18/05 и от 19.05.2015 № 19/05, подписанных со стороны ООО «Коллекторское агентство «Лайф» 7 установленным лицом, перечислены на расчётный счет этой организации № 40702810800020113239, открытый в том же Банке.

18.05.2015 и 19.05.2015, после поступления похищенных у Банка денежных средств на расчётный счет ООО «Коллекторское агентство «Лайф», той же Янкной О.М., платежными поручениями № 199 от 18.05.2015 и № 120 от 19.05.2015 часть похищенных у Банка денежных средств в размере 347 000 000 руб. под видом частичного погашения основного долга по фиктивным договорам займа от 29.01.2015 № 2901-15 и от 28.04.2014 № 2804 перечислена на расчётный счет подконтрольной членам организованной группы и не ведущего реальной хозяйственной деятельности компании Vermenda Holdings Limited № 40807810900010030608, открытый в том же Банке.

Затем, 18.05.2015 и 19.05.2015 часть из похищенных денежных средств в размере 346 958 345 руб., неустановленными следствием лицами, осуществляющими управление расчетным счетом Vermenda Holdings Limited № 40807810900010030608, конвертированы в доллары США с одновременным зачислением на валютный счет компании-нерезидента Vermenda Holdings Limited № 40807840200010030608 денежных средств в размере 7 014 000 долларов США, и в числе прочих денежных средств в размере 7 600 000 долларов США неустановленными следствием лицами на основании платежных поручений от 18.05.2015 № 278 и от 19.05.2015 № 279 перечислены на счет этой организации № LV63KBBR11121592100013, открытый в Trasta Komercbanka Riga (Траста Комерцбанка Рига), расположенном по адресу: Palasta iela 1, Riga LV-1050, Latvija (Паласта иела 1, Рига LV-1050, Латвийская Республика).

Перевод денежных средств на счет Vermenda Holdings Limited в Trasta Komercbanka Riga, руководители организованной группы 1 и 2 установленные лица получили реальную возможность распоряжаться ими по своему усмотрению, скрыв путем многочисленных финансовых операций истинное предназначение кредита в размере 365 000 000 руб.,