# EXHIBIT 21

1

Criminal Case No. 1-252/17

**SENTENCE**

In the Name of the Russian Federation

Moscow     May 25, 2017

Ostankinskiy District Court of Moscow, consisting of Presiding Judge O.A. Sushkova in the presence of Court Secretary A.A. Ismakov, with the following persons participating:

public prosecutor - Senior Prosecutor of the Second Department of Directorate of Public Prosecutors of Main Criminal and Judicial Directorate of the Office of the Prosecutor General of the Russian Federation E.A. Guseva - representative of the injured party Probusinessbank CJSB OJSC (OAO AKB), attorney M.A. Yakonova, who presented its lawyer ID card No. 16030 and order No. 4 dd. May 15, 2017,

defendant M.M. Krylova and her defence attorney - A.V. Sapronov, who presented its lawyer ID card No. 8599 and order No. 17-496 dd. May 11, 2017,

having considered in the open court session materials of the criminal case initiated against

Marina Mikhailovna Krylova, born on March 17, 1973 in Moscow, having citizenship of the Russian Federation and higher education, being a widow, not having any infant and under-age dependants, working at Backston LLC (OOO) as Deputy CEO, registered and residing at: Moscow, Nizhnaya Pervomaiskaya st., h. 33. flat 13, having no previous criminal record, being accused of committing a crime specified in Part 5 Article 33, Part 4 Article 160 of the Criminal Code of the Russian Federation,

found the following:

M.M. Krylova aided and abetted appropriation, that is embezzlement, of the other's property entrusted to the accused committed by a person who used its official position, by an organized group in an especially large amount.

For instance, in September 2014, but not later than 15.09.2014, in Moscow (the exact date and location have not been identified), M.M. Krylova entered into an organized group created by the President of Probusinessbank Commercial Joint-Stock Bank Open Joint-Stock Company (hereinafter, Probusinessbank CJSB, the Bank), that is the first identified person, and the Chairman of the Bank's Management Board, that is the second identified person, in order to embezzle the entrusted property - the Bank's monetary funds - in an especially large amount.

Probusinessbank CJSB, Registered Office: Moscow,

Pudovkin st., h.3, Primary State Registration Number (OGRN) 1027700508978, founded on 25.11.1992 and registered in the Book for State Registration of Credit Institutions of the Bank of Russia on 07.07.1993, correspondent account No. 30101810600000000986 opened with the Main Branch of the Bank of Russia for the Central Federal District of Moscow (hereinafter, the MB of the BoR for the Central Federal District of Moscow), BIC 044525986, Taxpayer Identification Number (INN) 7729086087, General Banking Licence No. 2412 dd. 13.08.2012 issued by the Bank of

Russia.

In accordance with Article 1 of Federal Law No. 395-1 dd. 02.12.1990 (On Banks and Banking Activity), bank is a credit organization that has an exclusive right to carry out the following banking activities in combination: taking monetary funds from individuals and legal entities to deposits, investing these funds on its behalf and at its own expense on conditions of repayment, interest payment, and maturity, opening and maintaining accounts of individuals and legal entities.

In accordance with the Charter of the abovestated credit institution approved by the General Meeting on 28.06.2013, the Bank is a credit organization incorporated as open joint-stock company. The purpose of the Bank's activity is making profit. The Bank can take monetary funds of individuals and legal entities to deposits and invest the attracted funds on its behalf and at its own expense. The Bank has separate assets recognized on its own books, including assets transferred to the Bank by the shareholders as consideration for shares.

By 2014, the first and the second identified person owned controlling interest of more than 50%; and they, as individuals who had shares of Alivikt Holding Limited, a Cyprus-based company, in their ownership, secured the right to perform strategic and operative management of Probusinessbank CJSB and other affiliated legal entities, which were a part of the financial group.

The controlling interest allowed them to hold key managerial positions at the Bank.

For instance, based on the Charter, the first identified person organized the work of the Board of Directors and chaired the General Meeting. At the same time, since the Bank's foundation and based on the resolution of the Board, which he was in charge of, he was the President of Probusinessbank CJSB. This helped him to identify priority activities of the Bank. The second identified person who was the Chairman of the Management Board and the Bank's Vice-president undertook to be in charge of the Bank's current activities.

In accordance with the Charter of the abovestated credit institution approved by the General Meeting on 28.06.2013, the Chairman of the Management Board is in charge of the Bank's current activity, acts on behalf of the Bank without powers of attorney (PoA), enters into transactions on behalf of the Bank, disposes of the Bank's property and assets, issues and sings PoA's on behalf of the Bank at its own discretion in accordance with current legislation and the Charter, etc. Therefore, the second identified person was the person performing managerial functions in Probusinessbank CJSB and having organizational and management as well as administrative and economic functions. Thus, the Bank's property and assets had been entrusted to him.

The first and the second identified person, who fully controlled the Bank's activity, created an organized group under their leadership in order to embezzle via

appropriation the Bank's monetary funds entrusted to the second identified person starting from September 2014 in Moscow (the exact date and location have not been identified). Within the stated period, the organized group under their overall leadership included the third, the fourth, the fifth identified persons, the sixth identified person, who was convicted by Ostankinskiy District Court of Moscow on April 26, 2017, the seventh identified person, M.M. Krylova, the eighth identified person, and other unidentified persons, each with his/her own role in the group.

In order to attain the stated goal, members of the organized group under the leadership of the second and the first identified person developed a scheme to embezzle the funds and allocated responsibilities among the parties to the crime (criminal participants):

- the first identified person was the principal shareholder of Probusinessbank CJSB with 40.15% of shareholding interest (as of 31.12.2014). He had been repeatedly re-elected as the President of the Bank by the Board of Directors, including in accordance with the minutes of the Board's meeting No. 10 dd. 25.07.2014. In fact, he was engaged in strategic management of the Bank's activity. The first identified person's task was, together with the second identified person, to estimate the amount of funds to be embezzled, specify the method of embezzlement, give orders to transfer the funds to the settlement accounts of the straw (false/fake) borrowers, exercise overall control over the all members of the organized group when committing the crime, and use the embezzled funds at his own discretion, including the use thereof for the benefit of the members outside the Russian Federation.

- the second identified person was the principal shareholder of Probusinessbank CJSB with 11.05% of shareholding interest (as of 31.12.2014). He was appointed as the Chairman of the Management Board according to the Bank's Order No. 181 -ЬC dd. 02.06.1993. At the same time, he had been the First Vice-president of the Bank and, in accordance with the Charter, had managerial powers and authorities over the Bank's activity as well as over the entry into transaction on behalf of the Bank, disposal of the Bank's assets and property. The second identified person's task was, together with the first identified person, to estimate the amount of funds to be embezzled, specify the method of embezzlement, sign a resolution to grant a loan to IvSpetsGarant Innovative Construction Company Limited Liability Company (OOO) (hereinafter, IvSpetsGarant), issue PoAs to his fiduciaries and those of the first identified person, using which the members of the organized group were supposed to sign loan agreements and other accompanying documents; give orders to transfer the funds to the settlement accounts of the straw (false/fake) borrowers, exercise overall control together with the first identified person over the all members of the organized group when committing the crime, and use the embezzled funds at his own discretion;

The third identified person was appointed as the Vice-president for corporate finances according to the Bank's Order No. 5330-к dd. 19.10.2011. The third identified person's task was to develop the embezzlement scheme, exercise control over the employees of the Department for Corporate Finances subordinated to him, who chose straw borrowers from the list of the companies controlled by the members of the

organized group as well as other companies in order to use them in their embezzlement scheme that was disguised as provision of loans (lending); give orders to the subordinated employees to produce credit reports in order to give a veneer of legality to the provision of credit funds and to give an order to the eighth identified person subordinated to him to transfer the embezzled funds to the settlement accounts of the controlled legal entities and accumulate the funds on the accounts of Personnel+ LLC (OOO) and Life Collection Agency LLC (OOO) for its further transfer to Vermenda Holdings Limited, a Cyprus-based company; pay for illegal services rendered by O.E. Papakhin, who made available legal entities controlled by him for fictitious lending;

The fourth identified person was appointed as the Vice-president for development of the Bank's corporate business according to the Bank's Order No. 4846-к dd. 03.12.2007. He was a fiduciary of the second identified person. The fourth identified person's task was to sign knowingly unenforceable, irrecoverable, and unsecured medium-term lending contract and accompanying documents with the straw borrower controlled by the members, that is IvSpetsGarant, on behalf of the Bank, acting by virtue of the PoA that authorised him to dispose of the Bank's property, based on the instructions received from the leaders of the organized group, using his official position in order to embezzle the funds;

The fifth identified person was appointed as the Vice-president for finances and Deputy Chairman of the Management Board according to the Bank's Order No. 564-к dd. 23.07.2001. The fifth identified person's task was to sign knowingly unenforceable, irrecoverable, and unsecured medium-term lending contract and accompanying documents with the straw borrower, that is Tsentr Torgovli LLC (OOO), on behalf of the Bank, acting by virtue of the PoA that authorised him to dispose of the Bank's property, based on the instructions received from the leaders of the organized group, using his official position in order to embezzle the funds;

The sixth identified person was appointed as the Head of the Department for Corporate Finances according to the Bank's Order No. 1130-к dd. 16.02.2015. The sixth identified person's task was to sign knowingly unenforceable, irrecoverable, and unsecured medium-term lending contract and accompanying documents with the straw borrowers, that is Engineering-Royalty LLC (OOO), Vostok-Cargo-Plus LLC (OOO), and NewHowTrade LLC (OOO), on behalf of the Bank, acting by virtue of the PoA that authorised him to dispose of the Bank's property, based on the instructions received from the leaders of the organized group, using his official position in order to embezzle the funds;

The eighth identified person was appointed as the Head of the Directorate for Project Financing of the Department for Corporate Finances according to the Bank's Order No. 3711-к dd. 01.07.2014. The eighth identified person's task was, based on the instructions received from the third identified person, to monitor financial standing of the companies controlled by and affiliated to the members of the organized group, obtain information about the arrival of funds, that were embezzled via provision of loans to the straw persons, to the specified controlled companies, give orders to transfer the funds to, and accumulate them on, the accounts of Life Collection Agency and Vermenda

Holdings Limited, and transfer a portion of the monetary funds as a remuneration for making available Tsentr Torgovli and NewHowTrade as the straw borrowers to O.E. Papakhin, who provided assistance in embezzling the funds to the members of the organized group.

The seventh identified person was the CEO of Life Collection Agency. This person, having an advance knowledge about the fact that the members of the organized group under the leadership of the first and the second identified person had been embezzling the Bank's funds via appropriation, made available an account in Life Collection Agency for accumulation of the embezzled funds disguised as sham credit/repayment contracts. Then, the embezzled funds had been transferred to the settlement account of Vermenda Holdings Limited, a Cyprus-based company, controlled by the members of the organized group. The seventh identified person's task was also to sign sham credit contracts, which were used to transfer the embezzled funds between shell companies and give a veneer of legality to the transactions, on a regular basis and as necessary;

M.M. Krylova was appointed as the Head of the Shareholders and Subsidiaries Cooperation Directorate according to the Bank's Order No. 6492-к dd. 19.11.2008. She was in charge of purposefully created Balance Accounting Centre LLC (OOO). Employees of this company, that is D.A. Samoylenko and O.M. Yachina, who had no knowledge about the criminal intent of the accomplices in the crime, prepared documents that supported settlements between the companies used by the members of the organized group as straw borrowers and lenders in order to transfer the funds. The employees also prepared accounting statements and tax reporting of the companies in order to submit them to the supervisory authorities of the Russian Federation and managed accounts of the controlled legal entities.

Other unidentified persons' task was to commit other actions to ensure the organized group's activity when committing the crime and provide other assistance to the accomplices when committing the crime. This included providing information, instruments of the crime, eliminating obstacles that prevented commission thereof, covering up the crime, and making available legal entities controlled by them, both residents and non-residents of the Russian Federation, to transfer the embezzled funds to the accounts thereof and distribute them between the accomplices.

This organized group, members of which joined together in advance to embezzle the funds via appropriation, was sustainable due to the fact that its members had long known each other and had permanent connections between each other. This was also due to their working relations, commonality of the mercenary interest, strict segregation of duties and functions both in anticipation of the embezzlement and when realizing their criminal intent, and thoroughly developed embezzlement scheme.

Furthermore, members of the organized group engaged CEO of IvSpetsGarant I.P. Polikarpov, CEO of Engineering-Royalty A.V. Simakov, CEO of Vostok-Cargo-Plus A.V. Danukin, actual head of Aimak companies group O.E. Papakhin, CEO of Tsentr Torgovli L.B. Shpagina, CEO of NewHowTrade O.V. Kravchenko, and other unidentified persons as accessories to the crime as necessary and from time to time,

from September 2014 to August 2015 in Moscow and Ivanovo of Ivanovo Region (the more exact date and location have not been identified).

In September 2014 (the exact date has not been identified) in Moscow, members of the organized group under the leadership of the second and the first identified person developed an action plan in order to embezzle the Bank's funds in an especially large amount via appropriation, acting out of mercenary interest and with purpose of personal enrichment.

The third identified person, using human resources of the Bank and acting in accordance with the instructions received from the first and the second identified person, used previously established legal entities, which did not engage in any real economic activity and were fully controlled by the members of the organized group. The Bank's employees and other persons had been appointed as directors of these entities receiving a nominal remuneration of RUB 10,000 - 20,000 per month. These legal entities included: Engineering-Royalty, Elso, Personnel +, Alliance, Iston, PC-Technologies, Sunrise.

Members of the organized group also used legal entities affiliated to the Bank and controlled by the Bank's managers, that is IvSpetsGarant, Probusiness-Development, Life Collection Agency, when realizing their criminal intent in order to embezzle the funds.

Within the stated period of time and in order to avoid suspicion that may be raised by the Bank of Russia, members of the organized group used Tsentr Torgovli, NewHowTrade, Eskada Financial Centre, ProgmaTrade controlled by O.E. Papakhin, who agreed to act as an accessory to the crime for a monetary remuneration and contribute to the commission of the crime by making available Tsentr Torgovli and NewHowTrade for receiving credit funds intended for embezzlement, to enter into sham financial transactions using the stated funds and transfer them to the settlement accounts of PC-Technologies and Sunrise.

Settlement accounts of the stated legal entities used to transfer the funds were opened with Probusinessbank CJSB. Except for NewHowTrade, all other entities, that is Tsentr Torgovli, Eskada Financial Centre, and ProgmaTrade, had been managed by the Bank's unidentified employees, as well as D.A. Samoylenko and O.M. Yachina in the offices located at: Moscow, Dobrolyubov st., h. 3, bld. 1

The general idea of the crime was to commit wilful acts in order to provide knowingly irrecoverable, unsecured by pledge loans in especially large amounts to the controlled companies, transfer the credit funds to the loan and settlement accounts of the stated companies, and then transfer the funds disguised as payments in sham transactions in order to cover up the committed crime to the accounts of the controlled legal entities.

Then, the embezzled funds in RUB had been fully converted in USD and transferred to the settlement account of Vermenda Holdings Limited controlled by the members of the organized group, not engaged in any real economic activity, non-resident of the Russian Federation. Vermenda Holdings Limited is located at: Griva Digeni, P.C. 3101, Limassol, Cyprus. The settlement account was opened with Trasta

Komercbanka Riga, a non-resident credit organization, located at: Palasta iela 1, Riga LV-1050, Latvija.

In order to give a veneer of legality to the transactions, provision of loans had been documented and had been legal in its nature. In fact, however, the documents contained false information, and parties to the crime committed all the actions in order to realize their criminal intent, that is to embezzle the Bank's funds in an especially large amount via appropriation.

When entering into medium-term lending contracts, parties to such contracts were supposed to act in accordance with transaction rules and based on Article 10 of the Civil Code of the Russian Federation, which provides for reasonable actions and good faith of the parties participating in civil-law relations. Thus, persons singing the medium-term lending contracts, with Probusinessbank's CJSB funds as the subject matter, were obliged to act in good faith and do not undertake any actions related to fraud, including misstatements about the intended use of a loan.

Therefore, the second and the first identified person, who were in charge of the organized group, and the third, the fourth, the fifth, the sixth, the seventh identified persons, M.M. Krylova, the eighth identified person, and other members of the organized group acting under the leadership of the first and the second person committed their actions in order to realize their joint intent to seize the funds without any compensation and to inflict harm on the other person (Probusiness CJSB) in violation of Article 10 of the Civil Code (Limits of Exercise of Civil-law Rights). This Article prohibits any actions of individuals and legal entities committed only in order to inflict harm on another person and abuse of rights in other forms. Therefore, the stated seizure of funds is illegal.

The fourth, the fifth, the sixth identified persons, acting within their roles in the organized group entered into medium-term lending contracts in order to embezzle the funds and give a veneer of civil-law relations with the purpose to follow the illegal instructions received from the leaders of the organized group, that is the first identified person and the second identified person. Thus, they wilfully violated Article 1 of Federal Law No. 395-1 dd. 02.12.1990 (On Banks and Banking Activity). Under this Law, a credit organisation shall invest the funds attracted from individuals and legal entities on its behalf and at its own expense on conditions of repayment, interest payment, and maturity.

This allowed the members of the organized group acting on behalf of the Bank but against its interests to illegally, without compensation, irrecoverably convert the funds to their own use by transferring the funds to the ownership of the shell companies controlled by the accomplices and, therefore, embezzle the funds via appropriation.

For instance, before 16.09.2014 (the more exact date has not been identified), the fourth identified person, being at its workplace located at: Moscow, Volgogradskiy avenue, h. 43, bld. 3, acting on behalf of the Bank by virtue of PoA No. 610/1 dd. 16.07.2014, carrying out the instructions of the group's leaders, that is the first identified person and the second identified person, acting wilfully and in cooperation with other members of the organized group, using his official position, signed Medium-Term

Lending Contract No.211-810/14ю dd. 15.09.2014 with IvSpetsGarant controlled by the members of the group and represented by CEO I.P. Polikarpov. PoA No. 610/1 was issued by one the leaders of the group, that is the Chairman of the Management Board (the second identified person); under this PoA, the fourth identified person receives authorities to enter into credit contracts and dispose of the Bank's funds, that is to perform managerial functions of administrative and economic nature related to disposal of the Bank's funds entrusted to him. Under Contract No.211-810/14ю, the Bank undertakes to grant a loan to IvSpetsGarant through the lines of credit with maximum credit limit of RUB 500,000,000.

I.P. Polikarpov contributed to the commission of the crime by providing information and eliminating obstacles that might have prevented such commission. He was not a part of the organized group. At the same time, he, being at his workplace located at: Ivanovo, Sheremetevskiy avenue. h. 153A, singed the stated Medium-Term Lending Contract No. № 211-810/14ю dd. 15.09.2014. He realized that the company headed by him would not direct the obtained credit funds to its economic activity, Rather, these credit funds transferred to his company would be embezzled by the members of the organized group via appropriation.

On 15.09.2014, in pursuance of the Contract and in accordance with the request submitted on behalf of I.P. Polikarpov, as well as with Transaction Memo No. 1018062751 dd. 15.09.2014, monetary funds in the amount of RUB 280,000,000 had been transferred from loan account of IvSpetsGarant No. 45207810600000127604 to the settlement account of this company No. 40702810308180027604 opened with the Bank located at: Moscow, Pudovkin st., h. 3.

At the same day after the funds had been credited to settlement account of IvSpetsGarant No. 40702810308180027604 opened with the Bank, chief accountant of the company E.S. Stulova, who had no knowledge about the criminal intent of the members of the organized group, having received instructions from unidentified employees of Probusiness-Development via e-mail and in coordination with I.P. Polikarpov, transferred the abovestated funds in several payments in order to give a veneer of legality to the flow of credit funds of RUB 280,000,000. The funds had been transferred among other monetary funds:

RUB 24,157,808.21 as repayment of interest and principal amount under previously executed sham loan agreements No. 26/08/14 dd. 26.08.2014 and No. 14/07/14 dd. 14.07.2014, and payment orders No. 751, 752, 763, 764 dd. 15.09.2014 to the settlement account (No. 40702810300000102610) of Personnel+ controlled by the members of the organized group and not engaged in any real economic activity, opened with the same Bank;

RUB 34,471,698.63 as repayment of interest and principal amount under previously executed sham loan agreements No. 30/06/14 dd. 30.06.2014 and No. 31/07/14 dd. 31.07.2014, and payment orders No. 747, 748, 749, 750, 757, 758, 759, 760, 761, 762 dd. 15.09.2014 to the settlement account (No. 40702810300110117621) of Life Collection Agency controlled by a member of the organized group S.V. Kalachev, opened with the same Bank;

RUB 222,016,835.04 as a repayment under previously executed sham agreement dd. 30.06.2012 on termination of Investment Contract No. ИЛ-7/28-М-08 dd. 28.05.2008, payment orders No. 765, 766 dd. 15.09. 2014 to settlement account No. 40702810300000021377 of Probusiness-Development affiliated to the Bank, opened with the same Bank.

At the same day after the funds had been credited to the settlement account of Probusiness-Development, unidentified employees of the Bank, who had the access to the Bank-Client system, continued realizing the criminal intent of the members of the organized group. Using payment orders No. 853, 852, 856, 857, 861 dd. 15.09.2014, they transferred a portion of the embezzled funds in the amount of RUB 221,370,994.73 as repayment of principal amount and accrued interest under previously executed sham interest-bearing loan agreements No. 16/11/11-ПД dd. 16.11.2011, No. 30/11/11-ПД dd. 30.11.2011, and No. 30/11/2013-ПД dd. 30.12.2013 to the settlement account (No. 40702810800020115239) of ELSO controlled by the members of the organized group and not engaged in any real economic activity opened with the same Bank;

Then, D.A. Samoylenko, who had no knowledge about the criminal intent of the members of the organized group, based on the instructions received from unidentified persons, in coordination with M.M. Krylova, and using Payment Order No. 321 dd. 16.09.2014, transferred a portion of the embezzled funds in the amount of RUB 221,000,000 as repayment of principal amount and interest under previously executed sham Interest-Bearing Loan Agreement No. 07/07/14 dd. 07.07.2014 from the abovestated settlement account of ELSO to settlement account No. 40702810300110117621 of Life Collection Agency controlled by a member of the organized group S.V. Kalachev, opened with the same Bank;

On 16.09.2014, that is on the next day after the Bank's funds had been transferred to the settlement account of Personnel+, D.A. Samoylenko, following the instructions received from unidentified persons, acting in coordination with a member of the organized group M.M. Krylova, and using Payment Order No. 133 dd. 16.09.2014, transferred a portion of the embezzled funds in the amount of RUB 24,157,808.21. The funds had been transferred among the monetary funds in the amount of RUB 499,500,000 as a loan under sham Interest-Bearing Loan Agreement No. 16/09/14-КА dd. 16.09.2014 signed by the seventh identified person. The loan had been granted to Life Collection Agency and transferred to settlement account No. 40702810300110117621 of this organization opened with the same Bank.

On 16.09.2014, that is on the same day after the funds had been transferred to the settlement account of Life Collection Agency, D.A. Samoylenko, using Payment Order No. 1563 dd. 16.09.2014, transferred the embezzled funds in the amount of RUB 280,000,000. The funds had been transferred among the monetary funds in the amount of RUB 608,000,000 as repayment of principal amount under sham Credit Contract No. 30-08/13 dd. 30.08.2013 previously executed by the seventh identified person. The funds had been transferred to settlement account No. 40807810900010030608 of Vermenda Holdings Limited controlled by the members of the organized group and not engaged in any real economic activity, opened with the same Bank.

Then, on 18.09.2014, the embezzled funds in the amount of RUB 280,000,000 as a portion of the funds in the amount of 578,655,792 had been converted in USD by unidentified persons controlling settlement account No. 40807810900010030608 of Vermenda Holdings Limited. Simultaneously, USD 15,080,000 had been transferred to foreign currency account No. 40807840200010030608 of Vermenda Holdings Limited, a non-resident company. A portion of these funds, USD 13,000,000, had been transferred based on Payment Order No. 217 dd. 18.09.2014 to account No. LV63KBRB1111215921001 of this company opened with Trasta Komercbanka Riga located at: Palasta iela 1, Riga LV-1050, Latvija, by unidentified persons.

After the funds had been transferred to the account of Vermenda Holdings Limited opened with Trasta Komercbanka Riga and having disguised, through multiple financial transactions, the real intended purpose of the loan in the amount of RUB 280,000,000 granted to IvSpetsGarant, the leaders of the organized group, that is the first identified person and the second identified person, had a real opportunity to manage the funds at their own discretion.

Therefore, the members of the organized group (including M.M, Krylova) under the leadership of the first and the second identified person appropriated RUB 280,000,000 of the Bank's funds by providing a loan to IvSpetsGarant controlled by the members in September 2014. Thus, the credit organization sustained damages in the amount of RUB 280,000,000.

Before 10.04.2015, the third identified person chose Engineering-Royalty as a shell company that was supposed to receive a loan from the Bank in order to implement the embezzlement plan developed by the first and the second identified person. Engineering-Royalty did not engage in any economic activity. Starting from 14.10.2014, the only shareholder and CEO of the company was a former employee of the Bank A.V. Simakov, who previously was a senior specialist for bad loans of Moscow Regional Directorate of Probusinessbank CJSB.

A.V. Simakov acted out of mercenary interest, was not a member of the organized group, and represented the company headed by him. At the same time, by supplying information and eliminating obstacles that might have prevented the embezzlement, he agreed to provide assistance to the members of the group in order for them to embezzle the Bank's funds via appropriation.

Continuing to realize the criminal intent to embezzle the Bank's funds in an especially large amount, a member of the organized group, that is the Head of the Department for Corporate Finances (the sixth identified person), being at his workplace at: Moscow, Butyrskaya st., h.62, acting on behalf of the Bank and by virtue of PoA No. 120/2 dd. 17.02.2015, carrying out the instructions of the group's leaders, that is the first identified person and the second identified person, acting wilfully and in cooperation with other members of the organized group, using his official position, signed Medium-Term Lending Contract No. № 044-810/15ro dd. 17.02.2015 on behalf of the Bank with Engineering Royalty controlled by the members of the organized group and represented by CEO A.V. Simakov before 10.04.2015 (the exact date has not been identified). PoA No. 120/2 was issued by one of the leaders of the organized group, that is the Chairman

of the Management Board (the second identified person); under this PoA, the sixth identified person receives authorities to enter into credit contracts and dispose of the Bank's funds, that is to perform managerial functions of administrative and economic nature related to disposal of the Bank's funds entrusted to him. Under the Contract No. № 044-810/15ю dd. 09.04.2015, the Bank undertakes to grant a loan to IvSpetsGarant through the lines of credit with maximum credit limit of RUB 1,000,000,000.

A.V. Simakov realized that the purpose of the loan was knowingly false and that the loan provision itself represented an embezzlement method. Within the stated period of time, being near his residential address at: Mosow, Vysokovoltoviy lane, h. 1., bld, 8, he signed Medium-Term Lending Contract No. № 044-810/15ю dd. 09.05.15 on behalf of his company

On 09.04.2015, in pursuance of the Contract and in accordance with the request submitted on behalf of A.V. Simakov, as well as with Transaction Memo No. 1019700947 dd. 09.04.2015, monetary funds in the amount of RUB 600,000,000 had been transferred from loan account of Engineering-Royalty No. 45204810400000135572 to the settlement account of this company No. 40702810900110035572 opened with the Bank located at: Moscow, Pudovkin st., h. 3.

At the same day after the funds had been credited to settlement account of Engineering-Royalty No. 40702810900110035572, O.M. Yachina, who had no knowledge about the criminal intent of the members of the organized group, following the instructions received from the eighth identified person and in coordination with M.M. Krylova, transferred the embezzled funds in the amount of RUB 600,000,000 as a loan under sham Interest-Bearing Loan Agreement No. 09/04/2015 dd. 09.04.2015, using Payment Order No. 09/04/2015 dd.09.04.2015, to the settlement account (No. 40702810500000113328) of Alliance LLC (OOO) controlled by the members of the organized group and not engaged in any real economic activity, opened with the same Bank.

On 09.04.2015, that is on the same day after the Bank's funds had been transferred to the settlement account of Alliance, O.M. Yachina, using Payment Order No. 33 dd. 09.04.2015, transferred the embezzled funds in the amount of RUB 600,000,000 as partial repayment of principal amount under sham Interest-Bearing Loan Agreement No. 29/08-A dd. 29.08.2014 to settlement account No. 40728103000000102610 of Personnel + controlled by the members of the organized group and not engaged in any real economic activity, opened with the same Bank.

On the same day after the funds had been transferred to the settlement account of Life Collection Agency, O.M. Yachina, using Payment Order No. 144dd. 09.04.2015, transferred the embezzled funds in the amount of RUB 600,000,000 as partial repayment of principal amount under previously executed sham Interest-Bearing Loan Agreement No. 0603/15 dd. 06.03.2015 to settlement account No. 40807810900010030608 of Vermenda Holdings Limited controlled by the members of the organized group and not engaged in any real economic activity, opened with the same Bank.

Then, on 09.04.2015 and 13.04.2015, the embezzled funds in the amount of RUB

600,000,000 as a portion of other funds in the amount of 600,069,891.60 had been converted in USD by unidentified persons controlling settlement account No. 40807810900010030608 of Vermenda Holdings Limited.

Simultaneously, USD 11,182,000 had been transferred to foreign currency account No. 40807840200010030608 of Vermenda Holdings Limited, a non-resident company. A portion of these funds, USD 10,000,000, had been transferred based on Payment Order No. 271 dd. 09.04.2015 to account No. LV63KBRB1111215921001 of this company opened with Trasta Komercbanka Riga located at: Palasta iela 1, Riga LV-1050, Latvija, by unidentified persons.

After the funds had been transferred to the account of Vermenda Holdings Limited opened with Trasta Komercbanka Riga and having disguised, through multiple financial transactions, the real intended purpose of the loan in the amount of RUB 600,000,000 granted to Engineering-Royalty, the leaders of the organized group, that is the first identified person and the second identified person, had a real opportunity to manage the funds at their own discretion.

Therefore, the members of the organized group (including M.M. Krylova) under the leadership of the first and the second identified person appropriated RUB 600,000,000 of the Bank's funds by providing a loan to Engineering-Royalty controlled by the members in April 2015. Thus, the credit organization sustained damages in the amount of RUB 600,000,000.

Before 16.05.2015, the third identified person chose Vostok-Cargo-Plus as a shell company that was supposed to receive a loan from the Bank in order to implement the embezzlement plan developed by the first and the second identified person. A.V. Danukin was the only shareholder and CEO of the company as from the date of its incorporation (17.12.2012).

A.V. Danukin acted out mercenary interest, was not a member of the organized group, and represented the company headed by him. At the same time, by supplying information and eliminating obstacles that might have prevented the embezzlement, he agreed to provide assistance to the members of the group in order for them to embezzle the Bank's funds via appropriation.

Continuing to realize the criminal intent to embezzle the Bank's funds in an especially large amount, a member of the organized group, that is the Head of the Department for Corporate Finances (the sixth identified person), being at his workplace at: Moscow, Butyrskaya st., h.62, acting on behalf of the Bank and by virtue of PoA No. 120/2 dd. 17.02.2015, carrying out the instructions of the group's leaders, that is the first identified person and the second identified person, acting wilfully and in cooperation with other members of the organized group, using his official position, signed Medium-Term Lending Contract No. № 071-810/15io dd. 15.02.2015 on behalf of the Bank with Vostok-Cargo-Plus controlled by the members of the organized group and represented by CEO A.V. Danukin before 16.05.2015 (the exact date has not been identified). PoA No. 610/1 was issued by one the leaders of the group, that is the Chairman of the Management Board (the second identified person); under this PoA, the sixth identified person receives authorities to enter into credit contracts and dispose of the Bank's funds,

that is to perform managerial functions of administrative and economic nature related to disposal of the Bank's funds entrusted to him.

Under Contract No. № 071-810/15ю dd. 15.02.2015, the Bank undertakes to grant a loan to Vostok-Cargo-Plus through the lines of credit with maximum credit limit of RUB 500,000,000.

A.V. Danukin realized that the purpose of the loan was knowingly false and that the loan provision itself represented an embezzlement method. Within the stated period of time, being in an unidentified location in Moscow, he signed Medium-Term Lending Contract No. 071-810/15ю dd. 15.05.2015 on behalf of his company.

On 18.05.2015 and 19.05.2015, in pursuance of the Contract and in accordance with the request submitted by A.V. Danukin, as well as with transaction memos No. 1019906802 dd. 18.05.2015 and No. 1019915598 dd. 19.05.2015, monetary funds in the amount of RUB 365,000,000 had been transferred from loan account of Vostok-Cargo-Plus No. 45204810400000135572 to settlement account of Vostok-Cargo-Plus No. 40702810700000107477 opened with the Bank located at: Moscow Pudovkin st., h. 3.

On 18.05.2015 and 19.05.2015, after the embezzled funds had been credited to the settlement account of the company, A.V. Danukin continued to play his part in the crime. He contributed to the commission of the crime by providing information and eliminating obstacles that might have prevented such commission. He transferred the funds that were fictitiously acquired as a loan in the amount of RUB 365,000,000 using payment orders No. 1054 dd. 18.05.2015 and No. 1057 dd. 19.05.2015 and interest-bearing loan agreements No. 15/05-И dd. 15.05.2015 and No. 18/05-И dd. 18.05.2015 to settlement account No. 40702810900000100889 of Iston LLC (OOO) controlled by the members of the organized group and not engaged in any real economic activity, opened with the same Bank.

On 18.05.2015 and 19.05.2015, after the Bank's funds had been transferred to the settlement account of Iston, O.M. Yachina, who had no knowledge about the criminal intent of the members of the organized group, following the instructions received from the eighth identified person, using payment orders No. 39 dd. 18.05.2015 and No. 40 dd. 19.05.2015, transferred a portion of the embezzled funds in the amount of RUB 364,700,000 as a loan under sham interest-bearing loan agreements No. 18/05 dd. 18.05.2015 and No. 19/05 dd. 19.05.2015 signed on behalf of Life Collection Agency by the seventh identified person to settlement account No. 40702810800020115239 of this company controlled by the members of the organized group and not engaged in any real economic activity, opened with the same Bank.

On 18.05.2015 and 19.05.2015, after the embezzled funds had been credited to the settlement account of Life Collection Agency, O.M. Yachina, using payment orders No. 199 dd. 18.05.2015 and No. 120 dd. 19.05.2015, transferred a portion of the embezzled funds in the amount of RUB 347,000,000 as partial repayment of principal amount under sham credit contracts No. 2901-15 dd. 29.01.2015 and No. 2804 dd. 28.04.2014 to settlement account No. 40807810900010030608 of Vermenda Holdings

Limited controlled by the members of the organized group and not engaged in any real economic activity, opened with the same Bank.

Then, on 18.05.2015 and 19.05.2015, a portion of the embezzled funds in the amount of RUB 346,958,345 had been converted in USD by unidentified persons controlling settlement account No. 40807810900010030608 of Vermenda Holdings Limited. Simultaneously, USD 7,014,000 had been transferred to foreign currency account No. 40807840200010030608 of Vermenda Holdings Limited, a non-resident company, and credited among other funds in the amount of USD 7,600,000, based on payment orders No. 278 dd. 18.05.2015 and No. 279 dd. 19.05.2015 to account No. LV63KBRB1111215921001 of this company opened with Trasta Komercbanka Riga located at: Palasta iela 1, Riga LV-1050, Latvija, by unidentified persons.

After the funds had been transferred to the account of Vermenda Holdings Limited opened with Trasta Komercbanka Riga and having disguised, through multiple financial transactions, the real intended purpose of the loan in the amount of RUB 365,000,000 granted to Vostok-Cargo-Plus, the leaders of the organized group, that is the first identified person and the second identified person, had a real opportunity to manage the funds at their own discretion.

Therefore, the members of the organized group (including M.M. Krylova) under the leadership of the first and the second identified person appropriated RUB 365,000,000 of the Bank's funds by providing a loan to Vostok-Cargo-Plus controlled by the members in May 2015. Thus, the credit organization sustained damages in the amount of RUB 365,000,000.

Subsequently, on  06.08.2015, when the Bank's banking license had been revoked, accomplices to the crime, that is Vice-president for finances (Deputy Chairman of the Management Board, the fifth identified person) and CEO of Vostok-Cargo-Plus A.V. Danukin, entered into Accord and Satisfaction Agreement dd. 06.08.2015 in order to cover up the embezzlement in an especially large amount and give a veneer of legality to the sham transactions. Under Accord and Satisfaction Agreement, obligations of Vostok-Cargo-Plus under Medium-Term Lending Contract No. 071-810/15ю dd.15.05.2015 had been fully terminated. Right of claim to Iston, which was not engaged in any real economic activity, was accepted by the Bank, which covered liabilities to repay credit funds.

Before 23.06.2015, members of the organized group had substantially changed the embezzlement plan. Before 23.06.2015, in order to continue to realize the criminal intent aimed at embezzling the Bank's funds, the third identified person, acting under the leadership on the first and the second identified person, engaged the actual head of several companies (including Tsentr Torgovli, NewHowTrade, Eskada Financial Centre, ProgmaTrade), that is O.E. Papakhin, to involve him in committing the crime in Moscow. O.E. Papakhin agreed to act as an accessory for monetary remuneration and contribute to the commission of the crime by making available Tsentr Torgovli and NewHowTrade for taking out a loan by them and making sham transactions in order to credit the funds to the settlement accounts of PC-Technologies and Sunrise controlled by the members of the organized group.

O.E. Papakhin, in his turn, engaged nominee directors of Tsentr Torgovli and NewHowTrade controlled by him, that is L.B. Shpagina, O.V. Kravchenko respectively, as accessories, within the stated period in Moscow (the exact date and location have not been identified).

According to the scheme, the abovestated companies were supposed to act as straw borrowers of the Bank. After they received the credit funds they were supposed to transfer them to the accounts of Sunrise and PC-Technologies controlled by the members of the organized group. O.E. Papakhin provided all the documents necessary to create a credit report, sign contracts, and transfer monetary funds. He also arranged signing of the necessary documents by his companies. A member of the organized group, that is Vice-president for finances (Deputy Chairman of the Management Board, the fifth identified person), continuing to realize the criminal intent to embezzle the Bank's funds in an especially large amount, being at his workplace at: Moscow, Snezhnaya st., h.26, acting on behalf of the Bank and by virtue of PoA No. 92/5 dd. 02.09.2015, carrying out the instructions of the group's leaders, that is the first identified person and the second identified person, acting wilfully and in cooperation with other members of the organized group, using his official position, signed Medium-Term Lending Contract No. 099-810/15ю dd. 22.06.2015 on behalf of the Bank with Tsentr Torgovli made available by O.E. Papakhin and represented by CEO L.B. Shpagina before 23.06.2015 (the exact date has not been identified). PoA No. No. 92/5 was issued by one of the leaders of the organized group, that is the Chairman of the Management Board (the second identified person); under this PoA, the fifth identified person receives authorities to enter into credit contracts and dispose of the Bank's funds, that is to perform managerial functions of administrative and economic nature related to disposal of the Bank's funds entrusted to him. Under the Contract No. 099-810/15ю, the Bank undertakes to grant a loan to the company through the lines of credit with maximum credit limit of RUB 1,000,000,000.

L.B. Shpagina, following the instructions received from O.E. Papakhin, realized that the purpose of the loan was knowingly false and that the loan provision itself represented an embezzlement method. On 22.06.2015, being in the Bank's offices located at: Moscow Volgogradskiy avenue, h. 43, bld. 3, she signed Medium-Term Lending Contract No. № 099-810/15ю dd. 22.06.2015 on behalf of her shell company.

On 23.06.2015, in pursuance of the Contract and in accordance with the request submitted on behalf of L.B. Shpagina, as well as with Transaction Memo No. 1020125374 dd. 23.06.2015, monetary funds in the amount of RUB 698,200,000 had been transferred from loan account of Tsentr Torgovli No. 45205810300200007965 to settlement account of this company No. 40702810400000207965 opened with the Bank located at: Moscow, Pudovkin st., h. 3.

Then, at the same day after the funds had been credited to settlement account No. 40702810400000207965 of Tsentr Torgovli opened with the Bank and upon O.E. Papakhin's instruction, the funds in the amount of RUB 698,200,000 had been transferred by unidentified persons, using Payment Order No. 93 dd. 23.06.2015, as a payment under sham Investment Units Sale and Purchase Agreement No. ПТ-ЦТ/0406

dd. 04.06.2015 to settlement account No. 40702810000000207844 of ProgmaTrade controlled by O.E. Papakhin, opened with the same Bank. On 23.06.2015, after the embezzled funds had been credited to the settlement account of the ProgmaTraded, unidentified persons, using Payment Order No. 85 dd. 23.06.2015, transferred RUB 698,200,000 under sham Interest-Bearing Loan Agreement No. 22-06 dd. 22.06.2015 to the settlement account (No. 40702810200110035573) of PC-Technologies controlled by the members of the organized group and not engaged in any real economic activity, opened with the same Bank.

On 23.06.2015, that is on the same day after the funds had been transferred to the settlement account of PC-Technologies, O.M. Yachina, who had no knowledge about the criminal intent of the members of the organized group, following the instructions received from the eighth identified person, acting in coordination with M.M. Krylova and using Payment Order No. 124 dd. 23.06.2015, transferred the embezzled funds in the amount of RUB 698,200,000 as a loan under sham Interest-Bearing Loan Agreement No. 23-06/2015 dd. 23.06.2015 signed by Life Collection Agency represented by the seventh identified person to settlement account No. 40702810300110117621 of this company controlled by the members of the organized group and not engaged in any real economic activity, opened with the same Bank.

Then, on 24.06.2015, after the funds had been credited to the settlement account of Life Collection Agency, O.M. Yachina, using payment orders No. 1114, 1115, 1116 dd. 24.06.2015 transferred the embezzled funds in the amount of RUB 698,200,000, among other funds in the amount of RUB 700,000,000, as repayment of principal amount under loan agreements No. 06-07/12, 29-01/2011-3, 28-12/1 dd. 06.07.2012, 29.07.2011, 28.12.2012 to settlement account No. 40807810900010030608 of Vermenda Holdings Limited controlled by the members of the organized group and not engaged in any real economic activity, opened with the same Bank.

Then, on 25.06.2015, the embezzled funds in the amount of RUB 698,200,000 as a portion of other funds in the amount of 702,969,800 had been converted in USD by unidentified persons controlling settlement account No. 40807810900010030608 of Vermenda Holdings Limited.

Simultaneously, USD 13,000,000 had been transferred to foreign currency account No. 40807840200010030608 of Vermenda Holdings Limited, a non-resident company. On the same day, these funds had been transferred based on Payment Order No. 281 dd. 25.06.2015 to account No. LV63KBRB1111215921001 of this company opened with Trasta Komercbanka Riga located at: Palasta iela 1, Riga LV-1050, Latvija, by unidentified persons.

After the funds had been transferred to the account of Vermenda Holdings Limited opened with Trasta Komercbanka Riga and having disguised, through multiple financial transactions, the real intended purpose of the loan in the amount of RUB 698,200,000 granted to Tsentr Torgovli, the leaders of the organized group, that is the first identified person and the second identified person, had a real opportunity to manage the funds at their own discretion.

Therefore, the members of the organized group (including M.M. Krylova) under

the leadership of the first and the second identified person embezzled via appropriation RUB 698,200,000 of the Bank's funds by providing a loan to Tsentr Torgovli controlled by the members in June 2015. Thus, the credit organization sustained damages in the amount of RUB 698,200,000.

On 03.08.2015, accomplices to the crime, that is the Head of the Department for Corporate Finances (the sixth identified person) and CEO of Tsentr Torgovli L.B. Spagina, entered into Accord and Satisfaction Agreement dd. 03.08.2015 in order to cover up the embezzlement in an especially large amount and give a veneer of legality to the sham transactions. Under Accord and Satisfaction Agreement, obligations of Tsentr Torgovli under Medium-Term Lending Contract No. 099-810/15ю dd. 22.06.2015 had been fully terminated. Right of claim to PC-Technologies controlled by the parties to the crime, which was not engaged in any real economic activity, was accepted by the Bank, which covered liabilities to repay credit funds.

A member of the organized group, Head of the Department for Corporate Finances (the sixth identified person), being at his workplace at: Moscow, Butyrskaya st., h. 62, acting on behalf of the Bank and by virtue PoA No. 120/2 dd. 17.02.2015, carrying out the instruction of the the group's leaders, that is the first identified person and the second identified person, acting wilfully and in cooperation with other members of the organized group, using his official position, signed Medium-Term Lending Contract No. 137-810/15ю dd. 28.07.2015 on behalf of the Bank with NewHowTrade made available by O.E. Papakhin and represented by CEO O.V. Kravchenko. PoA No. 120/2 was issued by one the leaders of the group, that is the Chairman of the Management Board (the second identified person); under this PoA, the sixth identified person receives authorities to enter into credit contracts and dispose of the Bank's funds, that is to perform managerial functions of administrative and economic nature related to disposal of the Bank's funds

entrusted to him. Under the Contract No. 137-810/15ю, the Bank undertakes to grant a loan to the company through the lines of credit with maximum credit limit of RUB 1,000,000,000.

O.V. Kravchenko, following the instructions received from O.E. Papakhin, realized that the purpose of the loan was knowingly false and that the loan provision itself represented an embezzlement method. On 28.07.2015, O.V. Kravchenko, being in the Bank's offices located at: Moscow, Butyrskaya st., h.62, signed Medium-Term Lending Contract No. 137-810/15ю dd. 28.07.2015 on behalf of her shell company.

On 28.07.2015, in pursuance of the Contract and in accordance with the request submitted on behalf of O.V. Kravchenko, as well as with Transaction Memo No. 1020346334 dd. 28.07.2015, monetary funds in the amount of RUB 499,995,968 had been transferred from loan account of NewHowTrade No. 45205810900200007734 to settlement account of this company No. 40702810000000207734 opened with the Bank located at: Moscow Pudovkin st., h. 3.

On 28.07.2015, after the funds had been credited to settlement account No. 40702810000000207734 of NewHowTrade opened with the Bank and upon O.E. Papakhin's instruction, unidentified persons, using Payment Order No. 9 dd. 28.07.2015,

transferred RUB 499,995,968 disguised as a payment under sham Investment Units Sale and Purchase Agreement No. ЭС- НХТЭ2015-1Б dd. 28.07.2015 to settlement account No. 40702810800000210934 of Eskada Financial Centre controlled by O.E. Papakhin, opened with the same Bank.

On 29.07.2015 and 30.07.2015, after the embezzled funds had been credited to the settlement account of Eskada Financial Centre, unidentified persons, following the instructions of O.E. Papakhin, using Payment Order No. 35 dd. 28.07.2015, transferred the embezzled funds of RUB 499,995,968 under sham Interest-Bearing Loan Agreement No. 28-07 dd. 28.07.2015 to settlement account No. 40702810500070015537 of Sunrise controlled by the members of the organized group and not engaged in any real economic activity, opened with the same Bank.

On 29.07.2015, that is on the next day after the funds had been transferred to the settlement account of Sunrise, O.M. Yachina, who had no knowledge about the criminal intent of the members of the organized group, following the instructions received from the eighth identified person, acting in coordination with M.M. Krylova and using payment orders No. 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56 dd. 29.07.2015, transferred most of the monetary funds in the amount of RUB 498,871,028.03 as repayment of interest and principal amount under previously executed sham interest-bearing loan agreements No. 01/08/13-САН, 26/12/13- САН, № 31/01/12-САН, № 02/03/12-САН, 27/02/12-САН, №12/10/12_САН dd. dd. 01.08.2013, 26.12.2013, 31.01.12, 02.03.2012, 27.02.2012, 12.10.2012 and as a loan under sham Interest-Bearing Loan Agreement No. 29/07/15-САН dd. 29.07.2015 signed by the seventh identified person on behalf of Life Collection Agency to settlement account No. 40702810300110117621 of this company, opened with the same Bank.

On 29.07.2015 and 30.07.2015, after the embezzled funds had been credited to the settlement account of Life Collection Agency, O.M. Yachina, using payment orders No. 1372, 1373, 1374 dd. 29.07.2015 and No. 1426 dd. 30.07.2015, transferred the embezzled funds among other funds in the amount of RUB 600,000,000 as repayment of principal amount under sham loan agreements No. 06-07/12, 30-08/12, 28-12/1, and 2804 dd. 06.07.2012, 30.08.2012, 28.12.2012, 28.04.2014 to settlement account No. 40807810900010030608 of Vermenda Holdings Limited controlled by the members of the organized group and not engaged in any real economic activity, opened with the same Bank.

Then, on 30.07.2015, the embezzled funds in the amount of RUB 499,995,968 as a portion of other funds in the amount of 600,000,000 had been converted in USD by unidentified persons controlling settlement account No. 40807810900010030608 of Vermenda Holdings Limited.

Simultaneously, USD 10,015,000 had been transferred to foreign currency account No. 40807840200010030608 of Vermenda Holdings Limited, a non-resident company. A portion of these funds, USD 10,000,000, had been transferred based on payment orders No. 290 and 291 dd. 30.07.2015 to account No. LV63KBRB1111215921001 of this company opened with Trasta Komercbanka Riga

located at: Palasta iela 1, Riga LV-1050, Latvija, by unidentified persons.

After the funds had been transferred to the account of Vermenda Holdings Limited opened with Trasta Komercbanka Riga and having disguised, through multiple financial transactions, the real intended purpose of the loan in the amount of RUB 499,995,968 granted to NewHowTrade, the leaders of the organized group, that is the first identified person and the second identified person, had a real opportunity to manage the funds at their own discretion.

Therefore, the members of the organized group (including M.M. Krylova) under the leadership of the first and the second identified person embezzled via appropriation RUB 499,995,968 of the Bank's funds by providing a loan to NewHowTrade controlled by the members in July 2015. Thus, the credit organization sustained damages in the amount of RUB 698,200,000.

On 29.07.2015, that is on the next day after the loan had been granted, accomplices to the crime, that is the Head of the Department

the Head of the Department for Corporate Finances (the sixth identified person) and CEO of NewHowTrade O.V. Kravchenko, entered into Accord and Satisfaction Agreement dd. 29.07.2015 in order to cover up the embezzlement in an especially large amount and give a veneer of legality to the sham transactions. Under Accord and Satisfaction Agreement, obligations of NewHowTrade under Medium-Term Lending Contract No. 137-810/15ro dd. 28.07.2015 had been fully terminated. Right of claim to Sunrise controlled by the parties to the crime, which was not engaged in any real economic activity, was accepted by the Bank, which covered liabilities to repay credit funds.

In total, the members of the organized group (including M.M. Krylova) under the leadership of the first and the second identified person had embezzled RUB 2,443,195,968 from September 2014 to August 2015 by granting loans to IvSpetsGarant, Engeneering-Royalty, Vostok-Cargo-Plus, Tsentr Torgovli, and NewHowTrade. Thus, Probusinessbank CJSB sustained damages in the especially large amount.

Therefore, M.M. Krylova aided and abetted the crime by providing information and instruments of the crime, eliminating obstacles that might have prevented the commissions of the crime, and promising to cover the traces of the crime. M.M. Krylova aided and abetted the appropriation, that is embezzlement, of the other's property entrusted to the accused committed by a person who used its official position, by an organized group in an especially large amount.

The public prosecutor stated at the court session that the criminal proceedings instituted against the accused (M.M. Krylova) are valid and legitimate. Her criminal guilt has been fully proven by the evidence collected during the pre-trial proceedings. The plea agreement (pre-trial agreement on cooperation) had been entered into with M.M. Krylova during the preliminary investigation. Terms and conditions of the agreement as well as obligations thereunder had been fully fulfilled and performed.

M.M. Krylova agreed in the court with the charges brought against her. During the preliminary investigation, she had been actively cooperating in investigation of the

crime, incrimination and criminal prosecution of the other parties to the crime. As stated by the accused, the plea agreement had been entered into by her voluntarily and with her defence attorney in presence.

Defence Attorney A.V. Sapronov stated that all terms and conditions of the plea agreement had been fulfilled. Thus, there are grounds to impose the sentence as prescribed by Article 317.7 of the Code of Criminal Procedure of the Russian Federation.

As can be seen from the statement made by the representative of the injured party, the representative does not object to the imposition of the sentence in accordance with a special procedure for rendering the judgement under plea agreement. The Court has found that M.M. Krylova fulfilled all terms and conditions as well as obligations under the plea agreement.

The charges brought against, and accepted by, M.M. Krylova are valid and legitimate and has been proven by the collected evidence.

The Court qualifies actions of M.M. Krylova as those specified in Part 5 Article 33, Part 4 Article 160 of the Criminal Code since she had aided and abetted appropriation, that is embezzlement, of the other's property entrusted to the accused committed by a person who used its official position, by an organized group in an especially large amount.

When imposing the sentence, the Court takes into consideration the nature and extent of the danger and threat that the crime poses to the society as well as personal information of the accused. The Court notes the following:

M.M. Krylova has agreed to the charges brought against her, acknowledged her guilt and sincerely confessed to the charges, has no previous criminal record, is criminally liable for the first time, has good references from the places of her residence and work, has a dependent - an adult son, a 2-year student, and her mother retired from work, who has a medical condition, is a disabled person of Group 1, and suffers from several illnesses. The abovestated circumstances constitute mitigating circumstances under Article 61 of the Criminal Code.

Furthermore, M.M. Krylova had actively contributed to the investigation, incrimination of the other parties to the crime, and undertaken actions aimed at mitigating the damages caused to the injured party. These circumstances also recognized by the Court as mitigating circumstances under par. «j», «l» of Part 1 of Article 61 of the Criminal Code. The Court sentences M.M. Krylova under Article 62 of the Criminal Code.

The Court has not found mitigating circumstances under Article 63 of the Criminal Code.

Despite the mitigating circumstances present, and aggravating circumstances absent, in this case, taking into account facts of the crime committed by M.M. Krylova and extent of its danger and threat posed to the society, the Court has not found any grounds to change the grade of crime to less grave in accordance with Part b of Article 15 of the Criminal Code.

Proceeding from the circumstances of the case and personal characteristics of the

accused and taking into account the intentional nature of the crime, nature and extent of M.M. Krylova's participation in the crime, presence of the mitigating circumstances and absense of aggravating circumstances, the impact of the sentence on correctional rehabilitation of the accused and life of her family, the Court concludes that the correctional rehabilitation and education of M.M. Krylova can only be possible in isolation from the society in the form of imprisonment. The Court does not see any grounds to apply provisions of Article 64 or Article 73 of the Criminal Code.

The Court deems necessary to impose a fine on M.M. Krylova. The amount of this fine shall be determined based on the financial standing of the accused and her family.

The Court deems that the correctional rehabilitation of the accused is possible without additional punishment in the form of supervised release (limitation of its liberty).

The Court determines a general penal colony as a correction facility where M.M. Krylova will serve her sentence in accordance with Part b of Article 58 of the Criminal Code.

The Court deems that the term of service shall be calculated starting from the date of this Sentence, including the time spent on remand (in pre-trial detention), starting from the moment when the accused had been detained, and including the time spent under house arrest (volume 93 sheet 17, volume 93 sheet 118-123).

The Courts leaves without consideration the claim brought by the representative of the injured party Savin Vasiliy Anatolievich to recover damages in the amount of RUB 2,443,195,968 because the claims have already been considered by Ostankinskiy District Court of Moscow on April 26, 2017.

Based on the above and being guided by Article 317.7 of the Code of Civil Procedure, the Court has

### S E N T E N C E D

to find Krylova Marina Mikhailovna guilty of the crime specified in Part 5 Article 33, Part 4 Article 160 of the Criminal Code and sentence her to 3 years 6 months in prison and a fine in the amount of 1,000,000. The sentence to be served in a general penal colony.

Pre-trial restriction in the form of house arrest shall be changed to placement into custody. The accused shall be arrested in the courtroom.

The term of service shall be calculated starting from May 25, 2017. The term of service shall include the time spent on remand, starting from the moment when the accused had been detained, (February 17, 2016 - July 14, 2017and the time spent under house arrest (July 14, 2016 - May 24, 2017).        -

The claim brought by the representative of the injured party Savin Vasiliy Anatolievich to recover damages in the amount of RUB 2,443,195,968 shall be leaved without consideration.

The material evidence, items, and documents kept in the materials of the criminal case shall be kept there. Cell phones and the hard drive kept in the room for material evidence of The Main Investigations Department of the Investigative Committee of the Russian Federation shall be kept there until the judgement on the severed criminal case is rendered.

The sentence may be appealed in the Moscow City Court within 10 days after it has been pronounced.

Should the accused file an appeal, the accused shall be entitled to apply for her participation in the adjudication of the criminal case by the court of appeal. The accused shall communicate her intention in the statement of appeal. Should the criminal case be adjudicated based on a motion from the prosecutor or petitions from other persons, the accused shall state her intention in a separate motion

or a counter-claim or counter-motion.

Presiding Judge /signature/

The copy is true

/seal: Ostankinskiy District Court of Moscow/

Judge

Secretary

Bound and numbered - 26 sheets
Judge
Secretary
/seal: Ostankinskiy District Court of Moscow/

# ПРИЛОЖЕНИЕ 21

Уг. дело №1-252/17

# П Р И Г О В О Р
## Именем Российской Федерации

город Москва                                    25 мая 2017 года

Останкинский районный суд города Москвы в составе председательствующего судьи Сушковой О.А., при секретаре судебного заседания Исмакове А.А., с участием:

государственного обвинителя – ст. прокурора второго отдела управления государственных обвинителей Главного уголовно-судебного управления Генеральной прокуратуры Российской Федерации Гусевой Е.А.,

представителя потерпевшего ОАО АКБ «Пробизнесбанк», адвоката Якуновой М.А., представившей удостоверение №16030 и ордер №4 от 15 мая 2017 года,

подсудимой Крыловой М.М. и её защитника – адвоката Сапронова А.В., представившего удостоверение №8599 и ордер №17-496 от 11 мая 2017 года,

в открытом судебном заседании рассмотрев материалы уголовного дела в отношении

Крыловой Марины Михайловны, 17 марта 1973 года рождения, уроженки г.Москвы, гражданки Российской Федерации, с высшим образованием, вдовы, не имеющей на иждивении малолетних и несовершеннолетний детей, работающей в ООО «Бэсткон» в должности заместителя генерального директора, зарегистрированной и проживающей по адресу: г.Москва, ул.Нижняя Первомайская, д.33, кв.13, ранее не судимой, обвиняемой в совершении преступления, предусмотренного ч.5 ст.33, ч.4 ст.160 УК РФ,

## у с т а н о в и л :

Крылова М.М. совершила пособничество в присвоении, то есть хищение чужого имущества, вверенного виновному, лицом с использованием своего служебного положения, организованной группой, в особо крупном размере, а именно:

Так она (Крылова М.М.), в сентябре 2014 года, но не позднее 15.09.2014, в гор. Москве, точное время и место не установлены, вступила в организованную группу, созданную Президентом Открытого акционерного общества акционерного коммерческого банка «Пробизнесбанк» (далее по тексту АКБ «Пробизнесбанк», Банк) первым установленным лицом и

2

Председателем Правления Банка вторым установленным лицом с целью хищения путем присвоения вверенного имущества – денежных средств Банка, в особо крупном размере.

АКБ «Пробизнесбанк», юридический адрес: гор. Москва, ул. Пудовкина, д. 3, основной государственный регистрационный номер (ОГРН) 1027700508978, учреждён 25.11.1992 и зарегистрирован в книге государственной регистрации (КГР) Банка России 07.07.1993, корреспондентский счёт № 30101810600000000986 в Главном управлении Банка России по Центральному федеральному округу г. Москва (далее по тексту ГУ Банка России по ЦФО г. Москва), банковский идентификационный код (БИК) 044525986, индивидуальный номер налогоплательщика (ИНН) 7729086087, генеральная лицензия на осуществление банковских операций от 13.08.2012 № 2412 выдана Банком России.

В соответствии со ст. 1 Федерального закона «О банках и банковской деятельности» от 02.12.1990 № 395-1 банком является кредитная организация, которая имеет исключительное право осуществлять в совокупности следующие банковские операции: привлечение во вклады денежных средств физических и юридических лиц, размещение указанных средств от своего имени и за свой счёт на условиях возвратности, платности, срочности, открытие и ведение банковских счетов физических и юридических лиц.

В соответствии с Уставом вышеуказанного кредитного учреждения, утвержденным общим собранием акционеров 28.06.2013, Банк является кредитной организацией в форме открытого акционерного общества. Целью деятельности Банка является извлечение прибыли. Банк может осуществлять привлечение денежных средств физических и юридических лиц во вклады и размещать привлечённые средства от своего имени и за свой счёт. Банк имеет в собственности обособленное имущество, отражаемое на его самостоятельном балансе, включая имущество, переданное ему акционерами в счёт оплаты акций.

К 2014 году первое установленное лицо и второе установленное лицо, владея контрольным пакетом акций Банка долей более 50% путем владения акциями кипрской компании Alivikt Holding Limited (Аливикт Холдинг Лимитед) обеспечили себе как физические лица право осуществлять стратегическое и оперативное управление АКБ «Пробизнесбанк» и другими аффилированными юридическими лицами, входящими в финансовую группу.

Владение контрольным пакетом акций позволило им занять ключевые руководящие должности в Банке.

Так, первое установленное лицо, который, в соответствии с Уставом Банка организовывал работу Совета Директоров, а также председательствовал на Общем собрании акционеров, с момента учреждения Банка на основании решений Совета Директоров Банка, который он сам же и возглавлял, занимал должность Президента АКБ «Пробизнесбанк», что

3

позволяло ему определять приоритетные направления деятельности Банка. В свою очередь, второе установленное лицо, как председатель Правления Банка – первый вице-Президент Банка принял на себя обязательство руководства текущей деятельностью Банка.

В соответствии с Уставом вышеуказанного кредитного учреждения, утвержденного общим собранием акционеров 28.06.2013, Председатель Правления осуществляет руководство текущей деятельностью Банка, без доверенности действует от имени Банка, совершает сделки от имени Банка, распоряжается в соответствии с действующим законодательством и Уставом всем имуществом и средствами Банка, выдает и подписывает доверенности от имени Банка по своему усмотрению и прочее. Таким образом, второе установленное лицо, являлся лицом, выполняющим управленческие функции в АКБ «Пробизнесбанк», и обладал полномочиями организационно-распорядительного и административно-хозяйственного характера, то есть имущество и средства Банка были ему вверены.

Первое установленное лицо и второе установленное лицо, полностью контролируя деятельность Банка, начиная с сентября 2014 года в гор. Москве, точные время и место не установлены, с целью хищения путем присвоения вверенных второму установленному лицу, денежных средств Банка создали организованную группу, определив в ней свою руководящую роль. В состав организованной группы под их общим руководством в указанный период времени были вовлечены третье, четвертое, пятое установленные лица, шестое установленное лицо - осужденное Останкинским районным судом г.Москвы 26 апреля 2017 года, седьмое установленное лицо, Крылова М.М., восьмое установленное лицо, и другие неустановленные лица, каждому из которых была определена своя роль.

Для достижения поставленной цели под руководством второго установленного лица и первого установленного лица членами организованной группы была разработана схема хищения денежных средств и распределены роли участников преступления:

- первое установленное лицо, являясь основным акционером АКБ «Пробизнесбанк» с долей в размере 40,15% акций (на 31.12.2014), неоднократно избираемый Советом Директоров на должность Президента Банка, в том числе в соответствии с протоколом заседания Совета Директоров № 10 от 25.07.2014, фактически осуществляя стратегическое управление деятельностью Банка, должен был совместно со вторым установленным лицом, определить суммы денежных средств, которые намеревались похитить, способ их хищения, распорядиться о перечислении денежных средств на расчетные счета подставных заемщиков, осуществлять общее руководство действиями всех членов организованной группы при совершении преступления и использовать по своему усмотрению полученные в процессе совершения преступления денежные средства, в том числе их использование в интересах членов организованной группы за пределами Российской Федерации;

4

- второе установленное лицо, являясь основным акционером АКБ «Пробизнесбанк» с долей в размере 11,05% акций (на 31.12.2014), назначенный приказом Банка от 02.06.1993 № 181-К Председателем Правления и одновременно занимая должность первого вице-президента указанного кредитного учреждения, обладая в соответствии с уставом полномочиями руководства текущей деятельностью банка, совершения сделок от имени Банка, распоряжения имуществом и средствами Банка, должен был совместно с первым установленным лицом определить суммы денежных средств, которые намеревались похитить, определить способ их хищения, подписать решение о выдаче кредита ООО «Инновационно-строительная компания «ИвСпецГарант» (далее по тексту (ООО «ИСК «ИвСпецГарант»), выдать доверенности доверенным ему и первому установленному лицу лицам, воспользовавшись которыми члены организованной группы должны были подписать кредитные договоры и иные сопутствующие документы, распорядиться о перечислении денежных средств на расчетные счета подставных заемщиков, а также совместно с первым установленным лицом осуществлять общее руководство действиями всех членов организованной группы при совершении преступления и использовать по своему усмотрению полученные в процессе совершения преступления денежные средства;

- третье установленное лицо, назначенный приказом Банка от 19.10.2011 № 5330-к на должность вице-президента Банка по корпоративным финансам, должен был разработать схему хищения денежных средств, руководить действиями подчиненных ему сотрудников департамента корпоративных финансов, которые определяли подставных заемщиков Банка из числа подконтрольных участникам организованной группы и сторонних компаний для их последующего использования в хищении денежных средств под видом кредитования; дать распоряжение подчиненным ему сотрудникам о формировании кредитных досье с целью придания видимости законности выдачи кредитных денежных средств, а также дать указание подчиненному ему восьмому установленному лицу о перечислении похищаемых денежных средств на расчетные счета подконтрольных юридических лиц и их аккумуляции на счетах ООО «Персонал+» и ООО «Коллекторское агентство «Лайф» для последующего перечисления на кипрскую компанию Vermenda Holdings Limited (Верменда Холдингс Лимитед); оплатить незаконные услуги Папахина О.Е., предоставившего подконтрольные ему юридические лица для фиктивного кредитования;

- четвертое установленное лицо, занимая на основании приказа Банка от 03.12.2007 № 4846-к должность вице-президента по развитию корпоративного бизнеса Банка, являясь доверенным лицом второго установленного лица, должен был на основании доверенности, предоставляющей право распоряжаться имуществом кредитного учреждения, действуя по указанию руководителей организованной группы, используя свое служебное положение, с целью присвоения денежных средств, подписать от имени Банка заведомо неисполнимый невозвратный и необеспеченный договор об

условиях среднесрочного кредитования и сопутствующие документы с подконтрольным членам организованной группы подставным заемщиком – ООО «ИСК «ИвСпецГарант»;

- пятое установленное лицо, занимая на основании приказа Банка от 23.07.2001 № 564-к должность вице-президента по финансам – заместителя председателя Правления Банка, должен был на основании доверенности, предоставляющей право распоряжаться имуществом кредитного учреждения, действуя по указанию руководителей организованной группы, используя свое служебное положение, с целью присвоения денежных средств, подписать от имени Банка заведомо неисполнимый невозвратный и необеспеченный договор об условиях среднесрочного кредитования и сопутствующие документы с подставным заемщиком ООО «Центр Торговли»;

- шестое установленное лицо, занимая на основании приказа Банка от 16.02.2015 № 1130-к должность начальника департамента корпоративных финансов Банка, должен был на основании доверенности, предоставляющей право распоряжаться имуществом кредитного учреждения, действуя по указанию руководителей организованной группы, используя свое служебное положение, с целью присвоения денежных средств, подписать от имени Банка заведомо неисполнимый невозвратный и необеспеченный договор об условиях среднесрочного кредитования и сопутствующие документы с подставными заемщиками ООО «Инжиниринг-Роялти», ООО «Восток-Карго-Плюс» и ООО «НьюХауТрейд»;

- восьмое установленное лицо, назначенный приказом Банка от 01.07.2014 № 3711-к начальником управления проектного финансирования департамента корпоративных финансов Банка, действуя по указанию третьего установленного лица, должен был осуществлять мониторинг финансового состояния подконтрольных и аффилированных членам организованной группы обществ, получать информацию о поступлении денежных средств, похищаемых путем выдачи кредитов на подставные юридические лица, на конкретные подконтрольные общества и давать указания о перечислении денежных средств для их аккумуляции на счетах ООО «Коллекторское агентство «Лайф» и Vermenda Holdings Limited, а также передать Папахину О.Е., оказывающему содействие членам организованной группы в совершении хищения денежных средств Банка, часть наличных денежных средств в качестве вознаграждения за предоставление последним ООО «Центр Торговли» и ООО «НьюХауТрейд» в качестве подставных заемщиков;

- седьмое установленное лицо, являясь генеральным директором ООО «Коллекторское агентство «Лайф», заведомо зная о том, что участниками организованной группы под руководством первого установленного лица и второго установленного лица, совершается хищение денежных средств Банка путем присвоения, предоставил счет возглавляемого им ООО «Коллекторское агентство «Лайф» для аккумуляции под видом фиктивных договоров займа/погашения похищаемых денежных средств, которые в последующем под видом погашения займов перечислялись на

расчётный счет подконтрольного членам организованной группы кипрской компании Vermenda Holdings Limited; также седьмое установленное лицо на регулярной основе по мере необходимости должен был подписывать фиктивно заключаемые договоры займов, на основании которых, придавая видимость законности совершаемых сделок, похищаемые денежные средства перечислялись между подставными обществами;

- Крылова М.М., занимая на основании приказа Банка от 19.11.2008 № 6492-к должность начальника управления по обеспечению взаимодействия с акционерами и дочерними организациями Банка, возглавила специально учрежденное ООО «Бухгалтерский центр «Баланс», сотрудники которого Самойленко Д.А. и Ячина О.М., неосведомленные о преступных намерениях соучастников преступления, осуществляли подготовку документов, обосновывающих расчеты между обществами, привлекаемыми членами организованной группы в качестве подставных заемщиков и займодавцев/займодателей для транзита денежных средств, их бухгалтерской и налоговой отчетности для предоставления в контролирующие органы Российской Федерации, а также управление счетами подконтрольных юридических лиц.

- иные неустановленные лица, роль которых состояла в совершении иных действий по обеспечению деятельности организованной группы при совершении преступления и оказании иного содействия соучастникам преступления в совершении преступления, в том числе предоставлением информации, средств совершения преступления и устранением препятствия его совершения, сокрытием совершенного преступления, а также в предоставлении подконтрольных им юридических лиц как резидентов так и нерезидентов Российской Федерации с целью последующего перечисления на их счета похищенных денежных средств и распределения среди соучастников преступления.

Устойчивость этой организованной группы, заранее объединившейся для совершения хищения путем присвоения, была обусловлена длительным знакомством и постоянной связью между ее участниками, служебными взаимоотношениями, общностью корыстной цели, четким распределением ролей и функций как при подготовке к совершению хищения, так и при осуществлении преступного умысла, тщательной проработкой схемы хищения.

Кроме того, участники организованной группы по мере необходимости в различное время в период с сентября 2014 года по август 2015 года в городе Москве и городе Иваново Ивановской области, более точное время и место не установлены, в качестве пособников преступления привлекли генерального директора ООО «ИСК «ИвСпецГарант» Поликарпова И.П., генерального директора ООО «Инжиниринг-Роялти» Симакова А.В., генерального директора ООО «Восток-Карго-Плюс» Данукина А.В., фактического руководителя группы компаний «Аймак» Папахина О.Е., генерального директора ООО «Центр Торговли» Шпагину Л.Б., генерального

7

директора ООО «НьюХауТрейд» Кравченко О.В. и иных неустановленных лиц.

В сентябре 2014 года, точное время не установлено, в гор. Москве, члены организованной группы, возглавляемой вторым установленным лицом и первым установленным лицом, действуя из корыстных побуждений, с целью личного обогащения, разработали план действий, направленный на хищение путем присвоения денежных средств Банка в особо крупном размере.

Используя кадровые возможности Банка, членом организованной группы третьим установленным лицом, действующим по указанию первого установленного лица и второго установленного лица, были использованы ранее учрежденные юридические лица, не осуществляющие реальной хозяйственной деятельности и полностью подконтрольные членам организованной группы, директорами которых назначались сотрудники Банка и иные лица за номинальное вознаграждение в размере 10 000 – 20 000 рублей в месяц. В число таких юридических лиц вошли: ООО «Инжиниринг-Роялти», ООО «Элсо», ООО «Персонал+», ООО «Альянс», ООО «Истон», ООО «ПК-Технолоджис», ООО «Санрис».

Также в ходе выполнения преступного замысла, направленного на присвоение денежных средств, членами организованной группы, были использованы юридические лица аффилированные Банку и подконтрольные руководителям Банка – ООО «ИСК «ИвСпецГарант», ООО «Пробизнес-Девелопмент», ООО «Коллекторское агентство «Лайф».

Кроме того, участники организованной группы, в указанный период времени с целью избежать подозрений со стороны регулятора – Банка России и правоохранительных органов в хищении вверенных денежных средств, использовали ООО «Центр Торговли», ООО «НьюХауТрейд», ООО «Финансовый центр «Эскада» и ООО «ПрогмаТрейд», деятельность которых контролировалась Папахиным О.Е., который согласился выступить в качестве пособника за денежное вознаграждение и содействовать совершению преступления путем предоставления компаний ООО «Центр Торговли» и ООО «НьюХауТрейд» для получения в кредит денежных средств, подлежащих хищению, осуществлению фиктивных финансовых операций с указанными денежными средствами и их перечислению на расчетные счета подконтрольных членам организованной группы ООО «ПК-Технолоджис» и ООО «Санрис».

Используемые для операций по перечислению денежных средств расчетные счета всех указанных юридических лиц, были открыты в АКБ «Пробизнесбанк» и, за исключением ООО «НьюХауТрейд», ООО «Центр Торговли», ООО «Финансовый центр «Эскада» и ООО «ПрогмаТрейд», управлялись неустановленными сотрудниками Банка, а также Самойленко Д.А. и Ячиной О.М. в помещениях, расположенных по адресу: гор. Москва, ул. Добролюбова, д. 3, стр. 1.

Общий принцип совершения преступления предусматривал совершение умышленных действий, направленных на выдачу

подконтрольным обществам заведомо невозвратных, необеспеченных залоговым имуществом кредитов в особо крупных размерах, перечисление кредитных денежных средств на ссудные и расчетные счета указанных обществ, после чего под видом оплаты фиктивных сделок, с целью сокрытия совершенного преступления, перечисление денежных средств на счета подконтрольных юридических лиц.

Затем, похищенные денежные средства в рублях Российской Федерации конвертировались в полном объёме в доллары США и перечислялись на расчётный счёт подконтрольного членам организованной группы юридического лица, не осуществляющего реальной хозяйственной деятельности, – нерезидента Российской Федерации – компании Vermenda Holdings Limited (Вермэнда Холдингс Лимитед), зарегистрированной по адресу: Griva Digeni, P.C. 3101, Limassol, Cyprus (Грива Дигени, п/я 3101, Лимассол, Кипр), открытый в кредитной организации – нерезиденте Trasta Komercbanka Riga (Траста Комерцбанка Рига), расположенном по адресу: Palasta iela 1, Riga LV-1050, Latvija (Паласта иела 1, Рига LV-1050, Латвийская Республика).

Документальное оформление выдачи кредитов, с целью придания видимости законности производимых сделок, формально носило законный характер, однако фактически указанные документы содержали недостоверные сведения и все действия участников преступления были направлены на достижение преступного умысла, то есть на хищение путем присвоения денежных средств Банка в особо крупном размере.

При заключении договоров об условиях среднесрочного кредитования лица, выступающие сторонами договора, должны были действовать в соответствии с правилами заключения сделок, основываясь на требованиях ст. 10 ГК РФ, предусматривающей разумность действий и добросовестность участников гражданских правоотношений. Тем самым, лица, подписывающие договоры об условиях среднесрочного кредитования, предметом которых были денежные средства АКБ «Пробизнесбанк», обязаны были действовать добросовестно и не совершать действий, связанных с обманом, в том числе о целевом назначении кредита.

Таким образом, второе установленное лицо и первое установленное лицо возглавляя организованную группу, и действующие под их руководством третье, четвертое, пятое, шестое, седьмое установленные лица, Крылова М.М., восьмое установленное лицо, и другие члены организованной группы, действовали во исполнение единого умысла, направленного на безвозмездное изъятие денежных средств и с намерением причинить вред другому лицу (АКБ «Пробизнесбанк»), то есть в нарушение ст. 10 ГК РФ «Пределы осуществления гражданских прав», в соответствии с которой не допускаются действия граждан и юридических лиц, осуществляемые исключительно с намерением причинить вред другому лицу, а также злоупотребление правом в иных формах, и, следовательно, противоправно.

Действующие согласно отведенной им в организованной группе роли четвертое, пятое, шестое установленные лица, заключая договоры об

9

условиях среднесрочного кредитования, с целью присвоения денежных средств для создания видимости гражданско-правовых отношений во исполнение незаконных указаний руководителей организованной группы первого установленного лица и второго установленного лица, умышленно нарушили положения ст. 1 Федерального закона «О банках и банковской деятельности» № 395-1 от 02.12.1990 г., обязывающий кредитную организацию размещать привлекаемые денежные средства физических и юридических лиц от своего имени и за свой счет на условиях возвратности, платности, срочности.

Это позволило членам организованной группы, действовавшим от имени Банка, но вопреки интересам кредитного учреждения, противоправно, безвозмездно, безвозвратно обратить вверенные им денежные средства в свою пользу, обеспечив их переход в собственность подконтрольных соучастникам подставных компаний и тем самым совершить их хищение путем присвоения.

Так, в период предшествующий 16.09.2014, более точное время не установлено, четвертое установленное лицо, находясь на своём рабочем месте, расположенном по адресу: гор. Москва, Волгоградский пр-т, д. 43 корп. 3, действуя от имени Банка, на основании доверенности № 610/1 от 16.07.2014, выданной одним из руководителей организованной группы – председателем правления Банка вторым установленным лицом, согласно которой ему делегированы полномочия по заключению кредитных договоров и распоряжению денежными средствами Банка, то есть управленческие функции административно-хозяйственного характера по распоряжению вверенными ему денежными средствами Банка, выполняя указания руководителей организованной группы первого установленного лица и второго установленного лица, действуя умышленно и согласованно с другими членами организованной группы, используя свое служебное положение, подписал от имени Банка Договор об условиях среднесрочного кредитования от 15.09.2014 № 211-810/14ю с подконтрольным членам организованной группы ООО «ИСК «ИвСпецГарант» в лице генерального директора общества Поликарпова И.П., согласно которому Банк обязуется предоставить указанному обществу кредит в рамках открываемых кредитных линий с максимальным размером лимита задолженности в размере 500 000 000 руб.

При этом, Поликарпов И.П., оказывая содействие совершению преступления предоставлением информации и устранением препятствий его совершения, не являясь участником организованной группы, в вышеуказанный период времени, находясь на своем рабочем месте, расположенном по адресу: гор. Иваново, Проспект Шереметьевский, д. 153А, подписал от имени общества вышеуказанный Договор об условиях среднесрочного кредитования от 15.09.2014 № 211-810/14ю, осознавая, что возглавляемое им общество не направит полученные денежные средства в виде кредита на хозяйственную деятельность, а посредством оформления кредита на возглавляемое им общество денежные средства участники

организованной группы похитят путем присвоения.

15.09.2014 во исполнение вышеуказанного Договора, согласно представленной заявки от имени Поликарпова И.П., согласно мемориального ордера от 15.09.2014 № 1018062751, денежные средства в размере 280 000 000 руб. перечислены со ссудного счета ООО «ИСК «ИвСпецГарант» № 45207810600000127604 на расчетный счет этой организации № 40702810308180027604, открытые в Банке, расположенном по адресу: гор. Москва, ул. Пудовкина, д. 3.

В тот же день, после поступления денежных средств на расчётный счёт ООО «ИСК «ИвСпецГарант» № 40702810308180027604, открытый в Банке, главный бухгалтер Общества Стулова Е.С., неосведомленная о преступных намерениях участников организованной группы, получив указания посредством электронной почты от неустановленных сотрудников ООО «Пробизнес-Девелопмент», по согласованию с Поликарповым И.П., с целью придания видимости законного движения кредитных денежных средств в размере 280 000 000 руб., перечислила их несколькими платежами, в числе прочих денежных средств:

- 24 157 808,21 руб. под видом погашения процентов и основного долга по ранее заключенным фиктивным договорам займа от 26.08.2014 № 26/08/14-И и от 14.07.2014 № 14/07/14-И платёжными поручениями от 15.09.2014 №№ 751, 752, 763, 764 на расчётный счёт подконтрольного членам организованной группы и не ведущего реальной хозяйственной деятельности ООО «Персонал+» № 40702810300000102610, открытый в том же Банке;

- 34 471 698,63 руб. под видом погашения процентов и основного долга по ранее заключенным фиктивным договорам займа от 30.06.2014 № 30/06-14, от 31.07.2014 № 31/07-14 и от 29.08.2014 № 29/08-14, платёжными поручениями от 15.09.2014 №№ 747, 748, 749, 750, 757, 758, 759, 760, 761, 762 на расчётный счёт возглавляемого членом организованной группы Калачевым С.В. ООО «Коллекторское агентство «Лайф» № 40702810300110117621, открытый в том же Банке;

- 222 016 835,04 руб. под видом погашения ранее заключенного фиктивного соглашения от 30.06.2012 о расторжении договора об инвестировании от 28.05.2008 № ИЛ-7/28-м-08 платёжными поручениями от 15.09.2014 №№ 765, 766 на расчётный счёт аффилированного Банку ООО «Пробизнес-Девелопмент» № 40702810300000021377, открытый в том же Банке.

В тот же день, после поступления денежных средств на расчётный счет ООО «Пробизнес-Девелопмент», неустановленные сотрудники Банка, имеющие доступ к системе «Банк-Клиент» Общества, продолжая реализацию преступного замысла участников организованной группы, платёжными поручениями от 15.09.2014 №№ 853, 852, 856, 857, 861 перечислили часть похищенных денежных средств в размере 221 370 994,73 руб. под видом погашения основного долга и начисленных процентов ранее заключенных фиктивных договоров процентных займов от 16.11.2011 № 16/11/11-ПД, от

11

30.11.2011 № 30/11/11-ПД и от 30.12.2013 № 30/11/2013-ПД на расчётный счёт подконтрольного членам организованной группы и не ведущего реальной хозяйственной деятельности ООО «ЭЛСО» № 40702810800020115239, открытый в том же Банке.

Затем, 16.09.2014, Самойленко Д.А., неосведомленная о преступных намерениях членов организованной группы, по указанию неустановленных лиц и по согласованию с участником организованной группы Крыловой М.М., платежным поручением от 16.09.2014 № 321 перечислила часть похищенных денежных средств в размере 221 000 000 руб. под видом погашения основного долга и процентов ранее заключенного фиктивного договора процентного займа от 07.07.2014 № 07/07-14 с вышеуказанного расчётного счета ООО «ЭЛСО» на расчётный счёт возглавляемого членом организованной группы Калачевым С.В. ООО «Коллекторское агентство «Лайф» № 40702810300110117621, открытый в том же Банке.

16.09.2014, то есть на следующий день, после перечисления денежных средств Банка на расчётный счет ООО «Персонал+», та же Самойленко Д.А., действующая по указанию неустановленных лиц и по согласованию с участником организованной группы Крыловой М.М., платежным поручением от 16.09.2014 № 133 перечислила со счета указанного общества часть похищенных денежных средств в размере 24 157 808,21 руб., в числе прочих денежных средств в размере 499 500 000 руб., под видом предоставления займа по фиктивному договору процентного займа от 16.09.2014 № 16/09/14-КА подписанного участником организованной группы седьмым установленным лицом, со стороны ООО «Коллекторское агентство «Лайф», на расчётный счёт этой организации № 40702810300110117621, открытый в том же Банке.

16.09.2014, то есть в этот же день, после поступления их на расчётный счет ООО «Коллекторское агентство «Лайф», похищенные денежные средства в размере 280 000 000 руб. в числе прочих денежных средств в размере 608 000 000 руб., той же Самойленко Д.А., платежным поручением № 1563 от 16.09.2014 под видом погашения основного долга по ранее заключенному участником организованной группы седьмым установленным лицом, фиктивному договору займа от 30.08.2013 № 30-08/13 перечислены на расчётный счёт подконтрольной членам организованной группы и не ведущей реальной хозяйственной деятельности компании Vermenda Holdings Limited № 40807810900010030608, открытый в том же Банке.

Затем, 18.09.2014, похищенные денежные средства в размере 280 000 000 руб. в числе прочих денежных средств в размере 578 655 792 руб., неустановленными лицами, осуществляющими управление расчётным счетом Vermenda Holdings Limited № 40807810900010030608, конвертированы в доллары США с одновременным зачислением на валютный счёт компании-нерезидента Vermenda Holdings Limited № 40807840200010030608 денежных средств в размере 15 080 000 долларов США, часть из которых в размере 13 000 000 долларов США в тот же день неустановленными лицами на основании

12

платежного поручения от 18.09.2014 № 217 перечислена на счёт этой организации № LV63KBRB1111215921001, открытый в Trasta Komercbanka Riga (Траста Комерцбанка Рига), расположенном по адресу: Palasta iela 1, Riga LV-1050, Latvija (Паласта иела 1, Рига LV-1050, Латвийская Республика).

Переведя денежные средства на счет Vermenda Holdings Limited в Trasta Komercbanka Riga, руководители организованной группы первое установленное лицо и второе установленное лицо получили реальную возможность распоряжаться ими по своему усмотрению, сокрыв путем многочисленных финансовых операций истинное предназначение кредита в размере 280 000 000 руб., выданного ООО «ИСК «ИвСпецГарант».

Таким образом, членами организованной группы, под руководством первого установленного лица и второго установленного лица, в которую входила Крылова М.М., в сентябре 2014 года путем выдачи кредита подконтрольному членам организованной группы ООО «ИСК «ИвСпецГарант» было присвоено 280 000 000 руб., принадлежащих Банку, тем самым причинен этой кредитной организации ущерб на указанную сумму.

В период предшествующий 10.04.2015, третьим установленным лицом, во исполнение разработанного первым установленным лицом и вторым установленным лицом плана хищения, в качестве подставной организации, на которую должен был быть выдан кредит Банком, было определено ООО «Инжиниринг-Роялти», не ведущее какой-либо хозяйственной деятельности, единственным участником и генеральным директором которого с 14.10.2014 являлся бывший сотрудник Банка Симаков А.В., ранее занимавший должность старшего специалиста управления по работе с проблемной задолженностью Московской региональной дирекции АКБ «Пробизнесбанк».

При этом, Симаков А.В., действуя из корыстной заинтересованности, не являясь участником организованной группы, предоставив возглавляемое им общество, согласился оказать содействие членам организованной группы в совершении хищения путем присвоения денежных средств Банка предоставлением информации и устранением препятствий его совершения.

Продолжая реализовывать преступный умысел, направленный на хищение денежных средств Банка, в особо крупном размере, участник организованной группы – начальник департамента корпоративных финансов Банка шестое установленное лицо, в период предшествующий 10.04.2015, точное время не установлено, находясь на своем рабочем месте, расположенном по адресу: г. Москва, ул. Бутырская, д. 62, действуя от имени Банка, на основании доверенности № 120/2 от 17.02.2015, выданной одним из руководителей организованной группы – председателем правления Банка вторым установленным лицом, согласно которой ему делегированы полномочия по заключению кредитных договоров и распоряжению денежными средствами Банка, то есть управленческие функции административно-хозяйственного характера по распоряжению вверенными

13

ему денежными средствами Банка, выполняя указание руководителей организованной группы второго установленного лица и первого установленного лица, действуя умышленно и согласованно с другим членами организованной группы, используя свое служебное положение, подписал от имени Банка Договор об условиях среднесрочного кредитования от 09.04.2015 № 044-810/15ю с подконтрольным членам организованной группы ООО «Инжиниринг-Роялти» в лице генерального директора общества Симакова А.В., согласно которому Банк обязуется предоставить указанному обществу кредит в рамках открываемых кредитных линий с максимальным размером лимита задолженности в размере 1 000 000 000 руб.

При этом, Симаков А.В. осознавал, что цель получения кредита является заведомо ложной, а получение кредита является способом хищения денежных средств Банка, в вышеуказанный период времени, находясь около своего дома, расположенного по адресу: гор. Москва, Высоковольтовый проезд, д. 1, корп. 8, подписал от имени возглавляемого им общества вышеуказанный Договор об условиях среднесрочного кредитования от 09.04.2015 № 044-810/15ю.

09.04.2015 во исполнение вышеуказанного Договора, согласно представленной заявки от имени Симакова А.В., согласно мемориального ордера от 09.04.2015 № 1019700947, денежные средства в размере 600 000 000 руб. перечислены со ссудного счета ООО «Инжиниринг-Роялти» № 45204810400000135572 на расчетный счет этой организации № 40702810900110035572, открытые в Банке, расположенном по адресу: гор. Москва, ул. Пудовкина, д. 3.

В этот же день, после поступления денежных средств на расчётный счёт ООО «Инжиниринг-Роялти» № 40702810900110035572, Ячиной О.М., неосведомлённой о преступных намерениях членов организованной группы, действующей по указанию восьмого установленного лица, и по согласованию с Крыловой М.М., похищаемые денежные средства в размере 600 000 000 руб. под видом предоставления займа по фиктивному договору процентного займа от 09.04.2015 № 09/04/2015 платёжным поручением от 09.04.2015 № 22 перечислены на расчётный счёт подконтрольного членам организованной группы и не ведущего реальной хозяйственной деятельности ООО «Альянс» № 40702810500000113328, открытый в том же Банке.

09.04.2015, то есть в этот же день, после перечисления денежных средств Банка на расчётный счет ООО «Альянс», той же Ячиной О.М., платежным поручением от 09.04.2015 № 33 похищенные денежные средства в размере 600 000 000 руб. под видом частичного погашения основного долга по ранее заключенному фиктивному договору процентного займа от 29.08.2014 № 29/08-А перечислены на расчётный счёт подконтрольного членам организованной группы и не ведущего реальной хозяйственной деятельности ООО «Персонал+» № 4072810300000102610, открытый в том же Банке.

В этот же день, после поступления денежных средств на расчётный счет ООО «Персонал +», той же Ячиной О.М., платежным поручением № 144

14

от 09.04.2015 денежные средства в размере 600 000 000 руб., похищенные у Банка, под видом частичного погашения основного долга по ранее заключенному фиктивному договору займа от 06.03.2015 № 0603/15 перечислены на расчётный счёт подконтрольной членам организованной группы и не ведущей реальной хозяйственной деятельности компании Vermenda Holdings Limited № 40807810900010030608, открытый в том же Банке.

Затем, 09.04.2015 и 13.04.2015 похищенные денежные средства в размере 600 000 000 руб., в числе прочих денежных средств в размере 600 069 891,60 руб., неустановленными лицами, осуществляющими управление расчетным счетом Vermenda Holdings Limited № 40807810900010030608, конвертированы в доллары США с одновременным зачислением на валютный счёт компании-нерезидента Vermenda Holdings Limited № 40807840200010030608 денежных средств в размере 11 182 000 долларов США, часть из которых в размере 10 000 000 долларов США неустановленными лицами на основании платежного поручения от 09.04.2015 № 271 перечислена на счёт этой организации № LV63KBRB1111215921001, открытый в Trasta Komercbanka Riga (Траста Комерцбанка Рига), расположенном по адресу: Palasta iela 1, Riga LV-1050, Latvija (Паласта иела 1, Рига LV-1050, Латвийская Республика).

Переведя денежные средства на счет Vermenda Holdings Limited в Trasta Komercbanka Riga, руководители организованной группы первое установленное лицо и второе установленное лицо получили реальную возможность распоряжаться ими по своему усмотрению, сокрыв путем многочисленных финансовых операций истинное предназначение кредита в размере 600 000 000 руб., выданного ООО «Инжиниринг-Роялти».

Таким образом, членами организованной группы, под руководством первого установленного лица и второго установленного лица, в которую входила Крылова М.М., в апреле 2015 года путем выдачи кредита подконтрольному ООО «Инжиниринг-Роялти» было присвоено 600 000 000 руб., принадлежащих Банку, тем самым причинен этой кредитной организации ущерб на указанную сумму.

В период предшествующий 16.05.2015, третьим установленным лицом, действующим во исполнение разработанного первого установленного и второго установленного лица плана хищения, в качестве подставной организации, на которую должен был быть выдан кредит Банком, было определено ООО «Восток-Карго-Плюс», единственным участником и генеральным директором которого с момента учреждения (17.12.2012) являлся подконтрольный членам организованной группы Данукин А.В.

При этом, Данукин А.В., действуя из корыстной заинтересованности, не являясь участником организованной группы, предоставив возглавляемое им общество, согласился оказать содействие членам организованной группы в совершении хищения путем присвоения денежных средств Банка предоставлением информации и устранением препятствий его совершения.

Продолжая реализовывать преступный умысел, направленный на

15

хищение денежных средств Банка, в особо крупном размере, участник организованной группы – начальник департамента корпоративных финансов Банка шестое установленное лицо, в период предшествующий 16.05.2015, точное время не установлено, находясь на своем рабочем месте, расположенном по адресу: г. Москва, ул. Бутырская, д. 62, действуя от имени Банка, на основании доверенности № 120/2 от 17.02.2015, выданной одним из руководителей организованной группы – председателем правления Банка вторым установленным лицом, согласно которой ему делегированы полномочия по заключению кредитных договоров и распоряжению денежными средствами Банка, то есть управленческие функции административно-хозяйственного характера по распоряжению вверенными ему денежными средствами Банка, выполняя указание руководителей организованной группы второго установленного лица и первого установленного лица, действуя умышленно и согласованно с другим членами организованной группы, используя свое служебное положение, подписал от имени Банка Договор об условиях среднесрочного кредитования от 15.05.2015 № 071-810/15ю с ООО «Восток-Карго-Плюс» в лице генерального директора общества Данукина А.В., согласно которому Банк обязуется предоставить указанному обществу кредит в рамках открываемых кредитных линий с максимальным размером лимита задолженности в размере 500 000 000 руб.

При этом, Данукин А.В. осознавал, что цель получения кредита является заведомо ложной, а получение кредита является способом хищения денежных средств Банка, в вышеуказанный период времени, находясь в неустановленном месте гор. Москвы, подписал от имени возглавляемого им общества вышеуказанный Договор об условиях среднесрочного кредитования от 15.05.2015 № 071-810/15ю.

18.05.2015 и 19.05.2015 во исполнение вышеуказанного Договора, согласно представленной заявки от имени Данукина А.В., согласно мемориальных ордеров от 18.05.2015 № 1019906802 и от 19.05.2015 № 1019915598 денежные средства в размере 365 000 000 руб. перечислены со ссудного счета ООО «Восток-Карго-Плюс» № 45205810500100107477 на расчётный счёт ООО «Восток-Карго-Плюс» № 40702810700000107477, открытые в Банке, расположенном по адресу: гор. Москва, ул. Пудовкина, д. 3.

18.05.2015 и 19.05.2015, после поступления похищаемых денежных средств на указанный расчётный счет Общества, Данукин А.В. продолжая выполнять отведённую ему роль в совершении преступления, оказывая содействие его совершению предоставлением информации и устранением препятствий, перечислил денежные средства, фиктивно полученные в виде кредита от Банка в размере 365 000 000 руб., на основании платёжных поручений от 18.05.2015 № 1054 и от 19.05.2015 № 1057 под видом предоставления фиктивного займа по договорам процентных займов от 15.05.2015 № 15/05-И и от 18.05.2015 № 18/05-И на расчётный счёт подконтрольного членам организованной группы и не ведущего реальной

хозяйственной деятельности ООО «Истон» № 40702810900000100889, открытый в том же Банке.

18.05.2015 и 19.05.2015, после перечисления денежных средств Банка на расчётный счет ООО «Истон», Ячиной О.М., неосведомленной о преступных намерениях членов организованной группы, действующей по указанию восьмого установленного лица, часть похищенных денежных средств в размере 364 700 000 руб. платежными поручениями от 18.05.2015 № 39 и от 19.05.2015 № 40 под видом предоставления займа по фиктивным договорам процентных займов от 18.05.2015 № 18/05 и от 19.05.2015 № 19/05, подписанных со стороны ООО «Коллекторское агентство «Лайф» участником организованной группы седьмым установленным лицом, перечислены на расчётный счёт этой организации № 40702810800020115239, открытый в том же Банке.

18.05.2015 и 19.05.2015, после поступления похищенных у Банка денежных средств на расчётный счет ООО «Коллекторское агентство «Лайф», той же Ячиной О.М., платежными поручениями № 199 от 18.05.2015 и № 120 от 19.05.2015 часть похищенных у Банка денежных средств в размере 347 000 000 руб. под видом частичного погашения основного долга по фиктивным договорам займа от 29.01.2015 № 2901-15 и от 28.04.2014 № 2804 перечислена на расчётный счёт подконтрольной членам организованной группы и не ведущего реальной хозяйственной деятельности компании Vermenda Holdings Limited № 40807810900010030608, открытый в том же Банке.

Затем, 18.05.2015 и 19.05.2015 часть из похищенных денежных средств в размере 346 958 345 руб., неустановленными лицами, осуществляющими управление расчетным счетом Vermenda Holdings Limited № 40807810900010030608, конвертированы в доллары США с одновременным зачислением на валютный счёт компании-нерезидента Vermenda Holdings Limited № 40807840200010030608 денежных средств в размере 7 014 000 долларов США, и в числе прочих денежных средств в размере 7 600 000 долларов США неустановленными лицами на основании платежных поручений от 18.05.2015 № 278 и от 19.05.2015 № 279 перечислены на счёт этой организации № LV63KBRB1111215921001, открытый в Trasta Komercbanka Riga (Траста Комерцбанка Рига), расположенном по адресу: Palasta iela 1, Riga LV-1050, Latvija (Паласта иела 1, Рига LV-1050, Латвийская Республика).

Переведя денежные средства на счет Vermenda Holdings Limited в Trasta Komercbanka Riga, руководители организованной группы первое установленное лицо и второе установленное лицо получили реальную возможность распоряжаться ими по своему усмотрению, сокрыв путем многочисленных финансовых операций истинное предназначение кредита в размере 365 000 000 руб., выданного ООО «Восток-Карго-Плюс».

Таким образом, членами организованной группы, под руководством первого установленного лица и второго установленного лица, в которую входила Крылова М.М., в мае 2015 года путем выдачи кредита

17

подконтрольному ООО «Восток-Карго-Плюс» было присвоено 365 000 000 руб., принадлежащих Банку, тем самым причинен этой кредитной организации ущерб на указанную сумму.

Впоследствии, 06.08.2015, в день отзыва у Банка лицензии на право осуществления банковских операций, соучастники преступления – вице-президент по финансам – заместитель Председателя Правления Банка пятое установленное лицо и генеральный директор ООО «Восток-Карго-Плюс» Данукин А.В., с целью сокрытия совершенного у Банка хищения денежных средств в особо крупном размере и придания видимости законности совершенных мнимых сделок, заключили Соглашение об отступном от 06.08.2015, согласно которому обязательства ООО «Восток-Карго-Плюс» по Договору об условиях среднесрочного кредитования от 15.05.2015 № 071-810/15ю были прекращены, а в качестве исполнителя обязательств по выплате кредитных денежных средств Банк принял право требования к ООО «Истон», не осуществляющему какой-либо фактической хозяйственной деятельности.

В период предшествующий 23.06.2015, членами организованной группы план хищения денежных средств Банка был существенно изменен. С целью продолжения реализации преступного замысла, направленного на присвоение денежных средств Банка, членом организованной группы третьим установленным лицом, действующим под руководством первого установленного лица и второго установленного лица, к совершению преступления в период предшествующий 23.06.2015 в гор. Москве, точные время и место не установлены, в качестве пособника привлечен фактический руководитель ряда компаний, в том числе ООО «Центр Торговли», ООО «НьюХауТрейд», ООО «Финансовый центр «Эскада» и ООО «ПрогмаТрейд» Папахин О.Е., который согласился выступить в качестве пособника за денежное вознаграждение и содействовать совершению преступления путем предоставления ООО «Центр Торговли» и ООО «НьюХауТрейд» для оформления им фиктивного кредита и совершения фиктивных операций по перечислению денежных средств на расчетные счета подконтрольных членам организованной группы ООО «ПК-Технолоджис» и ООО «Санрис».

В свою очередь Папахин О.Е., в указанный период времени в гор. Москве, точные время и место не установлены, в качестве пособников привлек подконтрольных ему подставных генеральных директоров ООО «Центр Торговли» и ООО «НьюХауТрейд», Шпагину Л.Б. и Кравченко О.В., соответственно.

Согласно разработанной схеме, вышеуказанные общества должны были выступить фиктивными заемщиками Банка и после получения денежных средств в виде кредита, проведя операции с ценными бумагами, перечислить их на счета подконтрольных членам организованной группы ООО «Санрис» и ООО «ПК Технолоджис». При этом Папахин О.Е. обеспечил предоставление всех документов, необходимых для формирования кредитного досье, подписание договоров и перечисление денежных средств, организовал подписание необходимых документов со стороны подконтрольных ему лиц.

Участник организованной группы – вице президент по финансам – заместитель председателя правления Банка пятое установленное лицо, в период предшествующий 23.06.2015, точное время не установлено, находясь на своем рабочем месте, расположенном по адресу: гор. Москва, ул. Снежная, д. 26, продолжая реализовывать преступный умысел, направленный на хищение денежных средств Банка, в особо крупном размере, действуя от имени Банка, на основании доверенности № 92/5 от 09.02.2015, выданной ему одним из руководителей организованной группы – председателем правления Банка вторым установленным лицом, согласно которой ему делегированы полномочия по заключению кредитных договоров и распоряжению денежными средствами Банка, то есть управленческие функции административно-хозяйственного характера по распоряжению вверенными ему денежными средствами Банка, выполняя указание руководителей организованной группы первого установленного лица и второго установленного лица, действуя умышленно и согласованно с другим членами организованной группы, используя свое служебное положение, подписал от имени Банка Договор об условиях среднесрочного кредитования от 22.06.2015 № 099-810/15ю с предоставленным Папахиным О.Е. ООО «Центр торговли» в лице генерального директора общества Шпагиной Л.Б., согласно которому Банк обязуется предоставить указанному обществу в рамках открываемых кредитных линий с максимальным размером лимита задолженности в размере 1 000 000 000 руб.

При этом, Шпагина Л.Б., действуя по указанию Папахина О.Е. осознавала, что цель получения кредита ООО «Центр Торговли» является заведомо ложной, а получение кредита является способом хищения денежных средств Банка. Шпагина Л.Б., 22.06.2015, находясь в помещении Банка, расположенном по адресу: гор. Москва, Волгоградский проспект, д. 43, корп. 3, подписала от имени фиктивно возглавляемого общества вышеуказанный Договор об условиях среднесрочного кредитования от 22.06.2015 № 099-810/15ю.

23.06.2015 во исполнение вышеуказанного Договора, согласно представленной заявки от имени Шпагиной Л.Б., согласно мемориального ордера от 23.06.2015 № 1020125374 денежные средства в размере 698 200 000 руб. перечислены со ссудного счета ООО «Центр торговли» № 45205810300200007965 на расчетный счет этой организации № 40702810400000207965, открытые в Банке, расположенном по адресу: гор. Москва, ул. Пудовкина, д. 3.

После чего, денежные средства в размере 698 200 000 руб. по указанию Папахина О.Е., в тот же день, после их поступления на расчетный счет ООО «Центр торговли» № 40702810400000207965, открытый в Банке, платёжным поручением от 23.06.2015 № 94 перечислены неустановленными лицами под видом оплаты фиктивного договора купли-продажи инвестиционных паев № ПТ-ЦТ/0406 от 04.06.2015 на расчётный счёт подконтрольного Папахину О.Е. ООО «ПрогмаТрейд» № 40702810000000207844, открытый в том же Банке.

19

23.06.2015 после поступления похищаемых денежных средств на расчётный счет ООО «ПрогмаТрейд», платежным поручением от 23.06.2015 № 85 денежные средства в размере 698 200 000 руб. неустановленными лицами перечислены по фиктивному договору процентного займа № 22-06 от 22.06.2015 на расчётный счёт подконтрольного членам организованной группы и не ведущего реальной хозяйственной деятельности ООО «ПК-Технолоджис» № 40702810200110035573, открытый в том же Банке.

Затем, 23.06.2015, то есть в этот же день, после перечисления похищенных денежных средств на расчётный счет ООО «ПК-Технолоджис», Ячиной О.М., неосведомлённой о преступных намерениях членов организованной группы, действующей по указанию восьмого установленного лица и по согласованию с Крыловой М.М., платежным поручением от 23.06.2015 № 124 под видом предоставления займа по фиктивному договору процентного займа от 23.06.2015 № 23-06/2015, заключенному со стороны ООО «Коллекторское агентство «Лайф» участником организованной группы седьмым установленным лицом денежные средства в размере 698 200 000 руб. перечислены на расчётный счёт этой организации № 40702810300110117621, открытый в том же Банке.

После чего, 24.06.2015 после поступления похищенных у Банка денежных средств на расчётный счет ООО «Коллекторское агентство «Лайф», той же Ячиной О.М., платежными поручениями от 24.06.2015 №№ 1114, 1115, 1116 под видом погашения основного долга по договорам займа от 06.07.2012 № 06-07/12, от 29.07.2011 № 29-01/2011-3 и от 28.12.2012 № 28-12/1 денежные средства в размере 698 200 000 руб., похищенные у Банка, в числе прочих денежных средств в размере 700 000 000 руб., перечислены на расчётный счёт подконтрольной членам организованной группы и не ведущей реальной хозяйственной деятельности компании Vermenda Holdings Limited № 40807810900010030608, открытый в том же Банке.

Затем, 25.06.2015, похищенные денежные средства в размере 698 200 000 руб., в числе прочих денежных средств в размере 702 969 800 руб., неустановленными лицами, осуществляющими управление расчетным счетом Vermenda Holdings Limited № 40807810900010030608, конвертированы в доллары США с одновременным зачислением на валютный счёт компании-нерезидента Vermenda Holdings Limited № 40807840200010030608 денежных средств в размере 13 000 000 долларов США, которые в тот же день неустановленными лицами на основании платежного поручения от 25.06.2015 № 281 перечислены на счёт этой организации № LV63KBRB1111215921001, открытый в Trasta Komercbanka Riga (Траста Комерцбанка Рига), расположенном по адресу: Palasta iela 1, Riga LV-1050, Latvija (Паласта иела 1, Рига LV-1050, Латвийская Республика).

Переведя денежные средства на счет Vermenda Holdings Limited в Trasta Komercbanka Riga, руководители организованной группы первое установленное лицо и второе установленное лицо, получили

реальную возможность распоряжаться ими по своему усмотрению, сокрыв путем многочисленных финансовых операций истинное предназначение кредита в размере 698 200 000 руб., выданного ООО «Центр Торговли».

Таким образом, членами организованной группы, под руководством первого установленного лица и второго установленного лица, в которую входила Крылова М.М., в июне 2015 года путем выдачи кредита ООО «Центр торговли» было похищено путем присвоения 698 200 000 руб., принадлежащих Банку, тем самым причинен этой кредитной организации ущерб на указанную сумму.

03.08.2015, соучастники преступления – начальник Департамента корпоративных финансов Банка шестое установленное лицо и генеральный директор ООО «Центр торговли» Шпагина Л.Б., с целью сокрытия совершенного у Банка хищения денежных средств в особо крупном размере и придания видимости законности совершенных мнимых сделок, заключили Соглашение об отступном от 03.08.2015, согласно которому обязательства ООО «Центр торговли» по Договору об условиях среднесрочного кредитования от 22.06.2015 № 099-810/15ю были прекращены, а в качестве исполнителя обязательств по выплате кредитных денежных средств Банк принял право требования к подконтрольному участникам преступления ООО «ПК-Технолоджис», не осуществляющему какой-либо фактической хозяйственной деятельности.

Участник организованной группы – начальник департамента корпоративных финансов Банка шестое установленное лицо, действуя от имени Банка, на основании доверенности № 120/2 от 17.02.2015, выданной одним из руководителей организованной группы – председателем правления Банка вторым установленным лицом, согласно которой ему делегированы полномочия по заключению кредитных договоров и распоряжению денежными средствами Банка, то есть управленческие функции административно-хозяйственного характера по распоряжению вверенными ему денежными средствами Банка, выполняя указание руководителей организованной группы второго установленного лица и первого установленного лица, действуя умышленно и согласованно с другим членами организованной группы, используя свое служебное положение, 28.07.2015, находясь на своем рабочем месте, расположенном по адресу: г. Москва, ул. Бутырская, д. 62, подписал от имени Банка Договор об условиях среднесрочного кредитования от 28.07.2015 № 137-810/15ю с предоставленным Папахиным О.Е. ООО «НьюХауТрейд» в лице генерального директора общества Кравченко О.В., согласно которому Банк обязуется предоставить указанному обществу кредит в рамках открываемых кредитных линий с максимальным размером лимита задолженности в размере 1 000 000 000 рублей.

При этом, Кравченко О.В., действуя по указанию Папахина О.Е. осознавала, что цель получения кредита ООО «НьюХауТрейд» является заведомо ложной, а получение кредита является способом хищения денежных средств Банка. Кравченко О.В. 28.07.2015, находясь в помещении

21

Банка, расположенном по адресу: гор. Москва, Бутырская, д. 62, подписала от имени фиктивно возглавляемого общества вышеуказанный Договор об условиях среднесрочного кредитования от 28.07.2015 № 137-810/15ю.

28.07.2015 во исполнение вышеуказанного Договора, согласно представленной заявки от имени Кравченко О.В. и мемориального ордера от 28.07.2015 № 1020346334 денежные средства в размере 499 995 968 руб. перечислены со ссудного счета ООО «НьюХауТрейд» № 45205810900200007734 на расчетный счет № 40702810000000207734 этой организации, открытые в Банке, расположенном по адресу: гор. Москва, ул. Пудовкина, д. 3.

28.07.2015, после поступления денежных средств на расчётный счёт ООО «НьюХауТрейд» № 40702810000000207734, открытый в Банке, денежные средства в размере 499 995 968 руб., похищенные у Банка, платёжным поручением от 28.07.2015 № 9 неустановленными лицами по указанию Папахина О.Е. перечислены под видом оплаты по фиктивному договору купли-продажи инвестиционных паев от 28.07.2015 № ЭС-НХТЭ2015-1Б на расчётный счёт подконтрольного Папахину О.Е. ООО «Финансовый центр «Эскада» № 40702810800000210934, открытый в том же Банке.

28.07.2015 после поступления похищенных у Банка денежных средств на расчётный счет ООО «Финансовый центр «Эскада», платежным поручением № 35 от 28.07.2015 похищенные денежные средства в размере 499 995 968 руб. по фиктивному договору процентного займа от 28.07.2015 № 28-07 неустановленными лицами по указанию Папахина О.Е. перечислены на расчётный счет подконтрольного членам организованной группы и не ведущего реальной хозяйственной деятельности ООО «Санрис» № 40702810500070015537, открытый в том же Банке.

Затем, 29.07.2015, то есть на следующий день, после перечисления похищенных денежных средств на расчётный счет ООО «Санрис», Ячиной О.М., неосведомлённой о преступных намерениях членов организованной группы, действующей по указанию восьмого установленного лица, и по согласованию с Крыловой М.М., платёжными поручениями от 29.07.2015 №№ 44, 45, 46. 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, основная часть денежных средств в размере 498 871 028,03 руб. под видом погашения процентов и основного долга по ранее заключенным фиктивным договорам процентных займов от 01.08.2013 № 01/08/13-САН, от 26.12.2013 № 26/12/13-САН, от 31.01.12 № 31/01/12-САН, от 02.03.2012 № 02/03/12-САН, от 27.02.2012 № 27/02/12-САН, от 12.10.2012 № 12/10/12_САН и предоставления займа по фиктивному договору процентного займа от 29.07.2015 № 29/07/15-САН, заключенных со стороны ООО «Коллекторское агентство «Лайф» участником организованной группы седьмым установленным лицом, перечислены на расчётный счёт этой организации № 40702810300110117621, открытый в том же Банке.

29.07.2015 и 30.07.2015 после поступления похищенных у Банка денежных средств на расчётный счет ООО «Коллекторское агентство

22

«Лайф», той же Ячиной О.М., платежными поручениями от 29.07.2015 № 1372, № 1373, № 1374 и от 30.07.2015 № 1426 под видом погашения основного долга по фиктивным договорам займа от 06.07.2012 № 06-07/12, от 30.08.2012 № 30-08/12, от 28.12.2012 № 28-12/1 и от 28.04.2014 № 2804 денежные средства, похищенные у Банка, в числе прочих денежных средств в размере 600 000 000 руб. перечислены на расчётный счёт подконтрольной членам организованной группы и не ведущей реальной хозяйственной деятельности компании Vermenda Holdings Limited № 40807810900010030608, открытый в том же Банке.

Затем, 30.07.2015, похищенные денежные средства в размере 499 995 968 руб., в числе прочих денежных средств в размере 600 000 000 руб., неустановленными лицами, осуществляющими управление расчетным счетом Vermenda Holdings Limited № 40807810900010030608, конвертированы в доллары США с одновременным зачислением на валютный счёт компании-нерезидента Vermenda Holdings Limited № 40807840200010030608 денежных средств в размере 10 015 000 долларов США, часть из которых в размере 10 000 000 долларов США в тот же день неустановленными лицами на основании платежных поручений от 30.07.2015 №№ 290 и 291 перечислены на счёт этой организации № LV63KBRB111215921001, открытый в Trasta Komercbanka Riga (Траста Комерцбанка Рига,), расположенном по адресу: Palasta iela 1, Riga LV-1050, Latvija (Паласта иела 1, Рига LV-1050, Латвийская Республика).

Переведя денежные средства на счет Vermenda Holdings Limited в Trasta Komercbanka Riga, руководители организованной группы первое установленное лицо и второе установленное лицо получили реальную возможность распоряжаться ими по своему усмотрению, сокрыв путем многочисленных финансовых операций истинное предназначение кредита в размере 499 995 968 руб., выданного ООО «НьюХауТрейд».

Таким образом, членами организованной группы, под руководством первого установленного лица и второго установленного лица, в которую входила Крылова М.М., в июле 2015 года путем выдачи кредита ООО «НьюХауТрейд» было похищено путем присвоения 499 995 968 руб., принадлежащих Банку, тем самым причинен этой кредитной организации ущерб на указанную сумму.

Впоследствии, 29.07.2015, то есть на следующий день после выдачи кредита, соучастники преступления – начальник Департамента корпоративных финансов Банка шестое установленное лицо и генеральный директор ООО «НьюХауТрейд» Кравченко О.В., с целью сокрытия совершенного у Банка хищения денежных средств в особо крупном размере и придания видимости законности совершенных мнимых сделок, заключили Соглашение об отступном от 29.07.2015, согласно которому обязательства ООО «НьюХауТрейд» по Договору об условиях среднесрочного кредитования от 28.07.2015 № 137-810/15ю были прекращены, а в качестве исполнителя обязательств по выплате кредитных денежных средств Банк принял право требования к подконтрольному участникам преступления

ООО «Санрис», не осуществляющему какой-либо фактической хозяйственной деятельности.

Всего, членами организованной группы, в которую входила Крылова М.М. под руководством первого установленного лица и второго установленного лица с сентября 2014 года по август 2015 года путем выдачи кредитов ООО «ИСК ИвСпецГарант», ООО «Инжиниринг-Роялти», ООО «Восток-Карго-Плюс», ООО «Центр Торговли» и ООО «НьюХауТрейд» было присвоено 2 443 195 968 (два миллиарда четыреста сорок три миллиона сто девяносто пять тысяч девятьсот шестьдесят восемь) руб. и тем самым причинён ущерб АКБ «Пробизнесбанк» в особо крупном размере.

Таким образом, своими умышленными действиями Крылова М.М. совершила пособничество – содействие совершению преступления предоставлением информации и средств совершения преступления, устранением препятствий, а также обещанием скрыть следы преступления, в совершении присвоения, то есть хищения чужого имущества, вверенного виновному, лицом с использованием своего служебного положения, организованной группой, в особо крупном размере.

В судебном заседании государственный обвинитель заявил, что подсудимая Крылова М.М. привлечена к уголовной ответственности обосновано, её виновность в инкриминируемом ей деянии полностью доказана собранными в ходе досудебного производства доказательствами. При производстве предварительного следствия с обвиняемой Крыловой М.М. заключено досудебное соглашение о сотрудничестве, условия которого ею соблюдены, а обязательства, предусмотренные данным соглашением, выполнены.

Подсудимая Крылова М.М. в суде показала, что с предъявленным обвинением она согласна, в ходе предварительного следствия активно содействовала расследованию преступления, изобличению и уголовному преследованию других соучастников преступления. Досудебное соглашение о сотрудничестве, пояснила подсудимая, заключено ею добровольно и при участии защитника.

Защитник Сапронов А.В. заявил, что все условия досудебного соглашения о сотрудничестве его подзащитной соблюдены, а поэтому имеются основания для постановления приговора в порядке ст.317-7 УПК РФ.

Как видно из заявления представителя потерпевшего, она не возражает против постановления приговора в особом порядке принятия судебного решения при заключении досудебного соглашения о сотрудничестве.

24

Судом установлено, что Крыловой М.М. соблюдены условия и выполнены обязательства, предусмотренные заключенным с ней досудебным соглашением о сотрудничестве.

Обвинение, с которым согласилась Крылова М.М. обоснованно и подтверждено собранными по делу доказательствами.

Суд квалифицирует действия Крыловой М.М. по ч.5 ст.33, ч.4 ст.160 УК РФ, поскольку она совершила пособничество в присвоении, то есть хищение чужого имущества, вверенного виновному, лицом с использованием своего служебного положения, организованной группой, в особо крупном размере.

При назначении наказания в соответствии со ст. 60 УК РФ, суд учитывает характер и степень общественной опасности совершенного преступления и данные о личности подсудимой, отмечая следующее:

Крылова М.М. с предъявленным обвинением согласна, вину в содеянном признала полностью, в чем чистосердечно раскаялась, ранее не судима, впервые привлекается к уголовной ответственности, положительно характеризуется по месту жительства и работы, имеет на иждивении совершеннолетнего сына, являющегося студентом 2 курса, и мать пенсионерку, страдающей заболеванием, являющейся инвалидом 3 группы, по состоянию здоровья страдает заболеваниями, что в совокупности, в соответствии со ст.61 УК РФ, суд признает обстоятельствами, смягчающими её наказание.

Кроме того, обстоятельством, смягчающим наказание Крыловой М.М., суд признает в соответствии с п.п. «и», «к» ч.1 ст. 61 УК РФ – активное способствование расследованию преступления, изобличению других соучастников преступления, а также совершение действий, направленных на заглаживание вреда, причиненного потерпевшему, и назначает наказание в соответствии со ст.62 УК РФ.

Обстоятельств, отягчающих наказание подсудимой Крыловой М.М., предусмотренных ст.63 УК РФ, судом по делу не установлено.

При этом, несмотря на наличие обстоятельств, смягчающих наказание подсудимой, при отсутствии обстоятельств, отягчающих ей наказание, учитывая фактические обстоятельства совершенного ею преступления, степени его общественной опасности, суд не находит оснований для изменения, согласно ч.6 ст. 15 УК РФ, категории преступлений на менее тяжкую.

Исходя из обстоятельств дела, а также личности подсудимой Крыловой М.М., а также принимая во внимание, что данное преступление является умышленным, учитывая характер и степень фактического участия Крыловой М.М. в совершенном ею преступлении, наличие обстоятельств, смягчающих

25

наказание и отсутствие обстоятельств, отягчающих её наказание, влияние назначенного наказания на исправление подсудимой и на условия жизни её семьи, суд приходит к выводу о том, что исправление и перевоспитание подсудимой Крыловой М.М., возможно лишь в условиях изоляции от общества и, назначая ей наказание в виде лишения свободы, не усматривает оснований для применения положений ст. 64 УК РФ либо ст.73 УК РФ.

Суд полагает необходимым назначить Крыловой М.М. наказание в виде штрафа, размер которого определяет исходя из материального положения подсудимой и состава её семьи.

При этом, суд полагает возможным исправление подсудимой без применения дополнительного вида наказания Крыловой М.М. в виде ограничения свободы.

Местом отбывания наказания Крыловой М.М., суд назначает в соответствии с п. «б» ч.1 ст. 58 УК РФ, исправительную колонию общего режима.

Срок отбывания наказания Крыловой М.М., суд полагает необходимым исчислять с момента постановления настоящего приговора, с зачетом времени содержания под стражей с момента фактического задержания и времени содержания под домашним арестом (том 93 л.д.17, том 93 л.д.118-123).

Заявленный иск представителем потерпевшего Савина Василия Анатольевича о возмещении причиненного ущерба на общую сумму 2 443 195 968 (два миллиард четыреста сорок три миллиона сто девяносто пять тысяч девятьсот шестьдесят восемь) рублей, суд оставляет без рассмотрения, поскольку данные требования потерпевшего рассмотрены Останкинским районным судом г.Москвы 26 апреля 2017 года.

На основании изложенного и руководствуясь ст.317.7 УПК РФ, суд

## П Р И Г О В О Р И Л :

Крылову Марину Михайловну признать виновной в совершении преступления, предусмотренного ч.5 ст.33, ч.4 ст.160 УК РФ, и назначить ей наказание в виде лишения свободы сроком на 3 (три) года 6 (шесть) месяцев со штрафом в размере 1 000 000 (один миллион) рублей, с отбыванием наказания в исправительной колонии общего режима.

Меру пресечения Крыловой М.М. в виде домашнего ареста изменить на заключение под стражу, взяв её под стражу в зале суда.

Срок отбывания наказания Крыловой М.М. исчислять с 25 мая 2017 года. Зачесть в срок отбывания наказания время содержания под стражей с момента фактического задержания с 17 февраля 2016 года по 14 июля 2017

26

года и время содержания под домашним арестом с 14 июля 2016 года по 24 мая 2017 года.

Заявленный иск представителем потерпевшего Савина Василия Анатольевича о возмещении причиненного ущерба на общую сумму 2 443 195 968 (два миллиарда четыреста сорок три миллиона сто девяносто пять тысяч девятьсот шестьдесят восемь) рублей, оставить без рассмотрения.

Вещественные доказательства, предметы и документы, хранящиеся в материалах уголовного дела, оставить на хранении там же; сотовые телефоны и жесткий диск, хранящиеся в камере вещественных доказательств ГСУ СК РФ, хранить до принятия решения по выделенному уголовного делу.

Приговор может быть обжалован в апелляционном порядке в Московский городской суд в течение 10 суток со дня его провозглашения.

В случае подачи апелляционной жалобы осужденная вправе ходатайствовать о своем участии в рассмотрении уголовного дела судом апелляционной инстанции, о чём должна указать в своей апелляционной жалобе, а в случае рассмотрения уголовного дела по представлению прокурора, или по жалобам других лиц – в отдельном ходатайстве или возражениях на жалобу либо представление.

Председательствующий:



Прошито и пронумеровано
на ___ листах.
Судья ___
Секретарь ___