UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Application of DEPOSIT INSURANCE AGENCY for an order to conduct discovery for use in a foreign proceeding.<br><br>　　　　　　　Petitioner. | Case No.   1:17-mc-00414-GBD |

## DECLARATION OF MAKSIM KHAMCHICH
## IN OPPOSITION TO QUASH SUBPOENA

　　　　I, Khamchich Maksim Aleksandrovich, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury as follows:

　　　　1.　　I am the representative of the State Corporation "Deposit Insurance Agency" ("DIA"), the Petitioner in this proceeding.

　　　　2.　　My native language is Russian, and I am executing this Declaration in Russian with the understanding that it will be translated into English and submitted to the Court in opposition to the motion filed by Sergey Leontiev ("Leontiev") to quash the Subpoena served upon Leontiev by DIA's counsel.

　　　　3.　　I have graduated from Moscow State University of Instrument Engineering and Informatics in 2006. I was majoring in State and municipal management. I have graduated from Peoples' Friendship University of Russia (RUDN) in 2007, majoring in law.

　　　　4.　　I have started my working activity in DIA from 2009. I was hired to the position of legal counsel of the first category and nowadays I am a general representative.

　　　　5.　　DIA serves as manager/liquidator for the bankruptcy estate of Probusiness Bank ("PBB"), and in order to fulfill its duties, DIA is required to use its best efforts to marshal the assets of PBB.

　　　　6.　　I perform the powers of representative of the Bankruptcy manager of PBB from August 24, 2017. Please find enclosed Exhibit 1 which is true and correct copy of the extract from the minutes of DIA Board meeting No. 103 dated August 24, 2017. Please find

1

enclosed Exhibit 2 which is true and correct copy of the Power of Attorney No. 1425 dated August 24, 2017 issued to M. A. Khamchich.

7. Within the period from October 29, 2015 to April 21, 2016 and from June 2, 2016 to August 24, 2017 Vasily Feliksovich Bednin performed the powers of representative of the Bankruptcy manager. Within the period from April 21, 2016 to June 2, 2016 Denis Nikolaevich Baklitskiy performed the powers of representative of the Bankruptcy manager. Please find enclosed Exhibit 3 which is true and correct copy of the extract from the minutes of DIA Board meetings No. 157 dated October 29, 2015, No. 56 dated April 21, 2016, No. 75 dated June 2, 2016.

8. As set forth in the accompanying Declaration of Anastasiya Zhidchenko and in the Declaration of Daria Diachenko dated 25 October, 2017, DIA's investigation has confirmed that Leontiev has information and access to documents that are material and necessary for DIA to trace PBB's assets and fulfill its duties to PBB's creditors.

9. Leontiev's motion includes an unsupported attack on DIA and a distortion of the role of DIA in Russian banking. DIA is akin to the Federal Deposit Insurance Corporation ("FDIC") in the United States. When a bank is insolvent and a bankruptcy proceeding is commenced, DIA must come into the proceeding. DIA's role is not discretionary. DIA does not target banks or individuals based on political or other motivations. When a bank has failed, DIA uses its best efforts to locate, marshal and obtain assets of the estate that can be used to satisfy creditor claims. DIA is required to investigate potentially fraudulent transactions of the failed bank and to file motions in the bankruptcy proceeding to undo any fraudulent transactions that may be uncovered. DIA is expected to investigate and to obtain records as part of this process.

10. The information that DIA seeks from Leontiev here is necessary for DIA to fulfill its duties. Co-conspirators of Leontiev's have provided witness statements containing the names of the entities through which assets were siphoned from PBB. DIA seeks documents concerning the transactions conducted by these entities in order to trace PBB's assets. This

2

process is not unique to either Leontiev or to PBB. DIA routinely investigates and obtains documents necessary to trace and recover assets that have been embezzled or illegally siphoned from failed banks. In this case, the individual most likely to have control of this information – Leontiev -- has absconded to the United States, so DIA is using the United States procedure for obtaining this information from Leontiev now that he resides in the U.S. The court presiding over the Russian Bankruptcy Proceeding will accept and consider both documents and sworn testimony that DIA obtains in this proceeding concerning these transactions.

      11.    Based on documents and reporting submitted to DIA by the provisional administration managing PBB, I know the following facts and circumstances that led to PBB's bankruptcy.

      12.    Before assigning of the provisional administration to manage PBB, the Central Bank of the Russian Federation repeatedly issued instructions to PBB to rectify violations due to PBB's failure to observe the regulatory restrictions for security transactions (including violations of depository regulations) with respect to certain securities that were registered with non-residential entities. PBB was required to transfer / send a request to transfer the securities and owner registration of certain securities that were held by the following depositories that did not meet regulatory standards: Otkritie Capital International Limited and BROCERCREDITSERVICE (CYPRUS) LIMITED. Please find enclosed Exhibit 4, which is true and correct copy of prescriptive order of the Central Bank dated August 6, 2015 under the No. Т1-40-7-10/121781Дсп.

      13.    Due to PBB's violation of the prescriptive order of the Central Bank of the Russian Federation and in order to examine the financial standing and asset quality of the PBB, The Central Bank of the Russian Federation (through its order No. ОД-2028) imposed provisional administration to manage the credit institution on August 7, 2015. The provisional administration, pursuant to its duties and powers, performed an examination of the credit institution and found grounds to revoke the bank license.

14. Particularly, it was discovered that PBB engaged in a policy of high-risk transactions through placing the bank funds into low quality/high risk assets: the assets were placed into foreign depositories, which were pledged and eventually withdrawn in favour of third parties to the detriment of financial interests of PBB and the Bank's creditors.

15. The provisional administration has found that PBB pledged certain of its securities to a depository (Otkritie Capital International Limited) as guarantor to secure obligations of Ambika Investments Limited company. PBB pledged certain of its securities to another depository (BROCERCREDITSERVICE (CYPRUS) LIMITED) as guarantor to secure obligations of Merrianol Investments Limited company. Both of these secured parties exercised their rights and seized the PBB securities that were pledged as collateral to secure the guarantees..

16. Due to the fact that information about pledged assets and the bank guarantee were not reflected in the financial statements of PBB, most likely the information was not available neither to the auditors, nor to the Central Bank of the Russian Federation. In that case, the conclusions made by the auditing company (Deloitte & Touche CIS) and in notifications of the Central Bank of the Russian Federation dated February 13, 2015 and May 7, 2015 were based on unreliable and incomplete reporting, hence they could not be considered reasonable and confirming the real financial standing of PBB.

17. Based on the results of the analysis performed by the provisional administration of PBB's financial standing, the existence of the fraudulent transactions performed through distribution of funds among credit institutions and companies of the LIFE group that was described in the Diachenko Declaration was confirmed. It was revealed that substantial loans were issued in favour of sham companies and that PBB had many problem assets. This analysis revealed the real financial result of the activities of PBB.

18. Taking into account PBB's repeated failure to comply with prescriptive orders of the Central Bank of the Russian Federation, PBB's violation of banking regulations

(including capital adequacy ratios), and PBB's significant decrease (loss) of its assets, the Central Bank of the Russian Federation through its order No. ОД-2071 dated August 12, 2015 revoked PBB's license.

19. Neither Leontiev nor anyone else appealed the revocation of PBB's license or otherwise contended, as Leontiev does now, that PBB was actually solvent.

20. PBB's assets were insufficient to satisfy creditors' claims. The assets' value as of the date the PBB's license was revoked was equal to RUB 86,910,244,000, however the liabilities to the creditors were equal to RUB 127,751,905,000, i.e. liabilities exceeded assets in the amount equal to RUB 40,841,661,000[1]. As a result, the Central Bank of the Russian Federation according to established procedure applied to Commercial Arbitrazh Court of Moscow and the court issued an order (dated October 28, 2015 on the case No. A40-154909/2015) according to which the PBB was acknowledged insolvent, the receivership procedure was initiated against the Bank and functions of the Bankruptcy Manager were assigned to DIA.

21. Within the period from August 10 to August 11, 2015 the provisional administration of the Bank made customer and ordinary payments only, pursuant to the order of priority of the clients at the moment of insufficiency of funds in the corresponding accounts of PBB to satisfy all accepted requests. Payment in favour of BANK ROSSIYSKY CAPITAL (Public Joint stock company) in the amount of RUB 604,1 million was made by mistake, due to the improper setting up of a register of payments by PBB employees. When the mistake was discovered, these funds upon DIA's request had been returned to the Bank, and the transaction did not harm PBB's creditors.

22. After revocation of PBB's licence by the Central Bank in accordance with established procedure, a plan for engagement of DIA into settling the liabilities was approved.

---

[1] The amount of rubles set forth in paragraph 19 of Daria Diachenko declaration is incorrect. It was based upon an error in the text of the judgment declaring PRBB bankrupt and was corrected in a ruling of the Commercial Arbitrazh court of Moscow dated December 15, 2015 on the case No. A40-154909/2015.

5

Within the framework of the plan, liabilities of PBB to the first-priority creditors (individuals) were transferred to *BINBANK (Public Joint stock company)* in the amount 24,020,960,288 rubles 89 kopecks, as well as a part of the assets belonging to PBB (funds, receivables, securities, real estates) in equal proportion (evaluated according to balance sheet assets) to the amount of liabilities.

23. After revocation of PBB's licence, DIA in accordance with established procedure performed the process to select (hold a tender for) retaining a consultant to cover the legal issues of PBB's bankruptcy procedure. The successful tenderer that submitted the most favourable terms of collaboration was Moscow Bar Association QUORUM. The relevant Legal Aid Agreement (including aid in legal proceedings in foreign jurisdictions against the persons controlling PBB) was concluded.

24. All activities performed by the Bankruptcy manager and the legal consultant are aimed to increase the bankruptcy estate and satisfy PBB's creditors' claims in full. The total number of creditors is 7968 with liabilities totalling 84,244,182,834 rubles 29 kopecks. The documents and testimony sought in this proceeding would greatly assist the bankruptcy receiver in his efforts to maximize recovery for those depositors and creditors who have suffered.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 19 day of February, 2018 in Moscow, Russia.

/signature/

Khamchich Maksim Aleksandrovich

## CERTIFICATION

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate translation from Russian into English of the attached Declaration of Maksim Khamchich in opposition to quash subpoena [In re Application of DEPOSIT INSURANCE AGENCY for an order to conduct discovery for use in a foreign proceeding].

I, Kuliev Bairam Durdyklychevich, hereby confirm that I am certified English language translator. Higher education diploma No.: 0009569 issued by decision of the State Examination Board of Turkmen State University named after Magtymguly, on June 11, 1997. Registration No. 22.

Executed this 20th day of February, 2018 in Moscow, Russia.

B.D. Kuliev

RUSSIAN FEDERATIVE REPUBLIC            )
MOSCOW OBLAST                          )
CITY OF MOSCOW                         ) SS:
EMBASSY OF THE UNITED STATES OF AMERICA )
CONSULAR SECTION                       )

SUBSCRIBED AND SWORN TO BEFORE ME THIS
20th DAY OF February, 2018

Lilia Lally
Consular Associate
U.S. Embassy Moscow

Commission Indefinite

ФЕДЕРАЛЬНЫЙ ОКРУЖНОЙ СУД
ЮЖНОГО ОКРУГА г. НЬЮ-ЙОРК

В ответ на заявление ГК АСВ о выдаче приказа о раскрытии доказательств в поддержку иностранного судебного производства

Дело No

Заявитель

## ВОЗРАЖЕНИЯ МАКСИМА ХАМЧИЧА НА ХОДАТАЙСТВО ОТВЕТЧИКА ОБ ОТМЕНЕ СУДЕБНОЙ ПОВЕСТКИ

Я, Хамчич Максим Александрович, будучи предупрежденным об уголовной ответственности за предоставление заведомо ложных сведений согласно §1746 раздела 28 Свода законов США, настоящим заявляю:

1. Я – представитель Государственной корпорации «Агентство по страхованию вкладов» (далее – АСВ), Заявителя в рамках настоящего судебного производства.

2. Моим родным языком является русский и я предоставляю настоящие Возражения на русском языке, осознавая, что они будут переведены на английский язык и поданы в Суд в качестве возражений на ходатайство Сергея Леонтьева (далее – Леонтьев) об отмене судебной повестки, врученной Леонтьеву консультантом АСВ.

3. В 2006 году я окончил Московский государственный университет приборостроения и информатики по специальности «государственное и муниципальное управление». В 2007 году я окончил Российский университет дружбы народов по специальности «юриспруденция».

4. Начиная с 2009 года осуществляю свою трудовую деятельность в АСВ. Был принят на работу на должность юрисконсульта 1-й категории, в настоящий момент - генеральный представитель.

5. АСВ является конкурсным управляющим в рамках банкротства ОАО АКБ «Пробизнесбанк» (далее – ПРББ), и в целях надлежащего исполнения своих

1

обязательств АСВ обязано действовать наиболее эффективно, используя активы ПРББ для погашения долгов.

6. Я осуществляю полномочия представителя Конкурсного управляющего ПРББ с 24.08.2017. В приложении №1 находится верная и точная копия выписки из протокола №103 от 24.08.2017 заседания Правления Агентства. В приложении №2 находится верная и точная копия доверенности №1425 от 24.08.2017, выданная на имя Хамчича М.А.

7. В период с 29.10.2015 до 21.04.2016 и с 02.06.2016 до 24.08.2017 полномочия представителя конкурсного управляющего ПРББ осуществлял Беднин Василий Феликсович. В период с 21.04.2016 до 02.06.2016 полномочия представителя конкурсного управляющего ПРББ осуществлял Баклицкий Денис Николаевич. В приложении №3 находится верная и точная копия выписок из протоколов заседания Правления Агентства №157 от 29.10.2015, №56 от 21.04.2016, №75 от 02.06.2016.

8. Как указано в также предоставляемой Декларации Анастасии Жидченко и Декларации Дарьи Дяченко от 25.10.2017, по результатам расследования АСВ установлено, что Леонтьев обладает информацией и доступом к документам, имеющим существенное значение и необходимым для обнаружения активов ПРББ и исполнения обязательств ПРББ перед кредиторами.

9. Ходатайство Леонтьева содержит необоснованные обвинения в адрес АСВ и искажение роли АСВ в российской банковской системе. АСВ аналогично Федеральной корпорации по страхованию вкладов (далее – ФКСВ) в США. В случае несостоятельности банка и открытии в отношении него процедуры банкротства, АСВ обязано вступить в такую процедуру. Роль АСВ в данном случае не зависит от его воли. АСВ не осуществляет преследование банков и отдельных физических лиц по политическим и иным мотивам. В случае краха банков, АСВ предпринимает максимальные усилия для установления, распределения и получения активов,

2

составляющих конкурсную массу, для удовлетворения требований кредиторов. АСВ обязано расследовать потенциально незаконные операции обанкротившегося банка и подавать различные заявления в рамках дела о банкротстве об оспаривании таких операций, для чего АСВ должно выяснять все необходимые обстоятельства и получать необходимую документацию.

10. Информация, которую АСВ истребует у Леонтьева в рамках настоящего производства, необходима для исполнения АСВ своих обязательств. Пособники Леонтьева предоставили свидетельские показания, содержащие наименование компаний, через которые осуществлялся вывод активов ПРББ. АСВ добивается получения документов, касающихся операций, совершенных этими компаниями, для обнаружения активов ПРББ. Данная процедура не является ничем необычным ни для Леонтьева, ни для ПРББ. АСВ на постоянной основе осуществляет поиск и получение документации, необходимой для обнаружения и восстановления активов, которые были присвоены или незаконно выведены из обанкротившихся банков. В данном случае, лицо, наверняка обладающее необходимой информацией – Леонтьев – скрывается в США, в связи с чем АСВ вынуждено истребовать у Леонтьева информацию в рамках процедур США. Суд, в производстве которого находится российское дело о банкротстве ПРББ, примет и рассмотрит как документы, так и показания, относящиеся к указанным операциям, полученные АСВ в рамках настоящего производства.

11. На основании документов и отчетности, переданной временной администрацией по управлению ПРББ, мне известны следующие факты и обстоятельства, которые привели к банкротству ПРББ.

12. До введения временной администрации по управлению ПРББ Центральным Банком России неоднократно выносились предписания в адрес ПРББ об устранении нарушений, выразившихся в несоблюдении ПРББ нормативных ограничений на операции (в том числе, депозитарный учет) ПРББ с ценными бумагами, учет прав на

3

которые осуществляется нерезидентами. ПРББ надлежало осуществить перевод/направить поручения на перевод ценных бумаг, учет прав на которые осуществлялся депозитариями Otkritie Capital International Limited и BROCERCREDITSERVICE (CYPRUS) LIMITED. В приложении №4 находится верная и точная копия предписания ЦБ РФ от 06.08.2015 №Т1-40-7-10/121781Дсп.

13. В связи с неисполнением предписаний Центрального Банка России и в целях проверки финансового состояния и качества активов ПРББ 07.08.2015 приказом Банка России № ОД-2028 была введена временная администрация по управлению кредитной организацией. Временная администрация, в силу своих обязанностей и полномочий, провела обследование кредитной организации и установила наличие оснований для отзыва лицензии.

14. В частности, было установлено, что ПРББ проводил высоко-рискованную политику, связанную с размещением денежных средств в низкокачественные/высокорискованные активы: производилось размещение активов в иностранных депозитариях, которые были обременены и впоследствии списаны в пользу третьих лиц, в ущерб финансовым интересам ПРББ и его кредиторов.

15. Временной администрацией установлено, что размещенные в депозитарии Otkritie Capital International Limited и принадлежащие ПРББ ценные бумаги были обременены поручительством ПРББ по обязательствам Ambika Investments Limited. Также принадлежащие ПРББ ценные бумаги, размещенные в депозитарии BROCERCREDITSERVICE (CYPRUS) LIMITED были обременены поручительством по обязательствам компании Merrianol Investments Limited. Оба депозитария реализовали свое право и принадлежащие ПРББ активы, являющиеся предметом поручительства, перешли в их владение.

16. Поскольку сведения об указанных обременениях и гарантиях не были отражены в бухгалтерском учете ПРББ, информация о них с высокой долей вероятности

4

не была доступна ни аудиторам, ни Центральному Банку России. В таком случае, выводы, изложенные в заключении аудиторов Deloitte & Touche CIS и уведомлениях Центрального Банка России от 13.02.2015 и 07.05.2015, основанные на недостоверной и неполной отчетности, не могут быть признаны обоснованными и свидетельствующими о реальной финансовой деятельности и финансовом состоянии ПРББ.

17. По результатам анализа финансового положения ПРББ временной администрацией подтверждено наличие схемных операций по распределению денежных потоков между связанными кредитными организациями и компаниями, входящими в группу Лайф, что было описано в декларации Дарьи Дяченко Выявлен значительный объем кредитов, выданных «техническим» компаниям и значительный объем проблемных активов ПРББ. Данный анализ выявил реальный финансовый результат деятельности ПРББ.

18. Учитывая неоднократное неисполнение ПРББ предписаний Центрального Банка России, в связи с неисполнением ПРББ требований законодательства, в том числе, несоответствие нормативов достаточности капитала, значительным снижением (утратой) собственных средств, приказом Центрального Банка России от 12.08.2015 № ОД-2071 у ПРББ отозвана лицензия на осуществление банковских операций.

19. Ни Леонтьев, ни какие-либо другие лица не обжаловали в установленном порядке приказ об отзыве у ПРББ лицензии или иным образом настаивали на платежеспособности ПРББ, как это делает Леонтьев сейчас.

20. В связи с недостаточностью имущества ПРББ для удовлетворения требований кредиторов (стоимость имущества ПРББ на дату отзыва лицензии составила 86 910 244 000 руб., а размер обязательств перед кредиторами – 127 751 905 000 руб., т.е. размер обязательств ПРББ превышал стоимость его активов (имущества) на

5

40 841 661 000 руб.)[1], Центральный Банк России в установленном порядке обратился в Арбитражный суд г. Москвы, решением которого от 28.10.2015 по делу №А40-154909/2015 ПРББ признан несостоятельным (банкротом) и в отношении него введена процедура конкурсного производства, функции Конкурсного управляющего возложены на АСВ.

21. В период действия в ПРББ временной администрации 10-11 августа 2015 года Банком проводились клиентские и хозяйственные платежи с учетом установленной законодательно очередности исполнения поручений клиентов для случаев недостаточности средств на корреспондентских счетах ПРББ для удовлетворения всех поступивших требований. Платеж в пользу АКБ «РОССИЙСКИЙ КАПИТАЛ» (ПАО) на сумму 604,1 млн руб. был осуществлен ошибочно вследствие некачественного формирования реестров платежей сотрудниками ПРББ. Когда ошибка была выявлена, указанные денежные средства были возращены ПРББ по требованию Агентства, в связи с чем данная операция не нанесла ущерба кредиторам ПРББ.

22. После отзыва у ПРББ лицензии Банком России в установленном порядке был утвержден План участия АСВ в урегулировании обязательств, в рамках которого ПАО «БИНБАНК» были переданы обязательства ПРББ перед кредиторами – физическими лицами, требования которых подлежат удовлетворению в составе кредиторов первой очереди, на сумму 24 020 960 288,89 руб. и часть активов ПРББ (денежные средства, права требования, ценные бумаги, недвижимое имущество) в равнозначном размере (по балансовой стоимости).

23. После отзыва у ПРББ лицензии АСВ в установленном порядке был осуществлен отбор (конкурс) консультанта для юридического сопровождения процедуры банкротства ПРББ. Победителем, предложившим наиболее выгодные условия для сотрудничества, является Московская коллегия адвокатов «Кворум». Было заключено

---

[1] Суммы, указанные в п. 19 декларации Дарьи Дяченко, ошибочны. Сведения были основаны на Решении о признании ПРББ банкротом, в котором были допущены опечатки, впоследствии исправленные определением Арбитражного суда г. Москвы от 15.12.2015 по делу А40-154909/15.

6

соответствующее соглашение об оказании юридической помощи, в том числе о сопровождении судебных процессов в иностранных юрисдикциях против контролирующих ПРББ лиц.

24. Все действия, осуществляемые Конкурсным управляющим совместно с привлеченным юридическим консультантом, направлены на пополнение конкурсной массы и наиболее полное удовлетворение требований кредиторов ПРББ, включенных в Реестр требований кредиторов в количестве 7 968 в совокупном размере 84 244 182 834,29 руб. Документы и показания, которые могут быть получены в рамках настоящего производства, окажут огромную поддержку конкурсному управляющему в его усилиях, направленных на максимальное удовлетворение требований пострадавших кредиторов.

Осознавая ответственность за предоставление ложных сведений в соответствии с законами Соединенных Штатов Америки, я подтверждаю, что вышеизложенная информация является верной.

Подписано _13_ февраля 2018 года в городе Москве, Российская Федерация

_____
Хамчич Максим Александрович

7

## CERTIFICATION

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate translation from Russian into English of the following documents attached:

EXHIBIT 1:   A copy of the Extract from Minutes №103 of State Corporation Deposit Insurance Agency Board meeting of dd. August 24, 2017;

EXHIBIT 2:   A copy of the Power of Attorney No. 1425 dated August 24, 2017 issued to M. A. Khamchich;

EXHIBIT 3:   A copy of the Extract from Minutes of State Corporation Deposit Insurance Agency Board meetings No. 157 dated October 29, 2015, No. 56 dated April 21, 2016, No. 75 dated June 2, 2016;

EXHIBIT 4:   A copy of prescriptive order of the Central Bank dated August 6, 2015 under the No. Т1-40-7-10/121781Дсп.

I, Kuliev Bairam Durdyklychevich, hereby confirm that I am certified English language translator. Higher education diploma No.: 0009569 issued by decision of the State Examination Board of Turkmen State University named after Magtymguly, on June 11, 1997. Registration No. 22.

Executed this 20th day of February, 2018 in Moscow, Russia.

B.D. Kuliev

RUSSIAN FEDERATIVE REPUBLIC         )
MOSCOW OBLAST                       )
CITY OF MOSCOW                      )SS:
EMBASSY OF THE UNITED STATES OF AMERICA  )
CONSULAR SECTION                    )

SUBSCRIBED AND SWORN TO BEFORE ME THIS 20th DAY OF FEBRUARY, 2018

Lilia Lally
Consular Associate
U.S. Embassy Moscow

Commission indefinite