# EXHIBIT 1

*1*

**Amendment No. 5**
**to Agreement No. VA-1-18740/1 on the Rendering of Legal Services dated 9/2/2015**

**Moscow**                                                                                                          **March 1, 2017**

PROBUSINESSBANK Joint-stock Commercial Bank (an open joint-stock company) (PROBUSINESSBANK JSCB OJSC), hereinafter referred to as the "Client" or the "Bank," represented by Vasily Feliksovich Bednin, a representative of the Bank's bankruptcy receiver, the Deposit Insurance Agency State Corporation, acting on the basis of power of attorney No. 659 dated June 2, 2016, and the decision of the Moscow Arbitrazh Court dated October 28, 2015 in Case No. A40-154909/2015, as the party of the first part, and

Andrey Alekseyevich Pavlov, an attorney from the Quorum Moscow Bar Association, holding Registration No. 77/12666 in the Register of Moscow Attorneys, ID No. 14627, issued by the Main Directorate for the City of Moscow of the RF Ministry of Justice, Chairman of the Board of the Quorum Moscow Bar Association, hereinafter referred to as the "Attorney," acting on the basis of Federal Law No. 63-FZ dated May 31, 2002 *On the Legal Profession and the Bar in the Russian Federation*, also [party] of the second part, hereinafter also [jointly] referred to as the "Parties," have entered into this Amendment No. *5* (hereinafter, the "Amendment") to Agreement No. VA-1-18740/1 on the Rendering of Legal Services dated September 2, 2016 (hereinafter, the "Agreement") as follows:

1.    The Parties have agreed to amend and restate the Agreement and its addenda as appended to this Amendment.

2.    The restated Agreement and all the addenda hereto shall enter into force and be applied by the Parties as of the date of conclusion of this Amendment.

3.    As of the date of conclusion of this Amendment, the terms and conditions of the old versions of the Agreement and the addenda thereto and amendments thereto shall lapse.

4.    This Amendment shall enter into force as of the date on which it is signed.

5.    This Amendment is made in two counterparts of equal legal force, one for each of the parties.

**ADDRESSES, DETAILS AND SIGNATURES OF THE PARTIES**

| **Client:**<br>**PROBUSINESSBANK JSCB OJSC** | **Attorney:**<br>**Quorum Moscow Bar Association** |
|---|---|
| Legal address: 4, ul. Vysotskogo, Moscow 109240<br>Actual address: Unit 2, 59 ul. Lesnaya, Moscow 127055<br>PSRN [Primary State Registration No.] 1027739154497<br>TIN/TRC: 7708514824/775001001<br>Represented by its bankruptcy receiver:<br>Deposit Insurance Agency State Corporation (DIA SC)<br>Recipient's bank: Main Directorate of the Bank of Russia<br>for the Central Federal District, Moscow 35<br>Settlement account: 40503810145250003051<br>BIC: 044525000<br><br>Representative of the bankruptcy receiver | Legal address: Bldg. 1, 11 ul. Povarskaya, Moscow 121069<br>Actual address: Bldg. 1, 11, ul. Povarskaya, Moscow 121069<br>PSRN 1177700000851<br>TIN/TRC: 7704386699/770401001<br>Settlement account: 40703810210000081320 at the<br>National Savings Bank CJSC, Ivanovo<br>BIC: 042406718<br>Correspondent account 30101810000000000718<br>Email address: ricevimento@qdmg.ru |
| [signature]          V.F. Bednin<br>Affix seal here: | [signature]          A.A. Pavlov<br>Affix seal here: |
| [seal:] Probusinessbank JSCB OJSC<br>PROBUSINESSBANK Joint-stock Commercial Bank (an<br>Open Joint-stock Company), Moscow<br>PSRN 1027739154497<br>Bankruptcy Receiver: Deposit Insurance Agency State<br>Corporation | [seal:] Quorum Moscow Bar Association, Moscow, PSRN<br>1177700000851 |

2

*1*

Addendum
to Amendment No. 5
dated *3/1/*2017 to Agreement on the
Rendering of Legal Services
No. VA-1-18740/1 dated 9/2/2015

**Agreement No. VA-1-18740/1**
**on the Rendering of Legal Assistance**

**Moscow**

PROBUSINESSBANK Joint-stock Commercial Bank (an open joint-stock company) (PROBUSINESSBANK JSCB OJSC), hereinafter referred to as the "Client" or the "Bank," represented by Vasily Feliksovich Bednin, a representative of the Bank's bankruptcy receiver, the Deposit Insurance Agency State Corporation, acting on the basis of power of attorney No. 659 dated June 2, 2016, and the decision of the Moscow Arbitrazh Court dated October 28, 2015 in Case No. A40-154909/2015, as the party of the first part, and

Andrey Alekseyevich Pavlov, an attorney from the Quorum Moscow Bar Association, holding Registration No. 77/12666 in the Register of Moscow Attorneys, ID No. 14627, issued by the Main Directorate of the RF Ministry of Justice for the City of Moscow, Chairman of the Board of the Quorum Moscow Bar Association, hereinafter referred to as the "Attorney," acting on the basis of Federal Law No. 63-FZ dated May 31, 2002 *On the Legal Profession and the Bar in the Russian Federation*, as the party of the second part, hereinafter also [jointly] referred to as the "Parties," have entered into this Amendment No. *5* (hereinafter, the "Amendment") to Agreement No. VA-1-18740/1 on the Rendering of Legal Services dated September 2, 2016 (hereinafter, the "Agreement") as follows:

## 1. SUBJECT MATTER OF THE AGREEMENT

1.1  The Attorney undertakes, upon the Client's instructions, to render legal assistance (hereinafter, the "services") in the volume, as per the timeframe and on the terms provided for by this Agreement, and the Client undertakes to pay for these services.

1.2  A list of the services to be rendered by the Attorney is set out in the terms of reference (Addendum 1 to this Agreement), which shall be signed by the Parties and constitutes an integral part of this Agreement (hereinafter, the "Terms of Reference").

1.3  The timeframe for the rendering of the services shall be established in the Terms of Reference.

## 2. RIGHTS AND OBLIGATIONS OF THE PARTIES

**2.1    The Attorney shall:**

2.1.1    Duly discharge the obligations he has assumed in the volume and by the deadlines determined in the Terms of Reference, using his special knowledge of law and performing all the actions required for the performance of the Client's instructions, provided such actions do not contravene the law;

2.1.2    In performing this Agreement, act in the Client's interests with the same level of efficiency and care, reasonableness and conscientiousness as if the Attorney were acting in his own interests;

2.1.3    In performing this Agreement, act in strict compliance with the explanations, recommendations, instructions, regulations, specifically the Regulations on Interaction between the Legal Department and the Specialist Organizations Hired to Carry Out Winding-Up Procedures, approved by the decision of the Agency's Management Board dated June 6, 2013 (Minutes No. 34), and the Regulations on Interaction between the Expert Analysis Department and the Specialist Organizations Hired to Carry Out Winding-Up Procedures (hereinafter, the "Regulations"), provisions, orders and other internal regulatory documents of the Agency as regards the rendering by the Attorney of the services in accordance with this Agreement, including:

1)      coordinating with the Client the procedural actions to be taken by the Attorney when rendering the services in accordance with this Agreement, in the cases, pursuant to the procedure and by the deadlines established by the Client according to the Regulations;

2)      presenting to the Client the procedural documents to be drafted and received by the Attorney during the rendering of the services in accordance with this Agreement, in the cases, pursuant to the procedure and by the deadlines established by the Client;

3)      notifying the Client on a timely basis of information which has become known to the Attorney in performing this Agreement and which may affect the Client's interests, including to inform the Client of any contact the Attorney may have with third parties regarding the restructuring of the debt to the Client, changes to the procedure for the repayment of the debt or the method of settling disputes;

2.1.4    At any time upon the Client's request, inform the latter of the current status of matters relating to the performance of the terms of this Agreement;

2.1.5    Ensure the safeguarding and, where necessary, the confidentiality of the documents and information made available to the Attorney by the Client in accordance with this Agreement and the Terms of Reference;

2.1.6    Return the documents made available to the Attorney by the Client in accordance with this Agreement and the Terms of Reference within 5 (Five) business days of the termination of this Agreement, and also following the receipt of a corresponding request from the Client;

2.1.7    Present to the Client reports on the results of the performance of the obligations contemplated by this Agreement and the Terms of Reference, including:

1)      on a weekly basis, no later than 3:00 p.m. Moscow time on the final business day of the week, send by email to the representative of the bankruptcy receiver and to the Agency's Legal Department information on judicial work in the format established by the Regulations on Interaction between the Legal Department and the Specialist Organizations Hired to Carry Out Winding-Up Procedures, and following the implementation within the Agency of an information system for recording judicial work, by immediately entering the relevant data in such information system;

2)      on a monthly basis, no later than the 3rd business day of the month following the reporting month, send the Client reports as per Form 0409362 *Information on Claims-Related Work* in accordance with Bank of Russia Instructions No. 1594-U dated July 14, 2005 *On the List, Forms and Procedure for the Compilation and Submission of Reports of Lending Institutions Undergoing Liquidation to the Central Bank of the Russian Federation*:

- in the event that the accounts are kept and control over the Client's payments is exercised by a hired specialist organization—to the respective specialist organization;

3)      on a monthly basis, no later than the 10th business day of the month following the reporting month, send the Client, in the format established by the Client, detailed information on claims-related work, to be recorded in the report as per Form 0409362 that is to be submitted in accordance with sub-clause 2 of this clause*;*

4)      on a quarterly basis, no later than the 10th day of the month following the reporting quarter, present the Client with a report on the performance of the working action plan on the contesting of the Client's dubious transactions in the format established by the Client*;*

5)      on a monthly basis, no later than the 10th day of the month following the reporting month, submit reports on progress in insolvency (bankruptcy) procedures, and on enforcement proceedings in respect of the Client's debtors in the format established by the Client*;*

6)      pursuant to the procedure and by the deadlines established by the Regulations on Interaction between the Expert Analysis Department and the Specialist Organizations Hired to Carry Out Winding-Up Procedures, send the representative of the bankruptcy receiver (liquidator) and the Agency's Expert Analysis Department by email information on progress in criminal proceedings in the format established by these regulations, and following the implementation within the Agency of an information system for recording judicial work—by immediately entering the relevant data in such information system.

The Attorney shall send the information contemplated by this clause to the email addresses specified by the Client. The Client shall provide the Attorney with the information on the Client's email addresses by sending the respective notices in the format of Addendum 2 to this Agreement to the Attorney's email address as set forth in Section 10 of this Agreement or by other means ensuring the timely receipt by the Attorney of such notice.

2.1.8    Eliminate, at the Client's request, by the deadlines established by the Client (or if no such deadlines are specified, within a reasonable timeframe), defects in the rendering of the

services under this Agreement, and in the documents and certificates of delivery and acceptance of services rendered to be drawn up by the Attorney;

2.1.9    Send the Client on a timely basis requests for the provision of the documents and information required for the performance of the services contemplated by this Agreement, in order that the deadlines be met for the performance of the actions to be taken by the Attorney in accordance with the Terms of Reference in rendering the services, as established by this Agreement, existing business practices, the prevailing situation and the law;

2.1.10    In the event of the termination of this Agreement, without delay:

1)    return to the Client powers of attorney previously issued by the Client, the period of validity of which has not expired. In addition, prior to the termination of this Agreement, powers of attorney to the Attorney and other persons hired by the Client and the Attorney who have ceased to render services under this Agreement shall be returned to the Client;

2)    transfer to the Client under a certificate of delivery and acceptance all the documentation received and a report on the services rendered under the Terms of Reference signed by the Parties;

2.1.11    Without delay inform the Client in accordance with clause 2.2.1 of this Agreement of any agreements, addenda, agreements with third parties concluded by the Attorney as part of the discharge of his obligations under this Agreement, and provide information on the third parties that have been engaged;

2.1.12    The Attorney shall not have the right to accept instructions from a third party that has applied to the Client for legal services if the interests of this third party are at odds with the Client's interests (conflict of interests), without the Client's consent. The Attorney shall be obligated to inform the Client without delay of a potential conflict of interests. In the event that the rendering by the Attorney of services to third parties leads to a conflict of interests, the Attorney shall take every measure to obtain the consent of the Client and of the other parties to the conflict to the continued rendering by the Attorney of the services;

2.1.13    Adhere to the requirements of the Instructions on the processing of the personal data obtained in performing the terms of this Agreement (Addendum 3 to this Agreement);

2.1.14    As agreed with the Client (without an increase in the price of this Agreement), discharge other obligations and take actions that comply with the subject matter of this Agreement and the interests of the Parties;

2.1.15    Provide the Client with information on the Attorney, and on the employees to be hired to render legal and other services under this Agreement (Addendum 4 to this Agreement), and their statements regarding their personal interest/lack of personal interest in connection with the rendering of the legal and other services under this Agreement prior to their being hired to discharge obligations under this Agreement (Addendum 5 to this Agreement).

The Parties have agreed that this information, to be provided by the Attorney, is confidential.

At any time upon the Client's request for the Attorney and/or the Attorney's employees rendering legal and other services under this Agreement to be excluded from the steps to be taken as part of the rendering of the services, the Attorney shall, no later than 15 (Fifteen) business days from the receipt of such request, appoint a new Attorney and/or employees and provide the Client with the relevant information, as well as statements [from the employees] regarding their personal interest/lack of personal interest in connection with the rendering of the legal and other services under this Agreement (Addendum 5 to this Agreement). In the event of the replacement of the Attorney and/or of an employee at the Attorney's initiative, the latter shall, 5 (Five) business days prior to the appointment of a new Attorney and/or employee, send the Client information on the new Attorney and/or employee, as well as a statement regarding their personal interest/lack of personal interest in connection with the rendering of the legal and other services under this Agreement (Addenda 4 and 5 to this Agreement);

2.1.16    Render assistance to the Client in the preparation of banking documents (selection, photocopying, binding, numbering) at the Attorneys' disposal, including for the materials accompanying pre-investigation checks and criminal cases for submission to the law-enforcement authorities pursuant to their requests and seizure orders.

**2.2      The Attorney shall have the right:**

2.2.1    To hire third parties in accordance with clause 2.1.15 of this Agreement to render services under this Agreement, in compliance with the conditions on confidentiality and the requirements of the law on personal data, and avoiding a conflict of interest between the party hired and the Client (clause 2.1.12 of this Agreement). In the event that the Attorney hires third parties as part of the discharge of his obligations under this agreement, the Attorney shall be liable before the Client for the actions (inaction)

of the third parties hired as for his own actions, and *inter alia* shall be liable for the disclosure by such third parties of confidential information.

The hiring by the Attorney of third parties as part of the discharge of his obligations under this Agreement shall not release the Attorney from the obligation to independently present to the Client the required reports on the discharge of obligations under the Agreement pursuant to the terms of this Agreement;

2.2.2    To request from the Client the documents and information required for the due discharge by the Attorney of his obligations under this Agreement pursuant to the procedure provided for in clause 2.1.9 of this Agreement.

**2.3      The Client shall:**

2.3.1    Provide the Attorney on a timely basis, upon his written requests, with all the documents and information required for the rendering of the services contemplated by this Agreement, including the documents and regulatory acts regulating the Client's operations;

2.3.2    Pay for the Attorney's services pursuant to the procedure and by the deadlines established by this Agreement;

2.3.3    Within 10 (Ten) business days of the date on which the Attorney provides information on the employees and third parties hired by them to directly perform actions on behalf of the Attorney in connection with the performance of this Agreement, issue them with corresponding powers of attorney. The Attorney shall notify the Client in advance of the scope of powers to be granted to such parties by the Client.

**2.4      The Client shall have the right:**

2.4.1    To monitor progress in the rendering of the services by the Attorney, without interfering in the Attorney's activities. Furthermore, the Client shall have the right to issue the Attorney with binding instructions. If the Attorney holds these instructions to be unlawful or at odds with the Client's interests, they [sic] shall immediately give a written, substantiated notice to this effect;

2.4.2    To demand that the Attorney present reports on progress in the rendering of the services contemplated by this Agreement;

2.4.3    To send its representatives to attend court hearings, negotiations and be present at the performance of other steps to be taken by the Attorney in the rendering of the services in accordance with this Agreement;

2.4.4    To monitor compliance by the Attorney with the conditions of confidentiality and the requirements of the law on the protection of personal data in connection with the performance of this Agreement.

**3.    PRICE OF THE AGREEMENT AND SETTLEMENT PROCEDURE**

3.1      The Client shall pay for the Attorney's services in the amount and by the deadlines determined in Addendum 6 to this Agreement, which shall be signed by both Parties and constitute an integral part of the Agreement.

3.2      The procedure for the payment for the Attorney's services in the event that the Attorney renders substandard services shall be governed in accordance with this section, taking into account Section 4 of this Agreement.

3.3      The Attorney's expenses associated with the rendering of services under this Agreement shall not be included in the cost of the Attorney's services and shall be reimbursed by the Client on the basis of original documents to be provided by the Attorney, confirming such expenses, provided that such expenses were agreed upon in advance between the Attorney and the Client.

The Client shall reimburse the Attorney for the following types of expenses:

1)        expenses reasonably incurred by the Attorneys in connection with business trips undertaken by employees of the Attorneys, including per diem expenses (up to the limits established by the Tax Code of the Russian Federation), expenses associated with travel to and from the destination (expenses on economy-class air travel, compartment carriage train travel or economy-class carriage where high-speed above-ground transport is used), expenditure on hotel accommodation in economy class rooms (luxury, business-class and other categories of rooms shall not be paid for) at the location where the services are rendered and work is performed during business trips to represent the Client's interests at court hearings, creditors' meetings, when performing enforcement actions involving the enforcement of judicial acts that have entered into legal force in respect of the Client's debtors and borrowers, when attending proceedings in criminal cases and performing other steps based on the individual instructions of the Client (at hotels with no more than three stars) outside of Moscow;

*1*

2)       postal expenses reasonably incurred by the Attorneys and expenditure on payment for the services and tariffs of notaries as provided by the applicable laws of the Russian Federation on the notarial profession, and expenditure on the payment of state duties [as provided by] the Tax Code of the Russian Federation (if state duties are paid through a notary);

3)       expenses classified in accordance with the applicable laws of the Russian Federation as legal costs, including expenditure on the payment of state duties for filing claims (applications), appeals, cassation and supervisory appeals, and other legal costs reasonably incurred by the Attorneys during the judicial representation of the Client's interests;

4)       expenses of a technical nature, associated with the translation of documents from foreign languages by hired specialists;

other expenses of the Attorneys not specified above (including expenses incurred by third parties hired by the Attorneys in accordance with clause 2.2.1 of this Agreement), incurred as agreed upon in advance with the Client, and approved by the Bank's Creditors' Committee in accordance with the terms of this Agreement.

5)       Services shall be paid for and expenses reimbursed by the Client by transferring funds to the settlement account of the Quorum Moscow Bar Association in accordance with Articles 22(13) and 25(6) of Federal Law No. 63-FZ dated May 31, 2002 *On the Legal Profession and the Bar in the Russian Federation*, as specified in Section 10 of this Agreement, on the basis of a certificate of delivery and acceptance of services rendered, signed between the Parties, in the format established by Addendum 7 to this Agreement (hereinafter, the "Certificate") and an invoice for payment for the services to be issued by the Attorneys.

3.4       The Attorney shall, on a monthly basis, prior to the 15th of the month following the reporting month, draw up, sign and send the Certificate to the Client for signature in two counterparts (one for each of the Parties) and an invoice for payment for the services.

3.5       The Certificate shall specify the contents of the services rendered, the timeframe in which they were rendered, the cost of the services rendered and the part of the expenses incurred by the Attorneys in rendering the services under this Agreement that is to be reimbursed in accordance with clause 3.3 of this Agreement. Documents confirming the expenses incurred by the Attorney in the reporting period shall be appended to the Certificate. As agreed between the Parties, the Attorney may provide information in respect of the expenses incurred within a different period of time and shall record this information in a separate document.

3.6       The Client undertakes to sign the Certificates no later than 10 (Ten) business days following their receipt or to send the Attorney written substantiated objections by this same deadline.

3.7       Where the Client has written objections to the quality of the services rendered in a reporting period, the amount and composition of the expenses put forward for payment or the contents of the Certificate, the Attorney shall eliminate the respective defects by the deadline established by the Client, after which he shall send the Client the amended Certificate and invoice for payment for the services taking into account the amendments made to the Certificate. The Client shall review (sign) the amended Certificate and make a payment to the Attorney for the services pursuant to the procedure established by clauses 3.4–3.6 of this Agreement no later than 5 (Five) business days following the signing of such Certificate by the Parties.

3.9 [sic]  In the event that the Attorney cannot eliminate the defects identified by the Client pursuant to the procedure established by clause 3.8 of this Agreement, the cost of the services to be paid for shall be reduced, and payment for the Attorney's services shall be made based on the volume of the services actually rendered in the settlement period.

**4.     LIABILITY OF THE PARTIES**

4.1       The Parties shall be liable for the non-performance or improper performance of their obligations under this Agreement in accordance with the applicable laws of the Russian Federation and this Agreement.

4.2       In the event that the Client is held liable for violating the law on the protection of personal data (hereinafter, "PD"), including if the Client is held financially liable, and if such violation was committed as a result of the non-performance or improper performance by the Attorney of the obligations to comply with the rules on the processing and requirements applicable to the protection of PD, established by Addendum 3 to this Agreement, the Attorney shall, at the Client's request, reimburse the Client for the actual damages suffered as a result of this violation.

4.3       In the event of the non-performance or improper performance of obligations under this Agreement, the Attorney shall, on the basis of a corresponding demand from the Client, reimburse the losses inflicted in full, including the losses arising upon the rescission of this Agreement on the grounds provided for by clause 6.6 of this Agreement, and as a result of the payment of financial

penalties imposed on the Client (its employees) by state authorities as a result of the improper performance by the Attorney of his obligations under the Agreement.

4.4    In the event of the loss (failure to submit) by the Attorney of the original documents confirming the grounds for and amount of the debt of any debtor to the Client and/or other documents as a result of whose loss the ability to receive funds from the Client's debtors was wholly or partially lost and/or the absence of which renders the receipt of funds from the Client's debtors impossible or extremely difficult for the Client, the Attorney shall pay the Client a fine, based on a respective demand from the Client, in the amount of 100% of the amount of the debt based on information from the Client's accounts as at the date on which the documents were lost, but no more than the cost of the services (including the additional fee) of the Attorney under this Agreement. The date on which the documents were lost shall be deemed the date on which the Client learnt of their loss.

4.5    In the event that the Attorney fails to meet the deadline for the presentation of a writ of execution for enforcement through the fault of the Attorney as a result of his failure to take measures to obtain the writ of execution or his failure to present it for enforcement or other reasons due to which recovery in favor of the Client was (is) not effected through the fault of the Attorney, the Attorney shall, using his own resources and at his own expense, take every possible step to reinstate the deadline for its submission and to eliminate the reasons due to which recovery in favor of the Client did not take (is not taking) place. If the ability to reinstate the deadline for the filing of a writ of execution has been lost or the reasons why recovery in favor of the Client was (is) not effected cannot be eliminated without significant efforts on the part of the Client, the Attorney shall pay a fine in the amount of 100% of the amount of the debt under the writ of execution, but no more than the cost of the services (including the additional fee) of the Attorney under this Agreement.

4.6    In the event that the Attorney performs actions (fails to act) which entail the loss of the ability for the Client's claims to be granted as a result of the statute of limitations period having expired and/or for other reasons, including in the event of the loss (failure to submit) by the Attorney of the original documents confirming the Client's claim or of other documents as a result of whose loss the possibility of the Client's claims being granted is lost in part or in full and/or the absence of which makes it impossible or extremely difficult for the Client to substantiate its claims, the Attorney shall pay the Client a fine, based on a respective demand from the Client, in the amount of 100% of the amount of the debt to be recovered, based on information from the Client's accounts (the price of the contested transaction, the property to be retrieved, etc.), but no more than the cost of the services (including the additional fee) of the Attorney under this Agreement.

Furthermore, the Attorney shall not be deemed to have exceeded the time limit for his obligations under the terms of this Agreement in the event of a delay in the provision of documents by the Client.

4.7    In the event that the Attorney performs actions (fails to act) which entail the loss of the ability to contest a judicial act on the recovery of funds from the Client, the Attorney shall pay the Client a fine, based on a respective demand from the Client, in the amount of 100% of the amount recovered from the Client, but no more than the cost of the services (including the additional fee) of the Attorney under this Agreement.

4.8    In the event of the loss (failure to submit) by the Attorney of the original documents made available to the Attorney for the contesting of transactions (actions) or for holding  the parties that inflicted (aimed to inflict) property damage on the Client criminally liable, on the basis of which [documents] it was planned to obtain (recover) from third parties in favor of the Client funds, property or property rights (other assets) and whose absence renders the receipt (recovery) of such funds, property or property rights (other assets) impossible or extremely difficult for the Client, the Attorneys shall pay the Client a fine, based on a respective demand from the Client, in the amount of 100% of the amount which it was planned to recover as a result of contesting the transaction or criminal proceedings, but no more than the cost of the services (including the additional fee) of the Attorney under this Agreement. The date on which the documents were lost shall be deemed the date on which the Client learnt of their loss.

4.9    In the event that the obligations under this Agreement are discharged by several attorneys (plurality on the part of the Attorney), the Attorney shall be jointly and severally liable to the Client for the discharge of the obligations under this Agreement.

## 5.    FORCE MAJEURE

5.1    Neither Party shall be liable to the other Party for the non-performance or improper performance of obligations brought about by extraordinary circumstances that could not have been avoided

in the conditions at hand (force majeure), if these circumstances have significantly affected the performance by the Parties of their obligations under this Agreement.

5.2     A Party which has failed to discharge its obligations under this Agreement as a result of the onset of the circumstances specified in clause 5.1 of this Agreement shall immediately send the other Party notification (with acknowledgment of receipt) on the existence of such circumstances and their impact on the discharge of obligations under this Agreement.

### 6.     PROCEDURE FOR AMENDING, SUPPLEMENTING AND DISSOLVING THE AGREEMENT

6.1     This Agreement may be amended and supplemented in writing through the conclusion of respective amendments. Amendments shall be signed by both Parties and shall constitute an integral part of this Agreement.

6.2     This Agreement may be rescinded ahead of schedule as agreed between the Parties through a unilateral repudiation of the Agreement by one of the Parties pursuant to the procedure established by this Agreement, and in other cases established by the applicable laws of the Russian Federation.

6.3     The Client and the Attorney shall be entitled at any time, on a unilateral basis without recourse to legal proceedings, to withdraw from this Agreement, having given notice of this to the other Party at least 30 (Thirty) days prior to the proposed date of rescission of the Agreement. As of the date of rescission of this Agreement, the powers of the Attorneys and of the third parties hired by them under powers of attorney issued within the framework of this Agreement, shall terminate. In addition, the Attorney shall be obligated to return the powers of attorney issued by the Client within the framework of the rendering by the Attorney of services under this Agreement no later than 3 (Three) business days prior to the proposed date of rescission of this Agreement.

6.4     In the event of the non-performance or improper performance by the Attorney of his obligations under this Agreement, the Client shall be entitled to rescind this Agreement without delay, on a unilateral basis without recourse to legal proceedings, having sent the Attorney notice of this by mail and by email to the addresses set forth in Section 10 of this Agreement. In this case, the Agreement shall be deemed to have been rescinded as of the sending of the notice to the Attorneys by email. In addition, the Attorneys shall be obligated to return the powers of attorney issued by the Client within the framework of the rendering by the Attorney of services under this Agreement no later than 3 (Three) business days prior to the proposed date of rescission of this Agreement.

6.5     The Client shall be entitled to withdraw from the Agreement subject to payment by [sic] the Attorney of the expenses actually incurred. In cases when the withdrawal by the Client from the Agreement is due to a failure by the Attorney to render the services or the rendering of the services in an improper manner or to a substandard level, the expenses actually incurred by the Attorney shall not be reimbursed.

6.6     The Attorney shall be entitled to withdraw from his obligations under the Agreement only subject to reimbursement of losses to the Client in full.

6.7     In the event that the Client withdraws from the Agreement unilaterally due to the non-performance or improper performance by the Attorney of his obligations under the Agreement, including due to a violation of the provisions on confidentiality, the requirements of the Instructions for the processing of personal data (Addendum 3 to this Agreement) and the inability to remedy such violation by the deadline established by the Client, the Attorney shall be liable as provided by Section 4 of this Agreement. Furthermore, the expenses actually incurred shall not be reimbursed to the Attorney.

### 7.     CONFIDENTIALITY

7.1     All the information and documents received by the Attorney in connection with the Agreement shall be confidential and shall not be disclosed by the Attorney without the written consent of the Client, with the exception of the cases listed in clause 7.2 of this Agreement, throughout the period of validity of the Agreement, and for 10 (Ten) years following its expiry.

Information on the conclusion of this Agreement and its terms shall not be confidential and may be used by the Parties without limitation.

7.2     The restriction contemplated by clause 7.1 of this Agreement shall not apply to information:

1)     subject to disclosure in accordance with the substance of the services to be rendered by the Attorney and the provisions of the Russian Federation law;

2)     that is commonly known at the time of its transfer, including information that has been published or has become known to the public without a violation of this Agreement or the culpability of the Parties, their employees or third parties hired in accordance with this Agreement.

*1*

7.3     The Attorney undertakes to use the confidential information obtained during the rendering of the services under this Agreement exclusively within the framework of the rendering of the services, to grant access to such information only to persons directly participating in their rendering (provided that such persons assume the obligation to keep confidential information that becomes known to them secret throughout the period of time specified in clause 7.1 of this Agreement), and not to use the confidential information obtained for purposes that could directly or indirectly damage the Client, and/or to obtain any advantages and benefits during the term of the Agreement. The Attorney undertakes to take every necessary measure for their [sic] employees and the third parties they [sic] have hired to keep the aforementioned information confidential during the periods established by clause 7.1 of this Agreement.

7.4     For the purposes of this Agreement, disclosure of confidential information shall be understood to mean an action or inaction by a Party, as a result of which confidential information in any possible form (verbal, written, other form, including using technical devices) becomes known to third parties without the consent of the other Party, or in violation of this Agreement, including over the course of 5 (Five) years following its expiry.

7.5     The Parties shall be liable for the disclosure of confidential information or the loss of media containing confidential information in accordance with the applicable laws of the Russian Federation. Each of the Parties undertakes to reimburse the other Party in full for all losses caused by a disclosure of confidential information or the loss of media containing confidential information.

## 8.    DISPUTE RESOLUTION PROCEDURE

8.1     The Parties shall take measures to resolve disputes and disagreements that may arise during the performance, amendment or rescission of the Agreement through negotiations and using the [out-of-court] complaints procedure, which shall be mandatory.

8.2     Disputes not settled by the Parties shall be referred to the Tagansky District Court of Moscow.

## 9.    MISCELLANEOUS

9.1     This Agreement shall enter into force upon its signing and shall remain in force until the date of completion of the bankruptcy proceedings in respect of the Client.

9.2     As of the entry of this Agreement into force, all previous negotiations relating hereto, relevant business correspondence and agreements shall lose force.

9.3     Any notices shall be sent by a Party in writing to the addresses set forth in Section 10 of this Agreement by mail or fax or by any other means that allow their timely receipt by the other Party. All correspondence with the Client (notices, reports, etc.) from the Attorneys shall be signed, as agreed between the Parties, by the attorney A.A. Pavlov.

Confidential information shall be exchanged in electronic format in accordance with Addendum 8 to this Agreement.

9.4     A notice shall be deemed to have been received upon its actual receipt by a Party or at the point of dispatch of the notice by the post office to the address of the Party that sent the notice in the event that it cannot be hand-delivered.

9.5     In the event of a change to either Party's name, location, mailing and email addresses, or a change to other details set forth in this Agreement, the Party shall be obligated to notify the other Party of this without delay, appending the relevant documents. The Parties agree that notices and payments sent to the old addresses or details prior to the receipt of the relevant notices on the change thereto shall be deemed to have been duly and properly delivered/made.

9.6     The Parties confirm that they are familiar with the requirements of legislative and other regulatory acts of the Russian Federation on fighting corruption in business activities (hereinafter, the "anti-corruption requirements"). The Parties undertake to ensure compliance with the anti-corruption requirements in the performance of this Agreement by their employees, representatives, affiliates, and also by sub-contractors and other counter-parties that they engage for the performance of this Agreement. For the purposes of determining the liability of the Parties under this Agreement, a violation of the anti-corruption requirements by these entities shall be deemed a violation committed by a Party.

*1*

9.7      A Party that has learnt of the unlawful receipt (in violation of anti-corruption requirements) by employees or representatives of the other Party (in person or via intermediaries) of income in the form of money or other property, including property rights, services of a property-related nature, the results of work performed or any benefits (advantages) in connection with the conclusion and performance of this Agreement (hereinafter, the "receipt of income in violation of anti-corruption requirements") shall be obligated to inform the other Party of this within two business days.

A Party that has justified suspicions of the receipt of income in violation of anti-corruption requirements may send the other Party a request for the documents and information required to verify such suspicions, with the exception of documents and information to which access is restricted in accordance with federal laws. A Party that has received such request shall be obligated to provide a substantiated response, and to provide the other Party with the requested documents and information (or to specify the grounds provided for by federal law for refusing to provide them) within 5 (Five) business days of receipt of the request, unless the Parties agree on a different timeframe.

9.8      Where there is evidence of the receipt of income in violation of anti-corruption requirements, and where there are justified suspicions of this and the other Party has failed to discharge its obligation to provide the requested documents and information, the Party shall be entitled unilaterally to suspend the discharge of its obligations under this Agreement, including payment under this Agreement, until such time as the Parties have settled the dispute or it has been resolved in judicial proceedings. If there is evidence of the commission of a criminal or administrative offence of a corruption nature or if a Party has suffered losses as a result of a violation of anti-corruption requirements, said Party shall be entitled to rescind this Agreement on a unilateral basis.

9.9      The Party that has violated the anti-corruption requirements and/or the terms of this anti-corruption clause shall be obligated to reimburse the other Party for the losses it has incurred as a result of this. The procedure for the reimbursement of losses shall be determined by the laws of the Russian Federation and this Agreement.

9.10     In all other matters not provided for by this Agreement, the Parties shall be guided by the applicable laws of the Russian Federation.

9.11     This Agreement is made on 10 (Ten) pages in two counterparts of equal legal force, one for each of the Parties.

## 10.  ADDRESSES, DETAILS AND SIGNATURES OF THE PARTIES

| Client: | Attorney: |
|---|---|
| **PROBUSINESSBANK JSCB OJSC** | **Quorum Moscow Bar Association** |
| Legal address: 4 ul. Vysotskogo, Moscow 109240<br>Actual address: Building 2, 59 ul. Lesnaya, Moscow 127055<br>PSRN [Primary State Registration No.] 1027739154497<br>TIN/TRC: 7708514824 / 775001001<br>Represented by its bankruptcy receiver:<br>Deposit Insurance Agency State Corporation (DIA SC)<br>Recipient's bank: Main Directorate of the Bank of Russia<br>for the Central Federal District, Moscow 35<br>Settlement account: 40503810145250003051<br>BIC: 044525000 | Legal address: Building 1, 11 ul. Povarskaya, Moscow 121069<br>Actual address: Building 1, 11 ul. Povarskaya, Moscow 121069<br>PSRN 1177700000851<br>TIN/TRC: 7704386699 / 770401001<br>Settlement account: 40703810210000081320 at the National Savings Bank CJSC, Ivanovo<br>BIC: 042406718<br>Correspondent account 30101810000000000718<br>Email address: ricevimento@qdmg.ru |
| Representative of the bankruptcy receiver | |
| [signature]_____V.F. Bednin<br>Affix seal here: | [signature]_____A.A. Pavlov<br>Affix seal here: |
| [seal:] Probusinessbank JSCB OJSC<br>PROBUSINESSBANK Joint-stock Commercial Bank (an Open Joint-stock Company), Moscow<br>PSRN 1027739154497<br>Bankruptcy Receiver: Deposit Insurance Agency State Corporation | [seal:] Quorum Moscow Bar Association, Moscow, PSRN 1177700000851 |

1

*Addendum 1*
*to Agreement on the Rendering of Legal Assistance*
*No. VA-1-18740/1 dated 9/2/2015*

**TERMS OF REFERENCE**
**to Agreement on the Rendering of Legal Assistance**
**No. VA-1-18740/1 dated 9/2/2015**

In accordance with Agreement on the Rendering of Legal Assistance No. VA-1-18740/1 dated 9/2/2015 (hereinafter, the "Agreement"), PROBUSINESSBANK Joint-stock Commercial Bank (an open joint-stock company) ("PROBUSINESSBANK JSCB OJSC"), hereinafter referred to as the "Client" or the "Bank," represented by Vasily Feliksovich Bednin, a representative of the Bank's bankruptcy receiver, the Deposit Insurance Agency State Corporation, acting on the basis of power of attorney No. 659 dated June 2, 2016, and the decision of the Moscow Arbitrazh Court dated October 28, 2015 in Case No. A40-154909/2015, as the party of the first part, and

Andrey Alekseyevich Pavlov, an attorney from the Quorum Moscow Bar Association, holding Registration No. 77/12666 in the Register of Moscow Attorneys, ID No. 14627, issued by the Moscow Main Directorate of the RF Ministry of Justice, Chairman of the Board of the Quorum Moscow Bar Association, hereinafter referred to as the "Attorney," acting on the basis of Federal Law No. 63-FZ dated May 31, 2002 *On the Legal Profession and the Bar in the Russian Federation*, assumes the obligation to render legal assistance (hereinafter, the "services") to the Client as follows:

1.       Legal support for the debt recovery procedure in and out of court in respect of the Client's debtors. Legal support for the recovery of legal costs from the losing side in a dispute;

2.       Legal appraisal of documents to identify claims on the part of the Bank's creditors;

3.       Legal support for bankruptcy procedures in respect of the Client's debtors;

4.       Legal support in criminal proceedings aimed at holding criminally liable persons whose actions have caused and/or were aimed at inflicting property damage on the Client;

5.       Legal support for the ongoing activities of the bankruptcy receiver (liquidator) of the Bank, including in the conduct of business, employment and other disputes, the drafting and provision by the established deadlines of reports as per Form 0409362 *Information on Claims-Related Work* in accordance with Bank of Russia Instruction No. 1594-U dated July 14, 2005 *On the List, Forms and Procedure for the Compilation and Submission of Reports of Lending Institutions Undergoing Liquidation to the Central Bank of the Russian Federation* and detailed information on claims-related work, to be recorded in the reports as per Form 0409362, in the established format;

6.       Legal support for the judicial procedures involved in contesting dubious transactions concluded shortly before the Bank's bankruptcy according to the plan presented by the Client, drafting of conclusions on the lack of expediency of contesting dubious transactions, if required;

7.       Legal support for the procedures involved in enforcement proceedings in respect of the Bank's debtors.

8.       In rendering the services specified in Items 1–7 of these Terms of Reference, the Attorney undertakes to perform the following actions:

1)       provide oral and written consultations and information on legal issues arising in the process of providing support for procedures involving the recovery of debt, the contesting of dubious transactions, criminal proceedings, enforcement proceedings and procedures involved in the bankruptcy of the Client's debtors, and of the guarantors and pledgors of the Client's debtors;

2)       on the terms and pursuant to the procedure provided by the applicable laws of the Russian Federation, prepare any type of requests, letters, notices to state and other authorities, legal entities and natural persons in the process of providing support for procedures involving the recovery of debt, the contesting of dubious transactions, criminal proceedings, enforcement proceedings and procedures involved in the bankruptcy of the Client's debtors, and of the guarantors and pledgors of the Client's debtors; carry out a legal analysis of the documents provided by the Client to verify that they are sufficient for the performance of the assignment;

*1*

3) carry out a legal analysis of claims filed by the Client's creditors, verify the sufficiency and justification of the documents supporting the claims, develop and recommend to the Client a legal position on the creditors' claims filed, and represent the interests of the Client during the consideration by the court of creditors' objections;

4) carry out a legal appraisal of contracts and agreements of various types to be concluded by the Client, and of amendments thereto in the cases and pursuant to the procedure established by the Client;

5) represent the Client's interests in courts of general jurisdiction, commercial and arbitration courts of all instances in the Russian Federation;

6) on the terms and pursuant to the procedure provided by the applicable laws of the Russian Federation, carry out claims-related work aimed at the recovery of accounts receivable from the Client's debtors, including the drafting of claims, applications, statements of claim, appeals and other documents of a legal nature;

7) take measures to file claim documents with courts of general jurisdiction, commercial and arbitration courts of all instances;

8) take measures to draft applications regarding identified criminally punishable acts to the law-enforcement authorities and support criminal proceedings with all the necessary actions provided for by criminal procedure law, including by representing the interests of the Client at all stages of criminal proceedings before the agencies in charge of preliminary investigations, investigative authorities, prosecution authorities and courts of general jurisdiction;

9) provide support for insolvency (bankruptcy) procedures in respect of the Client's debtors with the performance of all the necessary actions provided for by insolvency (bankruptcy) law, including by filing claims seeking the inclusion in the debtor's register of [some] creditor claims and objections to inclusion of unwarranted claims by other creditors, representing the interests of the Client at meetings of the assembly (committee) of the debtor's creditors, contesting the actions (inaction) of the debtor's court-appointed receiver, reviewing the reports of the court-appointed receiver and requesting and obtaining other information on progress in the debtor's winding-up procedure;

10) provide support for procedures relating to enforcement proceedings with the performance of all the necessary actions provided for by the law on enforcement proceedings, including by representing the Client's interests before the court bailiffs' service, including by presenting writs of execution for enforcement, obtaining documents and other awarded property and performing all other actions associated with enforcement proceedings. In addition, the Attorneys shall be obligated to transfer to the Client within 5 (Five) business days all funds and other property received by the Attorneys directly from debtors and/or third parties and owing to the Client in connection with the execution of the instructions under the Agreement;

11) represent the Client in its relations with natural persons, organizations and various state and other authorities, and also take the necessary actions in respect of such authorities and organizations aimed at the creation, amendment or termination of the rights and obligations of the Client, subject to a power of attorney containing the respective powers stipulated therein;

12) create sets of documents for the Client's reporting to judicial authorities, the Bank of Russia, participants in the bankruptcy proceedings (winding-up) of the Client and other supervisory authorities and officials;

13) carry out a legal analysis of the actions of the bankruptcy receiver (liquidator) aimed at the sale of the Bank's property, including the creation and legal appraisal of documentation to be drafted as part of the activities of the bankruptcy receiver (liquidator) relating to the sale of the property, and verification of the lawfulness of the procedure involving the sale of said property;

14) within the framework of discharging his obligations under this Agreement, monitor the discharge by debtors of their obligations to the Bank (including monitoring of compliance with the terms of settlement agreements and other transactions to be concluded by the Client);

15) carry out weekly monitoring of the Bank's legal entity debtors to obtain information on their reorganization, winding-up and/or the initiation of bankruptcy proceedings in respect of such legal entity debtors;

16) inform the Client of any potential or actual loss of security (including loss of or damage to pledged items, the expiration of the periods of validity of security agreements) rendering the recovery process impossible or difficult;

*1*

17)    no later than 6 (Six) months from the date of entry into legal force of the final judicial act handed down in the Bank's favor in a specific case, the adoption of which concludes the consideration of the case on its merits, recover in favor of the Bank:

- expenditure on payment for the Attorneys' services in the amount of the additional fee received by the Attorneys from the Client within the framework of this case (if such payment is contemplated by the amendment on payment for services under this Agreement);

- legal costs incurred by the Client in connection with the consideration of this case in court (specifically, funds paid to experts, notaries, specialists, witnesses, translators, costs associated with the conduct of an on-site inspection of evidence, and postal, business travel and other costs), based on economic expediency;

- other (specify);

18)    take other measures agreed upon in advance between the Parties for the performance of these Terms of Reference.

9.    The services shall be rendered by the Attorneys throughout the period of validity of the agreement.

The deadlines for the rendering of each type of service shall be established by the Client. In the absence of special instructions from the Client, the services shall be rendered within a timeframe such that the deadlines for the performance of the actions to be taken by the Attorneys in accordance with these Terms of Reference, as established by this Agreement, existing business practices, the prevailing situation and the law, be met.

10.    These Terms of Reference shall constitute an integral part of the Agreement.

## SIGNATURES OF THE PARTIES

**Client:**                                                    **Attorney:**

PROBUSINESSBANK JSCB (OJSC)
Representative of the bankruptcy receiver

[signature]_____V.F. Bednin                 [signature]_____A.A. Pavlov
Affix seal here:                                               Affix seal here:

[seal:] Probusinessbank JSCB OJSC              [seal:] Quorum Moscow Bar Association, Moscow,
PROBUSINESSBANK Joint-stock Commercial Bank (an    PSRN 1177700000851
Open Joint-stock Company), Moscow
PSRN 1027739154497
Bankruptcy Receiver: Deposit Insurance Agency State
Corporation

14

*1*

*Addendum 2*
*to Agreement on the Rendering of Legal Assistance*
*No. VA-1-18740/1 dated 9/2/2015*

**Client's Contact Details**

| No. | Subdivision | Full name of responsible employee | Email address, phone number |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

**SIGNATURES OF THE PARTIES**

**Client:**                                    **Attorney:**

PROBUSINESSBANK JSCB (OJSC)
Representative of the bankruptcy receiver

[signature]_____V.F. Bednin         [signature]_____A.A. Pavlov
Affix seal here:                         Affix seal here:

[seal:] Probusinessbank JSCB OJSC
PROBUSINESSBANK Joint-stock Commercial Bank (an
Open Joint-stock Company), Moscow
PSRN 1027739154497
Bankruptcy Receiver: **D**eposit Insurance Agency State
Corporation

*Addendum 3*
*to Agreement on the Rendering of Legal Assistance*
*No. VA-1-18740/1 dated 9/2/2015*

**Instructions**

**on the Processing of Personal Data**

1.    [In] these instructions on the processing of personal data (hereinafter, the "Instructions"), PROBUSINESSBANK Joint-stock Commercial Bank (an open joint-stock company) (PROBUSINESSBANK JSCB OJSC), hereinafter referred to as the "Client" or the "Bank," sets out the requirements applicable in accordance with Federal Law No. 152-FZ dated July 27, 2006 *On Personal Data* (hereinafter, the "Law on PD") to the organization of the processing and protection of personal data (hereinafter, "PD") by Andrey Alekseyevich Pavlov, an attorney from the Quorum Moscow Bar Association, holding Registration No. 77/12666 in the Register of Moscow Attorneys, ID No. 14627, issued by the Main Directorate of the RF Ministry of Justice for the City of Moscow, Chairman of the Board of the Quorum Moscow Bar Association, hereinafter referred to as the "Attorney," in connection with the rendering by the Attorney of services to the Client in accordance with the terms of Agreement on the Rendering of Legal Assistance No. VA-1-18740/1 dated 9/2/2015 (hereinafter, the "Agreement").

2.    PD shall be processed by the Attorney for the purposes of carrying out, in the course of the winding-up procedure in respect of the Client, the measures provided for by the Agreement, in accordance with Federal Law No. 127-FZ dated October 26, 2002 *On Insolvency (Bankruptcy)*.

3.    Within the framework of these Instructions, the Attorney shall carry out the following actions (operations) involving PD:

gathering, recording, systemization, accumulation, storage, clarification (updating, amendment), extraction, use, transfer (provision, access), depersonalization, blocking, deletion, destruction).

4.    The person responsible for the organization of the processing of PD by the Attorney shall be Andrey Alekseyevich Pavlov, Chairman of the Board of the Quorum Moscow Bar Association.

5.    The Attorney shall:

5.1    Keep PD confidential and ensure the security of PD upon their processing;

5.2    Comply with the requirements applicable to the protection of PD to be processed in accordance with Article 19 of the Law on PD, including by taking, as an operator of PD, during the processing of PD and for the protection of PD against unlawful or inadvertent access thereto, destruction, amendment, blocking, copying, provision and distribution of PD and against other unlawful actions in respect of PD, the required legal, organizational and technical measures in accordance with the requirements of the Law on PD and the regulatory acts of the Russian Federation, *inter alia*:

Russian Federation Government Resolution No. 1119 dated November 1, 2012 *On the Approval of Requirements Applicable to the Protection of Personal Data Upon Their Processing in Personal Data Information Systems* (included in the Agreement in cases of the processing of PD in information systems);

Russian Federal Service for Technology and Expert Control Order No. 21 dated February 18, 2013 *On the Approval of the Composition and Content of Organizational and Technical Measures to Ensure the Security of Personal Data Upon Their Processing in Personal Data Information Systems* (included in the Agreement in cases of the processing of PD in information systems);

Russian Federation Government Resolution No. 687 dated September 15, 2008 *On the Approval of the Regulations on Specific Features of the Processing of Personal Data Without the Use of Automated Equipment.*

5.3    If PD transferred by the Attorney is processed using automated equipment, the Attorney shall be entitled to start processing such PD after sending the authorized

*1*

agency for the protection of the rights of PD owners notice of its intention to process the PD that will be transferred by the Client, and provide the Client with a copy of this notice, certified by the Chairman of the Board of the Quorum Moscow Bar Association;

5.4    In processing PD received not from PD owners, provide such PD owners, prior to commencing the processing of the PD, with the information provided for in Part 3 of Article 18 of the Law on PD, except in the cases set forth in Part 4 of Article 18 of the Law on PD;

5.5    In the event of a change to the contact details of the person specified in clause 4 of these Instructions, or the appointment of a new person, notify the Client of this in writing within three days;

5.6    Destroy PD on a timely basis in connection with the completion of their processing and notify the Client of this.

5.7    Provide the Client with the information required to draft a response to a request from a PD owner on the PD being processed, ensure that the PD owner can review its PD on the Client's instructions;

5.8    Follow the Client's instructions regarding discharge of the obligations contemplated in the Law on PD;

5.9    In the event that the activities of the Attorneys in performing the Agreement cease to comply with the requirements established by the laws of the Russian Federation in respect of the processing and protection of PD, immediately inform the Client of this, setting forth the reasons and the timeline for eliminating the non-compliance (violations), and stop processing the PD.


**SIGNATURES OF THE PARTIES**

**Client:**                                                          **Attorney:**

PROBUSINESSBANK JSCB (OJSC)
Representative of the bankruptcy receiver

[signature] _____ V.F. Bednin                        [signature] _____ A.A. Pavlov
Affix seal here:                                                    Affix seal here:

[seal:] Probusinessbank JSCB OJSC                    [seal:] Quorum Moscow Bar Association, Moscow,
PROBUSINESSBANK Joint-stock Commercial Bank (an      PSRN 1177700000851
Open Joint-stock Company), Moscow
PSRN 1027739154497
Bankruptcy Receiver: Deposit Insurance Agency State
Corporation

17

1

87

*Addendum 4*
*to Agreement on the Rendering of Legal Assistance*
*No. VA-1-18740/1 dated 9/2/2015*

**Form**

|  |  |
|---|---|
| Color or black and white photograph | |

| 1. | **Full name** _____  _____ *(if you previously had a different surname, name or patronymic, please provide them, along with the date and reason for the change)* | | | | | | |
|---|---|---|---|---|---|---|---|
| 2. | **Date of birth** | day | month | year | Sex | male | female |
| 3. | **Place of birth** *(town, district, region, krai, republic, country)* | | | | | | |
| 4. | **Citizenship** | | **Other citizenship** *(if any)* | | | | |
| 5. | **Place of registration** *(in the event of temporary registration, provide the address)*\* | **Postal code** | **address** *(town; republic, krai, region, district, city, village; street, building, block, apartment)* | | | | |
|  |  |  | | | | | |
|  |  | **Postal code** | **\*temporary registration address** *(town; republic, krai, region, district, city, village; street, building, block, apartment)* | | | | |
|  |  |  | | | | | |
| 6. | **Place of residence** | **Postal code** | **address** *(town; republic, krai, region, district, city, village; street, building, block, apartment)* | | | | |
|  |  |  | | | | | |
| 7. | **Contact details** | home phone number | | mobile phone number | | email address | |
|  |  |  | | | | | |
| 8. | **Passport** | series, | | | | | |

| | or substitute document | number | |
|---|---|---|---|
| | | issuing authority | |
| | | | |
| | | date of issue | subdivision code |
| **9.** | **TIN** | | |
| **10.** | **Criminal convictions** | ☐ yes<br>☐ expunged  ☐ not expunged<br>_____<br>*(specify article of Criminal Code and year)* | ☐ no |
| **11.** | **Marital status** *(married, widowed, divorced, single)* | | |

| | **Members of your family (including close relatives)**<br>*(husband, wife, father, mother, brothers and sisters (including full siblings and half-siblings), children (if they have changed their names, provide their previous names). Please note that information on close relatives with whom you do not currently maintain a relationship, and on deceased family members, should also be included in this table.* |
|---|---|

| | | relationship | full name | day, month, year and place of birth | place of work/study, position | address of place of residence |
|---|---|---|---|---|---|---|
| **12.** | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

*1*

|  |  |  |  |  |  |
|--|--|--|--|--|--|
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

| 13. | Do you have other relatives working at the DIA SC, lending institutions, non-state pension funds or other financial organizations? | ☐ yes | | ☐ no | |
|-----|-----|-----|-----|-----|-----|
|  | full name | relationship | | subdivision/bank, position | |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

| 14. | Education | | | | | |
|-----|-----------|-----------|----------|----------|----------|----------|
|  | name of educational establishment | location of educational establishment | date of enrolment | date of graduation | qualifications according to diploma | specialist area according to diploma |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |

| 15. | Work performed from the commencement of employment | | | |
|-----|-----|-----|-----|-----|
|  | *When filling in this item, please specify all types of employment activities, including part-time work, [work] under an agreement on the paid rendering of services (inserting a relevant note in brackets), business activity, etc. Names of institutions, organizations, enterprises and their addresses must be set out to reflect their names at the time you worked there.* | | | |
|  | month and year | | position, name and location of organization | main functions (nature of work performed) |
|  | of hiring | of dismissal | | |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

20

*1*

| | | | | |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| **16.** | **Do you currently work part time in other organizations?** *(if so, insert the name of the organization, position)* | ☐ yes | | ☐ no |
| | | | | |
| **17.** | **Additional information which you believe it necessary to report about yourself** | | | |

I certify that my responses to the Form's questions are accurate.

_____ \_\_\_, 20\_\_\_          _____          _____
date of completion                      personal signature                  print name

I, _____ , hereby grant consent to the **D**eposit Insurance Agency State Corporation, legal address: 4 ul. Vysotskogo, Moscow 109240, the "Bank" _____, legal address: _____ to process the personal data set forth in this form (in order to verify the accuracy of the data and check for any disqualification).

_____          _____ 20\_\_\_          _____   _____
agree                        date of consent                  personal signatureprint name

*Addendum 5*
*to Agreement on the Rendering of Legal Assistance*
*No. VA-1-18740/1 dated 9/2/2015*

Information on the Presence (Absence) of Personal Interest
in Relation to _____
(name of lending institution undergoing liquidation)

Surname _____
First name _____
Patronymic _____

| | |
|---|---|
| 1. Have you or any of your relatives* been the sole executive body, deputy director, a member of the board of directors (supervisory board) or collective executive body (management board, directorate), chief accountant (accountant), director of the audit commission or member of the audit commission (internal auditor), director of the internal control service, employee of the internal control service of the lending institution that is undergoing liquidation (hereinafter, the "LLI"), including if you have been released from the discharge of your duties over the 3 years preceding your appointment? | Yes      No |
| 2. Have you or any of your relatives been the sole executive body, his deputy, a member of the board of directors (supervisory board) or collective executive body (management board, directorate), chief accountant (accountant), director of the audit commission or member of the audit commission (internal auditor), director of the internal control service of a legal entity or employee of the internal control service of a legal entity that is the parent company or a subsidiary of the LLI, including if you have been released from the discharge of your duties over the 3 years preceding your appointment? | Yes      No |
| 3. Are you or any of your relatives an interested party as defined by Article 19(2) of the Federal Law *On Insolvency (Bankruptcy)* in relation to the employees of the LLI? | Yes      No |
| 4. Are you or any of your relatives a creditor of the LLI? | Yes      No |
| 5. Do you or any of your relatives have a debt to the LLI? | Yes      No |
| 6. Have you or any of your relatives been a shareholder of (participant in) the LLI over the last 3 years? | Yes      No |
| 7. Do you or your relatives own any bonds or other securities in the LLI? | Yes      No |
| 8. Have you or your relatives had (do you currently have) any employment agreements with the LLI? If so, please specify during which period and briefly list the main employment duties. | Yes      No |
| 9. Have you or your relatives had (do you currently have) any civil agreements on the rendering of services, performance of work or supply agreements with the LLI? If so, please specify the period of validity of the agreement and | Yes      No |

22

*1*

| | |
|---|---|
| briefly describe the scope of the contractual obligations. | |
| 10. Are you or your relatives bound to the LLI by any financial obligations? | Yes        No |

**In the event of a change to any of the information set out in this form, I undertake to inform the representative of the bankruptcy receiver (liquidator) of this without delay.**

_____

signature /full name/
Date

---

**\* In this document, relatives shall be understood to mean spouse, parents, full and half-siblings, adult-age children.**

*1*

*Addendum 6*
*to Agreement on the Rendering of Legal Assistance*
*No. VA-1-18740/1 dated 9/2/2015*

## AMENDMENT
## on Payment for Services to Agreement on the Rendering of Legal Assistance
## No. VA-1-18740/1 dated 9/2/2015

PROBUSINESSBANK Joint-stock Commercial Bank (an open joint-stock company) (PROBUSINESSBANK JSCB OJSC), hereinafter referred to as the "Client" or the "Bank," represented by Vasily Feliksovich Bednin, a representative of the Bank's bankruptcy receiver, the Deposit Insurance Agency State Corporation, acting on the basis of power of attorney No. 659 dated June 2, 2016, and the decision of the Moscow Arbitrazh Court dated October 28, 2015 in Case No. A40-154909/2015, as the party of the first part, and

Andrey Alekseyevich Pavlov, an attorney from the Quorum Moscow Bar Association, holding Registration No. 77/12666 in the Register of Moscow Attorneys, ID No. 14627, issued by the Main Directorate of the RF Ministry of Justice for the City of Moscow, Chairman of the Board of the Quorum Moscow Bar Association, hereinafter referred to as the "Attorney," acting on the basis of Federal Law No. 63-FZ dated May 31, 2002 *On the Legal Profession and the Bar in the Russian Federation*, hereinafter referred to collectively as the "Parties," have entered into this amendment on the payment of services (hereinafter, the "Amendment") to Agreement on the Rendering of Legal Assistance No. VA-1-18740/1 dated 9/2/2015 (hereinafter, the "Agreement") as follows:

1. The cost of the services to be rendered under the Agreement comes to 8,500,000 (Eight million five hundred thousand) rubles per month, not subject to VAT.

2. If the first and last months of the period of validity of the Agreement are not full months, the cost of the Attorney's services under the Agreement shall be calculated based on the actual number of calendar days in the incomplete calendar month for which the calculation is being performed.

3. The services shall be paid for on a monthly basis by the Client by transferring funds to the settlement account specified in Section 10 of the Agreement, no later than 10 business days from the date on which the Client signs the certificate on the basis of the invoice issued by the Attorney.

4. The expenses incurred by the Attorney shall be reimbursed by the Client by transferring funds to the settlement account specified in Section 10 of the Agreement, no later than 10 (Ten) business days from the date of provision of the primary documents confirming such expenses, subject to a certificate signed by the Client on the basis of the invoice issued by the Attorney.

5. The Attorney shall also be paid an additional fee in the amount of 15 (fifteen) percent of the funds actually credited to the Bank's bankruptcy assets based on the results of the work performed by the Attorneys, be they: the voluntary repayment by a debtor of the Bank of existing debt; as a result of the conclusion of settlement agreements; during the consideration of a statement of claim or following the handing down of a judicial act; the repayment of debt (including voluntary repayment) within the framework of the enforcement of a judicial act; the repayment of the claims of the Bank as a creditor in procedures involving the bankruptcy of its debtors; from the sale of property and from the sale of accounts receivable in respect of which the Attorneys performed judicial work, etc.

In the absence of the actual receipt by the Bank of funds based on the results of the work performed, no commission fee shall be payable.

6. For the purposes of calculating the additional fee, the Client undertakes to provide the Attorney, no later than on the 5th business day of the month following the reporting month, with information on the receipt of funds from the Bank's debtors over the reporting month, in the form of a statement on the movement of funds in the account.

7. The Client shall pay the additional fee by transferring funds to the settlement account specified in Section 10 of the Agreement, no later than 20 business days from the date of signing by the Client of the certificate on the basis of the invoice issued by the Attorney.

The amount of the additional fee shall be calculated by the Attorney on the basis of information on the actual receipt of funds, to be provided by the Client within the first 10 business days of each month following the reporting month.

*1*

8.    The cost of the services rendered under the Agreement as specified in clause 1 of this Amendment shall be reviewed a year after the conclusion of the Agreement, and subsequently every 6 months, or otherwise as agreed upon between the Parties.

9.    Two months prior to the start of the quarter in which the cost of the services is to be reviewed in accordance with clause 8 of this Agreement, the Client shall send the Attorney a proposal on the reduction of the cost of the services specified in clause 1, in accordance with the actual volume of services to be rendered, but by no more than 10%.

10.    Within 5 business days of receiving the proposal, the Attorney shall send the Client its consent to the reduction of the cost of the services or provide a substantiated response on the reasons for not reducing the cost, specifying the volume of work to be performed and work planned, and the prospects for reducing the cost of the services over future periods.

11.    In the event that the Attorney does not agree with the Client's proposal regarding a reduction of the cost of the services under the Agreement, the Client shall be entitled to unilaterally withdraw from the Agreement, having given the Attorney notice of this ___ days prior to the proposed date of rescission. In this case, the Client, in the absence of claims regarding the quality of the services, shall pay the Attorney the documented costs actually incurred by the Attorney, and the Attorney shall hand over to the Client all the results of the services rendered as at the date of rescission of the Agreement.

12.    The services to be rendered by the Attorney are exempt from VAT on the basis of Article 149(3)(14) of the Tax Code of the Russian Federation.

13.    This Amendment constitutes an integral part of the Agreement.

14.    This Amendment is made on 2 (two) pages in 2 counterparts of equal legal force, one for each of the Parties.

**SIGNATURES OF THE PARTIES**

**Client:**                                                                 **Attorney:**

PROBUSINESSBANK JSCB (OJSC)
Representative of the bankruptcy receiver

[signature]_____V.F. Bednin              [signature]_____A.A. Pavlov
Affix seal here:                                         Affix seal here:

[seal:] Probusinessbank JSCB OJSC              [seal:] Quorum Moscow Bar Association, Moscow,
PROBUSINESSBANK Joint-stock Commercial Bank (an    PSRN 1177700000851
Open Joint-stock Company), Moscow
PSRN 1027739154497
Bankruptcy Receiver: Deposit Insurance Agency State
Corporation

*Addendum 7*
*to Agreement on the Rendering of Legal Assistance*
*No. VA-1-18740/1 dated 9/2/2015*

**CERTIFICATE**
**on the Delivery and Acceptance of Services Rendered**

PROBUSINESSBANK Joint-stock Commercial Bank (an open joint-stock company) (PROBUSINESSBANK JSCB OJSC), hereinafter referred to as the "Client" or the "Bank," represented by Vasily Feliksovich Bednin, a representative of the Bank's bankruptcy receiver, the Deposit Insurance Agency State Corporation, acting on the basis of power of attorney No. 659 dated June 2, 2016, and the decision of the Moscow Arbitrazh Court dated October 28, 2015 in Case No. A40-154909/2015, as the party of the first part, and

Andrey Alekseyevich Pavlov, an attorney from the Quorum Moscow Bar Association, holding Registration No. 77/12666 in the Register of Moscow Attorneys, ID No. 14627, issued by the Main Directorate of the RF Ministry of Justice for the City of Moscow, Chairman of the Board of the Quorum Moscow Bar Association, hereinafter referred to as the "Attorney," acting on the basis of Federal Law No. 63-FZ dated May 31, 2002 *On the Legal Profession and the Bar in the Russian Federation*, as the party of the second part, hereinafter referred to collectively as the "Parties," have drawn up this certificate as follows:

1.      During the reporting period (*specify period)*, the Attorney rendered to the Client the legal assistance contemplated in clause 1 of the agreement on the rendering of legal assistance (hereinafter, the "services"), namely:

1.1      Measures involving the performance of pre-trial work:

| No. | Date | Measures (in detail) |
|-----|------|----------------------|
|     |      |                      |

1.2      Measures involving the performance of judicial work: drafting of documents (statements of claim seeking to recover debt, levy execution on pledged property/applications seeking to contest transactions/requests/letters/notices/objections and other documents); representation of the Client's interests at court hearings:

| No. | Date | Measures (in detail) |
|-----|------|----------------------|
|     |      |                      |

1.3      Measures involving the receipt of enforcement documents (including orders initiating enforcement proceedings) in respect of the Bank's debtors and monitoring of enforcement proceedings:

| No. | Date | Measures (in detail) |
|-----|------|----------------------|
|     |      |                      |

1.4      Measures involving liaison with the Agency (consulting on legal issues, compilation of reporting):

| No. | Date | Measures (in detail) |
|-----|------|----------------------|
|     |      |                      |

1.5    The performance of a legal analysis and expert appraisals of the following documents:

| No. | Date | Measures (in detail) |
|-----|------|----------------------|
|     |      |                      |

1.6    The performance of the following measures involving work with the Bank's debtors undergoing bankruptcy (winding-up) procedures:

| No. | Date | Measures (in detail) |
|-----|------|----------------------|
|     |      |                      |

1.7    A legal analysis of the claims filed by creditors:

| No. | Date | Measures (in detail) |
|-----|------|----------------------|
|     |      |                      |

1.8    The drafting of conclusions on various legal issues:

| No. | Date | Measures (in detail) |
|-----|------|----------------------|
|     |      |                      |

1.9    Other actions associated with the representation of the Client's interests (including the representation of the Client's interests in its relations with state authorities and other agencies and organizations, including with natural persons):

| No. | Date | Measures (in detail) |
|-----|------|----------------------|
|     |      |                      |

2.    This certificate constitutes grounds for settlements between the Parties.

3.    In accordance with clause **1** of the Amendment on Payment for Services under the Agreement on the Rendering of Legal Assistance, the cost of the Attorneys' fee for the services rendered in the reporting period (*specify period*), shall be (*insert amount*) rubles per month, exempt from VAT. The Attorneys' fee shall be paid by the Client pursuant to the procedure established in clause **3** of the Agreement on the Rendering of Legal Assistance.

4.    The Attorneys have incurred additional expenses in the process of rendering the services under this agreement in the amount of ____ rubles, including:

_____,

The additional expenses of the Attorneys are confirmed by the following documents:

_____.

5.    Calculation of the Attorneys' additional fee (*provide calculation in accordance with clauses 5–8 of the Amendment on Payment for Services under the Agreement* on the Rendering of Legal Assistance):

| Name of borrower, number of credit facility agreement | Description of work performed | Breakdown of receipts | | |
|-------------------------------------------------------|-------------------------------|----------------------|------|----------------------|
|                                                       |                               | Total amount, RUB | Date | Amount in instalments, RUB |

27                                    92

*1*

| | | | | |
|---|---|---|---|---|
| | | | | |

6.      During the reporting period, the services were duly rendered by the Attorneys. **T**he Client has no claims against the Attorneys regarding the volume and quality of the services rendered.

7.      **T**his Certificate is drawn up in 2 counterparts of equal legal force, one counterpart for each of the Parties.

**Client:**                                          **Attorney:**

PROBUSINESSBANK JSCB (OJSC)
Representative of the bankruptcy receiver

_____V.F. Bednin               [signature]_____A.A. Pavlov
Affix seal here:                                    Affix seal here:

                                                    [seal:] Quorum Moscow Bar Association, Moscow,
                                                    PSRN 1177700000851

28

*1*

*Addendum 8*
*to Agreement on the Rendering of Legal Assistance*
*No. VA-1-18740/1 dated 9/2/2015*

Procedure for the Exchange of Information

1.      For the exchange of information in electronic format and/or for access to the Client's resources, the Client shall grant the Attorney the opportunity to set up and use a communications channel protected by certified resources. The Client shall arrange for the Attorneys to access its resources using terminal access technology.

2.      The Attorney's technical devices connected to the communications channel specified in clause 1 of this Addendum (hereinafter, the "Technical Devices") shall meet the following requirements:

2.1     Anti-virus software shall be installed, activated and updated on the Technical Devices;

2.2     The Technical Devices shall not have access to the public resources of the Internet information and telecommunications network, or shall be separated from them by a certified firewall, preventing simultaneous access to such public resources and to the Client's resources.

3.      The Attorney shall provide the Client with lists of persons holding powers to work with the information to be transferred in electronic format and/or to access the Client's resources, and shall simultaneously notify the Client of all changes to such lists.

4.      The Client shall be entitled to carry out checks of compliance by the Attorney with the requirements set forth in this Addendum.

**SIGNATURES OF THE PARTIES**

**Client:**                                              **Attorney:**

PROBUSINESSBANK JSCB (OJSC)

Representative of the bankruptcy receiver

[signature]       V.F. Bednin                    [signature]       A.A. Pavlov
Affix seal here:                                      Affix seal here:

[seal:] Probusinessbank JSCB OJSC           [seal:] Quorum Moscow Bar Association, Moscow,
PROBUSINESSBANK Joint-stock Commercial Bank (an     PSRN 1177700000851
Open Joint-stock Company), Moscow
PSRN 1027739154497
Bankruptcy Receiver: Deposit Insurance Agency State
Corporation

*1*

[seal:] Probusinessbank JSCB OJSC
PROBUSINESSBANK Joint-stock Commercial Bank (an Open Joint-stock Company), Moscow
PSRN 1027739154497
Bankruptcy Receiver: Deposit Insurance Agency State Corporation [signature]


[seal:] Quorum Moscow Bar Association, Moscow, PSRN 1177700000851
[signature]

79

Дополнительное соглашение №5
к Договору № ВА-1-18740/1 об оказании юридических услуг от 02.09.2015г.

г. Москва

«01» марта 2017 г.

Акционерный коммерческий банк «ПРОБИЗНЕСБАНК» (открытое акционерное общество) (ОАО АКБ «ПРОБИЗНЕСБАНК») именуемый в дальнейшем «Доверитель» или «Банк», в лице представителя конкурсного управляющего Банком – Государственной корпорации «Агентство по страхованию вкладов» Беднина Василия Феликсовича, действующего на основании доверенности от 02 июня 2016 года № 659, и решения Арбитражного суда г. Москвы от 28 октября 2015 года по делу №А40-154909/2015, с одной стороны, и

Адвокат Московской коллегии адвокатов «Кворум» Павлов Андрей Алексеевич, имеющий регистрационный номер в реестре адвокатов города Москвы 77/12666, удостоверение № 14627 выдано Главным управлением Министерства юстиции РФ по Москве, являющийся Председателем коллегии Московской коллегии адвокатов «Кворум», именуемый в дальнейшем «Адвокат», действующий на основании Федерального закона от 31 мая 2002 года № 63-ФЗ «Об адвокатской деятельности и адвокатуре в Российской Федерации», с другой стороны, именуемые в дальнейшем также «Стороны», заключили настоящее Дополнительное соглашение № 5 (далее – Дополнительное соглашение) к договору № ВА-1-18740/1 об оказании юридических услуг от 02 сентября 2016 года (далее – Соглашение) о нижеследующем:

1. Стороны договорились изложить Соглашение с приложениями к нему в новой редакции, являющейся приложением к настоящему Дополнительному соглашению.

2. Соглашение и все приложения к нему в новой редакции вступают в силу и подлежат применению Сторонами с даты заключения настоящего Дополнительного соглашения.

3. С даты заключения настоящего Дополнительного соглашения утрачивают силу условия Соглашения с приложениями к нему и дополнительные соглашения к нему в старой редакции.

4. Настоящее Дополнительное соглашение вступает в силу с даты его подписания.

5. Настоящее Дополнительное соглашение составлено в двух экземплярах, имеющих одинаковую юридическую силу, по одному для каждой из сторон.

### АДРЕСА, РЕКВИЗИТЫ И ПОДПИСИ СТОРОН

| Доверитель:<br>ОАО АКБ «ПРОБИЗНЕСБАНК» | Адвокат:<br>Московской коллегии адвокатов «Кворум» |
|---|---|
| Юридический адрес: 109240, г. Москва, ул. Высоцкого, д.4,<br>Фактический адрес: 127055, г. Москва, ул. Лесная, д.59, стр.2<br>ОГРН 1027739154497<br>ИНН/КПП: 7708514824 / 775001001<br>В лице конкурсного управляющего:<br>Государственная корпорация «Агентство по страхованию вкладов» (ГК АСВ)<br>Банк получателя: ГУ Банка России по ЦФО, г Москва 35<br>Расчетный счет 40503810145250003051<br>БИК: 044525000 | Юридический адрес: 121069, г. Москва, ул. Поварская, д.11, стр.1<br>Фактический адрес: 121069, г. Москва, ул. Поварская, д.11, стр.1<br>ОГРН 1177700000851<br>ИНН/КПП: 7704386699/ 770401001<br>Расчетный счет: 40703810210000081320 в ЗАО Национальный банк сбережений г. Иваново<br>БИК 042406718<br>к/с 30101810000000000718<br>Адрес электронной почты: ricevimento@qdimg.ru |
| Представитель конкурсного управляющего<br><br>/В.Ф. Беднин/<br>М.П. | /А.А. Павлов/<br>М.П. |

2

к Дополнительному соглашению
от «01»       03       2017 г. к договору
оказании юридических [...]
№ ВА-1-18740/1 от 02.09. [...]

## Соглашение № ВА-1-18740/1
### об оказании юридической помощи

**г. Москва**

Акционерный коммерческий банк «ПРОБИЗНЕСБАНК» (открытое акционерное общество) (далее —
АКБ «ПРОБИЗНЕСБАНК») именуемый в дальнейшем «Доверитель» или «Банк», в лице представителя
конкурсного управляющего Банком – Государственной корпорации «Агентство по страхованию вкладов»
Беднина Василия Феликсовича, действующего на основании доверенности от 02 июня 2016 года № 6[...]
решения Арбитражного суда г. Москвы от 28 октября 2015 года по делу №А40-154909/2015, с одной
стороны, и

Адвокат Московской коллегии адвокатов «Кворум» Павлов Андрей Алексеевич, имеющий
регистрационный номер в реестре адвокатов города Москвы 77/12666, удостоверение № 14627 выдан[...]
Главным управлением Министерства юстиции РФ по Москве, являющийся Председателем коллег[...]
Московской коллегии адвокатов «Кворум», именуемый в дальнейшем «Адвокат», действующий [...]
основании Федерального закона от 31 мая 2002 года № 63-ФЗ «Об адвокатской деятельности и адвокат[...]
в Российской Федерации», с другой стороны, именуемые в дальнейшем также «Стороны», заключ[...]
настоящее Дополнительное соглашение №  5  (далее – Дополнительное соглашение) к договору № В[...]
1-18740/1 об оказании юридических услуг от 02 сентября 2016 года (далее – Соглашение) [...]
нижеследующем:

## 1. ПРЕДМЕТ СОГЛАШЕНИЯ

1.1.    Адвокат обязуется по заданию Доверителя оказать юридическую помощь (далее – услуги) [...]
объеме, сроки и на условиях, предусмотренных настоящим Соглашением, а Доверитель обязуется оплат[...]
эти услуги.

1.2.    Перечень оказываемых Адвокатом услуг определяется в техническом задании (Приложен[...]
1 к настоящему Соглашению), которое подписывается Сторонами и является неотъемлемой част[...]
настоящего Соглашения (далее – Техническое задание).

1.3.    Сроки оказания услуг устанавливаются в Техническом задании.

## 2. ПРАВА И ОБЯЗАННОСТИ СТОРОН

**2.1.    Адвокат обязан:**

2.1.1.    Исполнять принятые на себя обязательства надлежащим образом, в объеме и сроки
определенные в Техническом задании, используя при этом свои специальные познания в области права [...]
совершая все необходимые для выполнения заданий Доверителя действия.

2.1.2.    При исполнении настоящего Соглашения действовать, не противоречащие закону,
оперативностью и степенью заботливости, разумности и добросовестности, как если бы Адвокат
действовали в своих собственных интересах.

2.1.3.    При исполнении настоящего Соглашения действовать в строгом соответствии с
разъяснениями, рекомендациями, распоряжениями, регламентами, в частности, Регламентом
взаимодействия Юридического управления с привлеченными для осуществления ликвидационных
процедур специализированными организациями, утвержденным решением Правления Агентства от 6 июня
2013 г. (протокол № 34), и Регламентом взаимодействия Экспертно-аналитического департамента с
привлеченными для осуществления ликвидационных процедур специализированными организациям[...]
(далее – Регламенты), положениями, приказами и иными внутренними регулятивными документами
Агентства в части, касающейся оказания Адвокатом услуг в соответствии с настоящим Соглашением,
в том числе:

3

1)   согласовывать с Доверителем процессуальные действия, совершаемые Адвокатом в ходе оказания услуг в соответствии с настоящим Соглашением, в случаях, порядке и сроки, установленные Доверителем согласно Регламентам;

2)   представлять Доверителю процессуальные документы, подготавливаемые и получаемые Адвокатом в ходе оказания услуг в соответствии с настоящим Соглашением, в случаях, порядке и сроки, установленные Доверителем;

3)   своевременно сообщать Доверителю информацию, ставшую известной Адвокату при исполнении настоящего Соглашения и способную повлиять на интересы известной Адвокату при информировать Доверителя об обращениях к Адвокату третьих лиц о реструктуризации задолженности перед Доверителем, об изменении порядка погашения задолженности либо способа урегулирования споров.

2.1.4.   В любой момент по требованию Доверителя уведомлять последнего о текущем состоянии дел по исполнению условий настоящего Соглашения.

2.1.5.   Обеспечить сохранность, а в необходимых случаях – конфиденциальность переданных им Доверителем в соответствии с настоящим Соглашением и Техническим заданием документов и информации.

2.1.6.   Возвратить переданные им Доверителем в соответствии с настоящим Соглашением и Техническим заданием документы в течение 5 (Пять) рабочих дней после прекращения настоящего Соглашения, а также после получения соответствующего требования Доверителя.

2.1.7.   Представлять Доверителю отчеты по результатам исполнения обязательств, предусмотренных настоящим Соглашением и Техническим заданием, в том числе:

1)   еженедельно, не позднее 15 часов 00 минут по московскому времени последнего рабочего дня недели, направлять по электронной почте представителю конкурсного управляющего и в Юридический департамент Агентства сведения о судебной работе по установленной Регламентом взаимодействия Юридического управления с привлеченными для осуществления ликвидационных процедур специализированными организациями форме, а после внедрения в Агентстве информационной системы учета судебной работы – путем незамедлительного внесения соответствующих данных в указанную информационную систему;

2)   ежемесячно, не позднее 3-го рабочего дня месяца, следующего за отчетным, направлять Доверителю отчетность по форме 0409362 «Сведения об исковой работе» в соответствии с указанием Банка России от 14 июля 2005 г. № 1594-У «О перечне, формах и порядке составления и представления отчетности ликвидируемых кредитных организаций в Центральный банк Российской Федерации»:

- в случае осуществления бухгалтерского учета и контроля за платежами Доверителя привлеченной специализированной организацией – в соответствующую специализированную организацию;

3)   ежемесячно, не позднее 10-го рабочего дня месяца, следующего за отчетным, направлять Доверителю по установленной Доверителем форме детализированные сведения об исковой работе, отражаемые в представляемой в соответствии с пп. 2 настоящего пункта отчетности по форме 0409362;

4)   ежеквартально, не позднее 10-го числа месяца, следующего за отчетным кварталом, представлять Доверителю отчет о выполнении рабочего плана мероприятий по оспариванию сомнительных сделок Доверителя по установленной Доверителем форме;

5)   ежемесячно, не позднее 10-го числа месяца, следующего за отчетным, представлять отчеты о ходе процедур несостоятельности (банкротства), а также исполнительных производств в отношении должников Доверителя по форме, установленной Доверителем;

6)   в порядке и сроки, установленные Регламентом взаимодействия Экспертно-аналитического департамента с привлеченными для осуществления ликвидационных процедур специализированными организациями, направлять по электронной почте представителю конкурсного управляющего организациями, направлять по электронной почте представителю конкурсного управляющего (ликвидатора) и в Экспертно-аналитический департамент Агентства сведения о ходе уголовного судопроизводства по установленным этим регламентом форме, а после внедрения в Агентстве информационной системы учета досудебной работы – также путем незамедлительного внесения соответствующих данных в указанную информационную систему.

Предусмотренные настоящим пунктом сведения Адвокат направляют Доверителю по указанным Доверителем адресам электронной почты. Доверитель сообщает Адвокату данные об адресах электронной почты Доверителя посредством направления соответствующих уведомлений по форме Приложения 2 к настоящему Соглашению на указанный в разделе 10 настоящего Соглашения адрес электронной почты Адвоката либо другим способом, обеспечивающим своевременное получение Адвокатом такого уведомления.

2.1.8.   Устранять по требованию Доверителя в установленные Доверителем сроки (а в случае отсутствия указания таких сроков – в разумные сроки) недостатки, допущенные при оказании услуг по

4

настоящему Соглашению, а также в подготавливаемых Адвокатом документах и актах сдачи...

2.1.9. Своевременно направлять Доверителю запросы о представлении документов, информации, необходимых для оказания услуг, предусмотренных настоящим Соглашением, расчетом, чтобы были соблюдены установленные настоящим Соглашением сроки совершения делового оборота, складывающейся обстановкой и законодательством сроки совершения предпринимаемых Адвокатом в соответствии с Техническим заданием в ходе оказания услуг.

2.1.10. В случае прекращения настоящего Соглашения незамедлительно:

1) возвратить Доверителю выданные им ранее доверенности, срок действия которых, ... Кроме того, до прекращения настоящего Соглашения подлежат возврату Доверителю ... Адвокату и иных привлекаемых ими лиц, которые прекратили оказание услуг по настоящему Согла...

2) передать Доверителю по акту-приема-передачи всю полученную документацию и ... оказанных услуг в рамках подписанного Сторонами Технического задания.

2.1.11. Незамедлительно информировать в соответствии с п. 2.2.1 настоящего Сог... Доверителя о любых заключаемых Адвокатом соглашениях, приложениях, соглашениях с третьим... в рамках исполнения обязательств по настоящему Соглашению, а также сообщать све... привлекаемых третьих лицах.

2.1.12. Адвокат не вправе принимать от третьего лица, обратившегося к нему за по... юридических услуг, поручения в случаях, если интересы этого третьего лица противоречат ... Доверителя (конфликт интересов), без согласия Доверителя. Адвокат обязан незамед... информировать Доверителя о потенциальной возможности возникновения конфликта интересов. ... если оказание Адвокатом услуг третьим лицам приводит к возникновению конфликта интересов, ... предпринимает все меры к получению согласия Доверителя и иных сторон конфликтного отнош... продолжение оказания Адвокатом услуг.

2.1.13. Соблюдать требования Поручения на обработку персональных данных, получен... исполнении условий настоящего Соглашения (Приложение 3 к настоящему Соглашению).

2.1.14. По согласованию с Доверителем (без увеличения цены настоящего Соглашения) и... иные обязанности и предпринимать действия, отвечающие предмету настоящего Соглашения и и... Стороны.

2.1.15. Представить Доверителю сведения об Адвокате, а также о работниках, привлекаем... оказания юридических и иных услуг по настоящему Соглашению (Приложение 4 к наст... Соглашению), а также их сообщения о наличии/отсутствии у них личной заинтересованности в в... оказанием юридических и иных услуг по настоящему Соглашению до их привлечения для испо... обязательств по настоящему Соглашению (Приложение 5 к настоящему Соглашению).

Стороны договорились, что указанная информация, представленная Адвокатом, ... конфиденциальной.

В любой момент по требованию Доверителя о необходимости отстранения Адвоката и ... работников Адвоката, оказывающих юридические и иные услуги по настоящему Соглаш... от проводимых в рамках оказания услуг мероприятий Адвокат обязан не позднее 15 (Пятнадцать) раб... дней с момента получения соответствующего требования назначить нового Адвоката и (или) работ... предоставить Доверителю соответствующую информацию, а также сообщения о наличии/отсутствии ... личной заинтересованности в связи с оказанием юридических и иных услуг по настоящему Соглашению... (Приложение 5 к настоящему Соглашению). В случае замены Адвоката и (или) работника по ини... Адвоката последний обязан за 5 (Пять) рабочих дней до назначения нового Адвоката и (или) работ... направить Доверителю сведения о новом Адвокате и (или) работнике, а также сообщение... наличии/отсутствии у них личной заинтересованности в связи с оказанием юридических и иных услу... настоящему Соглашению (Приложение 4 и 5 к настоящему Соглашению).

2.1.16. Оказывать содействие Доверителю в подготовке банковских документов (подш... копирование, брошюрование, нумерование), находящихся в распоряжении Адвокатов, в том числе и... сопровождаемым материалам доследственных проверок и уголовным делам для представления ... правоохранительные органы по их запросам и постановлениям о выемке.

## 2.2. Адвокат вправе:

2.2.1. Привлекать третьих лиц, с учетом п. 2.1.15 настоящего Соглашения, для оказания услуг... настоящему Соглашению, соблюдая условия конфиденциальности, требования законодательства... персональных данных и избегая конфликта интересов привлекаемого лица и Доверителя (п. 2.1... настоящего Соглашения). В случае привлечения Адвокатом третьих лиц в рамках исполнения обязательств... по настоящему Соглашению, Адвокат отвечает перед Доверителем за действия (бездейс...

...печенных третьих лиц как за свои собственные, в том числе несут ответственность за разглашение ...ными третьими лицами конфиденциальной информации.

Привлечение Адвокатом третьих лиц в рамках исполнения обязательств по настоящему ...глашению не освобождает Адвоката от обязанности по самостоятельному представлению Доверителю ...еобходимых отчетов об исполнении обязательств по Соглашению согласно условиям настоящего Соглашения.

2.2.2. Запрашивать у Доверителя документы, сведения, информацию, необходимые для ...адлежащего исполнения обязательств Адвокатом по настоящему Соглашению, в порядке, предусмотренном п. 2.1.9 настоящего Соглашения.

**2.3.    Доверитель обязан:**

2.3.1. Своевременно обеспечивать Адвоката по их письменным запросам всеми документами, сведениями, информацией, необходимыми для оказания услуг, предусмотренных настоящим Соглашением, в том числе документами, нормативными актами, регулирующими деятельность Доверителя.

2.3.2. Оплачивать услуги Адвоката в порядке и сроки, установленные настоящим Соглашением.

2.3.3. В течение 10 (Десять) рабочих дней со дня представления Адвокатом информации о работниках и привлеченных ими третьих лицах, которые на стороне Адвоката будут непосредственно совершать действия в связи с исполнением настоящего Соглашения, выдать им соответствующие доверенности. Адвокат обязан заблаговременно доводит до сведения Доверителя объем полномочий, которые должны быть предоставлены Доверителем таким лицам.

**2.4.    Доверитель вправе:**

2.4.1. Осуществлять контроль за процессом оказания услуг Адвокатом, не вмешиваясь при этом в деятельность Адвоката. При этом Доверитель вправе давать Адвокату обязательные для исполнения указания. В случае если указания незаконными или противоречащими интересам Доверителя, они обязаны немедленно письменно и мотивированно сообщить об этом.

2.4.2. Требовать от Адвоката представления отчетов о ходе оказания услуг, предусмотренных настоящим Соглашением.

2.4.3. Направлять своих представителей для присутствия в судебных заседаниях, на переговорах, при проведении иных мероприятий, осуществляемых Адвокатом в ходе оказания услуг в соответствии с настоящим Соглашением.

2.4.4. Осуществлять контроль за соблюдением Адвокатом условий конфиденциальности и требований законодательства о защите персональных данных в связи с исполнением настоящего Соглашения.

**3.    ЦЕНА СОГЛАШЕНИЯ И ПОРЯДОК РАСЧЕТОВ**

3.1.    **Оплата** услуг Адвокату производится Доверителем в размере и сроки, определяемые в Приложении 6 к настоящему Соглашению, которое подписывается обеими Сторонами и является неотъемлемой частью Соглашения.

3.2.    Порядок оплаты услуг Адвоката в случае оказания Адвокатом услуг ненадлежащего качества регулируется в соответствии с настоящим разделом с учетом раздела 4 настоящего Соглашения.

3.3.    Расходы Адвоката, связанные с оказанием услуг по настоящему Соглашению, ... включаются в стоимость услуг Адвоката и подлежат возмещению Доверителем на основании ...дставляемых Адвокатом первичных документов, подтверждающих указанные расходы, при условии, ...о такие расходы были предварительно письменно согласованы Адвокатом с Доверителем.

Доверитель возмещает Адвокату следующие виды расходов:

1)    разумно произведенные Адвокатами расходы, связанные с командированием работников ...катов, включая суточные расходы (в пределах норм, установленных Налоговым кодексом Российской ...ерации), расходы, связанные с оплатой проезда к месту командировки и обратно (расходы на ...илеты эконом-класса, проезд в купейном вагоне поезда и вагоне эконом-класса при пользовании ...оскоростным наземным транспортом); расходы по оплате проживания в гостиницах - номера эконом- ...(номера люкс, бизнес, иных категорий не оплачиваются) по месту оказания услуг и проведения ...и при направлении в командировку для представительства интересов Доверителя в судебных ...иях, на собраниях кредиторов, при совершении исполнительных действий по принудительному ...нию вступивших в законную силу, судебных актов в отношении должников – засимщиков ...ителя, при сопровождении производств по уголовным делам, а также при выполнении иных ...ий по отдельным заданиям Доверителя (уровень гостиницы не выше «трех звезд») вне города

6

2)    разумно произведенные Адвокатами почтовые расходы и расходы по оплате
тарифов нотариусов, предусмотренные действующим законодательством Российской Фед
нотариате, и расходы по оплате госпошлины Налоговым кодексом Российской Федера
госпошлина оплачивается через нотариуса);

3)    расходы, относящиеся в соответствии с действующим законодательством Ро
Федерации к числу судебных издержек, включая расходы по уплате государственных пошлин и
исков (заявлений), апелляционных, кассационных и надзорных жалоб, и прочие судебные ра
разумно произведенные Адвокатами в процессе судебного представительства интересов Довери

4)    расходы технического характера, связанные с переводом документов с иностранн

привлеченными специалистами;
иные не указанные выше расходы Адвокатов (в том числе расходы, понесенные третьими
привлеченными Адвокатами в соответствии с п. 2.2.1 настоящего Соглашения), произведе
предварительному согласованию с Доверителем, а также утвержденные Комитетом кредиторов
соответствии с условиями настоящего Соглашения.

5) Оплата услуг и возмещение расходов производится Доверителем путем перечисления
средств          на          расчетный          счет          Московской          коллегии          адвокатов
в соответствии с п. 13 ст. 22 и п. 6 ст. 25 Федерального закона от 31 мая 2002 г. 63-ФЗ «Об адво
деятельности и адвокатуре в Российской Федерации», указанный в разделе 10 настоящего Согл
на основании подписанного Сторонами акта сдачи-приемки оказанных услуг по форме, установл
Приложением 7 к настоящему Соглашению (далее – Акт), и счета на оплату услуг, выстав
Адвокатами.

3.4. Адвокат ежемесячно, до 15-го числа месяца, следующего за отчетным, сост
подписывают со своей стороны и направляют для подписания Доверителю Акт в двух экзем
(по одному для каждой из Сторон) и счет на оплату услуг.

3.5. В Акте указываются содержание оказанных услуг, сроки их оказания, стоимость ок
услуг, а также понесенные Адвокатами в целях оказания услуг по настоящему Соглашению ра
части, подлежащей возмещению в соответствии с п. 3.3 настоящего Соглашения. К Акту прил
документы, подтверждающие понесенные Адвокатом в отчетном периоде расходы. По согласо
Сторон Адвокат может представлять информацию в отношении понесенных расходов в ином об
оформлять такую информацию отдельным документом.

3.6. Доверитель обязуется подписывать Акты не позднее 10 (Десять) рабочих дней со зн
поступления либо в указанный срок представлять Адвокату письменные мотивированные возражения

3.7. При наличии письменных возражений Доверителя относительно качества оказанн
отчетном периоде услуг, размера и состава предъявляемых к оплате расходов или содержания
Адвокат устраняет соответствующие недостатки в установленный Доверителем срок, после
направляют Доверителю исправленный Акт и счет на оплату услуг с учетом внесенных в Акт изме
Рассмотрение (подписание) исправленного Акта и оплата услуг Адвокату осуществляется Доверите
порядке, установленном п.п. 3.4-3.6 настоящего Соглашения, не позднее 5 (Пять) рабочих дней со
подписания такого Акта Сторонами.

3.9. В случае невозможности устранения Адвокатом выявленных Доверителем недостатко
порядке, установленном п. 3.8 настоящего Соглашения, стоимость оплачиваемых им услуг подле
уменьшению, и оплата услуг Адвоката производится исходя из объема фактически оказанных у
надлежащего качества в расчетном периоде.

## 4. ОТВЕТСТВЕННОСТЬ СТОРОН

4.1. За неисполнение или ненадлежащее исполнение обязательств по настоящему Соглашени
Стороны несут ответственность в соответствии с действующим законодательством Российской Федер
и настоящим Соглашением.

4.2. В случае привлечения Доверителя к ответственности за нарушение законодательства о защит
персональных данных (далее – ПДн), в том числе к имущественной ответственности, и при этом если так
нарушение было совершено в результате неисполнения или ненадлежащего исполнения Адвокато
обязательств по соблюдению правил обработки и требований к защите ПДн, установленны
Приложением 3 к настоящему Соглашению, Адвокат по требованию Доверителя возмещает последне
реальный ущерб, возникший в результате указанного нарушения.

4.3. В случае неисполнения или ненадлежащего исполнения обязательств по настояще
Соглашению Адвокат на основании соответствующего требования Доверителя возмещает причиненные
убытки в полном объеме, в том числе убытки, возникшие при расторжении настоящего Соглашения по
основаниям, предусмотренным п. 6.6 настоящего Соглашения, а также в результате выплаты фулбоссов

санкций, наложенны
ненадлежащего исполн

4.4. В случае у
размер          задолжен
в результате утраты и
средств от должник
затруднительным для
на основании соответ
от суммы задолженно
более стоимости услуг
Датой утраты докумен

4.5. В случае
по вине Адвоката в ре
его к исполнению ли
Адвоката не произведе
все возможные дей
по которым взыскани
восстановления срока и
в пользу Доверителя н
Доверителя, Адвокат и
100% от суммы задол
дополнительное возник

4.6. В случае
удовлетворения требов
в том числе в случае у
Доверителя, или ины
возможность удовлетв
крайне       затрудните
на основании соответ
от суммы задолженно
оспариваемой сделке
дополнительное возни

При этом Адв
Соглашения в случае

4.7. В случа
оспаривания судебн
соответствующего тр
Доверителя, но не
настоящему Соглаш

4.8. В случае
целях оспаривания и
Доверителю имущес
получение (взыскан
имущественных пр
затруднительным дл
имущественных прав
уплачивают Доверит
беспаривания сделк
дополнительное воз
считается день, в
нескольких адв
ответственность пере

5.1. Ни одна
надлежащее исполне

Case 1:17-mc-00414-GBD-SN   Document 24-1   Filed 03/13/18   Page 38 of 61

7

...кций, наложенных государственными органами на Доверителя (его работников), вследствие ...адлежащего исполнения Адвокатом обязательств по Соглашению.

4.4. В случае утраты (непередачи) Адвокатом подлинных документов, подтверждающих основания ...размер задолженности какого-либо должника перед Доверителем и (или) иных документов, ...результате утраты которых была полностью или частично утрачена возможность получения денежных ...едств от должников Доверителя и (или) отсутствие которых делает невозможным или крайне ...атруднительным для Доверителя получение денежных средств от должников Доверителя, Адвокат ...а основании соответствующего требования Доверителя уплачивают Доверителю штраф в размере 100% ...от суммы задолженности по данным бухгалтерского учета Доверителя на дату утраты документов, но не ...более стоимости услуг (включая дополнительное вознаграждение) Адвоката по настоящему Соглашению. ...датой утраты документов считается день, когда Доверитель узнал о факте утраты.

4.5. В случае пропуска Адвокатом срока предъявления исполнительного документа к исполнению ...по вине Адвоката в результате непринятия мер к получению исполнительного документа, непредъявления ...его к исполнению либо наличия иных причин, по которым взыскание в пользу Доверителя по вине ...Адвоката не произведено (не производится), Адвокат своими силами и за свой счет должны предпринять ...все возможные действия для восстановления срока на его подачу, устранения причин, ...по которым взыскание в пользу Доверителя не произведено (не производится). При этом если возможность ...восстановления срока на подачу исполнительного документа утрачена или причины, по которым взыскание ...в пользу Доверителя не произведено (не производится), неустранимы без существенных усилий со стороны ...Доверителя, Адвокат на основании соответствующего требования Доверителя уплачивают штраф в размере ...100% от суммы задолженности по исполнительному документу, но не более стоимости услуг (включая ...дополнительное вознаграждение) Адвоката по настоящему Соглашению.

4.6. В случае совершения Адвокатом действий (бездействия), повлекших утрату возможности ...удовлетворения требований Доверителя вследствие пропуска срока исковой давности и (или) иных причин, ...в том числе в случае утраты (непередачи) Адвокатом подлинных документов, подтверждающих требование ...Доверителя, или иных документов, в результате утраты которых была полностью или частично утрачена ...возможность удовлетворения требований Доверителя и (или) отсутствие которых делает невозможным или ...крайне затруднительным для Доверителя обосновывать свои требования, Адвокат ...на основании соответствующего требования Доверителя уплачивают Доверителю штраф в размере 100% ...от суммы задолженности, подлежащей взысканию, по данным бухгалтерского учета Доверителя (цены ...оспариваемой сделки, истребуемого имущества и т.п.), но не более стоимости услуг (включая ...дополнительное вознаграждение) Адвокатов по настоящему Соглашению.

При этом Адвокат не будет считаться просрочившими свои обязательства по условиям настоящего ...Соглашения в случае задержки представления документов Доверителем.

4.7. В случае совершения Адвокатом действий (бездействия), повлекших утрату возможности ...оспаривания судебного акта о взыскании денежных средств с Доверителя, Адвокат на основании ...соответствующего требования Доверителя уплачивают штраф в размере 100% от суммы, взысканной с ...Доверителя, но не более стоимости услуг (включая дополнительное вознаграждение) Адвоката по ...настоящему Соглашению.

4.8. В случае утраты (непередачи) Адвокатом подлинных документов, переданных Адвокату в ...целях оспаривания сделок (действий) или привлечения причинивших (направленных на причинение) ...Доверителю имущественный вред лиц к уголовной ответственности, на основании которых предполагалось ...получение (взыскание) с третьих лиц в пользу Доверителя денежных средств, имущества или ...имущественных прав (иных активов) и отсутствие которых делает невозможным или крайне ...затруднительным для Доверителя получение (взыскание) указанных денежных средств, имущества или ...имущественных прав (иных активов), Адвокаты на основании соответствующего требования Доверителя ...уплачивают Доверителю штраф в размере 100% от суммы, планируемой ко взысканию в результате ...оспаривания сделки или уголовного судопроизводства, но не более стоимости услуг (включая ...дополнительное вознаграждение) Доверителя по настоящему Соглашению. Датой утраты документов ...считается день, когда Доверитель узнал о факте утраты.

4.9. В случае если исполнение обязательств по настоящему Соглашению производится ...несколькими адвокатами (множественность настороне Адвоката), Адвокат несет солидарную ...ответственность перед Доверителем за исполнение обязательств по настоящему Соглашению.

## 5. ФОРС-МАЖОР

5.1. Ни одна из Сторон не несет ответственность перед другой Стороной за неисполнение или ...адлежащее исполнение обязательств, обусловленное чрезвычайными и непредотвратимыми при данных

8

Сторонами своих обязательств по настоящему Соглашению.

условиях обстоятельствами (форс-мажор), если эти обстоятельства существенно повлияли на исп...

5.2. Сторона, не исполняющая обязательства по настоящему Соглашению вследствие наст...
обстоятельств, указанных в п. 5.1 настоящего Соглашения, незамедлительно направляет другой
извещение (с уведомлением о вручении) о наличии такого обстоятельства и его влиянии на исп...
обязательств по настоящему Соглашению.

## 6. ПОРЯДОК ИЗМЕНЕНИЯ, ДОПОЛНЕНИЯ И РАСТОРЖЕНИЯ СОГЛАШЕНИ...

6.1. Внесение изменений и дополнений в настоящее Соглашение осуществляется в пис...
форме путем заключения соответствующих дополнительных соглашений. Дополнительные сог...
подписываются обеими Сторонами и являются неотъемлемой частью настоящего Соглашения.

6.2. Настоящее Соглашение может быть досрочно расторгнуто по соглашению Сторон и...
одностороннего отказа от исполнения Соглашения одной из Сторон в порядке, установленном наст...
Соглашением, а также в других случаях, установленных действующим законодательством Росс...
Федерации.

6.3. Доверитель и Адвокат вправе в любой момент в одностороннем внесудебном по...
отказаться от исполнения настоящего Соглашения, предупредив об этом другую Сторону не менее...
30 (Тридцать) дней до предполагаемой даты расторжения Соглашения. С даты расторжения наст...
Соглашения полномочия Адвокат и привлеченных ими третьих лиц по доверенностям, выданным в р...
настоящего Соглашения, прекращаются. При этом Адвокат обязан вернуть выданные Довер...
доверенности в рамках оказания Адвокатом услуг по настоящему Соглашению в срок не позднее...
(Три) рабочих дня до предполагаемой даты расторжения настоящего Соглашения.

6.4. В случае неисполнения или ненадлежащего исполнения Адвокатом обязательств по наст...
Соглашению Доверитель вправе незамедлительно расторгнуть настоящее Соглашение в односто...
внесудебном порядке, направив Адвокату уведомление об этом по почте или по электронной по...
адресам, указанным в разделе 10 настоящего Соглашения. В этом случае Соглашение сч...
расторгнутым со дня отправки уведомления Адвокатом по электронной почте. При этом Адвокаты об...
вернуть выданные Доверителем доверенности в рамках оказания Адвокатом услуг по насто...
Соглашению в срок не позднее чем за 3 (Три) рабочих дня до предполагаемой даты расторж...
настоящего Соглашения.

6.5. Доверитель вправе отказаться от исполнения Соглашения при условии оплаты Адвок...
фактически понесенных ими расходов. В случаях, когда отказ Доверителя от исполнения Соглаш...
связан с неоказанием Адвокатом услуг или оказанием ими услуг ненадлежащим образом и...
ненадлежащего качества, фактически понесенные Адвокатом расходы возмещению не подлежат.

6.6. Адвокат вправе отказаться от исполнения обязательств по Соглашению лишь при усло...
полного возмещению Доверителю убытков.

6.7. В случае отказа Доверителя от исполнения Соглашения в одностороннем порядке в связи...
неисполнением или ненадлежащим исполнением Адвокатом обязательств по Соглашению, в том числ...
нарушением положений о конфиденциальности, требований Поручения на обработку персональн...
данных (Приложение 3 к настоящему Соглашению) и невозможностью устранения такого нарушени...
срок, установленный Доверителем, Адвокат несет ответственность, предусмотренную разделом...
настоящего Соглашения. При этом фактически понесенные расходы Адвокату не возмещаются.

## 7. КОНФИДЕНЦИАЛЬНОСТЬ

7.1. Все сведения, информация и документы, полученные Адвокатом в связи с Соглашени...
считаются конфиденциальными и не подлежат разглашению Адвокатом без письменного согласия
Доверителя, за исключением случаев, перечисленных в п. 7.2 настоящего Соглашения, в течение всего
срока действия Соглашения, а также 10 (Десять) лет после его окончания.

Информация о факте заключения настоящего Соглашения и его условиях не является
конфиденциальной и может использоваться Сторонами без ограничений.

7.2. Предусмотренное п. 7.1 настоящего Соглашения ограничение не распространяется на
информацию:

1) подлежащую оглашению в соответствии с существом услуг, оказываемых Адвокатом,
и положениями законодательства Российской Федерации;

2) общеизвестную на момент передачи, в том числе опубликованную или ставшую известной
неограниченному кругу лиц без нарушения настоящего Соглашения и вины в этом Сторон, их работников
или привлеченных в соответствии с настоящим Соглашением третьих лиц.

---

7.3. Адвокат об...
Соглашения конфиденциал лиц...
доступ к ней только лиц...
указанные лица в течение ср...
информационную инфор...
конфиденциальных каких-либо пр...
получении все необходи...
принимать конфиденциальность выш...

7.4. Под разгл...
понимается действие или...
любой возможной форм...
средств) становится изв...
Соглашению, в том числ...

7.5. За разглаш...
информации Стороны...
Российской Федерации.
убытки, причиненные...
конфиденциальной инф...

8.1. Стороны...
возникнуть при испо...
претензионном порядке...

8.2. Неурегули...
города Москвы.

9.1 Настоящее...
завершения конкурсно...

9.2. С момента...
соответствующая дело...

9.3. Любые ув...
указанным в разделе...
любым иным способом...
Доверителем (уведомл...
адвокатом А.А. Павло...

Обмен конфид...
Приложением 8 к насто...

9.4. Уведомлени...
момент отправки увед...
невозможности его вру...

9.5. В случае...
электронного адресов,...
обязана незамедлите...
документов. При этом...
или реквизитам до по...
надлежащим образом п...

9.6. Стороны в...
правовых актов России...
деятельности (далее...
коррупционных,...
представителями, аф...
связанными ими...
другие по настояще...
нарушение их нарушен...

Case 1:17-mc-00414-GBD-SN    Document 24-1    Filed 03/13/18    Page 40 of 61

9

7.3. Адвокат обязуется использовать полученную в ходе оказания услуг в рамках настоящего Соглашения конфиденциальную информацию исключительно в рамках оказания услуг, предоставлять доступ к ней только лицам, непосредственно участвующим в процессе их оказания (при условии, что указанные лица примут на себя обязательство сохранять в тайне известную им конфиденциальную информацию в течение срока, указанного в п. 7.1 настоящего Соглашения), и не использовать полученную конфиденциальную информацию в целях, прямо или косвенно наносящих ущерб Доверителю, и (или) для получения каких-либо преимуществ и выгод в течение срока действия Соглашения. Адвокат обязуется принимать все необходимые меры, чтобы их работники и привлеченные ими третьи лица сохраняли конфиденциальность вышеуказанной информации в сроки, установленные п. 7.1 настоящего Соглашения

7.4. Под разглашением конфиденциальной информации в целях настоящего Соглашения понимается действие или бездействие Стороны, в результате которого конфиденциальная информация в любой возможной форме (устной, письменной, иной форме, в том числе с использованием технических средств) становится известной третьим лицам без согласия другой Стороны, либо вопреки настоящему Соглашению, в том числе в течение 5 (Пять) лет после его окончания.

7.5. За разглашение конфиденциальной информации или утрату носителей конфиденциальной информации Стороны несут ответственность в соответствии с действующим законодательством Российской Федерации. Каждая из Сторон обязуется возместить другой Стороне в полном объеме все убытки, причиненные разглашением конфиденциальной информации или утратой носителей конфиденциальной информации.

## 8. ПОРЯДОК РАЗРЕШЕНИЯ СПОРОВ

8.1. Стороны предпринимают меры для разрешения споров и разногласий, которые могут возникнуть при исполнении, изменении, расторжении Соглашения, путем переговоров, а также в претензионном порядке, который является обязательным.

8.2. Неурегулированные Сторонами споры передаются на рассмотрение Таганский районный суд города Москвы.

## 9. ПРОЧИЕ УСЛОВИЯ

9.1 Настоящее Соглашение вступает в силу с момента его подписания и действует до даты завершения конкурсного производства в отношении Доверителя.

9.2. С момента вступления настоящего Соглашения в силу все предыдущие переговоры по нему, соответствующая деловая переписка и соглашения теряют силу.

9.3. Любые уведомления должны быть направлены Стороной в письменной форме по адресам, указанным в разделе 10 настоящего Соглашения, посредством почтовой или факсимильной связи или любым иным способом, обеспечивающим их своевременное получение другой Стороной. Вся переписка с Доверителем (уведомления, отчеты и пр.) от имени Адвокатов по соглашению Сторон подписывается адвокатом А.А. Павловым.

Обмен конфиденциальной информацией в электронном виде осуществляется в соответствии с Приложением 8 к настоящему Соглашению.

9.4. Уведомление считается полученным в момент его фактического получения Стороной либо в момент отправки уведомления отделением почтовой связи в адрес отправившей его Стороны в случае невозможности его вручения.

9.5. В случае изменения у какой-либо из Сторон наименования, местонахождения, почтового и электронного адресов, а также изменения иных реквизитов, указанных в настоящем Соглашении. Сторона обязана незамедлительно уведомить об этом другую Сторону с приложением соответствующих документов. При этом Стороны соглашаются, что уведомления и платежи, совершенные по старым адресам и реквизитам до поступления соответствующих уведомлений об их изменении, считаются должным и надлежащим образом исполненными.

9.6. Стороны подтверждают, что им известны требования законодательных и иных нормативных правовых актов Российской Федерации о противодействии коррупции при осуществлении хозяйственной деятельности (далее — антикоррупционные требования). Стороны обязуются обеспечить соблюдение антикоррупционных требований при исполнении настоящего Соглашения своими работниками, представителями, аффилированными лицами, а также субподрядчиками и иными контрагентами, привлекаемыми ими для исполнения настоящего Соглашения. Для целей определения ответственности Сторон по настоящему Соглашению нарушение антикоррупционных требований указанными лицами считается их нарушением, совершенным Стороной.

9.7. Сторона, которой стало известно о фактах неправомерного (с нарушением антикоррупцион... требований) получения работниками или представителями другой Стороны (лично или через посред... доходов в виде денег, иного имущества, в том числе имущественных прав, услуг имуществен... характера, результатов выполненных работ или каких-либо выгод (преимуществ) в связи с заключен... исполнением настоящего Соглашения (далее – получение доходов с нарушением антикоррупц... требований), обязана письменно уведомить об этом другую Сторону в течение двух рабочих дней.

Сторона, у которой появились обоснованные подозрения в получении доходов с нар... антикоррупционных требований, может направить другой Стороне запрос о предоставлении докуме... информации, необходимых для проверки таких подозрений, за исключением документов и инфор... доступ к которым ограничен в соответствии с федеральными законами. Сторона, получившая ука... запрос, обязана дать на него мотивированный ответ, а также представить другой Стороне запрашив... документы и информацию (либо указать предусмотренные федеральным законом основания для от... их предоставлении) в течение 5 (Пять) рабочих дней после получения запроса, если иной срок не... установлен по соглашению Сторон.

9.8. При наличии доказательств получения доходов с нарушением антикоррупционных требова... а также при наличии обоснованных подозрений в этом и неисполнении другой Стороной обяза... представить запрашиваемые документы и информацию Сторона вправе в одностороннем по... приостановить исполнение своих обязательств по настоящему Соглашению, в том числе опла... настоящему Соглашению, до урегулирования Сторонами спора или его разрешения в судебном пор... Если при этом имеются доказательства совершения уголовного преступления или администрати... правонарушения коррупционной направленности либо в результате нарушения антикоррупцио... требований Стороне причинены убытки указанная Сторона вправе в одностороннем порядке расторг... настоящее Соглашение.

9.9. Сторона, нарушившая антикоррупционные требования и (или) условия наст... антикоррупционной оговорки, обязана возместить другой Стороне возникшие у нее в результате эт... убытки. Порядок возмещения убытков определяется законодательством Российской Федерации... настоящим Соглашением.

9.10. Во всем остальном, что не предусмотрено настоящим Соглашением, Сторо... руководствуются действующим законодательством Российской Федерации.

9.11. Соглашение составлено на 10 (Десяти) листах в 2-х экземплярах, имеющих одинаков... юридическую силу, по одному экземпляру для каждой из Сторон.

## 10. АДРЕСА, РЕКВИЗИТЫ И ПОДПИСИ СТОРОН

| Доверитель: | Адвокат: |
| --- | --- |
| **ОАО АКБ «ПРОБИЗНЕСБАНК»** | **Московской коллегии адвокатов «Кворум»** |
| Юридический адрес: 109240, г. Москва, ул. Высоцкого, д.4, | Юридический адрес: 121069, г. Москва, ул. Поварская, д.11, стр.1 |
| Фактический адрес: 127055, г. Москва, ул. Лесная, д.59, стр.2 | Фактический адрес: 121069, г. Москва, ул. Поварская, д.11, стр.1 |
| ОГРН 1027739154497 | ОГРН 1177700000851 |
| ИНН/КПП: 7708514824 / 775001001 | ИНН/КПП: 7704386699/ 770401001 |
| В лице конкурсного управляющего: | Расчетный счет: 40703810210000081320 в ЗАО |
| Государственная корпорация «Агентство по страхованию вкладов» (ГК АСВ) | Национальный банк сбережений г. Иваново |
| Банк получателя: ГУ Банка России по ЦФО, г Москва 35 | БИК 042406718 |
| Расчетный счет: 40503810145250003051 | к/с 30101810000000000718 |
| БИК: 044525000 | Адрес электронной почты: ricevimento@qdmg.ru |

Представитель ... /В.Ф. Белкин

М.П.

/А.А. Павлов/

(Right margin — partially visible text, cut off)

В соответствии с согл...
– Соглашение) Акци...
...щество) (ОАО АКБ «ПРО...
...представителя конкурсного
...страхованию вкладов» Бед...
...иона 2016 года № 659, и р...
154909/2015, с одной сторо...

Адвокат Московск...
...регистрационный номер в...
Главным управлением М...
Московской коллегии а...
основании Федерального...
в Российской Федерации...
(далее – услуги) в следую...
1. Юридическое...
...порядке в отношении до...
расходов с проигравшей с...
2. Осуществление...
Банка.
3. Правовое сопр...
4. Правовое соп...
уголовной ответственно...
имущественного вреда Д...
5. Правовое соп...
Банком, в том числе по...
установленные сроки о...
указанием Банка России...
представления отчетнос...
Федерации» и детализир...
по установленной форм...
6. Правовое соп...
...преддверии банкротст...
...нецелесообразности осп...
...нка.
7. Правовое сопр...
8. При оказании...
...существлять следующи...
1) предоставля...
...никающим в процесс...
...нок, уголовного су...
...ников Доверителя...
2) на условиях...
...зации, осуществ...
...органы, юридич...
...ожности...
...ительных...
...ных проц...
...тов на пре...

84

*Приложение 1*
*к соглашению об оказании юридической помощи*
*№ ВА-1-18740/1 от 02.09. 2015 г.*

## ТЕХНИЧЕСКОЕ ЗАДАНИЕ
### к соглашению об оказании юридической помощи
### от 02.09.2015г. № ВА-1-18740/1

В соответствии с соглашением об оказании юридической помощи от 02.09.2015 г. № ВА-1-18740/1 (далее – Соглашение) Акционерный коммерческий банк «ПРОБИЗНЕСБАНК» (открытое акционерное общество) (ОАО АКБ «ПРОБИЗНЕСБАНК») именуемый в дальнейшем «Доверитель» или «Банк», в лице представителя конкурсного управляющего Банком – Государственной корпорации «Агентство по страхованию вкладов» Беднина Василия Феликсовича, действующего на основании доверенности от 02 июня 2016 года № 659, и решения Арбитражного суда г. Москвы от 28 октября 2015 года по делу №А40-154909/2015, с одной стороны, и

Адвокат Московской коллегии адвокатов «Кворум» Павлов Андрей Алексеевич, имеющий регистрационный номер в реестре адвокатов города Москвы 77/12666, удостоверение № 14627 выдано Главным управлением Министерства юстиции РФ по Москве, являющийся Председателем коллегии Московской коллегии адвокатов «Кворум», именуемый в дальнейшем «Адвокат», действующий на основании Федерального закона от 31 мая 2002 года № 63-ФЗ «Об адвокатской деятельности и адвокатуре в Российской Федерации», принимает на себя обязанность оказать Доверителю юридическую помощь (далее – услуги) в следующем объеме:

1. Юридическое сопровождение процедуры взыскания задолженности в претензионном и судебном порядке в отношении должников Доверителя. Юридическое сопровождение процедуры взыскания судебных расходов с проигравшей стороны в споре.

2. Осуществление правовой экспертизы документов при установлении требований кредиторов Банка.

3. Правовое сопровождение процедур банкротства в отношении должников Доверителя.

4. Правовое сопровождение уголовного судопроизводства, направленного на привлечение к уголовной ответственности лиц, чьи действия причинили и (или) были направлены на причинение имущественного вреда Доверителю.

5. Правовое сопровождение текущей деятельности конкурсного управляющего (ликвидатора) Банком, в том числе по ведению хозяйственных, трудовых и иных споров, подготовка и предоставление в установленные сроки отчетности по форме 0409362 «Сведения об исковой работе» в соответствии с указанием Банка России от 14 июля 2005 г. № 1594-У «О перечне, формах и порядке составления и представления отчетности ликвидируемых кредитных организаций в Центральный банк Российской Федерации» и детализированных сведений об исковой работе, отражаемых в отчетности по форме 0409362, по установленной форме.

6. Правовое сопровождение судебных процедур оспаривания сомнительных сделок, совершенных в преддверии банкротства Банка согласно представленному Доверителем плану, подготовка заключений о нецелесообразности оспаривания сомнительных сделок в случае необходимости.

7. Правовое сопровождение процедур исполнительного производства в отношении должников Банка.

8. При оказании услуг, указанных в п.п. 1-7 настоящего Технического задания, Адвокат обязуется осуществлять следующие действия:

1) предоставлять устные и письменные консультации и справки по правовым вопросам, возникающим в процессе сопровождения процедур взыскания задолженности, оспаривания сомнительных сделок, уголовного судопроизводства, ведения исполнительных производств и процедур банкротства должников Доверителя, а также поручителей и залогодателей должников Доверителя;

2) на условиях и в порядке, предусмотренных действующим законодательством Российской Федерации, осуществлять подготовку любого рода запросов, писем, уведомлений в государственные и иные органы, юридическим и физическим лицам в процессе сопровождения процедур взыскания задолженности, оспаривания сомнительных сделок, уголовного судопроизводства, ведения исполнительных производств и процедур банкротства должников Доверителя, а также поручителей и залогодателей должников Доверителя; проводить правовой анализ представленных Доверителем документов на предмет их достаточности для выполнения задания;

12

3) осуществлять правовой анализ предъявленных требований кредиторов Доверителя, ~~~
достаточность и обоснованность подтверждающих требования документов, разрабатывать и ~~~
Доверителю правовую позицию по предъявленным требованиям кредиторов, а также ~~~
интересы Доверителя при рассмотрении судом возражений кредиторов;

4) осуществлять правовую экспертизу заключаемых Доверителем договоров и ~~~
различного рода, дополнительных соглашений к ним в случаях и порядке, установленных Доверит~~~

5) представлять интересы Доверителя в судах общей юрисдикции, арбитражных и третейс~~~
всех инстанций на территории Российской Федерации;

6) на условиях- и в порядке, предусмотренных действующим законодательством Р~~~
Федерации, осуществлять претензионно-исковую работу по взысканию дебиторской задолжен~~~
должников Доверителя, в том числе осуществлять подготовку претензий, заявлений, исковых ~~~
жалоб и прочих документов правового характера;

7) осуществлять мероприятия по предъявлению исковых материалов в суды общей юрис~~~
арбитражные и третейские суды всех инстанций;

8) осуществлять мероприятия по подготовке заявлений о выявленных уголовно нак~~~
деяниях в правоохранительные органы и сопровождение уголовного судопроизводства с совершени~~~
необходимых действий, предусмотренных уголовно-процессуальным законодательством, в том ~~~
представлять интересы Доверителя на всех стадиях уголовного судопроизводства в органах д~~~
следственных органах, органах прокуратуры и судах общей юрисдикции;

9) осуществлять сопровождение процедур несостоятельности (банкротства) в отн~~~
должников Доверителя с совершением всех необходимых действий, предусмотренных законодатель~~~
несостоятельности (банкротстве), в том числе предъявлять требования о включении в реестр треб~~~
кредиторов должника и возражения относительно включения необоснованных требований ~~~
кредиторов, представлять интересы Доверителя на заседаниях собрания (комитета) кредиторов дол~~~
оспаривать действия (бездействие) арбитражного управляющего должником, знакомиться с от~~~
арбитражного управляющего, а также запрашивать и получать иную информацию о ходе ликвидац~~~
процедуры должника;

10) осуществлять сопровождение процедур исполнительного производства с совершением~~~
необходимых действий, предусмотренных законодательством об исполнительном производстве, ~~~
числе представлять интересы Доверителя в службе судебных приставов-исполнителей, вкл~~~
предъявление исполнительных документов к исполнению, получение документов и иного присужд~~~
имущества и совершение всех иных действий, связанных с исполнительным производством. При ~~~
Адвокаты обязаны передавать Доверителю в течение 5 (Пять) рабочих дней все денежные средства и ~~~
имущество, полученные Адвокатами непосредственно от должников и (или) третьих лиц и причитаю~~~
Доверителю в связи с выполнением поручения по Соглашению;

11) представлять Доверителя в отношениях с физическими лицами, организациями ~~~
различными государственными и иными органами, а также совершать в отношении указанных орган~~~
организаций необходимые действия, направленные на установление, изменение или прекращение пра~~~
обязанностей Доверителя при наличии доверенности с оговоренными в ней соответствующ~~~
полномочиями;

12) формировать пакеты документов для отчетности Доверителя перед судебными орг~~~
Банком России, участниками процедуры конкурсного производства (ликвидации) Доверителя и и~~~
контролирующими органами и должностными лицами;

13) осуществлять правовой анализ действий конкурсного управляющего (ликвидато~~~
направленных на реализацию имущества Банка, включая формирование и проведение правовой ~~~
документации, подготавливаемой в рамках осуществления деятельности конкурсного управля~~~
(ликвидатора) по реализации имущества, а также проверку законности порядка реализ~~~
соответствующего имущества;

14) в рамках исполнения обязательств по настоящему Соглашению проводить монитор~~~
исполнения должниками обязательств перед Банком (в том числе в целях контроля соблюдения ус~~~
мировых соглашений и иных сделок, заключаемых Доверителем);

15) проводить еженедельный мониторинг юридических лиц – должников Банка с це~~~
получения информации об их реорганизации, ликвидации и (или) введении в отношении них проце~~~
банкротства;

16) информировать Доверителя о возможности и фактах утраты обеспечения (в том ч~~~
утраты или повреждения предметов залога, истечении сроков действия обеспечительных догов~~~
влекущих невозможность или затрудняющих процесс взыскания;

Доверитель:

АКБ «ПРОБИЗНЕ~~~
Представитель ко~~~

М.П.

13

17) в срок не позднее 6 (Шесть) месяцев со дня вступления в законную силу последнего судебного акта, вынесенного в пользу Банка по конкретному делу, принятием которого закончилось рассмотрение дела по существу, осуществлять взыскание в пользу Банка:

- расходов на оплату услуг Адвокатов в размере суммы полученного Адвокатами от Доверителя дополнительного вознаграждения в рамках данного дела (если его уплата предусмотрена дополнительным соглашением об оплате услуг по настоящему Соглашению);

- судебных издержек, понесенных Доверителем в связи с рассмотрением данного дела в суде (в частности, денежных средств, выплаченных экспертам, нотариусам, специалистам, свидетелям, переводчикам, расходов, связанных с проведением осмотра доказательств на месте, а также почтовых, командировочных и иных расходов), исходя из экономической целесообразности;

- иное (указать);

18) осуществлять иные мероприятия, предварительно согласованные Сторонами, для исполнения настоящего Технического задания.

9. Услуги оказываются Адвокатами в течение срока действия договора.

Сроки оказания каждого вида услуг устанавливаются Доверителем. При отсутствии специальных указаний Доверителя услуги оказываются в такие сроки, чтобы были соблюдены установленные Соглашением, сложившимися обычаями делового оборота, складывающейся обстановкой и законодательством сроки совершения действий, предпринимаемых Адвокатами в соответствии с настоящим Техническим заданием.

10. Настоящее Техническое задание является неотъемлемой частью Соглашения.

## ПОДПИСИ СТОРОН

Доверитель:                                              Адвокат:

АКБ «ПРОБИЗНЕСБАНК» (ОАО)
Представитель конкурсного управляющего

/В.Ф. Бедин/                                        /А.А. Павлов/

М.П.                                                М.П.



14

*Приложение*
*к соглашению об оказании юридическо...*
*№ ВА-1-18740/1 от 02...*

## Контакты Доверителя

| № п/п | Подразделение | ФИО ответственного работника | Электронный адрес, телефон |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

## ПОДПИСИ СТОРОН:

**Доверитель:**                                         **Адвокат:**

АКБ «ПРОБИЗНЕСБАНК» (ОАО)
Представитель конкурсного управляющего

М.П.     /В.Ф. ...ин/                    /А.А. Павлов/
                                                        М.П.

1. Настояще...
Коммерческий банк
(ОАО)), именуемый
соответствии
с Федеральным     за...
Закон о ПДн) к о...
Московской коллеги...
номер в реестре адв...
Министерства юст...
Адвокатом услуг Д...
от 02.09.2015г. № ...

2. Обраб...
процедуры в отно...
Федеральным
«О несостоятельно...

3. В ра...
(операции) с ПДн...

сбор, за...
извлечени...
удаление...

4. Лицо
коллегии Моско...

5. Адво...

5.1. Соб...

5.2. Соб...
том числе при...
неправомерного
предоставления
правовые, орга...
в соответствии

«Об    постан...
утвержд...
в информацио...
информацион...

прика...
организацион...
обработке в ...
обработки ПД...

пост...
«Об  утвер...
использовани...

5.3 ...

15

*Приложение 3*
*к соглашению об оказании юридической помощи*
*№ ВА-1-18740/1 от 02.09.2015 г.*

### Поручение

### на обработку персональных данных

1.    Настоящее поручение на обработку персональных данных (далее – Поручение) Акционерный Коммерческий банк **«ПРОБИЗНЕСБАНК»** (открытое акционерное общество) (АКБ **«ПРОБИЗНЕСБАНК»** (ОАО)), именуемый в дальнейшем **«Доверитель»** или **«Банк»**, определяет требования, предъявляемые в соответствии

с Федеральным законом от 27 июля 2006 г. № 152-ФЗ «О персональных данных» (далее – Закон о ПДн) к организации обработки и защиты персональных данных (далее – ПДн) адвокатом Московской коллегии адвокатов «Кворум» Павловым Андреем Алексеевичем, имеющим регистрационный номер в реестре адвокатов города Москвы 77/12666, удостоверение № 14627 выдано Главным управлением Министерства юстиции РФ по Москве, именуемым в дальнейшем **«Адвокат»**, в связи с оказанием Адвокатом услуг Доверителю в соответствии с условиями соглашения об оказании юридической помощи от 02.09.2015г. № ВА-1-18740/1 (далее – Соглашение).

2.    Обработка ПДн Адвокатом осуществляется в целях выполнения в ходе ликвидационной процедуры в отношении Доверителя мероприятий, предусмотренных Соглашением, в соответствии с Федеральным законом от 26 октября 2002 г. № 127-ФЗ «О несостоятельности (банкротстве)».

3.    В рамках настоящего Поручения Адвокатом будет совершаться следующие действия (операции) с ПДн:

сбор, запись, систематизация, накопление, хранение, уточнение (обновление, изменение), извлечение, использование, передача (предоставление, доступ), обезличивание, блокирование, удаление, уничтожение;

4.    Лицом, ответственным за организацию обработки ПДн у Адвоката, является Председатель коллегии Московской коллегии адвокатов «Кворум» Павлов Андрей Алексеевич.

5.    Адвокат обязан:

5.1.    Соблюдать конфиденциальность ПДн и обеспечивать безопасность ПДн при их обработке.

5.2.    Соблюдать требования к защите обрабатываемых ПДн в соответствии со ст. 19 Закона о ПДн, в том числе применять в качестве оператора ПДн в ходе обработки ПДн и для защиты ПДн от неправомерного или случайного доступа к ним, уничтожения, изменения, блокирования, копирования, предоставления, распространения ПДн и от иных неправомерных действий в отношении ПДн необходимые правовые, организационные и технические меры, соответствующие требованиям Закона о ПДн и принятым в соответствии с ним нормативным правовым актам Российской Федерации, в частности:

постановлению Правительства Российской Федерации от 1 ноября 2012 г. № 1119 «Об утверждении требований к защите персональных данных при их обработке в информационных системах персональных данных» (включается в Соглашение в случаях обработки ПДн в информационных системах);

приказу ФСТЭК России от 18 февраля 2013 г. № 21 «Об утверждении Состава и содержания организационных и технических мер по обеспечению безопасности персональных данных при их обработке в информационных системах персональных данных» (включается в Соглашение в случаях обработки ПДн в информационных системах);

постановлению Правительства Российской Федерации от 15 сентября 2008 г. № 687 «Об утверждении Положения об особенностях обработки персональных данных, осуществляемой без использования средств автоматизации».

5.3.    Если обработка ПДн, переданных Адвокатом, будет совершаться с использованием средств автоматизации, то Адвокат вправе приступить к обработке ПДн после направления в уполномоченный

16

орган по защите прав субъектов ПДн уведомления о своем намерении осуществлять обработку, которые будут переданы Доверителем, и представить Доверителю заверенную Председателем Московской коллегии адвокатов «Кворум» копию указанного уведомления.

5.4. При обработке ПДн, полученных не от субъектов ПДн, сообщать до начала обработки субъектам ПДн информацию, предусмотренную ч. 3 ст. 18 Закона о ПДн, за исключением случаев изложенных в ч. 4 ст. 18 Закона о ПДн.

5.5. В случае изменения контактных данных лица, указанного в п. 4 настоящего Поручения, назначения нового лица уведомить об этом Доверителя в письменной форме в трехдневный срок.

5.6. Своевременно уничтожить ПДн в связи с окончанием их обработки и уведомить об этом Доверителя.

5.7. Представлять Доверителю необходимую информацию для подготовки ответа на запрос субъекта ПДн об обрабатываемых ПДн, обеспечивать по поручению Доверителя ознакомление субъекта ПДн с его ПДн.

5.8. Следовать предписаниям Доверителя по исполнению обязанностей, предусмотренных Законом о ПДн.

5.9. В случае если деятельность Адвокатов в ходе исполнения Соглашения перестает отвечать требованиям, установленным законодательством Российской Федерации в отношении обработки и защиты ПДн, незамедлительно информировать об этом Доверителя с указанием причин произошедшего и сроков устранения возникших несоответствий (нарушений), а также прекратить обработку ПДн.

## ПОДПИСИ СТОРОН:

**Доверитель:**

**Адвокат:**

АКБ «ПРОБИЗНЕСБАНК» (ОАО)

Представитель конкурсного управляющего

/В.Ф. Гришин/

М.П.

М.П.                    /А.А. Павлов/

17

*Приложение 4*
*к соглашению об оказании юридической помощи*
*№ ВА-1-18740/1 от 02.09 2015 г.*

**Анкета**

Цветная или
черно-белая
фотография

**Фамилия, Имя, Отчество**

1. _____

*(если ранее Вы имели другие фамилию, имя, отчество, укажите их, а также дату и причину изменения)*

| | | число | месяц | год | | мужской | женский |
|---|---|---|---|---|---|---|---|
| 2. | **Дата рождения** | | | | **Пол** | | |
| 3. | **Место рождения** *(населенный пункт, район, область, край, республика, страна)* | | | | | | |
| 4. | **Гражданство** | | | **Иное гражданство** *(при наличии)* | | | |

| | | индекс | адрес *(населенный пункт: республика, край, область, район, город, деревня, село; улица, дом, корпус, квартира)* |
|---|---|---|---|
| 5. | **Место регистрации** *(при наличии временной регистрации указать адрес)** | | |
| | | индекс | *адрес временной регистрации *(населенный пункт: республика, край, область, район, город, деревня, село; улица, дом, корпус, квартира)* |
| | | | |
| 6. | **Место проживания** | индекс | адрес *(населенный пункт: республика, край, область, район, город, деревня, село; улица, дом, корпус, квартира)* |
| | | | |

| | | домашний телефон | мобильный телефон | электронная почта |
|---|---|---|---|---|
| 7. | **Контакты** | | | |
| 8. | **Паспорт** | серия, | | |

18

| или документ, его заменяющий | номер | |
|---|---|---|
| | кем выдан | |
| | дата выдачи | 4 |

код подразделе ния

| 9. | ИНН | | |
|---|---|---|---|

☐ - да

| 10. | Наличие судимости | ☐ - погашена | ☐ - не погашена |
|---|---|---|---|

☐ -

*(указать статью уголовного кодекса и год)*

| 11. | Семейное положение: *(состою в зарегистрированном браке, вдовец (вдова), разведен(а), не состою в браке)* | |
|---|---|---|

Имеете ли родственн работаюш кредитны НПФ и ин организа

13.

**Члены Вашей семьи (в т.ч. близкие родственники)**
*(муж, жена, отец, мать, братья и сестры (в т.ч. полнородные и неполнородные), дети если изменяли Ф.И.О., то укажите их прежние Ф.И.О.). Обращаем Ваше внимание, что данной таблице необходимо указать также информацию о близких родственниках, с которыми Вы сейчас не поддерживаете отношения, а также об умерших членах семьи*

| степень родства | фамилия, имя, отчество | число, месяц, год и место рождения | место работы / учебы, должность | адрес места проживания |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

12.

Образо наиме уче зав

14.

Выпол При за работ делаеп Наимен они на

15. ме

прием

19

| | | | | | |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | 4 | | |
| | | | | | |
| | | | | | |
| | | | | | |

| | Имеете ли Вы иных родственников, работающих в ГК АСВ, кредитных организациях, НПФ и иных финансовых организациях? | ☐ - да | ☐ - нет |
|---|---|---|---|
| 13. | ФИО | степень родства | подразделение/банк, должность |
| | | | |
| | | | |
| | | | |

☐ - нет

**Образование**

| | наименование учебного заведения | местонахождение учебного заведения | дата поступления | дата окончания | квалификация по диплому | специальность по диплому |
|---|---|---|---|---|---|---|
| 14. | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

**Выполняемая работа с начала трудовой деятельности**

*При заполнении данного пункта указываются все виды трудовой деятельности, включая работу по совместительству, по договору возмездного оказания услуг (в скобках делается соответствующая отметка), предпринимательскую деятельность и т.п. Наименование учреждений, организаций, предприятий и их адреса приводятся так, как они назывались в то время, когда Вы там работали.*

| 15. | месяц и год | | должность, наименование и местонахождение организации | основные функции (характер выполняемой работы) |
|---|---|---|---|---|
| | приема | увольнения | | |
| | | | | |
| | | | | |
| | | | | |

20

| | | □ - да | □ - нет |
|---|---|---|---|
| 16. | Работаете ли Вы по совместительству в других организациях в настоящее время? *(если да, укажите наименование организации, должность)* | | |
| 17. | Дополнительные сведения, которые Вы считаете нужным сообщить о себе | | |

Заверяю, что мои ответы на вопросы Анкеты являются достоверными.

«____» _____

_____20___ г.

дата заполнения                    личная подпись                    расшифровка подписи

Я, _____

_____, даю согласие Государственной корпорации «Агентство по страхованию вкладов»

юридический адрес:                    109240,                    г.                    Москва,
ул.          Высоцкого,          дом          4,          «Банку»
адрес:_____ , _____ на          обработку          персональных          данных, юридический
указанных в настоящей анкете (с целью проверки достоверности данных, проверки на наличие
дисквалификации).

_____          _____20___          _____          _____

согласен                    дата согласия                    личная подпись                    расшифровка
                                                                                                        подписи

89

21

*Приложение 5*
*к соглашению об оказании юридической помощи*
*№ ВА-1-18740/1 от 02.09 2015 г.*

Сведения о наличии (отсутствии) личной заинтересованности
по отношению к _____4_____

(наименование ликвидируемой кредитной организации)

Фамилия _____
Имя _____
Отчество _____

| | | |
|---|---|---|
| 1. Являлись ли Вы или кто-либо из Ваших родственников* единоличным исполнительным органом, заместителем руководителя, лицом, входящим в совет директоров (наблюдательный совет) и коллегиальный исполнительный орган (правление, дирекцию), главным бухгалтером (бухгалтером), руководителем ревизионной комиссии и членом ревизионной комиссии (ревизором), руководителем службы внутреннего контроля, работником службы внутреннего контроля ликвидируемой кредитной организации (далее – ЛКО), в том числе освобожденным от исполнения своих обязанностей в течение 3 лет, предшествовавших назначению? | Да | Нет |
| 2. Являлись ли Вы или кто-либо из Ваших родственников единоличным исполнительным органом, его заместителем, лицом, входящим в совет директоров (наблюдательный совет) и коллегиальный исполнительный орган (правление, дирекцию), главным бухгалтером (бухгалтером), руководителем ревизионной комиссии и членом ревизионной комиссии (ревизором), руководителем службы внутреннего контроля юридического лица и работником службы внутреннего контроля юридического лица, которое является основным или дочерним обществом по отношению к ЛКО, в том числе освобожденным от исполнения в течение 3 лет, предшествовавших назначению? | Да | Нет |
| 3. Является ли Вы или кто-либо из Ваших родственников заинтересованным лицом, определенным пунктом 2 статьи 19 Федерального закона «О несостоятельности (банкротстве)» по отношению к работникам ЛКО? | Да | Нет |
| 4. Являетесь ли Вы или кто-либо из Ваших родственников кредитором ЛКО? | Да | Нет |
| 5. Имеете ли Вы или кто-либо из Ваших родственников задолженность перед ЛКО? | Да | Нет |
| 6. Являлись ли Вы или кто-либо из Ваших родственников в течение последних 3 лет акционером (участником) ЛКО? | Да | Нет |
| 7. Владеете ли Вы или Ваши родственники облигациями или иными ценными бумагами ЛКО? | Да | Нет |
| 8. Имелись ли (имеются ли) у Вас или Ваших родственников трудовые договоры с ЛКО? Если да, то просим указать в какой период и кратко перечислить основные трудовые обязанности. | Да | Нет |
| 9. Имелись ли (имеются ли) у Вас и Ваших родственников гражданско-правовые договоры об оказании услуг, проведении работ, договоры займа с ЛКО? Если да, то просим указать период действия договора и | Да | Нет |

□ - нет

оттиск подписи

по привлечению вкладов».
Москва,
юридический
персональных данных,
проверки на наличие

расшифровка
подписи



*Приложение 6*
*к соглашению об оказании юридической помощи*
*№ ВА-1-18740/1 от 02.09. 2015 г.*

## ДОПОЛНИТЕЛЬНОЕ СОГЛАШЕНИЕ
### об оплате услуг к соглашению об оказании юридической помощи
### от 02.09.2015г. № ВА-1-18740/1

Акционерный коммерческий банк «ПРОБИЗНЕСБАНК» (открытое акционерное общество) (ОАО АКБ «ПРОБИЗНЕСБАНК») именуемый в дальнейшем «Доверитель» или «Банк», в лице представителя Беднина Василия Феликсовича, действующего на основании доверенности от 02 июня 2016 года № 659, и решения Арбитражного суда г. Москвы от 28 октября 2015 года по делу №А40-154909/2015, с одной стороны, и

Адвокат   Московской коллегии адвокатов «Кворум» Павлов Андрей Алексеевич, имеющий регистрационный номер в реестре адвокатов города Москвы 77/12666, удостоверение № 14627 выдано Главным управлением Министерства юстиции РФ по Москве, являющийся Председателем коллегии Московской коллегии адвокатов «Кворум», именуемый в дальнейшем «Адвокат», действующие на основании Федерального закона от 31 мая 2002 года № 63-ФЗ «Об адвокатской деятельности и адвокатуре в Российской Федерации», с другой стороны, далее совместно именуемые «Стороны», заключили настоящее дополнительное соглашение об оплате услуг (далее – Дополнительное соглашение) к соглашению об оказании юридической помощи № ВА-1-18740/1 от 02.09. 2015 г. (далее – Соглашение) о нижеследующем:

1.   Стоимость оказываемых по Соглашению услуг составляет 8 500 000 (Восемь миллионов пятьсот тысяч) рублей в месяц, НДС не облагается

2.   Если первый и последний месяцы срока действия Соглашения являются неполными, расчёт стоимости услуг Адвоката по Соглашению осуществляется исходя из фактического количества календарных дней в неполном календарном месяце, за который производится расчёт.

3.   Ежемесячная оплата услуг производится Доверителем путем перечисления денежных средств на расчетный счет, указанный в разделе 10 Соглашения, не позднее 10 рабочих дней со дня подписания Доверителем акта на основании выставленного Адвокатом счета.

4.   Возмещение понесенных Адвокатом расходов производится Доверителем путем перечисления денежных средств на расчетный счет, указанный в разделе 10 Соглашения, не позднее 10 (Десять) рабочих дней со дня представления первичных документов, подтверждающих указанные расходы, при наличии подписанного Доверителем акта на основании выставленного Адвокатом счета.

5.   Адвокату также выплачивается дополнительное вознаграждение в размере 15 (пятнадцать) процентов от денежных средств, фактически поступивших в конкурсную массу Банка по результатам работы проведенной Адвокатами, как то:  добровольного погашения должником Банка имеющейся задолженности; в результате заключения мировых соглашений; в ходе рассмотрения искового заявления либо после вынесения судебного акта; погашения задолженности (в том числе добровольного) в рамках принудительного исполнения судебного акта; погашения требований Банка как кредитора в процедурах банкротства его должников; от реализации   имущества, а так же от реализации дебиторской задолженности, в отношении которых Адвокатами осуществлялась судебная работа и пр.

При отсутствии фактического поступления в пользу Банка денежных средств по результатам проведенной работы комиссионное вознаграждение не выплачивается.

6.  Для целей расчета дополнительного вознаграждения Доверитель обязуется не позднее 5-го рабочего дня месяца, следующего за отчетным, представлять Адвокату информацию о поступлении денежных средств от должников Банка за отчетный месяц в виде выписки о движении денежных средств по счету.

7.Оплата дополнительного вознаграждения производится Доверителем путем перечисления денежных средств на расчетный счет, указанный в разделе 10 Соглашения, не позднее 20 рабочих дней со дня подписания Доверителем акта на основании выставленного Адвокатом счета.

Расчет суммы дополнительного вознаграждения осуществляется Адвокатом на основании данных о фактическом поступлении денежных средств, предоставляемых Доверителем в течение первых 10 рабочих дней каждого месяца, следующего за отчетным.

24

8. Стоимость оказываемых по Соглашению услуг, указанных в п. 1 настоящего Допол[...] соглашения, подлежит пересмотру через год с момента заключения Соглашения, и далее каждые 6 [...] либо в иных случаях по согласованию Сторон.

9. За 2 месяца до начала квартала, в котором стоимость услуг подлежит пере[...] соответствии с п. 8 настоящего Соглашения, Доверитель направляет Адвокату предложение о [...] стоимости услуг, указанных в п. 1, в соответствии с фактическим объемом выполняемых услуг, но [...] чем на 10%.

10. Адвокат в течение 5 рабочих дней после получения предложения, направляют Дов[...] согласие на снижение стоимости услуг или предоставляет обоснованный ответ о причинах нес[...] стоимости, с указанием объема выполняемых и планируемых работ, а также временных пер[...] снижения стоимости услуг.

11. В случае несогласия Адвоката с предложением Доверителя относительно с[...] стоимости услуг по Соглашению Доверитель вправе в одностороннем порядке отказаться от Согл[...] уведомив об этом Адвокату за ___ дней до предполагаемой даты расторжения. В указанном с[...] Доверитель в отсутствие претензий по качеству услуг оплачивает Адвокату фактически понесен[...] документально подтвержденные расходы, а Адвокат передает Доверителю все результаты услуг, ок[...] на дату расторжения Соглашения.

12. Услуги, оказываемые Адвокатом, освобождены от уплаты НДС на основании пп. 14 1п. 3 ст[...] Налогового кодекса Российской Федерации.

13. Настоящее Дополнительное соглашение является неотъемлемой частью Соглашения.

14. Дополнительное соглашение составлено на 2 (двух) листах в 2-х экземплярах, имеющ[...] одинаковую юридическую силу, по одному экземпляру для каждой из Сторон.

## ПОДПИСИ СТОРОН

**Доверитель:**

**Адвокат:**

АКБ «ПРОБИЗНЕСБАНК» (ОАО)
Представитель конкурсного управляющего:

М.П.         /В.Ф. Бе[...]         М.П.         /А. А. Павлов/



Акционерный [...]
АКБ «ПРОБИЗНЕСБА[...]
конкурсного управляю[...]
Бедина Василия Фел[...]
решения Арбитражно[...]
стороны, и
    Адвокат   [...]
регистрационный ном[...]
Главным управлением[...]
Московской коллеги[...]
основании Федеральн[...]
в Российской Федер[...]
настоящий акт о ниж[...]

1. Адвокатом [...]
предусмотренная п. [...]

1.1. Меропри[...]

| № п/п | Дата |
|---|---|
|   |   |

1.2. Меропр[...]
взыскании задолже[...]
сделок/запросы/пис[...]
в судебных заседан[...]

| № п/п | Дата |
|---|---|
|   |   |

1.3. Меро[...]
возбуждении испо[...]
производством:

| № п/п | Дата |
|---|---|
|   |   |

1.4. Меро[...]
составление отче[...]
[...] | Дата

25

*

*Приложение 7*
*к соглашению об оказании юридической помощи*
*№ ВА-1-18740/1 от 02.09. 2015 г.*

## АКТ
### сдачи-приемки оказанных услуг

Акционерный коммерческий банк «ПРОБИЗНЕСБАНК» (открытое акционерное общество) (ОАО «ПРОБИЗНЕСБАНК») именуемый в дальнейшем «Доверитель» или «Банк», в лице представителя конкурсного управляющего Банком – Государственной корпорации «Агентство по страхованию вкладов» Еднина Василия Феликсовича, действующего на основании доверенности от 02 июня 2016 года № 659, и решения Арбитражного суда г. Москвы от 28 октября 2015 года по делу №А40-154909/2015, с одной стороны, и

Адвокат Московской коллегии адвокатов «Кворум» Павлов Андрей Алексеевич, имеющий регистрационный номер в реестре адвокатов города Москвы 77/12666, удостоверение № 14627 выдано Главным управлением Министерства юстиции РФ по Москве, являющийся Председателем коллегии Московской коллегии адвокатов «Кворум», именуемый в дальнейшем «Адвокат», действующие на основании Федерального закона от 31 мая 2002 года № 63-ФЗ «Об адвокатской деятельности и адвокатуре в Российской Федерации», с другой стороны, далее именуемые совместно «Стороны», составили настоящий акт о нижеследующем:

1. Адвокатом в отчетном периоде (*указать период*) оказана Доверителю юридическая помощь, предусмотренная п. 1 соглашения об оказании юридической помощи (далее – услуги), а именно:

1.1. Мероприятия по проведению досудебной работы:

| № п/п | Дата | Мероприятия (подробно) |
|---|---|---|
|  |  |  |

1.2. Мероприятия по проведению судебной работы: подготовка документов (исковые заявления о взыскании задолженности, обращении взыскания на заложенное имущество/заявления об оспаривании сделок/запросы/письма/уведомления/возражения и иные документы): представление интересов Доверителя в судебных заседаниях:

| № п/п | Дата | Мероприятия (подробно) |
|---|---|---|
|  |  |  |

1.3. Мероприятия по получению исполнительных документов (в том числе постановлений о возбуждении исполнительных производств) в отношении должников Банка и контролю за исполнительным производством:

| № п/п | Дата | Мероприятия (подробно) |
|---|---|---|
|  |  |  |

1.4. Мероприятия по взаимодействию с Агентством (консультирование по правовым вопросам, составление отчетности):

| № п/п | Дата | Мероприятия (подробно) |
|---|---|---|
|  |  |  |

26

1.5. Проведение правового анализа и экспертиз следующих документов:

| № п/п | Дата | Мероприятия (подробно) |
|-------|------|------------------------|
|       |      |                        |

1.6. Проведение следующих мероприятий по работе с должниками Банка, находящимися в процедуре банкротства (ликвидации):

| № п/п | Дата | Мероприятия (подробно) |
|-------|------|------------------------|
|       |      |                        |

1.7. Правовой анализ заявленных требований кредиторов:

| № п/п | Дата | Мероприятия (подробно) |
|-------|------|------------------------|
|       |      |                        |

1.8. Подготовка заключений по различным правовым вопросам:

| № п/п | Дата | Мероприятия (подробно) |
|-------|------|------------------------|
|       |      |                        |

1.9. Иные действия, связанные с представлением интересов Доверителя (в том числе представление интересов Доверителя в отношениях с государственными органами и иными органами и организациями, а также с физическими лицами):

| № п/п | Дата | Мероприятия (подробно) |
|-------|------|------------------------|
|       |      |                        |

2. Настоящий акт является основанием для расчетов между Сторонами.

3. В соответствии с п. 1 Дополнительного соглашения об оплате услуг по соглашению об оказании юридической помощи стоимость вознаграждения Адвокатов за услуги, оказанные в отчетном периоде *(указать период)*, составляет *(указать сумму)* руб. в месяц, НДС не облагается. Вознаграждение Адвокатов подлежит оплате Доверителем в порядке, установленном п. 3 соглашения об оказании юридической помощи.

4. Адвокатами понесены дополнительные расходы в ходе оказания услуг по настоящему соглашению в размере _____ руб., в том числе:

Дополнительные расходы Адвокатов подтверждаются следующими документами:
_____

5. Расчет дополнительного вознаграждения Адвокатов *(указать расчет в соответствии с п.п. 5-8 Дополнительного соглашения об оплате услуг к соглашению* об оказании юридической помощи):

| Наименование заемщика, номер кредитного договора | Описание проведенной работы | Расшифровка поступлений | | |
|---|---|---|---|---|
| | | Сумма всего, руб. | Дата | Сумма частями, руб. |

6. В отчетном [...]
Адвокатам по объему [...]

7. Настоящий [...]
экземпляру для каждо[...]

Доверитель:

АКБ «ПРОБИЗНЕСБ[...]

Представитель конку[...]

М.П.

92

27

6. В отчетном периоде услуги оказаны Адвокатами надлежащим образом. Доверитель претензий к Адвокатам по объему и качеству оказанных услуг не имеет.

7. Настоящий Акт составлен в 2-х экземплярах, имеющих равную юридическую силу, по одному экземпляру для каждой из Сторон.

Доверитель:

КБ «ПРОБИЗНЕСБАНК» (ОАО)

Представитель конкурсного управляющего:

/В.Ф. Беднин/

М.П.

Адвокат

"КВОРУМ"

/А.А. Павлов/

М.П.



28

*к соглашению об оказании юридических*

*№ ВА-1-18740/1 от*

## Порядок информационного взаимодействия

1. Для обмена информацией в электронном виде и/или для доступа к ресурсам Доверитель предоставляет Адвокату возможность организации и использования сертифицированными средствами канала связи. Доверитель организует доступ Адвокатов к ресурсам, используя технологии терминального доступа.

2. Технические средства Адвоката, подключенные к каналу связи, указанному в п. 1 приложения (далее – Технические средства), должны отвечать следующим требованиям:

2.1. На Технических средствах должно быть установлено, задействовано и обновлено до актуального состояния антивирусное программное обеспечение.

2.2. Технические средства не должны иметь доступ к публичным ресурсам информационно телекоммуникационной сети «Интернет», либо отделены от них сертифицированными межсетевыми исключающим одновременный доступ к ним и к ресурсам Доверителя.

3. Адвокат обязан предоставить Доверителю списки лиц, имеющих полномочия для работы передаваемой в электронном виде информацией и/или для доступа к ресурсам Доверителя, и своевременно уведомлять Доверителя обо всех изменениях таких списков.

4. Доверитель вправе проводить проверки выполнения Адвокатом требований, указанных в настоящем приложении.

## ПОДПИСИ СТОРОН:

**Доверитель:**

АКБ «ПРОБИЗНЕСБАНК» (ОАО)

Представитель конкурсного управляющего:

_____ /В.Ф. Беликов/

М.П.

**Адвокат:**

_____ /А.А. Павлов/

М.П.

93

94

*Приложе...*
оказании юриди<del>ческой</del> по...
BA-1-18740/1 от 02.09. 2...

...я

...упа к ресурсам Доверит...
...спользования защищенн...
...доступ Адвокатов к св...

...занному в п. 1 настояще...
...ованиям:

...твовано и, обновлено ...

...ресурсам информационн...
...ным межсетевым экран...

...олномочия для работы ...
...оверителя, и своевремен...

...ребований, указанных ...

Павлов/



translations@geotext.com
www.geotext.com

STATE OF NEW YORK          )
                           )     ss
COUNTY OF NEW YORK         )

## CERTIFICATION

This is to certify that the attached translation is, to the best of my knowledge and belief, a true

and accurate translation from Russian into English of the attached Agreement No. VA-1-18740/1

on the Rendering of Legal Assistance, dated March 1, 2017.


Lynda Green, Senior Managing Editor
Geotext Translations, Inc.


Sworn to and subscribed before me

this _8th_ day of _March_, 20_18_.


KRISTEN DUFFY
NOTARY PUBLIC-STATE OF NEW YORK
No. 01DU6121852
Qualified In Queens County
My Commission Expires 01-31-2021

New York
t: +1.212.631.7432

London
t: +44.20.7553.4100

Washington, D.C.
t: +1.202.828.1267

Paris
t: +33.1.42.68.51.47

Chicago
t: +1.312.242.3756

Stockholm
t: +46.8.463.11.87

Houston
t: +1.713.353.3909

Frankfurt
t: +49.69.7593.8434

San Francisco
t: +1.415.576.9500

Hong Kong
t: +852.2159.9143