**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
:
In re Application of DEPOSIT INSURANCE :
AGENCY for an order to conduct discovery :
for use in a foreign proceeding, :
:
                                  Petitioner. :  Case No. 1:17-mc-00414-GBD
:
:
:
:
:
:
------------------------------------------------------------x

**DECLARATION OF DAVID AMINOV IN SUPPORT OF RESPONDENT'S
<u>MOTION TO QUASH</u>**

СОЕДИНЁННЫЕ ШТАТЫ АМЕРИКИ

ШТАТ НЬЮ-ЙОРК, ГОРОД НЬЮ-ЙОРК

ОКРУЖНОЙ СУД ОКРУГА САЗЕРН ДИСТРИКТ

------------------------------------------------------------x

| | |
|---|---|
| В ответ на Заявление АГЕНТСТВА ПО СТРАХОВАНИЮ ВКЛАДОВ на вынесение приказа о проведении досудебного представления доказательств, используемых в иностранном судебном производстве, <br><br> Заявитель. | Дело № 1:17-mc-00414-GBD |

------------------------------------------------------------x

## ЗАЯВЛЕНИЕ ГРАЖДАНИНА ДАВИДА АМИНОВА В ПОДДЕРЖКУ ХОДАТАЙСТВА ПОДСУДИМОГО О ПРИЗНАНИИ НЕДЕЙСТВИТЕЛЬНОСТИ РЕШЕНИЯ СУДА

Я, Давид Аминов, осознавая ответственность за лжесвидетельство, настоящим заявляю следующее:

1. Я занимаюсь юридической практикой на территории Российской Федерации с 1980 года и специализируюсь в области уголовного права и уголовного процесса. В 1980 году получил высшее юридическое образование. В 2000 году получил степень доктора юридических наук со специализацией в области уголовного права. Будучи Профессором уголовного права и процесса, я читаю лекции в ряде высших учебных заведениях г. Москвы. Начиная с 2011 года читаю лекции в Государственном Университете Управления (Россия).

2. Ко мне обратились за консультативным заключением по ряду вопросов относительно доказательств и судебного производства, касающихся уголовного производства против гражданина Николая Алексеева и гражданки Марины Крыловой — в

частности, их задержании, допросе, соглашения об оказании помощи следствию, подписанных заявлениях и обвинительных приговорах по уголовным делам. С указанной целью я рассмотрел материалы уголовных дел гражданина Алексеева и гражданки Крыловой, которые являются частью более широкого ряда находящихся в настоящий момент на рассмотрении уголовных дел против бывших руководителей и сотрудников ОАО «Пробизнесбанк» (далее — «Российские уголовные дела»).

**A.     Показания гражданина Николая Алексеева и гражданки Марины Крыловой**

3.     В Приложении 12 (подписанные гражданином Алексеевым заявления) и Приложениях 13 и 14 (подписанные гражданкой Крыловой показания), прилагаемых к Заявлению гражданки Анастасии Жидченко (далее — «Заявление гражданки Жидченко»), содержатся многочисленные недочёты, которые дают основание не принимать данные документы в качестве доказательства заявлений, содержащихся в настоящем документе.

4.     Гражданка Жидченко неправильно квалифицирует данные документы как «свидетельские показания», состоящие из «добровольных показаний свидетелей гражданки Крыловой и гражданина Алексеева». *См.* Заявление гражданки Жидченко, пункт 19.

5.     В соответствии с российским законодательством, определённые процессуальные требования должны соблюдаться и документально оформляться в установленном законом порядке до того, как заявление физического лица, направляемое в государственные органы, может получить статус свидетельского показания.

6.     *Во-первых*, свидетельские показания прежде всего должны быть документально оформлены на основании протокола допроса, оформленного официально и в установленном законом порядке. Протокол допроса не признаётся документом,

2

оформленным официально и в установленном законом порядке, если в данном протоколе не указываются место, дата, время начала и время окончания следственного действия (в данном случае — допроса).

7. В показании гражданина Алексеева (Заявление гражданки Жидченко, приложение 12) и в обоих показаниях гражданки Крыловой (*там же*, Приложения 13 и 14) время начала, время окончания и место основных допросов не указаны, что даёт основание не относить все три заявления к свидетельским показаниям.

8. *Во-вторых*, в любом документе, составляющем часть официальных материалов по уголовному производству, должны содержаться конкретные обязательные реквизиты, включая подписи лиц, которые участвовали в составлении данного документа. Данное требование распространяется на все протоколы допросов: без подписей всех соответствующих участников данного следственного действия данный документ признаётся недействительным на основании Уголовно-процессуального кодекса Российской Федерации (далее — «УПК РФ»). Так, в документе протокола допроса на нескольких страницах (более одной страницы) на каждой странице должна стоять подпись допрошенного лица в соответствии с пунктом 8 Статьи 190 УПК РФ.

9. Данное положение УПК РФ, далёкое от того, чтобы считать его жёстким административным предписанием, обеспечивает целостность содержания протокола допроса и не допускает возможных манипуляций содержания протокола допроса, приобщённого к официальным материалам уголовного дела.

10. В данном случае есть показания гражданина Алексеева на шестнадцати страницах (Заявление гражданки Жидченко, приложение 12), показания гражданки Крыловой на двадцати трёх страницах (*там же*, приложение 13) и показания гражданки

3

Крыловой на шести страницах (*там же*, приложение 14). В каждом из указанных трёх протоколов подписи допрашиваемых стоят лишь на последних страницах протоколов и ни на одной из предыдущих страниц.

11. Это составляет нарушение пункта 8 Статьи 190 УПК РФ в отношении показаний гражданина Алексеева и двух показаний гражданки Крыловой, и вызывает серьёзные сомнения относительно достоверности и полноты показаний, представленных Суду Агентством по страхованию вкладов.

12. ***В-третьих,*** показания гражданина Алексеева и гражданки Крыловой не могут считаться «свидетельскими показаниями». УПК РФ занимает жёсткую позицию в вопросе о том, какие именно показания нужно относить к свидетельским показаниям. Повторю, показания гражданина Алексеева и гражданки Крыловой в данном отношении далеки от того, чтобы их относить к свидетельским показаниям.

13. В соответствии с пунктом 8 Статьи 56 УПК РФ, (1) свидетель должен быть уведомлён об уголовной ответственности за дачу заведомо ложных показаний (согласно статье 307 Уголовного кодекса Российской Федерации (далее — УК РФ)) и за отказ от дачи показаний (статья 308 УК РФ,) и (2) соблюдение следователем данного требования должно быть подтверждено подписью свидетеля в нужном месте в протоколе допроса.

14. Показания гражданина Алексеева и гражданки Крыловой, представленные в данном случае Агентством по страхованию вкладов, не соответствуют данному нормативному требованию: ни в одном из данных документов не стоят подписи в установленном порядке; поэтому ни в одном из данных документов не содержится подтверждения того, что свидетелю были оглашены необходимые предупреждения. Таким образом, гражданин Алексеев и гражданка Крылова не взяли на себя никаких

4

обязательств давать правдивые показания под угрозой уголовной ответственности и могли сообщать любые сведения в данных показаниях без каких-либо предусмотренных законом последствий.

15. Данный недостаток в показаниях гражданина Алексеева и гражданки Крыловой имеет двоякое значение: (1) отнесение гражданкой Жидченко и Агентством по страхованию вкладов показаний к свидетельским показаниям (*см., например*, DIA Opp. Br., 16; пункт 19 Заявления гражданки Жидченко) является неправомерным и неправильным в силу закона, и (2) данные показания представляют собою не более, чем необоснованные слухи, лишённые каких-либо признаков достоверности.

16. Помимо невозможности признать данные показания свидетельскими показаниями, и, тем самым, необоснованности и недостоверности данных показаний, следует отметить, что гражданин Алексеев и гражданка Крылова являются вторыми подсудимыми (со-ответчиками), а также предполагаемыми соучастниками по отношению к гражданину Леонтьеву по Российским уголовным делам.

17. Европейский суд по правам человека неоднократно подчёркивал ограниченную доказательную ценность, придаваемую показаниям и признаниям вины предполагаемых соучастников: сами по себе такие признание и показания (заявления) могут установить факт совершения преступления, в отношении которого рассматривается дело, данным конкретным соучастником, но не другим соучастником. *См., например*, дело «Романов против России» (*Romanov v. Russia*), Заявление № 41461/02 (ECHR 24 июля, 2008), § 102 (рекомендация судьям утверждать, что признание одним подсудимым его вины само по себе не доказывает вины второго подсудимого по одном и тому же делу);

дело «Казаков против России» (*Kazakov v. Russia*), Заявление № 16412/06 (ECHR, 4 декабря 2014 года), §35 (там же).

18. Верховный суд Российской Федерации одобрил данную позицию и вынес постановление: (1) подчёркивающее важность права подсудимого возражать показаниям свидетеля и подвергать данные показания перекрёстному допросу в ходе состязательного производства и (2) дающее указания российским судам низшей инстанции защищать права подсудимого требовать от свидетеля в состязательном производстве давать показания под присягой, подвергать показания свидетеля в состязательном производстве перекрёстному допросу, а также запрашивать и представлять свидетельские показания на равных со стороной обвинения. *См.* Постановление Пленума Верховного Суда Российской Федерации от 29 ноября 2016 г. N 55 «О судебном приговоре» (пункт 4, абзац 2).

19. Помимо того, что показания гражданина Алексеева и гражданки Крыловой не являются свидетельскими показаниями под присягой, и поэтому их достоверность никак не подтверждается, их заявления и признания вины не были проверены ни путём перекрёстного допроса, ни противопоставлены показаниям свидетеля от противоположной стороны. Таким образом, это сильнее снижает и без того ограниченную доказательную ценность показаний гражданина Алексеева и гражданки Крыловой, которые не являются свидетельскими показаниями, а также признания вины в данном случае, когда Агентство по страхованию вкладов стремится использовать данные показания против третьей стороны.

B. **Судебные решения и приговоры в отношении гражданина Николая Алексеева и Марины Крыловой**

20. Приговоры, вынесенные в отношении гражданина Алексеева и гражданки Крыловой после того, как они признали свою вину (*см. Заявление гражданки Жидченко, Приложения 20 и 21*) являются недействительными по российскому законодательству ввиду фундаментальных нарушений процессуальных норм.

21. Гражданин Алексеев и гражданка Крылова сами признались виновными и были осуждены за преступление, которое якобы имело место в городе Москве по адресу: Пудовкина 3, и рассмотрение дела которого подсудно Никулинскому районному суду города Москвы. Тем не менее, уголовные дела в отношении гражданина Алексеева и гражданки Крыловой рассматривал Останкинский районный суд города Москвы, который в итоге и вынес приговоры в отношении гражданина Алексеева и гражданки Крыловой. *См. там же* Приложение 20, 2, Приложение 21, 2.

22. Европейская конвенция о правах человека (Статья 6) (включена в качестве неотъемлемой части российского законодательства в соответствии с пунктом 4 статьи 15 Конституции Российской Федерации) и Конституционный Суд Российской Федерации (Постановление 4-П) требуют предварительного и правильного определения подсудности данного дела, а пункт 2.2 Статьи 381 УПК РФ требует лишать законной силы все приговоры, вынесенные по неподсудным делам.

23. Останкинский районный суд города Москвы не обладал подсудностью при вынесении решений по обвинениям против гражданина Алексеева и гражданки Крыловой по уголовным делам, что означает, что решения данного суда по делу против гражданина

Алексеева и гражданки Крыловой были вынесены ненадлежащим судом, и, следовательно, являются недействительными.

24. Так, сталкиваясь с тем же вопросом в уголовных делах против подсудимых (сообвиняемых) гражданина Казанцева, гражданина Калачёва и других, 15 декабря 2017 года Останкинский районный суд города Москвы установил, что он не обладает подсудностью в деле по данным подсудимым (сообвиняемым) и вернул дело прокурору в соответствии со Статьёй 237 УПК РФ. 29 января 2018 года Московский городской суд (суд апелляционной инстанции) оставил в силе данное определение.

25. Таким образом, в той мере, в какой Агентство по страхованию вкладов придаёт доказательную ценность приговорам и заключениям, вынесенным Останкинским районным судом города Москвы по делу против гражданина Алексеева и гражданки Крыловой (*см.* Заявление гражданки Жидченко Приложения 20–21), следует отметить, что данные решения были приняты судом, не обладающим подсудностью в отношении данного дела, и, таким образом, признаются недействительными.

26. Настоящим я, осознавая ответственность за лжесвидетельство в соответствии с законами Соединённых Штатов Америки, заявляю о правильности и достоверности положений, изложенных выше.

Оформлено 12 марта 2018 года в городе Москве, Российская Федерация.

_____
Давид Аминов

8

Case 1:17-mc-00414-GBD-SN Document 25 Filed 03/13/18 Page 10 of 19

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
:
In re Application of DEPOSIT INSURANCE :
AGENCY for an order to conduct discovery :
for use in a foreign proceeding, :
 :
                                Petitioner. : Case No. 1:17-mc-00414-GBD
:
:
:
:
:
:
------------------------------------------------------------x

# DECLARATION OF DAVID AMINOV IN SUPPORT OF RESPONDENT'S MOTION TO QUASH

     I, David Aminov, hereby declare under penalty of perjury as follows:

     1.     I have practiced law in Russia since 1980, specializing in criminal law and criminal procedure. In 1980, I received a specialist degree in law. In 2000, I received a doctorate degree in juridical sciences with a focus on criminal law. As a Professor of Criminal Law and Procedure, I lecture at a number of universities in Moscow. Since 2011, I have been lecturing at the Russian State University of Management.

     2.     I have been asked to opine on certain evidentiary and procedural matters relating to the criminal proceedings against Nikolay Alekseev and Marina Krylova—in

[signature]

particular, their detention, interrogation, cooperation agreements, signed statements, and criminal convictions. For this purpose, I have reviewed Alekseev's and Krylova's criminal case files that are part of the broader set of ongoing criminal proceedings against former Probusinessbank OJSC executives and employees ("Russian Criminal Actions").

**A.  The Statements of Nikolay Alekseev and Marina Krylova**

3.  Exhibit 12 (Alekseev's signed statements) and Exhibits 13 and 14 (Krylova's signed statements) attached to the Declaration of Anastasia Zhidchenko ("Zhidchenko Decl.") display multiple failings that should disqualify these documents from being accepted as probative of the statements contained therein.

4.  Ms. Zhidchenko mischaracterizes these documents as "witness statement[s]" consisting of "voluntary testimony by Krylova and Alekseev." *See* Zhidchenko Decl. ¶ 19.

5.  Under Russian law, certain procedural requirements must be satisfied and documented properly before an individual's statements to government authorities can obtain the status of a witness statement and/or of testimony.

6.  *First*, as a threshold matter, a witness statement must be documented through a properly and officially executed interrogation record. An interrogation record is not recognized

as a properly and officially executed document unless it indicates the place, date, start time, and end time of the investigative action (in this case, the interrogation).

7. The start time, end time, and place of the underlying interrogations are missing from Alekseev's statement (Zhidchenko Decl. Ex. 12) and from both of Krylova's statements (*id.* Exs. 13 & 14). These omissions disqualify all three statements from being labeled as witness statements.

8. *Second*, any document that forms part of the official file of a criminal proceeding must display certain mandatory attributes, including the signatures of the persons who partook in the preparation of that document. This prerequisite applies to all interrogation records – without a complete set of signatures from all relevant participants, the document is deficient under the Criminal Procedure Code of the Russian Federation ("Criminal Procedure Code"). Indeed, for interrogation records that span multiple pages, each page must bear the interrogated individual's signature under Article 190, Paragraph 8, of the Criminal Procedure Code.

9. Far from being a ministerial requirement, this provision of the Criminal Procedure Code preserves the integrity, and safeguards against any potential manipulation, of the contents of the interrogation record included in the official file of the criminal proceeding.

10. Here, the documents at issue consist of Alekseev's sixteen-page statement (Zhidchenko Decl. Ex. 12), Krylova's twenty-three-page statement (*id.* Ex. 13), and Krylova's

six-page statement (*id.* Ex. 14).  In each of these three records, the interrogated individual's signature appears on the last page and on none of the preceding pages in the record.

11. This deficiency constitutes a violation of the Criminal Procedure Code, Art. 190, ¶ 8, with respect to Alekseev's statement and Krylova's two statements, and creates significant concerns about the veracity and completeness of the statements submitted to the Court by the DIA.

12. ***Third***, the Alekseev and Krylova statements cannot be considered "testimony." The Criminal Procedure Code is rigid about which statements may qualify as testimony, and once more the Alekseev and Krylova statements are fatally deficient in this respect.

13. Under the Criminal Procedure Code, Art. 56, ¶ 8, (1) a witness must be notified of the criminal responsibility for knowingly giving false testimony (under the Criminal Code of the Russian Federation, Art. 307 ("Criminal Code")) and for refusing to testify (under the Criminal Code, Art. 308), and (2) the interrogator's compliance with this requirement must be confirmed by way of the witness's signature in the proper field of the interrogation record.

14. The statements from Alekseev and Krylova submitted here by the DIA do not comply with this statutory requirement:  none of them bears such a signature; therefore, none of them contains confirmation that the witness received the requisite warnings.  As such, Alekseev and Krylova were in no way bound

by the truth in their statements under threat of criminal responsibility and could include any information in their statements without regard for the possibility of legal repercussions.

15. The significance of this shortcoming in Alekseev's and Krylova's statements is twofold: (1) Ms. Zhidchenko's and the DIA's characterization of the statements as testimony (*see, e.g.*, DIA Opp. Br. at 16; Zhidchenko Decl. ¶ 19) is improper and incorrect as a matter of law, and (2) the statements amount to nothing more than unsubstantiated hearsay devoid of any indicia of reliability.

16. In addition to the non-testimonial, and thus unsubstantiated and unreliable, nature of their statements, it must be noted that Alekseev and Krylova are co-defendants with and alleged accomplices of Mr. Leontiev in the Russian Criminal Actions.

17. The European Court of Human Rights has repeatedly emphasized the limited probative value assigned to the statements and confessions of guilt by alleged accomplices: in and of itself, such a confession and statements can establish the commission of the crime at issue by that particular accomplice, but not by another accomplice. *See, e.g.*, *Romanov v. Russia*, Application No. 41461/02 (ECHR July 24, 2008), § 102 (instructing judges to state that a codefendant's confession of guilt in and of itself does not prove another co-defendant's guilt);

*Kazakov v. Russia,* Application No. 16412/06 (ECHR December 4, 2014), §35 (same).

18. The Supreme Court of the Russian Federation has endorsed this position and issued a resolution, (1) emphasizing the importance of a defendant's right to confront and cross-examine adversarial witnesses, and (2) instructing lower courts in Russia to protect a defendant's right to force an adversarial witness to testify under oath, to cross-examine an adversarial witness, and to solicit and present testimony on equal terms with the prosecution. *See* Resolution 55 of the Plenum of the Supreme Court of the Russian Federation of November 29, 2016 on Judicial Verdicts (item 4, ¶ 2).

19. Apart from the fact that Alekseev's and Krylova's statements are not testimony given under oath, and thus their veracity has not been confirmed in any way, their statements and admissions of guilt have been neither tested through cross-examination nor countered with opposing witness testimony. Thus, the limited probative value that can be attributed to Alekseev's and Krylova's non-testimonial statements and admissions of guilt is further diminished here, where the DIA seeks to use these statements against a third party.

**B.     The Judicial Decisions and Verdicts Against Nikolay Alekseev and Marina Krylova**

20.     The verdicts issued against Alekseev and Krylova following their guilty pleas (*see* Zhidchenko Decl. Exs. 20 & 21) are invalid under Russian law due to underlying procedural defects.

21.     Alekseev and Krylova pleaded guilty to and were convicted of a criminal offense that allegedly took place at Pudovkina 3, Moscow, which falls under the jurisdiction of the Nikulinsky District Court of Moscow. Nevertheless, the criminal proceedings against Alekseev and Krylova were overseen by the Ostankino District Court of Moscow, which ultimately issued the verdicts and sentenced Alekseev and Krylova. *See id*. Ex. 20 at 2, Ex. 21 at 2.

22.     The European Convention on Human Rights (Art. 6) (incorporated as an integral part of Russia's laws by the Constitution of the Russian Federation, Article 15, ¶ 4) and the Constitutional Court of the Russian Federation (Resolution 4-P) require a prior and correct determination of which court has the legal authority to hear a given case, and the Criminal Procedure Code (Art. 381, ¶ 2.2) compels reversal of all verdicts reached by improperly constituted courts.

23.     The Ostankino District Court of Moscow lacked jurisdictional authority when ruling on the criminal charges against Alekseev and Krylova, which means the decisions by this court in the proceedings against

Alekseev and Krylova were reached by a court of improper composition and, therefore, are invalid.

24. Indeed, when confronted with the same issue in the criminal cases against the defendants (co-defendants) Kazantsev, Kalachev and others, on December 15, 2017, the Ostankino District Court of Moscow found that it lacked jurisdiction over the proceedings against these defendants (co-defendants) and returned the case to the prosecutor in accordance with the Criminal Procedure Code, Art. 237. The Moscow City Court (the appellate court) upheld this ruling on January 29, 2018.

25. Thus, to the extent the DIA assigns evidentiary value to the verdicts and opinions issued by the Ostankino District Court of Moscow in the proceedings against Alekseev and Krylova (*see* Zhidchenko Decl. Exs. 20–21), it must be noted that these decisions were reached by a tribunal lacking jurisdictional authority over that case and are thus invalid.

26. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 12th day of March, 2018 in Moscow, Russian Federation.

                                                            [signature]
                                                          David Aminov



translations@geotext.com
www.geotext.com

STATE OF NEW YORK    )
                     )  ss
                     )
COUNTY OF NEW YORK   )

### CERTIFICATION

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate translation from Russian into English of the attached Declaration of David Aminov in Support of Respondent's Motion to Quash.

Kristen Duffy, Senior Managing Editor
Geotext Translations, Inc.

Sworn to and subscribed before me
this 13th day of March, 20 18.

LYNDA GREEN
NOTARY PUBLIC-STATE OF NEW YORK
No. 01GR6205401
Qualified In New York County
My Commission Expires 05-11-2021

New York
t: +1.212.631.7432

Washington, D.C.
t: +1.202.828.1267

Chicago
t: +1.312.242.3756

Houston
t: +1.713.353.3909

San Francisco
t: +1.415.576.9500

London
t: +44.20.7553.4100

Paris
t: +33.1.42.68.51.47

Stockholm
t: +46.8.463.11.87

Frankfurt
t: +49.69.7593.8434

Hong Kong
t: +852.2159.9143