UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x
                                  :

DEPOSIT INSURANCE AGENCY,         :
                                  :

          Petitioner,      :

  -against-                         :  Case No. 1:17-mc-00414-GBD-SN

SERGEY LEONTIEV,              :  **<u>ORAL ARGUMENT REQUESTED</u>**

         Movant.      :

-------------------------------------------------------------------x

<br>

## **<u>MOVANT SERGEY LEONTIEV'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR LEAVE TO FILE A COMPLAINT</u>**

<br><br>

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

*Attorneys for Sergey Leontiev*

Page

PRELIMINARY STATEMENT .................................................... 1

STATEMENT OF FACTS ........................................................ 3

ARGUMENT ........................................................................... 9

    I.    This Court Has The Authority To Grant The Declaratory Relief Requested In Mr. Leontiev's Proposed Complaint .................................................. 9

    II.   This Court Should Grant Mr. Leontiev Leave To File His Proposed Complaint.......................................................................... 11

    III.  The DIA Has Submitted Itself To This Court's Jurisdiction With Respect To Mr. Leontiev's Proposed Complaint ............................................. 12

    IV.  This Court Is A Proper And Convenient Forum For Adjudicating Mr. Leontiev's Proposed Complaint......................................................... 15

CONCLUSION....................................................................... 16

# TABLE OF AUTHORITIES

Page(s)

## Cases

*American Lecithin Co. v. Rebmann*,
2017 WL 4402535 (S.D.N.Y. Sept. 30, 2017)........................................................15

*In re Appl. of Potanina*,
2015 4476612 (S.D.N.Y. June 30, 2015).................................................................8

*Bill v. Casarona*,
1996 WL 389304 (S.D.N.Y. July 11, 1996) ..........................................................10

*City of Chicago v. Int'l Coll. of Surgeons*,
522 U.S. 156 (1997)...............................................................................................13

*Cont'l Cas. Co. v. Coastal Sav. Bank*,
977 F.2d 734 (2d Cir. 1992)...................................................................................11

*Henrietta D. v. Bloomberg*,
331 F.3d 261 (2d Cir. 2003)...................................................................................10

*Iragorri v. United Tech. Corp.*,
274 F.3d 65 (2d Cir. 2001).....................................................................................15

*Maxwell v. New York Univ.*,
2008 WL 5435327 (S.D.N.Y. Dec. 31, 2008) .......................................................10

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*,
510 F. Supp. 2d 299 (S.D.N.Y. 2007)......................................................................3

*Middleton v. Green Cycle Hous., Inc.*,
2017 WL 715747 (S.D.N.Y. Feb. 23, 2017)..........................................................14

*Parex Bank v. Russian Sav. Bank*,
116 F. Supp. 2d 415 (S.D.N.Y. 2000)......................................................................1

*Republic of Argentina v. Weltover*,
504 U.S. 607 (1992)...............................................................................................14

*Siderman de Blake v. Republic of Argentina*,
965 F.2d 699 (9th Cir. 1992) .................................................................................13

*U.S. Fid. & Guar. Co. v. Petroleo Brasileiro S.A.-Petrobras*,
1999 WL 307642 (S.D.N.Y. May 17, 1999) .........................................................14

*United Mine Workers of America v. Gibbs*,
383 U.S. 715 (1966).............................................................................................9, 10

*Wilton v. Seven Falls Co.*,
    515 U.S. 277 (1995)................................................................................................11

**Statutes**

28 U.S.C. § 1330(a)-(b) ..........................................................................................13

28 U.S.C. § 1367 ........................................................................................................2

28 U.S.C. § 1367(a) ................................................................................................13

28 U.S.C. § 1602-11 ................................................................................................1

28 U.S.C. § 1603 (a)-(b) ........................................................................................12

28 U.S.C. § 1605(a)(1)......................................................................................12, 13

28 U.S.C. § 1605(a)(2)......................................................................................12, 14

28 U.S.C. § 2201(a) ..................................................................................................9

Magnitsky Act § 402(a)(13)...................................................................................15

**Rules**

S.D.N.Y. ECF Rules & Instrs. 9.1 ..........................................................................13

Movant Sergey Leontiev respectfully submits this memorandum of law in support of his motion for leave to file a complaint against Petitioner Deposit Insurance Agency (the "DIA") seeking declaratory relief pursuant to 28 U.S.C. §§ 2201-02 (the "Declaratory Judgment Act") and Federal Rule of Civil Procedure 57. A copy of the proposed complaint is attached hereto as Exhibit 1 to the Declaration of Robert L. Weigel ("Weigel Decl.").

## PRELIMINARY STATEMENT

In the three years since the Russian government illegally seized Probusinessbank ("PRBB"), the DIA has engaged in a global campaign to harass and intimidate Mr. Leontiev and his business associates. Under the direction of Andrei Pavlov, a Russian lawyer sanctioned by the U.S. for his central role in prior sham lawsuits, including the infamous "Magnitsky Affair," the DIA has fabricated allegations of misconduct by Mr. Leontiev and has premised bad faith litigation in this Court on those fabrications. The present action pursuant to 28 U.S.C. § 1782 ("Section 1782") was initiated *ex parte* by the DIA in furtherance of its corrupt and abusive campaign, and it relies on baseless claims that Mr. Leontiev embezzled funds from PRBB for his personal benefit. For example, the DIA asserted that Mr. Leontiev "embezzled hundreds of millions of dollars of assets from the Russian bank he co-owned." Weigel Decl. Ex. 2 at 7. These accusations publicly made by the DIA to this Court are false.

The DIA's false assertions have caused great harm to Mr. Leontiev, his reputation, and his business dealings. In requesting leave to file his proposed complaint for declaratory relief, Mr. Leontiev seeks the opportunity to prove that the allegations in the DIA's Section 1782 action are false. This Court has jurisdiction over Mr. Leontiev's claims pursuant to 28 U.S.C. § 1330 and the Foreign Sovereign Immunities Act ("FSIA"), *id.* §§ 1602-11, because the DIA, "an instrumentality or agency of the Russian state, qualifies as a 'foreign state' under the FSIA." *Parex Bank v. Russian Sav. Bank*, 116 F. Supp. 2d 415, 420 (S.D.N.Y. 2000) (explaining that, in

a case "brought against a foreign state," § 1330 and the FSIA provide the bases for subject matter and personal jurisdiction). By voluntarily seeking this Court's assistance, the DIA waived any claims of sovereign immunity it might have arising from the fraudulent statements made in its filings. If the FSIA did not control, this Court would have supplemental jurisdiction over Mr. Leontiev's claims against the DIA because the claims arise out of the same "case or controversy" as the application the DIA filed under Section 1782. *See* 28 U.S.C. § 1367 (a district court with jurisdiction over certain claims also has "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution").

Mr. Leontiev's proposed claim for declaratory relief directly relates to the same underlying issues in dispute in the DIA's Section 1782 application. Indeed, the DIA has explicitly acknowledged availing itself of "United States procedure" in this action to obtain "information from [Mr.] Leontiev" concerning assets the DIA alleges were purportedly "embezzled" by him. Weigel Decl. Ex. 2 at 15. Likewise, the DIA has falsely claimed in this Court that Mr. Leontiev "embezzled hundreds of millions of dollars of assets from the Russian bank he co-owned" (*id*. at 7), "that [Mr.] Leontiev embezzled P[R]BB's funds," (*id*. at 19) and that Mr. Leontiev "engaged in a series of transactions to embezzle funds" (*id*. at 29). The DIA put these statements at issue in its Section 1782 action, and they are demonstrably false. This Court has the authority to issue declaratory relief to resolve the existing controversy.

The DIA deliberately asserted that Mr. Leontiev engaged in purported embezzlement in order to persuade this Court to grant its Section 1782 request. Mr. Leontiev respectfully requests an opportunity to prove in this Court that the statements the DIA made to this Court are false. Mr. Leontiev's proposed complaint, seeking a declaration that the DIA's statements are false,

arises out of the same "case or controversy" as the Section 1782 action commenced by the DIA. This Court has jurisdiction to resolve the issue raised by the DIA in this Court pursuant to the FSIA, and alternatively 28 U.S.C. § 1367, and litigating this case alongside the existing Section 1782 action would be in keeping with this "[C]ourt's authority to administer justice fairly, efficiently, and with minimal waste and burden." *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 510 F. Supp. 2d 299, 322 (S.D.N.Y. 2007). For these reasons and those stated below, this Court should grant Mr. Leontiev permission to file his proposed complaint.

## STATEMENT OF FACTS[1]

Mr. Leontiev is a well-known and highly regarded Russian entrepreneur and businessman who has resided in New York for the past three years. Until August 2015, Mr. Leontiev served as President and Chairman of the Board of Directors of PRBB, a full-service commercial bank headquartered in Moscow that Mr. Leontiev and others founded in 1993. Weigel Decl. Ex. 4 ¶¶ 2, 7. By 2015, PRBB had grown to become the 51st largest bank in Russia in terms of assets and the fourth largest in terms of branches. *Id.* ¶¶ 3-4. PRBB served as the parent entity to numerous smaller banks, which employed more than 13,000 people and operated hundreds of offices and branches throughout Russia. *Id.* ¶¶ 5-6.

In August 2015, the Central Bank of Russia (the "Central Bank"), Russia's primary bank regulator, disconnected PRBB from the banking networks, withdrew PRBB's license, and seized its assets, despite the fact that PRBB had not violated any law, was not in financial distress, and had, in fact, received multiple clean opinions from its independent auditors, ZAO Deloitte &

---

[1]  This Statement of Facts focuses on the factual and procedural background most relevant to this Motion. To avoid inundating the Court, Movant assumes this Court's familiarity with the more detailed factual background set forth in Movant's prior briefing before this Court. *See, e.g.*, Weigel Decl. Ex. 3 at 7-15.

Touche CIS, as recently as April 15, 2015. *Id.* ¶¶ 9-12; *see also id.* Ex. 5 ¶¶ 14-16. As a result, Mr. Leontiev was forced to flee Russia with his family out of fear for their safety. *Id.* Ex. 4 ¶¶ 12-13. He has resided in the United States since August 2015, taking refuge from the continued threat of physical harm and political persecution in Russia. *Id.* ¶ 13.

The DIA was initially appointed as temporary administrator of PRBB on August 7, 2015. *Id.* ¶ 10. One of its first actions was an improper transfer of nearly $10 million from PRBB to itself while PRBB was temporarily reconnected to the banking networks. *Id.* Ex. 6. Shortly after effectuating this transfer, the DIA retained the law firm Quorum and its founder and senior partner, Andrei Pavlov (*id.* Ex. 7 ¶¶ 8-13), a Russian lawyer who has been sanctioned by the U.S. government for his key role in the Magnitsky Affair, including his perpetration of false claims in Russian courts (*id.* Ex. 5 ¶¶ 12, 22). The Central Bank then forced PRBB into bankruptcy, falsely claiming that PRBB was insolvent. Contrary to the DIA's current claim that "hundreds of millions of dollars" were embezzled, the October 27, 2015 Russian court order, declaring PRBB bankrupt and appointing the DIA as PRBB's bankruptcy receiver, found only a minor shortfall between PRBB's total assets and liabilities, approximately $19.7 million, nearly half of which could be accounted for by the DIA's earlier improper transfer of PRBB's assets to itself. *See id.* Ex. 8. Of course, that was before the DIA began stripping PRBB's assets in earnest.

As PRBB's bankruptcy receiver, a position it occupies to this day, the DIA has engaged Quorum and Pavlov to also act as legal counsel in the PRBB bankruptcy proceeding and in connection with the DIA's efforts to pursue Mr. Leontiev and his associates through litigation or otherwise, including this action specifically. *Id.* Exs. 8 & 7 ¶¶ 6-13.

Consistent with its pattern of illegal expropriation of private companies (*id.* Ex. 5 ¶¶ 9-15), in the aftermath of PRBB's unwarranted seizure, the Russian government began to loot

PRBB's assets and redistribute them to entities associated with Kremlin insiders. Under the direction of Pavlov and others, the DIA and Quorum have overseen and engaged in this looting. In addition to the DIA's improper transfer of 604 million rubles (approximately $9.6 million) to its own subsidiary bank, the Russian Capital Bank (*id*. Ex. 6), a significant portion of PRBB's assets (valued at 25 billion rubles (approximately $367 million)) was transferred to Binbank (a.k.a. B&N Bank), then a well-connected Kremlin favorite. *Id*. Exs. 9-10. Binbank has since been nationalized, further consolidating the Russian state's control of the banking sector.

In addition to choreographing and executing the theft of PRBB's assets, the DIA and Quorum targeted Mr. Leontiev and his associates in an international campaign of harassment and malicious litigation. Months after PRBB was seized, the Investigative Committee of the Russian Federation conducted an investigation into the potential liability of the owners and managers of PRBB, ultimately concluding in December 2015 that there was no criminal activity. *Id*. Ex. 11. The Investigative Committee found "no evidence of crime events" and stated, "the opening of a criminal case should be refused" "due to the absence of criminal events." *Id*. at 5. After the Investigate Committee issued the order exonerating PRBB's management, Alexander Zheleznyak, a co-founder of PRBB, was contacted by Valery Miroshnikov, the DIA's First Deputy General Director. Weigel Decl. Ex. 1 (Proposed Complaint) ¶ 37. Miroshnikov proposed a meeting between Mr. Zheleznyak and a representative of the DIA who works closely with Quorum and Pavlov. Mr. Zheleznyak agreed and attended the meeting. *Id*.

The DIA's representative offered Mr. Zheleznyak a "deal"—in exchange for transferring assets to Quorum, Messrs. Leontiev and Zheleznyak would receive favorable treatment and other benefits. Mr. Zheleznyak rebuffed the extortion attempt. *Id*. ¶ 38. Evidently seeking to exert more undue pressure, Miroshnikov contemporaneously submitted a letter (on behalf of the DIA)

to Victor Voronin, then-head of Directorate K of the FSB (the KGB's successor agency), containing fabricated allegations of wrongdoing relating to PRBB and asking the criminal authorities to investigate these allegations. *Id*. ¶ 39. The purpose of the letter to Voronin was to extort money from both Mr. Leontiev and Mr. Zheleznyak. The threat was not subtle. Voronin is well-known for exploiting his government position in aid of illicit asset seizure schemes. For instance, Voronin started the chain of events that led to the Hermitage Capital tax fraud and culminated in the death of Sergey Magnitsky. Specifically, Voronin fraudulently initiated the criminal case that resulted in the seizure of corporate documents that Pavlov then used to file his sham lawsuits to effectuate the Hermitage Capital tax fraud—prompting Congress to pass the Magnitsky Act. *Id*. ¶ 40.

In February 2016, one month after the attempted shakedown of Mr. Zheleznyak and Miroshnikov's letter to Voronin, and just two months after the Investigative Committee refused to initiate criminal proceedings against PRBB's management, the Russian authorities arrested five former managers of PRBB and charged them with embezzlement. Weigel Decl. Exs. 11 & 7 ¶¶ 22-24. Then, in October 2016, Russian authorities commenced criminal proceedings against Messrs. Leontiev and Zheleznyak *in absentia* based on the same unfounded embezzlement allegations.[2] *Id*. ¶ 23. These false and baseless allegations mirror the manufactured claims that Miroshnikov submitted to Voronin. *Id*. Ex. 1 ¶ 41.

In October 2017, as part of its ongoing campaign of harassment and extortion, the DIA instituted this action against Mr. Leontiev (*id*. Ex. 13), and a similar Section 1782 action against

---

[2] Victor Grin, the Deputy Prosecutor General overseeing the baseless criminal proceedings against former PRBB executives in Russia, is, like Pavlov, subject to U.S. sanctions based on his connection to the events surrounding the unjust imprisonment, torture, and death of attorney Sergei Magnitsky. Weigel Decl. Exs. 7 ¶ 26 & 12.

Mr. Zheleznyak in the United States District Court for the District of Massachusetts (*In re Application of Deposit Insurance Agency*, Case No. 1:17-mc-91383-GAO),[3] based on false allegations of embezzlement.

In this action, the DIA's initial application included various false statements: that Mr. Leontiev "transferred . . . embezzled funds" (Weigel Decl. Ex. 15 at 10); "that [Mr.] Leontiev . . . embezzled [funds] out of Probusinessbank" (*id*. at 16); and that "[Mr.] Leontiev has knowledge and possesses or controls evidence concerning . . . the embezzlement scheme perpetrated by him" (*id*. at 21). After Mr. Leontiev moved to quash the DIA's subpoena (*id*. Ex. 3), the DIA filed its opposition to Mr. Leontiev's motion on February 20, 2018. In its opposition brief, the DIA doubled down on its fabrications about Mr. Leontiev's purported embezzlement—opening with the patently false statement that Mr. Leontiev "embezzled hundreds of millions of dollars of assets from the Russian bank he co-owned." *Id*. Ex. 2 at 7. In the same brief, the DIA proceeded to falsely allege, among other things, "that [Mr.] Leontiev embezzled P[R]BB's funds" and that Mr. Leontiev "engaged in a series of transactions to embezzle funds." *Id*. at 19, 29.

On July 23, 2018, this Court issued an Opinion and Order requiring the parties to "meet and confer to modify the scope of the [DIA's] subpoena . . . and to narrow its focus." *Id*. Ex. 16 at 24. While Mr. Leontiev's motion to quash was denied, this Court expressly concluded that "[Mr.] Leontiev has marshalled substantial evidence to support th[e] view" that "the discovery sought here is intended for other proceedings or impermissible purposes." *Id*. This Court further

---

[3] On March 19, 2018, Judge O'Toole granted the parties' joint motion to stay the Section 1782 action in Massachusetts pending the issuance of a final order regarding discovery in this action. *In re Application of Deposit Insurance Agency*, Case No. 1:17-mc-91383-GAO, Dkt. 27. Weigel Decl. Ex. 14.

noted that the DIA's rebuttal largely comprised "inconsistent statements or hearsay declarations," and that its "concern about the legitimacy of [the DIA's] requests is heightened by the involvement of two sanctioned individuals." *Id.*

Mr. Leontiev's proposed complaint seeks a determination that the DIA's statements, made to persuade this Court to allow the DIA to conduct discovery regarding the purported embezzlement, are false. The DIA squarely put the question of whether Mr. Leontiev purportedly "embezzled hundreds of millions of dollars of assets from the bank he co-owned" at issue in this action. Indeed, the DIA asked this Court to accept the truth of this statement and seeks, and has been allowed, discovery into this issue in this district.

By this motion, Mr. Leontiev seeks permission to file a complaint that would allow Mr. Leontiev to use the discovery, which has already been ordered at the DIA's request, as well as such other discovery as is necessary, to resolve an actual active controversy between the parties that is already at issue in this Court. After claiming that Mr. Leontiev engaged in purported embezzlement, the DIA knew it could be called upon to submit proof to support its assertion—particularly if this Court chose to conduct an evidentiary hearing before deciding whether to grant the DIA's application. *See, e.g.*, *In re Appl. of Potanina*, 2015 4476612, at *1 (S.D.N.Y. June 30, 2015) (resolving Section 1782 dispute "follow[ing] an evidentiary hearing" and "[i]n light of the evidence put forth at that hearing"). Having raised the issue in this Court and asked for the right to conduct discovery into the same issue, the DIA cannot now be heard to complain that Mr. Leontiev seeks to use the very same discovery that the DIA intends to take in the U.S. to resolve the dispute injected by the DIA into this action.

**ARGUMENT**

## I.      This Court Has The Authority To Grant The Declaratory Relief Requested In Mr. Leontiev's Proposed Complaint

Mr. Leontiev seeks permission to file his proposed claim for relief under the Declaratory Judgment Act, which authorizes courts to "declare the rights and other legal relations of any interested party seeking such declaration," "upon the filing of an appropriate pleading" in "a case of actual controversy within its jurisdiction." 28 U.S.C. § 2201(a).

By filing its Section 1782 application, the DIA initiated a "case of actual controversy" against Mr. Leontiev in this Court. The Supreme Court has instructed courts to construe the terms "case" and "controversy" broadly to encompass any dispute that impacts the rights or obligations of adverse parties. *See, e.g.*, *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966). Within this case, the DIA and Mr. Leontiev have actively disputed whether discovery from Mr. Leontiev should be required. Moreover, during the course of this "case of actual controversy," the DIA's filings have given rise to a variety of factual disputes concerning Mr. Leontiev that implicate his "rights" and the parties' "legal relations," chief among them the DIA's allegation (and variations thereon) that Mr. Leontiev "embezzled hundreds of millions of dollars of assets from the Russian bank he co-owned" (*e.g.*, Weigel Decl. Ex. 2 at 7). Because the DIA continues to serve as PRBB's bankruptcy receiver, a judicial declaration that such allegations are false will impact the "rights and other legal relations" of the parties.

Mr. Leontiev's proposed complaint is an "appropriate pleading," as that term is used in the Declaratory Judgment Act, because it arises directly out of, and seeks declaratory relief related to, the DIA's false and defamatory contention that Mr. Leontiev embezzled funds from PRBB. *See id*. Ex. 1. Because the proposed complaint seeks a narrowly-tailored judicial

declaration relevant to "the rights and other legal relations" of Mr. Leontiev and the DIA, it comports with the Declaratory Judgment Act's requirement for an "appropriate pleading."

Mr. Leontiev's request for declaratory relief can be granted in this action because it is "based upon the same factual allegation[s]" that the DIA put at issue in seeking relief from this Court. *Bill v. Casarona*, 1996 WL 389304, at *4, n.7 (S.D.N.Y. July 11, 1996). Accordingly, Mr. Leontiev's proposed complaint and the DIA's Section 1782 application "form part of the same case or controversy" for purposes of the Declaratory Judgment Act. *Id.*; *see also Gibbs*, 383 U.S. at 725 ("Pendent jurisdiction, in the sense of judicial power, exists whenever there is a [federal] claim . . . and the relationship between that claim and [another] claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.'"). Finally, "given that the underlying factual issues [are] identical," "efficiency [will] therefore obviously [be] served by simultaneous adjudication" (*Henrietta D. v. Bloomberg*, 331 F.3d 261, 291 (2d Cir. 2003)) of the DIA's Section 1782 application and the resulting discovery, on the one hand, and Mr. Leontiev's proposed complaint, on the other. *See Maxwell v. New York Univ.*, 2008 WL 5435327, *1-2 (S.D.N.Y. Dec. 31, 2008) (where defendant's counterclaim and plaintiff's request for relief "'derive from a common nucleus of operative fact' because they arise from the same events and concern the same parties," exercising jurisdiction over both promotes "judicial economy, convenience and fairness to litigants" (citation omitted)). The discovery that the DIA seeks to conduct pursuant to its Section 1782 application is identical to the discovery that will be taken to resolve the proposed declaratory relief action. The documents to be searched for and produced, under the demands of the DIA's subpoena (*see* Weigel Decl. Ex. 17), and the questions to be asked of Mr. Leontiev are the same. There is no reason to go through the same discovery twice.

**II.      This Court Should Grant Mr. Leontiev Leave To File His Proposed Complaint**

Over the past three years, the DIA has participated in a global campaign of harassment, threats, and bad faith litigation targeting Mr. Leontiev that is premised on utter fabrications.  The DIA's initiation of this case brought that campaign to U.S. shores, and its false and highly defamatory allegations that Mr. Leontiev embezzled funds from PRBB should not be allowed to stand with impunity.  Mr. Leontiev merely seeks to adjudicate this issue on the merits in an impartial forum and respectfully requests that this Court provide him the opportunity to do so.

The Declaratory Judgment Act grants courts broad discretion in determining whether or not to exercise jurisdiction over a proposed declaratory relief action.  *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 282-83 (1995).  The Second Circuit has held that district courts should resolve declaratory judgment actions when the judgment "will serve a useful purpose in clarifying and settling the legal relations in issue" or "when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."  *Cont'l Cas. Co. v. Coastal Sav. Bank*, 977 F.2d 734, 737 (2d Cir. 1992) (internal citation omitted).

The declaratory relief at issue here would serve a number of worthwhile goals.  The judicial declaration sought by Mr. Leontiev would afford necessary and proper relief from "the uncertainty, insecurity, and controversy" caused by the DIA's false accusations.  By accusing Mr. Leontiev of "embezzl[ing] hundreds of millions of dollars of assets" from PRBB in this case (Weigel Decl. Ex. 2 at 7), the DIA squarely placed at issue the notion that Mr. Leontiev might be liable—to the tune of "hundreds of millions of dollars"—to the DIA, as PRBB's bankruptcy receiver.  A declaration that Mr. Leontiev did not embezzle funds from PRBB certainly would "serve a useful purpose in clarifying and settling the legal relations" between Mr. Leontiev and the DIA.

Absent this Court's permission for Mr. Leontiev to seek declaratory relief, the DIA's false accusations will be allowed to go unresolved, casting a shadow over Mr. Leontiev's attempts to create a life for himself in the U.S. Mr. Leontiev's proposed complaint requests relief that has the potential to end the DIA's harassment campaign, to safeguard Mr. Leontiev's personal property from improper seizure, to prevent other bad faith litigation by the DIA or its proxies, and to restore Mr. Leontiev's personal and business reputations. Mr. Leontiev has been living under a dark cloud of uncertainty and suspicion as a result of the DIA's public lies; all he asks is the opportunity to present this Court with evidence of the truth and to obtain a determination from a fair and impartial forum.

## III. The DIA Has Submitted Itself To This Court's Jurisdiction With Respect To Mr. Leontiev's Proposed Complaint

The DIA chose to seek this Court's assistance, and to submit itself to this Court's jurisdiction, when it voluntarily commenced this case. Mr. Leontiev's proposed complaint arises from the same set of underlying facts and circumstances, and seeks relief exclusively related to the false statements made in the DIA's own filings in this action. Accordingly, this Court has personal and subject matter jurisdiction over Mr. Leontiev's proposed complaint.

This Court has jurisdiction over the proposed complaint pursuant to 28 U.S.C. § 1330[4] because: (1) this "action against [the DIA]" is one "with respect to which the [DIA] is not entitled to immunity" under the waiver exception (*see* § 1605(a)(1)) and under the second clause of the commercial activity exception (*see* § 1605(a)(2)) to the FSIA; and (2) service on the DIA can "be[] made under [§ 1608(b)]" by electronically filing the proposed complaint in this action

---

[4] As a Russian state corporation and government agency, the DIA qualifies as a "foreign state" under the FSIA. *See* § 1603 (a)-(b).

(*see* S.D.N.Y. ECF Rules & Instrs. 9.1 ("In cases assigned to the ECF system, service is complete provided all parties receive a Notice of Electronic Filing.")). *See* § 1330(a)-(b).[5]

First, the DIA has waived—and is not entitled to—any sovereign immunity with respect to its statements in this action. The FSIA clearly states that a foreign state "shall not be immune from the jurisdiction of courts of the United States . . . in any case [] in which the foreign state has waived its immunity either explicitly or by implication." § 1605(a)(1). Here, the DIA has implicitly waived any sovereign immunity with respect to claims that Mr. Leontiev purportedly embezzled funds from PRBB because the DIA itself raised these allegations in this Court. *See Siderman de Blake v. Republic of Argentina*, 965 F.2d 699, 722 (9th Cir. 1992) (a foreign state that has "engaged [U.S.] courts in the very course of activity for which [a claimant] seeks redress . . . waive[s] its immunity as to that redress"). Having made assertions of alleged embezzlement in an attempt to persuade this Court, the DIA's sovereign immunity has been waived by its purposeful availment of this Court's process as part of a corrupt campaign against Mr. Leontiev. *See id.* (finding sufficient evidence of implicit waiver of sovereign immunity where Argentina's use of U.S. "judicial authority was part and parcel of its efforts to . . . persecute [plaintiff]").[6]

---

[5] Alternatively, this Court has jurisdiction over Mr. Leontiev's proposed complaint pursuant to 28 U.S.C. § 1367. The subject matter of Mr. Leontiev's proposed complaint is "so related to" the DIA's Section 1782 application, "of which [this Court] has original jurisdiction" under 28 U.S.C. § 1331, that the proposed complaint and the DIA's Section 1782 application "form part of the same case or controversy under Article III of the United States Constitution." *See* 28 U.S.C. § 1367(a). § 1367 confirms that this Court's jurisdiction over "federal questions carries with it jurisdiction over" other claims that "'derive from a common nucleus of operative fact,' such that 'the relationship between [the two types of claims] permits the conclusion that the entire action before the court comprises but one constitutional 'case.''" *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 164–65 (1997) (citations omitted).

[6] Just as the plaintiff in *Siderman* was able to demonstrate that Argentina had waived its sovereign immunity because it sought assistance from California state courts for a malicious purpose (*id.* at 720-22), Mr. Leontiev can demonstrate the DIA's deliberate misuse of this Court. For example, the DIA offered its fabricated "embezzlement scheme perpetrated by"

Second, because the FSIA withdraws sovereign immunity in actions based "upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere" (§ 1605(a)(2)), the DIA is stripped of its sovereign immunity with respect to its statements in this action. The DIA acted in the U.S. by pursuing two similar Section 1782 actions, in this Court and in the District of Massachusetts, and by putting at issue its allegation that Mr. Leontiev embezzled funds from PRBB, upon which Mr. Leontiev's proposed complaint is based. *See U.S. Fid. & Guar. Co. v. Petroleo Brasileiro S.A.-Petrobras*, 1999 WL 307642, at *8 (S.D.N.Y. May 17, 1999) (foreign state's sovereign immunity is withdrawn in an action arising out of its "misrepresentation in the [U.S.] . . . that leads to an action for restitution based on unjust enrichment," or out of its acts in the U.S. "that, if proven, would be sufficient to form the basis for [its] liability" (citations omitted)). The DIA performed these acts "in order to trace PBB's assets" (Weigel Decl. Ex. 2 at 15), supposedly located in Russia or elsewhere—a decidedly commercial activity that private parties engage in routinely (*see, e.g.*, *Middleton v. Green Cycle Hous., Inc.*, 2017 WL 715747, at *9 (S.D.N.Y. Feb. 23, 2017) (listing "asset tracing" among the "measures" used by a private creditor "to protect her rights")).[7]

---

Mr. Leontiev as purported support for its need for discovery, and misled this Court that the "DIA [wa]s using the United States [Section 1782] procedure for obtaining . . . information from [Mr.] Leontiev" that was "necessary to trace and recover assets that have been embezzled." Weigel Decl. Ex. 2 at 15. Because of the direct link between Mr. Leontiev's proposed claim for declaratory relief and the DIA's misuse of this Court, the DIA has implicitly waived any sovereign immunity as to Mr. Leontiev's proposed claim.

[7] Though the DIA's purported purpose in seeking this Court's assistance to obtain discovery from Mr. Leontiev is to protect the interests of the Russian public (*see* Weigel Decl. Ex. 2 at 8), this does not change the "commercial character" of the activity of tracing assets. *See, e.g.*, *Republic of Argentina v. Weltover*, 504 U.S. 607, 614 (1992) ("the question is not whether the foreign government is acting with a profit motive or instead with the aim of fulfilling uniquely sovereign objectives . . . [it] is whether the particular actions that the foreign state performs (whatever the motive behind them) are the *type* of actions by which a private party engages in 'trade and traffic or commerce'").

In short, as a result of the DIA's deliberate assertions in this action, the DIA is stripped of any sovereign immunity it might otherwise have had with respect to its manufactured allegations on two accounts: under the waiver and the commercial activity exceptions to the FSIA.

## IV.   This Court Is A Proper And Convenient Forum For Adjudicating Mr. Leontiev's Proposed Complaint

The DIA initiated this action in this Court, and placed its false allegation that Mr. Leontiev embezzled funds from PRBB at issue here. The DIA has stated that its reason for coming to this forum was to obtain evidence that supposedly was "critically important" in relation to the purported "embezzlement scheme," and the DIA described Mr. Leontiev as "the individual most likely to have control of . . . information" about assets alleged to "have been embezzled." Weigel Decl. Exs. 15 at 21; 2 at 15. In so doing, the DIA acknowledged that this is an appropriate forum for the adjudication of such issues. In addition, Mr. Leontiev is a New York resident, and this is his forum of choice. Thus, this Court is the most suitable forum for adjudicating Mr. Leontiev's proposed complaint.[8] *See Iragorri v. United Tech. Corp.*, 274 F.3d 65, 71 (2d Cir. 2001) (en banc) ("the greater the [claimant's] or the lawsuit's bona fide connection to the . . . forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be [to obtain] dismissal for *forum non conveniens*"); *cf. American Lecithin Co. v. Rebmann*, 2017 WL 4402535, at *11 (S.D.N.Y. Sept. 30, 2017) (according "substantial deference" to the parties' choice of a district court in New York—"Defendant's home forum" and "the chosen forum for

---

[8]   The deficiencies of the Russian court system are well-documented. Indeed, the U.S. State Department has reported that "[t]here is little recourse for Russian businesses caught in the legal system" and that "corruption in the [Russian] judicial system is widespread and takes many forms." Weigel Decl. Ex. 18 at 5; *see also* Magnitsky Act § 402(a)(13) (noting Congress's "serious concerns about the right to a fair trial and the independence of the judiciary in the Russian Federation").

Plaintiffs' claims"—to adjudicate their claims, because "Plaintiffs initiated their lawsuit [], and Defendant has since filed counterclaims," in New York).

## CONCLUSION

For the reasons set forth above, Mr. Leontiev respectfully requests that this Court grant his motion for leave to file a complaint in this action seeking relief under the Declaratory Judgment Act.

Dated:  October 11, 2018
New York, New York

GIBSON, DUNN & CRUTCHER LLP

By: /s/ Robert L. Weigel

Robert L. Weigel
rweigel@gibsondunn.com
Marshall R. King
mking@gibsondunn.com
Alison L. Wollin
awollin@gibsondunn.com

200 Park Avenue
New York, New York 10166
Telephone: 212.351.4000
Facsimile: 212.351.4035

*Attorneys for Sergey Leontiev*