# EXHIBIT 7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
:
In re Application of DEPOSIT INSURANCE :
AGENCY for an order to conduct discovery :
for use in a foreign proceeding, :
:
                                  Petitioner. : Case No. 1:17-mc-00414-GBD
:
:
:
:
:
:
:
:
------------------------------------------------------------x

**DECLARATION OF YURI MONASTYRSKY IN SUPPORT OF RESPONDENT'S MOTION TO QUASH**

I, Yuri Monastyrsky, hereby declare under penalty of perjury as follows:

1. I have practiced law in Russia since 1990. In 1990, I graduated from the Moscow State Institute of International Relations. In 1999, I received a doctorate degree in juridical sciences from the Russian Academy of Sciences' Institute of State and Law. I am a member of the Moscow Bar.

2. In January 1991, I founded my law firm, Monastyrsky, Zyuba, Stepanov & Partners ("MZS & Partners"). MZS & Partners is rated as a top firm by Chambers & Partners and Legal 500. My practice focuses on Russian and cross-border mergers & acquisitions, intellectual property, arbitration and litigation, and insolvency proceedings.

3. I am familiar with the Probusinessbank ("PRBB" or the "Bank") bankruptcy proceeding currently pending in the Commercial Arbitrazh Court of Moscow (the "Russian Bankruptcy Action") and the Russian criminal actions against former PRBB executives. I make this declaration in support of Sergey Leontiev's Motion to Quash Subpoena Issued Pursuant to 28 U.S.C. § 1782.

A. The Russian Bankruptcy Action

4. On August 7, 2015, the Central Bank of Russia (the "Central Bank"), Russia's primary bank regulator, appointed the Russian Deposit Insurance Agency ("DIA") as temporary administrator of PRBB.

5. On August 12, 2015, the Central Bank of Russia withdrew PRBB's license, forcing the Bank to be liquidated, and, on August 20, 2015, elected to file a bankruptcy petition on behalf of PRBB with the Commercial Arbitrazh Court of Moscow.

6. On October 27, 2015, the Central Bank's petition to declare PRBB bankrupt was granted, and the DIA was appointed by the court as PRBB's bankruptcy receiver. PRBB's bankruptcy proceeding is currently pending in the Commercial Arbitrazh Court of Moscow.

7. On October 29, 2015, the DIA appointed Vasiliy Bednin as the individual serving on its behalf in the DIA's role as PRBB's bankruptcy receiver. He continued in that role until August 24, 2017.

8. In connection with the Russian Bankruptcy Action, the DIA hired as legal counsel the Russian law firm, Quorum, which is the trademarked name for the Moscow Bar Association "Quorum" and two affiliated entities. The Russian attorney Andrei Pavlov is Quorum's senior partner, its "Head of the Bar Association" (the Russian equivalent of Chairman), and one of Quorum's founders. *See* www.quorumlegal.ru. Pavlov also is the only partner listed on Quorum's website. *Id.*

9. The corporate registration records of the Moscow Bar Association "Quorum" identify Pavlov as its Chairman and as the sole individual authorized to act on its behalf without first obtaining a power of attorney. Attached hereto as Exhibit 1 is a true and correct copy of the corporate registration records of Moscow Bar Association "Quorum," as available on Russia's

2

Unified State Registry of Legal Entities at https://egrul.nalog.ru, dated September 20, 2017, and a certified translation thereof.

10. Quorum was first retained by the DIA almost immediately after it took control of PRBB in August 2015. The DIA also has retained Pavlov to advise it in connection with the Russian Bankruptcy Action and related proceedings. On behalf of the DIA, Quorum and its Chairman, Andrei Pavlov, have since taken various actions against PRBB's former management, including the initiation of this discovery proceeding against Mr. Leontiev (the "Section 1782 Action").

11. According to an addendum to PRBB's Creditors' Committee minutes, Pavlov has been retained by the DIA to oversee the DIA's "initiat[ion of] legal proceedings in foreign jurisdictions," including discovery proceedings "against S. Leontiev – before the United States District Court for the Southern District of New York." Attached hereto as Exhibit 2 is a true and correct copy of the addendum to the minutes from the April 2017 meeting of the PRBB Creditors' Committee and a certified English translation thereof. According to the minutes, the DIA is paying Pavlov RUB 1,500,000 (approximately $26,000) per month "to prepare a comprehensive strategy of legal and out-of-court actions" against Mr. Leontiev and his business associates and to manage this strategy with attention to "the specificities of multijurisdictional proceedings." *See* Ex. 2 at 3-4. These monthly payments to Pavlov are independent from the RUB 8,500,000 (approximately $148,000) per month that Quorum has received since October 2015 as compensation for its work as "legal consultant" to the DIA in PRBB's bankruptcy.

12. Quorum is the only law firm authorized by the DIA to perform work relating to PRBB, and according to the DIA's official status report, as of October 1, 2017, Quorum had received over RUB 467,000,000 (approximately $8,200,000) for legal work performed in

3

connection with the PRBB bankruptcy. Thus, as of October 2017, Quorum had been paid more than double the aggregate amount earned by Quorum and Pavlov under their two monthly fixed fee arrangements.

13. On information and belief, Pavlov and Quorum also have a contingency fee arrangement in place with the DIA that entitles them to receive 15% of any amounts won for the DIA through their litigation efforts. The DIA has entered into similar contingency fee arrangements with the law firms it hired to recover assets for the estates of liquidated banks on other occasions.

14. Since August 2015, when the DIA took over PRBB as its temporary administrator, the DIA should have had full access to PRBB's operations, files, and data servers, among other things. The DIA's control of that information continued when its role shifted to bankruptcy receiver of PRBB. Accordingly, the DIA already has possession of essentially all documents pertaining to PRBB's business. It does not follow that the DIA would require this Section 1782 Action, or any discovery from Mr. Leontiev, for use in the Russian Bankruptcy Action. It also should be noted that, consistent with Russian corporate law, Mr. Leontiev's former roles as President and Chairman of the Board at PRBB involved no record-keeping responsibilities.

15. Under Russian law, the DIA does not have broad investigatory powers. Rather, in its role as bankruptcy receiver, the DIA has the limited authority to challenge the validity of transactions in which PRBB itself participated or that were made at PRBB's expense. Because the DIA is seeking information in this Section 1782 Action about a wider range of transactions, and is seeking information about Mr. Leontiev's personal financial transactions and assets, it is overstepping its limited authority under Russian law. Additionally, because the DIA's discovery

4

requests in this Section 1782 Action go beyond the scope of PRBB's own businesses and transactions, it undermines the DIA's claim that any responsive materials would be relevant to, or would be used in, the Russian Bankruptcy Action.

16. In fact, Russian law limits any findings regarding personal liability for a company's bankruptcy (*i.e.* secondary liability) to a special civil action that should be initiated separately from the primary bankruptcy proceeding. Thus, the DIA's requests in this Section 1782 Action that seek information about Mr. Leontiev's personal financial transactions and assets likely would not be relevant to the current Russian Bankruptcy Action. Moreover, to date, no separate proceeding for secondary liability has been initiated against Mr. Leontiev or other former managers of PRBB.

17. Furthermore, because no judgment for secondary liability has been obtained against Mr. Leontiev, discovery requests seeking information about potential assets for recovery are premature. Indeed, Russian law does not allow prejudgment discovery into assets from which a prospective judgment may be collected. Thus, to the extent that the DIA's discovery requests in this Section 1782 Action seek to identify assets for potential satisfaction of a future judgment against Mr. Leontiev, the DIA is attempting to circumvent Russian law.

18. Likewise, the DIA appears to have brought this Section 1782 Action for strategic purposes, knowing that similar requests likely would be denied if brought to the Russian court. Clause 4 of Article 66 of the Arbitrazh Procedural Code allows parties unable to obtain evidence on their own to apply to the Russian court for assistance, but the DIA has chosen not to do so.

19. To obtain discovery from the Russian court, the DIA would need to specify precisely how each piece of evidence sought would be used in the Russian Bankruptcy Action. Under Clause 4 of Article 66 and Article 67 of the Arbitrazh Procedural Code, an affirmative

5

demonstration of relevance is necessary in advance of requiring evidence to be produced, and the burden of proving relevance as to each piece of evidence rests with the party seeking the discovery. Because the DIA does not provide any details about how the numerous transactions, entities, and individuals listed in its discovery requests in the Section 1782 Action would be relevant to the Russian Bankruptcy Action—much less the specific relevance of any particular item — a Russian court likely would deny similar requests. Attached hereto as Exhibit 3 are true and correct copies of Articles 66 and 67 of the Arbitrazh Procedural Code, available at http://en.smb.gov.ru/support/regulation/apk/.

20. Furthermore, pre-trial depositions are not allowed under Russian law, even in civil and commercial litigation. Thus, the DIA's effort to take oral deposition testimony from Mr. Leontiev would be rejected if the DIA were to request it from a Russian court.

21. This Court also should be aware that the Russian Bankruptcy Action involves nearly 8,000 purported creditors of PRBB, and each of them has access to all of the documents in the Russian Bankruptcy Action's case files. Thus, any discovery obtained by the DIA in this Section 1782 Action for use in the Russian Bankruptcy Action essentially would be made public in Russia.

B. **The Russian Criminal Actions**

22. Following PRBB's seizure in August 2015, the Investigative Committee of the Russian Federation conducted an investigation concerning the potential criminal liability of the owners and managers of PRBB as a result of the Bank's closure. In a decree dated December 1, 2015 (the "December 2015 Decree"), the senior investigator noted the absence of evidence that a crime had occurred and concluded that no criminal proceedings should be initiated against any of

the owners or managers of PRBB. Attached hereto as Exhibit 4 is a true and correct copy of the December 2015 Decree and a certified translation thereof.

23. Despite this prior written opinion from a senior officer of the Investigative Committee stating that criminal charges were unwarranted, Russian authorities nevertheless commenced criminal proceedings against Mr. Leontiev and his business associate Alexander Zheleznyak in October 2016 (the "Russian Criminal Actions").

24. The Russian Criminal Actions were initiated at the behest of the DIA, which made an application to the Investigative Committee. Since then, the DIA has maintained regular communication with the Investigative Committee officials overseeing the Russian Criminal Actions. Indeed, on numerous occasions, the DIA has, on its own initiative, influenced which documents are included in the criminal case files. On these occasions, the DIA suggested that investigators add certain documents to their case files, and then either immediately provided such documents to the investigators or indicated where the documents could be obtained. It is extremely likely that any discovery obtained in this Section 1782 Action will also be provided by the DIA to the criminal authorities in charge of the Russian Criminal Actions. Attached hereto are:

a) Exhibit 5, a true and correct copy of a compilation of files, consisting of (i) a petition submitted by the DIA's representative to the Investigative Committee on May 15, 2017, (ii) the Investigative Committee's order granting the petition and a notification of this grant, both dated May 15, 2017, (iii) a resulting subpoena summons, issued May 16, 2017, and certified translations thereof;

b) Exhibit 6, a true and correct copy of a compilation of files, consisting of (i) a petition submitted by the DIA's representative to the Investigative Committee and (ii) the

7

Investigative Committee's order granting the petition, both dated May 22, 2017, and certified translations thereof; and

  c) Exhibit 7, a true and correct copy of a compilation of files, consisting of (i) the Investigative Committee's order to file a petition with the Russian court to seize certain documents, dated April 5, 2017, (ii) the Russian court's ruling granting the same petition, dated April 7, 2017, (iii) a petition relating to a subset of the same documents submitted by the DIA's representative to the Investigative Committee, dated May 25, 2017, (iv) the Investigative Committee's order granting the petition and a notification of this grant, both dated May 25, 2017, and certified translations thereof.

25. Criminal defendants in Russia have a right to avoid self-incrimination. This right to remain silent is enshrined in Article 51 of Russia's Constitution, which ensures that "[n]obody shall be obliged to testify against himself, his (her) spouse or close relatives." The protection from self-incrimination also is memorialized in Clause 40 of Article 5, Clause 4 of Article 56, and Clause 8 of Article 234 of Russia's Code of Criminal Procedure and honored by Resolutions of Russia's Constitutional Court. If deposition testimony taken from Mr. Leontiev pursuant to this Section 1782 Action were to be used in the Russian Criminal Actions, it would vitiate this important right against self-incrimination. Attached as Exhibit 8 is a true and correct copy of Article 51 of Russia's Constitution, available at https://www.constituteproject.org/constitution/Russia_2014.pdf?lang=en. Attached as Exhibit 9 are true and correct copies of Articles 5, 56, and 234 of Russia's Code of Criminal Procedure, available at https://eng.genproc.gov.ru/anticor/npa/document-1193402/. Attached as Exhibits 10 and 11 are true and correct copies of excerpts from the Constitutional Court Resolutions of 1996 and 2004 and certified English translations thereof.

8

26. Victor Grin is the Deputy Prosecutor General overseeing the Russian criminal proceedings against former PRBB executives.

27. In December 2017, the Russian court presiding over a related criminal proceeding pending against other former PRBB executives found evidence of prosecutorial misconduct and violations of the Russian rules of criminal procedure.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 15th day of January, 2018 in Moscow, Russian Federation.

_____
Yuri Monastyrsky