# EXHIBIT 11

# EXHIBIT 4

ORDER
to refuse to open a criminal case

Moscow                                                                                                December 1, 2015

Colonel of Justice S.A. Novikov, a senior investigator for major cases in the Third Investigations Division of the Department for the Investigation of Major Cases of Crimes Against the Government and Financial Crimes, in the Main Investigations Department of the Investigative Committee of the Russian Federation, having reviewed the contents of the procedural check following the procedure set forth in Article 144 of the RF Criminal Procedure Code, which have been registered in the Crime Records Registration Book of the Main Investigations Department of the RF Investigative Committee under No. 201pr-184/15 of 11.02.2015,

F O U N D:

On 10.28.2015 the deputy chair of the Investigative Committee of the Russian Federation assigned the Main Investigations Department of the RF Investigative Committee the task of conducting a procedural check following the procedure set forth in Articles 144 and 145 of the RF Criminal Procedure Code in respect of the circumstances noted in letter No. 01-33-3/8573 dated 10.01.2015 from the chair of the Bank of Russia to the chair of the RF Investigative Committee regarding possible offences under Article 159, Article 160, Article 196 and Article 201 of the RF Criminal Code in the actions of the owners and managers of the Life Financial Group, consisting of the illegal withdrawal, including outside the Russian Federation, of liquid assets from Probusinessbank JSCB OJSC (henceforth—the Bank), which resulted in a drop in the level of its own funds below the minimum value of the charter capital, an increase in the size of liabilities over the value of assets, and the revocation of the bank's license to perform banking activities, and the use of their powers to derive profits and advantages for themselves in disregard of the interests of Bank creditors and depositors.

This letter from the chair of the Bank of Russia was registered in the Crime Records Registration Book of the Main Investigations Department of the RF Investigative Committee under No. 201pr-184/15 of 11.02.2015 and on the same day the acting director of the Main Investigations Department of the Investigative Committee of the Russian Federation assigned the task of conducting a procedural review to me.

The time frame for the procedural check was repeatedly extended in accordance with the legally prescribed procedure by the deputy director of the Department for the Investigation of Major Cases of Crimes Against the Government and Financial Crimes – director of the Third Investigations Division of the Main Investigations Department of the RF Investigative Committee, most recently on 11.11.2015 by 20 days, for a total of 30 days, that is, until 12.01.2015.

No documentary materials substantiating the grounds for the conclusions listed in the letter regarding the presence of criminally punishable acts in the actions of Bank owners and managers were attached to the letter from the chair of the RF Central Bank.

During the procedural check, documentary materials substantiating the grounds for the conclusions listed in the letter from the chair of the Bank of Russia regarding the presence of criminally punishable acts in the actions of Bank owners and managers; materials from investigative activities providing evidence of the illegal activities of Bank owners and managers; information on any open criminal cases against Bank owners and managers at Russian Ministry of Internal Affairs departments; information and documentary materials from a check conducted by staff at the Deposit Insurance Agency and the Bank of Russia in respect of the Bank to assess the total fair value of the Bank's assets as of 08.12.2015 and the amount of the Bank's liabilities to its creditors; information about the performance of any financial transactions, including on the territories of foreign countries, by legal entities affiliated with the Bank, as well as by founders and managers of these legal entities, in their financial interrelations; and information about the financial situation and intergroup economic ties of the Life banking group were requested from the FSB of Russia, the Ministry of Internal Affairs of Russia, the Prosecutor General's Office of the Russian Federation, the Bank of Russia, Rusfinmonitoring, the Federal Tax Service of Russia, offices of the Federal Tax Service of Russia for Moscow, Sverdlovsk Oblast, Ivanovo Oblast, Kaluga Oblast, Samara Oblast, Saratov Oblast and Novosibirsk Oblast, and the Deposit Insurance Agency State Corporation (henceforth—the Agency).

At present, responses have been received from the Departments of the Federal Tax Service of Russia for Sverdlovsk Oblast, Ivanovo Oblast, Samara Oblast and Saratov Oblast, and from Rusfinmonitoring.

No responses or documentary materials have yet been received from the FSB of Russia, the Ministry of Internal Affairs of Russia, the Prosecutor General's Office of the Russian Federation, the Bank of Russia, the Department of the Federal Tax Service of Russia for Moscow, or the Agency, and no information about the reasons for this failure to respond have been provided.

Additionally, pursuant to Part 3 of Article 20 of the RF Criminal Procedure Code, criminal cases of public-private prosecution, including the crimes stipulated in Article 159, Article 160, Article 196 and Article 201 of the RF Criminal Code, may only be opened pursuant to an application from a victim or the victim's legal representative, if they were committed by an individual entrepreneur in connection with that person's performance of business activities and (or) the management of property owned by that person and used for the purposes of business activities, or if these crimes were committed by a member of a management body of a commercial organization in connection with that person's exercise of powers to manage the commercial organization or in connection with the commercial organization's conduct of business or other economic activities, except in cases where the crime caused damage to the

interests of a state or municipal unitary enterprise, a state corporation, a state company, or a commercial organization in whose charter (joint-stock) capital (share fund) the state or a municipal formation has a holding, or if the target of the crime was a state or municipal asset.

The Bank is a commercial organization, and possible crimes were committed by Bank managers or other staff members in connection with the exercise of their powers to manage a commercial organization (the Bank), or in connection with the commercial organization's conduct of business or other economic activities.

The Bank is an open joint-stock company, no state or municipal unitary enterprises participate in it, it is a commercial organization in whose charter capital neither the state nor a municipal formation has a holding, and the target of possible crimes was not a state or municipal asset.

On 08.12.2015 the Bank's license to conduct banking operations was revoked pursuant to Bank of Russia order No. OD-2071 of 08.12.2015.

On 10.28.2015 the Bank was declared insolvent (bankrupt), bankruptcy proceedings were opened in relation to it, the powers of the Bank's director were terminated and the Agency was appointed bankruptcy manager for the Bank, pursuant to ruling of the Moscow Arbitrazh Court No. A40-154909/15.

In relation to the Bank, the Bank of Russia, as represented by the chair of the Bank of Russia, is not a management body of the Bank and does not exercise powers to manage the Bank, and a criminal case against Bank owners and managers cannot, therefore, be opened pursuant to an application by the chair of the Bank of Russia, on the grounds stipulated in Part 3 of Article 20 of the RF Criminal Procedure Code.

Thus a criminal case in respect of the circumstances of the possible commission of crimes envisaged in Article 159, Article 160, Article 196 and Article 201 of the RF Criminal Code by Bank owners and managers may be opened pursuant to an application by the Agency; however, no applications regarding crimes committed were received from Agency representatives, following the procedure set forth in Article 141 of the RF Criminal Procedure Code, during the check.

Meanwhile, the time frame for the check expires on 12.01.2015. However, it is not possible to conclude that there is sufficient information indicating elements of a crime that may serve as grounds for opening a criminal case for offences envisaged in Article 159, Article 160, Article 196 and Article 201 of the RF Criminal Code on the basis of the documentary materials and operational information that the investigation currently has at its disposal.

Pursuant to Part 4 of Article 7 of the RF Criminal Procedure Code, an investigator's orders must be legal, justified, and reasoned.

Thus, having assessed the totality of information and documentary materials currently at the disposal of the investigation and accounting for the absence of any applications regarding crimes submitted following the procedure of Article 141 of the RF Criminal Procedure Code by Agency representatives, it should be concluded on the basis of the results of the procedural check that there is no evidence of crime events envisaged in Article 159, Article 160, Article 196 or Article 201 of the RF Criminal Code and that the opening of a criminal case should be refused pursuant to the grounds stipulated in Paragraph 1 of Part 1 of Article 24 of the RF Criminal Procedure Code.

On the basis of the above and guided by Paragraph 1 of Part 1 of Article 24, Article 38, Paragraph 2 of Part 1 of Article 144, Article 145 and Article 148 of the RF Criminal Procedure Code,

O R D E R S:

1. To refuse to open a criminal case in respect of the circumstances listed in letter No. 01-33-3/8573 dated 10.01.2015 from the chair of the Bank of Russia against owners and managers of the Life Financial Group on the basis of Paragraph 1 of Part 1 of Article 24 of the RF Criminal Procedure Code due to the absence of criminal events envisaged in Article 159, Article 160, Article 196 or Article 201 of the RF Criminal Code.

2. To send the order and materials of the procedural check to the deputy director of the Department for the Investigation of Major Cases of Crimes Against the Government and Financial Crimes – director of the Third Investigations Division of the Main Investigations Department of the RF Investigative Committee, to organize a check of the legality and soundness of this decision.

3. To notify the applicant—the chair of the Bank of Russia—of this decision, explaining that it may be appealed following the procedure set forth in Articles 124 and 125 and Chapter 16 of the RF Criminal Procedure Code.

4. To send a copy of the order to the Deputy Prosecutor General of the Russian Federation.

Senior Investigator for Major Cases
Main Investigations Department
Colonel of Justice [signature] S.A. Novikov

Case 1:17-mc-00414-GBD Document 11-4 Filed 01/10/18 Page 7 of 11

# ПОСТАНОВЛЕНИЕ
## об отказе в возбуждении уголовного дела

город Москва 01 декабря 2015 года

Старший следователь по особо важным делам третьего следственного отдела управления по расследованию особо важных дел о преступлениях против государственной власти и в сфере экономики Главного следственного управления Следственного комитета Российской Федерации полковник юстиции Новиков С.А., рассмотрев материалы процессуальной проверки в порядке, предусмотренном ст. 144 УПК РФ, зарегистрированные в КРСП Главного следственного управления Следственного комитета Российской Федерации за № 201пр-184/15 от 02.11.2015,

УСТАНОВИЛ:

28.10.2015 заместителем Председателя Следственного комитета Российской Федерации Главному следственному управлению Следственного комитета Российской Федерации поручено производство процессуальной проверки в порядке, предусмотренном ст.ст. 144-145 УПК РФ по обстоятельствам указанным в обращении Председателя Банка России № 01-33-3/8573 от 01.10.2015 на имя Председателя Следственного комитета Российской Федерации о возможном наличии в действиях собственников и руководителей финансовой группы «Лайф» признаков преступлений, предусмотренных ст. 159, ст. 160, ст. 196, ст. 201 УК РФ, выразившиеся в незаконном выводе, в том числе за территорию Российской Федерации, ликвидных активов из ОАО АКБ «Пробизнесбанк» (далее по тексту Банк), что повлекло снижение размера собственных средств ниже минимального значения уставного капитала, превышение величины обязательств над стоимостью активов, отзыв лицензии на право осуществления банковской деятельности, использовании своих полномочий в целях извлечения выгод и преимуществ для себя вопреки законным интересам кредиторов и вкладчиков Банка.

Указанное обращение Председателя Банка России зарегистрировано в Книге учёта сообщений о преступлениях Главного следственного управления Следственного комитета Российской Федерации за № 201пр-184/15 от 02.11.2015 и в этот же день и.о. руководителя Главного следственного управления Следственного комитета Российской Федерации производство процессуальной проверки поручено мне.

Срок процессуальной проверки неоднократно продлевался в установленном законом порядке и последний раз 11.11.2015 заместителем руководителя управления по расследованию особо важных дел о преступлениях против государственной власти и в сфере экономики – руководителем третьего следственного отдела Главного следственного управления Следственного комитета Российской Федерации на 20 суток, а всего до 30 суток, то есть до 01.12.2015.

К обращению Председателя Центрального Банка Российской Федерации не прилагалось каких-либо документальных материалов, подтверждающих обоснованность выводов, указанных в обращении, о наличии в действиях собственников и руководителей Банка уголовно наказуемых деяний.

При производстве процессуальной проверки в ФСБ России, МВД России, Генеральной прокуратуре Российской Федерации, Банке России, Росфинмониторинге, ФНС России, УФНС России по гор. Москве, Свердловской области, Ивановской области, Калужской области, Самарской области, Саратовской области, Новосибирской области, государственной корпорации «Агентство по страхованию вкладов» (далее по тексту Агентство) запрошены документальные материалы подтверждающие обоснованность выводов, указанных в обращении Председателя Банка России, о наличии в действиях собственников и руководителей Банка уголовно-наказуемых деяний; материалы оперативно-розыскной деятельности, свидетельствующие о противоправной деятельности собственников и руководителей Банка; информация о наличии в следственных подразделениях МВД России возбужденных уголовных дел в отношении собственников и руководителей Банка; информация и документальные материалы проверки, произведённой сотрудниками Агентства и Банка России в отношении Банка, по оценке совокупной справедливой стоимости имущества Банка на 12.08.2015, оценке величины обязательств Банка перед кредиторами; информация о совершении любых финансовых операций, в том числе и на территории зарубежных стран, аффилированными с Банком юридическими лицами, а также учредителями и руководителями данных юридических лиц, в их финансовой взаимосвязи; информация о финансовом положении и межгрупповых экономических связях банковской группы «Лайф».

В настоящее время, получены ответы на запросы из УФНС России по Свердловской области, Ивановской области, Самарской области, Саратовской области, Росфинмониторинга.

Ответов на запросы и документальных материалов из ФСБ России, МВД России, Генеральной прокуратуры Российской Федерации, Банка России, УФНС России по гор. Москве, Агентства до настоящего времени не получено и не представлено информации о причинах неисполнения запросов.

Кроме того, в соответствии с ч. 3 ст. 20 УПК РФ уголовные дела частно-публичного обвинения, в том числе преступления, предусмотренные ст. 159, ст. 160, ст. 196, ст. 201 УК РФ, возбуждаются не иначе как по заявлению потерпевшего или его законного представителя, если они совершены индивидуальным предпринимателем в связи с осуществлением им предпринимательской деятельности и (или) управлением принадлежащим ему имуществом, используемым в целях предпринимательской деятельности, либо если это преступления совершены членом органа управления коммерческой организацией в связи с осуществлением им полномочий по управлению коммерческой организацией либо в связи с осуществлением коммерческой организацией предпринимательской или иной экономической деятельности, за

исключением случаев, если преступлением причинен вред интересам государственного или муниципального унитарного предприятия, государственной корпорации, государственной компании, коммерческой организации с участием в уставном (складочном) капитале (паевом фонде) государства или муниципального образования либо если предметом преступления явилось государственное или муниципальное имущество.

Банк является коммерческой организацией, и возможные преступления совершены руководством или иными сотрудниками Банка в связи с осуществлением им полномочий по управлению коммерческой организацией (Банком) либо в связи с осуществлением коммерческой организацией предпринимательской или иной экономической деятельности.

Банк является открытым акционерным обществом, без участия государства и муниципальных унитарных предприятий, является коммерческой организацией в уставном капитале которой не имеется долей государства или муниципального образования, предметом возможных преступлений не явилось государственное или муниципальное имущество.

12.08.2015 приказом Банка России от 12.08.2015 № ОД-2071 у Банка отозвана лицензия на осуществление банковских операций.

28.10.2015 решением Арбитражного суда гор. Москвы по делу № А40-154909/15 Банк признан несостоятельным (банкротом), в отношении Банка открыто конкурсное производство, прекращены полномочия руководителя Банка и конкурсным управляющим Банком назначено Агентство.

Банк России, в лице Председателя Банка России, по отношению к Банку не является органом управления Банком и не осуществляет полномочий по управлению Банком, в связи чем, уголовное дело в отношении собственников и руководителей Банка не может быть возбуждено по заявлению Председателя Банка России, на основании, предусмотренном ч. 3 ст. 20 УПК РФ.

Следовательно, уголовное дело по обстоятельствам возможного совершения руководителями и сотрудниками Банка преступлений, предусмотренных ст. 159, ст. 160, ст. 196, ст. 201 УК РФ может быть возбуждено по заявлению Агентства, однако заявлений о совершённом преступлений, в порядке, предусмотренном ст. 141 УПК РФ от представителей Агентства, при производстве проверки не поступало.

Вместе с тем, срок проводимой проверки истекает 01.12.2015, однако на основании имеющихся в распоряжении следствия документальных материалов и оперативной информации сделать вывод о наличии достаточных данных, указывающих на признаки преступления, которые могли бы послужить основанием для возбуждения уголовного дела по признакам преступлений, предусмотренных ст. 159, ст. 160, ст. 196, ст. 201 УК РФ не представляется возможным.

В соответствии с ч. 4 ст. 7 УПК РФ постановления следователя должны быть законными, обоснованными и мотивированными.

Таким образом, по итогам произведённой процессуальной проверки, оценивая в совокупности имеющуюся на текущий момент в распоряжении следствия информацию и документальные материалы, а также отсутствие заявления о преступлениях, в порядке ст. 141 УПК РФ, от представителей Агентства, следует вывод об отсутствии событий преступлений, предусмотренных ст. 159, ст. 160, ст. 196, ст. 201 УК РФ и в возбуждении уголовного дела следует отказать по основаниям, предусмотренным п. 1 ч. 1 ст. 24 УПК РФ.

На основании изложенного и руководствуясь п. 1 ч. 1 ст. 24, ст. 38, п. 2 ч. 1 ст.ст. 144, 145 и ст. 148 УПК РФ,

ПОСТАНОВИЛ:

1. Отказать в возбуждении уголовного дела по обстоятельствам указанным в обращении Председателя Банка России № 01-33-3/8573 от 01.10.2015 в отношении собственников и руководителей финансовой группы «Лайф» на основании п. 1 ч. 1 ст. 24 УПК РФ, в связи с отсутствием событий преступлений, предусмотренных ст. 159, ст. 160, ст. 196, ст. 201 УК РФ.

2. Постановление и материалы процессуальной проверки направить заместителю руководителя управления по расследованию особо важных дел о преступлениях против государственной власти и в сфере экономики – руководителю третьего следственного отдела Главного следственного управления Следственного комитета Российской Федерации, для организации проверки законности и обоснованности принятого решения.

3. О принятом решении сообщить заявителю – Председателю Банка России, разъяснив, что оно может быть обжаловано в порядке, предусмотренном ст.ст. 124,125 и главой 16 УПК РФ.

4. Копию постановления направить заместителю Генерального прокурора Российской Федерации.

Старший следователь по особо важным делам
Главного следственного управления
полковник юстиции С.А. Новиков

Case 1:17-mc-00414-GBD Document 11-4 Filed 01/16/18 Page 11 of 11

translations@geotext.com
www.geotext.com

STATE OF NEW YORK )
) ss
COUNTY OF NEW YORK )

**CERTIFICATION**

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate translation from Russian into English of the attached Order to Refuse to Open a Criminal Case, dated December 1, 2015.

Jeff Cureton, Senior Managing Editor
Geotext Translations, Inc.

Sworn to and subscribed before me

this 12th day of January, 2018.

KRISTEN DUFFY
NOTARY PUBLIC-STATE OF NEW YORK
No. 01DU6121852
Qualified In Queens County
My Commission Expires 01-31-2021

New York t: +1.212.631.7432 | Washington, D.C. t: +1.202.828.1267 | Chicago t: +1.312.242.3756 | Houston t: +1.713.353.3909 | San Francisco t: +1.415.576.9500
London t: +44.20.7553.4100 | Paris t: +33.1.42.68.51.47 | Stockholm t: +46.8.463.11.87 | Frankfurt t: +49.69.7593.8434 | Hong Kong t: +852.2159.9143