*Deposit Insurance Agency v. Leontiev*:  Leontiev's Proposal For Narrowing DIA's Subpoena Pursuant to Judge Netburn's July 23, 2018 Order

**General limitations:**

Mr. Leontiev objects to the DIA's requests to the extent they seek documents not in his possession, custody, or control and to the extent that they purport to impose upon Mr. Leontiev a duty to secure and produce documents that he does not have in his possession, custody, or control.  Mr. Leontiev's responses and proposals shall not be construed as representations regarding the occurrence or non-occurrence of acts or events alleged in the DIA's filings, or the existence or non-existence of specific documents in his possession, custody, or control.  In furnishing this proposal, Mr. Leontiev does not concede the truth of any factual assertion or implication contained in any of the DIA's requests.

Mr. Leontiev intends to produce non-privileged responsive documents, if any, at a reasonable time to be agreed upon by the parties following the entry of a protective order by the Court.  Subject to such protective order and all other applicable limitations, Mr. Leontiev will produce non-privileged responsive documents, if any exist, that (1) are in his possession, custody, and control, (2) are located in the United States, and (3) can be located after a reasonably diligent search and without undue burden.

The proposals below should not be deemed an admission that Mr. Leontiev has—or had at any point in time—in his possession, custody, or control any of the documents sought in the DIA's requests or that such documents exist.  To the extent Mr. Leontiev agrees to produce non-privileged responsive documents, if any, as set forth below, such production, if any, shall not suggest—and shall not be construed as suggesting—that Mr. Leontiev, or any person(s) or entit(y/ies) acting on Mr. Leontiev's behalf, had possession, custody, or control of such document(s), or had actual or constructive knowledge of the existence or the contents of such document(s), at any prior point in time.

**Timeframe for relevant documents:**

January 1, 2012 – August 7, 2015.

**Request No. 1:**

**Documents and communications sufficient to show the following for each of the Sham Companies:**

**(a) Direct or indirect ownership of or investments in the Sham Company;**

**(b) The officers and directors of the Sham Company;**

**(c) Transfers of funds into and out of the Sham Company, including but not limited to documents sufficient to show the date and amount of the transfers and the identity, bank and account number of the transferor(s) and transferee(s).**

<u>Proposal:</u>

As addressed in Mr. Leontiev's filings in support of his Motion to Quash, the DIA's filings are completely devoid of support for the relevance of 26 (out of 48) alleged "Sham Companies"[1] to the Probusinessbank bankruptcy proceeding. Indeed, the DIA has not alleged a single specific action undertaken by any of these 26 companies, which are not even mentioned in the exhibits filed by the DIA. The absence of any indicia of the relevance of these companies to the Probusinessbank bankruptcy proceeding is compounded by the undue burden arising out of having to search for documents relating to an additional 26 companies. Judge Netburn ordered the DIA and Mr. Leontiev to meet and confer to modify the scope of the DIA's subpoena in accordance with two considerations: "to reduce the burden on Leontiev and to narrow its focus to only those topics relevant to the Probusinessbank bankruptcy proceeding." *See* Order at 24 (Dkt. 28). Excluding these 26 companies from the scope of this request therefore adheres to the instructions in Judge Netburn's Order.

The remaining 22 alleged "Sham Companies" are referenced in the DIA's filings in connection with at least some concrete allegations of transactions purportedly relevant to the Probusinessbank bankruptcy proceeding:

---

[1] Avtoreal LLC, BaltAvtoTrade C LLC, Creditkin.ru LLC, Escada LLC, Evromag LLC, Finpremium LLC, Flaver LLC, GeotorgOil LLC, Golden Funds LLC, Iskra LLC, J R management LLC, Khrisaor LLC, Life Sreda LLC, Metall invest LLC, Multibrand LLC, North-Neft LLC, PB-Invest LLC, Rustorg-finance LLC, Signal LLC, SN Trading LLC, Teknologiyi and Oborudovanie LLC, Tsentr innovatsionnykh resheniy LLC, Vanilla LLC, Zernoprom LLC, Zolotoy express lombard region LLC, Zolotoy Express lombard south LLC.

1. Engineering Royalty LLC
2. Elso LLC
3. Personal + LLC
4. Alliance LLC
5. Easton LLC
6. PK Technologies LLC
7. Sanris LLC
8. IvSpetsGarant LLC
9. Probusiness Development LLC
10. Collection Agency Life LLC ("CA Life")
11. Tsentr Torgovli LLC
12. KnewHowTrade LLC
13. Financial Center Eskada LLC
14. Progma Trade LLC
15. Vostok-Cargo-Plus LLC
16. P and P LLC
17. Yarilo LLC
18. Business Partner LLC
19. Investitsionnaya kompaniya Realfinance LLC
20. Reformatsia LLC
21. Flaund LLC
22. Free Life LLC

(collectively, "First Request Companies" or "FRCs").

Subject to the general limitations described above and the specific limitations described below, Mr. Leontiev agrees to produce non-privileged responsive documents and communications, if any, concerning the FRCs that (i) are in Mr. Leontiev's possession, custody, or control, (ii) can be located after a reasonably diligent search and without undue burden, and (iii) are sufficient to show:

(1) information described in (a) and (b); and

(2) information described in (c), but only if:

- the counterparty (transferor or transferee) in such purported transfer(s), if any, is Probusinessbank ("PRBB"), another FRC, or Vermenda (Diachenko Decl. ¶¶ 23, 29), or

- the transfer, if any, relates to one of the following:

  - purported transfer(s) of funds allegedly loaned by PRBB to an FRC (along with subsequent transfers of funds, if any, identifiable as some or all of the same PRBB-loaned funds, to another FRC and/or Vermenda) (Diachenko Decl. ¶¶ 23, 29);

  - purported transfer(s) of funds:

    - loaned pursuant to the alleged Agreement No. 211-810/14u by Probusinessbank to IvSpetsGarant and purportedly ultimately transferred to Vermenda, including purported intermediate transfers (such as those alleged in Zhidchenko Decl. Ex. 18 [October 13, 2016 Decree on Prosecution] at 7-10), if any, for a total of up to or approximately 280 million rubles;

    - loaned pursuant to the alleged Agreement No. 044-810/15u by Probusinessbank to Engineering Royalty and purportedly ultimately transferred to Vermenda, including purported intermediate transfers (such as those alleged in Zhidchenko Decl. Ex. 18 at 10-11), if any, for a total of up to or approximately 600 million rubles;

    - loaned pursuant to the alleged Agreement No. 071-810/15u by Probusinessbank to Vostok-Cargo-Plus (its obligations as borrower were later assigned to Easton) and purportedly ultimately transferred to Vermenda, including purported intermediate transfers (such as those alleged in

Zhidchenko Decl. Ex. 18 at 11-13), if any, for a total of up to or approximately 365 million rubles;

- loaned pursuant to the alleged Agreement No. 071-810/15u by Probusinessbank to Tsentr Torgovli (its obligations as borrower were later assigned to PK Technologies) and purportedly ultimately transferred to Vermenda, including purported intermediate transfers (such as those alleged in Zhidchenko Decl. Ex. 18 at 13-16), if any, for a total of up to or approximately 698.2 million rubles;

- loaned pursuant to the alleged Agreement No. 137-810/15u by Probusinessbank to KnewHowTrade (its obligations as borrower were later assigned to Sanris) and purportedly ultimately transferred to Vermenda, including purported intermediate transfers (such as those alleged in Zhidchenko Decl. Ex. 18 at 16-18), if any, for a total of up to or approximately 500 million rubles,

(Diachenko Decl. ¶ 30);

- purported transfer(s) relating to promissory notes, allegedly issued by Free Life or Collection Agency Life to Probusinessbank's clients, that allegedly were guaranteed by Probusinessbank (*id*. ¶ 31, as limited by Krylova's witness statement, the sole apparent basis for this allegation, which names only these two FRCs—Free Life and CA Life—in the context of these allegations (*see* Zhidchenko Decl. Ex. 13 [Krylova Witness Statement] ¶¶ 74-76));

- purported transfer(s) of funds, for a total of up to or approximately 531 million rubles, in connection with (1) a loan (or loans) allegedly issued by Probusinessbank to Dengi and/or Probusiness-Development, and/or (2) Dengi's and/or Probusiness-Development's alleged assignment of its repayment obligations to Zolotaya Rybka and/or Holmeks (Diachenko Decl. ¶ 39(a));

- purported transfer(s) of funds, for a total of up to or approximately 193 million rubles, in connection with (1) a loan (or loans) allegedly issued by Probusinessbank to Alcologistika, and/or (2) Alcologistika's alleged assignment of its repayment obligations to PK Technologies, Dekant Rus, and/or Vient+ (Diachenko Decl. ¶ 39(b));

- purported transfer(s) of funds, for a total of up to or approximately 500 million rubles, in connection with alleged loans and/or financing provided by Probusinessbank to Yarilo (Zhidchenko Decl. Ex. 12 [Alekseev Witness Statement] ¶¶ 31.2 & 32));

- purported transfer(s) of:
  - (1) funds in connection with a loan (or loans) allegedly issued by Probusinessbank to KnewHowTrade, Tsentr Torgovli, and/or other companies identifiable as part of IMAC GROUP,
  - (2) the Probusinessbank-loaned funds, allegedly received by KnewHowTrade, Tsentr Torgovli, other companies identifiable as part of IMAC GROUP, and/or to Sanris, PK Technologies, Easton, Elso, and/or Personal+,

4

(*id*. ¶¶ 41-42; *see also id*. Ex. 13 ¶ 89);

- purported transfer(s) of funds in connection with loans allegedly provided by Probusinessbank's clients to Collection Agency Life that were guaranteed by Probusinessbank (Zhidchenko Decl. Ex. 12 ¶ 73, which names only CA Life in the context of these allegations);

- purported transfer(s) of funds in connection with CA Life's alleged issuance of subordinated debt to Probusinessbank (Zhidchenko Decl. Ex. 13 ¶ 82 );

- purported transfer(s), beginning in March 2015, in connection with an alleged multilateral agreement involving Probusinessbank, the Central Bank of Russia, Business Partner, and P and P, whereby Business Partner and P and P agreed to "return" securities to Probusinessbank (*id*. ¶¶ 102-03);

- purported transfer(s) of:
  - (1) funds in connection with (i) a loan (or loans) of securities allegedly issued by Sabadell Trading Ltd. and/or another company identifiable as part of VELES Capital group to Elso and/or CA Life, or (ii) alleged agreements between Probusinessbank and Sabadell Trading Ltd. and/or another company identifiable as part of VELES Capital group;
  - (2) funds as a fee (or fees) allegedly paid by Probusinessbank to Elso and/or CA Life for any alleged sale(s) by Elso and/or CA Life of securities borrowed from Sabadell Trading Ltd. and/or another company identifiable as part of VELES Capital group;
  - (3) the same alleged fee(s) by Elso and/or CA Life to another FRC;
  - (4) the same alleged fee(s) (or any portion thereof) by the receiving FRC(s) to Probusinessbank;
  - (5) funds by Elso and/or CA Life to Probusinessbank allegedly to repurchase the securities allegedly previously sold to Probusinessbank;
  - (6) funds in connection with Elso's and/or CA Life's alleged return of securities to Sabadell Trading Ltd. and/or another company identifiable as part of VELES Capital group,

(Zhidchenko Decl. Ex. 14 [Add. Krylova Witness Statement] ¶¶ 7-8 & 15-16).

**Request No. 2:**

**Documents and communications sufficient to show the following for each of the Leontiev Companies:**

(a) **Direct or indirect ownership of or investments in the Leontiev Company;**

(b) **The officers and directors of the Leontiev Company;**

5

**(c) Transfers of funds into and out of the Leontiev Company, including but not limited to documents sufficient to show the date and amount of the transfers and the identity, bank and account number of the transferor(s) and transferee(s).**

**Proposal:**

As addressed in Mr. Leontiev's filings in support of his Motion to Quash, the DIA's filings are completely devoid of support for the relevance of 18 (out of 22) alleged "Leontiev Companies"[2] to the Probusinessbank bankruptcy proceeding. Indeed, the DIA has not alleged a single specific action undertaken by any of these 18 companies, most of which are not even mentioned in the exhibits filed by the DIA. The absence of any indicia of the relevance of these companies to the Probusinessbank bankruptcy proceeding is compounded by the undue burden arising out of having to search for documents relating to an additional 18 companies. Judge Netburn ordered the DIA and Mr. Leontiev to meet and confer to modify the scope of the DIA's subpoena in accordance with two considerations: "to reduce the burden on Leontiev and to narrow its focus to only those topics relevant to the Probusinessbank bankruptcy proceeding." *See* Order at 24 (Dkt. 28). Excluding these 18 companies from the scope of this request therefore adheres to the instructions in Judge Netburn's Order.

The remaining 4 alleged "Leontiev Companies" are referenced in the DIA's filings in connection with at least some concrete allegations of transactions purportedly relevant to the Probusinessbank bankruptcy proceeding: Vermenda Holdings Limited, Ambika Investments Limited, Merrianol Investments Limited, and CJSC Financial Group Life ("FG Life") (collectively, "Second Request Companies" or "SRCs").

Subject to the general limitations described above and the specific limitations described below, Mr. Leontiev agrees to produce non-privileged responsive documents and communications, if any, concerning the SRCs that (i) are in Mr. Leontiev's possession, custody, or control, (ii) can be located after a reasonably diligent search and without undue burden, and (iii) are sufficient to show:

(1) information described in (a) and (b); and

(2) information described in (c), but only if:

- the counterparty (transferor or transferee) in such purported transfer(s), if any, is Probusinessbank or another SRC, or

- the transfer, if any, relates to one of the following:

    - purported transfer(s) of U.S. dollars to Vermenda's Latvian bank account, if any, from an FRC, or from Leontiev's or Zheleznyak's bank account(s) at Probusinessbank (Diachenko Decl. ¶ 23);

---

[2] Atlas – Investment Solutions, Digitime Alliance Ltd., Fairbourne Logistics LP, Finbay Group Ltd., Greenbox Trading Limited, Greenex Trading Limited, Higold Investments Limited, Kollado Inc., Lancora Investments Limited, Larienta Management Limited, Lunare Trading Limited, Morselo Investment Limited, Probusiness Management Limited, Solariom Limited, Trustway Investments Ltd., Valkera Investments Ltd., Vennop Trading Limited, Vesvora Trading Limited.

- purported transfer(s) related to promissory notes, allegedly issued by FG Life to Probusinessbank's clients, that allegedly were guaranteed by Probusinessbank (*id.* ¶ 31, limited by Krylova's witness statement, the sole apparent basis for this allegation, which names only this one SRC—FG Life—in the context of these allegations (*see* Zhidchenko Decl. Ex. 13 [Krylova Witness Statement] ¶ 81));

- purported transfer(s) of funds to Vermenda from any bank account(s) allegedly belonging to Probusinessbank at Baltikums Bank AS, JSC Latvijas Pasta Bank, and/or Dinosaur Merchant Bank Limited, in exchange for bonds allegedly issued by Vermenda (Diachenko Decl. ¶ 37);

- in connection with Probusinessbank's acquisition of PK Life shares, purported transfer(s) of funds by PRBB to AstraPlus, Vega, Vest, and/or PK Life, and any subsequent purported transfers of such funds by AstraPlus, Vega, Vest, and/or PK Life to Vermenda (Diachenko Decl. ¶ 38);

- in connection with letters of credit allegedly issued by Probusinessbank to Cargill (USA) and/or Xangbo (Singapore), (i) purported transfer(s) of funds from Cargill (USA) and/or Xangbo (Singapore) to Vermenda's bank account at Trasta KommercBanka (Latvia), if any, and/or (ii) purported transfer(s) of funds allegedly as a fee (or fees) by Vermenda to Cargill (USA) and/or Xangbo (Singapore) in connection with these alleged letters of credit (Zhidchenko Decl. Ex. 12 [Alekseev Witness Statement] ¶¶ 31.3 & 33-37);

- purported transfer(s) of funds in connection with Vermenda's alleged issuance of subordinated loans to Probusinessbank (Zhidchenko Decl. Ex. 13 [Krylova Witness Statement] ¶ 82 );

- purported transfer(s) of funds as a fee (or fees) allegedly paid by Vermenda to Sabadell Trading Ltd. and/or another company identifiable as part of VELES Capital group in connection with the alleged process of borrowing securities from VELES Capital group companies (Zhidchenko Decl. Ex. 14 [Add. Krylova Witness Statement] ¶¶ 15-16);

- purported transfer(s) of funds to or from Ambika to the extent such transfer(s), if any, relate to any repurchase agreement(s) and/or securities lending agreement(s), allegedly entered into by Ambika and Otkritie Securities Limited and allegedly secured with collateral provided by Probusinessbank (Zhidchenko Decl. Ex. 19 [July 10, 2017 Decree on Prosecution] at 3-5; *see also* Zhidchenko Decl. ¶ 13);

- purported transfer(s) of funds to or from Merrianol to the extent such transfer(s), if any, relate to any repurchase agreements and/or securities lending agreement(s), allegedly entered into by Merrianol and BrokerCreditService (Cyprus) Limited and allegedly secured with collateral provided by Probusinessbank (Zhidchenko Decl. Ex. 19 [July 10, 2017 Decree on Prosecution] at 5-7; *see also* Zhidchenko Decl. ¶ 14).

**Request No. 3:**

**Documents and communications concerning the Loans[3] including but not limited to contracts, agreements, transfers of funds and any communications concerning the same with Zheleznyak.**

**Proposal:**

Mr. Leontiev agrees to produce non-privileged responsive documents and communications, if any, that (i) are in Mr. Leontiev's possession, custody, or control, and (ii) can be located after a reasonably diligent search and without undue burden.

**Request No. 4:**

**Documents and communications concerning the Transfers[4] including but not limited to contracts, agreements, transfers of funds and any communications concerning the same with Zheleznyak.**

**Proposal:**

Mr. Leontiev agrees to produce non-privileged responsive documents and communications, if any, that (i) are in Mr. Leontiev's possession, custody, or control, and (ii) can be located after a reasonably diligent search and without undue burden.

---

[3] Diachenko Decl. ¶ 30: "Loans" include: Agreement No. 211-810/14u (Sep. 15, 2014) with IvSpetsGarant for a loan up to RUB 500 million; Agreement No. 044-810/15u (Apr. 9, 2015) with Engineering Royalty for a loan up to RUB 1 billion; Agreement No. 071-810/15u (May 15, 2015) with Vostok-Cargo-Plus for a loan up to RUB 500 million; Agreement No. 099-810/5u (June 22, 2015) with Tsentr Torgovli for a loan up to RUB 1 billion; Agreement No. 137-810/15u (June 28, 2015) with KnewHowTrade for a loan up to RUB 1 billion.

[4] *Id*.: "The transactions concerning the Loans are referred to collectively as the 'Transfers.'"

**Request No. 5:**

**Documents and communications concerning the Indirect Loans[5] including but not limited to contracts, agreements, transfers of funds and any communications concerning the same with Zheleznyak.**

**Proposal:**

Mr. Leontiev agrees to produce non-privileged responsive documents and communications, if any, concerning any alleged "Indirect Loans" purportedly granted by PRBB through Falcon Private Bank (Switzerland), that (i) are in Mr. Leontiev's possession, custody, or control, and (ii) can be located after a reasonably diligent search and without undue burden.

**Request No. 6:**

**Documents and communications concerning the Additional Transactions including but not limited to contracts, agreements, transfers of funds and any communications concerning the same with Zheleznyak.**

**Proposal:**

Mr. Leontiev agrees to produce non-privileged documents and communications, if any, that (i) are in Mr. Leontiev's possession, custody, or control, (ii) can be located after a reasonably diligent search and without undue burden, and (iii) concern the following "Additional Transactions":

(1) Probusinessbank's purported share repurchase, allegedly taking place between April 2014 and June 2014, including any purported involvement in this transaction by Alivikt Holdings Limited, East Capital Financials Fund AB, Haggard Financial Limited, Rekha Holdings Limited, Burmash Holdings Limited, and/or BlueCrest Emerging Markets Funds Limited (Diachenko Decl. ¶ 15);

(2) Purported transfer(s) of funds, allegedly for a total of up to or approximately 531 million rubles, in connection with (i) a purported loan (or loans) allegedly issued by Probusinessbank to Dengi and/or Probusiness-Development, and/or (ii) Dengi's and/or Probusiness-Development's alleged assignment of its repayment obligations to Zolotaya Rybka and/or Holmeks (Diachenko Decl. ¶ 39(a)); and

(3) Purported transfer(s) of funds, allegedly for a total of up to or approximately 193 million rubles, in connection with (i) a loan (or loans) allegedly issued by Probusinessbank to Alcologistika, and/or (ii) Alcologistika's alleged assignment of its repayment obligations to PK Technologies, Dekant Rus, and/or Vient+ (Diachenko Decl. ¶ 39(b)).

---

5    Diachenko Decl. ¶ 33: "loans were granted [by PRBB] to ostensibly creditworthy borrowers, usually other banks, one of which may have been Falcon Private Bank (Switzerland) ("Bogus Borrowers") . . . . The Bogus Borrowers then forwarded the loan proceeds to the true borrowers – companies owned and/or controlled by Leontiev and Zheleznyak. The Bogus Borrowers received illicit payments for their involvement or received cross financing by [PRBB] for their projects."

**Request No. 7:**

**Documents and communications sufficient to show the participation of each of the Conspirators and Zheleznyak in any of the conduct described in the Diachenko Declaration.**

**Proposal:**

To the extent this request seeks documents and communications concerning the matters that Mr. Leontiev has agreed to produce in response to requests 1-6 and 13-18, it is duplicative. To the extent it seeks any other documents, this request is overbroad and improper (especially in seeking documents concerning "the conduct described in the Diachenko Declaration," which contains substantial inaccuracies and exaggerations, as Judge Netburn found) and seeks documents that are irrelevant to the Probusinessbank bankruptcy proceeding. Judge Netburn ordered the DIA and Mr. Leontiev to meet and confer to modify the scope of the DIA's subpoena in accordance with two considerations: "to reduce the burden on Leontiev and to narrow its focus to only those topics relevant to the Probusinessbank bankruptcy proceeding." *See* Order at 24 (Dkt. 28). For these reasons and the reasons set forth in Mr. Leontiev's filings in support of his Motion to Quash, Mr. Leontiev will not produce documents in response to this request.

**Request No. 8:**

**Documents and communications sufficient to show the following for Wonderworks:**

  **(a) Direct or indirect ownership of or investments in Wonderworks;**

  **(b) The officers and directors of the Wonderworks; and**

  **(c) Transfers of funds into and out of the Wonderworks, including but not limited to documents sufficient to show the date and amount of the transfers and the identity, bank and account number of the transferor(s) and transferee(s).**

**Proposal:**

The DIA has provided no justification for its suggestion that Wonderworks is at all relevant to the Probusinessbank bankruptcy proceeding. Judge Netburn ordered the DIA and Mr. Leontiev to meet and confer to modify the scope of the DIA's subpoena in accordance with two considerations: "to reduce the burden on Leontiev and to narrow its focus to only those topics relevant to the Probusinessbank bankruptcy proceeding." *See* Order at 24 (Dkt. 28). For these reasons and the reasons set forth in Mr. Leontiev's filings in support of his Motion to Quash, Mr. Leontiev will not produce documents in response to this request.

**Request Nos. 9-11:**

**Documents and communications sufficient to show the following for Legion Trust / Southpac / Holdco:**

  **(a) Direct or indirect ownership of or investments in Legion Trust / Southpac / Holdco;**

  **(b) The officers and directors of the Legion Trust / Southpac / Holdco; and**

(c) **Transfers of funds into and out of the Legion Trust / Southpac / Holdco, including but not limited to documents sufficient to show the date and amount of the transfers and the identity, bank and account number of the transferor(s) and transferee(s).**

**Proposal:**

The DIA (1) assumes these entities' relevance based solely on "information and belief," (2) provided no evidence suggesting that any of these entities received funds that originally came from Probusinessbank, and (3) submitted witness statements and other materials from the Russian criminal proceedings that do not even mention any of these entities. Judge Netburn ordered the DIA and Mr. Leontiev to meet and confer to modify the scope of the DIA's subpoena in accordance with two considerations: "to reduce the burden on Leontiev and to narrow its focus to only those topics relevant to the Probusinessbank bankruptcy proceeding." *See* Order at 24 (Dkt. 28). For these reasons and the reasons set forth in Mr. Leontiev's filings in support of his Motion to Quash, Mr. Leontiev will not produce documents in response to these requests.

**Request No. 12:**

**All documents and communications concerning any of Kolotnikov's, Nella Leontiev's and/or Leonid Leontiev's dealings with and communications concerning Southpac, Holdco, Wonderworks and the Trust.**

**Proposal:**

Judge Netburn ordered the DIA and Mr. Leontiev to meet and confer to modify the scope of the DIA's subpoena in accordance with two considerations: "to reduce the burden on Leontiev and to narrow its focus to only those topics relevant to the Probusinessbank bankruptcy proceeding." *See* Order at 24 (Dkt. 28). For the reasons set forth in response to requests 8-11, Mr. Leontiev will not produce documents in response to this request.

**Request No. 13:**

**All documents and communications concerning the Bogus Borrowers' participation in the conduct described in paragraph 33 of the Daria Diachenko Declaration.**

**Proposal:**

Mr. Leontiev agrees to produce non-privileged responsive documents and communications, if any, concerning the alleged participation by Falcon Private Bank (Switzerland) in the purported issuance of loans by PRBB through Falcon Private Bank (Switzerland), that (i) are in Mr. Leontiev's possession, custody, or control, and (ii) can be located after a reasonably diligent search and without undue burden.

**Request No. 14:**

**Documents and communications sufficient to show the following for NU:**

    **(a) Direct or indirect ownership of or investments in NU;**

    **(b) The officers and directors of NU; and**

    **(c) Transfers of funds into and out of NU, including but not limited to documents sufficient to show the date and amount of the transfers and the identity, bank and account number of the transferor(s) and transferee(s).**

**Proposal:**

Mr. Leontiev agrees to produce non-privileged documents and communications, if any, that (i) are in Mr. Leontiev's possession, custody, or control, (ii) can be located after a reasonably diligent search and without undue burden, and (iii) are responsive to:

    (1) parts (a) and (b) of this request;

    (2) part (c) of this request, but only if the purported transfer(s) took place in 2015 and: (i) related to loan(s) allegedly issued by Probusinessbank to NU; (ii) related to an alleged 2015 real estate agency agreement; and/or (iii) involved funds that allegedly were subsequently transferred to Resheniya.

**Request No. 15:**

**All documents and communications concerning the NU Project.**

**Proposal:**

Mr. Leontiev agrees to produce non-privileged documents and communications responsive to this request, if any, that (i) are in Mr. Leontiev's possession, custody, or control, and (ii) can be located after a reasonably diligent search and without undue burden.

**Request No. 16:**

**Documents and communications sufficient to show the following for Resheniya:**

    **(a) Direct or indirect ownership of or investments in Resheniya;**

    **(b) The officers and directors of Resheniya;**

    **(c) Transfers of funds into and out of Resheniya, including but not limited to documents sufficient to show the date and amount of the transfers and the identity, bank and account number of the transferor(s) and transferee(s).**

**Proposal:**

Mr. Leontiev agrees to produce non-privileged documents and communications, if any, that (i) are in Mr. Leontiev's possession, custody, or control, (ii) can be located after a reasonably diligent search and without undue burden, and (iii) are responsive to:

    (1) parts (a) and (b) of this request;

    (2) part (c) of this request, but only if the purported transfer(s) took place in 2015 and involved some or all of the funds allegedly received by Resheniya from NU.

**Request No. 17:**

**Documents and communications sufficient to show the following for PK Life:**

    **(a) Direct or indirect ownership of or investments in PK Life;**

    **(b) The officers and directors of PK Life;**

    **(c) Transfers of funds into and out of PK Life, including but not limited to documents sufficient to show the date and amount of the transfers and the identity, bank and account number of the transferor(s) and transferee(s).**

**Proposal:**

Mr. Leontiev agrees to produce non-privileged documents and communications, if any, that (i) are in Mr. Leontiev's possession, custody, or control, (ii) can be located after a reasonably diligent search and without undue burden, and (iii) are responsive to:

    (1) parts (a) and (b) of this request;

    (2) part (c) of this request, but only if: the purported transfer(s) related to the acquisition and/or creation of PK Life, and/or the counterparty (transferor or transferee) in such purported transfer, if any, is Probusinessbank, AstraPlus, Vega, Vest, or Vermenda.

**Request No. 18:**

**Documents and communications concerning any contracts or agreements relating to the transfers described in requests 1(c), 2(c), 8(c), 9(c), 10(c), 11(c), 14(c), 16(c), and 17(c).**

**Proposal:**

Mr. Leontiev agrees to produce non-privileged documents and communications responsive to this request, if any, to the extent they relate to the transfers described in our responses to requests 1(c), 2(c), 14(c), 16(c), and 17(c), that (i) are in Mr. Leontiev's possession, custody, or control, and (ii) can be located after a reasonably diligent search and without undue burden.

**Request No. 19:**

**Documents produced in the following cases concerning the subject matter of requests 1-18 above:**

    **(a) *Sergei Leontiev v. Alexander Varshavsky*; and**

    **(b) *Avilon Automotive Group v. Sergey Leontiev, et al.***

**Proposal:**

To the extent this request seeks non-privileged documents and communications, if any, that are responsive, subject to the limitations proposed above for requests 1-18, and that ***are not*** subject to the protective order entered by Judge Rakoff in *Leontiev v. Varshavsky*, No. 16 Civ. 3595 (JSR) (S.D.N.Y.), this request is wholly duplicative of other requests, and Mr. Leontiev will produce no such documents in response.

To the extent this request seeks non-privileged documents and communications, if any, that are responsive, subject to the limitations proposed above for requests 1-18, and that *are* subject to the protective order entered by Judge Rakoff in *Leontiev v. Varshavsky*, this request seeks the production of documents as to which Mr. Leontiev owes a duty of nondisclosure and, thus, is unduly burdensome and improper. Such documents, if any, came into Mr. Leontiev's possession through production in—and remain subject to a protective order in—another action.

Therefore, Mr. Leontiev will not produce documents in response to this request, which asks Mr. Leontiev to undertake actions in violation of the protective order entered by Judge Rakoff or, alternatively, is wholly duplicative of the DIA's other requests.