# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Marshall R. King
Direct: +1 212.351.3905
Fax: +1 212.351.5243
MKing@gibsondunn.com

Client: 56885-00001

November 2, 2018

<u>VIA ECF</u>

Hon. Sarah Netburn
United States Magistrate Judge
Southern District of New York
40 Foley Square
New York, NY 10007

Re: *In re Application of the Deposit Insurance Agency*, No. 17-mc-414 (GBD) (SN)

Dear Judge Netburn:

As directed by Your Honor's Order, dated October 24, 2018, I write on behalf of Respondent Sergey Leontiev to set forth Mr. Leontiev's position regarding the appropriate scope of the subpoena in this action under 28 U.S.C. § 1782, as well as whether a protective order is necessary.

## Background

As Your Honor will recall, Petitioner Deposit Insurance Agency ("DIA"), an agency of the Russian government, commenced this § 1782 action seeking discovery from Mr. Leontiev, purportedly in aid of the Russian bankruptcy action involving Probusinessbank, a Russian commercial bank founded by Mr. Leontiev and others. Mr. Leontiev moved to quash the subpoena, arguing that the DIA's request was a sham and part of a concerted effort by the Russian government, including its criminal authorities, to persecute Mr. Leontiev and wrongfully expropriate his assets.

In an Opinion and Order, dated July 23, 2018, Your Honor held that the DIA had met the requirements of § 1782, but stated:

> The Court, however, is not blind to Leontiev's claims that the discovery sought here is intended for other proceedings or impermissible purposes. Leontiev has marshalled substantial evidence to support this view, which is rebutted by the DIA largely with inconsistent statements or hearsay declarations. Moreover, the Court's concern about the legitimacy of these requests is heightened by the involvement of two sanctioned individuals. Accordingly, the parties are ORDERED to meet and confer to modify the scope of the subpoena to reduce the burden on Leontiev and to narrow its

# GIBSON DUNN

Hon. Sarah Netburn
November 2, 2018
Page 2

focus to only those topics relevant to the Probusinessbank bankruptcy proceeding, including discovery related to any alleged "Conspirators." Such discussion should include whether a protective order is necessary.

Your Honor directed the parties to report back to the Court on the status of negotiations by September 28, 2018.

On August 14, 2018, we sent a detailed, carefully-thought-out proposal to counsel for the DIA concerning the appropriate scope of the subpoena (the "Scope Proposal"). The Scope Proposal was expressly conditioned on the entry of an acceptable protective order. We followed up with a proposed protective order on August 27, 2018.

Despite our multiple attempts to follow up with counsel for the DIA, the DIA failed to respond to either of our proposals until September 24, 2018 – more than a month after we first sent our Scope Proposal and just days before the parties were due to report to the Court. The DIA took no issue with our Scope Proposal or our position that any production must be subject to an appropriate protective order. The parties have subsequently exchanged numerous drafts of a proposed protective order and had several discussions concerning its terms. As yet, the parties have been unable to agree on the terms for a protective order.

Attached hereto as Exhibit A is the Scope Proposal initially proposed by Mr. Leontiev. Subject to the entry of an appropriate protective order, the parties do not appear to dispute that this reflects the agreed-upon, narrowed scope of the subpoena.

Attached hereto as Exhibit B is the latest draft of the protective order proposed by Mr. Leontiev on November 1, 2018, and Exhibit C is a redline comparing Mr. Leontiev's draft to the previous draft proposed by counsel for the DIA. This morning, counsel for the DIA advised that it agreed with all of the changes reflected in the redline, other than (1) the changes to paragraph 6 that are on page 5 of the redline, and (2) the changes to paragraph 7 that begin on the last line of page 5 of the redline and continue in paragraph 7 at the top of page 6 of the redline.

## Mr. Leontiev's Position Regarding the Protective Order

With respect to each of the provisions that are not yet agreed, Mr. Leontiev's position is as follows:

**GIBSON DUNN**

Hon. Sarah Netburn
November 2, 2018
Page 3

- Paragraph 6:

  - In the DIA's prior draft of the protective order, it added the sentence "DIA shall not be responsible for disclosure made by creditors or any other parties to the Russian Bankruptcy Proceeding." We propose deleting that language. We do not mean to suggest that the DIA *will* be responsible for disclosures made by creditors who are not under the control of the DIA, but the DIA is not entitled to a prospective exemption from responsibility if future events demonstrate, for instance, that the DIA conspired with creditors to violate the protective order. Leaving the protective order silent on this issue is appropriate.

  - Our proposed addition to clause (iii) is intended to ensure that Andrei Pavlov – the mastermind of the DIA's efforts to harass Mr. Leontiev, and the subject of U.S. sanctions for his role in the Magnitsky Affair – maintains no relationship at all to any person receiving Confidential or Highly Confidential information. As Your Honor may recall, the DIA was evasive about whether Pavlov continued to have a role with the DIA's counsel in the Russian Bankruptcy Action; despite the DIA's denials, Your Honor found that "the weight of the evidence" was that "Pavlov continues to be a member of Quorum, if not its chairman, and thus continues to receive pecuniary benefit from its business operations." Our proposed language is meant to ensure that the DIA does not continue to play fast-and-loose with Pavlov's involvement.

    In fact, in meeting-and-conferring with the DIA's counsel regarding this provision, ***the DIA's counsel advised us that we should "assume" that Pavlov has "reaffiliated" with Quorum, the law firm representing the DIA in the Russian Bankruptcy Action***. In other words, the DIA essentially admits that Pavlov's purported "resignation" from Quorum – which was engineered less than one week before the DIA filed its opposition to Mr. Leontiev's motion to quash – was done solely for the purpose of attempting to conceal his ongoing involvement from this Court, and now that Your Honor has denied the motion to quash and permitted some discovery to proceed, the DIA, Quorum, and Pavlov have returned to the *status quo ante*. We respectfully suggest that the DIA's continued effort to mislead Your Honor concerning Pavlov's connection to these matters should cause the Court to reconsider its decision to deny Mr. Leontiev's motion to quash. At the very least, this gamesmanship further demonstrates the need for the provision included in our version of Paragraph 6.

- Paragraph 7: Our proposed revision is intended to ensure that, for Highly Confidential information (that is, information that is "so sensitive to Leontiev that the filing of such

GIBSON DUNN

Hon. Sarah Netburn
November 2, 2018
Page 4

material in the Russian Bankruptcy Action…will cause irreparable harm to Leontiev and that such harm outweighs the probative value of the material to the Russian Bankruptcy Action"), Mr. Leontiev has an opportunity to object to specific non-U.S. counsel receiving access to such information, which objection could be heard by this Court. The final clause (b) is, again, intended to preclude the DIA and Andrei Pavlov from circumventing the restrictions of the protective order.

## Conclusion

For the foregoing reasons, we respectfully request that the Court enter the proposed protective order attached as Exhibit B, and direct the parties to proceed with discovery pursuant to the Scope Proposal attached as Exhibit A.

Before closing, we wish to alert Your Honor to one other issue that, while not yet ripe, may become an issue in the future. As Your Honor knows, on October 11, 2018, Mr. Leontiev moved for leave to file a complaint seeking a declaratory judgment against the DIA. The parties are in the process of briefing that motion (with the DIA's opposition due on November 15, 2018 and Mr. Leontiev's reply due on December 3, 2018). If Your Honor permits the filing of that complaint, and the parties embark on discovery in connection with the requested declaratory judgment, we expect that the DIA will wish to take the deposition of Mr. Leontiev. Because that deposition is likely to overlap with the deposition that the DIA seeks in its application under § 1782, we believe that there should be only one deposition of Mr. Leontiev. Mr. Leontiev's deposition for § 1782 purposes is not yet scheduled and will not take place until after completion of the document production that is the subject of the present protective order dispute, and therefore the question of consolidating the depositions is not yet ripe for decision. Nevertheless, we wanted to alert Your Honor and the DIA to this issue so that there would be no surprises going forward.

We are available for a telephonic or in-person conference at Your Honor's convenience if Your Honor believes that would be helpful to resolve the issues in dispute.

Respectfully submitted,

*/s/ Marshall R. King*

Marshall R. King

Attachments

cc: All Counsel (via ECF)