# MorrisonCohen LLP

Mary E. Flynn
Partner
(212) 735-8631
mflynn@morrisoncohen.com

November 2, 2018

**VIA ECF**
Honorable Sarah Netburn
United States Magistrate Judge
United States Courthouse - Thurgood Marshall
40 Foley Square
New York, New York 10007

Re: In re Application of Deposit Insurance Agency
Docket No. 1:17-mc-00414-GBD-SN

Dear Judge Netburn:

We are counsel to the Petitioner, Deposit Insurance Agency ("DIA"). We write pursuant to Your Honor's order dated October 24, 2018 (DE # 40) directing the parties to submit letters to the Court setting forth our positions with respect to the subpoena issued by DIA to Respondent Sergey Leontiev ("Leontiev") in the event the parties have been unable to reach an agreement on same by today. As detailed below, the parties have, with a reservation of rights, agreed on a significant narrowing of the subpoena. The parties have also agreed on most of the terms of a proposed Protective Order. Two issues remain in dispute.[1] The primary issue upon which the parties have failed to reach agreement concerns two provisions Leontiev seeks to include in a Protective Order which would serve to restrict DIA's right to the counsel of its choice. As set forth below, Leontiev's insistence on these provisions is meritless. The provisions that Leontiev seeks to include are not only overreaching, they violate the New York Rules of Professional Conduct.

As Your Honor is aware, one year ago, on November 1, 2017, U.S. District Judge George B. Daniels granted DIA's application for discovery from Leontiev pursuant to 28 U.S.C. § 1782. (DE # 6). DIA served its subpoena (the "Subpoena") on Leontiev on November 17, 2017. (DE # 7). Leontiev filed a motion to quash the subpoena on January 16, 2018. (DE # 8). The motion was briefed, and Your Honor issued an order on July 23, 2018 (the "7/23 Order")

---

[1] The secondary issue in dispute is Leontiev's striking the provision in paragraph 6 that "DIA shall not be responsible for disclosure made by creditors or any other parties to the Russian Bankruptcy Proceeding." The basis for Leontiev's disagreement with this is unclear. There is no basis for holding DIA responsible for disclosure by a creditor in the Russian Bankruptcy Proceeding of any documents DIA was permitted to file by this Court. If a party to the Russian Bankruptcy Proceeding obtains documents filed in that proceeding by DIA in accordance with the numerous protections in the Protective Order, DIA cannot be responsible for a disclosure made by such third party. With this in mind, Leontiev has the ability under the Protective Order to move to preclude DIA from filing documents he designates as Highly Confidential. Leontiev is thoroughly protected because DIA is precluded from filing such documents that are subject to such motion until this Court approves the filing. This Court will therefore have the ability to determine whether the risk of a third party disclosing the documents once filed warrants an order precluding DIA from filing them.

denying Leontiev's motion to quash and directing the parties to "meet and confer to modify the scope of the subpoena to reduce the burden on Leontiev and to narrow its focus to only those topics relevant to the ProbusinessBank bankruptcy proceeding, including discovery related to any alleged 'Conspirators.' Such discussion should include whether a protective order is necessary." (DE # 28 at p. 24).

The parties proceeded to meet and confer as directed by the Court. On August 14, 2018, Leontiev proposed a significant narrowing of the subpoena subject to a later agreement on the terms of a protective order. A copy of Leontiev's proposed narrowing of the subpoena is attached hereto as Exhibit A. For example, Leontiev refuses to produce communications with the "conspirators" unless they happen to be included in documents that he agreed to produce in response to the other, limited requests. (Ex. A at p. 10).

In September 2018, DIA agreed to the terms that Leontiev proposed to narrow the subpoena, subject to DIA's reservation of rights to seek additional documents covered by the original subpoena in the future. This agreement was reported to the court by DIA on September 28, 2018. (DE # 29). The parties then continued to meet and confer concerning a protective order. Leontiev proposed the terms of a protective order for the first time on August 27, 2018. Many conferences between counsel were held, and six drafts of a potential protective order were exchanged between the parties. Attached as Exhibit B is the last such draft which was provided by counsel for Leontiev to counsel for DIA yesterday, November 1, 2018 (the "Leontiev Protective Order Proposal").

As I reported to counsel for Leontiev, DIA agrees with the changes in the Leontiev Protective Order Proposal with three exceptions. The first is set forth in footnote one hereto, and should not be controversial. The two controversial changes proposed by Leontiev with which DIA will not agree are in Sections 6 and 7 on pages 5 and 6 of the redline attached as Exhibit B. The sections of Leontiev's redline are reproduced below, with the changes in dispute highlighted in yellow:

> 6. Disclosure of any Discovery Material designated as Confidential or Highly Confidential, including deposition transcripts and exhibits, will be limited to the following persons, provided that each such person, except for those persons referred to in subparagraphs 6(a), (b), and 6(f), has first executed a Non-Disclosure Agreement in the form annexed as an Exhibit hereto:
>
> (a) managers or employees of the DIA or Probusinessbank specifically assigned to work on ~~matters relating to~~ the Russian Bankruptcy Action (i.e., not only attorneys);

(b) U.S. based counsel retained specifically for this proceeding, including any paralegal, clerical and other assistant employed by such counsel and assigned to this matter;

(c) non-U.S. based counsel for the DIA working on the Russian Bankruptcy Action, including any paralegal, clerical and other assistant employed by such counsel;

(d) any person retained by a party to serve as a translator or expert witness in connection with this action, and his or her employees or assistants;

(e) stenographers engaged to transcribe depositions conducted in this action;

(f) the Court and its support personnel;

(g) as to any document, its author, or its addressee, and any other person indicated on the face of the document as having received a copy; and

(h) such other person as may be specifically agreed in writing by the parties.

Notwithstanding the foregoing, no disclosure of Confidential or Highly Confidential Discovery Material shall be made (i) to any person referred to in subparagraphs 6(c), (d), (e), (g) or (h) unless such person has first executed a Non-Disclosure Agreement in the form annexed as an Exhibit hereto; (ii) to any person referred to in subparagraphs 6(a), (b), or (c) unless such person shall have been informed that such Discovery Material is subject to this Protective Order and may not be further disclosed except in accordance with this Protective Order (and the DIA shall be responsible for any violation of this Protective Order by its or Probusinessbank's managers, employees, representatives, counsel and its staff. ~~DIA shall not be responsible for disclosure made by creditors or any other parties to the Russian Bankruptcy Proceeding~~); or (iii) to Andrei Pavlov, **or any person or entity with which he is affiliated in any way (whether as employee, agent, partner, officer, director, owner, independent contractor, representative or otherwise)**. Should any Confidential or Highly Confidential Discovery Material be filed with this Court, it shall be submitted under seal.

7. Notwithstanding anything to the contrary herein contained, disclosure of any Discovery Material designated as Highly Confidential prior to such Highly Confidential material being filed in the Russian Bankruptcy Court in accordance with Paragraph 3 hereof, will be limited to U.S. -based counsel retained specifically for this proceeding, including any paralegal, clerical and other assistant employed by such counsel and assigned to this matter. Such U.S. counsel may provide a copy of such Highly Confidential material to such non-U.S. based attorney(s) engaged by DIA or Probusinessbank for ~~this purpose~~the Russian Bankruptcy Action, provided that (a) he or she has executed the Non-Disclosure Agreement in the form annexed as an Exhibit hereto and U.S.-based counsel for DIA has provided a copy of such executed Non-Disclosure Agreement to counsel for Leontiev~~, and (b) Andrei Pavlov shall not be provided with any Highly Confidential or Confidential Material~~ ==five (5) business days in advance of providing a copy of such Highly Confidential material to the signatory of the Non-Disclosure Agreement, and if Leontiev raises an objection to such person receiving Highly Confidential material it shall not be provided until this Court has resolved such objection, and (b) Andrei Pavlov is not affiliated with such non-U.S. based counsel in any way (whether as employee, agent, partner, officer, director, owner, independent contractor, representative or otherwise)==.

The effect of the two highlighted sections above is to restrict DIA's ability to choose counsel. Specifically, Leontiev asks this Court to preclude DIA from having Quorum, the law firm representing DIA in the Russian Bankruptcy Proceeding, from having access to documents produced by Leontiev for use in the Russian Bankruptcy Proceeding if attorney Andrey Pavlov is associated with Quorum. The Court may recall that Andrey Pavlov was added to the U.S. sanctions list earlier this year and was featured prominently in Leontiev's motion to quash the Subpoena. As I advised Leontiev's counsel, it is my understanding that after legal review of the situation, Andrey Pavlov – who had left Quorum earlier this year and opened up a private practice after being added to the sanctions list – rejoined Quorum recently, albeit in a lesser capacity. He has not and will not be involved in this proceeding.

The last draft of the Protective Order that DIA proposed to Leontiev provides that Pavlov would not have any access to the documents produced by Leontiev. DIA also agreed in that draft that the non-U.S. attorneys representing DIA in the Russian Bankruptcy Proceeding who would have access to Confidential and Highly Confidential documents produced by Leontiev would sign the Non-Disclosure Agreement attached to the Protective Order. Thus, they would confirm their agreement to its terms (including that Pavlov is not to have access), and DIA would provide these agreements to Leontiev immediately. Thus, the lawyers representing DIA in the foreign bankruptcy that had access to the documents produced by Leontiev for use in the foreign bankruptcy would identify themselves and agree not to give

Pavlov access to them.  I further explained to Leontiev's counsel that we could expressly state in the Protective Order how Pavlov would be "walled off" from any Leontiev documents, if they wished.

In the 7/23 Order, Your Honor assumed that Pavlov was associated with Quorum, and Your Honor acknowledged that Quorum was the law firm representing DIA in the ProbusinessBank bankruptcy.  In fact, Your Honor noted that Pavlov "could potentially receive the discovery documents produced by Leontiev."  (DE # 28 at p. 15).  Yet, Your Honor denied Leontiev's motion to quash, holding that DIA was entitled to discovery from Leontiev.  If Your Honor intended that Quorum would not be permitted to represent DIA if Leontiev were associated with Quorum, presumably Your Honor would not have denied Leontiev's motion to quash.

DIA is going beyond its obligations by agreeing, at Leontiev's request, that (1) Pavlov will not have access to documents produced by Leontiev, (2) DIA's attorneys are agreeing to confirm this in writing to Leontiev, and (3) DIA is happy to discuss the logistics of creating a "wall" to give Leontiev further comfort.  Additionally, the terms of the proposed Protective Order to which DIA agrees permits Leontiev to designate documents "Highly Confidential," and DIA is prohibited from filing those documents in the foreign bankruptcy proceeding – the very purpose of this 1782 process – until DIA gives Leontiev seven days advance written notice. If during that seven day period Leontiev seeks an order precluding DIA from using the documents in the Russian proceeding, DIA must await this Court's ruling on the motion.  (Ex. B at par. 3).

The foregoing protections and the severe limiting of the scope of the subpoena severely limit DIA's rights in this 1782 proceeding, despite DIA securing a non-appealable order granting it discovery.  In fact, it is unclear whether, with the limitations proposed by Leontiev, any documents will be produced at all.  I inquired of Leontiev's counsel whether there actually were any confidential documents that Leontiev would produce, given the significant narrowing of the subpoena.  Leontiev's counsel responded that he did not know, and that a search for documents pursuant to the terms agreed upon in September would not be made until the terms of a protective order had been agreed.  Accordingly, it is still unclear whether there are any documents at all that will be produced, and whether this is just an expensive academic exercise.

What is clear, however, is that restricting a party's choice of counsel violates Rule 5.6 of the New York Rules of Professional Conduct, which provides, in relevant part:

> A lawyer *shall not participate in offering or making* … an agreement in which a restriction on a lawyer's right to practice is part of the settlement of a client controversy.

The italicized language makes clear that a lawyer *asking* to restrict counsel (as Respondent does here) is itself a violation of the rule. The New York Court of Appeals has held: "Restrictions which somehow interfere with or restrict the freedom of present or future clients to hire and fire lawyers are what the rule aims to prohibit. *Cohen v. Lord, Day & Lord*, 75 N.Y.2d 95, 108, 551 N.Y.S.2d 157, 164, 550 N.E.2d 410, 417 (1989). The Second Circuit has held: "It is the duty of the Court "to preserve, to the greatest extent possible, both the individual's right to be represented by counsel of his or her choice and the public's interest in maintaining the highest standards of professional conduct and the scrupulous administration of justice." *Hull v. Celanese Corp.*, 513 F.2d 568, 569 (2d Cir. 1975).

The Quorum firm represents DIA in the ProbusinessBank bankruptcy. This Court granted DIA discovery under 28 U.S.C. 1782 to aid in that foreign bankruptcy. This Court denied Leontiev's motion to quash, while assuming that Pavlov was associated with Quorum. The entire purpose of this proceeding is for DIA to be able to use the discovery obtained from Leontiev here in the ProbusinessBank bankruptcy. Precluding DIA's counsel in the foreign proceeding (Quorum) from having access to the documents produced by Leontiev means that DIA would have to retain different counsel in that proceeding. Such a requirement violates Rule 5.6. DIA agreed to numerous restrictions on its ability to obtain and use documents produced by Leontiev in order to bring this matter to a close. With the protections afforded to Leontiev in the Protective Order as agreed to by DIA, there is no valid basis to preclude Quorum attorneys other than Pavlov from having access to documents produced by Leontiev.

Accordingly, DIA respectfully requests that this Court (a) enter the Protective Order in the form attached as Exhibit B hereto, with the exception of the highlighted changes noted herein and (b) direct Leontiev to produce documents pursuant to the terms of Exhibit A hereto within 30 days.

Respectfully,

*/s/ Mary E. Flynn*

Mary E. Flynn

cc: Counsel of Record (via ECF)