UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re Application of DEPOSIT INSURANCE
AGENCY for an order to conduct discovery for use
in a foreign proceeding.

                                Petitioner.

Case No. 1:17-mc-00414-GBD

## PETITIONER'S MEMORANDUM OF LAW IN OPPOSITION TO
## RESPONDENT'S MOTION FOR LEAVE TO FILE A COMPLAINT

MORRISON COHEN LLP
909 Third Avenue
New York, New York 10022
Telephone:    212-735-8600
Facsimile:    212-735-8708

*Attorneys for Petitioner*
*Deposit Insurance Agency*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................ii

PRELIMINARY STATEMENT .............................................................................................1

FACTUAL BACKGROUND ..................................................................................................3

    The Deposit Insurance Agency and PBB ..........................................................................3

    Proceedings Currently Pending Outside the U.S. .............................................................5

    This 1782 Proceeding ........................................................................................................6

ARGUMENT ..........................................................................................................................8

I.     THIS 1782 PROCEEDING IS A LIMITED DISCOVERY PROCEEDING;
      THE RELIEF REQUESTED BY LEONTIEV IS NOT AVAILABLE ..............................8

II.    THIS COURT LACKS JURISDICTION OVER THE DIA UNDER THE FSIA ............11

    A.    The Foreign Sovereign Immunities Act ...............................................................11

    B.    The DIA Has Not Waived Sovereign Immunity .....................................................13

    C.    This Action Is Not Based Upon Any "Commercial Activity" By The DIA ..........17

III.   THIS COURT IS NOT A PROPER OR CONVENIENT FORUM FOR
      LEONTIEV'S PROPOSED COMPLAINT .....................................................................20

    A.    The First-Filed Rule Bars Leontiev's Claim .........................................................21

    B.    Principles Of International Comity Bar Leontiev's Claim .....................................23

    C.    The Act of State Doctrine Bars Leontiev's Claim .................................................24

CONCLUSION .....................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*AEP Energy Servs. Gas Holding Co. v. Bank of America, N.A.*,
626 F.3d 699 (2d Cir. 2010)............................................................................21

*Allstate Life Ins. Co. v. Linter Grp., Ltd.*,
994 F.2d 996 (2d Cir.), *cert. denied*, 510 U.S. 945, 114 S. Ct. 386 (1993)..............................23

*Anglo-Iberia Underwriting Mgmt. Co. v. P.T. Jamsostek (Persero)*,
600 F.3d 171 (2d Cir. 2010)............................................................................18

*Argentine Republic v. Amerada Hess Shipping Corp.*,
488 U.S. 428, 109 S. Ct. 683 (1989)........................................................11, 20

*Austrian v. Williams*,
216 F.2d 278 (2d Cir. 1954), *cert. denied*, 348 U.S. 953 (1955)..............................19

*In re Beck Indus.*,
725 F.2d 880 (2d Cir. 1984)............................................................................19

*Bouvier v. Adelson (In re Accent Delight Int'l Ltd.)*,
869 F.3d 121 (2d Cir. 2017)..............................................................................8

*Cabiri v. Government of the Republic of Ghana*,
165 F.3d 193 (2d Cir. 1999)......................................................................16, 17

*Chevron Corp. v. Page (In re Naranjo)*,
768 F.3d 332 (4th Cir. 2014) ..........................................................................10

*Credit Suisse v. United States Dist. Court*,
130 F.3d 1342 (9th Cir. 1997) ........................................................................25

*Dar El-Bina Eng'g & Contr. Co. v. Republic of Iraq*,
79 F. Supp. 2d 374 (S.D.N.Y. 2000)................................................................20

*Drexel Burnham Lambert Grp. v. Committee of Receivers for Galadari*,
12 F.3d 317 (2d Cir. 1993)..............................................................................19

*Employers Ins. of Wausau v. Fox Entm't Grp., Inc.*,
522 F.3d 271 (2d Cir. 2008)............................................................................22

*Esses v. Hanania*,
101 F.3d 873 (2d Cir. 1996)..............................................................................8

*Euromepa, S.A. v. R. Esmerian, Inc.*,
  51 F.3d 1095 (2d Cir. 1995), *aff'd*, 154 F.3d 24 (2d Cir. 1998) ...........................8, 9

*Fandino v. Amalgam Entm't, LLC*,
  No. 09 Civ. 8325 (SAS), 2010 U.S. Dist. LEXIS 14684 (S.D.N.Y. Feb. 18,
  2010) ........................................................................................................................23

*Finanz AG Zurich v. Banco Economico S.A.*,
  192 F.3d 240 (2d Cir. 1999)................................................................................23, 24

*First City Nat'l Bank & Trust Co. v. Simmons*,
  878 F.2d 76 (2d Cir. 1989)........................................................................................21

*Flynn v. Nat'l Asset Mgmt. Agency*,
  42 F. Supp. 3d 527 (S.D.N.Y. 2014)........................................................................21

*Furstenberg Fin. SAS v. Litai Assets LLC*,
  877 F.3d 1031 (11th Cir. 2017) ................................................................................10

*Garb v. Republic of Poland*,
  440 F.3d 579 (2d Cir. 2006)......................................................................................12

*In re Gemeinshcaftspraxis Dr. Med. Schottdorf*,
  No. Civ. M19-88 (BSJ), 2006 U.S. Dist. LEXIS 94161 (S.D.N.Y. Dec. 29,
  2006) ...........................................................................................................................9

*Granville Gold Trust-Switzerland v. Commissione Del Fullimento/Inter Change Bank*,
  924 F. Supp. 397 (E.D.N.Y. 1996), *aff'd*, 111 F.3d 123 (2d Cir. 1997)..................19

*JP Morgan Chase Bank v. Altos Hornos de Mex., S.A. de C.V.*,
  412 F.3d 418 (2d Cir. 2005).......................................................................................23

*Konowaloff v. Metro. Museum of Art*,
  702 F.3d 140 (2d Cir. 2012).......................................................................................24

*La Reunion Aerienne v. Socialist People's Libyan Arab Jamahiriya*,
  477 F. Supp. 2d 131 (D.D.C. 2007) ..........................................................................20

*In re Malev Hungarian Airlines*,
  964 F.2d 97 (2d Cir. 1992)..........................................................................................8

*Mangattu v. M/V IBN Hayyan*,
  35 F.3d 205 (5th Cir. 1994) .......................................................................................12

*Matos v. Reno*,
  No. 96 Civ. 2974 (MBM), 1996 U.S. Dist. LEXIS 11748 (S.D.N.Y. Aug. 15,
  1996) ..........................................................................................................................10

*Maxwell Commc'n Corp. PLC by Homan v. Societe Generale (In re Maxwell Commc'n Corp.)*,
  93 F.3d 1036 (2d Cir. 1996)..................................................................................23

*Middleton v. Green Cycle Hous., Inc.*,
  No. 15mc0023, 2017 U.S. Dist. LEXIS 25627 (S.D.N.Y. Feb. 22, 2017) ..............20

*Perret v. Wyndham Vacation Resorts, Inc.*,
  889 F. Supp. 2d 1333 (S.D. Fla. 2012) .................................................................15

*Quanzhou Joerga Fashion Co., Inc. v. Brooks Fitch Apparel Grp., LLC*,
  No. 10 Civ. 9078 (MHD), 2012 U.S. Dist. LEXIS 143334 (S.D.N.Y. Sept. 28, 2012) ........................................................................................................................24

*Reliance Ins. Co. v. Six Star, Inc.*,
  155 F. Supp. 2d 49 (S.D.N.Y. 2001).....................................................................22

*Remington Products Corp. v. American Aerovap, Inc.*,
  192 F.2d 872 (2d Cir. 1951)..................................................................................21

*Republic of Argentina v. Weltover, Inc.*,
  504 U.S. 607, 112 S. Ct. 2160 (1992)...................................................................18

*In re Republic of Ecuador*,
  735 F.3d 1179 (10th Cir. 2013) ............................................................................10

*Robinson v. Gov't of Malay.*,
  269 F.3d 133 (2d Cir. 2001)..................................................................................12

*Siderman de Blake v. Republic of Argentina*,
  965 F.2d 699 (9th Cir. 1992), *cert. denied*, 507 U.S. 1017, 113 S. Ct. 1812 (1993)......................................................................................................13, 14, 15, 16

*Smith v. Socialist People's Libyan Arab Jamahiriya*,
  101 F.3d 239 (2d Cir. 1996)..................................................................................13

*Tacul, S.A. v. Hartford Nat'l Bank & Trust Co.*,
  693 F. Supp. 1399 (D. Conn. 1988) ......................................................................10

*United States Fid. & Guar. Co. v. Petroleo Brasileiro S.A.*,
  No. 98 Civ. 3099 (JGK), 1999 U.S. Dist. LEXIS 7235 (S.D.N.Y. May 17, 1999) ................................................................................................................17, 18

*United States v. Merit*,
  962 F.2d 917 (9th Cir. 1992) .................................................................................24

*Vaden v. Connecticut*,
  557 F. Supp. 2d 279 (D. Conn. 2008)....................................................................20

*Verlinden B.V. v. Cent. Bank of Nigeria,*
    461 U.S. 480, 103 S. Ct. 1962 (1983) ........................................................................ 12

*Wagner v. Akin Gump Strauss Hauer & Feld LLP,*
    No. 16 Civ. 3532 (GBD) (JCF), 2016 U.S. Dist. LEXIS 164652 (S.D.N.Y.
    Nov. 28, 2016) ........................................................................................................ 22

*In re XPO Logistics, Inc.,*
    No. 15 Misc. 205 (LGS), 2017 U.S. Dist. LEXIS 203577 (S.D.N.Y. Dec. 11,
    2017) .......................................................................................................................... 9

*In re XPO Logistics, Inc.,*
    No. 15-MC-205 (LGS)(SN), 2017 U.S. Dist. LEXIS 77426 (S.D.N.Y. May
    22, 2017) .................................................................................................................... 9

## STATUTES

28 U.S.C. § 1330(a) ........................................................................................................ 12

28 U.S.C. § 1367 ............................................................................................................. 20

28 U.S.C. § 1367(a) ........................................................................................................ 20

28 U.S.C. § 1404(a) ........................................................................................................ 22

28 U.S.C. § 1602 ...................................................................................................... *passim*

28 U.S.C. § 1603 ............................................................................................................. 12

28 U.S.C. § 1603(b) ........................................................................................................ 12

28 U.S.C. § 1604 ............................................................................................................. 12

28 U.S.C. § 1605(a)(1) .................................................................................................... 13

28 U.S.C. § 1605(a)(2) ............................................................................................. 13, 17

28 U.S.C. § 1782 ...................................................................................................... *passim*

28 U.S.C. § 1782(a) ..................................................................................................... 8, 10

28 U.S.C. § 2201(a) ........................................................................................................ 15

Russian Bankruptcy Law Article 189.78 ........................................................................ 19

## OTHER AUTHORITIES

14 Charles Wright, et al., *Federal Practice and Procedure* § 3662 (3d ed. 1998) ........................ 11

## PRELIMINARY STATEMENT

This is a proceeding pursuant to 28 U.S.C. § 1782 seeking an order for discovery in aid of a foreign proceeding. Petitioner the Deposit Insurance Agency (the "DIA") brought the petition seeking discovery from Movant Sergey Leontiev ("Leontiev") for use in a Russian bankruptcy proceeding. This Court issued the requested order, and Leontiev then brought a motion to quash the resulting subpoena, which motion was denied on July 23, 2018.

But now, while the parties are negotiating over the confidentiality rules that will govern the discovery to be used in the Russian bankruptcy proceeding, Leontiev has brought a motion asking this Court itself to litigate and to resolve one of the primary substantive issues in the Russian bankruptcy proceeding. Leontiev's motion is unprecedented and procedurally dubious, and it must be denied. Indeed, there is no legal authority whatsoever supporting Leontiev's novel response to a 28 U.S.C § 1782 petition. And there is substantial legal authority supporting the DIA's view that the Court lacks jurisdiction over the DIA in connection with Leontiev's proposed complaint and that this Court would not be a convenient forum even if there were jurisdiction.

Leontiev's motion seeks to turn 28 U.S.C. § 1782 on its head, and granting the motion would undermine the policies of international comity that underlie that statute. The twin purposes of 28 U.S.C. § 1782 are to provide a means for litigants in foreign proceedings to obtain discovery in the United States and to encourage, by example, foreign countries to permit discovery within their own countries by litigants in proceedings in the United States. But both those aims would be undermined if, instead of simply providing discovery to aid the foreign proceeding, the United States court instead used the § 1782 petition as a basis upon which to resolve the substantive issues of the foreign litigation itself. If courts were to do that, foreign

parties would no longer bring § 1782 actions for fear that their substantive litigations will be hijacked into a United States forum. And foreign nations would not be encouraged to offer discovery to U.S. litigants through their courts. Rather, those foreign nations would be resentful that § 1782 was misused to create rival substantive proceedings that would conflict with and potentially interfere with proceedings in their own court systems.

Even aside from those procedural and policy problems, Leontiev's proposed complaint is also fatally flawed because this Court lacks jurisdiction over the DIA. The Foreign Sovereign Immunities Act (the "FSIA") provides that foreign states and their instrumentalities -- such as the DIA -- are immune from jurisdiction in courts in the United States, subject to certain limited exceptions. The DIA is entitled to immunity from jurisdiction here because none of the exceptions to immunity under the FSIA apply in this case. Leontiev argues that both the waiver exception and the "commercial activity" exception apply, but he is wrong. A foreign state does not waive its sovereign immunity by bringing a § 1782 proceeding, and no court has ever held that it does. And the "commercial activity" exception does not apply here both because Leontiev's proposed complaint is not "based on" any "commercial activity" by the DIA and because the DIA's activities as a court-appointed bankruptcy liquidator are not "commercial activities" in any event.

Finally, even if those issues did not bar Leontiev's proposed complaint (which they do), this Court nevertheless should decline to hear the complaint pursuant to the first filed rule and pursuant to principles of international comity. This Court is not a proper or convenient forum, and it should defer to the more appropriate foreign forums where related litigation was previously filed and is already underway. Moreover, the redress Leontiev seeks in his complaint is improper both under the Act of State Doctrine and under the Federal Declaratory judgment

Act itself. Leontiev's motion for leave to file his proposed complaint should be denied.

## **FACTUAL BACKGROUND**

### **The Deposit Insurance Agency and PBB**

The DIA is akin to the Federal Deposit Insurance Corporation in the United States. When a Russian insolvency proceeding concerning a bank is commenced, the DIA is required to participate in the bankruptcy proceeding. The DIA is required to investigate potentially fraudulent transactions of the failed bank and to file motions in the bankruptcy proceeding to undo any fraudulent transactions that may be uncovered. The DIA uses its best efforts to locate, marshal and obtain assets of the estate that can be used to satisfy creditor claims. The DIA is expected to investigate and to obtain records as part of this process. (Declaration of Khamchich Maksim Aleksandrovich, dated February 19, 2018 submitted in opposition to Respondent's Motion to Quash the DIA's Subpoena ("KM Decl."; DE 21) ¶ 9; Declaration of Anastasia Zhidchenko, dated February 14, 2018 submitted in opposition to Respondent's Motion to Quash the DIA's subpoena (("AZ Decl."; DE 19) ¶ 43).

On August 7, 2015, the Central Bank of the Russian Federation ("Central Bank") appointed a provisional administrator over a Russian bank named Probusinessbank ("PBB") due to PBB's failure to comply with orders by the Central Bank to rectify violations of regulatory restrictions and depository regulations. (KM Decl. ¶ 13; AZ Decl. ¶ 12). Leontiev was the founder, president and largest shareholder of PBB. Details of the findings of the provisional administrator are set forth in the previous declarations of the DIA representative for this matter, Mr. Khamchich, and the attorney representing the DIA as administrator/trustee in the PBB bankruptcy, Ms. Zhidchenko, each of whom have personal knowledge of the facts. (KM Decl. ¶¶ 13-17; AZ Decl. ¶¶ 13-14).

PBB's license was revoked due to inadequate capital ratios and its significant and undisclosed loss of assets. (KM Decl. ¶ 18; AZ Decl. ¶ 33). PBB's assets were insufficient to satisfy PBB's creditor's claims, so the Commercial Arbitrazh Court of Moscow issued an order on October 28, 2015 acknowledging PBB's insolvency, initiating the receivership procedure as to PBB, and assigning functions of bankruptcy manager to the DIA. (KM Decl. ¶ 20). As bankruptcy manager, the DIA was charged with, among other things, responsibility for obtaining documents concerning claims of PBB's creditors, assessing PBB's property, investigating and contesting the suspicious transactions, searching for assets, and enforcing PBB property rights. (KM Decl. ¶ 9).

In 2015, PBB submitted an audit report for 2014 to the Central Bank issued by Deloitte & Touche CIS ("Deloitte") indicating that PBB was financially sound. This audit report was unreliable due to PBB's management having concealed that hundreds of millions of dollars of PBB's assets were actually pledged to foreign depositories: Otkrite Capital International Limited and Brocercreditservice (Cyprus) Limited, to secure the obligations of other entities: Ambika Investments Limited and Merrianol Investments Limited, respectively. (KM Decl. ¶ 16; AZ Decl ¶ 16). This is not subject to debate. Both of these secured parties seized the PBB securities that were pledged as collateral to secure the guarantees of these third-party obligations. (KM Decl. at ¶ 15; AZ Decl. ¶¶ 13-14.) Leontiev has alleged that all of this is false, and that the Deloitte audit report proves it. (Leontiev's proposed complaint ¶¶ 20-21). Leontiev is demonstrably wrong. Since the time of the briefing of Leontiev's motion to quash, Deloitte has confirmed pursuant to International Accounting Standard (IAS) 10, "Events After the Reporting Period," that its "[a]udit report regarding [PBB's] financial statements should not be further considered trustworthy and that the [a]udit [r]eport is irrelevant to the financial statements of the

4

[PBB and its subsidiaries]." (Declaration of Anastasia Zhidchenko, dated November 15, 2018 ("AZ2 Decl.") at Ex. 1, in Russian with English translation.) When Leontiev was faced with written statements by his co-conspirators filed in opposition to his motion to quash the DIA's subpoena, Leontiev alleged -- with no factual support or knowledge regarding their statements whatsoever -- that his co-conspirators were coerced into confessing their (and his) participation in the fraudulent schemes at PBB. (DE 23 at 6). As one of the "Big Four" accounting organizations in the world, Deloitte, however, cannot be accused of having been coerced into withdrawing its audit opinion.

An investigation revealed that PBB management, led by Leontiev, engaged in fraudulent activities creating a "carousel" of off-balance-sheet companies in order to misappropriate PBB assets through sham loans. As one would expect with a fraud on such a grand scale, PBB management did not leave a blueprint showing the bankruptcy manager where the funds went and where to collect them in order to pay creditors. What was known at the time of the briefing of the motion to quash is summarized in the AZ Decl. at paragraphs 27-32 and exhibits 12-14. That investigation has continued, and, as described below, has led to several actions having been commenced in other jurisdictions concerning the fraudulent schemes.

**Proceedings Currently Pending Outside the U.S.**

The DIA's application in this proceeding under 28 U.S.C. § 1782 was intended to assist the DIA in performing its duty of marshaling PBB assets that have "disappeared." Although the DIA has not yet obtained any information whatsoever from this proceeding in the one year since it was commenced, the DIA has had success in other countries.

In the Russian bankruptcy proceeding, there is the "Core Proceeding" and also a proceeding pending asserting subsidiary liability against Alexander Zheleznyak and others under

5

Case No. A 40-154909/2015 (the "Subsidiary Liability Action"). (AZ2 at ¶ 5). The purpose of the Subsidiary Liability Action is to determine liability and recover assets lost as a result of the schemes masterminded by Leontiev. (*Id.*). There is also a proceeding pending in Austria, where certain assets were located, for subsidiary liability of Leontiev and others, filed in the Regional Court for Civil Matters, Case No. 4Cg53/18w (the "Austrian Action"). (AZ2 Decl. ¶ 7 and Ex. 2). There is also an action in Cyprus, seeking similar relief, filed in the Limassol District Court (the "Cyprus Action") (AZ2 Decl. ¶ 8 and Ex. 3). There is also an action in Liechtenstein filed in the Princely Court of Vaduz, File No. 11UR.2017.167 (the "Liechtenstein Action"). The Austrian, Cyprus and Liechenstein Actions predate the filing of this Motion, and each action names Leontiev as a defendant.[1]

Based on information from the Financial Intelligence Unit of the Principality of Liechtenstein, the Liechtenstein Court issued an order freezing assets on deposit at Bank Frick & Co. AG for clients Leontiev, Holdco LTD., Southpac Trust and Wonderworks Investments Limited, each of which was referenced by the DIA in this proceeding. (AZ2 Decl. ¶ 9; Ex. 4). The Russian bankruptcy proceeding has thus been continued by Court Order in order to "continue . . . the works related to collection of the bankruptcy estate." (AZ2 Decl. ¶ 10; Ex. 5).

**This 1782 Proceeding**

This proceeding is a 28 U.S.C. § 1782 application for discovery from Leontiev to aid in a foreign proceeding -- the Russian bankruptcy action -- and no more. This is not a plenary action to determine Leontiev's or any other conspirator's liability to the creditors of PBB. That issue is being determined by other courts in other jurisdictions as described above. Leontiev has done a good job of stonewalling any production of documents in this proceeding and taking

---

[1] The Austrian and Cyprus Actions were filed on August 6, 2018 (AZ2 Decl. Exs. 2 and 3), and an order was issued in the Liechtension Action on May 18, 2017, prohibiting disposal of certain assets.

advantage of the current political climate to divert attention from his own wrongdoing and to point the finger for the missing assets in other directions. But the fact remains that this action is for discovery only. It is not for resolution of the underlying claims by the DIA or the creditors in the PBB bankruptcy.

The DIA has not yet obtained any discovery from Leontiev in this action. The Court granted the DIA's petition for discovery under § 1782 on November 1, 2017 (DE 6). Leontiev moved to quash the subpoena, and the Court denied Leontiev's motion on July 23, 2018 (DE 28). The Court directed the parties to negotiate the scope of the subpoena. (DE 28). Leontiev proposed a significant narrowing of the subpoena, and the DIA agreed with a reservation of rights. (DE 29). Leontiev insisted on a protective order before even commencing the search for responsive documents pursuant to the Subpoena as narrowed, and the parties negotiated the terms of a protective order over several weeks. (DE 37). Unable to reach agreement on the terms of a protective order, the parties each submitted their positions to the Court. (DE 41 and 42). Once the Court rules on the terms of a protective order, if any, presumably Leontiev will finally produce some documents and appear for a deposition in this § 1782 proceeding.

Leontiev now moves for permission to file a Complaint in this proceeding against the DIA, seeking a Declaration that he has not embezzled funds from PBB – a factual issue currently being litigated abroad -- and enjoining the DIA and anyone acting in concert with the DIA from alleging -- in any action -- that he has done so. The DIA opposes this motion on the legal grounds set forth below. As a factual matter, the DIA is not found in this district, nor is the DIA found elsewhere in the United States. The DIA has no assets in the United States, nor is the DIA a claimant in any legal proceeding in the United States. (Declaration of Khamchich Maksim

Aleksandrovich, dated November 15, 2018 ("KM2 Decl.) at ¶ 4).

**ARGUMENT**

## I.  THIS 1782 PROCEEDING IS A LIMITED DISCOVERY PROCEEDING; THE RELIEF REQUESTED BY LEONTIEV IS NOT AVAILABLE

Leontiev failed to cite a single case in which a U.S. Court permitted the respondent in a § 1782 proceeding to obtain a ruling from the U.S. Court on facts in dispute in the underlying foreign litigation because there is no authority for such a ruling. In fact, such a ruling would constitute gross overreaching by a U.S. Court and would defeat the very purpose of 28 U.S.C. § 1782.   28 U.S.C. § 1782(a) authorizes:

> The district court in which a person resides or is found [to] order
> him to give his testimony or statement or to produce a document or
> other thing for use in a proceeding in a foreign or international
> tribunal . . . upon the application of any interested person.

(*Id.*). The twin aims of Section 1782 are "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Bouvier v. Adelson (In re Accent Delight Int'l Ltd.)*, 869 F.3d 121, 134 (2d Cir. 2017); *Esses v. Hanania*, 101 F.3d 873 (2d Cir. 1996); *Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1097 (2d Cir. 1995), *aff'd*, 154 F.3d 24 (2d Cir. 1998). The Second Circuit has proclaimed that "Congress purposefully engineered section 1782 as a 'one-way street. It grants wide assistance to others, but demands nothing in return.'" *Id.*, citing *In re Malev Hungarian Airlines*, 964 F.2d 97, 101 (2d Cir. 1992). In reversing the District Court, the Second Circuit in *Euromepa* noted that the proceedings in the District Court in that case "became a battle-by-affidavit of international law experts" (51 F.3d at 1099) (which could also be said of Leontiev's motion to quash here). The *Euromepa* court stated:

> We think that it is unwise -- as well as in tension with the aims of
> section 1782 -- for district judges to try to glean the accepted

> practices and attitudes of other nations from what are likely to be
> conflicting and, perhaps, biased interpretations of foreign law . . . .
> we do not read the statute to condone speculative forays into legal
> territories unfamiliar to federal judges. Such a costly, time-
> consuming, and inherently unreliable method of deciding section
> 1782 requests cannot possibly promote the "twin aims" of the
> statute.

*Id.* at 1099-1100; *see also In re Gemeinshcaftspraxis Dr. Med. Schottdorf*, No. Civ. M19-88

(BSJ), 2006 U.S. Dist. LEXIS 94161, at *23 (S.D.N.Y. Dec. 29, 2006), in which U.S.D.J.

Barbara Jones noted:

> [A]s the Second Circuit has instructed, the Court is not expected to
> declare a winner in this "battle-by-affidavit of international legal
> experts."

(quoting *Euromepa* at 1099). This Court has also observed the limits of a District Court in a §

1782 proceeding. In *In re XPO Logistics, Inc.*, No. 15-MC-205 (LGS)(SN), 2017 U.S. Dist.

LEXIS 77426 (S.D.N.Y. May 22, 2017), this Court specifically stated, in granting a § 1782

application that it "expresses no opinion on the merits of either party's allegations in the

[foreign] proceeding or of the [foreign] law underlying them," and cautioned against "entangling

the Court in the merits of a foreign proceeding." (*Id.* at *23). The District Judge affirmed this

Court's Opinion and Order based, in part, on this Court's statements above. *In re XPO Logistics,*

*Inc.*, No. 15 Misc. 205 (LGS), 2017 U.S. Dist. LEXIS 203577 (S.D.N.Y. Dec. 11, 2017). In that

case, Gibson Dunn, counsel to Leontiev here, argued that this Court committed error in

speculating about the ultimate merits of the underlying litigation. Gibson Dunn wrote:

> It is not this Court's role to speculate about the relative merits of
> Elliott's and XPO's claims in the French litigation. Indeed,
> "[m]ost courts . . . have avoided *any* analysis of the merits of the
> underlying litigation."

Declaration of Mary E. Flynn, dated November 15, 2018 ("Flynn Decl.") Ex. 1 at p. 8 (citation

omitted). In *XPO*, Gibson Dunn noted that "[t]he parties have submitted lengthy, dueling factual

narratives" and that the French court would decide who was right. (Flynn Decl. Ex. 2 at pp. 1-2). Gibson Dunn wrote that "[t]his [1782 proceeding] is not the forum for either party to 'introduce[] evidence' on the merits." (*Id.* at p. 3). Yet that is exactly what Gibson Dunn, now Leontiev's counsel, now seeks in this proceeding.

> The Eleventh Circuit (citing the Ninth Circuit) stated it best:
>
> > In a § 1782 proceeding, the underlying case is necessarily conducted in a foreign tribunal. Therefore, "[o]nce the district court has ruled on the parties' motion concerning the evidentiary requests, there is no further case or controversy before the district court."

*Furstenberg Fin. SAS v. Litai Assets LLC*, 877 F.3d 1031, 1034 (11th Cir. 2017) (citation omitted); *see also Chevron Corp. v. Page (In re Naranjo)*, 768 F.3d 332, 347 (4th Cir. 2014) ("the § 1782 order is a sufficiently final order"); *In re Republic of Ecuador*, 735 F.3d 1179, 1183 (10th Cir. 2013) ("§ 1782 orders are considered final . . . .") (internal quotation marks and citation omitted).

U.S.D.J. Mukasey explained that "[Section 1782] does not create any right of action or confer subject matter jurisdiction. Section 1782(a) merely grants district courts the power to order the taking of evidence . . . ." *Matos v. Reno*, No. 96 Civ. 2974 (MBM), 1996 U.S. Dist. LEXIS 11748, at * 7 (S.D.N.Y. Aug. 15, 1996); *see also, Tacul, S.A. v. Hartford Nat'l Bank & Trust Co.*, 693 F. Supp. 1399 (D. Conn. 1988) (Writ of execution may not be issued against bank's assets to satisfy foreign judgment under 28 U.S.C.S. § 1782, because court's authority under the statute is limited to assisting foreign tribunal by compelling testimony or evidence for use in foreign proceedings).

So, too, this § 1782 proceeding provides no basis for Leontiev to sue the DIA. Leontiev has attempted to sue the DIA in this § 1782 proceeding because it is clear that Leontiev

could not obtain personal jurisdiction over the DIA in a new action in this District. And, since Leontiev requested and was denied reciprocal discovery, its attempt here to sue the DIA is a blatant attempt at an end-run around that ruling.

The DIA is not found in this District, nor any place else in the United States, nor does the DIA have any assets here. (KM2 Decl. ¶ 4). The DIA's petition for discovery was granted, and Leontiev's motion to quash was denied. These orders are final. This index number does not afford Leontiev a basis for personal jurisdiction over the DIA. Leontiev has not cited a single case to support his notion that by filing a § 1782 application in this District, the DIA has agreed to be sued here. That is because it is not the law. If by filing a § 1782 application, a foreign party were automatically subject to the jurisdiction of the U.S. courts for claims made against it, no foreign party would ever file a § 1782 action. What foreign party, with no other connection to the United States, would agree to have to litigate substantive claims in the U.S.? The aims of § 1782 are clear. As set forth above, the Second Circuit has made it crystal clear that § 1782 is a "one-way street." Nothing is asked in return of the participant in the foreign litigation, and that includes submitting to the jurisdiction of the U.S. Courts concerning its foreign activity.

## II.     THIS COURT LACKS JURISDICTION OVER THE DIA UNDER THE FSIA

### A.     The Foreign Sovereign Immunities Act

The Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 et seq., ("FSIA"), is the exclusive basis for obtaining subject matter jurisdiction over foreign sovereigns in federal or state courts in the United States. *See Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 109 S. Ct. 683 (1989). The FSIA was enacted to set forth the limited circumstances under which litigants may sue foreign states and their controlled enterprises in federal and state courts. *See* 14 Charles Wright, et al., *Federal Practice and Procedure* § 3662, at 160-61 (3d ed.

11

1998).

The general rule set forth by the FSIA is that "a foreign state is presumptively immune from the jurisdiction of United States courts, unless a specified statutory exception applies." *Garb v. Republic of Poland*, 440 F.3d 579, 582 (2d Cir. 2006) (citation omitted). A federal court lacks subject matter jurisdiction over a claim against a foreign state unless the claim falls within an exception to immunity under the FSIA. 28 U.S.C. § 1330(a); *see also Robinson v. Gov't of Malay.*, 269 F.3d 133, 139 (2d Cir. 2001) ("The statute must be applied by the District Courts in every action against a foreign sovereign, since subject matter jurisdiction depends on the existence of one of the specified exceptions to sovereign immunity . . . .") (quoting *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 493, 103 S. Ct. 1962, 1971 (1983)).

Here, the parties agree that the DIA qualifies as a "foreign state" within the meaning of the FSIA. (Leontiev's Memo of Law at 12, n. 4). The DIA qualifies as a "foreign state" under the FSIA because it is an "agency or instrumentality" of a foreign state that meets all three requirements of § 1603(b): the DIA is a separate legal person (2) which is an organ of the Russian Federation (3) which is neither a citizen of a State of the United States nor created under the laws of any third country.[2]

As a "foreign state," the DIA is immune from the jurisdiction of the courts of the United States unless a statutory exception to foreign sovereign immunity applies. *See* 28 U.S.C. § 1604. The DIA is entitled to immunity from jurisdiction here because none of the exceptions to immunity under the FSIA apply in this case. Leontiev argues that both the waiver exception

---

[2]         28 U.S.C. § 1603 provides -- with certain exceptions -- that a "foreign state" includes "a political subdivision of a foreign state or an agency or instrumentality of a foreign state ... (1) which is a separate legal person, corporate or otherwise, and (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and (3) which is neither a citizen of a State of the United States . . . nor created under the laws of any third country . . . ." 28 U.S.C. § 1603; *see Mangattu v. M/V IBN Hayyan*, 35 F.3d 205, 207 (5th Cir. 1994) ("In order to qualify for treatment as a foreign state, [defendant] must meet all three requirements under § 1603(b).").

(§ 1605(a)(1)) and the commercial activity exception (§ 1605(a)(2)) apply here. But Leontiev is wrong. The DIA has not waived its immunity, and this action does not involve any sort of commercial activity by the DIA.

**B.    The DIA Has Not Waived Sovereign Immunity**

The FSIA provides that "[a] foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case . . . in which the foreign state has waived its immunity either explicitly or by implication ...." 28 U.S.C. § 1605(a)(1). The FSIA's waiver exception is to be "narrowly construed." *Smith v. Socialist People's Libyan Arab Jamahiriya*, 101 F.3d 239, 243 (2d Cir. 1996). Leontiev argues that "the DIA has implicitly waived any sovereign immunity with respect to claims that Mr. Leontiev purportedly embezzled funds" from PBB because the DIA brought this 28 U.S.C. § 1782 proceeding seeking discovery in aid of a foreign proceeding. (Leontiev's Memo of Law at 13). According to Leontiev, "[h]aving made assertions of alleged embezzlement in an attempt to persuade this Court, the DIA's sovereign immunity has been waived by its purposeful availment of this Court's process as part of a corrupt campaign against Mr. Leontiev." (Leontiev's Memo of Law at 13). But Leontiev's argument is nonsense and has no support in law. Leontiev fails to cite a single case holding that a foreign state can waive its immunity under the FSIA by bringing a § 1782 proceeding. And no court has ever so held.

Instead, Leontiev seeks to rely on the decision of the Ninth Circuit Court of Appeals in *Siderman de Blake v. Republic of Argentina*, 965 F.2d 699 (9th Cir. 1992), *cert. denied*, 507 U.S. 1017, 113 S. Ct. 1812 (1993). But Leontiev's reliance on the *Siderman* decision is badly misplaced for several reasons. First, that case did not involve a 28 U.S.C. § 1782 proceeding. Second, the reasoning of that case would not support a finding of jurisdiction

over the DIA here. And third, the *Siderman* decision is not controlling authority in any event, and its holding has been expressly rejected by the Court of Appeal for the Second Circuit.

The *Siderman* case did not involve a prior application to take discovery pursuant to 28 U.S.C. § 1782. Rather, the Sidermans, the plaintiffs in the case, alleged that Argentina had commenced malicious criminal proceedings against Mr. Siderman in Argentina and then had requested and had obtained the assistance of the California state courts in obtaining jurisdiction over his person. The Sidermans alleged that, by doing so, Argentina "sought to obtain [Mr. Siderman's] return to Argentina in order to further torture and perhaps even to kill him." 965 F.2d at 722. The Sidermans argued that Argentina had implicitly waived its sovereign immunity defense with respect to their claims for torture and persecution because Argentina had availed itself of the California courts as part of their effort to persecute Mr. Siderman. And the Ninth Circuit held that involving U.S. courts in the wrongful efforts at issue could be sufficient to implicitly waive sovereign immunity under the FSIA:

> We conclude that the Sidermans have presented evidence sufficient to support a finding that Argentina has implicitly waived its sovereign immunity with respect to their claims for torture. The evidence indicates that Argentina deliberately involved United States courts in its efforts to persecute Jose Siderman. If Argentina has engaged our courts in the very course of activity for which the Sidermans seek redress, it has waived its immunity as to that redress.

965 F.2d at 722.

But the allegations in *Siderman* are very different from the allegations here. In *Siderman*, the plaintiffs alleged that "Argentina has engaged our courts in the very course of activity for which the Sidermans seek redress." *Id.* But there is no such connection here. Leontiev's proposed complaint is seeking a declaratory judgment that he did not embezzle funds. The DIA's actions in bringing a 28 U.S.C. § 1782 application for discovery from Leontiev are

14

not an element of his proposed claims.    Leontiev tries to ignore this distinction, arguing that

"[j]ust as the plaintiff [sic] in *Siderman* was able to demonstrate that Argentina waived its

sovereign immunity because it sought assistance from California state courts for a malicious

purpose . . .    Mr. Leontiev can demonstrate the DIA's deliberate misuse of this Court."

(Leontiev's Memo of Law at 13, n. 5).  But Leontiev's argument fails because the alleged misuse

of this Court is not part of Leontiev's proposed claims.  Leontiev has not asserted a defamation

claim premised on the DIA's statements to this Court.  Rather, his proposed complaint seeks a

declaratory judgment concerning his own alleged conduct.  While Leontiev has phrased his

request for declaratory relief in a manner that references the DIA's statements in this proceeding,

that is merely creative semantics.  Leontiev's request for "a declaration that the DIA's statements

in this action alleging that Mr. Leontiev embezzled or otherwise misappropriated funds from the

PRBB are false" is substantively no different from a declaration that "Mr. Leontiev did not

embezzle or misappropriate fund from the PRBB."  The DIA's statements or the intent behind

them are not actually at issue in Leontiev's proposed complaint.  The fact that the DIA sought

discovery from him in this Court through 28 U.S.C. § 1782 has no bearing on the question of

whether or not Leontiev embezzled funds from PBB.  The question of whether Mr. Leontiev

embezzled funds would be determined based upon Mr. Leontiev's own actions and not based on

any statements made or actions taken by the DIA. [3]

---

[3]    Leontiev has not actually framed a proper claim for relief here under the Federal Declaratory Judgment
Act, 28 U.S.C. § 2201(a) ("FDJ Act").  The FDJ Act provides that a federal court "may declare the rights and other
legal relations of any interested party seeking such declaration . . . ".  But Leontiev's proposed declaration is
improper because it does not seek a declaration of any party's rights.  Rather Leontiev merely seeks a declaration of
fact that "the DIA's statements in this action alleging that Mr. Leontiev embezzled or otherwise misappropriated
funds from the PRBB are false." (Leontiev's proposed complaint p. 15).  Such a declaration would merely be an
assertion of fact -- not a legal determination of any party's rights or legal obligations.  For this reason also, the Court
must reject Leontiev's proposed Declaratory Judgment action.  *See Perret v. Wyndham Vacation Resorts, Inc.*, 889 F.
Supp. 2d 1333, 1346-47 (S.D. Fla. 2012) (rejecting declaratory judgment action where plaintiffs were "not seeking a
declaration of their 'rights' under the contracts" but were seeking "a declaration that Defendants' actions were
fraudulent, unconscionable and inequitable," holding that "these are not rights.")

Indeed, the *Siderman* decision itself makes clear that its holding would not reach a case such as this. In the decision, the Ninth Circuit clarified that it was not holding that any foreign sovereign instituting legal proceedings against a party in a United States court waves its sovereign immunity in a suit brought by that party. The Court emphasized that it only had potential jurisdiction over the torture claims against Argentina because Argentina's use of the United States courts was "part and parcel" of its efforts to "torture and persecute" Mr. Siderman:

> We do not suggest that because Argentina may have implicitly waived its immunity in this suit, any foreign sovereign which takes actions against a private party in our courts necessarily opens the way to all manner of suit by that party. *To support a finding of implied waiver, there must exist a direct connection between the sovereign's activities in our courts and the plaintiff's claims for relief.* Only because the Sidermans have presented evidence indicating that Argentina's invocation of United States judicial authority was part and parcel of its efforts to torture and persecute Jose Siderman have they advanced a sufficient basis for invoking that same authority with respect to their causes of action for torture.

965 F.2d at 722 (emphasis added).

Thus, contrary to Leontiev's assertions, the *Siderman* decision does not support a finding that the DIA waived its sovereign immunity in this proceeding. But even if the *Siderman* decision did so hold, Leontiev's reliance upon it still would be misplaced because the *Siderman* decision is not controlling authority here. Indeed, its holding has been expressly rejected by the Court of Appeals for the Second Circuit. In *Cabiri v. Government of the Republic of Ghana*, 165 F.3d 193, 202 (2d Cir. 1999), the Second Circuit held that the "implicit theory" of the *Siderman* decision "is new and dubious, and seems to be that a foreign state forfeits immunity with respect to matters related to a scheme of persecution if it advances that scheme by bringing suit in the United States." The Second Circuit declined to follow the *Siderman* reasoning and held that Ghana had not waived its sovereign immunity by bringing suit

in the United States.  165 F.3d at 202.

### C.    This Action Is Not Based Upon Any "Commercial Activity" By The DIA

Leontiev argues that the FSIA's commercial activity exception to sovereign immunity (§ 1605(a)(2)) applies here.  But Leontiev is wrong.

Under Section 1605(a)(2), sovereign immunity does not apply where "the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States."  28 U.S.C. § 1605(a)(2).  Leontiev contends the DIA cannot assert sovereign immunity here because, by bringing its 28 U.S.C. § 1782 petition, the DIA committed acts in the United States "in connection with commercial activity of the foreign state elsewhere."  (Leontiev's Memo of Law at 14).

But Leontiev is wrong for at least two reasons.  First, Leontiev's proposed complaint is not "based upon" the DIA's having brought petitions for discovery pursuant to 28 U.S.C. § 1782.  Indeed, *United States Fid. & Guar. Co. v. Petroleo Brasileiro S.A.*, No. 98 Civ. 3099 (JGK), 1999 U.S. Dist. LEXIS 7235, at *23 (S.D.N.Y. May 17, 1999), the very case upon which Leontiev relies, makes clear that "*the acts (or omissions) encompassed in this category are limited to those which in and of themselves are sufficient to form a basis of a cause of action.*"  *Id.* (emphasis added).  But Leontiev's proposed complaint does not contend that the DIA has committed some tort against him in the United States for which his proposed causes of action seek redress.  Neither the fact that the DIA brought § 1782 petitions, nor the statements it made in support thereof compose any part of Leontiev's proposed claims.  Leontiev's proposed

complaint seeks a declaratory judgment regarding his own alleged actions. As discussed above, Leontiev's phrasing of his request for declaratory relief in a manner that references the DIA's statements in this proceeding is merely creative semantics. The DIA's statements or the intent behind them are not actually at issue in Leontiev's proposed complaint. The question of whether Mr. Leontiev embezzled funds would be determined based upon Mr. Leontiev's own actions and not based on any statements made, or any actions taken by, the DIA. Thus, this case is quite distinct from *United States Fid. & Guar. Co.*, upon which Leontiev relies. That case involved an action to enforce certain indemnity agreements where the defendant foreign state "negotiated the Indemnity Agreements in the United States which contained payment obligations in the United States, and subsequently breached those obligations by failing to make payment in the United States." (*Id.* at *24). Here, Leontiev's proposed complaint is not similarly "based upon" any acts of the DIA in the United States (or anywhere).

Second, the "commercial activity" exception also does not apply here for the fundamental reason that the DIA has engaged in no "commercial activity" anywhere that is in any way related to this proceeding. A foreign state's actions are "commercial" in nature when it "acts, not as regulator of a market, but in the manner of a private player within it," and when "the particular actions that the foreign state performs (whatever the motive behind them) are the type of actions by which a private party engages in trade and traffic or commerce." *Anglo-Iberia Underwriting Mgmt. Co. v. P.T. Jamsostek (Persero)*, 600 F.3d 171, 176-77 (2d Cir. 2010) (citing *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614, 112 S. Ct. 2160, 2166 (1992)). Leontiev asserts that the DIA has engaged in "commercial activity" for purposes of the FSIA because the act of tracing PBB's assets is a "decidedly commercial activity." (Leontiev's Memo of Law at 14). But Leontiev's assertion is wrong, and Leontiev failed to cite relevant

authority in this Circuit on this exact issue.

On October 28, 2015, Probusinessbank was declared insolvent by Judgment of the Commercial Arbitrazh Court of Moscow, and the DIA was appointed bankruptcy manager (Trustee) of Probusinessbank by operation of law. Pursuant to Article 189.78 of Russian Bankruptcy Law, the appointment of the DIA as the Bank's official liquidator gives the DIA two fundamental tasks: to marshal and collect the assets of the Bank at the highest possible value and to distribute the resulting proceeds to creditors in an orderly measure. Such activities by a bankruptcy trustee are not "commercial activities" for purposes of the FSIA. *See Granville Gold Trust-Switzerland v. Commissione Del Fullimento/Inter Change Bank*, 924 F. Supp. 397 (E.D.N.Y. 1996) (holding that court-appointed bankruptcy liquidator was not engaged in "commercial activities" under the FSIA), *aff'd*, 111 F.3d 123 (2d Cir. 1997). In *Granville Gold Trust*, the court held that the efforts by a court-appointed receiver to collect and distribute a bankrupt bank's assets do not constitute "commercial activity" under the FSIA:

> Here, the activities at issue -- the liquidation of a bankrupt bank by a court appointed and monitored Commissione -- are sovereign in nature. They cannot be performed by an individual citizen. As previously mentioned, the Second Circuit in [*Drexel Burnham Lambert Grp. v. Committee of Receivers for Galadari*, 12 F.3d 317 (2d Cir. 1993)] did not specifically determine if the activities were commercial. However, it stated that "even the depiction of these activities as 'commercial' is, however, suspect." *Id.* at 329, n. 3. "Merely to attempt to collect and liquidate the assets of a debtor is not to carry on its business in any proper sense of the term." *In re Beck Indus.*, 725 F.2d 880, 887 (2d Cir. 1984), citing *Austrian v. Williams*, 216 F.2d 278, 285 (2d Cir. 1954), *cert. denied*, 348 U.S. 953 (1955).

*Id.* at 407.

The DIA's efforts to trace, recover and distribute the assets of PBB are acts sovereign in nature and could not be undertaken by individual citizens for purposes of trade or commerce. Thus, the DIA's actions do not fall with the "commercial activity" exception to the

19

FSIA. In support of his argument to the contrary, Leontiev cites only to *Middleton v. Green Cycle Hous., Inc.*, No. 15mc0023, 2017 U.S. Dist. LEXIS 25627 (S.D.N.Y. Feb. 22, 2017). But the *Middleton* decision does not involve the FSIA, nor does it opine as to whether any particular activity constitutes "commercial activity" in any context. Leontiev cites to *Middleton* merely because it mentions a private citizen judgment creditor engaged in "asset tracing" to attempt to enforce her judgment. The case does not hold that "asset tracing" in any form constitutes "trade and traffic or commerce," nor does it shed any light on whether a Russian-court appointed bank liquidator engages in "commercial activity" under the FSIA when -- pursuant to its statutory duties -- it attempts to collect assets of a debtor bank and to distribute them to creditors.

Because Leontiev's proposed complaint is not based on any act of the DIA in connection with any "commercial activity" by the DIA, the "commercial activity" exception to the FSIA does not apply.[4]

## III. THIS COURT IS NOT A PROPER OR CONVENIENT FORUM FOR LEONTIEV'S PROPOSED COMPLAINT

Leontiev argues that the DIA "acknowledged that this is an appropriate forum for the adjudication" of Leontiev's alleged embezzlement scheme when the DIA brought its application pursuant to 28 U.S.C. § 1782 in this Court. (Leontiev Memo of Law at 15). But the DIA made no such concession. The DIA was merely seeking discovery in this proceeding. The

---

[4] In a footnote, Leontiev makes the alternative argument that this Court has jurisdiction over the DIA for purposes of his proposed complaint pursuant to 28 U.S.C. § 1367, which provides a federal court in some circumstances with supplemental jurisdiction over "related claims." (Leontiev's Memo of Law at 13, n. 5). But this argument fails because the FSIA is the exclusive basis for obtaining subject matter jurisdiction over foreign sovereigns in federal or state courts in the United States. *See Argentine Republic*, 488 U.S. at 428, 109 S. Ct. at 683; *see also Dar El-Bina Eng'g & Contr. Co. v. Republic of Iraq*, 79 F. Supp. 2d 374, 387 (S.D.N.Y. 2000) ("[T]he jurisdiction conferred on the district courts by the FSIA may not be expanded by application of Section 1367(a) and the doctrine of supplemental jurisdiction."); *La Reunion Aerienne v. Socialist People's Libyan Arab Jamahiriya*, 477 F. Supp. 2d 131, 133 (D.D.C. 2007) (same); *Vaden v. Connecticut*, 557 F. Supp. 2d 279, 289 (D. Conn. 2008) (28 U.S.C. § 1367(a) does not function as "abrogation of sovereign immunity permitting otherwise-barred claims to be brought in federal court via supplemental jurisdiction.").

DIA was not seeking to litigate any substantive clams. The substantive claims related to the PBB bankruptcy and Leontiev's alleged embezzlement of funds have no real connection with New York, and this court would not be a convenient forum to resolve any substantive claims related thereto. *See Flynn v. Nat'l Asset Mgmt. Agency*, 42 F. Supp. 3d 527, 539 (S.D.N.Y. 2014) (dismissing action on grounds of *forum non conveniens* where alleged bank fraud scheme involving an Irish Bank "has much to do with Ireland and little to do with New York or the United States").

Indeed, before Leontiev brought the instant motion to expand this proceeding into one addressing the substance of the allegations that Leontiev embezzled funds from PBB, the DIA had already instituted legal proceedings in other jurisdictions overseas in which the schemes to loot PBB, and Leontiev's participation in them, is squarely at issue (the "Related Actions"). *See* above at pp. 5-6. Thus, even if this Court had jurisdiction over the DIA in connection with Leontiev's proposed complaint, this Court should nevertheless decline to hear the case pursuant to the "first filed" rule, the doctrine of international comity, and the Act of State doctrine.

### A. The First-Filed Rule Bars Leontiev's Claim

Pursuant to the "first filed" rule, "where there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience or special circumstances giving priority to the second." *AEP Energy Servs. Gas Holding Co. v. Bank of America, N.A.*, 626 F.3d 699, 722 (2d Cir. 2010) (quoting *First City Nat'l Bank & Trust Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir. 1989)); *see also Remington Products Corp. v. American Aerovap, Inc.*, 192 F.2d 872, 873 (2d Cir. 1951) ("The general rule in this Circuit is that, as a principle of sound judicial administration, the first suit should have priority, 'absent the showing of balance of convenience in favor of the second action.'"). "The Second Circuit has observed

that 'special circumstances' justifying deviation from the first-filed rule are 'quite rare.'" *Wagner v. Akin Gump Strauss Hauer & Feld LLP*, No. 16 Civ. 3532 (GBD) (JCF), 2016 U.S. Dist. LEXIS 164652, at *4 (S.D.N.Y. Nov. 28, 2016) (quoting *Employers Ins. of Wausau v. Fox Entm't Grp., Inc.*, 522 F.3d 271, 275 (2d Cir. 2008)). "Special circumstances justifying an exception to the rule exist where the first suit constitutes an improper anticipatory filing or was motivated solely by forum shopping." *Reliance Ins. Co. v. Six Star, Inc.*, 155 F. Supp. 2d 49, 54 (S.D.N.Y. 2001) (internal quotation marks and citations omitted). Neither of those "special circumstances" is a factor here.

Moreover, the "balance of convenience" here also supports the application of the first-filed rule. In applying the "balance of convenience" exception, the courts consider the same factors as those considered in connection with motions to transfer venue pursuant to 28 U.S.C. § 1404(a). *See Employers Ins. of Wasau*, 522 F.3d at 274-75. Those factors include: "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of the parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties." *Id.* (internal citations omitted). "A balance of these factors will identify the more appropriate forum." *Id.*

Each of these factors weighs heavily in the DIA's favor and against Leontiev's motion. Leontiev is alleged to have engaged in fraudulent conduct in the jurisdictions where the Related Actions are pending. Thus, the location of relevant evidence, the convenience of witnesses and the locus of operative facts favor proceeding in the jurisdictions of the Related Cases. Leontiev's own documents may be located in New York, because this is where he ran to, but all other relevant evidence will likely be in Russia, and in the banking records in Austria,

Cyprus and Liechtenstein. Moreover, the jurisdictions in which the Related Actions are pending have broad subpoena powers to compel the attendance of unwilling witnesses, similar to this Court's subpoena power.

Finally, the relative means of the parties is comparable. Leontiev has not suggested -- nor can he reasonably do so -- that he does not have the financial means to litigate in the Related Actions. Moreover, even if there "is a disparity in the relative means of the parties, this does not overcome the weight accorded to plaintiff's choice of forum and the locus of operative facts which both favor the first-filed action." *Fandino v. Amalgam Entm't, LLC*, No. 09 Civ. 8325 (SAS), 2010 U.S. Dist. LEXIS 14684, at *16 (S.D.N.Y. Feb. 18, 2010).

### B.  Principles Of International Comity Bar Leontiev's Claim

International comity has been defined as "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation." *JP Morgan Chase Bank v. Altos Hornos de Mex., S.A. de C.V.*, 412 F.3d 418, 423 (2d Cir. 2005) (citation omitted). International comity may take the form of "a discretionary act of deference by a national court to decline to exercise jurisdiction in a case properly adjudicated in a foreign state." *Maxwell Commc'n Corp. PLC by Homan v. Societe Generale (In re Maxwell Commc'n Corp.)*, 93 F.3d 1036, 1047 (2d Cir. 1996); *see, e.g., Allstate Life Ins. Co. v. Linter Grp., Ltd.*, 994 F.2d 996 (2d Cir.) (affirming dismissal in favor of pending proceeding in Australia), *cert. denied*, 510 U.S. 945, 114 S. Ct. 386 (1993). When a court dismisses a complaint in favor of a foreign forum pursuant to the doctrine of international comity, it declines to exercise jurisdiction it admittedly has. *See Finanz AG Zurich v. Banco Economico S.A.*, 192 F.3d 240, 245-46 (2d Cir. 1999) (treating separately the questions of subject matter jurisdiction and deferral to a foreign forum pursuant to international comity). The decision whether to dismiss a case on international

comity grounds lies within the discretion of the district court. *See Finanz AG Zurich*, 192 F.3d at 246.

Here, this Court should decline to hear Leontiev's complaint and defer to the Related Actions. PBB was a Russian bank. The law governing its operation and its bankruptcy is Russian law, and the effects of its insolvency have been primarily felt in Russia. Leontiev's alleged embezzlement scheme is properly litigated in proceedings in the foreign jurisdictions where that scheme was executed and where most of the relevant witnesses and documents are located. *See Quanzhou Joerga Fashion Co., Inc. v. Brooks Fitch Apparel Grp., LLC*, No. 10 Civ. 9078 (MHD), 2012 U.S. Dist. LEXIS 143334 (S.D.N.Y. Sept. 28, 2012) (staying action in favor of first-filed related proceeding in China).

### C.    The Act of State Doctrine Bars Leontiev's Claim

The Act of State doctrine is "a non-jurisdictional, prudential limitation on a court's power to examine the official actions of a foreign state." *United States v. Merit*, 962 F.2d 917, 921 (9th Cir. 1992). The Act of State doctrine "precludes the courts of this country from inquiring into the validity of the public acts of a recognized foreign sovereign power committed within its own territory." *Konowaloff v. Metro. Museum of Art*, 702 F.3d 140, 143 (2d Cir. 2012) (citations omitted). The Act of State doctrine is implicated here because Leontiev's proposed complaint seeks both a declaratory judgment and injunctive relief against the DIA. Leontiev is seeking a permanent injunction from this Court "barring the DIA, or anyone acting in concert with the DIA or at its direction, from taking any further steps to claim that Mr. Leontiev embezzled funds from PRBB." (Proposed Complaint at 15). Such an injunction would contravene the Act of State doctrine because it would require the DIA to breach its duties under its Russian Court appointment to marshal and collect the assets of the PBB at the highest

possible value. It would also prohibit the DIA from complying with its legal obligation to cooperate with the prosecution of the pending Subsidiary Liability Action in Russia and would declare the DIA's continued cooperation with that action unlawful. For these reasons, the injunction Leontiev seeks would declare invalid the official act of a foreign sovereign performed within its own boundaries, and therefore, pursuant to the Act of State doctrine, the Court should decline to hear Leontiev's proposed complaint. *See Credit Suisse v. United States Dist. Court*, 130 F.3d 1342, 1347 (9th Cir. 1997) (holding that requested declaratory and injunctive relief would violate the Act of State doctrine because it would require bank to disregard Swiss government orders).

## CONCLUSION

Based on the foregoing and accompanying papers, the DIA respectfully requests that this Court deny in its entirety Leontiev's motion to file a complaint against the DIA.

Dated: New York, New York
     November 15, 2018           MORRISON COHEN LLP


By: /s/ Jeffrey D. Brooks
       Mary E. Flynn
       Jeffrey D. Brooks
       Valerie Sirota
       909 Third Avenue
       New York, New York 10022
       (212) 735-8600

       *Attorneys for Petitioner*
       *Deposit Insurance Agency*