UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DEPOSIT INSURANCE AGENCY,<br>Petitioner,<br>-against-<br>SERGEY LEONTIEV,<br>Movant. | Case No. 1:17-mc-00414-GBD-SN<br>**ORAL ARGUMENT REQUESTED** |

**MOVANT SERGEY LEONTIEV'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HIS MOTION FOR LEAVE TO FILE A COMPLAINT**


GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

*Attorneys for Sergey Leontiev*

## TABLE OF CONTENTS

Page

**PRELIMINARY STATEMENT** ........................................ 1

**ARGUMENT** ........................................ 1

I. The DIA Cannot Avoid the Consequences of Its Own False Statements Simply Because They Were Made in the Context of a Section 1782 Action ........................................ 1

II. This Court Has the Authority to Hear Mr. Leontiev's Claim for Declaratory Relief ........................................ 3

III. This Court Has Jurisdiction Under the Foreign Sovereign Immunities Act ........................................ 5

IV. This Court Is the Most Appropriate Forum for Mr. Leontiev's Claim ........................................ 8

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Astronics Advanced Elecs. Sys. Corp. v. Lufthansa Technik AG*,
561 F. App'x 605 (9th Cir. 2014) ....................................................................................4

*Cabiri v. Gov't of the Republic of Ghana*,
165 F.3d 193 (2d Cir. 1999)..........................................................................................6

*Chevron Corp. v. Donziger*,
871 F. Supp. 2d 229240 (S.D.N.Y. 2012).....................................................................3

*Colonial Bank v. Compagnie Generale Mar. et Financiere*,
645 F. Supp. 1457 (S.D.N.Y. 1986)...............................................................................6

*Cont'l Cas. Co. v. Coastal Sav. Bank*,
977 F.2d 734 (2d Cir. 1992)..........................................................................................4

*Daventree Ltd. v. Republic of Azerbaijan*,
349 F. Supp. 2d 736 (S.D.N.Y. 2004)...........................................................................8

*In re Gazprom Latin America Servicios, C.A.*,
2016 WL 3654590 (S.D. Tex. July 6, 2016)..................................................................3

*Granville Gold Tr.-Switzerland v. Commissione Del Fulliment / Inter Change Bank*, 924 F. Supp. 397 (E.D.N.Y. 1996)...........................................................8

*Iwachiw v. New York State Dep't of Motor Vehicles*,
396 F.3d 525 (2d Cir. 2005)........................................................................................10

*Leopard Marine & Trading, Ltd. v. Easy Street Ltd.*,
896 F.3d 174 (2d Cir. 2018)........................................................................................10

*Lyndonville Sav. Bank & Tr. Co. v. Lussier*,
211 F.3d 697 (2d Cir. 2000)..........................................................................................4

*In re Malev Hungarian Airlines*,
964 F.2d 97 (2d Cir. 1992)............................................................................................2

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*,
510 F. Supp. 2d 299 (S.D.N.Y. 2007)...........................................................................3

*Middleton v. Green Cycle Hous., Inc.*,
2017 WL 715747 (S.D.N.Y. Feb. 23, 2017)..................................................................8

*Mine Safety Appliance Co. v. Energetics Sci., Inc.*,
416 F. Supp. 530 (S.D.N.Y. 1976)................................................................................7

*Morgan Stanley & Co. v. Seghers*,
2010 WL 3952851 (S.D.N.Y. Oct. 8, 2010) ........ 4

*Nat'l City Bank of N.Y. v. Republic of China*,
348 U.S. 356 (1955) ........ 5

*In re Potanina*,
2015 WL 750656 (S.D.N.Y. Jan. 9, 2015) ........ 3

*Republic of Argentina v. Weltover*,
504 U.S. 607 (1992) ........ 8

*Saudi Arabia v. Nelson*,
507 U.S. 349 (1993) ........ 8

*Sergeeva v. Tripleton Int'l Ltd.*,
834 F.3d 1194 (11th Cir 2016) ........ 3

*Siderman de Blake v. Republic of Argentina*,
965 F.2d 699 (9th Cir. 1992) ........ 6, 7

*Verlinden B.V. v. Cent. Bank of Nigeria*,
461 U.S. 480 (1983) ........ 5

*W.S. Kirkpatrick & Co. v. Envtl. Tectonics Corp., Int'l*,
493 U.S. 400 (1990) ........ 10

*Walters v. Indus. & Commercial Bank of China, Ltd.*,
651 F.3d 280 (2d Cir. 2011) ........ 6

*WMW Mach., Inc. v. Werkzeugmaschinenhandel GmbH IM Aufbau*,
960 F. Supp. 734 (S.D.N.Y. 1997) ........ 8

**Statutes**

28 U.S.C. § 1330 ........ 5

28 U.S.C. § 1605(a)(1) ........ 5

28 U.S.C. § 1605(a)(2) ........ 7

28 U.S.C. § 1607 ........ 5

28 U.S.C. § 1782 ........ *passim*

28 U.S.C. § 2201(a) ........ 4

**Other Authorities**

Wright, Miller, et al., Fed. Prac. & Proc. § 2751 (4th ed. 2018) ....................................................7

**Treatises**

Restatement (Third) of Foreign Relations Law § 456 (1987)..........................................................6

After initiating this action and availing itself of this Court's assistance, the DIA now desperately attempts to escape this Court's jurisdiction. The DIA lied to this Court, and it does not want to be held accountable for those lies. Specifically, to persuade this Court to grant discovery from Mr. Leontiev under 28 U.S.C. § 1782, the DIA submitted false evidence to this Court stating that Mr. Leontiev had "embezzled hundreds of millions of dollars" from Probusinessbank ("PRBB"). Weigel Decl. Ex. 2 at 7; *see also*, *e.g.*, *id*. at 19, 29; Diachenko Decl. (Dkt. 4) ¶¶ 22-24, 37. The DIA made these statements of supposed fact to this Court, including in sworn declarations, but now does not even dispute their falsity. Through his motion and proposed complaint, Mr. Leontiev seeks nothing more than an opportunity to challenge the false evidence and factual assertions that the DIA made in this action.

The DIA provides no legitimate reason to deny Mr. Leontiev's request. The DIA's corrupt global campaign has targeted Mr. Leontiev ever since the Russian state illegally seized PRBB in 2015. Directed by Andrei Pavlov, a Russian lawyer sanctioned by the U.S. for filing prior sham lawsuits, the DIA has initiated bad faith litigation premised on utter fabrications, including in this Court.[1] In so doing, the DIA has abused U.S. legal processes and this Court's authority. Mr. Leontiev's proposed complaint has the potential to hold the DIA accountable for submitting false statements and evidence to this Court and to remove the threat of further harassment that the DIA continues to dangle above Mr. Leontiev's head.

## I. The DIA Cannot Avoid the Consequences of Its Own False Statements Simply Because They Were Made in the Context of a Section 1782 Action

The DIA takes the untenable position that statements it presented to this Court as fact—however false, injurious, and/or unsettling to the legal relations between Mr. Leontiev and the

[1] The DIA manufactured Pavlov's supposed resignation from the law firm Quorum to help persuade the Court to grant its discovery request. Recently, the DIA admitted that Pavlov "rejoined" Quorum after discovery was granted. Dkt. No. 42, at 4. This is just one example of the DIA's fraudulent litigation practices.

DIA—cannot provide the basis for Mr. Leontiev's claim for declaratory relief simply because they were made in the context of a § 1782 action. *See* Opp. at 8-11. The DIA does not dispute that it falsely accused Mr. Leontiev of embezzlement, and its attempt to evade accountability finds no support in the law, contravenes basic considerations of fairness, and should be rejected.

The DIA's arguments focus in large part on the "twin aims" of § 1782 (*id.*), but such arguments do not speak to the availability of declaratory relief and are wholly irrelevant here. While Congress may have wanted to assist parties to international litigation and encourage other countries to do the same, Congress could not have intended to enable foreign litigants to disseminate lies in U.S. courts or otherwise abuse the judicial system without any consequences. The DIA misuses cases characterizing § 1782 as a "one-way street . . . demand[ing] nothing in return." *Id*. at 8. In context, such statements mean simply that a foreign tribunal need not provide reciprocal aid to U.S. litigants for § 1782 assistance to be available. *See*, *e.g.*, *In re Malev Hungarian Airlines*, 964 F.2d 97, 101 (2d Cir. 1992). In no way does this "one-way street" suggest that a § 1782 action does not require honesty and good faith.

The DIA also improperly focuses on case law regarding whether a court should analyze the merits of the underlying foreign litigation when evaluating a § 1782 application. *See* Opp. at 9-10. The suggestion that Mr. Leontiev seeks "a ruling . . . on facts in dispute in the underlying foreign litigation" is similarly misplaced. *Id*. at 8. The issue on this motion is not whether discovery should be granted pursuant to § 1782, nor whether any allegations in the Russian Bankruptcy Action are true, but whether Mr. Leontiev may seek declaratory relief based on the DIA's intentionally false statements in U.S. court filings. Notably, the DIA is not litigating whether Mr. Leontiev embezzled funds from PRBB in the Russian Bankruptcy Action, and as this Court recognized, "[Mr.] Leontiev is not a party to [that action]." Order at 23 (Dkt. 28).

Further, the DIA had to know that the facts it submitted to this Court could be challenged, as courts routinely hold evidentiary hearings in § 1782 matters. *See*, *e.g.*, *In re Potanina*, 2015 WL 750656, at *3 (S.D.N.Y. Jan. 9, 2015) (ordering evidentiary hearing on "factual issue"); *Sergeeva v. Tripleton Int'l Ltd.*, 834 F.3d 1194, 1197 (11th Cir 2016) (noting evidentiary hearing held in § 1782 action). The court in *In re Gazprom Latin America Servicios, C.A.* not only held a hearing to resolve contested factual questions, but also permitted supplemental briefing and a third-party deposition before issuing findings of fact. 2016 WL 3654590, at *4-5 (S.D. Tex. July 6, 2016). Given this Court's broad authority to evaluate the validity of factual allegations made in a proceeding before it, the DIA cannot argue that its false affidavits and assertions of embezzlement are now immune from scrutiny because they were made in the § 1782 context.

While the situation presented to this Court may not be commonplace, this would not be the first time that a party has brought claims premised on false statements made during the course of a § 1782 action. *See, e.g.*, *Chevron Corp. v. Donziger*, 871 F. Supp. 2d 229, 240 (S.D.N.Y. 2012) (recognizing civil RICO claim premised, in part, on allegation that defendants relied upon "false statements to U.S. courts" in § 1782 proceedings). Moreover, allowing Mr. Leontiev's declaratory relief claim to be heard within this related case would comport with this "[C]ourt's authority to administer justice fairly, efficiently, and with minimal waste and burden." *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 510 F. Supp. 2d 299, 321 (S.D.N.Y. 2007).[2]

## II. This Court Has the Authority to Hear Mr. Leontiev's Claim for Declaratory Relief

Relief under the Declaratory Judgment Act is appropriate here because the DIA has initiated a "case of actual controversy" in this Court by filing this § 1782 action, and the DIA's

[2] The DIA's conclusory assertion that Mr. Leontiev "could not obtain personal jurisdiction over the DIA in a new action" is plainly wrong. Opp. at 11. While it would be unnecessarily inefficient, Mr. Leontiev could bring his claim in a new action for the same reasons that he may bring it here, including the DIA's voluntary submission to this Court's jurisdiction in this § 1782 action and the highly-related nature of the declaratory relief claim.

false allegations of embezzlement, presented as a factual matter to this Court, implicate the "rights and other legal relations" of the parties. 28 U.S.C. § 2201(a). Among other things, by accusing Mr. Leontiev of "directi[ng] the embezzlement scheme" (Diachenko Decl. (Dkt. 4) ¶ 22), the DIA squarely placed at issue whether Mr. Leontiev might be liable to the DIA, as PRBB's bankruptcy receiver. A declaration that Mr. Leontiev did not embezzle would "serve a useful purpose in clarifying and settling the legal relations" between the parties and afford Mr. Leontiev critical relief from "the uncertainty, insecurity, and controversy" caused by the DIA's false accusations. *Cont'l Cas. Co. v. Coastal Sav. Bank*, 977 F.2d 734, 737 (2d Cir. 1992).

While the DIA argues that its filing of this § 1782 action does not mean that it "has agreed to be sued here" (Opp. at 11), the DIA has in fact subjected itself to this Court's jurisdiction. *See Astronics Advanced Elecs. Sys. Corp. v. Lufthansa Technik AG*, 561 F. App'x 605, 606 (9th Cir. 2014) ("[B]y filing its own § 1782 motion," a party "sufficiently avail[s] itself of the benefits of the forum to establish the district court's jurisdiction [over that party]."). [3] Because the DIA's § 1782 application and Mr. Leontiev's proposed complaint share a "common nucleus of operative fact," this Court also has the power to determine the request for declaratory relief. *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 704 (2d Cir. 2000) ("We have routinely upheld the exercise of pendent jurisdiction where the facts underlying the [two] claims substantially overlapped . . . or where presentation of the federal claim necessarily brought the facts underlying the [other] claim before the court."). Moreover, this Court retains its authority to adjudicate Mr. Leontiev's claim within this action, and the DIA's argument that there is no longer a live case or controversy is just wrong. *See* Opp. at 10. If nothing else, this Court's

[3] It also is well-settled as a general matter that "[u]se of the New York courts is a traditional justification for the exercise of personal jurisdiction over a nonresident." *Morgan Stanley & Co. v. Seghers*, 2010 WL 3952851, at *4 (S.D.N.Y. Oct. 8, 2010) (citation omitted).

ongoing jurisdiction is evidenced by the fact that its July 23, 2018 Opinion and Order (Dkt. 28) directed the parties to meet-and-confer, its November 20, 2018 Order (Dkt. 48) imposes future obligations on the DIA and Mr. Leontiev, and neither resulted in a final resolution of this action.

## III. This Court Has Jurisdiction Under the Foreign Sovereign Immunities Act

This Court has jurisdiction over Mr. Leontiev's claim for declaratory relief pursuant to 28 U.S.C. § 1330 and the Foreign Sovereign Immunities Act (the "FSIA"); the DIA has waved its sovereign immunity.[4] The DIA acknowledges that implicit waiver is an enumerated exception to sovereign immunity under the FSIA. *See* Opp. at 13; 28 U.S.C. § 1605(a)(1). Here, the DIA has waived any immunity it might otherwise have by voluntarily seeking assistance from, and propagating false statements of fact in, this Court, as part of its efforts to persecute Mr. Leontiev. Because the DIA put Mr. Leontiev's purported embezzlement squarely at issue before this Court, it cannot hide from the falsity of its position by invoking sovereign immunity as a shield. Any contrary result would be inequitable and would directly contravene the intent of the FSIA.

Even before the FSIA was enacted, the inequity of "a foreign government invoking our law but resisting a claim against it" was recognized. *Nat'l City Bank of N.Y. v. Republic of China*, 348 U.S. 356, 361-62 (1955). The FSIA rejected the near-absolute immunity granted previously to foreign states and codified various situations that render sovereign immunity inapplicable. *See Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 486-89 (1983). The FSIA's inclusion of the waiver and counterclaim exceptions to sovereign immunity, 28 U.S.C. §§ 1605(a)(1) & 1607, was grounded in common sense notions of fairness: "[A] state that

[4] As a threshold matter, the DIA's arguments—whether about foreign sovereign immunity or otherwise—are premature and would be more appropriately addressed on a motion to dismiss. That would provide Mr. Leontiev a full opportunity to address the DIA's arguments, beyond what is possible in this ten-page reply brief, and it also would provide this Court with additional information that could influence its decision-making. In any event, because the DIA's arguments lack merit, they should fail whenever considered by this Court.

resorts to [U.S. courts] . . . to resolve a dispute consents to resolution by those courts of all aspects of the dispute," as "it would be unfair to allow only one party's obligation to be adjudicated." Restatement (Third) of Foreign Relations Law § 456, cmt. f (1987).

Mr. Leontiev's proposed complaint is premised exclusively on falsehoods deliberately placed at issue in this Court by the DIA, through sworn declarations and otherwise, to advance its own interests. Therefore, the DIA is subject to jurisdiction as to the inherently related claim for declaratory relief. *See Colonial Bank v. Compagnie Generale Mar. et Financiere*, 645 F. Supp. 1457, 1461 (S.D.N.Y. 1986) ("Courts have found a foreign sovereign's utilization of United States courts to advance its own interests to be incompatible with a claim of immunity from the jurisdiction of the same courts for related matters.").

Despite the DIA's protestations, the Ninth Circuit's decision in *Siderman de Blake v. Republic of Argentina,* 965 F.2d 699 (9th Cir. 1992), which found that Argentina had implicitly waived its sovereign immunity through its use of U.S. courts, involves analogous facts and should serve as persuasive precedent for this Court. The DIA goes to great lengths to distinguish *Siderman*, but its efforts are futile. *See* Opp. at 13-16.[5] First, Argentina's use of U.S. courts, and resulting waiver of sovereign immunity, involved a letter rogatory (965 F.2d at 722), an international discovery device akin to a § 1782 application, and the DIA identifies no relevant difference between the two. Second, the connection between Mr. Leontiev's proposed complaint and the DIA's use of this Court is no less direct than the one found in *Siderman*. While the DIA makes bald assertions that "the alleged misuse of this Court is not part of Leontiev's proposed

[5] The DIA also incorrectly asserts that the Second Circuit "expressly rejected" *Siderman*'s holding. Opp. at 16. *Cabiri v. Gov't of the Republic of Ghana*, 165 F.3d 193 (2d Cir. 1999), was distinct from *Siderman* in various key respects, including the nature and timing of the claims and U.S. proceedings at issue in each. Notably, *Cabiri* neither repudiated *Siderman*'s holding nor reached any conclusions that would prevent this Court from exercising jurisdiction over the DIA as to Mr. Leontiev's proposed complaint. *See Walters v. Indus. & Commercial Bank of China, Ltd.*, 651 F.3d 280, 296 (2d Cir. 2011) (explaining that *Cabiri*'s finding that sovereign immunity had not been waived was in the context of *unrelated* counterclaims).

claims" and that "the DIA's statements or the intent behind them are not actually at issue in [Mr.] Leontiev's proposed complaint" (Opp. at 15, 18), nothing could be farther from the truth. If the DIA had not falsely claimed that Mr. Leontiev "embezzled hundreds of millions of dollars of assets from the Russian bank he co-owned" (Weigel Decl. Ex. 2 at 7) to persuade this Court to grant it discovery, there would be no claim for declaratory relief.[6] As in *Siderman*, the DIA's "invocation of [U.S.] judicial authority" to obtain discovery is "part and parcel" of its global campaign of harassment, threats and bad faith litigation against Mr. Leontiev. *See* 965 F.2d at 722. In sum, because there is "a direct connection between the [DIA's] activities in [U.S.] courts and [Mr. Leontiev's] claims for relief," *id*., the DIA has waived any sovereign immunity.

Separately, this Court also has jurisdiction over the DIA under the second clause of the FSIA's commercial activity exception, which subjects foreign states to claims based on "an act performed in the United States in connection with a commercial activity of the foreign state elsewhere." 28 U.S.C. § 1605(a)(2). As discussed above, Mr. Leontiev's declaratory relief claim is based entirely upon the DIA's actions and statements in this Court—which are "act[s] performed in the United States." Because the DIA purports to have acted to obtain discovery "in order to trace P[R]BB's assets" (Weigel Decl. Ex. 2 at 15)—a "commercial activity" abroad—all statutory elements for jurisdiction over a foreign state have been met.

The FSIA "demands that the activity's purpose—'the *reason* why the foreign state engages in the activity'—be distinguished from the activity's nature—'the outward form of the

[6] The DIA's actions and false statements in this § 1782 action imply that the DIA may attempt to hold Mr. Leontiev liable, or otherwise pursue Mr. Leontiev's assets, in connection with the alleged embezzlement, and declaratory relief is necessary to address this looming threat. *See, e.g., Mine Safety Appliance Co. v. Energetics Sci., Inc.*, 416 F. Supp. 530, 532 (S.D.N.Y. 1976) (exercising jurisdiction over a declaratory relief action premised on conduct "which would lead a reasonable man to fear" a "suit or the threat of one" (citation omitted)). The DIA's "statements [and] the intent behind them" are directly related to Mr. Leontiev's need for declaratory relief: "The remedy made available by the Declaratory Judgment Act . . . relieves potential defendants 'from the Damoclean threat of impending litigation which a harassing adversary might brandish.'" Wright, Miller, et al., Fed. Prac. & Proc. § 2751 (4th ed. 2018).

conduct that the foreign state performs or agrees to perform.' . . . [O]nly the latter is relevant." *Daventree Ltd. v. Republic of Azerbaijan*, 349 F. Supp. 2d 736, 749 (S.D.N.Y. 2004) (quoting *Republic of Argentina v. Weltover,* 504 U.S. 607, 617 (1992)). Thus, whatever the DIA's supposed goals as PRBB's "official liquidator," they do not make its "efforts to trace . . . the assets of P[R]BB . . . sovereign in nature." Opp. at 19. The activity of asset tracing "reflect[s] an exercise of 'powers that can also be exercised by private citizens,' and are akin to those that a [private creditor of a liquidated bank] might take as a 'player in the private market.'" *WMW Mach., Inc. v. Werkzeugmaschinenhandel GmbH IM Aufbau*, 960 F. Supp. 734, 740 (S.D.N.Y. 1997) (quoting *Saudi Arabia v. Nelson*, 507 U.S. 349, 360 (1993)).[7] Because Mr. Leontiev's claim is based upon the DIA's actions in this Court, in connection with its self-professed asset tracing, the FSIA's commercial activity exception strips the DIA of any sovereign immunity.

## IV. This Court Is the Most Appropriate Forum for Mr. Leontiev's Claim

Having voluntarily placed in controversy in this Court its claim that Mr. Leontiev embezzled funds, the DIA is precluded from disputing that this Court is a proper and convenient forum. The DIA argues half-heartedly that a foreign forum would be more appropriate, listing countries where (allegedly) related litigation is pending without specifying any one that would be superior to this Court. Its "anywhere but here" attitude merely confirms that the DIA is afraid to have the merits of its false embezzlement claims adjudicated in an impartial forum.

***First-Filed Rule:*** The DIA's invocation of the discretionary first-filed rule is puzzling given that the DIA filed this suit on October 26, 2017—long before any other potentially relevant

[7] The DIA cites *Granville Gold Tr.-Switzerland v. Commissione Del Fulliment / Inter Change Bank*, 924 F. Supp. 397 (E.D.N.Y. 1996), where redress was sought for the foreign liquidation process itself. *See* Opp. at 19. Here, by contrast, the relevant question is whether asset tracing, the DIA's purported basis for this § 1782 action, can be done by a "player in the private market." The answer is yes. *See*, *e.g.*, *Middleton v. Green Cycle Hous., Inc.*, 2017 WL 715747, at *9 (S.D.N.Y. Feb. 23, 2017); *see also WMW Mach.* at 740 (clarifying that "marshaling, managing, and liquidating" assets is "commercial activity" (citation omitted)).

action. As such, to the extent the first-filed rule applies, it supports Mr. Leontiev's request to file his proposed complaint as part of this case. Notably, while the Russian Bankruptcy Action predates this action, the DIA does not suggest that it is a relevant, competing action because, among other things, Mr. Leontiev is not a party to that non-adversarial insolvency proceeding, and no allegations similar to embezzlement are at issue there. In fact, the DIA does not name which action it perceives to be first-filed and instead collectively refers to four distinct foreign proceedings that it has dubbed "Related Actions." Opp. at 5-6, 21-23. Putting aside that the "Cyprus Action" and "Austrian Action" were filed as late as August 6, 2018—nearly ten months after this action (Opp. at 6 n.1)—several of these "Related Actions" are not actually "related" in any meaningful sense vis-à-vis the claims at issue in Mr. Leontiev's proposed complaint.[8]

Moreover, the "balance of convenience" favors this Court's retention of its jurisdiction. Mr. Leontiev is a New York resident, and this is his forum of choice. The DIA also voluntarily came to this forum, allegedly to obtain "critically important" evidence relating to the purported "embezzlement scheme" from Mr. Leontiev, whom the DIA described as "the individual most likely to have control of . . . [such] information." Weigel Decl. Ex. 2 at 15; *id.* Ex. 15 at 21. At the same time, the DIA offers only vague and conclusory assertions in claiming the balance of convenience favors litigating elsewhere. Passing references to supposed "banking records in Austria, Cyprus and Liechtenstein" and "witnesses" whose identity and location are unascertainable do not outweigh the abundance of factors favoring New York. *See* Opp. at 22.

***<u>Principles of International Comity</u>:*** The DIA's conclusory argument that this Court should decline to exercise jurisdiction and "defer to the Related Actions" based on discretionary

[8] For example, the DIA is not even a party to the "Liechtenstein Action," which is based on a statute that does not deal with embezzlement. *See* Zhidchenko Decl. Ex. 4 at 2. Likewise, the Russian "Subsidiary Liability Action" neither names Mr. Leontiev as a party nor assesses claims that Mr. Leontiev embezzled funds from PRBB.

principles of international comity should be rejected. Opp. at 24. The DIA again conflates the different "Related Actions" and fails to explain why this Court should decline to exercise jurisdiction in favor of any one. Moreover, the DIA's litigation of related claims in multiple countries signals its agreement that, "[g]enerally, concurrent jurisdiction in United States courts and the courts of a foreign sovereign does not result in conflict." *Leopard Marine & Trading, Ltd. v. Easy Street Ltd.*, 896 F.3d 174, 190 (2d Cir. 2018). Here, no "exceptional circumstances exist that justify the surrender" by this Court of its jurisdiction over the proposed complaint. *Id*.

***<u>Act of State Doctrine</u>:*** Lastly, the discretionary Act of State doctrine does not shield the DIA's false statements from scrutiny. "The act of state doctrine is not some vague doctrine of abstention," it "merely requires that, in the process of deciding [a controversy], the acts of foreign sovereigns taken within their own jurisdictions shall be deemed valid." *W.S. Kirkpatrick & Co. v. Envtl. Tectonics Corp., Int'l*, 493 U.S. 400, 406, 409 (1990). Mr. Leontiev asks this Court to adjudicate the truthfulness of the DIA's statements here, not to judge the validity of the DIA's acts in Russia. This request falls within this Court's power. *See id*. at 409 ("Courts in the United States have the power, and ordinarily the obligation, to decide cases and controversies properly presented to them."). The DIA's purported duties, and its vague claim that an injunction "would require the DIA to breach its duties" (Opp. at 24), do not permit the DIA to make false statements in this Court without recourse. This Court may enjoin the DIA—which subjected itself to this Court's jurisdiction—from repeating its false embezzlement claims. *See, e.g.*, *Iwachiw v. New York State Dep't of Motor Vehicles*, 396 F.3d 525, 529 (2d Cir. 2005) (affirming injunction barring party from bringing frivolous claims). Because the DIA identifies no act undertaken by it in Russia that is being challenged as invalid here, the DIA's efforts to hide behind the Act of State doctrine must fail.

Dated: December 3, 2018
New York, New York

GIBSON, DUNN & CRUTCHER LLP

By: /s/ Robert L. Weigel

Robert L. Weigel
rweigel@gibsondunn.com
Marshall R. King
mking@gibsondunn.com
Alison L. Wollin
awollin@gibsondunn.com

200 Park Avenue
New York, New York 10166
Telephone: 212.351.4000
Facsimile: 212.351.4035

*Attorneys for Sergey Leontiev*